**MOSS v. BALLARD**
**CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 8**

Westlaw.

125 S.Ct. 1090
543 U.S. 1128, 125 S.Ct. 1090, 160 L.Ed.2d 1081, 73 USLW 3448
**(Cite as: 543 U.S. 1128)**

Supreme Court of the United States
John MOSS, III, petitioner,
v.
George TRENT, Warden
**No. 04-7625.**

Jan. 24, 2005

Case below, <u>216 W.Va. 192, 603 S.E.2d 656</u>

Petition for writ of certiorari to the Supreme Court of
Appeals of West Virginia denied.

U.S.,2005
Moss v. Trent
543 U.S. 1128, 125 S.Ct. 1090, 160 L.Ed.2d 1081, 73
USLW 3448

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# MOSS v. BALLARD
# CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 9

FUNCTION : SEO INQUIRY

Case 2:09-cv-01406  Document 8-3  Filed 02/09/10  Page 4 of 199 PageID #: 446

Case number : 05-MISC-209

JOHN MOSS, III (PRISONER #1373) vs. THOMAS L. MCBRIDE, WARDEN

| Line | Date | Action / Results |
|------|------|------------------|
| 1 | 07/07/05 | # PET FOR WRIT OF HABEAS CORPUS W/ATTACH'S; APPLICATION TO |
| 2 | | # PROCEED IN FORMA PAUPERIS |
| 3 | 02/07/06 | ORDER MAILED;2/7/06 BY MAB |
| 4 | 02/07/06 | FINAL ORDER ENTERED |
| 5 | 02/13/06 | # MOT FOR ADDTL TIME W/COS; COV LET |
| 6 | 05/11/06 | # COV LET; MOT FOR COURT TO CONSID MOT FOR APPT OF CNSL W/COS |
| 7 | 05/11/06 | # MOT FOR EXT OF TIME TO F PET FOR APPEAL |
| 8 | 05/15/06 | *LTR TO CLK FR D DTD 5/2/06; LTR TO D FR CLK DTD 5/15/06 |
| 9 | 05/16/06 | *LTR TO CLK FR D DTD 5/15/06; LTR TO D FR CLK W/ATT DOC |
| 10 | | 2 ORDERS MAILED;5/24/06 BY MAB |
| 11 | 05/25/06 | <O: DENYING EXTENSION OF TIME TO FILE APPEAL/BLOOM (S5/24/06) |
| 12 | 05/25/06 | <O: DENYING APPT OF CNLS & GRTING PERMISSION TO PROCEED |
| 13 | | IN FORMA PAUPERIS/BLOOM (S5/24/06) |
| 14 | 06/12/06 | *MOT FOR APPR TO F PET & ADDENDUM FOR EXCEEDING 50 PAGE |
| 15 | 06/12/06 | LIMIT; PET & 9 CPY; DOCKETING STATEMENT; DESIG OF REC |
| 16 | 06/13/06 | ENTIRE FILE SENT TO SCA PLUS PORTIONS OF 94-MISC-663,JUV-80- |
| 17 | | 775,776 777 AND 82-F-221 BY MAB |
| 18 | 06/21/06 | ABC RCPT FR WVSC RECEIVED FILE 6/21/06 94-MISC-663, 82-F-221, |

C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image

Case 2:09-cv-01406 Document 8-3 Filed 02/09/10 Page 5 of 199 PageID #: 447

FUNCTION : SEQ INQUIRY
Case number : 05-MISC-298

JOHN MOSS, III (PRISONER #1373   vs.  THOMAS L. MCBRIDE, WARDEN

Line    Date                          Action / Results
  19            JUV-80-775-776-777
  20  06/26/06  # LET FR RORY PERRY, II TO JOHN MOSS, III DTD 6/22/06
  21  01/16/07  *O FR SCA REFUSING PET FOR AP
  22  03/02/07  # RECEIPT FROM WVSCA
  23  07/23/07  REC FR WVSCA

C=Chg   D=Del   1-4=Scr   M=Menu   T=Chg Line#   PgUp PgDn P=Prt A=Add I=Image    _

FUNCTION = SEQ INQUIRY                                    CIVIL CASE SCREEN 2
                                                          05-MTSC-228

Case 2:09-cv-01406  Document 8-3  Filed 02/09/10  Page 6 of 199  PageID #: 448

Plaintiff's Attorney(s)

                                          Jury Trial: N̲
                                          Exhibits Filed: _
         Defendant's Attorney(s)          Public Access (Y/N): Y̲

                                    File        Who          Date
                              Checked Out: _____  _____
                                           _____  _____
Final Order Date: 02/07/06  Stat Close:  02/07/06  _____  _____
Judgement Order: O/PET DENIED/BLOOM _____
               _____
               _____
                                   Judgement
Favor: _      Costs: _____  Decision Type: ___   Date: _____
Judgment Amount: _____  Dismissal Type: ____ Date: _____
                                 Post Judgment
Motion to Set Aside: _____    Date Bond Posted: _____
Status:              _            Bond Amount: _____   Type: __
Appeal Filed:        _____    Writ Type: ___
                                  Purge Date: _____
   <Ent>=cont  N=Notes  M=Menu  C=Chg  P=PlaAt  D=DefAt  F9=Add Rct       _

# MOSS v. BALLARD
# CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 10

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

JOHN MOSS, III

2006 FEB -7  AM 11:20

      Petitioner,

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

v.

Civil Action No. 05-MISC-298

Judge Louis H. Bloom

THOMAS MCBRIDE, Warden,
Mount Olive Correctional Complex,

      Respondent.

### FINAL ORDER DENYING HABEAS RELIEF

Pending before the Court is the *"Petition Under W.Va. Code §53-4A-1 for Writ of Habeas Corpus"* (hereinafter "Petition"), filed by the self-represented petitioner John Moss, III (hereinafter "Mr. Moss"). Mr. Moss's Petition relates to his conviction of three counts of first degree murder in April of 1990. Mr. Moss filed a direct appeal of his conviction to the Supreme Court of Appeals of West Virginia and such appeal was refused in 1991. Mr. Moss filed a prior habeas petition in 1994, but that petition was denied by this Court, after a full review of the grounds raised therein, and the Supreme Court of Appeals of West Virginia affirmed that denial.

After full consideration of Mr. Moss's current habeas Petition, his prior habeas petition, the files relating to his underlying trial, applicable law, and based on the following findings and conclusions, the Court is of the opinion that the Petition must be **SUMMARILY REFUSED** and **DISMISSED**.

### FINDINGS OF FACT

1.     The Supreme Court of Appeals previously summarized the facts of this case in *In Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33 (W. Va. 1982):

In December of 1979, a woman and her two children were found dead in their St. Albans home. Soon afterward, the deceased woman's husband became a suspect in the triple murder. He is alleged to have confessed to the crime and was subsequently indicted by the Kanawha County Grand Jury. The husband was held in custody for approximately eleven months awaiting trial, during which time his alleged confession was ruled admissible into evidence as voluntarily given. Trial was set for November 12, 1980.

The record indicates that the appellant was also a suspect in the murders and that his name was recited in the indictment of the accused husband. In January 1980, the investigating authorities traveled to Cleveland, Ohio, to obtain a blood sample from the appellant, who at the time was housed in a juvenile detention center on an unrelated charge, and to question him about the murders. The appellant denied committing the murders. A blood sample was taken, when, at the authorities' request, the appellant pricked his finger and dribbled blood on a cloth provided for this purpose.

At the time of this interrogation, the appellant was seventeen years of age. The blood sample was taken without a court order, and without the knowledge or consent of the appellant's parents. The authorities were aware that the appellant was a juvenile. They made no effort to contact the appellant's Ohio lawyer. The appellant was advised of his rights prior to questioning, but did not sign a waiver of rights form.

When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. This apparently was done. Subsequently, in April 1980, the investigating authorities again traveled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders.

On September 26, 1980, the State filed a detainer against the appellant . . . based on a malicious wounding charge, unrelated to the homicides[.]  On October 28, 1980, while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, the appellant confessed to having committed the homicides in Kanawha County. The appellant subsequently made a tape recorded confession after signing a waiver of his *Miranda* rights.

On November 2, 1980, a second detainer was filed by the State against the appellant based on a charge of three counts of murder in the first degree. On December 18, 1980, the appellant was again transported from [Ohio] to the Kanawha County Jail. A preliminary hearing was set [and] the juvenile referee made a finding of probable cause and referred the appellant to the juvenile jurisdiction of the Circuit Court of Kanawha County.

On January 20, 1981, the State filed a motion to have the appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult[.] At the conclusion of the hearing the court issued from the bench its decision that the appellant be transferred to the criminal jurisdiction of the court, and indicated that further proceedings would be stayed until counsel had an opportunity to file an appeal.

*In Interest of Moss*, 170 W.Va. at 544-548, 295 S.E.2d at 35-37.

2

2.   Mr. Moss appealed the trial court's decision to transfer him to the adult jurisdiction of the Court and the Supreme Court reversed and remanded the matter.   See *In the Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33.

3.   After conducting a second transfer hearing, the circuit court entered another order on September 28, 1982, granting the motion to transfer Mr. Moss to the Court's adult jurisdiction.   The Supreme Court refused to hear Mr. Moss's appeal from the second transfer order.

4.   A grand jury later returned an indictment, charging Mr. Moss with three counts of first degree murder.

5.   Mr. Moss was tried, convicted, and sentenced for the three counts of first degree murder in 1984, but that conviction was reversed by the Supreme Court of Appeals of West Virginia by its decision in *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988).

6.   The Supreme Court's decision to overturn Mr. Moss's conviction was based on the Court's finding of multiple trial court errors.   First, the Supreme Court held that the trial court erred when it refused Mr. Moss's motion to poll each juror, outside the presence of others, about each juror's exposure to prejudicial comments made by the prosecuting attorney.   Second, the Supreme Court held that the trial court erred when it failed to intervene for the purposes of limiting and correcting fundamentally improper remarks made by the prosecuting attorney during closing.   Third, the Supreme Court held that the trial court erred when it allowed the admission of evidence regarding the results of a polygraph test taken by the victims' husband and father.   *Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988).

3

7.    In the 1988 decision, the Supreme Court also made the following statements regarding

the three confessions that were admitted at the trial:

> We conclude that the first two confessions given by [Mr. Moss] are admissible,
> while the last confession is inadmissible due to the lack of prompt presentment to
> a neutral judicial officer.
>
> *Moss*, 180 W.Va. 363, 369, 376 S.E.2d 569, 575.

8.    Mr. Moss's second trial was held in 1990. He was convicted again of three counts of first

degree murder. Mr. Moss appealed that conviction to the Supreme Court of Appeals of

West Virginia, but such appeal was refused on March 12, 1991.

### The Prior Habeas Petition

9.    Mr. Moss's prior habeas petition was filed in August of 1994 and resulted in this Court's

consideration of numerous motions, legal memoranda, oral argument, and evidentiary

exhibits. The grounds raised in that habeas matter were the following:

(1)    The admission of Trooper Fred Zain's testimony and test results violated
Mr. Moss's Constitutional rights;
(2)    The State presented incorrect, false, misleading, overstated, and
unscientific evidence; and
(3)    The admission of Mr. Moss's confessions violated his Constitutional
rights.

10.    In September of 1998, Judge MacQueen entered a Memorandum Order which concluded

that Mr. Moss was not entitled to a new trial on the basis of Trooper Zain's testimony and

testing. Specifically, Judge MacQueen held that based on the fact that the scientific

conclusions were confirmed as valid, Trooper Zain's testimony was not false, inaccurate,

or invalid. Further, Judge MacQueen held that even if the serological evidence is

completely disregarded, there remains sufficient evidence to sustain the conviction.

4

11.     Mr. Moss filed a motion to alter or amend Judge MacQueen's judgment and in October of

        1998, Judge MacQueen held a hearing on Mr. Moss's motion. Apparently Judge

        MacQueen denied that motion from the bench, but a written order was never entered.

12.     In June of 2001, and after Judge MacQueen retired, this Court held a status conference in

        this matter, wherein the parties were granted additional time to submit evidence and

        argument.

13.     In February of 2002, this Court entered an Order which denied relief, based on this

        Court's conclusion that Trooper Zain's testing and testimony did not result in any

        prejudice. However, the habeas matter was reinstated to the Court's docket in March of

        2002 so that the other issues that Mr. Moss raised in the habeas petition could be

        addressed, on their merits. After another hearing, the Court entered a Final Order in

        January of 2003, which denied all claims raised in that habeas proceeding.

14.     The January 2003 final order made the following findings and conclusions:

                "[e]ven if the serological evidence were excluded, there would still be sufficient
                evidence in the record to support Moss's conviction and that the introduction of
                Zain-related evidence and testimony at Moss's trial did not prejudice the jury."

        *   *   *

                "As both parties acknowledged, the issue of the voluntariness of Moss's
                confession has been thoroughly litigated[.] Moss failed to present any new
                evidence on the voluntariness of his confession. Rather, he seems to argue that
                the fact that Mr. Reggettz had, at one point, given a confession somehow
                invalidates Moss's own confession. The existence of the Reggettz confession
                does not have the devastating effect that Moss desires because the Reggettz
                confession does not impugn the voluntariness of Moss's confession. At most, it
                provided fodder for defense theories at trial. The question before the Court is
                whether Moss was able to establish that his confession was constitutionally
                flawed. He was not. Therefore, the admission of his confession at trial does not
                provide a predicate for issuance of the requested writ".

                                        5

15.  Mr. Moss filed an appeal from this Court's January 2003 order denying his habeas

petition and the Supreme Court of Appeals of West Virginia affirmed this Court's

decision after finding no merit in Mr. Moss's assignments of error. *Moss v. Trent*, 216

W.Va. 192, 603 S.E.2d 656 (W. Va. 2004).

*The Current Habeas Petition*

16.  Mr. Moss filed the present Petition for Writ of Habeas Corpus in July of 2005.  The

petition is based on the following averments of error:

> (1)  The trial court abused its discretion and committed reversible error in ruling that the first two confessions were admissible under the "law of the case doctrine";
>
> (2)  The factual determination by the West Virginia Supreme Court of Appeals that no prompt presentment objections were entered on the first two alleged confessions is clearly erroneous and works a manifest injustice;
>
> (3)  The petitioner was deprived of the Sixth Amendment's guarantee of the effective assistance of counsel;
>
> (4)  The petitioner did not receive a full and fair hearing on his motion and memorandum to suppress samples of blood, confession, and other physical evidence seized due the improper tactics of Fred S. Zain and the West Virginia State Police Troopers and Crime Laboratory;
>
> (5)  The Petitioner's Sixth Amendment right to a fair and impartial jury was contravened when the State knew or should have known of the false and misleading testimony and evidence presented by Fred Zain;
>
> (6)  The trial court abused its discretion and committed reversible error when it admitted petitioner's blood samples, confessions, and all evidence incident thereto into evidence, when the samples of blood were obtained in violation of Federal and State Constitutional rights; and
>
> (7)  The prosecution made improper close arguments that denied the petitioner a fair trial.

17.  The Court finds as fact that the first ground raised by Mr. Moss relates to the trial court's

admission of his confessions, which has been throughly litigated and previously

considered, on the merits of such claim, by this Court and the Supreme Court, on at least

two occasions.

6

18.     The Court finds as fact that the second ground raised in Mr. Moss's Petition relates to findings or conclusions made by the Supreme Court of Appeals of West Virginia, which are not subject to review by this Court.

19.     The Court finds as fact that the third ground raised in Mr. Moss's Petition is based on the following two averments: (1) Mr. Moss's trial counsel failed to bring the trial court's attention to the fact that two of the confessions were the subject of an extensive motion and memorandum; and (2) Mr. Moss's trial counsel failed to object to the admission of his confessions based on the failure to promptly present Mr. Moss to a neutral judicial officer. The Court finds that these grounds relate to the admissibility of Mr. Moss's confessions, which has been previously raised, considered and denied, on the merits, by the Supreme Court of Appeals and this Court in Mr. Moss's prior habeas petition and appeal.

20.     The Court finds as fact that the fourth and fifth grounds that are raised in the current Petition relate to the alleged, improper tactics of State Trooper Fred Zain regarding his collection and testing of evidence. The Court finds as fact that this issue has been previously raised, considered, and denied, on the merits, by the Supreme Court of Appeals and this Court.

21.     The Court finds as fact that the sixth ground raises issues regarding blood samples and confessions that were obtained from Mr. Moss while he was in custody. To the extent that Mr. Moss argues that his confessions were obtained in violation of his Constitutional rights, the Court finds as fact that such issue was previously raised, considered, and denied by this Court and the Supreme Court of Appeals of West Virginia. To the extent

7

that Mr. Moss's sixth ground for relief relates to the admissibility of his blood sample, the Court finds that such ground does not appear to have been raised in the prior appeals or habeas matters.

22.   Mr. Moss alleges that two samples of blood were obtained from him while he was in Ohio. He claims that the blood was extracted and seized in violation of his Fourth Amendment rights. The Court finds as fact that the first blood sample was allegedly taken in January of 1980, without a court order, and was subsequently determined, by an Ohio Court, to be in violation of Mr. Moss's Constitutional rights. The Ohio Court ordered that sample returned to Mr. Moss. The second sample, which was allegedly obtained in April of 1980, was pursuant to an Ohio Court Order. Mr. Moss claims that the order was granted, even though no probable cause existed at that time.

23.   Trooper Michael Smith testified at a suppression hearing prior to the first trial that in April of 1980, he had the following evidence that led him to believe that Mr. Moss may have committed the murders:  (1) A newspaper article from Ohio indicating that Mr. Moss was suspected of attempted murder by strangulation, in Ohio; (2) The fact that Mr. Moss lived in close proximity to the victims' home; (3) The fact that Mr. Moss was suspected of being involved in a crime at a Moose Club that was close to the victims' home; (4) Information from a "friend" of Mr. Moss who claims that Mr. Moss stated, prior to the murders, that he wanted to burglarize the victims' home. (Transcript, September 19, 1983).

24.   Trooper Terry Williams testified at the second trial that the blood sample obtained in April of 1980 was taken by a doctor. (Trial Transcript, p. 505).

8

25.   In the 2004 decision which upheld this Court's denial of Mr. Moss's prior habeas

petition, the Supreme Court repeated Judge MacQueen's finding that the Troopers

"discovered genetic markers in blood samples from the [victims'] residence that excluded

[the other suspect] and would ultimately incriminate [Mr. Moss], long before a sample of

Moss's blood was obtained and analyzed." *Moss v. Trent*, 216 W.Va. 192, 194, 603

S.E.2d 656, 658.

26.   The seventh and final ground raised in Mr. Moss's Petition relates to certain comments

made by an Assistant Prosecutor during closing statement. Specifically, Mr. Moss

believes the following comments were improper and unduly prejudicial:

> "He didn't necessarily tell the whole story. Perhaps that's why Vanessa Reggettz's
> panties are on the bed – not on her body. Why her sanitary napkin was on the floor – a
> homemade sanitary napkin, not a store-bought one, something that has no pins to secure
> it, no tape to secure it, no belt to secure it. It was secured in place by her underwear, but
> her underwear is off of her body and her sanitary napkin is on the floor.
>
> He did leave out a struggle in the front bedroom, and he left out taking off her underwear.
> But what he did tell you in his confession, that is corroborated.

*Trial Transcript*, pp. 1376-1377.

27.   Mr. Moss claims that the State implicitly stated that Mr. Moss, an African-American

man, had sex with the victim, a Caucasian woman, during her menstrual cycle. Mr. Moss

avers that there was no direct evidence of sexual relations and that such statement unduly

prejudiced him.

28.   The victim's husband, Mr. Reggettz, testified at the trial that his wife was menstruating at

the time of her death and that she used homemade sanitary napkins. (Trial Transcript, pp.

730-731). The Chief Medical Examiner for the State of West Virginia testified that Ms.

9

Reggettz was wearing a nightgown, but no other clothing at the time he examined the body. (Trial Transcript, pp. 829-830).

29. The prosecutorial misconduct ground was raised in Mr. Moss's direct appeal which was refused by the Supreme Court of Appeals of West Virginia.

## STATEMENT OF THE LAW

1. According to the *Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia*, circuit courts are required to conduct an initial evaluation of habeas petitions before requiring an answer from the respondent. *Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, Rule 4 (hereinafter "Habeas Rules")*.

2. After conducting this initial evaluation, the circuit court can either summarily dismiss the petition or order the respondent to file an answer. *Habeas Rules, Rule 4.*

3. The court may refuse the petition if it is satisfied that the petitioner is entitled to no relief, after the Court reviews the petition, the documentary evidence attached thereto, the record of the underlying conviction, and the records of any previous attacks on the conviction or sentence. *W. Va. Code* § 53-4A-3(a).

4. The Supreme Court of Appeals of West Virginia (hereinafter "Supreme Court") has recognized that this conclusion can be made without a hearing and without the appointment of counsel. *Mugnano v. Painter*, 212 W.Va. 831, 833, 575 S.E.2d 590, 592 (W. Va. 2002) (per curiam)(citing Syl. pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (W. Va. 1973)).

5. Contentions in habeas petitions that have been previously and finally adjudicated, after a decision on the merits and an opportunity for an appeal, need not be considered unless the

10

prior decision was clearly wrong. See *W.Va. Code*, § 53-4A-1.

6.  When any contentions and grounds could have been advanced by the petition at trial, on direct appeal, or in a proceeding or proceedings on a prior habeas petition, but were not advanced, there shall be a rebuttal presumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds. See *W.Va Code*, § 53-4A-1(c).

7.  Finally, this Court evaluates habeas petitions with an awareness that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. pt. 4, *State ex rel. McMannis v. Mohn*, 254 S.E.2d 805, 806 (W. Va. 1979).

## CONCLUSIONS OF LAW

1.  The Court concludes that Mr. Moss's first ground for relief must be **SUMMARILY DENIED** and **DISMISSED** as it relates to the admissibility of his confessions, which was previously raised, considered, and denied, on the merits, by this Court and the Supreme Court of Appeals of West Virginia.

2.  The Court concludes that Mr. Moss's second ground for relief must be **SUMMARILY DENIED** and **DISMISSED** as it asks this Court to review certain determinations made by the Supreme Court of Appeals of West Virginia. This Court does not have appellate review powers over the Supreme Court of Appeals.

3.  The Court concludes that Mr. Moss's third ground for relief must be **SUMMARILY DENIED** and **DISMISSED** as it relates to the admissibility of his confessions, which

was previously raised, considered, and denied, on the merits, by this Court and the Supreme Court of Appeals of West Virginia.

4.  The Court concludes that Mr. Moss's fourth and fifth grounds for relief must be **SUMMARILY DENIED** and **DISMISSED** as they relate to Trooper Fred Zain's evidence gathering, testing, and testimony, which was previously raised, considered, and denied, on the merits.

5.  The Court concludes that Mr. Moss's sixth ground for relief must be **SUMMARILY DENIED** and **DISMISSED** as it fails to provide this Court with probable cause that Mr. Moss may be entitled to relief. While the United States Supreme Court has determined that compulsory blood testing implicates Fourth Amendment issues, the question is whether the "intrusion" is justified and reasonable. See *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826 (1966). In *Schmerber*, the Court found that extraction of blood samples in a hospital environment, and according to accepted medical practice, was reasonable. *Schmerber*, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836.

6.  The Court concludes that based on the testimony provided at the earlier suppression hearing, law enforcement officers completed an affidavit which included a substantial basis for determining that probable cause existed in April of 1980. Further, the Court concludes that the withdraw of the blood sample in April of 1980, where law enforcement officers submitted an affidavit to a neutral and detached judicial officer, who granted them permission to withdraw the blood, and where sample was obtained by medical personnel, was reasonable and Constitutional. *Id.*

12

7.  Mr. Moss's seventh and final ground for relief relates to the prosecutor's statements during closing arguments about the adult victim's panties and sanitary napkin. The Court concludes that this ground must be **SUMMARILY DENIED** and **DISMISSED** as Mr. Moss has failed to provide this Court with probable cause to believe that he may be entitled to relief. The trial transcript reveals that there was testimony at trial about Ms. Reggettz's use of homemade sanitary napkins and the fact that she was not wearing underwear when her body was found. Specifically, the Court concludes that the prosecutor's comments were not unduly prejudicial and did not infect the trial with unfairness resulting in a denial of due process. See *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.E.2d 431 (1974).

Accordingly, the Court does hereby **SUMMARILY DENY** and **DISMISS** all grounds that were raised in Mr. Moss's Petition. The Court notes Mr. Moss's objection(s) to the entry of this Order. The Clerk is **DIRECTED** to send a certified copy of this Order to Mr. Moss, who is believed to be incarcerated at Mount Olive Correctional Complex, which has a mailing address of One Mountainside Way, Mt. Olive, West Virginia, 25185.

There being nothing further, the Court **DIRECTS** the clerk to **REMOVE** this action from the Court's docket.

ENTER: This ___ day of February, 2006.

Judge Louis H. Bloom

13

FILE COPY

# INDEX OF EXHIBITS

DO NOT REMOVE
FROM FILE

**Appellant's Exhibit #1:** 30 August, 1985, signed *Designation of Record* Receipt  (App.Exh. #1)

**Appellant's Exhibit #2:** Trial Transcript, Vol. 17, pp. 4,001 & 4,002  (App.Exh. #2)

**Appellant's Exhibit #3:** 29 August, 1983 Letter Ruling (App.Exh. #3)

**Appellant's Exhibit #4:** 30 December 1983, State's *Memorandum In Opposition To Defendant's Motion To Suppress* (App.Exh. #4)



FILED

JUN 2 2 2006

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# MOSS v. BALLARD
# CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 11

STATE OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS

IN VACATION

State of West Virginia ex rel. John Moss, III,
Petitioner Below, Petitioner

vs.) No. 061721

Thomas L. McBride, Warden, Mount Olive
Correctional Complex, Respondent Below,
Respondent

On a former day, to-wit, June 22, 2006, came the petitioner, John Moss, III, pro

se, and presented to the Court his petition praying for an appeal from a judgment of the

Circuit Court of Kanawha County, rendered on the 7th day of February, 2006, with the

record accompanying the petition.

Upon consideration whereof, the Court is of opinion to and doth hereby refuse

said petition for appeal.

DONE IN VACATION of the Supreme Court of Appeals, this 6th day of

December, 2006.

Honorable Robin Jean Davis, Chief Justice

Honorable Larry V. Starcher

Honorable Elliott E. Maynard

Honorable Joseph P. Albright,

Honorable Brent D. Benjamin

Received the foregoing order this 6th day of December, 2006, and entered the

same in Order Book No. 158.

A True Copy

Attest: _____

Clerk, Supreme Court of Appeals

STATE OF WEST VIRGINIA

At a Regular Term of the Supreme Court of Appeals continued and held at Charleston, Kanawha County, on the 27th of June, 2006, the following order was made and entered:

State of West Virginia ex rel. John Moss III, Petitioner
Below, Petitioner

vs.) No. 061721

Thomas L. McBride, Warden, Mount Olive Correctional
Complex, Respondent Below, Respondent

On a former day, to-wit, June 22, 2006, came the petitioner, John Moss III, pro se, and presented to the Court his motion in writing for leave to exceed the fifty-page limit set forth in Rule 3(c) of the Rules of Appellate Procedure, for the reasons stated therein, which being seen and inspected by the Court is hereby granted.

A True Copy

Attest: _____
Clerk, Supreme Court of Appeals

# WEST VIRGINIA SUPREME COURT
## OF APPEALS

To:        Kanawha County Circuit Clerk

Date:      December 11, 2006

           Ser John Moss, III

           vs.)  No. 061721

           Thomas L. McBride

Received of Rory L. Perry, II, Clerk, Supreme Court of Appeals of West

Virginia, a copy of the **Court's Order and Original Record** in the above-

styled action.  Dated at _____Charleston_____, West

Virginia, this the __18th__ day of ____January____, ~~2006.~~ 2007

_____Cathy S. Gatson / MB_____
                        Circuit Clerk

Please return to the West Virginia Supreme Court of Appeals, Clerk's
Office, State Capitol Complex, Building 1, Rm. E-317, Charleston,
WV 25305 Attn:  Angie Wilkinson. If you have any questions please
call 340-2326.

**FILE COPY**

DO NOT REMOVE
FROM FILE

061721

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

================================

STATE OF WEST VIRGINIA, EX REL
JOHN MOSS, III,

Appellant,

vs.

THOMAS L. McBRIDE, Warden
Mount Olive Correctional Complex,

Appellee.

================================



GRANT/REFUSE/ACCEPT/ Date: _____ 12-16-06  S-O
Recused/Not Participating _____
Chief Justice _____

PETITION ON APPEAL FROM A FINAL JUDGEMENT
OF THE KANAWHA COUNTY CIRCUIT COURT SUMMARILY
DENYING HABEAS RELIEF AND DISMISSING PETITION

Respectfully submitted:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV  25185
MOCC Telephone: 304.442.7213

On this, the 2nd day of June, 2006.

Petitioner proceeding *pro se*.



FILED

JUN 2 2 2006

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# INDEX

**ITEM**                                                                    **PAGE**

I.   KIND OF PROCEEDING AND NATURE OF THE RULING IN THE LOWER
     TRIBUNAL.                                                                  1

II.  STATEMENT OF THE FACTS OF THE CRIME AND CASE                              2

III. ASSIGNMENT OF ERROR(S) RELIED ON AND QUESTIONS PRESENTED                 10

   a.   THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED
        THE DUE PROCESS AND EQUAL PROTECTION PROVISIONS
        OF THE WEST VIRGINIA CONSTITUTION WHEN IT SUMMARILY
        REFUSED APPELLANT'S REQUEST FOR HABEAS CORPUS
        RELIEF AND DISMISSED HIS PETITION.

      1.   Did The Second Trial Court Have The Authority To Rule On
           The Merits Of Appellant's Motion To Suppress The Two 28
           October, 1980, "Confessions" For The Investigating Authorities'
           Failure To Promptly Present The Juvenile To A Neutral
           Judicial Officer And, If So, Did It Abuse Its Discretion For
           Failing To Do So?

      2.   Was This Court's Ruling In *Moss II*, That No Prompt
           Presentment Objections Were Preserved Before The Trial
           Court An Unreasonable Determination Of The Facts As
           Contained In The Record Herein Resulting In Manifest
           Injustice?

      3.   Did Appellant Receive Ineffective Assistance Of Trial And
           Appellate Counsel?

      4.   Did Appellant Receive A Full And Fair Opportunity To Present
           His Fourth Amendment Issues Before, During, Or After Trial
           Due To The Improper Tactics Of Fred S. Zain And The West
           Virginia State Police Troopers And Crime Laboratory?

      5.   Was Appellant's Sixth Amendment Right To A Fair And
           Impartial Jury Contravened When The State Knew, Or Should
           Have Known, Of The False Or Misleading Testimony And
           Evidence Presented By A State Witness?

      6.   Did The Second Trial Court Abuse Its Discretion When It
           Admitted Appellant's Blood Samples, "Confessions" And All
           Relevant Evidence Incident Thereto Into Evidence?

      7.   Was Appellant's Due Process Rights Violated By The
           Improper Comments Of The Prosecutor?

IV.  MANNER IN WHICH THE LOWER TRIBUNAL DECIDED
     APPELLANT'S CONTENTIONS                                                   10

# INDEX (cont.)

ITEM                                                                                                    PAGE

V.    POINTS AND AUTHORITIES RELIED UPON AND DISCUSSION OF LAW
      ON WHY APPELLANT'S PETITION FOR APPEAL SHOULD BE GRANTED.          11

      1.    Standard of Review                                                                      11

      2.    Discussion                                                                              11

      a.    THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED
            THE DUE PROCESS AND EQUAL PROTECTION PROVISIONS
            OF THE WEST VIRGINIA CONSTITUTION WHEN IT SUMMARILY
            REFUSED APPELLANT'S REQUEST FOR HABEAS CORPUS
            RELIEF AND DISMISSED HIS PETITION.                                             14

            1.    THE TRIAL COURT ABUSED ITS DISCRETION AND
                  COMMITTED REVERSIBLE ERROR IN RULING THAT THE
                  FIRST TWO CONFESSIONS WERE ADMISSIBLE UNDER
                  THE "LAW OF THE CASE" DOCTRINE.                                         14

            2.    THE FACTUAL DETERMINATION BY THE WEST VIRGINIA
                  SUPREME COURT OF APPEALS THAT NO PROMPT
                  PRESENTMENT OBJECTIONS WERE ENTERED ON THE
                  FIRST TWO ALLEGED CONFESSIONS IS CLEARLY
                  ERRONEOUS AND WORKS A MANIFEST INJUSTICE.                    22

            3.    APPELLANT WAS DEPRIVED OF THE SIXTH
                  AMENDMENT'S GUARANTEE OF THE EFFECTIVE
                  ASSISTANCE OF COUNSEL.                                                   27

            4.    APPELLANT DID NOT RECEIVE A FULL AND FAIR
                  HEARING ON HIS MOTION AND MEMORANDUM TO
                  SUPPRESS SAMPLES OF BLOOD, CONFESSION, AND
                  OTHER PHYSICAL EVIDENCE SEIZED DUE TO THE
                  IMPROPER TACTICS OF FRED S. ZAIN AND THE WEST
                  VIRGINIA STATE POLICE TROOPERS AND CRIME
                  LABORATORY.                                                              31

            5.    APPELLANT'S SIXTH AMENDMENT RIGHT TO A FAIR
                  AND IMPARTIAL JURY AND THE FOURTEENTH
                  AMENDMENT'S GUARANTEES OF DUE PROCESS WERE
                  CONTRAVENED WHEN THE STATE KNEW, OR SHOULD
                  HAVE KNOW, OF THE FALSE OR MISLEADING
                  TESTIMONY AND EVIDENCE PRESENTED BY A STATE
                  WITNESS.                                                                 33

# INDEX (cont.)

ITEM                                                                      PAGE

    6.    THE TRIAL COURT ABUSED ITS DISCRETION AND
        COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED
        APPELLANT'S BLOOD SAMPLES, CONFESSIONS AND
        ALL EVIDENCE INCIDENT THERETO INTO EVIDENCE,
        WHEN THE SAMPLES OF BLOOD WERE OBTAINED IN
        VIOLATION OF FEDERAL AND STATE CONSTITUTIONAL
        RIGHTS.                                                          34

    7.    IMPROPER CLOSING ARGUMENTS BY THE
        PROSECUTION DENIED APPELLANT A FAIR TRIAL.                        39

VI.  CONCLUSION                                                          42

VII.  PRAYER FOR RELIEF                                                  43

# LISTING OF AUTHORITIES

<u>CASE</u>

Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 74 L.Ed. 1314 (1935)

Call v. McKenzie, 220 S.E.2d 665 (W.Va. 1975)

Cardwell v. Taylor, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983)

Cooper v. Caperton, 196 W.Va. 208, 470 S.E.2d 162 (1995)

Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1975)

Daniel v. Legursky, 195 W.Va. 314, 320 S.E.2d 416 (1995)

DiPaola v. Riddle, 581 F.2d 1111 (4th Cir. 1978)

Doleman v. Muncy, 579 F.2d 1258 (4th Cir. 1978)

Duncan v. Louisiana, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968)

Durley v. Mayo, 351 U.S. 277, 100 L.Ed. 1178, 76 S.Ct. 806 (1956)

Earp v. Vanderpool, 160 W.Va. 113, 232 S.E.2d 513 (1976)

Ford v. Coiner, 156 W.Va. 362, 196 S.E.2d 91 (1972)

Gibson v. Dale, 173 W.Va. 681, 319 S.E.2d 806 (1984)

In The Matter of an Investigation of the W.Va. State Police Crime Lab., Serology Div., 190 W.Va. 321, 438 S.E.2d 501 (1993)

Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938)

Konchesky v. S.J. Groves & Sons Co. Inc., 148 W.Va. 411, 135 S.E.2d 299 (1964)

Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981)

McClure v. Trent, 202 W.Va. 338, 504 S.E.2d 165 (1998)

Mooney v. Holohan, 294 U.S. 103, 79 L.Ed. 791, 55 S.Ct. 340 (1935)

Nazelrod v. Hun, 199 W.Va. 582, 486 S.E.2d 322 (1997)

Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973)

Phares v. Brooks, 214 W.Va. 442, 590 S.E.2d 370 (2003)

Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)

# LISTING OF AUTHORITIES (cont.)

## CASE

Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966)

SER Frazier & Oxley L.C. v. Cummings, 591 S.E.2d 728 (2003)

SER Postelwaite v. Bechtold, 158 W.Va. 479, 212 S.E.2d 69 (1975)

SER Vernatter v. Warden, 207 W.Va. 11, 528 S.E.2d 207 (1999)

State v. Atkins, 163 W.Va. 502, 261 S.E.2d 55 (1979)

State v. Boyd, 233 S.E.2d 710 (W.Va. 1977)

State v. Bradford, 199 W.Va. 338, 484 S.E.2d 221 (1997)

State v. Bradshaw, 193 W.Va. 519, 457 S.E.2d 456 (1995)

State v. Critzer, 280 S.E.2d 288 (W.Va. 1981)

State v. Ellsworth, J.R., 331 S.E.2d 503 (1985)

State v. Green, 207 W.Va. 530, 534 S.E.2d 395 (2000)

State v. Humphrey, 351 S.E.2d 613 (1986)

State v. Noe, 230 S.E.2d 826 (W.Va. 1976)

State v. Nuckolls, 273 S.E.2d 87 (W.Va. 1980)

State v. Starcher, 282 S.E.2d 877 (W.Va. 1981)

State v. Taylor, 130 W.Va. 74, 42 S.E.2d 549 (1947)

State v. Walker, 207 W.Va. 415, 533 S.E.2d 48 (2000)

Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)

Tolley v. Carboline Co., 617 S.E.2d 508 (2005)

United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)

United States v. Weatherless, 734 F.2d 179 (4th Cir. 1984)

U.S. v. Matthews, 312 F.3d 652 (5th Cir. 2002)

Watson v. Hill, 200 W.Va. 201, 488 S.E.2d 476 (1997)

# LISTING OF AUTHORITIES (cont.)

## CASE

Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)

United States Constitution Fourth Amendment

United States Constitution Fifth Amendment

United States Constitution Sixth Amendment

United States Constitution Fourteenth Amendment
W.Va. Constitution Art. III, § 3

W.Va. Constitution Art. III, § 6

W.Va. Constitution Art. III, § 10

W.Va. Constitution Art. III, § 14

W.Va. Code § 49-5-8

W.Va. Code § 49-5-8(d)

W.Va. Code § 53-4A-1 et seq.

Rule 12, W.Va.R.Cr.P.

Rule 103 W.Va.R.C.P.

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

========================================

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Appellant,

vs.

THOMAS L. McBRIDE, Warden,
Mount Olive Correctional Complex,

Appellee.

========================================

---

PETITION ON APPEAL FROM A FINAL JUDGMENT
OF THE KANAWHA COUNTY CIRCUIT COURT SUMMARILY
DENYING HABEAS RELIEF AND DISMISSING PETITION

---

## I. KIND OF PROCEEDING AND NATURE OF
THE RULING IN THE LOWER TRIBUNAL

Comes now the petitioner, John Moss, III, *pro se*, (hereinafter ("Appellant") and petitions this Honorable Court, pursuant to *W.Va. Code* § 53-4A-9(a), for an appeal from the order entered on or about 7 February, 2006, by the Kanawha County Circuit Court, the Honorable Louis H. Bloom, summarily denying habeas relief and dismissing Appellant's *pro se* petition for writ of habeas corpus ad subjiciendum.

Appellant handed his petition under *W.Va. Code* § 53-4A-1, *et. seq.*, for a writ of habeas corpus and memorandum of law in support thereof, with exhibits, to prison officials for mailing on or about 29 June, 2005, and received and marked "Filed" in the clerk's office on or about 2 July, 2005. The petition and memorandum requested the court, *inter alia*, to issue an

order to Respondent to show cause why Appellant's conviction and three life sentences without mercy on three counts of first degree murder should not be set aside and ruled void as the same are in violation of the rights secured to Appellant through the Constitutions of the United States and the State of West Virginia and to thereafter issue an Order demanding the respondent warden to immediately release Appellant.

Appellant handed his *Motion to Enlarge The Time Within Which To File A Rule 59(e) Motion* to prison officials on or about 14 February, 2006. Petitioner desired to direct the court's attention, *inter alia*, to its mistake in entering the 7 February, 2006, order summarily denying habeas relief even though it failed to make specific findings of facts and conclusions of law on Appellant's contentions. The court, however, as is an exhibited pattern, refused to rule on Petitioner's *pro se* motion for an enlargement of time.

## II. STATEMENT OF THE FACTS OF THE CRIME AND CASE

Appellant adopts herein, by reference thereto, the facts as contained in the *Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum*, filed in the Kanawha County Circuit Court on or about 2 July, 2005, and assigned number 05-MISC-298.

This case has an extensive litigious history. It began when, in December, 1979, a woman and her two children were found dead in their St. Albans, West Virginia, home. Soon afterward, the deceased woman's husband, Paul Reggettz, III, became a suspect in the triple murders and confessed to the crimes. On or about 29 April, 1980, Paul Reggettz was indicted by the Kanawha County, West Virginia Grand Jury. The body of the indictment also named Appellant. The husband was held in custody for approximately eleven months, during which time his confession was ruled admissible into evidence as voluntarily given. Mr. Reggettz's trial was set for November 12, 1980.

Appellant became involved in the case when Appellant's uncle, who was in law enforcement at one time, offered his opinion that his nephew may know something about the crimes due to living in the neighborhood. As a result of the information offered by the uncle, in January, 1980, investigating authorities traveled to Cleveland, Ohio, to question Appellant about the murders. Appellant, at that time, was housed in a juvenile detention center on an unrelated charge. Appellant denied committing the murders or having any knowledge of them. However, the two law enforcement personnel demanded that Appellant provide them a blood sample, even though they had no warrant, no court order and had not discussed it with Appellant's parents or Ohio court appointed counsel. The troopers directed him to prick his own finger and dribble blood on a cloth provided by the officers for that purpose. Appellant complied and gave the Troopers what they demanded because he "had nothing to hide."

At the time of this first interrogation and relinquishment of physical evidence, Appellant was only seventeen years old, a fact the two troopers were not uncognizant of. When Appellant's Ohio counsel learned of the blood sample taken by the West Virginia authorities, he objected and petitioned an Ohio court for an order that the cloth on which the blood sample was deposited be returned to Appellant. The Ohio court granted counsel's request and ordered that the blood soaked cloth be returned. However, it was never returned to Appellant, a fact the government has neither refuted or denied. Nor did they demonstrate that, if something was returned, whether only part of it was returned, or what may have been on whatever was returned. No testing was conducted to determine if, whatever it was the two troopers avowed was returned, it was the same cloth containing Appellant's blood sample he relinquished, whether it was animal blood, ink, or some other substance resembling blood.

In an opinion written by this Court on an appeal taken pretrial by Appellant from a final order of the Circuit Court, Kanawha County, West Virginia, John Hey, Chief Judge, transferring the juvenile Appellant to adult jurisdiction, the Court stated that the blood soaked cloth was "apparently" [returned]; *In the Interest of John Moss, Jr.*, 295 S.E.2d 33, 36 (W.Va. 1982) (*Moss* I). However, it is unclear how the Court reached this conclusion as the record does not support it. There is no documentation of a chain of evidence on the illegally obtained blood sample nor evidence of any kind introduced that it was returned. (But, see the 19, 20, 21 & 22 September, 1983, Suppression Hearing Transcript, p. 286, wherein Appellant was questioned on direct examination what his Ohio attorney had told him:

Q.   Did he have to go to court concerning that blood?
A.   Yes. He said he was going to the courthouse about it.
Q.   And what was the result?
A.   He told me he got the blood stopped or something.
Q.   He got the blood samples back?
A.   Yeah.

(19, 20, 21 & 22 September, 1983, Transcript included with *Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum* as Petitioner's Exhibit #1. Hereinafter Hab.Exh. #1.)

Nevertheless, in spite of Appellant's assertions that the cloth was never returned to him and contrary to Appellant's wishes, counsel adopted this Court's postulation and failed to develop this erroneous fact in the lower proceedings. It is also noteworthy here that Judge Hey, who presided over the juvenile transfer proceedings and first trial was forced to resign his position in disgrace when it was demonstrated he was routinely inebriated on the bench.

In April 1980, the investigating authorities, including the Kanawha County Assistant Prosecuting Attorney, Charles Pettry, again traveled to Cleveland to obtain a blood sample from Appellant pursuant to an order issued by an Ohio court. Based on the alleged blood sample analysis by West Virginia State Police Crime Laboratory Serologist, Fred Salem Zain,

on 26 September, 1980, West Virginia filed a detainer against Appellant, pursuant to *W.Va. Code* § 62-14-1 *et seq.*, requesting that a juvenile be held, based on a malicious wounding charge unrelated to the murders.

On 28 October, 1980, ostensibly while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, although they were the chief investigating officers in the Reggettz murders, a "confession" was obtained from the young suspect. On that same date, a tape recorded statement was then made after a foray to the Parkersburg detachment of the W.Va. State Police for the sole purpose of obtaining that recorded statement. (First and second "confessions.") However, though Appellant signed a waiver of rights form at that time, Appellant was not brought before a juvenile referee, magistrate or judicial officer to have the waiver explained to him. It is interesting to note that the adult suspect, Paul Reggettz, III, **was** promptly presented to a magistrate by the same troopers who traveled to Ohio to illegally extract Appellant's blood, and/or the same troopers who, again, on 28 October, 1980, traveled to Ohio wherein they obtained Appellant's "confessions." This is an indication that the actions by the West Virginia authorities were intentionally designed to intimidate and coerce the juvenile, a fact this Court was not uncognizant of.

On 30 October, 1980, Appellant was returned to Ohio by two different members of the West Virginia State Police, Troopers Woodyard and Allen. These two troopers also asserted Appellant just all of a sudden wished to discuss further details of the crime which he had not previously told authorities. (Third "confession".) It is clear from the evidence presented in this case that seldom, if ever, are investigations afforded such a reflective and considerate suspect as the four troopers encountered with Appellant. Perhaps it was the two scenic car rides the four troopers so graciously presented Appellant with that induced him to make their jobs so easy as to voluntarily provide them with so much vital information. It has always been a subject of contemplation why it was only during these car rides did any authority allege Appellant wished to "confess." For example, of all the authorities Appellant came into contact with; his Ohio attorney, the Ohio juvenile facility staff, Kanawha County Jail personnel, etc., he chose to confess only to the troopers who transported him. Perhaps it was the solitary surroundings the young suspect encountered with the burly troopers.

Be that as it may, on 2 November, 1980, a second detainer was filed by West Virginia against Appellant, again requesting that a juvenile be held, based on a charge of three counts of first degree murder. On 18 December, 1980, Appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for 24 December, 1980, but as a result of motions for continuances made by the defense, the hearing was not held until 12 January, 1981, at which time probable cause was found by the

- 4 -

juvenile referee who then referred Appellant to the juvenile jurisdiction of the Circuit Court.

On 20 January, 1981, West Virginia filed a motion to have Appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. Continuances were granted on defense's several motions to allow for psychological and psychiatric evaluation, etc., and a transfer hearing was held on 29 June, 1981. After protracted litigation, at a 6 August, 1981 hearing, the court issued from the bench its decision to transfer Appellant to adult status. On 13 August, 1981, West Virginia presented its case against Appellant to the grand jury, which returned an indictment charging him with three counts of murder in the first degree.

After another prolonged period of time within which issues pertaining to the state's transfer proceedings were litigated, (see, In The Interest Of Moss, 170 W.Va. 543, 295 S.E.2d 33 (1982), Moss I) another indictment was returned, on or about 30 September, 1982, again charging Appellant with three counts of first degree murder.

Prior to trial, defense counsel filed a Motion To Suppress, objecting to, inter alia, entering Appellant's two alleged confessions of 28 October, 1983, into the trial and a hearing was held on Appellant's motion. At the close of the hearing the court ordered that the parties could submit memorandums of law on the issues as brought through the hearing. The third "confession" was not a subject of the motion and memorandum at the hearing because the state had not informed anyone of its intent to use that "confession" at trial until the trial was underway.

Trial commenced on 21 February, 1984, by the court disposing of the state's pretrial motion asking the court to order the young defendant be restrained, by reading the indictment into the record, and the beginning of jury voir dire. On or about 26 April, 1984, Appellant was convicted of three counts of first degree murder without a recommendation of mercy.

After considering and denying defense post trial motions, a petition for appeal was filed on Appellant's behalf. In State v. Moss, 180 W.Va. 363, 376 S.E.2d 569 (1988), (Moss II) this Court reversed Appellant's convictions because; (1) [T]he trial judge committed reversible error when he refused to poll the jurors; (2) [M]anifest injustice resulted from the prosecutor's remarks; and, (3) [T]he introduction of the husband's polygraph test results was so prejudicial that the trial court's instruction not to consider such evidence was insufficient to cure the error.

Though not adjudicative of the decision to reverse Appellant's first convictions, this Court nonetheless wrote on the issue on appeal of the West Virginia authorities' failure to promptly present the juvenile defendant to a neutral judicial officer upon being taken into custody. The Court ruled that had objections been made on the first two "confessions" the decision in Ellsworth J.R., 331 S.E.2d 503 (W.Va. 1985) would have been retroactively applied and they, like the third, would have been inadmissible.

After various pretrial proceedings, including a hearing on defense counsel's motion for the suppression of Appellant's alleged confessions on the basis of authorities' failure to promptly present Appellant–who at the time was under juvenile jurisdiction–to a neutral judicial officer, on 26 April, 1990, Appellant was again convicted of three counts of first degree murder without a recommendation of mercy. Appellant's counsel then filed, on 14 January, 1991, a petition for appeal, and Appellant, *pro se*, filed, on 23 February, 1991, a supplemental petition for appeal. This Court, however, refused to review the petitions without comment.

On or about 18 August, 1994, Appellant then filed a ("Special Zain") Petition For Writ of Habeas Corpus in the Kanawha County Circuit Court, pursuant to this Court's prophylactic remedy for persons convicted in cases involving the false and/or misleading testimony or evidence presented by Fred S. Zain. After protracted proceedings, the circuit court denied Appellant's prayer for relief and dismissed the petition. Appellant appealed that denial and, in a written *per curiam* opinion, *Moss v. Trent*, 603 S.E.2d 656 (2004), 2004 W.Va. Lexis 121, No. 31646, July 1, 2004, (*Moss III*), this Court upheld the circuit court's denial. Appellant then timely filed his *Petition For Rehearing*, which was also refused.

Appellant thereafter filed his petition for writ of *certiorari* in the United States Supreme Court. By Order entered 24 January, 2005, the Court refused *cert*. On or about 2 July, 2005, Appellant's *Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1*, for his remaining contentions of the constitutional and procedural violations which result in Appellant's continued unlawful incarceration, was filed.

For convenience, the essential chronology of events follow:

1. December 13, 1979 – Paul Reggettz, III, allegedly returned home and found his wife, Vanessa Reggettz (26 years old), son Paul Eric Reggettz (7 years old), and daughter Bernadette Lynn Reggettz (4 years old), all dead. (Second Trial, Tr. 397). After several hours of questioning, Reggettz confessed, in detail, that he had murdered his family. (Second Trial, Tr. 599-611, 684-90, 699-712). At Appellant's second trial, Reggettz admitted that he had said that he wished his wife were dead and further admitted saying that he "wished he [Paul Eric Reggettz] had never been born." (Second Trial, Tr. 742).

2. December 13, 1979 -- Zain was dispatched to the Reggettz home where he took samples of the many blood stains and spatters at the scene for serological testing.

3. December 14, 1979 -- Reggettz returned to the scene of the crime, with law enforcement officers, and demonstrated how he had plunged the scissors in his wife's chest. Reggettz went over to where she had been tied up to the door and said he got the scissors and kind of bent down and pushed them in her chest. Reggettz testified that in his confession, he told the police that he drowned his son because his son liked swimming, and he hanged his daughter with the electrical cord draped over a door, because she liked swinging. (Second Trial, Tr. 611, 758).

-6-

4.     January 30, 1980 -- Trooper Michael Don Smith went to the juvenile detention center in Cleveland, Ohio, to meet with Appellant and to obtain a blood sample. Trooper Smith asked Appellant to prick his finger and bleed onto a cloth, which Trooper Smith kept. (Second Trial, Tr. 912; 9/25/82 Second Juvenile Transfer Hearing, Tr. 195-96). It is not clear in any of the records or transcripts what happened to this blood sample that was obtained illegally. As this Court noted in *In the Interest of John Moss, Jr.*, 170 W.Va. at 545, 295 S.E.2d at 36: "When the appellant's counsel learned of the blood sample, taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. **This apparently was done.**" (emphasis added). Appellant denies that this illegally obtained blood sample was ever returned to him or his counsel. Further, Appellant alleges the illegally obtained blood is the sole means by which Zain typed Appellant's blood type with the blood type "discovered" at the crime scene. A fact the government has neither refuted nor denied.

5.     April 22, 1980 -- Trooper Williams went to Cleveland, Ohio, pursuant to an Ohio court order to obtain another blood sample from Appellant. (Second Trial, Tr. 505). Allegedly, later that same day, Trooper Zain received Appellant's blood sample from Trooper Williams. (Second Trial, Tr. 1110). Appellant, however, asserts Zain already had a sample of his blood, via the illegally obtained sample and the only way West Virginia's serology lab was able to even type Appellant's blood samples allegedly gathered at the crime scene was through the blood soaked cloth.

6.     April 24, 1980 -- Reggettz, who was jailed soon after he confessed to the murders, was indicted by a grand jury in Kanawha County for these murders. (9/19, 20, 21 & 22/83 Suppression Hearing, Tr. 169). Appellant's name is also included in this indictment.

7.     June 10, 1980 -- Date of report containing results of blood types obtained from the three victims, Reggettz, Appellant, and various blood stains found at the crime scene.

8.     October 24, 1980 -- State files *Memorandum Of Law On Behalf Of The State Of West Virginia In Opposition To Defendant's Motion To Suppress*, in Paul Reggettz's case. In the motion, the state asserts, "In the early morning hours of December 14, 1979, Paul Reggettz contradicted his earlier denials and confessed, **in detail**, to Trooper Woodyard that he had, in fact, committed the murders. This was done in the presence of Trooper Woodyard alone. It should be noted that before such confession Reggettz had executed two (2) Waiver of Rights forms, which had been admitted into evidence and which Trooper Woodyard testified were read to and apparently understood by Reggettz. Subsequently, Reggettz returned to his home and again explained **in detail** that he had committed the murders and the manner and sequence of his actions. This confession was given in the presence of Troopers Woodyard, McGowan and Williams, and James E. Roark, Prosecuting Attorney for Kanawha County." (Respondent's Brief, p. 2). "Defendant's contention that his confession was involuntarily and unintelligently given flies in the face of reason, considering the detailed nature of the confession and in considering that the crime itself was reenacted by the accused." (Respondent's Brief, p. 9).

9.     October 28, 1980 -- After considering the briefs, testimony, and arguments, Judge John Hey found that Reggettz's confessions were admissible and concluded, "Given a totality of the circumstances of this case, which involved three counts of murder in the first degree, the Court finds that the confession was made knowingly, intelligently, voluntarily, and that the State, by a preponderance of the evidence, has sustained its burden of proof." (Reggettz October 28, 1980, Tr. 35-36).

10.   October 28, 1980 -- Troopers Williams and Smith went to Mansfield, Ohio, to bring Appellant back to Charleston. (Second Trial, Tr. 506). As noted by the West Virginia Supreme Court in *In the Interest of John Moss Jr.*, *Id.* at 36-37, the purpose of this trip was to return Appellant to West Virginia to answer an unrelated malicious wounding charge. During this trip, Appellant allegedly confessed to these murders. (Second Trial, Tr. 505-78). In the suppression hearing held before the first trial, Appellant testified that he confessed to these crimes only after being subjected to repeated physical abuse by Trooper Smith, who crawled into the back seat beside Appellant while both of Appellant's hands were handcuffed to the headrest. (September, 1983, First Trial Pretrial Suppression Hearing, Tr. 303-05). Trooper Williams and Trooper Smith confirmed the fact that Appellant was handcuffed to the front seat headrest and that Trooper Smith did crawl into the back seat with Appellant to begin the questioning. (Second Trial, Tr. 509-937). Even though Trooper Williams and Trooper Smith denied the beating allegations, both admitted that Appellant's "willingness" to discuss the Reggettz murders was triggered when Trooper Smith said to Appellant, "Why do you think we got your blood?" (Second Trial, Tr. 511-14, 944-45). These essential facts were noted by this Court in *State v. Moss*, 180 W.Va. at 372-73, 376 S.E.2d at 578-79.

11.   February 27, 1981 -- Judge John Hey entered an order granting the State's motion to *nolle prosequi* the charges against Reggettz.

12.   September 30, 1982 -- Indictment returned by the Kanawha County Grand Jury charging Appellant with three counts of first degree murder.

13.   September 19, 20, 21, & 22, 1983 -- Hearing on Appellant's motion to suppress evidence. The court ruled briefs be filed at a later date and the court will make its ruling thereafter.

14.   October 3, 1983 -- Appellant's memorandum of law in support of [Appellant's] motion to suppress samples of blood, *confessions* and other physical evidence seized from John Moss by employees of West Virginia filed. (Copy included with *Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum* as Petitioner's Exhibit #2. Hereinafter Hab.Exh. #2.)

15.   December 30, 1983 -- State's Memorandum In Opposition To Defendant's Motion To Suppress filed.

16.   April 26, 1984 -- Appellant was convicted by a jury in the Circuit Court of Kanawha County of three counts of first degree murder, without a recommendation of mercy.

17.   December 19, 1988 -- In *State v. Moss*, this Court reversed Appellant's convictions and remanded for a new trial.

18.   February 20, 1990 -- Appellant's Motion to Suppress Evidence filed prior to second trial.

19.   March 19, 1990 -- Suppression hearing held on Appellant's motion to suppress the two 28 October, 1980, alleged confessions.

20.   March 26, 1990 -- Appellant's memorandum of law in support of motion to suppress evidence filed.

21.   April 26, 1990 -- A jury in the Circuit Court of Kanawha County convicted Appellant of three counts of first degree murder without a recommendation of mercy.

-8-

22.   January 14 & February 23, 1991 -- Appellant appealed second conviction.  On March 12, 1991, this Court, with a 3 to 2 vote, refused to review the petition.

23.   August 18, 1994 -- Appellant's Petition for Writ of Habeas Corpus was filed raising the "Special Zain" issues.

24.   June 10, 1999 -- This Court reopens the investigation into the West Virginia Crime Lab.

25.   January 30, 2003 -- After protracted and arduous proceedings, Judge Bloom's Final Order Denying "Zain" Habeas Relief.

26.   May 30, 2003 -- Petition For Collateral Appeal filed.

27.   December 4, 2003 -- This Court voted 4 to 1 to hear Appellant's Appeal.

28.   December 30, 2003 -- Appellant's Collateral Appeal Brief.

29.   March 30, 2004 --  Appellee's Brief Filed.

30.   April 28, 2004 -- Appellant's Reply Brief.

31.   June 8, 2004 -- Oral arguments before this Court.

32.   July 1, 2004 -- This Court delivered *per curiam* opinion affirming Judge Bloom's ruling.

33.   August 2, 2004 -- Appellant's Petition For Rehearing Filed, which was refused.

34.   September 9, 2004 -- This Court's final mandate Order affirming Judge Bloom's 30 January, 2003, Order denying "Zain" habeas relef.

35.   December 6, 2004 -- Appellant's Petition For Writ of Certiorari filed in the United States Supreme Court.

36.   January 24, 2005 -- United States Supreme Court Order denying cert.

37.   July 2, 2005 -- Appellant's *pro se* petition for writ of habeas corpus and memorandum filed.

38.   February 7, 2006 -- Judge Bloom's Order summarily denying and dismissing habeas.

### III. ASSIGNMENT OF ERROR(S) RELIED ON AND QUESTIONS PRESENTED

a.   THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED THE DUE PROCESS AND EQUAL PROTECTION PROVISIONS OF THE WEST VIRGINIA CONSTITUTION WHEN IT SUMMARILY REFUSED APPELLANT'S REQUEST FOR HABEAS CORPUS RELIEF AND DISMISSED HIS PETITION.

1.   Did The Second Trial Court Have The Authority To Rule On The Merits Of Appellant's Motion To Suppress The Two 28 October, 1980, "Confessions" For The Investigating Authorities' Failure To Promptly Present The Juvenile To A Neutral Judicial Officer And, If So, Did It Abuse Its Discretion For Failing To Do So?

2.   Was This Court's Ruling In *Moss II*, That No Prompt Presentment Objections Were Preserved Before The Trial Court, An Unreasonable Determination Of The Facts As Contained In The Record Herein Resulting In Manifest Injustice?

3.   Did Appellant Receive Ineffective Assistance Of Trial And Appellate Counsel?

4.   Did Appellant Receive A Full And Fair Opportunity To Present His Fourth Amendment Issues Before, During, Or After Trial Due To The Improper Tactics Of Fred S. Zain And The West Virginia State Police Troopers And Crime Laboratory?

5.   Was Appellant's Sixth Amendment Right To A Fair And Impartial Jury And Fourteenth Amendment's Guarantee To Due Process Contravened When The State Knew, Or Should Have Known, Of The False Or Misleading Testimony And Evidence Presented By A State Witness?

6.   Did TheSecond Trial Court Abuse Its Discretion When It Admitted Appellant's Blood Samples, Confessions And All Relevant Evidence Incident Thereto Into Evidence?

7.   Was Appellant's Due Process Rights Violated By The Improper Comments Of The Prosecutor?

### IV. MANNER IN WHICH THE LOWER TRIBUNAL DECIDED PETITIONER'S CONTENTIONS.

The Kanawha County Circuit Court, the Honorable Louis H. Bloom, (hereinafter the "court" or "habeas court") summarily denied and dismissed Appellant's petition for a writ of habeas corpus. *See* 7 February, 2006, *Final Order Denying Habeas Relief,* at page 1. (Hereinafter "Order" at ___.) The habeas court, however, abused its discretion when it, *inter alia,* summarily refused and dismissed the petition without appointing counsel and without conducting an omnibus habeas corpus hearing.

The court's Order summarily denied habeas relief and was void of adequate findings of facts and conclusions of law on Appellant's contentions. The court failed to address virtually all of Appellant's contentions, including that of the trial court's abuse of discretion at

-10-

both trials, as well as ineffective assistance of counsel in Kanawha County Circuit Court, number CR-82-F-221, by not making findings on the underlying facts Appellant's claims were predicated on. It also contained erroneous factual determinations leading to erroneous legal conclusions, i.e., [T]he contentions and grounds advanced have been previously and finally adjudicated or waived. (Order, *passim*.) Appellant herein did not knowingly and intelligently waive any of the issues presented in his habeas petition, nor have they been previously finally adjudicated.

V.     POINTS AND AUTHORITIES RELIED UPON AND DISCUSSION OF LAW ON WHY APPELLANT'S PETITION FOR APPEAL SHOULD BE GRANTED.

(*See* "Table of Authorities," *supra*, at page v, for a listing of the cases and authorities relied on.)

### 1.    Standard of Review

In *State v. Green*, 207 W.Va. 530, 534, 534 S.E.2d 395, 399 (2000), this Court set out the standard of review when a party appeals the denial of post-conviction habeas corpus relief as follows:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Also, in *SER Frazier & Oxley L.C. v. Cummings*, 591 S.E.2d 728 (2003), this Court stated:

> "Like the determination of other legal documents, such as constitutions, statutes and procedural rules, we believe that the interpretation of one of our mandates, and the corresponding question of whether the circuit court complied with the mandate, are questions of law that should be reviewed *de novo*.

### 2.    Discussion

In West Virginia, there is a rebuttable presumption petitioners in habeas corpus proceedings knowingly and intelligently waive issues and/or contentions in prior proceedings. *Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972); *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981); *Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984). "Waiver is deemed to occur 'when the petitioner could have advanced, but intelligently and knowingly failed to advance,' a contention or ground for relief in a prior proceeding, and the failure to

- 11 -

assert available claims at such time gives rise to a rebuttable presumption of a knowing and intelligent waiver of such claims." *Gibson v. Dale*, 319 S.E.2d at 810 (quoting *W.Va. Code* § 53-4A-1(c)(A) (1967)). *W.Va. Code* § 53-4A-1(c) contemplates a knowing and intelligent waiver, in the vein of a waiver of a constitutional right, which cannot be presumed from a silent record. Before the failure to advance contentions in a habeas corpus proceeding will bar their consideration in subsequent applications for habeas corpus relief, *the record must conclusively demonstrate* that the petitioner voluntarily refrained from asserting known grounds for relief in the prior proceeding. *Gibson v. Dale, supra* at 811 (emphasis added).

In *Losh v. McKenzie*, 277 S.E.2d 606, this Court concluded that the statutory waiver provisions may be applied only after an omnibus hearing is conducted. *Id.* at 610. An omnibus habeas corpus hearing as contemplated in *W.Va. Code* § 53-4A-1, *et seq.*, occurs when (1) an applicant for habeas corpus is represented by counsel or appears *pro se* having knowingly and intelligently waived his right to counsel; (2) *the trial court inquires into all the standard grounds for habeas corpus relief*; (3) a knowing and intelligent waiver of those grounds not asserted is made by the applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; and, (4) the trial court drafts a comprehensive order including findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding. *Id.* at 607-08. (Emphasis added.) A knowing and intelligent waiver of a constitutional right can only occur on record, *Call v. McKenzie*, 220 S.E.2d 665 (W.Va. 1975); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938).

An omnibus habeas corpus hearing was previously held in this case before the Honorable Andrew McQueen on or about 19 September, 1995. Judge McQueen, however, did not make an inquiry on the record at the omnibus hearing whether Appellant had been advised on issues of waiver or whether he and counsel were raising each and every contention known to them. Judge McQueen subsequently retired from the bench. Evidentiary hearings were thereafter held in the "Special Zain" proceedings, Kanawha County Case No. 94-MISC-663, before the Honorable Duke Bloom. Neither did Judge Bloom, however, make the necessary inquiry whether Appellant and his counsel raised every potential ground for collateral attack or whether he had been advised on issues of waiver.

Additionally, no *Losh* checklist of grounds was submitted. Appellant was never advised or counseled on issues of waiver, either at the trial, appellate or habeas level. This Court refused Appellant's petition on appeal resulting from the second trial without comment and is not a determination on the merits thereof. Therefore, Appellant has not knowingly and intelligently waived any of the issues raised in the instant habeas petition and memorandum.

-12-

The underlying issues raised herein are separate and distinct from the contentions presented in the "Special Zain" habeas. This Court has ruled any issues not presented in a "Special Zain" habeas should be filed in a new petition for writ of habeas corpus. *SER McClure v. Trent*, 202 W.Va. 338, 342, 504 S.E.2d 165, 169 (1998). An independent review of the contentions and/or grounds in fact and law presented in Appellant's petition was thus required, as well as detailed findings of facts and conclusions of law on the separate merits of those claims.

The prophylactic remedy this Court levied as being proper for a "Special Zain" habeas proceeding was for the court to determine whether, absent the improper evidence and/or testimony presented by Zain or any work product which Zain was involved in, there was sufficient other evidence so that the Zain evidence did not effect the outcome of the trial and, if not, then a new trial, absent the Zain evidence, would be awarded. In compliance with this Court's directives, therefore, Appellant's retained counsel, Lonnie C. Simmons, Esq., raised only the issue(s) related to Zain's improper body of evidence in the prior habeas proceeding. A fact the habeas court correctly identified, *i.e.*; "The grounds raised in that ["Special Zain"] habeas matter were the following:

(1)    The admission of Trooper Fred Zain's testimony and test results violated Mr. Moss's Constitutional rights;

(2)    The State presented incorrect, false, misleading, overstated, and unscientific evidence; and

(3)    The admission of Mr. Moss's confessions violated his Constitutional rights.

(Order at 4.)

The separate and distinct contentions and grounds in fact and law presented in Appellant's subsequent petition for habeas corpus relief are as follows:

a.    THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RULING THAT THE FIRST TWO CONFESSIONS WERE ADMISSIBLE UNDER THE "LAW OF THE CASE DOCTRINE."

b.    THE FACTUAL DETERMINATION BY THE WEST VIRGINIA SUPREME COURT OF APPEALS THAT NO PROMPT PRESENTMENT OBJECTIONS WERE ENTERED ON THE FIRST TWO ALLEGED CONFESSIONS IS CLEARLY ERRONEOUS AND WORKS A MANIFEST INJUSTICE.

c.    PETITIONER WAS DEPRIVED OF THE SIXTH AMENDMENT'S GUARANTEE OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

- 13 -

(1).   Counsel Failed To Bring To The Trial And Appellate Court's
Attention The Fact That The Two October 28, 1980,
Confessions Were The Subject Of An Extensive Motion And
Memorandum, Hearing, And Testimony And Was, In Fact,
Objected To By Counsel Prior To The First Trial, Based On,
*Inter Alia, W.Va. Code* § 49-5-8(d).

(2).   If Trial Counsel, At The First Trial, Failed To Object To The
West Virginia Authorities' Failure To Promptly Present The
Juvenile Defendant To A Neutral Judicial Officer Prior To
Taking Petitioner's Alleged Confessions.

d.   PETITIONER DID NOT RECEIVE A FULL AND FAIR HEARING ON
HIS MOTION AND MEMORANDUM TO SUPPRESS SAMPLES OF
BLOOD, CONFESSION, AND OTHER PHYSICAL EVIDENCE
SEIZED DUE TO THE IMPROPER TACTICS OF FRED S. ZAIN
AND THE WEST VIRGINIA STATE POLICE TROOPERS AND
CRIME LABORATORY.

e.   PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR AND
IMPARTIAL JURY WAS CONTRAVENED WHEN THE STATE
KNEW, OR SHOULD HAVE KNOWN, OF THE FALSE OR
MISLEADING TESTIMONY AND EVIDENCE PRESENTED BY A
STATE WITNESS.

f.   THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED
REVERSIBLE ERROR WHEN IT ADMITTED PETITIONER'S
BLOOD SAMPLES, CONFESSIONS AND ALL EVIDENCE
INCIDENT THERETO INTO EVIDENCE, WHEN THE SAMPLES OF
BLOOD WERE OBTAINED IN VIOLATION OF FEDERAL AND
STATE CONSTITUTIONAL RIGHTS.

g.   IMPROPER CLOSING ARGUMENTS BY THE PROSECUTION
DENIED THE PETITIONER A FAIR TRIAL.

Appellant asserts herein, for the purposes of this petition on appeal, abuse of the trial
court in summarily denying and dismissing Appellant's petition for writ of habeas corpus, but
desires contentions a. & b., raised in the petition and memorandum, be considered in concert
herein. However, Appellant endeavors to address the lower court's erroneous Order
summarily refusing and dismissing Appellant's contentions below, *in seriatim*.

Appellant's first contention in the present petition for habeas corpus relief was:

1.   THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED
REVERSIBLE ERROR IN RULING THAT THE FIRST TWO
CONFESSIONS WERE ADMISSIBLE UNDER THE "LAW OF THE
CASE DOCTRINE."

Similarly, the habeas court here abused *its* discretion in ruling: "The Court finds as
fact that the first ground raised by Mr. Moss relates to the trial court's admission of his
confessions, which has been throughly [sic] litigated and previously considered, on the merits

- 14 -

of such claim, by this Court and the Supreme Court, on at least two occasions." (Order at 6.) The court engaged in a cursory review of the merits of Appellant's contention, and erroneously ruled that the issue had previously and fully been litigated.

Appellant submits that this specific contention (see Appellant's *Memorandum*, pp. 10-17) has not previously been before any tribunal. The lower court's factual determination to the contrary is clearly erroneous. Though, as the court states, issues *related* to this contention have been the subject of prior litigation, Appellant did not knowingly and intelligently waive this specific contention in any prior proceeding. Appellant did not waive this issue in the prior "Special Zain" habeas because; 1) the prior proceeding was merely a "Special Zain" habeas and, due to the rulings of this Court, other contentions not raised therein should be filed in a new petition for habeas corpus relief; 2) Appellant was not advised of the merits of such a claim or on issues of waiver on this or any other available contention in any prior proceeding. Finally, this Court refused Appellant's petition on appeal of the second trial without ruling on the merits thereof.

In addition, Appellant presented the habeas court with new or different evidence than what was presented in the "Special Zain" habeas proceeding relating to this contention, *i.e.*, a copy of the September 19, 20, 21 & 22, 1983, Suppression Hearing Transcripts, and the 3 October, 1983, *Memorandum In Support Of Defendant's Motion To Suppress*..., filed in support of the evidence and testimony presented at the hearing to suppress. (Hab.Exh. #1.) The transcript and memorandum were relevant in that they called into serious question the factual predicate upon which the second trial court had relied in deciding it could not rule on Appellant's motion to suppress the "confessions" and other evidence based on the "law of the case" doctrine. Both the exhibits affirmatively demonstrate that objections *were* made on all three confessions! For some inexplicable reason the suppression hearing transcript and Memorandum were not designated as part of the record brought before this Court on appeal from the first trial, *Moss II, State v. Moss*, 376 S.E.2d 569, (*See* 30 August, 1985, Receipt signed by the clerk of this Court. Attached hereto as Appellant's Exhibit 1. Hereinafter App.Exh #1.) The only transcripts that receipt indicates were received in the Court for appeal were the eighteen (18) volumes containing proceedings commenced from the first day of jury *voir dire*, 21 February, 1984. Confusingly, however, in the opinion of *Moss II*, this Court twice commented on the testimony adduced at the September, 19, 20, 21 & 22, 1983, suppression hearings; once in the body of the opinion and once in Footnote 11.

> "Upon consideration of the relevant testimony *adduced at the suppression hearings*, we conclude that, under the totality of the circumstances, there was sufficient evidence to support the trial court's determination that the three confessions now in question were voluntarily made after knowing and intelligent waivers by the appellant of his constitutional rights." Id. at 579. (Emphasis added.)

- 15 -

"The trial court held two *in camera* suppression hearings." Id. at n. 11.

Obviously, then, a copy of the pretrial suppression hearings transcript was before the Court. It is unclear to Appellant whether this Court decided the issue on a reproduction or on the original record in this matter, or on just a portion of the 19, 20, 21, & 22 September, 1983, suppression hearing transcript as agreed to by counsel, or what. It is a matter of great consternation why, if the Court had before them on appeal the entire transcript and motion to suppress and memorandum in support thereof, as well as the trial court's 30 December, 1983, letter ruling, on Appellant's motion to suppress, the Court didn't consider, under a totality of the circumstances contained in the supression hearing transcript (Hab.Exh. #1) that objections **were** made to the two 28 October, 1980, "confessions" for failing to bring Appellant before a neutral judicial officer, *see infra.* If this Court had made a different, correct, factual finding, there is no doubt that the rulings would have been different and all three confessions would have been excluded from Appellant's second trial.

However, the germane issue to Appellant's contention of abuse of the second trial court's discretion is contained in Appellant's Memorandum, (pp. 10-17) *i.e.*, whether the second trial court had the authority to rule, after the 19 March, 1990, hearing on Appellant's 20 February, 1990, *Motion To Suppress Evidence*, that the first two confessions were inadmissible for failing to promptly present the juvenile suspect to a neutral judicial officer, and whether it abused its inherent powers for not engaging in the necessary inquiry. Following the rule supported by the weight of authority, that answer is "yes."

Here, the habeas court failed to articulate any findings on the compelling evidence presented in Appellant's two exhibits (Hab.Exh. #1 & #2). The court also failed to engage in a detailed discussion of the authorities presented by Appellant, or to set forth any authority of its own to support the court's position.

This Court ruled, in *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973), that: "A court having jurisdiction over habeas corpus proceedings may deny a petition for writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syllabus Point 1, Id. Though the habeas court identified a correct legal premise, it nonetheless improperly applied it to the facts of Appellant's case. Appellant is still entitled to an order which contains specific findings of facts and conclusions of law on his contentions including commenting on the new evidence not previously presented in the "Special Zain" habeas that Appellant submitted with his habeas petition (Hab.Exh. #1 & #2). The habeas court, however, did not even acknowledge such compelling documents. The court did not substantially comply with the statute's requirement to examine "...the petition, affidavits, *exhibits*, records and other documentary evidence

- 16 -

attached [to the petition]... ," (emphasis added; *W.Va. Code* § 53-4A-1, *et seq.*; *Perdue v. Coiner, supra*) and to thereafter "...make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in *fact* or law) advanced...clearly state the grounds upon which the matter was determined, and...state whether a federal and/or state right was presented and decided." (*W.Va. Code* § 53-4A-7(c). Emphasis added.) The habeas court abused its discretion for failing to independently review Appellant's contention that the second trial court abused its discretion. The second trial court abused its discretion by finding it was precluded, by the law of the case doctrine, from ruling on Appellant's 20 February, 1990, motion, and 26 March, 1990, memorandum to suppress the two 28 October, 1980 "confessions" for authorities' failure to promptly present the juvenile suspect before a neutral judicial officer when the second trial court failed to engage in the necessary legal analysis.

Specifically, the habeas court's finding of fact, on page 7, ¶18, of the 7 February, 2006, Order, which includes its conclusion of law on the issue, states "The Court finds as fact that the second ground raised in Mr. Moss's Petition[1] relates to findings or conclusions made by the Supreme Court of Appeals of West Virginia, which are not subject to review by this Court." The court's conclusion, however, is contrary to clearly established precedent as found by this Court.

The law of the case doctrine—expressing courts' general practice of refusing to reopen an issue that had been decided in the case at hand—cannot pose an insurmountable obstacle for the second trial court reaching a conclusion that it could properly rule on Appellant's motion and memorandum where, even if it were assumed that the doctrine applied in the case at hand, the doctrine (i) simply expresses common judicial practice rather than limiting the court's power, and (ii) cannot prohibit a trial court from disregarding an earlier holding in an appropriate case such as the case at hand.

In *Tolley v. Carboline Co.*, 617 S.E.2d 508 (2005), this Court indicated that the law of the case doctrine generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal. *Quoting State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W.Va. 802, 591 S.E.2d 728 (2003).

---

1.　　　　Petitioner's second contention is: "The factual determination by the West Virginia Supreme Court of Appeals that no prompt presentment objections were entered on the first two alleged confessions is clearly erroneous and works a manifest injustice."

'The doctrine is a salutary rule of policy and practice, grounded in important considerations related to stability in the decision making process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy.' *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991).

Id. at ___.

This Court has also recognized, in footnote four of *Phares v. Brooks*, 214 W.Va. 442, 447, 590 S.E.2d 370, 375 (2003), that there are narrowly configured exceptions to the law of the case doctrine which would allow a lower court to depart from a mandate of this Court. These exceptions, as set forth in *U.S. v. Matthews*, 312 F.3d 652 (5th Cir. 2002), are:  (1) "The evidence at a subsequent trial is substantially different;  (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice." Id. at 657.

In the case *sub judice*, the material change in the facts brought to light are that, contrary to this Court's determinations of the facts in *Moss II*–that no objections were made on the first two confessions–objections *were* made, as is apparent from Appellant's exhibits (Hab.Exh. #1 & #2). Additionally, once the defense rested and the state declined to bring forth any rebuttal evidence, defense counsel, Parish McKittrick, diligently moved for a judgment of acquittal. (First trial transcript Vol. 17, pp. 4001-02.  Pages attached hereto as Appellant's Exhibit #2.  Hereinafter App.Exh. #2.) Mr. McKittrick also renewed "...all prior motions for mistrials *and other motions made during the course of this trial.*" Id. (Emphasis added.)

Even if it is determined that the first trial attorneys failed to properly object, another new fact from the second trial is that the second trial counsel objected to Appellant being questioned without his parents, counsel or other interested adult being present and of authorities' failure to promptly present Appellant before a neutral judicial officer.

The law of the case doctrine is not an immutable rule. The second trial court had an opportunity and the authority to rule on Appellant's 20 February, 1990, motion to suppress the two 28 October, 1980, alleged "confessions," and the subsequent 26 March, 1990, Memorandum in support of the motion and evidentiary testimony. The court, however, abused its discretion and ruled its authority was precluded from ruling on the merits of Appellant's motion by the doctrine without engaging in, *infra*, the proper analysis. The habeas court then abused its discretion by failing to consider Appellant's two exhibits (Hab.Exh. 1 & 2) to determine if one of the three above exceptions apply.  Particularly the third exception, *i.e.*, whether the earlier decision is clearly erroneous and would work a manifest injustice. *See Memorandum. Phares v. Brooks*, 590 S.E.2d 370, 375; *Cf. U.S. v. Matthews*, 312 F.3d 652 (5th Cir. 2002).

- 18 -

Furthermore, the case *sub judice* deals with a remand. A special aspect of the law of the case doctrine, the mandate rule, is thus implicated:

> "Appellate remands are characterized as general or limited. A general remand broadly remands the case and 'when a cause is broadly remanded for a new trial all of the issues are opened anew as if there had been no trial, and the parties have a right to amend their pleadings as necessary.' A limited remand, however, 'prohibits relitigation of some issues on remand, or directs that only some expressly severed issues or causes may still be litigated. Under a limited remand, 'the court on remand is precluded from considering other issues, or new matters, affecting the cause.' In other words, 'when the further proceedings are specified in the mandate, the district court is limited to holding such as are directed. When the remand is general, however, the district court is free to decide anything not foreclosed by the mandate.'"

*SER Frazier & Oxley, L.C. v. Cummings*, 591 S.E.2d 728 (2003). (Citations omitted.)

When this Court remands a case to the circuit court, the remand can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate. Id. Although there is no universally applicable standard for determining whether a remand is general or limited, and the particular intricacies of each case will bear on the issue, there are certain relevant principles to be applied in making such a determination. For example, a court must look to the entire mandate, examining every part of the opinion to determine if a remand is general or limited. Individual paragraphs and sentences must not be read out of context. In the absence of explicit instructions, a remand order is presumptively general. Upon remand of a case for further proceedings after a decision by the appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. Id.

Though unnecessary to the decision itself, this Court, in *Moss II*, considered the issue of the three "confessions." The Court wrote that; "[b]ecause the admissibility of the . . . three confessions . . . [would] again be of concern on remand, we now turn our attention to his argument that those confessions *should not have been admitted into evidence*." (Emphasis added.) After a somewhat detailed discussion regarding the possible merits of Appellant's "confession" contentions, the Court decided that, because objections were not preserved before the trial court on two of the three, only one of the three "confessions" was inadmissible, at the first trial, because the investigating officers failed to promptly present Appellant before a neutral judicial officer as required by *W.Va. Code* § 49-5-8. In deciding the issues, the Court rejected Appellant's argument that a violation of the IAD was akin to an illegal arrest, or that the first two confessions were involuntary as a result of unlawful coercion and prolonged

- 19 -

interrogation in an unduly restrictive custodial setting. Regarding the prompt presentment contention, the Court held that the issue was preserved below by proper contemporaneous objection only with regard to the third confession. Therefore, the Court reasoned, the ruling in *State v. Ellsworth, J.R.*, 331 S.E.2d 503 (1985), would not be applied retroactively to exclude the remaining two confessions to which no prompt presentment objection was made. *Moss II*, 376 S.E.2d at 581.

There are three significant points of that decision by the Court. First, the State failed to assert in its reply brief that no objection was made to the two 28 October, 1980, "confessions." By implication, then, because the State was in the best position to recognize what transpired during the trial, the State, indeed, acknowledged that objections were made to the first two "confessions." Second, if no objections were made, then by this Court's decisions, the issue was not properly before it. The Court, *sua sponte*, raised the procedural default defense for the State and declared the "confessions" not improperly admitted, at the first trial, for lack of objection. Third, this Court did not specifically state prompt presentment objections could not be entered at the second trial.

This Court's judgment in *Moss II*, overall, was a limited remand. However, that portion of the judgment addressing the three "confessions" on the prompt presentment issue was not determinative of the judgement and was expressly severed, or was a general remand in nature, thus leaving it open for further litigation. *State v. Moss*, 376 S.E.2d 569, 575-581 (1988). "Each of these contentions [admissibility of Appellant's three "confessions"] is examined *separately* below, where we conclude that the first two confessions given by the appellant are admissible, while the last confession is inadmissible due to the lack of prompt presentment to a neutral judicial officer." Id. at 575. (Emphasis added.) Unlike the rulings on Appellant's contentions that the "confessions" were involuntary or that the lack of a pretransfer hearing rendered the "confessions" inadmissible, which said rulings would properly have precluded further litigation on those two issues because they were a determination on elements that cannot be changed or cured by any subsequent act, the ruling on the prompt presentment portion merely remarked, though erroneously (*see infra*), on the absence of objections and did not specifically preclude the court from considering proper objections at the second trial on the authorities' failure to promptly present Appellant to a neutral judicial officer. Indeed, the Court had no authority to rule so. Telling a criminal defendant he cannot make the type of objection as was made on the admissibility of the two "confessions," at a second trial, wherein the trial errors made at the first trial, such as the error of failing to object, were "wiped clean," is akin to forbidding a criminal defendant from objecting for the first time to any evidence obtained as an unlawful custodial interrogation. It simply flies in the face of constitutional law. (*See Memorandum*, pp. 10-17.)

-20-

The only "fact" that prevented Appellant from receiving benefit of the *Ellsworth* decision at the first trial was the determination by this Court that no prompt presentment objection was preserved before the trial court on the first two "confessions." *Moss II*, 376 S.E.2d at 581. *See, State v. Humphrey*, 351 S.E.2d 613 (1986), "[T]rial error not raised in the trial court will not be addressed on appeal." Although the factual determination that objections were not preserved is erroneous, a fact such as failure to object at a first trial does not preclude the defense from objecting at a second or subsequent trial. It is not something that can be determined such as, from the totality of the circumstances, a defendant's statement to investigating officers are freely and voluntarily given, or that the failure to request a pretransfer hearing in the asylum state forecloses a petitioner's opportunity to complain of it on appeal or habeas corpus in the demanding state. Neither of those infirmities can be cured at a subsequent trial. However, lack of objecting to certain evidence certainly can be cured. (*See Memorandum* at 10-17.) Appellant was granted a new trial, which cleansed the slate of all errors at his first trial, including those that may have been made by his first attorneys. Appellant's attorneys at the subsequent trial objected in a timely fashion with sufficient specificity to the authorities' failure to promptly present Appellant to a neutral judicial officer. The intervening rulings of *State v. Ellsworth, J.R.*, 331 S.E.2d 503, were decided in 1985 and should have been applied at Appellant's second trial, in 1990, to the two 28 October, 1980, "confessions." This Court had no authority to preclude Appellant from objecting anew.

With the facts brought out in these proceedings, (Hab.Exh #1 & #2), it is undeniable a proper ruling would have excluded the two "confessions" from going before the jury. The fact the two "confessions" were presented at trial prejudiced Appellant greatly as the only remaining evidence against Appellant, *i.e.*, the Zain evidence and testimony, was ruled improperly before the jury. *In The Matter Of An Investigation Of The West Virginia State Police Crime Laboratory, Serology Division*, 190 W.Va. 321, 438 S.E.2d 501 (1993); relying on *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979). Without the "confessions," no evidence thus would have remained strong enough to have convicted Appellant. Based on the abuse of the habeas court for failing to engage in a proper analysis of Appellant's contentions, as presented above, however, Appellant has not received a full and fair opportunity to demonstrate his entitlement to habeas corpus relief.

2.   THE FACTUAL DETERMINATION BY THE WEST VIRGINIA
SUPREME COURT OF APPEALS THAT NO PROMPT
PRESENTMENT OBJECTIONS WERE ENTERED ON THE FIRST
TWO ALLEGED CONFESSIONS IS CLEARLY ERRONEOUS AND
WORKS A MANIFEST INJUSTICE.

This contention by Appellant, (Memorandum, pp. 17-19) was never before presented to any tribunal and did not present insurmountable difficulties for the habeas court. The court, again, instead of engaging in a detailed and logical legal analysis, discussion, and finding of facts, simply deferred its responsibility and perfunctorily wrote a dismissal of Appellant's contention.

For example, Appellant asserted the factual existence of both exhibits filed with his petition and memorandum, (Hab.Exh #1 & #2) as well as the facts conclusively demonstrated from those two documents that objections were made to the first two confessions, contrary to the findings of this Court in *Moss II*. *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (W.Va. 1988). The habeas court, however, failed to make specific findings of facts and conclusions of law relating to this contention, and did not engage in the necessary inquiry whether this Court's ruling in *Moss II* was clearly erroneous and works a manifest injustice. Since the habeas court is the court of record, it has a duty to make the required factual determination of the existence of the two exhibits and the irrefutable evidence contained therein. The court, however, abuses its discretion by failing to engage in and write detailed findings of facts and conclusions of law on Appellant's contention.

In West Virginia, objections are governed by Rule 103 of the West Virginia Rules of Evidence. Rule 103 provides that timely and specific objections must appear on the face of the record before error may be successfully assigned. The word "timely" merely means that a protest must be registered as soon as practicable after the reason for the objection has become apparent. A specific objection states that the evidence offered violates a named principle or rule of evidence. The mandate for specificity imposes upon the objecting party the obligation to object with a reasonable degree of precision, which adequately apprises the trial court of the true basis of the objection and clearly states the specific ground to be presented on appeal. "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert the circuit court to the nature of the claimed defect." *SER Cooper v. Caperton* 196 W.Va. 208, 470 S.E.2d 162, 170 (1995).

This Court, in *Earp v Vanderpool*, 160 W.Va. 113, 232 S.E.2d 513 (1976), stated that the purpose of requiring a specific objection is to bring into focus the precise nature of the alleged errors so the trial court is afforded an opportunity to correct them.

Rule 103(a)(1) requires that a meaningful objection be made to the trial court. By "meaningful," it is meant that the objection must inform the trial judge of the basis of the

objection and give it the best opportunity to rule on it.

In addition to the requirements of specificity, Rule 103(a)(1) has a timeliness requirement for objections. To be timely under the rule, a protest should be registered as soon as the defect becomes apparent. The failure to make a timely objection forecloses appellate consideration.

In *DiPaola v. Riddle*, 581 F.2d 1111 (4th Cir. 1978), the Fourth Circuit observed three important points: (i) a trial judge should have the first opportunity to rule upon objections to evidence, and the judge's ruling should be made at the time the evidence is offered *or even in advance of trial*, (ii) ordinarily, a party should not be permitted to stand silently by and later to contest the admissibility of crucial evidence only after the fact-finding has gone against them; and (iii) counsel is required to assert their objection(s) in a timely fashion, but considerations of timeliness do not require a recitation of facts that are unknown to counsel and their client and they are not chargeable by law with knowledge of them.

Rule 12, W.Va.R.Crim.P., requires that objections and motions to suppress must be raised prior to trial unless the grounds are not known to the defendant prior to trial. W.Va.R.Crim.P., 12(b)(3). In the case *sub judice*, Appellant made objection to the introduction of the "confessions" by motion and memorandum prior to trial when it became apparent the State intended to introduce them. Hearings on the motion were held on 19, 20, 21 & 22 September, 1983. At the conclusion of the hearing on 22 September, the court set a briefing schedule requiring Appellant's brief be filed no later than 30 September, 1983, and the state's response due by 7 October, 1983. The court also set a date of 12 October, 1983, to render its ruling from the bench on the matters presented. (Hab.Exh. #1 @ 346.) That briefing schedule, however, was apparently deviated from and Appellant's memo was not filed until 3 October, 1983. The State's memo was not filed until 30 December, 1983, the same date the Honorable John Hey's letter ruling was filed. (Attached hereto as Appellant's Exhibit 3. Hereinafter App.Exh. #3.)

Appellant's motion and memorandum to suppress included both the taped and oral "confessions" of 28 October, 1983. The trial court and state were well aware of this, as revealed by the September, 1983, hearing transcript, wherein counsel for the state discussed them both:

MR. STUCKY:       The Court, therefore, concluded that the *taped confession* was indeed.... .
              And the Court went on to make the same findings as to the *oral statements* that were given.

(Hab.Exh. #1 @ 33.)

A substantial portion of the testimony presented at the hearing dealt with the fact Appellant was not taken before the required judicial officer. Indeed, the entire theme of that

portion of the memorandum dealing with the question is based on *W.Va. Code* § 49-5-8(d), *i.e.*, that Appellant allegedly gave his "confessions" while being interrogated without the benefit of his parents or counsel being present and not being taken before a neutral judicial officer to have, *inter alia*, consequences of waiver being explained to him. The reason the code requires a juvenile be immediately taken before a referee, circuit judge, or magistrate is to inform him of his rights in order to avoid the exact situation Appellant found himself in and to determine whether custody should be continued. Appellant's *Memorandum* specifically stated he should not have been interrogated without the presence of his parents or counsel present when giving his "confessions," but that he should have been taken before a juvenile referee, circuit judge, or magistrate, as pursuant to *W.Va. Code* § 49-5-8(d). (*Memorandum* @ 63-64.)

*W.Va. Code* § 49-5-8(d) is the provision of the statute this Court relied on in deciding, in *State v. Ellsworth, J.R., supra*, that "...when a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate."

Appellant's Motion, Memorandum and the evidence brought forth at the September, 1983, hearing were more than adequate to fairly present Appellant's objection to the trial court of the authorities' failure to promptly present him to a neutral judicial officer. Especially in light of the fact Appellant did not have benefit of this Court's rulings in *Ellsworth, supra,* which had not been decided until after Appellant's first trial. Nonetheless, Appellant specifically relied on, and included in his Memorandum, that portion of the statute, § 49-5-8(d), this Court, in *Moss II*, found had not been objected to. That determination is clearly erroneous and works manifest injustice.

It is not necessary to recite, precisely, that Appellant was not promptly taken before a juvenile referee, circuit judge, or magistrate. The wording used in *Ellsworth, supra.* The test is only whether Appellant's objections were given within a reasonable degree of precision to inform the trial court of the nature of the claimed defect. *SER Cooper v. Caperton* 196 W.Va. 208, 470 S.E.2d 162, 170 (1995).

In *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995), this Court determined that, because the defendant there filed a *Motion In Limine,* seeking to bar the state from calling his wife as a witness, approximately two months in advance of trial, and that he merely cited *W.Va. Code* §57-3-3, it met the specificity requirement because that statute dealt only with one subject. Appellant cited *W.Va. Code* §49-5-8(d) in his pretrial *Memorandum.* (Hab.Exh. #2 @ 63-64.) That portion of the statute deals with only one subject and, therefore, meets the specificity requirement.

The habeas court failed to engage in the necessary *de novo* review of the record or the required inquiry into Appellant's contentions. The proper analysis the court should have employed includes determining whether the existence of the two exhibits Appellant included

- 24 -

with his petition and memorandum for habeas corpus relief did, in fact, demonstrate that objections *were* made to the first two confessions. Then, if the court felt it could not act due to the previous rulings by this Court, engage in a detailed analysis, with specific legal conclusions, citing authority, on why it would be improper for the court to act on Appellant's claims, without which Appellant now cannot effectively attack the court's errors in this petition. The perfunctory Order entered by the court is not in compliance with *W.Va. Code* § 53-4A-7(c), *supra,* and denies Appellant the due process guarantees of the West Virginia Constitution.

For example, a detailed legal analysis should reveal that it is not necessary for a defense attorney in this state to make "running objections" to evidentiary rulings by the trial court because this Court recognizes the "continuing objection." *State v. Bradford,* 199 W.Va. 338, 484 S.E.2d 221 (1997). Therefore it is not necessary in this state to incur rebuke by repeating and renewing objections to the same or similar evidence that is being introduced. A party does not waive an objection once made and overruled by the failure to renew the objection each time the same or similar evidence is introduced. *State v. Kanney,* 169 W.Va. 764, 289 S.E.2d 485 (1982); *State v. Taylor,* 130 W.Va. 74, 42 S.E.2d 549 (1947).

This Court, in *Moss II, State v. Moss, supra,* recognized that the trial court held two *in camera* hearings on the three confessions. *Moss II* n. 11. However, it does not mention the 3 October, 1983 *Memorandum In Support Of Defendant's Motion To Suppress Samples Of Blood, Confession, And Other Physical Evidence Seized From John Moss By Employees Of The State Of West Virginia,* (Hab.Exh. #2), or the trial court's 30 December, 1983, ruling on the motion and memorandum to suppress (*See* App.Exh. #3). The 3 October, 1983, memorandum specifically and clearly outlined the nature, grounds, and extent of objections why the two "confessions" should not be ruled admissible. The state made specific and clear arguments in answer to Appellant's motion and memorandum, (*see* **STATE'S MEMO IN OPPOSITION,** attached hereto as Appellant's Exhibit #4, hereinafter App.Exh. #4) and the trial court ruled on Appellant's arguments.

Even if it is determined no objections were made to the two 28 October, 1980, "confessions," failing to enter contemporaneous objections in the present case should have been excused by this Court in *Moss II,* and that Court should have declared the issue was preserved for appeal. In Syllabus Point 1 of *Konchesky v. S.J. Groves & Sons Co., Inc.,* 148 W.Va. 411, 135 S.E.2d 299 (1964), the Court held: "Rule 46 of the West Virginia Rules of Civil Procedure, which provides that in lieu of a formal exception it is sufficient if a party against whom a ruling or order is made opposes the action taken by the court at the time it is made and indicates the action which he desires, or, if such party did not have an opportunity to object at the time any ruling or order was made by the trial court on a motion of the opposing

party, no objection or exception is required and an appellate court may consider the alleged error even though no formal objection or exception was made or taken." The holding in *Konchesky* was first applied in criminal proceedings in *State v. Walker*, 207 W.Va. 415, 533 S.E.2d 48 (2000). This Court in Appellant's case, as in *Walker*, 533 S.E.2d 48, 51, determined that no contemporaneous objection was made. However, the Court, in *Walker, Id.*, unlike in Appellant's, ruled that the defendant there fairly presented the matter to the trial court and obtained a definitive ruling and, thus, excused the lack of an objection by ruling the issue properly preserved for appeal. Appellant, too, presented the issue to the trial court, prior to trial in his motion and memorandum to suppress the two 28 October, 1980, "confessions," and obtained a definitive ruling thereon in the form of the letter ruling (App.Exh. #3). From the tone of the letter ruling by Judge Hey, it is clear he was somewhat weary of hearing about and ruling on the issues:

> Counsel for the defendant submitted to the Court a rather lengthy memorandum of law, including some 74 pages, in support of defendant's motion to suppress. The State replied by her Assistant Prosecuting Attorney in a 19-page memorandum.

> This Court, without attempting to write a long, detailed opinion for the purpose of explaining its ruling, and for the sake of brevity, advises counsel that many of the matters raised by defendant's brief have previously been raised <u>ad infinitum</u>[.]

> [A]nd to raise the defense that, among other things, a responsible adult, such as the defendant's parents, was not present *is ludicrous* at best given the surrounding circumstances[.] (Emphasis added.)

(App.Exh. #3, *passim*).

It was not necessary for defense counsel to risk raising the ire of Judge Hey by renewing his objection to the "confessions" when they were introduced at trial. At the close of the defense's case in chief and the state's declining any rebuttal, defense counsel moved for a judgement of acquittal, renewed all prior motions for mistrial, and renewed all other motions made during the course of trial. (App.Exh. #2). Thus, the issue was fairly presented to the trial court and a definitive ruling was entered. If it is determined that Appellant's motion to suppress the "confessions" and memorandum in support of the evidence and testimony entered at the September, 1983, hearing is not convincing that objections were made on authorities' failure to promptly present Appellant to a neutral judicial officer prior to obtaining his "confessions," then he should be excused from contemporaneously objecting thereto because he fairly presented the issue to the trial court and a definitive ruling was entered, but Appellant had no opportunity to contemporaneously object on the record at the time the ruling was made due to the nature of it being in the form of a pre-trial letter to counsel. (App.Exh. #3.) Because

the Court did not so hold works a manifest injustice because virtually all the evidence presented at trial against Appellant was inadmissible or improperly (Zain evidence) before the jury.

In sum, the second trial court was not precluded, under the law of the case doctrine, from independently considering the issues contained in the second trial attorney's motion to suppress the two remaining "confessions." However, the second trial court abused its discretion by, (1) failing to engage in the required legal analysis set forth above, and (2) ruling it was precluded from acting on Appellant's objections due to the law of the case doctrine. The second trial court's abuse of discretion as set forth *supra* has not previously been fully and fairly litigated. Therefore, the habeas court's ruling that Appellant's contention of abuse of the second trial court had been previously ruled on, without engaging in the required legal analysis, is also an abuse of discretion resulting in a fundamentally flawed process. Likewise, the fact this Court previously erroneously ruled on Appellant's contentions in *Moss II*, works manifest injustice and the habeas court's decision that this issue by Appellant had also been previously ruled on is an abuse of the inherent powers granted to that court.

### 3. PETITIONER WAS DEPRIVED OF THE SIXTH AMENDMENT'S GUARANTEE OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

A. Counsel Failed To Bring To The Trial And Appellate Court's Attention The Fact That The Two October 28, 1980, Confessions Were The Subject Of An Extensive Motion And Memorandum, Hearing, And Testimony And Was, In Fact, Objected To By Counsel Prior To The First Trial, Based On, *Inter Alia, W.Va. Code* § 49-5-8(d).

Appellant's contention, in his petition and memorandum for state post-conviction relief, of ineffective assistance of trial and appellate counsel has never been raised in any previous proceeding.

This Court has ruled, in *SER Vernatter v. Warden*, 207 W.Va. 11, 528 S.E.2d 207 (1999), that:

"An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."

Syllabus 1, id., *citing Daniel v. Legursky*, 195 W.Va. 314, 320 S.E.2d 416, 422 (1995).

Unfortunately, this Court cannot engage in the enunciated standard of reviewing Appellant's claim of ineffective assistance of counsel, (Memorandum at 19-23) because, *inter alia*, (1) the habeas court abused its discretion by ruling this contention by Appellant has

-27-

previously been ruled on and, (2) the habeas court abused its discretion and failed to articulate whether it found Appellant's assertions to be accurate.

The habeas court ruled:

> The Court finds that these grounds [ineffective assistance of counsel] relate to the admissibility of Mr. Moss's confessions, which has been previously raised, considered and denied, on the merits, by the Supreme Court of Appeals and this Court in Mr. Moss's prior habeas petition and appeal.

(Order, p. 7.)

If the court's somewhat limited conclusion is to be relied upon, however, *i.e.*, that the claim of ineffective assistance of trial and appellate counsel, which relate to the "confessions," which said "confessions" has been ruled by this Court to be admissible for failing to object thereto, then Appellant's convictions and sentences must fall.

The evidence presented in Appellant's habeas petition, *i.e.*, September, 1983 suppression hearing transcript, (Hab.Exh. #1, and his 3 October, 1983, *Memorandum In Support Of Defendant's Motion To Suppress Samples Of Blood, Confession, And Other Physical Evidence Seized From John Moss By Employees Of The State Of West Virginia,* (Hab.Exh. #2) conclusively demonstrate that objections were made to the first two "confessions." A fact that is unrefuted or denied by the state. No reasonable attorney would have failed to bring those facts to the attention of the second trial or appellate courts, based on some strategic decision. The attorney, however, still is required to answer whether he did indeed have some strategic reason for failing to bring such important facts and evidentiary support to the trial court's attention. Based on this Court's subsequent rulings in its affirmance of the lower court's denial and dismissal of Appellant's "Special Zain" habeas, *i.e.*, "The State convincingly argues that there was sufficient testimony offered through individuals other than Mr. Zain from which the jury could have based its decision to believe Appellant's confession. Given the abundance of evidence that the jury was presented with that supported Appellant's confession to having committed the subject murders, we simply can not accept Appellant's argument that Mr. Zain's testimony was *per se* prejudicial. Accordingly, we find no error with the trial court's conclusion that the introduction of testimony or evidence by Mr. Zain did not have a prejudicial effect on the jury." *Moss v. Trent,* 603 S.E.2d 656, 661. Clearly, then, this Court views the "confessions" and evidence flowing therefrom,[2] absent the perjured testimony of Mr. Zain, overwhelmingly convincing to affirm Appellant's convictions and sentences.

---

2.   Appellant asserts herein, however, that the supporting evidence this Court speaks of is fruit of the poisoned tree flowing from the illegally obtained "confessions" which said "confessions" should have been ruled inadmissible.

Failing to bring the second trial or appellate court's attention to the fact the first two "confessions" were objected to through the existence of the transcript, Memorandum and subsequent ruling by letter–which, if the second trial court had not abused its discretion (*see supra*) but engaged in the proper legal analysis, would have resulted in a high likelihood the two "confessions" would have been 1) disallowed at trial, or 2) if allowed, resulted in a reversal on appeal–absent a reasonable strategy is extremely prejudicial because this Court could not have relied on the "confessions" and evidence flowing therefrom to affirm Appellant's convictions and sentences at the "Special Zain" habeas proceedings.

Deciding not to utilize the transcript of the suppression hearing held prior to trial and subsequent memorandum and letter ruling, if indeed it was a deliberate decision, does not appear anywhere in the record. *See Nazelrod v. Hun*, 199 W.Va. 582; 486 S.E.2d 322 (1997): "An examination of the ineffective assistance of counsel claim requires an examination of facts not developed in the appellant's transcript. For instance, the advice that trial counsel gave, or failed to give the appellant, is not in the trial transcript. Similarly, why counsel failed to object to evidence, or what his specific trial strategy was, does not appear in the record." This Court then goes on to say that the factual circumstances surrounding counsel's actions must be established with some certainty, on the record, before an appropriate determination can be made as to the merits of an appellant's habeas corpus allegations. *Nazelrod*, 486 S.E.2d at 324.

B.      If Trial Counsel, At The First Trial, Failed To Object To The West Virginia Authorities' Failure To Promptly Present The Juvenile Defendant To A Neutral Judicial Officer Prior To Taking Petitioner's Alleged Confessions.

This contention has not previously been raised, either. The habeas court abused its discretion here also as well as failed to articulate any specific findings of facts and conclusions of law on Appellant's contention. *Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997), syl. pt. 1. Indeed, it virtually precluded itself from doing so by not, *inter alia*, affording counsel an opportunity to offer an explanation why they did not object. "An examination of the ineffective assistance of counsel claim requires an examination of facts not developed in the appellant's transcript. For instance, the advice that trial counsel gave, or failed to give the appellant, is not in the trial transcript. Similarly, why counsel failed to object to evidence, or what his specific trial strategy was, does not appear in the record." *Nazelrod v. Hun*, 199 W.Va. 582; 486 S.E.2d 322 (1997).

If the evidence presented in Appellant's memorandum and exhibits in support of his petition for state post-conviction relief and this petition, however, is not compelling that objections were made to the two 28 October, 1980, "confessions," then trial counsel, at the first trial, were ineffective unless they can somehow demonstrate they had some reasonable

- 29 -

strategy or tactic for failing to do so. The state has not suggested any reasonable strategy or tactic of why trial counsel failed to object and nothing appears on the record of their strategic reason, if indeed it was a specific decision of strategy or tactic, not to object to the two "confessions" for failing to promptly present the juvenile defendant to a neutral judicial officer or magistrate.

Without any of the required findings of facts such as whether, after considering the new evidence presented in Appellant's exhibits, objections were made to the two 28 October, 1980, "confessions," and conclusions of law relating to whether, if no objections were made, failing to do so resulted in deficient performance and prejudice, this Court cannot fairly determine the matter. This case should be remanded back to the habeas court with directions to, *inter alia*, conduct an independent review of all of Appellant's contentions because most, if not all of Appellant's other contentions intertwine with his claim of ineffective assistance of trial and appellate counsel and to thereafter more fully articulate its reasons in deciding to summarily refuse and dismiss Appellant's habeas petition.

> "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." (Citing Syllabus Point 1, *State ex rel., Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975)).

Syllabus 2, *SER Vernatter v. Warden, supra.*

Without the habeas court complying with stated procedure, Appellant's due process rights would not be realized.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


For the remaining contentions of Appellant's petition and memorandum for state post-conviction relief, Appellant asserts he has not had sufficient time to properly write, for appeal purposes, his arguments as to why the habeas court abused its discretion in summarily dismissing, by Order entered 7 February, 2006, the said petition.

Based on the 2/7/06 Order, Appellant's petition seeking to appeal the habeas court's summary denial and dismissal of his petition and memorandum is due filed on or about June 6, 2006. The Kanawha County Circuit Court, however, the Honorable Louis H. Bloom, by Order entered on or about 24 May, 2006, denied Appellant's timely filed 11 May, 2006, *Motion For Extension Of Time Within Which To File Petition On Appeal.* Appellant, therefore, is filing this petition as is and, after this Court assigns a case number, will be requesting that he be allowed to supplement the petition herein. Appellant asserts, however, the habeas court abused its discretion and violated Appellant's constitutional rights to due process of law for 1)

failing to enter a proper Order denying and dismissing Appellant's habeas petition and memorandum without proper findings of facts and conclusions of law and, 2) erroneously determining the facts that were stated by the habeas court. Appellant incorporates herein, by reference thereto, the facts as stated in the previously filed Memo, which said facts are neither unrefuted or denied by the government. Appellant's assertions are based upon the denial of the Appellant's several constitutional rights contained in the following:

4.  APPELLANT DID NOT RECEIVE A FULL AND FAIR HEARING ON HIS MOTION AND MEMORANDUM TO SUPPRESS SAMPLES OF BLOOD, CONFESSION, AND OTHER PHYSICAL EVIDENCE SEIZED DUE TO THE IMPROPER TACTICS OF FRED S. ZAIN AND THE WEST VIRGINIA STATE POLICE TROOPERS AND CRIME LABORATORY.

The two samples of blood obtained from Appellant were derived from him on two separate trips by West Virginia State Police Troopers to Ohio where Appellant was being held. On the first occasion, 30 January, 1980, the Troopers did not have a court order, warrant, or permission from Appellant's counsel or parents. On the second occasion, 28 April, 1980, however, an Ohio court order was obtained to allow West Virginia authorities to extract a blood sample. On neither occasion was counsel present with Appellant, even though the assistant prosecuting attorney for West Virginia was present at the second, forced, extraction. It was only after the first blood sample was obtained that Appellant became a suspect in the homicides of the Reggettz family. It was alleged by West Virginia authorities that the cloth containing the first sample was returned to Appellant. Appellant, however, unequivocally avers the cloth, or all of it, was not returned but was taken to Fred S. Zain on 30 January, 1980, by Zain's fellow troopers, Williams and Smith. It was only after Zain had a known sample of Appellant's blood, with which he falsely stated had been gathered at the crime scene, that Appellant became a serious point of focus in the investigation of Appellant's alleged involvement in the murders of the Reggettz family.

The fact Zain had a known sample of Appellant's blood in January, 1980, is borne out by the copy of Zain's January, 1980, lab table listing blood groupings from fourteen (14) individuals, including Appellant. (See copy of January, 1980, blood groupings table, Hab.Exh. #3.) As is apparent from Zain's table, a known sample of Appellant's blood grouping was in his possession in January, 1980, and he listed it in his table. The only possible way for Zain to have a *known* sample of Appellant's blood in January, 1980, was to have received at least a portion of the illegally gotten sample obtained by Troopers Williams and Smith from Appellant on 30 January, 1980.

In essence, the illegally retrieved blood sample and constitutionally prohibited questioning of the, at the time, juvenile Petitioner ostensibly provided West Virginia authorities with probable cause evidence to obtain an Ohio court order to allow authorities to take another blood sample from Appellant. This allowed Zain to perpetuate his fraudulent representations in the probable cause process by alleging the sample of blood taken from Appellant on 22 April, 1980, matched unknown blood samples gathered at the crime scene. In fact, the sample taken from Appellant on 22 April, 1980, did not match any unknown sample gathered by Zain at the Reggettz crime scene, later allegedly determined, by Zain, to be that of Appellant. It matched only the known sample illegally obtained from Appellant on 30 January, 1980. Zain fraudulently manipulated blood sampling evidence, with total disregard for the truth, to reflect Appellant to be a prime suspect in the murders of the Reggettz family. This information which was known, or should have been known, by the prosecutor was withheld from Appellant, as well as the blood grouping data sheet and did not become known to him until the investigation of Zain and the West Virginia Police Crime Laboratory in which Appellant received the noted blood grouping table dated January, 1980 (Hab.Exh. #3). Trial counsel was diligent in seeking all evidence in possession of the state, but due to the late divulgence of the table by the state, Appellant did not have a full and fair opportunity to litigate his Fourth, Fifth, Sixth and Fourteenth Amendment claims at the 19, 20, 21, & 22 September, 1983 suppression hearing prior to the first trial, or the 26 February, 1990, suppression hearing prior to the second trial.

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966), the Court indicated that all compelled blood tests are seizures subject to the reasonableness requirement of the Fourth Amendment to the United States Constitution. Since the holding in *Schmerber*, the courts of this land have concertedly held the Fourth Amendment rules on search and seizure should guide the courts when law enforcement seek blood from internal body cavities.

In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held that neither state nor federal prisoners could collaterally attack state convictions on grounds that illegal evidence was admitted at trial where the "[S]tate has provided an opportunity for full and fair litigation of a Fourth Amendment claim." 428 U.S. at 494. The Supreme Court reaffirmed its decision in *Stone v. Powell*, supra, and held that habeas relief could not be granted to a state prisoner on the ground that the custodial statements made by him were obtained in violation of the Fourth Amendment. *Cardwell v. Taylor*, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983). The Court in *Cardwell* held that relief could be granted if statements were involuntary and therefore obtained in violation of the Fifth Amendment.

Appellant carries both burdens of pleading and proving the facts and the reasons why he did not receive an opportunity for full and fair litigation. *Doleman v. Muncy*, 579 F.2d 1258

- 32 -

(4th Cir. 1978).

In sum, Appellant was denied a full and fair opportunity to litigate his Fourth Amendment claim prior to trial due to the improper actions of the state through its prosecutor and investigative body. The "confessions" and other evidence flowing therefrom was presented to the jury and was highly prejudicial. A hearing on the matter in these habeas corpus proceedings, therefore, is mandatory and vital to afford Appellant a full and fair opportunity to demonstrate his entitlement to relief.

5. APPELLANT'S SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY AND THE FOURTEENTH AMENDMENT'S GUARANTEES OF DUE PROCESS WERE CONTRAVENED WHEN THE STATE KNEW, OR SHOULD HAVE KNOWN, OF THE FALSE OR MISLEADING TESTIMONY AND EVIDENCE PRESENTED BY A STATE WITNESS.

An investigative trooper is an agent of the state and under the supervision of the prosecutor. In the case *sub judice*, Zain was a trooper in the West Virginia State Police Crime Laboratory and under the control or supervision of the Kanawha County Prosecuting Attorneys' Office. The prosecutor knew, or should have known, of the false and/or misleading information and testimony provided in Appellant's case by Zain, but if they did not, they now know of Zain's perjury. Because Zain's false or misleading testimony was presented to the jury, Appellant did not receive his constitutional right to a fair and impartial jury. In all criminal prosecutions, state and federal, "the accused shall enjoy the right to trial by an impartial jury." U.S. Const. Amdt. 6; *Duncan v. Louisiana*, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968).

In *Durley v. Mayo*, 351 U.S. 277, 100 L.Ed. 1178, 76 S.Ct. 806 (1956), a case in which four Justices of the United States Supreme Court dissented and posited whether, pursuant to *Mooney v. Holohan*, 294 U.S. 103, 79 L.Ed. 791, 55 S.Ct. 340 (1935), due process was offended when a state innocently obtained a conviction by use of perjured testimony if knowledge of the perjured testimony was discovered only after the trial. Appellant asserts that, in this particular case, it does.

The West Virginia Supreme Court's prophylactic remedial device of requiring prisoners who had Zain test evidence and/or testify at their trials file and litigate only claims related to Zain and to thereafter make a determination if, absent Zain evidence, the remaining evidence is enough to convict, is inadequate in Appellant's case due to the overall circumstances of Zain participating in the probable cause process and the fact Appellant was precluded from litigating all the issues in the "Special Zain" habeas proceedings.

- 33 -

6.  THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED APPELLANT'S BLOOD SAMPLES, CONFESSIONS AND ALL EVIDENCE INCIDENT THERETO INTO EVIDENCE, WHEN THE SAMPLES OF BLOOD WERE OBTAINED IN VIOLATION OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS.

The samples of blood obtained from Appellant were derived from him on two separate occasions. On the first occasion, the police did not have a court order, warrant, or permission from Appellant's parents or counsel, but on the second occasion, a court order was issued by an Ohio court. On neither occasion was counsel present with Appellant and it was only after the blood samples were obtained that Appellant became a suspect in the homicides of the Reggettz family. In essence, the results of the blood tests provided the authorities in West Virginia with the probable cause evidence which they had previously lacked. Also, Troopers Williams's and Smith's discussion with Appellant on 30 January, 1980, created investigative leads which they pursued upon their return to West Virginia. Thereafter, these troopers obtained physical and testimonial evidence from Arbutus and William Johnson in the form of silverware which was presented at trial and which the West Virginia Supreme Court relied upon for affirming the denial of Appellant's "Special Zain" Habeas Corpus petition for relief. Both courts, however, failed to recognize the fact that unequivocal and conclusive evidence was presented by the defense demonstrating that there was no way the silverware given came from the Reggettz home.

The United States Supreme Court, in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966), indicated that all compelled blood tests are seizures subject to the reasonableness requirement of the Fourth Amendment to the United States Constitution. The facts of Appellant's case clearly demonstrate that Appellant was required to give the authorities probable cause evidence which effectively incriminated him before there was probable cause evidence to believe Appellant committed the homicides, making the compelled taking of Appellant's blood unreasonable.

The evidence is clear from the testimony of police authorities testifying at all hearings held that there was a complete lack of probable cause on 22 April, 1980, the date of the second extraction, pursuant to an Ohio court order, of Appellant's blood. Even though that order directed Appellant to give blood it is undebatable that Trooper Smith's and Prosecuting Attorney Mike Roark's affidavit appended to the petition for the Ohio court order does not state probable cause. First, the affidavit is written in conclusory language and, second, Trooper Smith testified in the suppression hearing that blood was not an issue in the felonious shooting case at the Moose Club in St. Albans, West Virginia, thereby negating the felonious assault allegation in the affidavit. Finally, there are no other facts stated which even remotely

- 34 -

constitute a factual foundation reflecting probable cause on 22 April, 1980, as every investigating officer who has testified has conceded.

Trooper Smith attempted but failed miserably in his suppression hearing testimony to state reasons for having probable cause to extract Appellant's blood on the 22nd day of April, 1980. Trooper Smith stated three reasons to believe there was reasonable grounds to believe Appellant committed the Reggettz homicides:

(1)     Appellant lived in close proximity to the Reggettz home;

(2)     Trooper Smith had a newspaper article that indicated Appellant had used a .25 caliber revolver in a crime in Ohio and that a .25 caliber revolver was used in the Moose Club shooting;

(3)     Appellant indicated to a friend he desired to burglarize the Reggettz home.

At the same time, Trooper Smith testified he had knowledge of 1 and 2 above before 30 January, 1980, when he unlawfully extracted blood from Appellant. More importantly, Trooper Smith testified that on 30 January, 1980, he did not have reasonable grounds to believe Appellant committed the Reggettz murders. All evidence indicates no facts were added to the state police investigation which would enhance probable cause between 30 January and 22 April, 1980, when the second blood was taken from Appellant.

Consent is not an issue in the taking of Appellant's blood on 22 April, 1980, because assistant prosecuting attorney, Chuck Pettry, who accompanied the troopers to Ohio to extract the blood, testified in the suppression hearing that he did not attempt to secure Appellant's consent because he, Pettry, did not consider the taking of Appellant's blood a search and seizure under the Fourth Amendment to the United States Constitution.

In *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the Supreme Court stated that due process of law precludes convictions brought about by methods which offend a sense of justice. "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his [body]."

On the facts of Appellant's case, a parallel can be drawn with *Rochin* and its progeny in that West Virginia law enforcement officers cannot establish probable cause evidence from seizing Appellant's blood without pursuing a search warrant based on independently stated factual probable cause. There was no probable cause evidence until *after* the blood samples were obtained. Additionally, there was no danger that the evidence (blood) would disappear.

- 35 -

In obtaining samples of Appellant's blood under forced circumstances (which strain of blood was, according to Zain, consistent with that found at the scene of the homicides of the Reggetz family; (*See* Contention (4.), *supra*)) the blood samples resulted in incriminating evidence prejudicial to Appellant and, for all intents and purposes, produced a confession of a circumstantial variety.

The United States Supreme Court has indicated where there is probable cause to believe one has committed a crime, scientific tests and intrusions of the body are constitutionally permissible. In *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1975), the Court held that when the defendant voluntarily appeared at the police station for questioning on the strangulation of his wife, the warrantless taking of scrapings from the defendant's fingernails was permissible because of independent existing probable cause. Probable cause must first exist because the guidelines and standards relating to search and seizure under the Fourth Amendment applies.

The touchstone of the Fourth Amendment is the protection of privacy, and to that end, it prohibits unreasonable invasions without a warrant. Facts are the proper basis upon which probable cause for the issuance of a search warrant is to be ascertained. Appellant submits that his blood samples at issue were not taken incident to a lawful arrest, nor, as admitted to by all officers in this case, was there a reasonable belief or probable cause to believe Appellant had committed the homicides of the Reggetz family.

Concerted court precedent indicates that, since Appellant's rights were violated when a sample of his blood was obtained, the blood sample and the results thereof should be excluded from evidence in a trial on the merits of guilt. Physical by products of illegally obtained statements are inadmissible during a trial of the defendant as "poisonous fruit" of illegal statements. Such physical evidence is protected by the Fourth Amendment, and the exclusionary sanction applies to any fruits of a constitutional violation -- whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention. The exclusionary rule has primarily rested on the judgment that the importance of deterring police conduct that may invade the constitutional rights of individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal trial against the victim of the illegal search and seizure. The rule's prohibition applies to such direct evidence as well as to "fruit of the poisonous tree" – secondary evidence derived from the illegally seized evidence itself. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

It is not debated that on 30 January, 1980, troopers of the West Virginia Department of Public Safety violated Appellant's rights by extracting a blood sample from him while he was incarcerated in the state of Ohio. More importantly, during that meeting, certain information was secured which was used at trial. Appellant supplied the troopers with the names of his friends. After leaving Ohio, the troopers contacted William Johnson and took a written statement which tended to incriminate Appellant.

Also, Trooper Williams testified that after the 22 April, 1980, meeting with Appellant, where blood was again extracted, upon a court order, but without probable cause, that "[W]e obtained [another] written statement from William Johnson[.]" That statement alleged that Appellant had indicated he desired to burglarize the Reggettz home and that Appellant had given Arbutus Johnson flatware that came from the Reggettz home. The trooper admits this statement was not taken until after the blood laboratory results on Appellant were disclosed and after the trooper came to the conclusion Appellant was a suspect. Thereafter, written statements were taken from Arbutus Johnson concerning the flatware allegedly stolen from the Reggettz residence as well as the flatware being secured.

Decisions on this issue indicate that where an illegal search confrontation has provided the prosecution with the names and later testimony of witnesses it might not have otherwise acquired such are inadmissible as the fruits of an illegal search. The blood sample taken from Appellant without probable cause constituted illegally obtained evidence which should have been suppressed, just as all fruits of the search and seizure, i.e., flatware, statements of William and Arbutus Johnson, and alleged confessions should have been.

If it had not been for the totality of the circumstances, i.e., unlawful extraction of Appellant's blood on 30 January, 1980, which resulted in statements being taken from William and Arbutus Johnson and which resulted in securing the flatware against Appellant, and the unlawful extraction of Appellant's blood on 22 April, 1980, which resulted in a second statement from William and Arbutus Johnson, Appellant would not have even been a suspect in the murders of the Reggettz family, thus negating the possibility of securing inculpatory statements from Appellant by Troopers Williams and Smith on 28 October, 1980, and by Troopers Woodyard and Allen on 30 October, 1980.

The "confessions" are a direct result of the illegal search and seizures of Appellant's blood carried out by representatives of West Virginia on 30 January, and 22 April, 1980, and should have been excluded from trial. The trial court abused its discretion and committed reversible error when it ruled contrary thereto.

It is submitted at the outset that to have required Appellant to submit to the withdrawal of his blood for testing against his will and without his consent and over his objection is violative of his Fifth Amendment privilege against self-incrimination and is a denial of his right

- 37 -

to due process of law as being fundamentally unfair.

The case of *Schmerber v. California, supra*, involved the implied consent to submit to blood sample testing by an operator of a motor vehicle. The United States Supreme Court ruled that the accused's privilege against self-incrimination had not been violated, reasoning that since the blood test evidence, although an incriminating product of compulsion, was neither Schmerber's testimony nor evidence relating to some communicative act or writing by him. Therefore, it was not inadmissible on privilege grounds. That position has been followed in a plethora of cases involving driving under the influence and implied consent matters. Because the "implied consent" statute was at issue in *Schmerber*, the defendant there could reasonably expect and anticipate that the alcoholic content of his blood was directly in issue.

In the present case, the blood alcohol content of Appellant is not directly an issue. The results of any testing of blood taken from Appellant against his will, without his consent, and over his objection upon the invocation of his privilege against self-incrimination can only be used collaterally to confirm or corroborate the compatibility of Appellant's blood type with the blood type of blood smears found at the residence where the alleged homicides occurred. Such evidence is merely circumstantial at best. Appellant should not be required to submit to a process involving the intrusive violation of his very person against his will, without his consent, over his objection and after his assertion of his privilege against self-incrimination when there is no reasonable causal relationship of the test sought to be administered on the body of Appellant and the crime in question.

If the extraction from Appellant and the use of the results of such tests at trial against him is some communication or testimony from inside the person of the Appellant, contrary to *Schmerber*, then the Appellant was entitled to the constitutionally afforded privilege against self-incrimination if he desires that no such communication from him be given to state officials for use against him. If, in fact, the extraction of Appellant's blood, for the purpose of using the results of such tests of Appellant's blood, was taken involuntarily, without his consent, and over his objection, must then be inadmissible hearsay which, if desired to be used by the state, can only be prejudicial to Appellant and, hence, reversible error.

To allow the state to use the results of the tests performed upon the blood samples taken from Appellant who was required and compelled to submit to the extraction of his own blood for purposes of using the same against him at trial and which would materially assist the state in obtaining evidence to be used against Appellant in a criminal trial could only constitute prejudicial and reversible error.

Although the blood samples taken from Appellant were taken after an order was obtained from an Ohio court, the tests on Appellant's blood samples must be admissible under West Virginia law, and there was no express authority for the admissions of such tests

- 38 -

or analyses into evidence before a West Virginia court. Instead, a determination of probable cause seems more reasonable before such blood samples can be obtained, and yet the police officers did not have probable cause against Appellant until after the blood samples were obtained. The blood samples taken against his will and without his consent give the state the probable cause evidence it needed. In other words, the probable cause evidence against Appellant was obtained in violation of his Fifth Amendment right against self-incrimination.

The taking of Appellant's blood constituted a communication from inside Appellant's body much like a verbal confession, and as such is protected by the Fifth Amendment to the United States Constitution. The extraction of the blood itself is protected by the protection against unlawful search and seizures forbidden by the Fourth Amendment to the United States Constitution as made applicable to the states through the Fourteenth Amendment. To have permitted such tests or analyses to go into evidence in Appellant's trial constituted prejudicial and reversible error. Importantly, all "fruits" of the blood sample, i.e., statements of William and Arbutus Johnson, flatware, and the confessions later obtained from Appellant should have been excluded from the evidence. The trial court's ruling in opposition thereto was an abuse of discretion and reversible error.

### 7. IMPROPER CLOSING ARGUMENTS BY THE PROSECUTION DENIED APPELLANT A FAIR TRIAL.

When all was said and done, the trial of this case came down to the simple matter of which confessor the jury was willing to believe. Both the Appellant and Paul Reggetz had confessed to the murders. Both had unsuccessfully attacked their confessions as being unconstitutionally coerced. Paul Reggetz testified for the state. He told the jury of the pressures and tactics the police used to illegally extract his confession. The jury saw him testify; they heard his version of the story. Appellant, on the other hand, invoked his constitutional right not to testify. The jury had only his confession to go by. The significance of this fact was not lost on the prosecution in its summation. Repeated references were made in relation to Mr. Reggettz such as:

> [Y]ou saw him on the stand. He told you... (Tr. 1322); Paul told you... . You heard him say it. (Tr. 1323); Paul Reggettz told you [about the interrogation]; He told you how they fired questions at him; You heard what Paul said [about the interrogation]. (Tr. 1324); Paul told you that he just couldn't take it [the interrogation]. (Tr. 1326); You saw Paul Reggettz on the stand. He told you... (Tr. 1330); And now Paul Reggettz says -- he's able to testify and he can say... (Tr. 1386).

References were also made with regard to Appellant:

> John Moss told you... (Tr. 1330); [Y]ou heard the defendant on the stand... (Tr. 1332); And then John testified that he... . That's what he told you (Tr. 1335).

Contrary to the state's argument, however, Appellant did not testify. He was never on the stand before the jury. He told the jury nothing. The jury was aware of that fact and they were made even more aware of it by the state's improper remarks that Appellant had taken the stand, that he had testified. This ploy was designed with one purpose in mind. To draw attention to the failure of Appellant to testify, deny his confession, and to assert his innocence.

> I want you to ask defense counsel – again, ask them to explain how Paul Reggettz's confession changes any of the evidence against John Moss. See if they can explain it. (Tr. 1331).

> Did you notice...they didn't talk about the blood? Did you notice that there is no explanation... . (Tr. 1370).

> He didn't necessarily tell the whole story. (Tr. 1376).

> Why did he kill [her]? He doesn't say... . (Tr. 1377).

Those comments also drew the attention of the jury to the possibility of special facts known by the prosecutor that they, the jurors, were not privy to; it attacked opposing counsel's strategy and/or presentation of his case; and was a comment on Appellant's, or his witnesses' credibility.

Taken as a whole, the state's remarks in closing amounted to improper comments on the failure of Appellant to testify and infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial. *State v. Starcher*, 282 S.E.2d 877 (W.Va. 1981); *State v. Nuckolls*, 273 S.E.2d (W.Va. 1980); *State v. Noe*, 230 S.E.2d 826 (W.Va. 1976).

The state also made the following comments:

> He knew Vanessa Reggettz was there by herself with her two children, didn't he? He knew that her husband worked at night. He didn't necessarily tell the whole story. Perhaps that's why Vanessa Reggettz's panties are on the bed – not on her body. Why her sanitary napkin was on the floor – a homemade sanitary napkin, not a store bought one, something has no pins to secure it, no tape to secure it, no belt to secure it. It was secured in place by her underwear, but her underwear is off her body and her sanitary napkin is on the floor.

> He did leave out a struggle in the front bedroom and he left out taking off her underwear. [(Emphasis added.) (Tr. 1376 and 1377)].

At the conclusion of the State's argument, defendant's counsel asked to approach the bench. The court, *sua sponte*, said, "I know you are going to raise an objection. [I]s it something that you think you want a curative instruction on or is it instructional?" (Tr. 1391).

- 40 -

Defendant's counsel replied, "I don't know." (Tr. 1391). The court continued: "The reason I ask is this, if you don't think it's something that can be taken care of by a curative instruction..." (Tr. 1391). "You made the timely request to object. I take it you object to the inference drawn from the panties and such?" (Tr. 1392). Defendant's counsel replied; "[Y]es." (Tr. 1392).

Defendant's counsel moved for a mistrial. (Tr. 1395). The court stated; "I overruled the motion for mistrial, and I will deny the request for a curative instruction." (Tr. 1396).

To justify the granting of a mistrial or new trial, the misconduct of the prosecutor must be so egregious as to render ineffectual the type of curative measure employed. *United States v. Weatherless*, 734 F.2d 179, 182, (4th Cir. 1984). The court immediately recognized the egregious nature of the state's inflammatory remarks, and understood that a curative instruction would not nullify the prejudicial inferences to the defendant. The court, therefore, should have granted the mistrial.

There was absolutely no basis for the state to make an argument that the defendant had sex with the victim, Vanessa Reggettz. No evidence was put forth during the course of the trial that remotely indicated that sex played any part in the crime.

The type of conduct engaged in by the state in Appellant's case was interdicted by the West Virginia Supreme Court: "The crime of which this defendant is accused is so revolting that it is difficult for the average jury to give the one accused the benefit of a reasonable doubt. Its very nature should have prompted the prosecuting attorney to exercise the highest degree of decorum in the conduct of the trial." *State v. Boyd*, 233 S.E.2d 710, 717 (W.Va. 1977).

Instead of exercising discretion, the state graphically and deliberately drew a mental image of a homemade sanitary napkin. What possible relevance does the fact the victim's sanitary napkin is homemade, has no pins, no tape and no belt to secure it have? None. Such conduct is not in consonance with the expectation that the prosecution will exercise the highest degree of decorum in the conduct of a trial. The only possible inference that one can make from the aforementioned argument is that the prosecutor was conscious of the fact she was talking to a white jury panel, the majority of whom were women, about a black defendant. It would have been damning if it had been a white defendant, but the implication of a black man having sex with a white woman, during her menstruation, is greater.

The litany of the sanitary napkin and its particulars were deliberately designed only to inflame the jury. The impact of a prosecutor's remarks is to be determined by considering the tendency of such remarks to mislead the jury, whether the remarks are isolated or extensive, and whether the remarks were deliberate or accidental. The remarks made by the state here were deliberate and without basis in fact. "A prosecuting attorney has a duty not to make statements concerning facts not in evidence or not inferable from the evidence." *State v.*

-41-

*Critzer*, 280 S.E.2d 288 (W.Va. 1981).

The United States Supreme Court sets forth the following guidance to prosecutors: "He may prosecute with earnestness and vigor -- indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much her duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935).

The state waited until its closing rebuttal argument to convey the aforementioned sex allegations, knowing that defendant's counsel would be unable to mitigate the prejudicial harm her inflammatory remarks would make. As has been noted, curative instructions would not be able to erase the mental image of the defendant, a black man, having sex with the attractive white victim, Vanessa Reggetts, during her menstrual period, a taboo that most people find less than pleasant. Only a new trial could cure the misconduct of the prosecutor.

## VI. CONCLUSION

Appellant has steadfastly maintained his innocence of the charges under which he is incarcerated. He also maintains that, contrary to this Court's findings, his "confessions" were illegally coerced. Appellant herein has made a *prima facie* showing that, if the facts set forth in his petition and memorandum are true, he has colorable grounds for habeas corpus relief. However, the Kanawha County Circuit Court, the Honorable Louis H. Bloom, abused its discretion when it summarily denied and dismissed Appellant's petition. This denied Appellant the due process to which he is entitled because, *inter alia*, this Court, without a proper record, cannot fairly decide Appellant's issues on appeal.

## VII. PRAYER FOR RELIEF

WHEREFORE, Appellant prays now and forevermore that the Court reverse the 7 February, 2006, judgement of the Kanawha County Circuit Court and remand the case for further proceedings, and/or for any further relief as the court deems just and necessary.

Respectfully submitted by:

John Moss, III
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: 304.442.7213

On this, the 2nd day of June, 2006.

Appellant proceeding *pro se.*

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

=====================================

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Appellant,

vs.

THOMAS L. McBRIDE, Warden
Mount Olive Correctional Complex,

Appellee.

=====================================

## CERTIFICATE OF SERVICE

I, John Moss, III, by my signature below, do hereby certify that a copy of the foregoing *pro se Petition On Appeal From A Final Judgement Of The Kanawha County Circuit Court Summarily Denying Habeas Relief And Dismissing Petition*, with *Exhibits*, West Virginia Supreme Court *Docketing Statement*, and *Designation Of The Record On Appeal*, has been served upon counsel for the respondent by handing true and exact copies thereof to prison officials this, the _2nd_ day of June, 2006, for mailing in the regular course of the United States Mail, postage prepaid, addressed as follows:

Kanawha County Prosecuting Attorney
700 Washington St. E.
Suite 400
Charleston, WV  25301

John Moss, III, *pro se* Petitioner

DO NOT REMOVE **FILE COPY**
FROM FILE
IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**DOCKETING STATEMENT**

FILED
2006 JUN -5 PM 2:56

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**Style of Case:**

John Moss, III,

      Petitioner,

v.

Thomas L. McBride, Warden,

      Respondent.

FILED
JUN 2 2 2006
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Circuit Judge: Louis H. Bloom
County: Kanawha

Civil  _X_
Criminal ___

Petitioner(s)

Plaintiff(s) _X_
Defendant(s) ___

Circuit
Number: 13th

---

**TIMELINESS OF APPEAL**

Date of entry of judgement or order appealed from: February 7, 2005

Filing date of any post-judgment motion filed by any party
pursuant to R.Civ.P. 50(b), 52(b), or 59:  February 14, 2005

Date of entry of order deciding post-judgment motion:  Court refused to rule on Petitioner's motion to enlarge
time within which to file Rule 59(e) motion.
Date of filing of petition for appeal: June 2, 2006.

Date of entry of order extending appeal period: _____, 2006.
      Time extended to: _____, 2006.

---

**FINALITY OF ORDER OR JUDGMENT**

Is the order or judgment appealed from a final decision on the merits as to all issues and parties?
    _X_ YES   ___ NO

If no, was the order or judgment entered pursuant to R.Civ.P. 54(b)?
          ___ YES   ___ NO   _X_ N/A

Has the defendant been convicted?    _X_ YES   ___ NO   ___ N/A
Has a sentence been imposed?    _X_ YES   ___ NO   ___ N/A
Is the defendant incarcerated?    _X_ YES   ___ NO   ___ N/A
Has this case previously been appealed?    ___ YES   _X_ NO   ___ N/A

    *If yes, give the case name, docket number, and disposition of each prior appeal on a separate sheet.*

Are there any related cases currently pending in the Supreme Court of Appeals or Circuit Court?

      ___ YES   _X_ NO
    *If yes, cite the case and the manner in which it is related on a separate sheet.*

## CASE INFORMATION

FILED

State generally the **nature of the suit**, the **relief sought**, and the **outcome below.**   This appeal is from a final order denying relief on a petition under W.V. Code § 53-4A-1, et. seq., for a writ of habeas corpus by a person in state custody. Petitioner sought immediate release from incarceration or a new trial.

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

State the **issues to be raised on appeal.**      See Additional Attached Sheet.

## CASE MANAGEMENT INFORMATION

Do you wish to make an oral presentation of the petition?      _X_ YES     ___ NO

Has the entire or only portions of the record been designated?     _X_ ENTIRE    ___ PORTION

If the appeal is granted, do you desire reproduction of the record ___ REPRODUCED

or that the case be heard on the original record?      _X_ ORIGINAL

**List counsel for each adverse party** to the appeal.  Include name, firm name, address, and telephone number.  If unrepresented by counsel, provide the address and telephone number of the adverse party.   Mike Clifford, Kanawha County Prosecuting Attorney.

**List the Petitioner(s) name:**     John Moss, III

If incarcerated, provide institutional address:   Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

**Name of attorney or pro se litigant filing Docketing Statement:** Same as above.

___ ATTORNEY  _X_ PRO SE

Will you be handling the appeal?      _X_ YES        ___ NO

If so, provide firm name, address, and telephone number:  N/A

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

Date: June 2, 2006.

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### DOCKETING STATEMENT

(Attached Additional Sheet)

State the issues to be raised on appeal:

a.  THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED THE DUE PROCESS AND EQUAL PROTECTION PROVISIONS OF THE WEST VIRGINIA CONSTITUTION WHEN IT SUMMARILY REFUSED APPELLANT'S REQUEST FOR HABEAS CORPUS RELIEF AND DISMISSED HIS PETITION.

1.  Did The Second Trial Court Have The Authority To Rule On The Merits Of Appellant's Motion To Suppress The Two 28 October, 1980, "Confessions" For The Investigating Authorities' Failure To Promptly Present The Juvenile To A Neutral Judicial Officer And, If So, Did It Abuse Its Discretion For Failing To Do So?

2.  Was This Court's Ruling In *Moss II*, That No Prompt Presentment Objections Were Preserved Before The Trial Court An Unreasonable Determination Of The Facts As Contained In The Record Herein Resulting In Manifest Injustice?

3.  Did Appellant Receive Ineffective Assistance Of Trial And Appellate Counsel?

4.  Did Appellant Receive A Full And Fair Opportunity To Present His Fourth Amendment Issues Before, During, Or After Trial Due To The Improper Tactics Of Fred S. Zain And The West Virginia State Police Troopers And Crime Laboratory?

5.  Was Appellant's Sixth Amendment Right To A Fair And Impartial Jury Contravened When The State Knew, Or Should Have Known, Of The False Or Misleading Testimony And Evidence Presented By A State Witness?

6.  Did The Second Trial Court Abuse Its Discretion When It Admitted Appellant's Blood Samples, "Confessions" And All Relevant Evidence Incident Thereto Into Evidence?

7.  Was Appellant's Due Process Rights Violated By The Improper Comments Of The Prosecutor?

App. Exh. #1



## THE COUNTY OF KANAWHA
### CLERK OF THE CIRCUIT COURT
P. O. Drawer 2351
Charleston, West Virginia 25328

F I L E D
. Kanawha Circuit Cou
Clerk's Office

**SEP 6 1985**

Phyllis J. Rutledge
Circuit Clerk
Telephone 357-0440

8/30/85
(DATE)

STATE OF WEST VIRGINIA,

VS.

FELONY No. CR-82-F-221

JOHN MOSS, JR., a/k/a JOHN MOSS, III

RECEIVED FROM PHYLLIS J. RUTLEDGE, CIRCUIT CLERK OF KANAWHA COUNTY,

CHARLESTON, WEST VIRGINIA, THE ABOVE STYLED ACTION, ON THIS THE   30th

DAY OF   August   , 19 85   .

_____, CLERK
SUPREME COURT OF APPEALS OF THE
STATE OF WEST VIRGINIA.

ORIGINAL TRANSCRIPT CONSISTING OF EIGHTEEN (18) VOLUMES, FILED JUNE 10, 1985.

476

App.Exh. #2

Edith Lilly - Cross                                        4001

   Q    Do you sell State's Exhibit 153 now?

   A    Yeah.  We carry Oneida, but it comes in a clear -- It

is in a clear wrapper.  It is not boxed like this, but we may

have some that is old stock still on hand.

   Q    Do you all sell State's Exhibit 151?

   A    No, sir.

   MR. BROWN:  Okay, thank you, ma'am.  That's all.

   MR. McKITTRICK:  That's all, Your Honor.

   THE COURT:  All right, Mrs. Lilly, you may step down.

   (Witness excused.)

   MR. McKITTRICK:  The defense rests, Your Honor.

   THE COURT:  All right, sir.

   Let the record reflect the defense rests at 11:44 am.,

April 18, 1984.

   Come to the bench.

   Ladies and gentlemen, we are going to stand in informal

recess for about five minutes.  Just stay in your chairs, and

even though it is informal, nonetheless, at the expense of

repeating myself, I would admonish you and each of you not to

discuss this case among yourselves.  Neither should you permit

anyone to discuss it in your presence.  Neither should you read

any newspaper accounts, watch any television accounts or listen

to any radio accounts of this trial or of any of the

personalities connected herewith.

Does the State have any rebuttal?

MR. BROWN: No, Your Honor.

THE COURT: All right, come to the bench.

(Whereupon, counsel and the defendant approached the bench where the following proceedings were had out of the hearing of the jury:)

MR. McKITTRICK: The defendant, John Moss, moves for a judgment of acquittal on the basis that the evidence would not sustain a conviction in this case; and renews all prior motions for mistrials and other motions made during the course of this trial.

THE COURT: The Court reaffirms all of its prior rulings as aforesaid in the record. The motion for a judgment of acquittal is denied. In this Court's judgment, the State has established a prima facie case sufficient in fact to go to the jury on all three counts of murder in the first degree.

How many instructions do you think you are going to have?

MR. McKITTRICK: I don't know. If I could have this afternoon to get my instructions --

THE COURT: Sure, and I will let them go until Monday with one caveat. I'm going to give you the rest of the day, but I expect both sides to have their instructions completed, exchanged and be ready to go at counsel table at 9:30 in the morning. Now, once all the instructions have been argued, if

STATE OF WEST VIRGINIA
THIRTEENTH JUDICIAL CIRCUIT
Judicial Annex
CHARLESTON, WEST VIRGINIA 25301
357-0361

App. Exh. #3

**JOHN HEY**
JUDGE

December 29, 1983

F I L E D
In Kanawha Circuit Court
Clerk's Office

DEC 30 1983

Phyllis Jean Cole
CLERK

Parrish McKittrick, Esq.
McKittrick & Murray
P. O. Box 4088
St. Albans, West Virginia   25177

Neva  G. Lusk, Assistant
   Prosecuting Attorney for Kanawha County
3d Floor, Judicial Annex Building
111 Court Street
Charleston, West Virginia   25301

          Re:   State of West Virginia vs. John
                  Moss, Jr., a/k/a John Moss, III
                  CR-82-F-221

Dear Sir and Madam:

     This letter will serve as the Court's ruling on defendant's motion to suppress blood samples, confession and other physical evidence seized from the defendant, John Moss, Jr., a/k/a John Moss, III.

     Counsel for the defendant submitted to the Court a rather lengthy memorandum of law, including some 74 pages, in support of defendant's motion to suppress.  The State replied by her Assistant Prosecuting Attorney in a 19-page memorandum.  The Court, after reading briefs of counsel, finds that the motion to suppress the above-described items is without merit and doth deny the same.

     This Court, without attempting to write a long, detailed opinion for the purpose of explaining its ruling, and for the sake of brevity, advises counsel that many of the matters raised by defendant's brief have previously been raised ad infinitum in this Court and the West Virginia Supreme Court of Appeals.  With respect to the motion to suppress the blood sample taken from the defendant suffice it to say that the first blood sample taken was ordered returned by the appropriate court in the State of Ohio; that Court finding that the blood was taken not in accordance with the appropriate Ohio statutes.  Subsequently, on April 22, 1980, a second blood sample was taken from the defendant under an appropriate Court order from the Common Pleas Court of Cuyahoga County,

232

Parrish McKittrick, Esq.
      and
Neva G. Lusk, Assistant PA, Kanawha County
December 29, 1983
Page 2

Ohio. It is this second blood sample that defendant seeks to
suppress. This Court finds that the Ohio court properly ordered
the blood sample taken from the defendant and to raise the de-
fense that, among other things, a responsible adult, such as the
defendant's parents, was not present is ludicrous at best given
the surrounding circumstances, i.e., defendant at that time had
obtained the age of eighteen and was incarcerated in an adult
penal institution in the State of Ohio serving a sentence for
rape/robbery/attempted murder of a Cleveland bus driver.   With
respect to counsel's argument that his lawyer was not present,
this Court, from a clear review of the record, finds that he had
no lawyer appointed for him on this particular charge, but, rather,
had a lawyer on a previous felony offense and said lawyer had no
standing in the issue of taking a blood sample from the defendant
pertaining to the instant case  (See cases cited in State's
Memorandum in Opposition to Defendant's Motion to Suppress).

     For the foregoing reasons and from a clear review of the
record in its entirety, the motion to suppress all matters
raised in defendant's brief is denied.

                    Very truly yours,


                    JOHN HEY
                    Judge


JH:dg

cc: Court file


243

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA

         Plaintiff,

v.

                                   CR-82-F-221
                                   (JUDGE HEY)

JOHN MOSS, JR., a/k/a
JOHN MOSS, III,

         Defendant.

F I L E D
In Kanawha Circuit Court
Clerk's Office

DEC 3 0 1983

_____, Clk.

                MEMORANDUM IN OPPOSITION
      TO DEFENDANT'S MOTION TO SUPPRESS

                          NEVA G. LUSK, Assistant
                          Prosecuting Attorney for
                          Kanawha County, West Virginia

## FACTS

Vanessa Reggettz, Paul Eric Reggettz and Bernadette Reggettz were murdered in their home during the late evening hours of December 13, 1979, or early morning hours of December 14, 1979.  Paul Reggettz, husband of Vanessa Reggettz and father of Paul Eric Reggettz and Bernadette Reggettz was subsequently arrested, confessed to the murders and indicted by the January 1980 Kanawha County Grand Jury.  John Moss was named in the indictment but was not indicted.

On January 30, 1980, Trooper Michael Smith and Trooper Terry Williams having learned that John Moss was incarcerated in Cleveland, Ohio, traveled to Cleveland and obtained a sample of Moss' blood.  That sample was retrieved by the Ohio Court on the same date and was never tested in any manner by the West Virginia authorities.

On February 1, 1980, a court order for school records of John Moss was served on Saint Albans High School.  On February 4, 1980, the State Policemen talked with Arthur Moss, John Moss' uncle.  He supplied them with the names of six of John Moss' friends in West Virginia.  The police spoke with one those friends, William Johnson, on February 5, 1980.  Johnson informed the police that John Moss had talked of burglarizing the Reggettz home approximately three weeks prior to the murders. Johnson also stated that Moss had give Arbutus Johnson, William Johnson's mother, a set of flatware for Christmas, in 1979.

On February 6, 1980, Arbutus Johnson confirmed the fact that
Moss had given her flatware for Christmas and turned the
flatware over to the State Police. The police then talked
to Andrea Hayes, Tommy Rogers, Boscoe Johnson, the parents
of James Harris, Leona Moss and others, all friends or relatives
of John Moss. On February 7, 1980, Trooper Smith searched
the former bedroom of John Moss, located in his grandfather's
house at 7003 Chesapeake Avenue, St. Albans. That residence
is situate approximately 200 yards from the Reggettz residence.

On April 22, 1980, Trooper Michael Smith, Trooper
Terry Williams and Assistant Kanawha County Prosecuting Attorney,
Charles Pettry traveled to Cleveland, Ohio, to obtain a blood
sample from John Moss. An order had been entered by the
Criminal Division of the Court of Common Pleas, Cuyahoga
County, Ohio, ordering John Moss to submit to the withdrawal
of a blood sample and saliva sample. A blood sample was
ordered given to West Virginia authorities and a blood sample
and saliva sample were ordered given to Ohio authorities.
The blood samples were withdrawn, and the West Virginia auth-
orities transported their sample to the West Virginia State
Police Chemistry Laboratory. Examination of the blood
revealed that the Moss blood and blood from the scene of
the homicides were consistent.

Additionally, the State Police had obtained test
fired bullets and casing from the handgun used by Moss in
the rape/robbery/attempted murder of a Cleveland bus driver.

The West Virginia State Police Ballistics Laboratory deter-
mined that those test fired casings and bullets were fired
from the same gun as the bullets and casings which were
evidence in the Montena Diegert malicious wounding at the
St. Albans Moose Club.  A petition issued charging John Moss
with this crime and on October 28, 1980 Troopers Smith and
Williams traveled to the reformatory at Mansfield, Ohio,
to transport John Moss to West Virginia under the Interstate
Agreement on Detainers.  During the trip back John Moss
confessed to the malicious wounding.  After stopping at the
Parkersburg Department of Public Safety detachment  John
Moss orally and on tape confessed to the Reggettz homicides.

On October 28, 1980, Troopers Smith and Williams
went to Cleveland and obtained a search warrant for the residence
of Moss' parents.  The search warrant was executed and the
State Police seized two cameras and a rifle scope.  Later
the same day John Moss' father voluntarily surrendered to
Williams and Smith the camera which was subsequently identified
as the camera belonging to Paul Reggettz.  Williams and Smith
also talked to Carlton Moss, John Moss, Jr. and Margie Moss.

John Moss was returned to Ohio and juvenile petitions
issued on November 3, 1980 charging John Moss with the first
degree murders of Vanessa Reggettz, Paul Eric Reggettz and
Bernadette Reggettz.  On December 17, 1980, Troopers Williams
and Smith returned to Mansfield, Ohio, and transported John
Moss to West Virginia on the murder charges under the Inter-

-3-

state Agreement on Detainers.

Subsequently, John Moss was transferred to the
criminal jurisdiction of the Circuit Court, indicted by the
September 1982 Kanawha County Grand Jury and is currently
pending trial on that three count first degree murder indict-
ment.

### SHOULD THE SAMPLE OF JOHN MOSS' BLOOD BE SUPPRESSED?

John Moss gave the West Virginia State Police a
sample of his blood on January 30, 1980, however, the sample
was returned to the Ohio court on that date and was never
tested or examined in any manner. The State of West Virginia
will not attempt to introduce that sample into evidence
during the trial of this case since it was never tested and
is not in the possession of the State.

On April 22, 1980, Trooper Terry Williams, Trooper
Michael Smith and Assistant Kanawha County Prosecuting Attorney
Charles Pettry traveled to Cleveland, Ohio, to obtain a blood
sample from John Moss. Prior to their arrival the Court
of Common Pleas of Cuyahoga County, Ohio, had entered an
order requiring John Moss to submit to the withdrawal of
blood for West Virginia and Ohio authorities. The Court
had examined the affidavits of Trooper Michael Smith and
Kanawha County Prosecuting Attorney, James E. Roark and
Cleveland Police officer Charles Shawan as well as a brief

-4-

of the Prosecuting Attorney of Cuyahoga County, Ohio.   The
brief cites the relevant Ohio statute, O.R.C. Section 2317.47
as reading as follows:

> "Whenever it is relevant in a civil or criminal
> action or proceeding to determine the paternity
> or identity of any person, the trial court on
> motion shall order any party to the action and
> any person involved in the controversy or pro-
> ceeding to submit to one or more blood-groupong
> tests, to be made by qualified physicians or
> other qualified persons not to exceed three,
> to be selected by the Court and under such
> restrictions of directions as the court or judge
> deems proper."

. The Ohio statute has been held constitutional and
applicable to criminal cases such as breaking and entering.
State v. McGrew, 25 O.App.2d 175; 268 N.E.2d 286 (1971).
The Ohio Supreme Court has also held the granting of a motion
for blood grouping tests ex parte is not necessarily prejudicial
to the defendant, State v. Williams, 51 O.S.2d 112, 364 N.E.2d
1364 (1977).

Clearly, the West Virginia and Ohio affidavits
showed the Ohio Court that the blood-grouping tests were
relevant to the criminal investigations in West Virginia
and Ohio.  The Ohio statute and order were complied with
on April 22, 1980.  Pursuant to the court order the blood
was withdrawn by a physician in the presence of a Cleveland
Police Department Detective and a representative of the Kanawha
County Prosecuting Attorney's office and the West Virginia
Department of Public Safety.  Since the Ohio statute was
complied with the sample of John Moss' blood should be admitted

-5-

at the trial of this case.

Should the Court find John Moss' Fourth Amendment rights were violated when his blood was withdrawn it must determine whether the evidence must be suppressed under the exclusionary rule.

There are three recognized exceptions to the exclusionary rule: 1) where evidence sought to be introduced has an independent source, 2) where the evidence would inevitably have been discovered, and 3) where the connection between the unconstitutional police conduct and the discovery of the evidence is so attenuated as to remove any taint of the original illegality. State v. Hawkins, ___W.Va.___, 280 S.E.2d (1981).

The Ohio Court ordered a blood sample withdrawn for use by Ohio authorities at the same time it ordered blood withdrawn for West Virginia authorities. On April 22, 1980, blood samples were withdrawn from John Moss and given to West Virginia authorities and Ohio authorities. Clearly, the State of West Virginia had an independent source for the blood sample evidence. If the blood had not been withdrawn for West Virginia, the State could have merely used the lab results from the testing in Ohio. The blood sample clearly falls under the independent source exception to the exclusionary rule and should not be suppressed.

-6-

WERE THE FLATWARE, STATEMENTS OF WILLIAM
JOHNSON AND ARBUTUS JOHNSON AND JOHN MOSS'
CONFESSIONS FRUIT OF AN ILLEGAL SEARCH?

The defendant argues that William Johnson, Arbutus Johnson, the flatware, and John Moss' confessions were fruit of an illegal search.  The doctrine of the fruit of the poisonous tree was recognized in the United States in as early as 1920 in Silverthorne Lumber Co. v. United States, 51 U.S. 385, 64 L.Ed. 319, 40 S.Ct. 182 (1920).  Very simply stated the doctrine requires suppression of some evidence if that evidence was discovered by exploitation of a prior constitutional illegality. Wong Sun v. United States, 371 U.S. 471, 9 L.Ed 2d 441, 83 S.Ct. 407 (1963).  Thus, in order to contemplate suppression of evidence under this doctrine it must be established that the evidence was a product of or that there was some causal connection between it and a prior constitutional violation.  It is here that the defendant has failed miserably.

Defendant asserts he supplied the name of his friend William Johnson to the State Police on January 30, 1980.  The record does not reflect this fact.  William Johnson's name and five others were supplied to the State Police on February 5, 1980, by the defendant's uncle, Arthur Moss.  Thereafter, the police undertook to interview each of those friends of John Moss and did interview William Johnson on February 5, 1980.  On that date William Johnson informed

the State Police that John Moss had talked about burglarizing the Reggettz home approximately three weeks prior to the murders. Additionally, Johnson stated that John Moss had given his mother, Arbutus Johnson, a set of flatware for Christmas, in 1979. The State Police talked to Arbutus Johnson on February 6, 1980, she confirmed the fact that John Moss had given her a set of flatware for Christmas and turned the flatware over to the State Police on that date. Clearly, there is no connection between the short conversation between John Moss and the State Police on January 30, 1980, and the discovery of William Johnson, Arbutus Johnson, and the flatware. Even if the Court found some connection the evidence certainly would have been discovered through an independent source, and exception to the exclusionary rule recognized in State v. Hawkins, supra.

The defendant additionally argues that the defendant's confessions are somehow fruit of the poisonous tree. The defendant relies on conclusiary testimony of Trooper Terry Williams that the defendant was not a suspect until after his blood was compared with that found in the Reggettz home. Again the defendant has failed to show a causal connection between a constitutional violation and the evidence he wishes to suppress. The defendant ignores the facts that the State Police were actively investigating John Moss in February, 1980. They talked to two of his uncles and several of his friends including William Johnson who indicated Moss expressed

-8-

a desire to break into the Reggettz home just weeks prior
to the murders. They had secured the flatware from Arbutus
Johnson and had searched Moss' former bedroom at the residence
of his grandfather, John Moss, Sr. Additionally, the State
Police had interviewed teachers and students at Saint Albans
High School where Moss had been a student in December, 1979.
The defendant also ignores the fact that Moss was being trans-
ported to West Virginia, on October 28, 1980, on a charge
of malicious wounding when he confessed to the Reggettz
murders. The malicious wounding charge had also been
actively investigated. The State Police ballistics
laboratory had matched bullets from the malicious wounding
with the handgun Moss had used in the rape/robbery/ attempted
murder of a Cleveland bus driver. And as Assistant Prosecuting
Attorney Beverly Selby testified at the suppression hearing,
the State intended to prosecute that charge. Thus, the
defendant is incorrectly arguing that the State Police would
not have questioned John Moss about the homicides on October
28, 1980 if his blood had not been taken in Ohio. This bold
assumption is absurd. William Johnson's statement alone
gave State Police reason to question Moss about the murders.

The defendant has failed to show that any of the
State's evidence is a product of the taking of John Moss'
blood.

WERE JOHN MOSS' RIGHTS AS A JUVENILE VIOLATED
WHEN HIS BLOOD WAS WITHDRAWN ON APRIL 22, 1980?

John Moss was seventeen years of age on December
13th and 14th, 1979, when the Reggettz murders were committed
and was accordingly under the juvenile jurisdiction of the
Circuit Court until transferred to the criminal jurisdiction.
The defendant argues that his blood should not have been
taken without his parent or counsel present because the blood
constituted a confession.

The defendant's argument hopelessly confuses his
rights under the Fourth and Fifth Amendments.  The Fifth
Amendment privilege against self-incrimination relates only
to testimonial or communicative acts on the part of the
person to whom the privilege applies, and does not apply
to acts noncommunicative in nature.  Blood test evidence,
although an incriminating product of compulsion, was held
neither the accused's testimony nor evidence relating to
some communicative act or writing.  Schmerber v. California,
384 U.S. 757, 16 L.Ed 2d 908, 86 S.Ct. 1826 (1966).  The
Supreme Court further stated that the Fifth Amendment "offers
no protection against compulsion to submit to fingerprinting,
photographing, or measurements, to write or speak for
identification, to appear in court, to stand, to assume a
stance, to walk, or to make a particular gesture...compulsion
which makes a suspect or accused the source of real or physical

evidence does not violate" the privilege. (Emphasis supplied.)
The West Virginia Supreme Court of Appeals adopted this language
from Schmerber in State v. Harman, ___W.Va.___, 270 S.E.2d
146 (1980).

The defendant cites State ex rel. J. M. v. Taylor,
___W.Va.___, 276 S.E.2d 199 (1981) as being applicable to
the present case. In J.M. a juvenile had completed the
entire juvenile process i.e. preliminary hearing, guilty
plea and disposition without counsel. The West Virginia
Supreme Court of Appeals addressed the subject of waivers
by juveniles and held that a juvenile could not waive his
right to counsel during this process without advise of
counsel. The case does not address investigatory stages
of a case but focuses on what would be the critical stages
of an adult proceeding. J. M. has no application to the
present issue of the blood sample since John Moss' blood
was not taken on April 22, 1980 pursuant to a waiver by him
but rather was taken pursuant to a lawful court order.

Nor does the West Virginia Code require an adult
or counsel present during the investigation of a juvenile
case as the defendant asserts. The Code requires parents
be notified when a petition issues against a juvenile. See
Code §49-5-7. And the Code places certain restrictions on
the questioning of juveniles. See Code §49-5-1(d), however,
this requirement goes to waivers of the Fifth Amendment
privilege against self-incrimination not to court ordered

-11-

searches where waiver is not an issue.  Therefore, the Code
section has no application to the John Moss blood sample
since it was not taken as a result of a waiver by him.


### IS JOHN MOSS' DETAINMENT ILLEGAL UNDER THE INTERSTATE COMPACT ON DETAINERS?


Defendant argues that the failure of the State
of Ohio to provide defendant with a pre-transfer hearing
renders the transfer of the defendant to West Virginia
illegal. Defendant cites Cuyler v. Adams, 449 U.S. 433, 66
L.Ed 2d 641, 101 S.Ct. 703 (1981), a case decided after John
Moss reached West Virginia, for this proposition.  The Court
in Cuyler considered defendant's civil claim under 42 U.S.C.S.
§§1981 and 1983 and held that he was entitled to a pre-transfer
hearing under the Uniform Agreement on Detainers just as
he would be under the Uniform Extradition Act.  The Court
further held that the defendant has stated a civil claim
against Pennsylvania authorities because they had denied
him his statutory right to a hearing before being transferred
to the State of New Jersey.  It should be noted that the
defendant was transferred to New Jersey without a hearing,
convicted in New Jersey and returned to Pennsylvania.  The
United States Supreme Court did not set aside his New Jersey
convictions.  It merely held the defendant has stated a claim
against Pennsylvania authorities.


-12-

Since the detainer statute has been held analogous to the Extradition Act it is important to examine the West Virginia interpretation of the Extradition Act. In _State v. Flint_, W.Va. 301 S.E.2d 765 (1983) the West Virginia Supreme Court of Appeals addressed the defendant's challenge to his extradition to West Virginia from Nevada without benefit of counsel. The Court at page 772 stated the general rule:

> In interstate extradition proceedings, the prisoner is held under extradition process only until such time as he reaches the jurisdiction of the demanding state, and is thenceforth held under the process issued out of the courts of that state, consequently, the regularity of extradition proceedings may be attacked only in the asylum state; <u>after an alleged fugitive has been delivered into the jurisdiction of the demanding state, the proceedings may not be challenged.</u> (Emphasis supplied.)

Additionally, the _Flint_ court cited its holding in _State ex rel. Sublett v. Adams_, 145 W. Va. 354, 115 S.E.2d 158 (1960), cert. denied 366 U.S. 933, 81 S.Ct. 1652, 6 L.Ed. 2d 392 (1961) that "once a defendant who has been extradited to this State 'the method of [the defendants'] return, even though illegal or forcible, does not invalidate his conviction...under the due process clause of the Fourteenth Amendment.'"

Clearly, the defendant, John Moss, is being held under West Virginia indictment and may not now challenge the pre-transfer proceeding in Ohio.

-13-

The defendant additionally asserts that if his detainment was illegal his confession was illegal. It is not disputed that a confession which results from the unconstitutional seizure of the person must be suppressed. Dunaway v. New York, 442 U.S. 200 (1979). However, such a confession is fruit of a constitutional violation, a violation of the Fourth Amendment. In the present case John Moss' detainment was the result of a detainer having been processed and any violation of the detainer would have been a statutory violation not a constitutional violation. Therefore, the fruit of the poisonous tree doctrine is not applicable. See Wong Sun, supra.

## ARE JOHN MOSS' CONFESSIONS ADMISSIBLE?

The defendant contends that his right to remain silent and right to counsel were violated and that his confession was coerced. In support of his assertion that his right to remain silent and right to counsel were violated defendant alleges that Trooper Mike Smith interrogated him about the murders in the back seat of the police cruiser and that the defendant indicated he did not have anything to say to the troopers and wanted to talk to his lawyer, Jim Williams. Both Trooper Smith and Trooper Williams have repeatedly testified that Trooper Smith advised Moss of his certain constitutional rights from the back of his State

-14-

Police Identification Card in the police cruiser and he
indicated he understood those rights.  Moss then confessed
to the malicious wounding at the Moose Club.  The particulars
of the Reggettz murders were not discussed in the car but
Moss indicated he would talk to the police about these serious
crimes.  After arriving in Parkersburg Moss was again advised
of his rights from a Department of Public Safety form.  He
again indicated he understood those rights and waived them
in writing.  Thereafter he orally confessed to the Reggettz
homicides.  Again Moss was advised of his rights and he
waived them in writing.  And again he confessed to the
Reggettz murders, this time on tape.  During the interviews
in Parkersburg Moss was given food and drink, permitted to
smoke although neither trooper smoked, and permitted to use
the restroom upon request.  At no time either in the car
or the Parkersburg detachment did John Moss indicate he did
not wish to talk to the police about the murders.  At no
time did he stop the questioning.  And at no time did he
indicate he had a lawyer, mention a specific lawyer's name
or indicate that he wanted a lawyer.  The police did not
threaten or abuse John Moss in any manner nor did they make
him any promises in exchange for his statements.

The defendant's oral and taped confessions were
knowingly and intelligently given with a full understanding
of his constitutional rights and after a waiver thereof.
Additionally, the confessions were voluntarily given with

-15-

a willingness to talk to the police and without police
threats, intimidation or promises.   The State has shown at
least by a preponderance of the evidence that John Moss waived
his right to remain silent and right to counsel.

The defendant contends that since he was procedurally
a juvenile at the time of his confession he should be afforded
the statutory rights of a juvenile during custodial
interrogation.   The defendant incorrectly states the law
in West Virginia on this point.   West Virginia Code §49-5-1(d)
dealing with custodial interrogation of juveniles reads:

> "Unless otherwise specifically provided in this
> chapter, all procedural rights afforded adults
> in criminal proceedings shall be applicable.
> Extrajudicial statements, other than res gestae,
> by a child under fourteen years of age to
> law-enforcement officials or while in custody,
> shall not be admissible unless made in the
> presence of the child's counsel.
>
> Extrajudicial statements, other than
> res gestae by a child under sixteen years of age
> but above the age of thirteen to law-enforcement
> officers or while in custody, shall not be
> admissible unless made in the presence of the
> child's counsel or made in the presence of and
> with the consent of the child's parent or
> custodian who has been fully informed regarding
> the child's right to a prompt detention hearing,
> his right to counsel including appointed counsel
> if he cannot afford counsel, and his privilege
> against self-incrimination."

Clearly, the legislature intended to afford extra
procedural safeguards for juveniles as they were regressively
younger.   Thus, a child of thirteen years of age or younger
must have had counsel present during a statement in order

-16-

for it to be admissible. And a fourteen or fifteen year old must have had counsel or a parent present. But the legislature placed no such requirement on the police for taking a statement of a sixteen or seventeen year old juvenile.

So in order to determine the appropriate safeguard, the age of the child at the time of the statement must be ascertained. The record reveals that John Moss reached his eighteenth birthday on May 5, 1980, five and one half months prior to confessing to the State Police on October 28, 1980. Therefore, on the date of his confessions John Moss was an adult. The law clearly is intended to afford safeguards for children who may not be able to understand the significance of waiving constitutional rights. But it would be ridiculous to assert that John Moss, at age eighteen, and already convicted as an adult of rape, robbery and attempted murder in Ohio was entitled to the safeguards of a juvenile in order for his confessions to be admissible.

For the foregoing reasons as well as the reasons discussed previously, the ruling in State ex rel. J. M. v. Taylor, ___W.Va.___, 276 S.E.2d 199 (1981) is not applicable here. It would be absurd to propose that a thirty year old man could not waive his right to remain silent and right to counsel and confess to a crime he committed while a juvenile. It is equally absurd to assert that John Moss could not make an intelligent waiver during adulthood and confess to crimes he committed while he was a juvenile.

-17-

Defendant's arguments that the Kodak camera, 122 caliber rifle scope and statements of John Moss, Jr., Carlton Moss and Margie Moss should be suppressed are equally without merit. Since this evidence was not the fruit of a prior constitutional illegality it should not be suppressed.

## WAS JOHN MOSS' POST-INDICTMENT RIGHT TO COUNSEL VIOLATED?

Defendant asserts he was named in the Paul Reggettz indictment, therefore, he should have been afforded the rights of an indictee.

The Circuit Court of Kanawha County records clearly reflict that John Moss was merely named in the Paul Reggettz indictment returned in the January 1980 Term of the Kanawha County Grand Jury and that no indictment was returned against him. If an indictment had been returned against John Moss the procedure set forth in West Virginia Code §49-5-1 would be applicable and the matter would have been certified to the juvenile jurisdiction of the Circuit Court. But John Moss was not charged with the three Reggettz homicides until juvenile petitions issued on November 3, 1980. Therefore, defendant's contention that his post-indictment right to counsel was violated under Massiah v. United States, 377 U.S. 201 (1964) and McLeod v. Ohio, 381 U.S. 356 (1965) is without merit since John Moss was not charged with the Reggettz murders at the time of his confessions or the taking

-18-

of his blood sample.

The defendant additionally argues that the defendant was in custody, beginning a term of incarceration under Ohio conviction and represented by Ohio counsel when his blood sample was taken as well as when his confessions were given, therefore, his right to counsel was violated on both occasions. The West Virginia case, State v. Clawson, ___W.Va.___, 270 S.E.2d 659 (1980) speaks to this issue. Clawson, a West Virginia homicide suspect, had court appointed counsel in New Jersey on an unrelated charge. The West Virginia Supreme Court of Appeals held that the West Virginia police were not precluded from interrogating him on the West Virginia murder charges either from an ethical or constitutional stand point simply because he was represented by counsel on an unrelated charge. There has been no assertion by John Moss that he was represented by counsel on the murder charges on or before October 28, 1980. The essential issue is whether the defendant desires to be represented by counsel on the charge for which he is being questioned. John Moss voluntarily, knowingly and intelligently waived that right on October 28, 1980, prior to his confessions. Such a waiver of constitutional rights is not an issue with regard to the blood sample since it was taken under court order and John Moss was not confronted with the issue of waiving his rights.

Respectfully submitted,

Neva G. Lusk

NEVA G. LUSK, Assistant
Prosecuting Attorney for
Kanawha County, West Virginia

-19-



## CERTIFICATE OF SERVICE

I, NEVA G. LUSK, Assistant Prosecuting Attorney for Kanawha County, do hereby certify that a true copy of the foregoing Memorandum in Opposition to Defendant's Motion to Suppress was served upon the attorney of record in the above cause, by enclosing the same in an envelope addressed to said attorney at his business address, Parrish McKittrick, 450 2nd Street, St. Albans, West Virginia, 25177, the same being his last known address, with postage fully paid, and depositing said envelope in the regular United States mail on the _17th_ day of October, 1983.

_Neva G. Lusk_
NEVA G. LUSK



JOHN MOSS, III, DOC# 13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

DO NOT REMOVE
FROM FILE
FILE COPY

FILED
JUN 2 8 2006
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

June 27, 2006

Mr. Rory Perry, II, Clerk
West Virginia Supreme Court of Appeals
State Capitol Complex
Building 1, Room EW-317
1900 Kanawha Blvd. East
Charleston, WV  25305

Re:  West Virginia Supreme Court No. 0601721, Motions.

Mr. Perry:

By letter dated 22 June, 2006, I received notice from this office that my petition for appeal from the Kanawha County Circuit Court's denial of my habeas petition, Kanawha County Case No. 05-MISC-298, was received, filed and assigned WVSCA #061721.

Enclosed for filing, pursuant to Rule 17(c), W.V.R.A.P., please find the original and five (5) copies of my pro se Motion To Hold Petition On Appeal In Abeyance, Appoint Counsel, And To Thereafter Allow Filing Of Supplemental Petition On Appeal, Motion To Request Justice Benjamin Voluntarily Recuse Himself, and Certificate Of Service, certifying that copies have been served upon counsel for the respondent.

Also enclosed is an extra copy of this cover letter. Please date and time stamp this extra copy, indicating the date on which these pleadings were filed, and return it to me at the above address. Thank you.

Sincerely yours,

John Moss, III

JM/tlb
Encs.
cc: file

JOHN MOSS, III, DOC# 13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

**FILE COPY**

June 27, 2006

Mr. Rory Perry, II, Clerk
West Virginia Supreme Court of Appeals
State Capitol Complex
Building 1, Room EW-317
1900 Kanawha Blvd. East
Charleston, WV  25305

    Re:  West Virginia Supreme Court No. 0601721, Motions.

Mr. Perry:

    By letter dated 22 June, 2006, I received notice from this office that my petition for appeal from the Kanawha County Circuit Court's denial of my habeas petition, Kanawha County Case No. 05-MISC-298, was received, filed and assigned WVSCA #061721.
    Enclosed for filing, pursuant to Rule 17(c), W.V.R.A.P., please find the original and five (5) copies of my pro se Motion To Hold Petition On Appeal In Abeyance, Appoint Counsel, And To Thereafter Allow Filing Of Supplemental Petition On Appeal, Motion To Request Justice Benjamin Voluntarily Recuse Himself, and Certificate Of Service, certifying that copies have been served upon counsel for the respondent.
    Also enclosed is an extra copy of this cover letter.  Please date and time stamp this extra copy, indicating the date on which these pleadings were filed, and return it to me at the above address.  Thank you.

                                    Sincerely yours,

                                    John Moss, III

JM/tlb
Encs.
cc: file

No. ___061721___

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

STATE OF WEST VIRGINIA, EX REL.,
JOHN MOSS, III,

APPELLANT,

vs.

THOMAS L. McBRIDE, Warden,
Mount Olive Correctional Complex,

APPELLEE.



FILE COPY
DO NOT REMOVE
FROM FILE

FILED
JUN 2 8 2006
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MOTION TO HOLD PETITION ON APPEAL IN ABEYANCE, APPOINT COUNSEL, AND TO THEREAFTER ALLOW FILING OF SUPPLEMENTAL PETITION ON APPEAL

COMES NOW, John Moss, III, pro se Appellant, (hereinafter "Appellant") pursuant to Rule 17(a) & (b), W.Va.R.A.P., and respectfully moves the Honorable Court for an Order holding the present petition on appeal in abeyance, appoint counsel to represent Appellant in these proceedings, and allow counsel to file a Supplemental Petition On Appeal, appealing the 7 February, 2006, Order by the Kanawha County Circuit Court, the

Honorable Louis H. Bloom, which summarily denied and dismissed Appellant's pro se petition and memorandum for state post-conviction relief. In support of Appellant's Motion, he asserts the following:

1). That on or about 2 July, 2005, Appellant's pro se **Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1**, and **Memorandum** in support thereof, with **Exhibits**, were marked filed in the Kanawha County Circuit Court Clerk's Office (designated as part of the record on appeal herein);

2). By Order entered on or about 7 February, 2006, the Kanawha County Circuit Court entered its Order summarily denying and dismissing said petition. The 2/7/06 Order, however, failed to rule on Appellant's motion for the appointment of counsel and motion and affidavit to proceed in forma pauperis filed contemporaneously with his habeas petition and memorandum (designated as part of the record herein);

3). That on or about 14 February, 2006, Appellant's **Motion For Additional Time Within Which To File Rule 59(e) Motion**, was marked filed in the Kanawha County Circuit Court Clerk's Office (designated as part of the record herein). The court, however, refused to rule on said motion;

4). That on or about 11 May, 2006, Appellant's first **Motion For Enlargement Of Time Within Which To File Petition On Appeal**, as well as his **Motion For The Court To Consider Petitioner's Previously Filed Motion For The Appointment Of Counsel**, was marked filed in the Kanawha County Circuit Court Clerk's Office

(designated as part of the record herein). After a period of time without receiving a ruling on Appellant's motion, Appellant reminded the court, in a 19 May, 2006, letter, of his motion for additional time to file his appeal, the court's neglecting to rule on Appellant's motion for the appointment of counsel, and his motion and affidavit to proceed in forma pauperis. (See, 5/19/06, letter to Judge Bloom, attached hereto as **Appellant's Exhibit** 1, hereinafter **App.Exh.** 1);

5). By Orders entered on or about 24 May, 2006, the court denied Appellant's Motion for additional time to file his petition on appeal and for the appointment of counsel, but granted Appellant's request to proceed in forma pauperis (designated as part of the record herein). This left the date the petition was due filed to be on or about 6 June, 2006;

6). By letter and motion dated 19 May, 2006, Appellant also requested additional time from this Court to file a petition on appeal. However, Appellant never received a response to his letter and/or motion;

7). Appellant handed to prison officials for mailing, on or about 2 June, 2006, his **Petition On Appeal From A Final Judgment Of The Kanawha County Circuit Court Summarily Denying Habeas Relief And Dismissing Petition,** West Virginia Supreme Court **Docketing Statement, Designation Of The Record On Appeal,** and **Certification** that the same was served upon the Respondent Warden by mailing the same to the prosecuting attorney of Kanawha County. The said petition, with Exhibits and accompanying documents, were filed in the Kanawha County Circuit Court on or about 5 June, 2006;

8). On or about 26 June, 2006, Appellant received notice that his petition and record designated on appeal was transmitted to and filed by this Court on or about 22 June, 2006, and assigned Supreme Court Case No. 061721;

9). That due to, inter alia, the voluminous case file and record, Appellant not having the benefit of receiving and viewing all transcripts of the proceedings, the complex and intricate nature of the claims raised by Appellant in his state post-conviction petition, and the Kanawha County Circuit Court's unreasonable determination of those claims, Appellant has not had ample time to formulate and draft a constitutionally approved petition on appeal adequately addressing the habeas court's summary denial and dismissal;

10). That, although Appellant attempted to gain additional time within which to formulate and draft a constitutionally adequate petition for appeal, Judge Bloom denied Appellant's request, in effect forcing Appellant to file his petition prematurely. As basis for denying Appellant additional time, Judge Bloom states in the Order that "The Kanawha County Circuit Clerk's Office has timely provided Mr. Moss with all the information contained in the record that he has requested." However, that finding is completely unwarranted and misstates the facts. In a 5 May, 2006, letter, Appellant informed Judge Bloom of the Clerk's assertion that portions of the case file, vital to Appellant's opportunity to demonstrate his entitlement to habeas relief, were missing. (See 5/5/06 letter to the Court, attached hereto as **Appellant's Exhibit 2**, hereinafter, **App.Exh. 2.**);

- 4 -

11). While it is true the Kanawha County Circuit Court Clerk has been extremely helpful and cooperative in providing requested materials and/or documents from the file, Appellant has never been provided a free copy of all the transcripts listed in Kanawha County Circuit Court Case No. 82-F-221, **Docketing Statement Index Sheet,** (attached hereto as **Appellant's Exhibit 3,** hereinafter **App.Exh. 3).** Specifically, Appellant has not received the transcripts which are listed on Line 30 as being filed. **(App.Exh. 3, Line 30.)** Appellant has, on several occasions, attempted to obtain copies of the transcripts listed on Line 30, as well as other transcripts from the juvenile proceedings which transferred Appellant from the juvenile authority to adult status. (See 3/24/06, letter to the Kanawha County Circuit Court Clerk, the Clerk's 3/27/06, response, 5/2/06 letter to the Clerk, and the Clerk's 5/15/06, response, attached hereto as **Appellant's Exhibit 4a, 4b, 4c and 4d** respectively, hereinafter **App.Exh. 4_.)** In response to Appellant's requests, the Clerk stated that nothing was contained in the file on Line 30, and that documents, etc., of the juvenile proceedings were not public record and, presumably, not available to Appellant. **(App.Exh. 4d.);**

12). Although Appellant is not certain what the transcripts listed on Line 30 contain, he reasonably believes them to be transcripts of a hearing held by the Kanawha County Circuit Court, John Hey, Judge, ruling on Appellant's 23 March, 1983, **Motion To Suppress Confession,** the subsequent 19, 20, 21 & 22 September, 1983, hearings on said motion, and 3 October, 1983,

Memorandum In Support Of Defendant's Motion To Suppress Samples Of Blood, Confession, And Other Physical Evidence Seized From John Moss By Employees Of The State Of West Virginia (all of which are attached to Appellant's petition and memorandum for state post-conviction relief, designated as part of the record on appeal herein). Those transcripts contain Judge Hey's specific ruling on Appellant's motion and memorandum of law, which said motion was based on the West Virginia authorities's failure to promptly present the juvenile suspect before a neutral judicial officer or magistrate, to suppress two "confessions" obtained from Appellant on 28 October, 1980, as well as Appellant's objections to Judge Hey's ruling denying Appellant's motion. Whether or not Appellant objected to the court's ruling is a matter in dispute. Transcripts of the court's ruling would unequivocally demonstrate that objections were entered;

13). The transcripts of the juvenile transfer hearings contain discussions and rulings on many of the issues presented in Appellant's **Motion To Suppress...**, and are vital to Appellant's opportunity to demonstrate his entitlement to habeas corpus relief. (See, **Petitioner's Exhibit #1**, September 19, 20, 21 & 22, 1983, Suppression Hearings Transcript, pp. 32-38 & 72-73, attached to Appellant's petition and memorandum for state post-conviction relief, designated as part of the record herein.) Not affording Appellant an opportunity to explore the information contained in the transcripts prior to filing his petition on appeal thwarted Appellant's opportunity to

demonstrate his entitlement to habeas corpus relief, bolsters the state's interests in having those transcripts suppressed, and violates due process;

14). The issue of whether Appellant made objections to Judge Hey's adverse ruling is key to Appellant's opportunity to file and have considered a constitutionally approved petition appealing the habeas court's summary denial and dismissal of the underlying habeas corpus petition. (See **Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1** and **Facts And Memorandum In Support Of Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum**, designated as part of the record on appeal herein, as well as the foregoing **Petition On Appeal From A Final Judgment Of The Kanawha County Circuit Court Summarily Denying Habeas Relief And Dismissing Petition.**);

15). Appellant attempted to obtain Judge Hey's ruling on Appellant's motion and memorandum to suppress the "confessions," a document Appellant had never reviewed or even knew existed until on or about 24 March, 2006, after requesting and receiving the Docketing Index Sheet, Kanawha County Case No. 82-F-221 (App.Exh. 3). However, when Appellant requested the court's ruling, as listed on Line 28 of the docketing index, (App.Exh. 3, Line 28) in a 4 April, 2006, letter to the Clerk, Appellant did not receive the court's ruling, notwithstanding the Clerk's responses of 25 April, 2006, (attached hereto as **Appellant's Exhibit 5**, hereinafter App.Exh. 5) and again on 15 May, 2006, (App.Exh. 4d) wherein the Clerk informs Appellant there is no transcript as listed on Line 30, (see supra). Appellant then

- 7 -

wrote the Clerk again, in a 2 May, 2006, letter, (App.Exh. 4c) explaining that the court's ruling was not included in the several items provided to Appellant from his 4/4/06 request (attached hereto as Appellant's Exhibit 6, hereinafter App.Exh. 6). Appellant also wrote Judge Bloom, in a 5 May, 2006, letter, informing him of Appellant's attempts to obtain the court's ruling, stating his concerns that, considering portions of the record are missing, it is questionable whether the court engaged in a comprehensive review of the record as required, and requesting Judge Bloom's assistance in obtaining the court's ruling. (App.Exh.2.) Appellant also wrote this Court's clerk, in a 8 May, 2006, letter, requesting a copy of the Designation of the Record Index in Supreme Court No. 031488, in hopes the court's ruling on Appellant's motion and memorandum to suppress the "confessions" may have been designated as part of the record therein and he could obtain a copy via that avenue. Appellant was informed by that office, however, that it does not retain copies of the Designation of the Record Indexes. On or about 15 May, 2006, Appellant finally received a copy of the court's 29 December, 1983, letter ruling, only after he filed in the circuit court, on or about 11 May, 2006, his pro se Motion For Extention Of Time Within Which To File Petition On Appeal, and Motion For The Court To Consider Petitioner's Previously Filed Motion For The Appointment Of Counsel, (all designated as part of the record on appeal herein). Why the court's ruling was not furnished to Appellant with the package of material Appellant received from his first inquiries about it, or where the court's

ruling was finally sent from, is a matter of speculation. It appears, though, that some, or all, of the parties hereto may have an interest in not providing Appellant with a copy of the entire case file and have resisted Appellant's attempts to obtain and review vital portions of the record;

16). That is why, for fear of overburdening this Court with unneeded transcripts and/or material, Appellant designated for the record on appeal herein, all of the transcripts of the proceedings on file with the Kanawha County Circuit Court Clerk's office in case nos. 94-MISC-663, 82-F-221, JUV-80-775, JUV-80-776, and JUV-80-777. On or about 16 June, 2006, however, Appellant received, upon his request, a copy of the table of contents or index of the record on appeal as prepared by the Kanawha County Circuit Court Clerk, as pursuant to Rule 4(c)(ii), W.Va.R.A.P. The Index lists several transcripts Appellant does not have and thus has never reviewed. Those transcripts contain information essential to Appellant's opportunity to demonstrate his entitlement to habeas corpus relief. While Appellant was in the process of ascertaining and obtaining what transcripts were on file, the habeas court unreasonably denied his request for additional time to file his petition on appeal. The state would have suffered no prejudice if the habeas court allowed Appellant's motion for additional time to file his petition for appeal, as they have not been required to respond to any of Appellant's factual assertions in his habeas petition. The habeas court's disingenuous Order of denial of Appellant's motion for additional time to file his

- 9 -

petition for appeal, however, works manifest injustice. Since the habeas court would not grant Appellant additional time to obtain and review the transcripts before Appellant was required to file his petition on appeal, and because Appellant was thus forced to file his petition on appeal prematurely, the only equitable solution would be for this Court to hold the present petition on appeal in abeyance, appoint counsel to Appellant so that counsel can obtain the entire case file, including the transcripts of the proceedings Appellant has never received, and to thereafter draft and file a constitutionally adequate petition appealing the court's summary denial and dismissal of Appellant's claims for post-conviction relief. Appointing counsel would also conserve precious judicial resources as counsel can then review all the transcripts and ascertain which ones could be precluded from being designated as part of the record herein;

17.) Finally, due to the 16 June, 2006, ruling by this Court, in the case In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, Supreme Court Case No. 32885, Appellant has filed a petition for writ of habeas corpus as directed by this Court. An evidentiary hearing has not been conducted on Appellant's claims and no determination of those claims has been entered. The fact that many of the issues in the present proceedings relate to falsified and/or substantially erroneous reports and/or test results by employees and serologists of the West Virginia State Police and Crime Laboratory during the years 1979 through 1991,

- 10 -

in the interests of justice a ruling on the issues in the present petition on appeal should be stayed pending a full fact development evidentiary hearing on Appellant's claims as announced by this Court.

WHEREFORE, Appellant prays now and forevermore that this Honorable Court allow his motion to hold the present petition for appeal in abeyance, appoint counsel to carry out the tasks Appellant, due to his incarceration, cannot do, such as investigating into the whereabouts of the transcripts listed on Line 30, and investigating what is contained in those transcripts, as well as investigating all the other transcripts Appellant has not been afforded an opportunity to review prior to filing his habeas petition, as well as the juvenile transfer hearing transcripts, and to thereafter allow counsel to supplement the said petition once he has had adequate time to fully develop viable issues for an appeal of the summary denial of his petition for state post-conviction relief and for any and all further relief this Court deems just and proper.

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185

On this, the 27th day of June, 2006.

Appellant proceeding, pro se.

- 11 -

John Moss, III          Appellant's Exhibit #1
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

May 19, 2006



FILED

JUN 2 8 2006

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

The Honorable Louis H. Bloom
13th Judicial Circuit
Kanawha County Judicial Annex
111 Court Street
Charleston, WV 25301

Re:    SER John Moss, III v. Thomas McBride, Warden,
       Civil Action No. 05-MISC-298

Dear Judge Bloom:

On or about 11 May, 2006, my *pro se Motion For Extension Of Time Within Which To File Petition On Appeal* was received and marked filed in the Kanawha County Circuit Court Clerk's office. (Stamped copy enclosed.) Due to the inherent seriousness of the motion, I would like to remind the court that I have not received a ruling on said Order as of this date. A satisfactory petition for appeal cannot be prepared and filed in the clerk's office on or before June 6, 2006, the deadline for filing said petition. A ruling, granting me additional time within which to prepare and file a petition on appeal, is greatly desired and would be appreciated.

Additionally, filed contemporaneously with the above mentioned motion was my *Motion For The Court To Consider Petitioner's Previously Filed Motion For The Appointment Of Counsel.* (Stamped copy enclosed.) A ruling on that motion is also required.

Finally, a ruling on my application to proceed *in forma pauperis* and affidavit, previously filed with my application for post-conviction relief on or about 2 July, 2005, was not ruled on either. Thank you.

Appellant's Exhibit #1

The Honorable Judge Bloom
May 19, 2006
Page Two
Re: Moss v. McBride

Sincerely yours,

John Moss, III

JM/tlb
Encs.
cc:   Mr. Rory Perry, II, WV Supreme Court Clerk (w/encs.)
      Kanawha County Prosecuting Attorney (w/o encs.)
      file

**John Moss, III**        Appellant's Exhibit #2
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

---

May 5, 2006

The Honorable Louis H. Bloom
13th Judicial Circuit
Kanawha County Judicial Annex
111 Court Street
Charleston, WV  25301

Re:    SER John Moss, III v. Thomas McBride, Warden;
       Civil Action No.  05-MISC-298

Dear Judge Bloom:

Enclosed, please find copies of correspondence between myself and the Kanawha
County Circuit Court Clerk. As you can see from the letters, I am attempting to obtain certain
items from the case file, Kanawha County No. 82-F-221. I am particularly eager to inspect the
Court's ruling on my motion to suppress evidence. However, that document seems not to be
included in the case file. I realize that you weren't the presiding judge in the criminal
proceedings. Judge Hey was. However, you presided over my two habeas petitions. I
thought Judge Hey's file, if one exists, may have been forwarded to you and a copy of that
ruling may be included therein. Could you help me in locating that ruling? It is vitally important
to my efforts to appeal your 7 February, 2006, summary denial and dismissal of my *pro se*
petition for habeas corpus relief.

As you are aware, I am an incarcerated person and do not have the opportunity to
search the files myself. I would like to bring to the Court's attention the fact it did not rule on
my motion for the appointment of counsel to conduct the type of tasks that needed to be done
on my behalf in the above styled habeas proceeding, such as searching the case file,
interviewing witnesses, etc. (*See* copy of my motion to appoint counsel, which was filed
contemporaneously with my petition and memorandum, included herein.) Due to the apparent
misplacing of items in the criminal case file and/or the absence of several of the vitally
important documents, I do not see how the required comprehensive review of the record

Appellant's Exhibit #2

The Honorable Judge Bloom
May 5, 2006
Page Two
Re:  Moss v. McBride

could have been performed in conjunction with a full consideration of the contentions contained in my petition and memorandum.  For lack of a complete trial record, including the named documents and material, petitioning for appellate review of the summary denial of my habeas contentions would now be an exercise in futility.

Additionally, the Court failed to rule on my 10 February, 2006, *pro se Motion For Additional Time Within Which To File W.V.R.C.P. 59(e) Motion To Alter Or Amend Judgment*, a copy of which was provided to you by letter dated the same day.  Had the Court timely ruled on that motion, I wished to inform it in a 59(e) motion that it had neglected, *inter alia*, to rule on my motion for the appointment of counsel.  Therefore, due to the missing items from the criminal case file and the fact that I have never had the opportunity to inspect the said documents, many of which are vital to my ability to demonstrate my entitlement to relief, I would like to request that the Court consider my previously filed motion for the appointment of counsel, including appellate counsel, and affidavit of indigence and to thereafter appoint counsel for the purposes of conducting the tasks that, due to my incarceration, I am unable to perform, including searching for the missing portions of the criminal case file, so that I may have a constitutionally approved petition for appeal, to which I am entitled, appealing the Court's summary dismissal of my habeas claims.

As you will see from my affidavit, I cannot afford to pay an attorney.  If you'll recall, the Court actually appointed the previously retained attorney who filed and represented my habeas petition in the "Special Zain" proceedings, Mr. Lonnie Simmons, when I was no longer able to pay for his services.  I have never had a free copy of the entire case file and record provided to me, though the clerk's office has been very supportive of me in providing requested items.  Though I have never seen an itemized index of what services and expenses Mr. Simmons billed for, I assume he billed for his expense in obtaining the criminal case file.  Mr. Simmons has failed to act on my several requests to him to provide me a copy of all he has in his possession.  I am considering filing a complaint against Mr. Simmons to the Lawyer Disciplinary Counsel for his refusal to provide me those documents.  However, even if he were to provide me what he has, there is no guarantee Mr. Simmons has copies of the complete file.

I want to make clear here that I am not placing blame on the current circuit court clerk or employees for the missing portions of the file.  Apparently, the missing portions were either never filed or became missing during the time Ms. Phyllis J. Cole/Rutledge was in office.

The Honorable Judge Bloom
May 5, 2006
Page Three
Re:  Moss v. McBride

Appellant's Exhibit #2

        Finally, due to the developments in this case as has occurred, I anticipate filing, in this
Court, a motion for a substantial extension of time within which to file a petition for appeal in
this matter.  Depending on the response(s) I get to my inquiries, I am also considering
formulating and filing a petition for writ of prohibition in the West Virginia Supreme Court of
Appeals requesting a rule, directed to this Court, to show cause why it won't rule on my
motion to appoint counsel.

        In order to obviate the need for most of the above, I would appreciate any assistance
you are able to provide, especially the appointment of counsel.  Thank you.



                                        Sincerely yours,

                                        John Moss III

                                        John Moss, III



JM/tlb
Encs.
cc:    Kanawha County Prosecuting Attorney
       file

Appellant's Exhibit #3

CASE  82-F-221     KANAWHA

STATE OF WV     vs.  JOHN R MOSS, III

| LINE | DATE | ACTION |
|---|---|---|
| 1 | 09/30/82 | INDICT RET |
| 2 | 10/07/82 | O: PROCEEDINGS ON 82-F-221, STAYED PENDING FINAL ACT BY WVSCA |
| 3 | 10/07/83 | O: F TRANS OF HRG HELD 10/1/82 |
| 4 | 01/07/83 | O: F D MOT TO DISM INDICT |
| 5 | 02/23/83 | O: TD SET 2/24/83; CERT CPY OF O TO BE SERVED ON MCKITTRICK & |
| 6 | 02/23/83 | VAUGHAN |
| 7 | 02/23/83 | CPY OF O W/RET (2) |
| 8 | 02/24/83 | O: CT GRT D MOT TO CONT; TD SET 6/14/83 |
| 9 | 02/28/83 | O: REC FROM WVSCA DTD 2/24/83 PET FOR WRIT OF PROH DENIED |
| 10 | 03/18/83 | O: F D MOT FOR INSP & DISC |
| 11 | 03/18/83 | O: CT GRT D MOT FOR EXT OF TIME OF NO MORE THAN 3 WRKNG DYS TO |
| 12 | 03/18/83 | PRETRIAL MOT BEYOND DATE OF 3/18/83 & ST TO HAVE LIKE # OF |
| 13 | 03/29/83 | WRKNG DYS TO F RESP |
| 14 | 03/29/83 | ISS SUBP & 1 CPY FOR DEFENSE, RET 6/14/83 |
| 15 | 03/23/83 | O: F D MOT (27) |
| 16 | 04/01/83 | O: F ST PRETRIAL MO (2) |
| 17 | 04/18/83 | O: F D MOT (2) |
| 18 | 04/18/83 | O: CT GR D MOT TO CONT 'TIL 10/17/83 |
| 19 | 05/20/83 | O: CT GR D MOT TO CONT TO 10/17/83 |
| 20 | 05/20/83 | O: F D MOT (2) |
| 21 | 05/20/83 | O: F D MOT FOR GJ MINUTES |
| 22 | 09/19/83 | F TRANS OF PROCEEDINGS HELD 8/15/83 |
| 23 | 09/19/83 | ISS SUBP & 1 CPY FOR DEFENSE RET FORTHWITH |
| 24 | 09/19/83 | ISS SUBP & 25 CPYS FOR DEFENSE RET FORTHWITH |
| 25 | 09/19/83 | ISS SUBP & 1 CPY FOR D, RET FORTHWITH |
| 26 | 10/03/83 | O: F MEMO IN SUPP OF D MOT TO SUPPRESS SAMPLES OR BL CONCESSION |
| 27 | 10/03/83 | F ST MEMO IN OPPOS PHYSICAL EVID SEIZED FROM EMPLOYEES OF |
| 28 | 12/30/83 | O: F D MOT TO SUPPRESS/CPY OR CT RULING TO CNSL |
| 29 | 01/18/84 | O: GR MOT TO CONT; TD SET 2/21/84 |
| 30 | 01/18/84 | F TRANS |
| 31 | 01/25/84 | ISS SUBP & 12 BLANK COPIES FOR D, NO RET DTE |
| 32 | 01/19/84 | O: KCS TO TRANSP D FROM KCJ TO DPS TO VIEW EXH FOR TRIAL |
| 33 | 02/01/84 | ISS SUBP & 25 CPYS FOR ST, RET 2/21/84 |
| 34 | 02/06/84 | ISS SUBP & 2 CPYS FOR ST, RET 2/21/84 |
| 35 | 02/06/84 | F NOT OF INTENT TO USE HEARSAY EVID WHICH IS AGNST |
| 36 | 02/09/84 | PENAL INTEREST OF EXTRA JUDICIAL DECLARANT; |
| 37 | 02/09/84 | ISS SUBP & 18 CPYS FOR ST, RET 2/21/84 |
| 38 | 4/2/84 | O: CERT D MOT FOR CERT TO SEC ATTEND OF OUT-OF-STATE WITN |
| 39 | 02/08/84 | O: CERT TO SEC COT-OF-ST WITN; FOR PERIOD OF (1) DY BETWEEN THE |
| 40 | 02/08/84 | DATES OF 2/21/84 & (6) WKS THEREAFTER |
| 41 | 02/22/84 | D SUPP LIST OF WITNESSES F; SUBP FOR D W/RET; SUBP FOR D W/RET |
| 42 | 02/21/84 | D SUPP LIST OF WITNESSES |
| 43 | 03/05/84 | ISS SUBP & 10 CPYS ELAND FOR D |
| 44 | 03/05/84 | ISS SUBP & 1 CPY FOR ST, RET 3/24/84 |
| 45 | 03/12/84 | O: CERT OF JUDGE HEY REQ STS FOR ATTEND OF OUT-OF-ST WITNESS, |
| 46 | 03/12/84 | CARLTON MOSS, RET 4/2/84; CERT OF JUDGE HEY ATT; ATTESTATION OF |
| 47 | 03/12/84 | PHYLLIS RUTLEDGE RET 4/10/84 |
| 48 | 4/2/84 | O: CERT OF JUDGE HEY REQ FOR OUT-OF-ST WITNESS, MARZEE MOSS, RET |
| 49 | 03/12/84 | JUDGE HEY ATT; ATTESTATION OF |
| 50 | 03/12/84 | O: CERT OF JUDGE HEY ATT; ATTESTATION OF |
| 51 | 03/22/84 | ISS SUBP & 1 CPY FOR ST RET 3/24/84 |
| 52 | 04/03/84 | O: ALLOW TO MARZEE MOSS IN AMT OF $60.00 |
| 53 | 04/03/84 | O: ALLOW TO JOHN MOSS, JR, IN AMT OF $145.60 |
| 54 | 04/04/84 | O: ALLOW TO WM. JOHNSON IN AMT OF $90.50 |
| 55 | 04/04/84 | O: ALLOW TO ARBUTUS JOHNSON IN AMT OF $109.93 |
| 56 | 04/10/84 | SUBP & 1 CPY ISS FOR ST, RET 4/10/84 |
| 57 | 04/12/84 | F TRANS OF TESTIMONY OF JOHN MOSS TAKEN 3/19/84 |
| 58 | 04/13/84 | ISS SUBP & 2 CPY FOR D RET 4/16/84 |
| 59 | 04/19/84 | O: ALLOW TO KRT IN AMT OF $120.00 FOR JURY VIEW |

Appellant's Exhibit #3

```
60  04/26/84  O: ALLOW TO NOTE TRAVEL SERV IN AMT OF $910.00 FOR TRAVEL EXP
61  04/26/84  ISS SUBP & 1 CPY FOR ST REZ 4/6/84
62  04/26/84  ISS SUBP & 1 CPY FOR ST REZ 4/17/84
63  04/30/84  O: CT II: PENTH LIFE W/O MERCY W./CRED OF 1230 DYS, SENT TO BE
64  04/30/84  SERVED CONSEC TO SENT IMPOSED IN CT OF OHIO; CT III:PENTH LIFE W/O
65  04/30/84  MERCY; TO BE SERVED CONSEC TO SENT IMPOSED; THIS DTE: CT I:PENTH LIFE W/O
66  04/30/84  MERCY; TO BE SERVED CONSEC TO SENT IMP IN CT I & CT II
67  04/30/84  CONSEC TO SENT IMPOSED; TO BE SERVED CONSEC TO SENT IMP
68  04/30/84  MERCY W/CRED OF 1230 DYS, SENT TO BE SERVED CONSEC TO SENT IMP
69  04/30/84  F CERT COMMIT
70  05/30/84  O: ALLOW TO HOLIDAY INN IN AMT OF $275.24
71  05/30/84  O: ALLOW TO HOLIDAY INN IN AMT OF $440.96
72  06/22/84  F CERT COMMIT
73  08/30/84  O: ALLOW TO HOLIDAY INN IN AMT OF $
74  09/24/84  O: F D NOT OF INTENT TO APPEAL
75  10/17/84  O: & APPT CHARLES COVERT AS C OF R FOR APPEAL
76  11/02/84  O: & APPT CNSL CHARLES COVERT AS C OF R FOR APPEAL
77  11/02/84  O: CT APPT DAVID STUART AS CO-CNSL W/WAYNE SINCLAIR
78  11/21/84  F CNSL MOT & BRIEF; MOT TO BE RELIEVED GRT
79  12/21/84  APPR ATTY ALLOW IN AMT OF $63.50 TO CHARLES COVERT
80  01/22/85  O: PET GRT EXT OF (4) MOT TO F PET FOR WRIT OF ERROR
81  01/29/85  O: RELIEVES DAVID STUART & APP'RM. HIGHLAND AS C OF R
82  05/07/85  CT REP TO FURNISH PA W/CPY OF RMK
83  06/10/85  EXT TO FROM WVSCA DTD 4/30/85; TIME TO MAKE APPLIC FOR APPEAL
84  05/07/85  TRANS OF JMT 18 VOLUMES; F: ALSO, CPYS FOR CLERK'S F
85  06/10/85  REC FROM WVSCA DTD 8/30/85, APPEAL RECEIVED
86  09/06/85  CPY OF LTR FROM CLERK WVSCA TO D CNSL DTD 8/30/85-F
87  02/27/86  REC FROM WVSCA DTD 2/11/86 APPEAL GRT
88  03/05/86  O: CT APPT FRANK HELVEY C OF R FOR APPEAL, HIGHLAND RESIGNED
89  02/07/89  F: CNSL; CHRIS BUTCHER, MEMBER OF GRANDFATHER ON 2/27/89/CQN
90  02/06/89  F CNSL; DAVID LAMBERT MOT TO W/D AS CNSL
91  02/06/89  BACK FOR NEW TRIAL
92  02/07/89  O: WRIT OF HAB CORP AD PROSEQ BE ISSUED, DIR TO JOHN MASSEY
93  02/07/89  FOR THE BODY OF JOHN MOSS, REZ 2/14/89, 9 AM/CQN
94  02/07/89  F MOT FOR WRIT OF HAB CORP AD PROSEQ, F WRIT OF HAB CORP AD
95  02/22/89  PROSEQ ISSUED THIS DATE
96  02/22/89  O: CT APP'TS CHRIS BUTCHER AS C OF R FOR APPEAL/CQN
97  03/03/89  F: RCP'TS TO TRANSP REQ; MOT FOR C NISAR NISAR KALVAR MOT TO W/D
98  03/07/89  CHRIS BUTCHER MOT TO W/D F CNSL NISAR NISAR KALVAR MOT TO W/D
99  03/07/89  F: CNSL; DAVID LAMBERT MOT TO W/D AS CNSL
100 03/07/89  O: CT RELIEVES DAVID LAMBERT & APP'TS KATHY BECKETT CO-CNSL W/
101 03/07/89  NELSON BICKLEY
102 04/11/89  O: MOT FOR FURLOUGH F & DENIED W/COS/CQN
103 06/13/89  D MOT TO CONT TD W/D; CT TAKES D MOT FOR MEDICAL EXAM UNDER
104 03/05/89  D: PRO SE MOT TO DISMISS THE INDICTMENT, EXH A ATTACH
105 03/05/89  F D MOT TO CONT TD W/D; CT TAKES D MOT FOR MEDICAL EXAM UNDER
106 03/07/89  ADVISEMENT; D/CQN MOT FOR BD DENIED; MATTER CONT TO
107 09/06/89  D/1; CNSL MOT F PRO SE MOT FOR NEW CNSL
108 10/31/89  NOT OF HRG (9/19/89) ON APT MOT FOR RECONSIDERATION FOR RELIEF
109 11/28/89  AS CNSL W/COS
110 11/28/89  F: RCP'T FROM WVSCA FOR EXH'S RECEIVED BACK
111 12/06/89  O: CT APP'TS JOHN FOWLER AS CO-CNSL/CQN
112 12/13/89  O: CT RELIEVES EXH'S/CQN
113 12/13/89  O: MOT FOR BAIL & TD SET 3/5/90/CQN
114 12/13/89  O: CT DENIES MOT FOR BL SAMPLES OF D/CQN
115 12/14/89  O: CT GRT MOT TO RELEASE EXH'S/CQN
116 12/14/89  LIST OF EXH'S RELEASED TO TROOPER TERRY WILLIAMS ON 12/14/89
117 12/14/89  D/7 MOTIONS (10) W/COS; ST'S NOT & REQ (3) W/COS
118 12/14/89  F ST'S ANS (10) W/COS; ST'S MOT TO SUPPRESS EVID W/COS
119 12/19/89  SUPPR HRG HELD; ARGOM OF CNSL; TO SUBMIT BRIEFS
120 02/26/90  NOT OF MOT (HRG 2/26/90); D MOT TO SUPPRESS EVID W/COS
121 03/19/90  D MEMO OF LAW IN SUPP OF D MOT TO SUPPRESS EVID W/COS
122 03/26/90  D REPLY MEMO; ST'S REPLY MEMO IN OPPOS TO D MOT TO SUPPRESS
123 03/29/90  ST ANS TO D MOT FOR DISCLOSURE, DISC; ST PROD OF STMT OF
124 03/29/90  WITH; ST SUPP ANS TO D MOT FOR LIST OF WITN W/COS
125 03/29/90
```

Appellant's Exhibit #3

| # | Date | Entry |
|---|------|-------|
| 126 | 04/04/90 | ST'S ANS TO MOT FOR DISCL; ANS TO REQ FOR WITN W/COS |
| 127 | 04/05/90 | O: F & GRT ST'S PET FOR JUDGES CERTIF TO SECURE AN OUT-OF-ST |
| 128 | 04/05/90 | WITN/HEY |
| 129 | 04/05/90 | O: CERTIF TO JUDGE OF CIR CT REQ STATE FOR ATTEND OF OUT-OF-ST |
| 130 | 04/05/90 | WITN/HEY |
| 131 | 04/05/90 | O: CERTIF ISSUED TO JUDGE OF COMMON PLEAS OF CUYAHOGA CO., OHIO |
| 132 | 04/05/90 | O: COMPEL ATTEND OF CARLTON MOSS FOR WITN ON 4/23/90/HEY |
| 133 | 04/06/90 | O: COMPEL ATTEND OF CARLTON MOSS FOR WITN ON 4/23/90/HEY & CATHY GRISON ATT |
| 134 | 04/06/90 | CERTIF OF AUTHENTICITY BY JUDGE HEY & CATHY GRISON ATT |
| 135 | 04/09/90 | HRG HELD; STATUS CONF SET 4/12/90 |
| 136 | 04/11/90 | ISD SUBP (17) FOR D ATTY TO SERVE RET DTD 4/16/90 |
| 137 | 04/12/90 | F ST SUPP ANS |
| 138 | 04/16/90 | F NOT OF THE ST OF WY'S INT TO USE STATEMENT OF CARLTON J. MOSS |
| 139 | 04/16/90 | F NOT OF THE ST FOR LIST OF WITNESSES; NOT OF ALIBI DEFENSE |
| 140 | 04/23/90 | D ANS TO ST MOT FOR LIST OF WITNESS W/COS |
| 141 | 04/23/90 | ST SUPPL ANS TO D WITNESS LIST W/COS |
| 142 | 04/30/90 | JV FORM |
| 143 | 04/30/90 | O: GRT MOT TO CONT; TD SET 9/5/89/CRN |
| 144 | 04/24/90 | ST'S MEMO IN OPPOS TO D MOT TO SUPPRESS W/COS |
| 145 | 04/24/90 | O: DENYING MOT TO WD & TD CONT TO 12/11/89/CRN |
| 146 | 05/04/90 | O: PYNG RGT PMT OF $150.00 FOR JURY VIEW TRANSPORTATION/MAC |
| 147 | 05/11/90 | NO ACTION THIS DI; CONT TO 5/14/90, 5 PM |
| 148 | 05/14/90 | D APPT TIMOTHY HUFFMAN AS CO-CNSL FOR APPEAL/MAC |
| 149 | 05/23/90 | PENY LIFE W/O MERCY-NEEDED ?/APPEAL; NOT FOR NEW TRIAL W/COS |
| 150 | 05/23/90 | O: ALLOW IN AMT OF $278.64 TO HOLIDAY INN, CHAS HOUSE/MAC |
| 151 | 05/23/90 | O: ALLOW IN AMT OF $1160.00 TO NATL TRAVEL SERVICE/MAC |
| 152 | 06/01/90 | O: JV - GUILTY OF ALL COUNTS/MAC |
| 153 | 06/01/90 | O: PENY - LIFE W/O MERCY W/CRED OF 3,435 DAYS/MAC |
| 154 | 06/01/90 | PENY & CERTIFIED COMMITMENTS |
| 155 | 06/01/90 | O: PYNG CTR REP $957.25/MAC |
| 156 | 07/17/90 | TRIAL TRANSCRIPTS |
| 157 | 07/18/90 | F/D REQ FOR CPY OF MOTION FILED 6/13/89 |
| 158 | 07/30/90 | *O: GRT ADV APPR FOR INVESTIG FEES TO EXCEED STAT LIMIT/MAC |
| 159 | 08/23/90 | *O: GRT ADV APPR FOR INVEST FEES TO EXCEED STAT LIMIT/MAC |
| 160 | 08/24/90 | *O: PYNG BEXAR CTY MED EXAMINER AMT OF $150.00/MAC (S/9/19/90) |
| 161 | 09/20/90 | *O: PYMT CT REP, CONNIE COOKE $1,079.25 FOR TRANS/MAC |
| 162 | 11/29/90 | *O: PYMT CT REP, CONNIE COOKE $1,079.25 FOR TRANS/MAC |
| 163 | 01/14/91 | *D DESIG OF REC FOR AP, PEN FOR APPEAL |
| 164 | 01/23/91 | *D DESIG OF REC FOR AP, PET FOR APPEAL |
| 165 | 01/30/91 | *HAND DELIVERED TO WSCA |
| 166 | 01/31/91 | O: PYNG CTR REP $957.25/MAC |
| 167 | 03/21/92 | *O: FROM SCR, EXT TIME TO F AP TO 3/1/91 |
| 168 | 10/21/92 | *LTR TO D C OF R FROM ANCIL RMWSY |
| 169 | 01/08/93 | *LTR FROM SCR, REFUSING PET FOR AP |
| 170 | 01/13/93 | *O: APPR PYMT OF APP'T ATTY FEES TO T. HUFFMAN IN AMT OF $3263.00 |
| 171 | 02/03/93 | *F CPY OF CIR CLK'S LET TO D |
| 172 | 02/03/93 | <LTR FROM D REQ CPY OF TRANS OF SUPP HRG (TO JUDGE MAC FOR O) |
| 173 | 02/03/93 | /MAC (S/10/20/92) |
| 174 | 02/02/94 | *O: CT REP TO PREPARE TRANS OF SUPPRESSION HRG & SEND CPY TO D |
| 175 | 02/02/94 | *TRANS OF HRG HELD 4/13/90 |
| 176 | 02/03/94 | *O: CT REP TO TRANSCRIBE HRG HELD 3/19/90/MAC |
| 177 | 06/23/03 | *TRANS OF SUPP HRG HELD 3/19/90/MAC |
| 178 | 06/02/05 | * RCPT FR WSCA RECD FILE ON APPEAL THIS DATE |
| 179 | 06/03/05 | *LTR TO CLK FR D REQ COPIES; LTR TO D FR CLK W/COPIES ATT |
| 180 | 06/07/05 | + RMR AS TO JOHN MOSS; III (SIGNED BY KEITH KIRK) |
| 181 | 08/08/05 | *LTR FR D DTD 6/12/05; LTR TO D FR CLK DTD 8/8/05 W/REQ DOC ATT |

Appellant's Exhibit #4a

**John Moss, III, #13734**
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185

March 24, 2006

Ms. Darla G. Hodges,
Administrative Assistant
Kanawha County Circuit Court Clerk Office
111 Court Street
Charleston, WV 25301

    Re:   State v. Moss; No. CR-82-F-221

Dear Ms. Hodges:

    I am sorry if I'm being a pest but I need a complete copy of my Docket Sheet from 1980 to 1988. Also, a complete list of all juvenile proceedings. Once I get can get this, I will know what's on file and I wouldn't have to bug your office asking for different files anymore. Again, I am very greatful and appreciate your assistance in this matter.

    Again, I thank you for your assistance in this matter.

Respectfully yours,

John Moss, III

cc:   file

Appellant's Exhibit #4b

**Cathy S. Gatson, Clerk**
Kanawha County Circuit Court
111 Court St., Charleston, WV 25301

Telephone: (304) 357-0440
Facsimile: (304) 357-0473



March 27, 2006

John Moss, III #13734
Mt. Olive Correctional Center
One Mountainside Way
Mt. Olive, WV 25185

Re: State of WV
    v.
    John Moss, III
    82-F-221

Dear Mr,. Moss:

    I am in receipt of your correspondence dated March 23, 2006, in which you request a copy of the docket sheet in the above referenced criminal action.  You also request a complete list of all juvenile proceedings.  Please be advised that juvenile proceedings are not a matter of public record.  Please find attached a copy of the docket sheet.

Sincerely,

Darla G. Hodges

DARLA G. HODGES
Administrative Assistant

att.

**John Moss, III**          Appellant's Exhibit #4c
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

May 2, 2006

Ms. Darla Hodges, Deputy Clerk
Kanawha County Circuit Court
111 Court Street
Charleston, WV  25301

      Re:    SER John Moss, III v. Thomas McBride;
            Civil Action No.  05-MISC-298
            Judge Bloom

Dear Ms. Hodges:

      I have received the package with some of the items I requested in my 4 April, 2006, letter to your office, as well as the 25 April, 2006, letter informing me that no transcripts were included in the file, even though they were reflected on the Case Docketing Sheet Index, number 82-F-221, on Line 30.

      I do appreciate all your help in providing me those items that were in the file I requested. However, I would like to inform you of another item I requested, but wasn't included in the package I received. Line 28 of the Index lists the "State's Memorandum In Opposition to Defendant's Motion To Suppress." (F ST MEMO IN OPPOS TO D MOT TO SUPPRESS). I tried to inform you, though perhaps ineloquently, in my 4 April, 2006, letter, that I had a copy of that memorandum and you needn't send that. I did receive it, however. What wasn't included an I don't have, but is very important for me to receive, is the second part of that entry, which, as listed, is a Copy of the Court's Ruling to Counsel. (CPY OF CT RULING TO CNSL).

      It is vitally important I have an opportunity to inspect the Court's ruling prior to submitting my appeal in the above styled case. Because it wasn't sent, however, I assume it wasn't where the Index says it should be. I would like to request you inspect the case file again to determine whether the second part of that entry, the Court's ruling on my motion to suppress, is contained anywhere in the file and, if so, please send a copy to me.

Appellant's Exhibit #4c

Ms. Darla Hodges, Deputy Clerk
May 2, 2006
Page Two
Re:  Case File No. 82-F-221


      Also, in your office's 25 April, 2006, letter to me, it was stated that no transcripts, as listed on Line 30 of the Index, was contained therein.  Was anything included in the file on Line 30?  Could you explain to me what may have happened to an item if it is listed in the Index but isn't contained in the file?

      Again, you have been extremely helpful to me thus far and I appreciate any continuing assistance you are able to provide.  I am including a copy of this inquiry to Judge Bloom's office as well as a letter inquiring into whether a copy of the Court's ruling may be included in the Court's separate file, if one exists.  Hopefully, between the two offices, a copy of that ruling will be located.  Thank you.


Sincerely yours,

John Moss, III


JM/tlb

cc:    Judge Louis H. Bloom
       file

**John Moss, III**          Appellant's Exhibit #4d
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

May 15, 2006

Ms. Darla Hodges, Deputy Clerk
Kanawha County Circuit Court
111 Court Street
Charleston, WV  25301

      Re:    SER John Moss, III v. Thomas McBride, Warden,
             Civil Action No.  05-MISC-298
             Judge Bloom

Dear Ms. Hodges:

      I trust I am not becoming overly burdensome to you.  I do not want to be.  I am merely attempting to realize the rights secured to me through the Constitutions of the United States and West Virginia.  I greatly appreciate your assistance in my efforts to gain those ends.

      Enclosed, please find a copy of a letter of request to the West Virginia Supreme Court. As you can see, it is requesting the table of contents or index prepared by your office in case number **94-MISC-663**.  I requested the table of contents or index from the Supreme Court so I wouldn't have to disturb you again.  However, given the extreme importance of the information I am seeking, I am again humbly requesting your assistance.  If you can provide me with the document I am seeking it would be most appreciated.  Thank you.

                        Respectfully yours,

                        John Moss, III

JM/tlb
Encs.
cc:    file

Appellant's Exhibit #5

**Cathy S. Gatson, Clerk**
Kanawha County Circuit Court
111 Court St., Charleston, WV 25301

Telephone: (304) 357-0440
Facsimile: (304) 357-0473



April 25, 2006

John Moss #13734
M.O.C.C.
One Mountainside Way
Mt. Olive, WV 25185

Re:  State of WV
     v.
     John Moss
     82-F-221

Dear Mr. Moss:

Pursuant to your letter dated April 4, 2006, please find attached the requested

documents.  A thorough review of the above referenced case file did not reflect the filing

of a transcript as noted on line 30.  I am also enclosing those transcripts relevant to the

juvenile transfer hearing.

Sincerely,

DARLA G. HODGES
Administrative Assistant

c: file

Appellant's Exhibit #6

John Moss, III, #13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185

April 4, 2006

Ms. Darla G. Hodges,
Administrative Assistant
Kanawha County Circuit Court Clerk Office
111 Court Street
Charleston, WV 25301

Re: State v. Moss; No. CR-82-F-221

Dear Ms. Hodges:

Thank you for the docket sheet, and sending it so quickly. I will list the line, date and the action of the files I'm seeking. Again, I appreciate the work you and your office is doing in getting these files. I also, understand it's been over 20 years any of these hearings was held and it might take more time to get all the information I'm requesting. If you think it will take over 30 days would you please let me know so I can petition the court for more time in filing my petition? Thank you again!

Please send me the following files;

LINE  3 DATE 01/07/83 ACTION - O: F TRANS OF HRG HELD 10/1/82
LINE 15 DATE 03/23/83 ACTION - F D MOT (27)
LINE 17 DATE 04/18/83 ACTION - O: F D MOT (2)
LINE 20 DATE 05/20/83 ACTION - O: F D MOT (2)
LINE 22 DATE 09/13/83 ACTION - F TRANS PROCEEDING HELD 8/15/83
LINE 28 DATE 12/30/83, ACTION - F ST  MEMO IN OPPOS TO D MOT TO SUPPRESS/CPY OF CT RULING TO CNSL. I have the motion that was filed but not the copy of the courts ruling to counsel.
LINE 30 DATE 01/18/84 ACTION - F TRANS
LINE 86 DATE 09/06/85, ACTION - CPY OF LTR FROM CLERK WVSCA TO D CNSL DTD 8/30/85-F.
LINE 180 DATE 06/07/05 ACTION - + RMR AS TO JOHN MOSS, III (SIGNED BY KEITH KIRK).

Also do I have to petition the court to get my juvenile  records, pertaining to this case? Several times there was references made in different hearings about the transfer hearing and the WVSCA ruled on one transfer hearing in 1982.

Again, thank you and I appreciate your help very much!

Respectfully yours,

John Moss, III

cc:  file

No. ___061721___

## IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## AT

## CHARLESTON

========================================================

### STATE OF WEST VIRGINIA, EX REL., JOHN MOSS, III,

### APPELLANT,

### vs.

### THOMAS L. McBRIDE, Warden, Mount Olive Correctional Complex,

### APPELLEE.

========================================================

## MOTION TO REQUEST JUSTICE BENJAMIN VOLUNTARILY RECUSE HIMSELF

COMES NOW, John Moss, III, pro se Appellant, (hereinafter "Appellant") and petitions this Honorable Court to request Justice Benjamin not to participate in the appellate proceedings herein due to a conflict of interest. As basis for Appellant's request, he asserts the following:

1.)     That on or about 26 April, 1990, Appellant was convicted by a Kanawha County Circuit Court petit jury of three counts of first degree murder, without a recommendation of mercy;

2.)    One of the attorneys Appellant was represented by was Kathy G. Beckett, Esq., an associate of the law firm Robinson & McElwee;

3.)    Justice Benjamin, is listed by the <u>Martindale-Hubbel Law Directory</u>, as a member of Robinson & McElwee at that time. (**See also** enclosed copy of 14 January, 2005, Charleston newspaper article explaining Justice Benjamin's previous position in the law firm.);

4.)    That due to issues of ineffective assistance of counsel in the present proceedings against Ms. Beckett, with whom Justice Benjamin was closely related, Justice Benjamin, in order to avoid the appearance of impropriety, should voluntarily refrain from participating in any decisions rendered by this Court in the proceedings herein.

WHEREFORE, Appellant prays now and forevermore that he be afforded the relief hereinabove set forth.

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185

On this, the 27th day of June, 2006.

Appellant proceeding, <u>pro</u> <u>se</u>.

# Benjamin chooses his law partner as clerk

*1-14-05*

■ *Longtime lawyer helped form firm Benjamin worked for, has worked for years on appellate cases*

New Supreme Court Justice Brent Benjamin hasn't chosen a recent college graduate as his clerk.

Instead, he has chosen his law partner, 77-year-old Charles McElwee, to help him research law and write decisions.

It may seem like an odd arrangement. McElwee, 77, has been a lawyer for longer than 47-year-old Benjamin has been alive. He helped found the firm Benjamin worked in for more than two decades. And he has argued far more cases in front of the Supreme Court than Benjamin.

But for McElwee, it made sense. After years of working in the trenches as a corporate and appellate lawyer, he recently has been focusing his energies on studying the decisions of appeals courts around the country, including the West Virginia Supreme Court.

"I'm excited, because I have an interest in law and how it evolves," McElwee said.

McElwee is not the first retirement-age Supreme Court clerk. In 1977, Stanley Dadisman, a retired West Virginia College of Law professor, clerked for newly elected Justice Darrell McGraw.

Benjamin obviously admires McElwee.

"Charles McElwee is widely considered to be one of the best and most thoughtful attorneys in the state," Benjamin said in a written statement. "He is highly regarded for his legal expertise and scholarship. I am extreme-

ly pleased that the people of West Virginia will benefit from his experience and skill."

McElwee is a Pocahontas County native who came to Charleston as a newly minted lawyer in 1955. After spending two years in the state attorney general's office, he moved into the private sector and began working in corporate law.

McElwee has a particular

expertise in utility law. He has represented gas companies, electric companies and communication companies in a variety of venues, according to his profile on the Web site of his firm, Robinson & McElwee.

In 1983, he started Robinson & McElwee with six other lawyers. The next year, the firm gave Brent Benjamin a job.

No. ___061721___

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

STATE OF WEST VIRGINIA, EX REL.;
JOHN MOSS, III,

APPELLANT,

vs.

THOMAS L. McBRIDE, Warden,
Mount Olive Correctional Complex,

APPELLEE.

CERTIFICATE OF SERVICE

     I, John Moss, III, do hereby certify that the foregoing Motion To Hold Petition On Appeal In Abeyance, Appoint Counsel, And To Thereafter Allow Filing of Supplemental Petition On Appeal, with Exhibits, and Motion To Request Justice Benjamin Voluntarily Recuse Himself, were served upon counsel for the respondent by handing true copies thereof to prison officials for mailing in the regular course of the United States Mail, postage prepaid, on this 27th day of June, 2006, in a correctly addressed and stamped envelope, addressed as follows:

    Prosecuting Attorney
    Kanawha County Circuit Court
    700 Washington Street, East
    Suite 400
    Charleston, WV 25301

_____
John Moss, III, pro se petitioner

**FILE COPY** DO NOT REMOVE FROM FILE

No. 061721

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**FILED**

AT

2006 JUN -5 PM 2: 53

CHARLESTON

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

========================================

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Appellant,

vs.

THOMAS L. McBRIDE, Warden,
Mount Olive Correctional Complex,

Appellee.

========================================



**FILED**

JUN 2 2 2006

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MOTION FOR APPROVAL TO FILE A PETITION AND ADDENDUM EXCEEDING THE FIFTY PAGE LIMIT

John Moss, III, *pro se* petitioner, respectfully requests that he be granted permission to file his *Petition On Appeal From A Final Judgment Of The Kanawha County Circuit Court Summarily Denying Habeas Relief And Dismissing Petition,* and separate *Exhibits Addendum,* that exceeds the 50-page limit.

The petition, inclusive of the Cover Page, an Index, and listing of authorities, was handed to prison officials for mailing on or about 2 June, 2006, and is approximately 51 pages. The separate *Exhibits Addendum* is approximately 27 pages, for a total of approximately 78 pages. The included Exhibits are vital for this Court to fairly decide the issues presented and do not substantially exceed the limit, and should not place an undue burden on the Court.

*Grant — Robin Jean Davis, Justice*

*June 27, 2006.*

WHEREFORE, petitioner John Moss, III, in the interest of justice, requests this Court grant him permission to file his petition and addendum which exceeds the size limit and for any and all further relief the Court deems just and necessary.

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185

On this, the _2nd_ day of _June,_ 2006.

Petitioner proceeding, *pro se.*

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

========================================

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Appellant,

vs.

THOMAS L. McBRIDE, Warden,
Mount Olive Correctional Complex,

Appellee.

========================================

_____

CERTIFICATE OF SERVICE
_____

    I, John Moss, III, do hereby certify that the foregoing *Motion For Approval To File A Petition And Addendum Exceeding The Fifty Page Limit,* was served upon counsel for the respondent by handing a true copy thereof to prison officials for mailing in the regular course of the United States Mail, postage prepaid, on this 2nd day of June, 2006, in a correctly addressed envelope, addressed as follows:

    Prosecuting Attorney
    Kanawha County Circuit Court
    700 Washington Street, East
    Suite 400
    Charleston, WV 25301

_____
John Moss, III, *pro se* petitioner



A. Received by (Please Print Clearly)          B. Date of Delivery

C. Signature

X                                              ☐ Agent
                                               ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

2. Article Number

7160 3901 9849 2433 2744

3. Service Type  CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

Kanawha County Courthouse
PO Box 2341
111 Court Street
Charleston, WV 25301

Clerk: Cathy Gatson

Reference Information

Ser Moss v. McBride: 061721/record

Angie Wilkinson

PS Form 3811, January 2005          Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

OFFICE OF THE CLERK
SUPREME COURT OF APPEALS OF WV
STATE CAPITOL RM E-317
1900 KANAWHA BLVD EAST
CHARLESTON WV 25305-0009

# MOSS v. BALLARD
## CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 12

Case 3:09-cv-01406 Document 8-3 Filed 02/09/10 Page 146 of 199 PageID #: 588

```
FUNCTION = SEQ INQUIRY                                           CASE SCREEN 4
     Case Number:
              JOHN MOSS, III (PRISONER #1373    vs. THOMAS L. MCBRIDE, WARDEN
Line    Date                        Action / Results
    1 06/22/06 # PAUPER'S AFD; PET FOR WRIT OF HABEAS CORPUS; APPLICATION
    2          # TO PROCEED IN FORMA PAUPERIS; MOT TO PROCEED IN FORMA PAUPERIS
    3          # MOT FOR APPT OF CNSL W/COS
    4 08/04/06 # COV LET; MOT FOR EXPEDITED ACTION W/COS
    5 10/16/06 ORDER MAILED;10/16/06;PA,JOHN MOSS, III & THOMAS MCBRIDE BY MAB
    6 10/16/06 FINAL ORDER ENTERED
    7 10/20/06 # MOT FOR APPT OF CNSL W/COS; COV LET
    8 10/30/06 ORDER MAILED;10/27/06;PA & JOHN MOSS, III BY MAB
    9 10/27/06 *O: CT DENIES D MOT FOR APPT OF CNSL FOR AP/BLOOM
   10 01/10/07 # MOT FOR EXT OF TIME WITHIN WHICH TO F PET ON APPEAL W/COS
   11 01/10/07 # COV LET
   12 02/01/07 # COV LET; DOCKETING STATEMENT; DESIGN OF RECORD W/COS
   13 02/01/07 # PET FOR APPEAL TO WVSCA W/ATTACH'S
   14 03/02/07 # RECEIPT FROM WVSCA
   15 03/07/07 # LET FR RORY PERRY, II TO JOHN MOSS, III DTD 3/5/07


   C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image    _
```

Case 2:09-cv-01406 Document 8-3   Filed 02/09/10   Page 147 of 199 PageID #: 569

Plaintiff's Attorney(s)                     Case Number 1990CC00ISC#:589

                                            Jury Trial: N̲
                                            Exhibits Filed: _
          Defendant's Attorney(s)           Public Access (Y/N): Y̲

                                            File          Who          Date
                                     Checked Out: _____ _____
                                                  _____ _____
Final Order Date: 10/16/06  Stat Close: 10/16/06   _____ _____
Judgement Order: O/DENYING HABEAS/BLOOM _____
                 _____
                 _____
                                     Judgement
Favor: _       Costs: _____   Decision Type: __    Date: _____
Judgment Amount: _____   Dismissal Type: _____ Date: _____
                                    Post Judgment
Motion to Set Aside: _____       Date Bond Posted: _____
Status:               _              Bond Amount: _____   Type: __
Appeal Filed:        02/01/07        Writ Type:     ___
                                     Purge Date:    _____
  <Ent>=cont  N=Notes  M=Menu  C=Chg  P=PlaAt  D=DefAt  F9=Add Rct        _

**MOSS v. BALLARD
CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 13**

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III

      Petitioner,

v.

         **Civil Action No. 06-MISC-245**
         **Judge Louis H. Bloom**

THOMAS MCBRIDE, Warden,
Mount Olive Correctional Complex,

      Respondent.

### FINAL ORDER DENYING HABEAS RELIEF

Pending before the Court is the "*Petition Under W.Va. Code §53-4A-1 for Writ of Habeas Corpus*" (hereinafter "Petition"), filed by the self-represented petitioner John Moss, III (hereinafter "Mr. Moss"). Mr. Moss's Petition relates to his conviction of three counts of first degree murder in April of 1990. Mr. Moss filed a direct appeal of his conviction to the Supreme Court of Appeals of West Virginia and such appeal was refused in 1991. Mr. Moss filed his first habeas petition in 1994, that petition was denied by this Court, after a full review of the grounds raised therein, and the Supreme Court of Appeals of West Virginia affirmed that denial. Mr. Moss filed a second habeas petition in 2005, that petition was denied by this Court, after full consideration of the grounds raised therein, and an appeal of that decision is currently before the Supreme Court of Appeals of West Virginia. Mr. Moss's current habeas Petition is brought pursuant to the decision of the Supreme Court of Appeals of West Virginia, *In the Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology Division*, 2006 WL 1686169, W.Va., June 16, 2006.

After full consideration of Mr. Moss's current habeas Petition, his two previous habeas petitions, the files relating to his underlying trial, applicable law, and based on the following

findings and conclusions, the Court is of the opinion that the Petition must be **SUMMARILY**

**REFUSED** and **DISMISSED.**

## FINDINGS OF FACT

1.  The Supreme Court of Appeals previously summarized the facts of this case in *In Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33 (W. Va. 1982):

> In December of 1979, a woman and her two children were found dead in their St. Albans home. Soon afterward, the deceased woman's husband became a suspect in the triple murder. He is alleged to have confessed to the crime and was subsequently indicted by the Kanawha County Grand Jury. The husband was held in custody for approximately eleven months awaiting trial, during which time his alleged confession was ruled admissible into evidence as voluntarily given. Trial was set for November 12, 1980.
>
> The record indicates that the appellant was also a suspect in the murders and that his name was recited in the indictment of the accused husband. In January 1980, the investigating authorities traveled to Cleveland, Ohio, to obtain a blood sample from the appellant, who at the time was housed in a juvenile detention center on an unrelated charge, and to question him about the murders. The appellant denied committing the murders. A blood sample was taken, when, at the authorities' request, the appellant pricked his finger and dribbled blood on a cloth provided for this purpose.
>
> At the time of this interrogation, the appellant was seventeen years of age. The blood sample was taken without a court order, and without the knowledge or consent of the appellant's parents. The authorities were aware that the appellant was a juvenile. They made no effort to contact the appellant's Ohio lawyer. The appellant was advised of his rights prior to questioning, but did not sign a waiver of rights form.
>
> When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. This apparently was done. Subsequently, in April 1980, the investigating authorities again traveled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders.
>
> On September 26, 1980, the State filed a detainer against the appellant . . . based on a malicious wounding charge, unrelated to the homicides[.] On October 28, 1980, while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, the appellant confessed to having committed the homicides in Kanawha County. The appellant subsequently made a tape recorded confession after signing a waiver of his *Miranda* rights.
>
> On November 2, 1980, a second detainer was filed by the State against the appellant based on a charge of three counts of murder in the first degree. On December 18, 1980, the appellant was again transported from [Ohio] to the Kanawha County Jail. A preliminary hearing was set [and] the juvenile referee made a finding of probable cause and referred the appellant to the juvenile jurisdiction of the Circuit Court of Kanawha County.

> On January 20, 1981, the State filed a motion to have the appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult[.] At the conclusion of the hearing the court issued from the bench its decision that the appellant be transferred to the criminal jurisdiction of the court, and indicated that further proceedings would be stayed until counsel had an opportunity to file an appeal.

*In Interest of Moss*, 170 W.Va. at 544-548, 295 S.E.2d at 35-37.

2.  Mr. Moss appealed the trial court's decision to transfer him to the adult jurisdiction of the Court and the Supreme Court reversed and remanded the matter. See *In the Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33.

3.  After conducting a second transfer hearing, the circuit court entered another order on September 28, 1982, granting the motion to transfer Mr. Moss to the Court's adult jurisdiction. The Supreme Court refused to hear Mr. Moss's appeal from the second transfer order.

4.  A grand jury later returned an indictment, charging Mr. Moss with three counts of first degree murder.

5.  Mr. Moss was tried, convicted, and sentenced for the three counts of first degree murder in 1984, but that conviction was reversed by the Supreme Court of Appeals of West Virginia by its decision in *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988).

6.  The Supreme Court's decision to overturn Mr. Moss's conviction was based on the Court's finding of multiple trial court errors. First, the Supreme Court held that the trial court erred when it refused Mr. Moss's motion to poll each juror, outside the presence of others, about each juror's exposure to prejudicial comments made by the prosecuting attorney. Second, the Supreme Court held that the trial court erred when it failed to intervene for the purposes of limiting and correcting fundamentally improper remarks made by the prosecuting attorney during closing. Third, the Supreme Court held that the

3

trial court erred when it allowed the admission of evidence regarding the results of a

polygraph test taken by the victims' husband and father. *Moss,* 180 W.Va. 363, 376

S.E.2d 569 (1988).

7.     In the 1988 decision, the Supreme Court also made the following statements regarding

the three confessions that were admitted at the trial:

> We conclude that the first two confessions given by [Mr. Moss] are admissible,
> while the last confession is inadmissible due to the lack of prompt presentment to
> a neutral judicial officer.
>
> *Moss,* 180 W.Va. 363, 369, 376 S.E.2d 569, 575.

8.     Mr. Moss's second trial was held in 1990. He was convicted again of three counts of first

degree murder. Mr. Moss appealed that conviction to the Supreme Court of Appeals of

West Virginia, but such appeal was refused on March 12, 1991.

*1994 Habeas Petition*

9.     Mr. Moss's first habeas petition was filed in August of 1994 and resulted in this Court's

consideration of numerous motions, legal memoranda, oral argument, and evidentiary

exhibits. The grounds raised in that habeas matter were the following:

> (1)   The admission of Trooper Fred Zain's testimony and test results violated
>       Mr. Moss's Constitutional rights;
>
> (2)   The State presented incorrect, false, misleading, overstated, and
>       unscientific evidence; and
>
> (3)   The admission of Mr. Moss's confessions violated his Constitutional
>       rights.

10.    In September of 1998, Judge MacQueen entered a Memorandum Order which concluded

that Mr. Moss was not entitled to a new trial on the basis of Trooper Zain's testimony and

testing. Specifically, Judge MacQueen held that based on the fact that the scientific

4

conclusions were confirmed as valid, Trooper Zain's testimony was not false, inaccurate, or invalid. Further, Judge MacQueen held that even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction.

11. Mr. Moss filed a motion to alter or amend Judge MacQueen's judgment and in October of 1998, Judge MacQueen held a hearing on Mr. Moss's motion. Apparently Judge MacQueen denied that motion from the bench, but a written order was never entered.

12. In June of 2001, and after Judge MacQueen retired, this Court held a status conference in this matter, wherein the parties were granted additional time to submit evidence and argument.

13. In February of 2002, this Court entered an Amended Order which denied relief, based on this Court's conclusion that Trooper Zain's testing and testimony did not result in any prejudice. In coming to that conclusion, the Court noted from the earlier Memorandum Order that there remains sufficient evidence to sustain the conviction. The Court specifically noted that, Mr. Moss's own confession is a key piece of evidence that stands independently of any Zain-related evidence. "Further, the Court found that the confession is corroborated in a number of significant ways, which the Court has described as 'indices of reliability.' In focusing on Zane, Moss ignores the power of his own well-corroborated confession." However, the habeas matter was reinstated to the Court's docket in March of 2002 so that the other issues that Mr. Moss raised in the habeas petition could be addressed, on their merits. After another hearing, the Court entered a Final Order in January of 2003, which denied all claims raised in that habeas proceeding.

14. The January 2003 final order made the following findings and conclusions:

5

"[e]ven if the serological evidence were excluded, there would still be sufficient evidence in the record to support Moss's conviction and that the introduction of Zain-related evidence and testimony at Moss's trial did not prejudice the jury."

\*  .\*  .\*

"As the Court has noted in its earlier orders, Moss's confession was well-corroborated and consistent with details of the crime scene. Therefore, even if the Court were to adopt all of Moss's arguments as to the flaws in the State's scientific evidence, Moss still would not be entitled to the requested writ."

"As both parties acknowledged, the issue of the voluntariness of Moss's confession has been thoroughly litigated[.] Moss failed to present any new evidence on the voluntariness of his confession. Rather, he seems to argue that the fact that Mr. Reggettz had, at one point, given a confession somehow invalidates Moss's own confession. The existence of the Reggettz confession does not have the devastating effect that Moss desires because the Reggettz confession does not impugn the voluntariness of Moss's confession. At most, it provided fodder for defense theories at trial. The question before the Court is whether Moss was able to establish that his confession was constitutionally flawed. He was not. Therefore, the admission of his confession at trial does not provide a predicate for issuance of the requested writ."

15.    Mr. Moss filed an appeal from this Court's January 2003 order denying his habeas

petition and the Supreme Court of Appeals of West Virginia affirmed this Court's

decision after finding no merit in Mr. Moss's assignments of error. *Moss v. Trent*, 216

W.Va. 192, 603 S.E.2d 656 (W. Va. 2004).

*2005 Habeas Petition*

16.    Mr. Moss filed his second Petition for Writ of Habeas Corpus in July of 2005. The

petition is based on the following averments of error:

> (1)    The trial court abused its discretion and committed reversible error in ruling that the first two confessions were admissible under the "law of the case doctrine";
>
> (2)    The factual determination by the West Virginia Supreme Court of Appeals that no prompt presentment objections were entered on the first two alleged confessions is clearly erroneous and works a manifest injustice;
>
> (3)    The petitioner was deprived of the Sixth Amendment's guarantee of the effective assistance of counsel;

6

    (4)    The petitioner did not receive a full and fair hearing on his motion and memorandum to suppress samples of blood, confession, and other physical evidence seized due the improper tactics of Fred S. Zain and the West Virginia State Police Troopers and Crime Laboratory;

    (5)    The Petitioner's Sixth Amendment right to a fair and impartial jury was contravened when the State knew or should have known of the false and misleading testimony and evidence presented by Fred Zain;

    (6)    The trial court abused its discretion and committed reversible error when it admitted petitioner's blood samples, confessions, and all evidence incident thereto into evidence, when the samples of blood were obtained in violation of Federal and State Constitutional rights; and

    (7)    The prosecution made improper close arguments that denied the petitioner a fair trial.

17.    The Court denied Mr. Moss's petition, after full consideration of all seven grounds raised therein, and an appeal of that decision is currently before the Supreme Court of Appeals of West Virginia.

18.    The Court found as fact that the fourth ground raised in the 2005 Petition related to the alleged, improper tactics of State Trooper Fred Zain regarding his collection and testing of evidence. The Court found as fact that this issue had been previously raised, considered, and denied, on the merits, by the Supreme Court of Appeals and this Court.

*The Current Habeas Petition*

19.    Mr. Moss filed his third and present Petition for Writ of Habeas Corpus in June of 2006. The petition is based on the following two grounds:

    (1)    Blood test results and reports of offered serology evidence were falsified or were substantially incorrect. Mr. Moss refers to syllabus point six of *In The Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology, Division,* 2006 WL 1686169, W.Va., June 16, 2006.

    (2)    Ineffective assistance of trial counsel in failing to conduct an adequate investigation.

20.    The Court finds as fact that the two grounds that are raised in the current Petition relate to the alleged, improper tactics of the West Virginia State Police Crime Laboratory Serology

7

Division in preparing blood test results and reports.

21.   The Court finds that Judge MacQueen in the 1998 Memorandum Order found that the record in this proceeding did not contain sufficient detail to identify exactly which of the State Police serologists performed the testing of all of the specific blood samples.

22.   The Court finds that Judge MacQueen in the 1998 Memorandum Order found that it was clear that both Fred Zain and Robert Murphy conducted analyses of some of the blood and that Fred Zain testified concerning the results at trial.

23.   This Court finds that the Supreme Court of Appeals of West Virginia has recognized that this Court has already considered the issue of whether even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction. This Court found and concluded that even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction. The Court finds that the Supreme Court of Appeals of West Virginia affirmed that conclusion. See *Moss v. Trent*, 216 W.Va. at 195, 603 S.E.2d at 659, & n.8 (W.Va. 2004).

24.   This Court finds that the Supreme Court of Appeals of West Virginia has recognized that this Court has already considered the issue of whether the introduction of Mr. Zain's testimony had a prejudicial effect on the jury under the Supreme Court of Appeals of West Virginia's holdings in syllabus points two and three of *Zain* I. This Court found and concluded that the introduction of testimony or evidence by Mr. Zain did not have a prejudicial effect on the jury. The Court finds that the Supreme Court of Appeals of West Virginia affirmed that conclusion. See *Id.* at 197, at 661.

8

## STATEMENT OF THE LAW

1.   According to the *Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia*, circuit courts are required to conduct an initial evaluation of habeas petitions before requiring an answer from the respondent. *Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, Rule 4 (hereinafter "Habeas Rules")*.

2.   After conducting this initial evaluation, the circuit court can either summarily dismiss the petition or order the respondent to file an answer. *Habeas Rules, Rule 4.*

3.   The court may refuse the petition if it is satisfied that the petitioner is entitled to no relief, after the Court reviews the petition, the documentary evidence attached thereto, the record of the underlying conviction, and the records of any previous attacks on the conviction or sentence. *W. Va. Code § 53-4A-3(a).*

4.   The Supreme Court of Appeals of West Virginia (hereinafter "Supreme Court") has recognized that this conclusion can be made without a hearing and without the appointment of counsel. *Mugnano v. Painter*, 212 W.Va. 831, 833; 575 S.E.2d 590, 592 (W. Va. 2002) (per curiam)(citing Syl. pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (W. Va. 1973)).

5.   Contentions in habeas petitions that have been previously and finally adjudicated, after a decision on the merits and an opportunity for an appeal, need not be considered unless the prior decision was clearly wrong. See *W.Va. Code, § 53-4A-1.*

6.   When any contentions and grounds could have been advanced by the petition at trial, on direct appeal, or in a proceeding or proceedings on a prior habeas petition, but were not advanced, there shall be a rebuttal presumption that the petitioner intelligently and

9

knowingly failed to advance such contention or contentions and grounds. See *W. Va Code*, § 53-4A-1(c).

## CONCLUSIONS OF LAW

1. The Court concludes that Mr. Moss's two grounds for relief must be **SUMMARILY DENIED** and **DISMISSED** as they relate to serological evidence, testing, and testimony, which was previously raised, considered, and denied, on the merits by the Supreme Court of Appeals of West Virginia and this Court. This Court concludes that even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction. Further, this Court concludes that the introduction of testimony or evidence by Mr. Zain did not have a prejudicial effect on the jury, since there was sufficient independent evidence regarding Mr. Moss's guilt. This Court concludes that the second ground of ineffective assistance of trial counsel in failing to conduct an adequate investigation is moot, because this Court has concluded that even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction.

Accordingly, the Court does hereby **SUMMARILY DENY** and **DISMISS** all grounds that were raised in Mr. Moss's Petition. The Court notes Mr. Moss's objection(s) to the entry of this Order. The Clerk is **DIRECTED** to send a certified copy of this Order to Mr. Moss, who is believed to be incarcerated at Mount Olive Correctional Complex, which has a mailing address of One Mountainside Way, Mt. Olive, West Virginia, 25185.

There being nothing further, the Court **DIRECTS** the clerk to **REMOVE** this action from the Court's docket.

10/16/06

ENTER: This 16 day of ~~August~~ Oct., 2006.

JM, II / PA / Tm ℗ mo

Judge Louis H. Bloom

10

**FILE COPY**

**DO NOT REMOVE FROM FILE**

SUPREME COURT OF APPEALS OF WEST VIRGINIA

**DOCKETING STATEMENT**

*FILED*

2007 FEB -1 AM 10: 41

KANAWHA GATSON CLERK
13 CIRCUIT COURT

Style of Case:

John Moss, III,

    Petitioner,

v.

Thomas L. McBride, Warden,

    Respondent.

Circuit Judge: Louis H. Bloom
County: Kanawha

*FILED*

MAR - 5 2007

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Type of Action:

Civil    X
Criminal   ___

Petitioner(s):

Plaintiff(s)   X
Defendant(s) ___

Circuit
Number: 13th

## A. TIMELINESS OF APPEAL

1. Date of entry of judgement or order appealed from: October 16, 2006

2. Filing date of any post-judgment motion filed by any party pursuant to R.Civ.P. 50(b), 52(b), or 59:  N/A

3. Date of entry of order deciding post-judgment motion:

4. Date of filing of petition for appeal:  January 31, 2007.

5. Date of entry of order extending appeal period:

6. Time extended to:  _____, 2007.

## B. FINALITY OF ORDER OR JUDGMENT

Is the order or judgment appealed from a final decision on the merits as to all issues and parties?
     X   YES   ___   NO

If no, was the order or judgment entered pursuant to R.Civ.P. 54(b)?
                  ___ YES  ___ NO   X   N/A

Has the defendant been convicted?    X  YES  ___ NO  ____ N/A
Has a sentence been imposed?    X  YES  ___ NO  ____ N/A
Is the defendant incarcerated?    X  YES  ___ NO  ____ N/A

C. Has this case previously been appealed?  ___ YES   X NO  ____ N/A

*If yes, give the case name, docket number, and disposition of each prior appeal on a separate sheet.*

D. Are there any related cases currently pending in the Supreme Court of Appeals or Circuit Court?
    ___ YES   X   NO

*If yes, cite the case and the manner in which it is related on a separate sheet.*

## CASE INFORMATION

E.  State generally the nature of the suit, the relief sought, and the outcome below.    This appeal is from a final order denying relief on a petition under W.V. Code § 53-4A-1, et. seq., for a writ of habeas corpus by a person in state custody. Petitioner sought immediate release from incarceration and/or a new trial.

F.  State the issues to be raised on appeal.    The trial court abused its discretion and committed reversible error in violation of Due Process when it summarily denied and dismissed Petitioner's petition under West Virginia Code § 53-4A-1 for writ of habeas corpus without following the requirements of the statute and directives of this Court from the decision in the case, *In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division.*

## CASE MANAGEMENT INFORMATION

G.  Do you wish to make an oral presentation of the petition?     _X_ YES  ___ NO

H.  Has the entire or only portions of the record been designated?  _X_ ENTIRE ___ PORTION

I.  If the appeal is granted, do you desire reproduction of the record or that the case be heard on the original record? ___ REPRODUCED _X_ ORIGINAL

J.  List counsel for each adverse party to the appeal. Include name, firm name, address, and telephone number. If unrepresented by counsel, provide the address and telephone number of the adverse party.  Bill Charnock, Kanawha County Prosecuting; 700 Washington St. E.; Suite 400; Charleston, WV 25301

K.  List the Petitioner(s) name:        John Moss, III

If incarcerated, provide institutional address:   Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

L.  Name of attorney or pro se litigant filing Docketing Statement:  Same as above.

___ ATTORNEY  _X_ PRO SE

Will you be handling the appeal?      _X_ YES  ___ NO

If so, provide firm name, address, and telephone number:  N/A

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

Date: January _31_, 2007.

- 2 -

No. _____

FILED

2007 FEB -1  AM 10: 44

KANAWHA CO. CIRCUIT CLERK
CIRCUIT COURT

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

========================================

STATE OF WEST VIRGINIA, EX REL.,
JOHN MOSS, III,

Appellant,

vs.

THOMAS L. McBRIDE, Warden,
Mount Olive Correctional Complex,

Appellee.

========================================

---

## DESIGNATION OF THE RECORD ON APPEAL

---

NOW COMES John Moss, III, *pro se* petitioner, pursuant to Rule 4(c) of the West Virginia Rules of Appellate Procedure, and designates the entire record, including all documents, materials, transcripts, etc., the Court considered in its Order summarily denying Petitioner habeas corpus relief and dismissing his petition in Civil Action No. 06-MISC-245, Kanawha County Circuit Court, The Honorable Louis H. Bloom, but specifically, the following items:

1.  Petition and Memorandum for writ of habeas corpus ad subjiciendum, with exhibits, if any, filed in Kanawha County Circuit Court Clerk's office on or about 22 June, 2006, Case No. 06-MISC-245;

2.    Order entered on or about 16 October, 2006, denying habeas relief and dismissing the petition in Case No. 06-MISC-245;

3.    Petition and Memorandum for writ of habeas corpus ad subjiciendum, with exhibits, if any, filed in Kanawha County Circuit Court Clerk's office 2 June, 2005, Case No. 05-MISC-298;

4.    Order entered on or about 7 February, 2006, denying habeas relief and dismissing the petition in Case No. 05-MISC-298;

5.    Petition and Memorandum for writ of habeas corpus ad subjiciendum, with exhibits, if any, filed in Kanawha County Circuit Court Clerk's office 18 August, 1994, Case No. 94-MISC-663, and all subsequent pleadings, motions, etc.;

6.    All transcripts of all hearings conducted by the court in Kanawha County Case No. 94-MISC-663;

7.    Final Order entered on or about 30 January, 2003, denying habeas relief and dismissing the petition in Case No. 94-MISC-663;

8.    September 19, 20, 21 & 22, 1983 hearing transcript in Kanawha County Case No. CR-82-F-221;

9.    Memorandum of Law in support of motion to suppress samples of blood, confessions and other physical evidence seized from John Moss by employees of West Virginia, filed on or about 3 October, 1983, in Kanawha County Circuit Court Case No. CR-82-F-221.

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185

On this, the 31st day of January, 2007.

Appellant proceeding *pro se*.

## CERTIFICATE OF SERVICE

FILED

2007 FEB

I, John Moss, III, *pro se* Appellant, do hereby certify that a copy of the foregoing petition for appeal, designation of the record on appeal, and *Supreme Court of Appeals of West Virginia Docketing Statement* has been served upon counsel for the respondent by handing true copies thereof to prison officials this, the 31st day of January, 2007, for mailing in the regular course of the United States mail, postage prepaid, in a correctly addressed and stamped envelope, addressed to:

Bill Charnock, Prosecutor
Kanawha County Circuit Court
700 Washington Street, East
Suite 400
Charleston, WV  25301

John Moss, III, *pro se* Appellant

# MOSS v. BALLARD
# CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 14

STATE OF WEST VIRGINIA
IN THE SUPREME COURT OF APPEALS
IN VACATION

John Moss, III, Petitioner Below, Petitioner

vs.) No. 070678

Thomas McBride, Warden, Mount Olive
Correctional Complex, Respondent Below,
Respondent

On a former day, to-wit, March 5, 2007, came the petitioner, John Moss, III, pro

se, and presented to the Court his petition praying for an appeal from a judgment of the

Circuit Court of Kanawha County, rendered on the 16th day of October, 2006, with the

record accompanying the petition.

Upon consideration whereof, the Court is of opinion to and doth hereby refuse

said petition for appeal. Justice Albright would grant.

DONE IN VACATION of the Supreme Court of Appeals, this 9th day of July,
2007.

Honorable Robin Jean Davis,  Chief Justice

Honorable Larry V. Starcher

Honorable Elliott E. Maynard

Honorable Joseph P. Albright,

Honorable Brent D. Benjamin

Received the foregoing order this 9th day of July, 2007, and entered the same in

Order Book No. 159.

A True Copy

Attest: _____

Clerk, Supreme Court of Appeals

# WEST VIRGINIA SUPREME COURT
# OF APPEALS

To:          **Kanawha County Circuit Clerk**

Date:        **July 16, 2007**

Style:       **John Moss, III**

             **vs.) No. 070678**

             **Thomas McBride**

Received of Rory L. Perry, II, Clerk, Supreme Court of Appeals of West

Virginia, a copy of the **Court's Order and Original Record** in the above-

styled action.  Dated at _____, West

Virginia, this the _20_ day of _July_____, 2007.

_____
Circuit Clerk

Please return to the West Virginia Supreme Court of Appeals, Clerk's Office, State Capitol Complex, Building 1, Rm. E-317, Charleston, WV 25305  Attn:  Angie Wilkinson. If you have any questions please call 340-2326.

FILE COPY NO. _____ 0720678

DO NOT REMOVE FROM FILE

FILED
2007 FEB - AM 10: 42
KANAWHA CO. CIRCUIT COURT
RORY S. PERRY CLERK

IN THE WEST VIRGINIA SUPREME COURT OF APPEALS

AT

CHARLESTON

*******************************************************

STATE OF WEST VIRGINIA EX REL.,

JOHN MOSS, III,

APPELLANT,

V.

THOMAS L. McBRIDE, WARDEN,

APPELLEE.

*******************************************************

4-1 (Albright)

GRANT/(REFUSE)/ACCEPT/ Date: 7/9/07

Recused/Not Participating

Chief Justice _____

PETITION FOR APPEAL

FILED
MAR - 5 2007
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185

On this, the 31st day of January, 2007.

Petitioner proceeding pro se.

NO. _____

IN THE WEST VIRGINIA SUPREME COURT OF APPEALS

AT

CHARLESTON

STATE OF WEST VIRGINIA EX REL.,

JOHN MOSS, III,

APPELLANT,

V.

THOMAS L. McBRIDE, WARDEN,

APPELLEE.

PETITION FOR APPEAL

## I. KIND OF PROCEEDING AND NATURE OF THE RULING BELOW

This is an appeal by John Moss, III, pro se petitioner (hereinafter "Appellant"), pursuant to the applicable laws, rules, etc., governing petitions on appeal in West Virginia. Appellant respectfully petitions this Honorable Court for an appeal of the 16 October, 2006, Order, summarily denying and dismissing Appellant's pro se Petition Under West Virginia Code § 53-4A-1 For Writ of Habeas Corpus, and Motion For Appointment of Counsel. The said Order was signed and entered by the Kanawha County Circuit Court, the Honorable Louis H. Bloom. (Copy attached.)

Appellant set forth two grounds in his pro se Petition Under West Virginia Code § 53-4A-1 For Writ of Habeas Corpus (hereinafter "writ"); 1) Blood test results and reports of offered serology evidence were falsified or were substantially incorrect; and, 2) Ineffective assistance of trial counsel. Appellant requested that the Kanawha Circuit Court (hereinafter "habeas" or "Kanawha" court) grant him any and all relief to which he may be entitled. Appellant's writ and request were predicated upon this Court's ruling in the case; In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, 2006 WL 1686169, W.Va., June 16, 2006. Appellant asserted that his convictions of three counts of first degree murder, without a recommendation of mercy, were obtained on the falsified and/or substantially incorrect blood tests results and reports as offered for evidence by an employee, or employees, of the West Virginia State Police and Crime Laboratory, other than Fred Zain, and that trial counsel were ineffective for conducting an inadequate investigation into circumstances surrounding the falsified reports.

Instead of abiding by this Court's directives in its 16 June, 2006, Order in the case Renewed Investigation, supra, and appointing counsel and holding a full evidentiary hearing, the habeas court cursorily examined Appellant's contentions, summarily denied the same, denied the appointment of counsel, and dismissed Appellant's writ.

The habeas court seems to rely mainly on its earlier decision in SER Moss v. Trent, Kanawha County Circuit Court No. 94-MISC-345, a case in which this Court also issued an opinion.

(SER Moss v. Trent, 603 S.E.2d 656 (2004)). The trial court
ruled, in case no. 94-MISC-663, in its Order denying habeas
relief, that:

> "[E]ven if the serological evidence were excluded,
> there would still be sufficient evidence in the record
> to support Moss's conviction and that the introduction
> of Zain-related evidence and testimony at Moss's trial
> did not prejudice the jury."

> ***

> "As the [c]ourt has noted in its earlier orders, Moss's
> confession was well-corroborated and consistent with
> details of the crime scene. Therefore, even if the
> [c]ourt were to adopt all of Moss's arguments as to the
> flaws in the State's scientific evidence, Moss still
> would not be entitled to the requested writ."

## II. STATEMENT OF THE FACTS OF THE CASE

Appellant adopts herein, by reference thereto, the facts as
contained in his pro se Petition Under § 53-4A-1 For Writ Of
Habeas Corpus Ad Subjiciendum, filed in the Kanawha County
Circuit Court on or about 21 June, 2006, and assigned Kanawha
County Case No. 06-MISC-245.

This case has a protracted litigious history. It began
when, in December, 1979, a woman and her two children were
reported dead by the woman's husband and children's father in
their St. Albans, West Virginia, home. Soon afterward, the
husband and father, Paul Reggettz, III, became a suspect in the
triple murders, and confessed to the crimes. On or about 29
April, 1980, Paul Reggettz was indicted by the Kanawha County,
West Virginia Grand Jury. The body of the indictment also named
Appellant. Mr. Reggettz was held in custody for approximately

eleven months during which time his confession was ruled admissible into evidence as voluntarily given. Mr. Reggettz's trial was set for November 12, 1980.

Appellant became involved in the case when Appellant's uncle, who was in law enforcement at one time, offered his opinion that his nephew may know something about the crimes due to living in the neighborhood. As a result of the information offered by the uncle, in January, 1980, investigating authorities traveled to Cleveland, Ohio, to question Appellant about the murders. Appellant, at that time, was housed in a juvenile detention center on an unrelated charge. Appellant denied committing the murders or having any knowledge of them. However, the two law enforcement personnel, who were the chief investigating officers of the Reggettz murders, demanded that Appellant provide them a blood sample even though they had no warrant, no court order and had not discussed it with Appellant's parents or Ohio court appointed counsel. The troopers directed him to prick his own finger and dribble blood on a cloth provided by the troopers for that purpose. Appellant complied and gave the troopers what they demanded because Appellant "had nothing to hide."

At the time of this first interrogation and relinquishment of physical evidence, Appellant was only seventeen years old, a fact the two troopers were not uncognizant of. When Appellant's Ohio counsel learned of the blood sample taken by the West Virginia authorities, he objected and petitioned an Ohio court for an order that the cloth on which the blood sample was deposited be returned to Appellant. The Ohio court granted

counsel's request and ordered that the blood soaked cloth be returned. However, Appellant asserts the blood soaked cloth was never returned to him or his Ohio counsel. An allegation the government has neither refuted or denied. The government hasn't even been required to demonstrate that, if something was returned, as the investigating authorities allege, whether only part of it was returned, or what may have been on whatever was returned. No hearing has been held on Appellant's assertions that the cloth was not returned to him or his attorney. No testing has ever been conducted on anything to determine if, whatever it was the two troopers avowed to return, which Appellant asserts they returned nothing, it was the same cloth containing Appellant's blood sample he relinquished, whether it was animal blood, ink, or some other substance resembling blood.

In an opinion written by this Court on an appeal taken pretrial by Appellant from a final order transferring the juvenile Appellant to adult jurisdiction, entered by the Kanawha County Circuit Court, the Honorable John Hey, the Court stated that the blood soaked cloth was "apparently" [returned]; In The Interest Of John Moss, Jr., 295 S.E.2d 33, 36 (1982)(Moss I). However, it is unclear how the Court reached this conclusion as the record does not support it for a lack of factual development. There is no documentation of a chain of evidence on the illegally obtained blood sample nor evidence of any kind introduced that it was returned. (See, the 19, 20, 21 & 22 September, 1983, Suppression Hearing Transcript, p. 268). Appellant was questioned on direct examination by testifying only to what his Ohio attorney had told him, not to what he actually knew to be factual:

-5-

Q. Did he have to go to court concerning that blood?
A. Yes. He said he was going to the courthouse about it.
Q. And what was the result?
A. He told me he got the blood stopped or something.
Q. He got the blood samples back?
A. Yeah.

(Emphasis added.) Appellant's court appointed Ohio attorney has never been required to say, under oath, whether something was given to him and, if so, who, if anyone, gave something to him, etc. Further, nothing has been developed in the record to demonstrate that, if something were returned to the Ohio appointed attorney or juvenile facility, what was returned contained Appellant's blood, animal blood, or something merely resembling blood.

In spite of Appellant's assertions that the cloth was never returned to him and contrary to Appellant's wishes, counsel below failed to develop the issue in the lower proceedings.

In April, 1980, the investigating authorities, including the Kanawha County Assistant Prosecuting Attorney, Charles Pettry, again traveled to Cleveland to obtain another blood sample from Appellant, but this time they obtained an order issued by an Ohio court. Based on the alleged blood sample analysis by West Virginia State Police Crime Laboratory Serologist, Fred Salem Zain, as well as other employees of the West Virginia State Police Crime Laboratory, Serology Division, on 26 September, 1980, West Virginia filed a detainer against Appellant requesting that a juvenile be held, pursuant to W.Va. Code § 62-14-1 et seq. They based their request on a malicious wounding charge unrelated to the murders.

On 28 October, 1980, ostensibly while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, although they were the chief investigating officers in the Reggettz murders, a "confession" was obtained from the young suspect. On that same date, a tape recorded statement was then made after a foray to the Parkersburg detachment of the W.Va. State Police for the sole purpose of obtaining that recorded statement. (First and second "confession.") However, though Appellant signed a waiver of rights form at that time, Appellant was not brought before a juvenile referee, magistrate or judicial officer to have the waiver explained to him. It is interesting to note that the adult suspect, Paul Reggettz, III, was promptly presented to a magistrate by the same troopers who traveled to Ohio to bring Appellant back--who at the time was a juvenile--to answer the malicious wounding charge and at which time they obtained Appellant's "confession."

On 30 October, 1980, Appellant was returned to Ohio by two different members of the West Virginia State Police, Troopers Woodward and Allen. These two troopers also asserted Appellant just all of a sudden wished to discuss further details of the crime which he had not previously told authorities. (Third "confession.") It has always been a subject of contemplation why it was only during these car rides did any authority allege Appellant wished to "confess." For example, of all the authorities Appellant came into contact with; his Ohio attorney, the Ohio juvenile facility staff, Kanawha County Jail personnel, etc., he chose to confess only to the troopers who transported him.

On 2 November, 1980, a second detainer was filed by West Virginia against Appellant, again requesting that a juvenile be held, based on a charge of three counts of first degree murder. On 18 December, 1980, Appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for 24 December, 1980, but as a result of motions for continuances made by the defense, the hearing was not held until 12 January, 1981, at which time probable cause was found by the juvenile referee who then referred Appellant to the juvenile jurisdiction of the Circuit Court.

On 20 January, 1981, West Virginia filed a motion to have Appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. Continuances were granted on defense's several motions to allow for psychological and psychiatric evaluation, etc., and a transfer hearing was held on 29 June, 1981. After protracted litigation, at a 6 August, 1981, hearing, the court issued from the bench its decision to transfer Appellant to adult status. On 13 August, 1981, West Virginia presented its case against Appellant to the grand jury, which returned an indictment charging him with three counts of murder in the first degree.

After another prolonged period of time within which issues pertaining to the state's transfer proceedings were litigated, (see, In The Interest Of John Moss, Jr., 170 W.Va. 543, 295 S.E.2d 33 (1982)(Moss I), another indictment was returned, on or about 30 September, 1982, again charging Appellant with three counts of first degree murder.

-8-

Prior to trial, defense counsel filed a **Motion To Suppress**, objecting to, **inter alia**, entering Appellant's two alleged confessions of 28 October, 1980, into the trial and, on 19, 20, 21 & 22 September, 1983, a hearing was held on Appellant's motion(s).  At the close of the hearing the court ordered that the parties could submit memorandums of law on the issues as brought through the hearing.  The third "confession" was not a subject of the motion and memorandum at the hearing because the state had not informed anyone of its intent to use that "confession" at trial until the trial was actually underway. Once the defense was informed of the state's intended use of the third "confession" at trial, defense counsel objected to that one also.

Trial commenced on 21 February, 1984, by the court's, <u>inter alia</u>, disposing of the state's pretrial motion asking the court to order the young defendant be restrained, by reading the indictment into the record, and by the beginning of **voir dire**. On or about 26 April, 1984, Appellant was convicted of three counts of first degree murder without recommendations of mercy.

After considering and denying defense post trial motions, a petition for appeal was filed on Appellant's behalf.  In **State v. Moss**, 180 W.Va. 363, 376 S.E.2d 569 (1988)(**Moss II**) this Court reversed Appellant's convictions because; (1) [T]he trial judge committed reversible error when he refused to poll the jurors; (2) [M]anifest injustice resulted from the prosecutor's remarks; and, (3) [T]he introduction of the husband's polygraph test results was so prejudicial that the trial court's instruction not to consider such evidence was insufficient to cure the error.

-9-

Though not adjudicative of the decision to reverse Appellant's first convictions, this Court nonetheless wrote on the issue on appeal of the West Virginia authorities' failure to promptly present the juvenile defendant to a neutral judicial officer upon being taken into custody as required by West Virginia statute. The Court ruled that had objections been made on the first two "confessions," the decision in **Ellsworth J.R.**, 331 S.E.2d 503 (W.Va. 1985) would have been retroactively applied and they, like the third, would have been inadmissible.

After various pretrial proceedings, including a hearing on the second trial's defense counsel's motion for the suppression of Appellant's alleged confessions on the basis of authorities' failure to promptly present Appellant to a neutral judicial officer, on 26 April, 1990, Appellant was again convicted of three counts of first degree murder without a recommendation of mercy. Appellant's counsel then filed, on 14 January, 1991, a petition for appeal, and Appellant, pro se, filed, on 23 February, 1991, a supplemental petition for appeal. This Court, however, refused to review the petitions without comment.

On or about 18 August, 1994, Appellant filed a "Special Zain" Petition For Writ Of Habeas Corpus in the Kanawha County Circuit Court, pursuant to this Court's prophylactic remedy for persons convicted in cases involving the false and/or misleading testimony or evidence presented by the West Virginia State Police employee, Fred S. Zain. Kanawha Case No. 94-MISC-663. After protracted proceedings, the circuit court denied Appellant's prayer for relief and dismissed the petition. Appellant appealed that denial and, in a written per **curiam**

opinion, **Moss v. Trent**, 603 S.E.2d 656 (2004)(**Moss III**) this Court upheld the circuit court's denial. Appellant then timely filed his **Petition For Rehearing**, which was also refused.

Appellant thereafter filed his petition for writ of **certiorari** in the United States Supreme Court. By Order entered 24 January, 2005, the Court refused **cert.**

On or about 2 July, 2005, Appellant's **Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1**, for his remaining contentions of the constitutional violations which result in Appellant's continued unlawful incarceration was filed. Kanawha Case No. 05-MISC-298.

That petition for post-conviction relief was summarily denied and dismissed by the circuit court, the Honorable Louis H. Bloom, by Order entered on or about 7 February, 2006. On or about 11 May, 2006, Appellant's motion for additional time to file an appeal of the denial of his pro se petition for state post-conviction relief was received and filed in the Kanawha County Circuit Court Clerk's office. Judge Bloom, however, by Order entered on or about 22 May, 2006, denied Appellant's request for additional time to file his appeal. Judge Bloom's unreasonable denial forced Appellant to file his incomplete petition on appeal in the Kanawha court for filing in this Court because Judge Bloom did not afford him the courtesy of additional time to file his pro se petition. Because Justice Benjamin was a member of the law firm that represented Appellant at trial, Appellant also filed contemporaneously with his petition for appeal a motion that Justice Benjamin voluntarily recuse himself from the decision in Appellant's case.

· As stated above, Appellant's petition under **W.Va. Code** §
53-4A-1 for post-conviction relief was then filed, on or about
21 June, 2006, alleging his conviction was obtained by the
false, misleading, and/or substantially incorrect blood tests
results offered as evidence by members and/or employees of the
West Virginia State Police and/or crime laboratory, and
ineffective assistance of counsel. Instead of appointing
counsel and conducting a full evidentiary hearing, as required,
though, Judge Bloom summarily denied and dismissed Appellant's
writ.

Because the issues in the 21 June, 2006, writ, which is the
subject of this petition on appeal, are, essentially, identical
to many of the issues contained in his petition for
post-conviction relief that was filed on or about 2 July, 2005,
denied by Judge Bloom on or about 7 February, 2006, and which
the appeal of said denial was currently pending before this
Court, Supreme Court No. 061721, Appellant handed to prison
officials for mailing to be filed, in this Court, on or about 27
June, 2006, his **Motion To Hold Petition On Appeal In Abeyance,
Appoint Counsel, And To Thereafter Allow Filing Of Supplemental
Petition On Appeal.** Appellant asked that his previous petition
on appeal, in Supreme Court No. 061721, be held in abeyance
pending the factual development of his allegations in the
instant proceeding. The Kanawha court, however, summarily
denied and dismissed his 21 June, 2006, writ prior to a
determination of Appellant's petition on appeal, No. 061721.

. Due to the Kanawaha court's unreasonable delay in considering Appellant's 21 June, 2006, petition for post-conviction relief, which Appellant filed pursuant to the rulings of the case, In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, 2006 WL 1686169, W.Va., June 16, 2006, Appellant filed, in this Court, on or about 11 September, 2006, his petition for writ of mandamus seeking to compel the Kanawha court to act with the constitutionally guaranteed dispatch in ruling on Appellant's 21 June, 2006, petition for post-conviction relief. West Virginia Supreme Court of Appeals No. 062473.

Prior to any ruling by this Court on Appellant's petition for writ of mandamus, the Kanawha Court summarily denied and dismissed Appellant's 21 June, 2006, petition for post-conviction relief.

Appellant then filed, on or about 30 October, 2006, his Motion To Amend Previously Filed Petition For Writ Of Mandamus, requesting that this Court allow him to amend his petition for mandamus to reflect that the Kanawha Court had ruled on his 21 June, 2006, petition for habeas relief by summarily denying and dismissing the same without appointing counsel and conducting an evidentiary hearing as required by the case, In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, supra.

By Order entered by this Court on or about 28 November, 2006, however, Appellant's petition for writ of mandamus was refused. This Court declined to comment on Appellant's motion to amend.

By Order entered on or about 6 December, 2006, then, this Court refused Appellant's petition on appeal of the Kanawha court's denial of his 2 July, 2005, petition for post-conviction habeas corpus relief, WVSCA No. 061721, without further comment.

This petition on appeal, then, appeals the Kanawha court's summary denial and dismissal of Appellant's 21 June, 2006, petition for post-conviction relief filed pursuant to this Court's demands in the case, In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, supra.

### III. ASSIGNMENT OF ERRORS RELIED ON AND SUPPORTING FACTS

1. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN VIOLATION OF DUE PROCESS WHEN IT SUMMARILY DENIED AND DISMISSED PETITIONER'S PETITION UNDER WEST VIRGINIA CODE § 53-4A-1 FOR WRIT OF HABEAS CORPUS WITHOUT FOLLOWING THE REQUIREMENTS OF THE STATUTE AND DIRECTIVES OF THIS COURT FROM THE DECISION IN THE CASE, IN THE MATTER OF: RENEWED INVESTIGATION OF THE STATE POLICE CRIME LABORATORY, SEROLOGY DIVISION.

The court cursorily reviewed Appellant's writ and made erroneous legal conclusions of law in its decision to deny Appellant's request for relief when it states Appellant's claims must be summarily denied and dismissed as they relate to serological evidence, testing, and testimony, which was previously raised, considered, and denied, on the merits, by the Supreme Court of Appeals of West Virginia and [the circuit] Court. The court obviously did not take into consideration this Court's demands in the case; In The Matter Of: Renewed

Investigation Of The West Virginia State Police Crime Laboratory, Serology Division, 2006 W.Va. Lexis 512006, W.Va. Lexis 51, No. 32885, June 16, 2006.

The court also denied the second ground of Appellant's writ, i.e., ineffective assistance of counsel in failing to conduct an adequate investigation, by declaring a belief the issue is moot based on its antecedent ruling above.

## IV. POINTS AND AUTHORITIES RELIED ON

In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, 2006 W.Va. Lexis 512006, W.Va. Lexis 51, No. 32885, June 16, 2006;

Gibson v. Dale, 173 W.Va. 681, 319 S.E.2d 806 (1984);

Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981);

Nazelrod v. Hun, 199 W.Va. 582, 486 S.E.2d 322 (1997) (per curiam);

Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973);

SER Vernatter v. Warden, 207 W.Va. 11, 528 S.E.2d 207 (1999);

SER Watson v. Hill, 200 W.Va. 201, 488 S.E.2d 588 (1989);

Smith v. Hedrick, 181 W.Va. 394, 382 S.E.2d 588 (1989);

State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).

## V. DISCUSSION OF LAW

This appeal is presented as authorized by W.Va. Code § 53-4A-9 (1967) upon the court's summary denial of a petition for writ of habeas corpus which was filed pursuant to this Court's findings in the case; In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, 2006 WL

1686169, W.Va., June 16, 2006. Ordinarily, the appellant bears the burden of showing, in an appeal to this Court, that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court. Syl. Pt. 2, Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657, 757 (1973). However, in Syllabus Point 4 of In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, 2006 WL 1686169, W.Va., June 16, 2006, this Court demanded that:

> "A prisoner against whom a West Virginia State Police
> Crime Laboratory serologist, other than Fred Zain,
> offered evidence and who challenges his or her
> conviction based on the serology evidence is to be
> granted a full habeas corpus hearing on the issue of
> the serology evidence. The prisoner is to be
> represented by counsel unless he or she knowingly and
> intelligently waives that right. The circuit court is
> to review the serology evidence presented by the
> prisoner with searching and painstaking scrutiny. At
> the close of the evidence, the circuit court is to
> draft a comprehensive order which includes detailed
> findings as to the truth or falsity of the serology
> evidence and if the evidence is found to be false,
> whether the prisoner has shown the necessity of a new
> trial based on the five factors set forth in the
> syllabus of State v. Frazier, 162 W.Va. 935, 253 S.E.2d
> 534 (1979)."

Syllabus 4, In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, 2006 WL 1686169, W.Va., June 16, 2006, supra.

In Syllabus Point 6 of Renewed Investigation, this Court also demanded:

> "A prisoner who was convicted between 1979 and 1999 and
> against whom a West Virginia State Police Crime
> Laboratory serologist, other than Fred Zain, offered
> evidence may bring a petition for a writ of habeas
> corpus based on the serology evidence despite the fact
> that the prisoner brought a prior habeas corpus

-16-

challenge to the same serology evidence, and the
challenge was finally adjudicated."

Appellant was convicted within the time frame set forth by this
Court.

In announcing those new syllabus points, this Court adopted
the report of findings submitted by the Honorable Thomas A.
Bedell, Special Judge, but with modifications thereto. Those
modifications include the additional finding that, though
insufficient evidence exists to rule Zain's assistant
serologists engaged in intentional misconduct, errors **did** occur
in the proceedings below. Justice Maynard opined:

"[B]ecause of the frequent and recurring errors
identified in the work of Zain's assistant serologists,
we deem it necessary to enact a special habeas corpus
procedure . . . to be utilized by those prisoners
against whom serologists, other than Zain, offered
evidence."

Such a ruling constructively removes the presumption of
correctness normally afforded and strips the circuit court of
any discretion in deciding to appoint counsel and conduct
evidentiary hearings, even if former proceedings were conducted
fully litigating claims involving the State Police Crime
Laboratory and/or Fred Zain. Former rulings in any previous
Zain proceedings are subject to a _de novo_ review with the
additional evidence as presented in a subsequent special "other
serologists" habeas corpus evidentiary hearing.

The appointment of counsel as well as conducting a full
evidentiary hearing is to be done even if a prisoner has had a
previous Zain habeas fully litigated. Syl. 6, **Renewed
Investigation**, _supra_.

The habeas court did not take into consideration this Court's demands of **Renewed Investigation**, <u>supra</u>. This is evident from its ruling:

> "Further, this Court concludes that the introduction of testimony or evidence by **Mr. Zain** did not have a prejudicial effect on the jury, since there was sufficient independent evidence regarding Mr. Moss's guilt." (Emphasis added.)(16 October, 2006, Final Order Denying Habeas Relief, p. 10, hereinafter "Order.")

The court conducted no analysis or set forth any legal conclusions or factual findings on the involvement of any other serologist or employee of the state crime laboratory, serology division, other than Fred Zain, (Order at 10). Serologists, other than Fred Zain, tested items and/or offered evidence in Appellant's trial.

This Court's ruling in **Renewed Investigation** is clear. A petitioner must allege that employees or serologists, **other than Fred Zain**, offered evidence. Serologists that tested items and/or who offered evidence, other than Fred Zain, were, at least, Robert C. Murphy and Ted Smith. The court found as much in its Order denying habeas relief when, on page 8, ¶¶ 21 & 22, the court states:

> The Court finds that Judge MacQueen in the 1998 Memorandum Order found that the record in this proceeding did not contain sufficient detail to identify exactly which of the State Police serologists performed the testing of all the specific blood samples.

> The Court finds that Judge MacQueen in the 1998 Memorandum Order found that it was clear that both Fred Zain and Robert Murphy conducted analyses of some of the blood and that Fred Zain testified concerning the results at trial.

(Order at 8.) Thus it is clear that serologists, other than Fred S. Zain, tested items and/or offered evidence in

Appellant's case.

The habeas court, however, ignored Appellant's claims and conducted an analysis, again, only of Zain's involvement. (Order at 10.) This is an abuse of the court's discretion and is in direct violation of this Court's demands in **In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division,** 2006 WL 1686169, W.Va., June 16, 2006.

The offered evidence complained of by Appellant is connected to a Blood Grouping Table Analysis Sheet. (Hereinafter "Table.") The Table clearly demonstrates that, contrary to what was testified to by members of the West Virginia State Police and/or Crime Laboratory, Serology Division, other than Fred Zain, a known sample of Appellant's blood was in their possession in January, 1980. The only way the serologists could have had a known sample of Appellant's blood at that time was as a result of the illegally obtained sample taken from Appellant in January, 1980, which had been presumed to have been returned to Appellant's court appointed Ohio attorney or the juvenile facility Appellant was in when the illegal sample was extracted from him. The illegally extracted sample is what serologists, other than Fred Zain, used to link Appellant to the crime scene, and provided probable cause to direct authorities' investigation towards Appellant. Without such erroneous and/or intentionally misleading evidence, the additional evidence, no matter how circumstantial or coerced it may have been, could not have been presented against Appellant.

Appellant's allegations, if true, would entitle him to habeas corpus relief. The court had an affirmative duty to

provide whatever facilities and procedures as necessary in order to allow Appellant to demonstrate his entitlement to habeas relief as pertains to the above allegations.  See Gibson v. Dale, 173 W.Va. 681, 319 S.E.2d 806 (1984); In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division, 2006 WL 1686169, W.Va., June 16, 2006.

The contentions presented by Appellant have not been previously and fully litigated or waived in any proceeding or proceedings prior to the instant one.  Even though Appellant had a special "Zain" habeas proceeding, including a Final Order by the trial court and a decision by this Court, (Moss v. Trent, 603 S.E.2d 656 (2004), no omnibus hearing, as outlined in Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981), was conducted by the court in that proceeding and, thus, Appellant was not questioned on issues of waiver.  The trial court's Order was devoid of any notation that Appellant was advised concerning his obligation to raise all grounds for post-conviction relief in that one proceeding, as is required to assert a claim of res judicata:

> An omnibus habeas corpus hearing as contemplated in W.Va. Code, 53-4A-1, et seq. [1967] occurs when: (1) an applicant for habeas corpus is represented by counsel or appears pro se having knowingly and intelligently waived his right to counsel; (2) the trial court inquires into all the standard grounds for habeas corpus relief; (3) a knowing and intelligent waiver of those grounds not asserted is made by the applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; and, (4) the trial court drafts a comprehensive order including the findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding. Syl. 1, Losh v. McKenzie, supra.

Appellant did not waive his right to counsel and was not advised concerning his obligation to raise all grounds for post-conviction relief in the Zain proceedings. Therefore, the matters raised herein are not res judicata, including his claim of ineffective assistance of trial counsel.

This Court set forth the requirements in a proceeding in which a claim of ineffective assistance of trial counsel is brought in a petition for writ of habeas corpus. In **SER Vernatter v. Warden**, 207 W.Va. 11, 528 S.E.2d 207 (1999), this Court stated:

> "An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions de novo. This means that we review the ultimate legal claim of ineffective assistance of counsel de novo and the circuit court's findings of underlying predicate facts more deferentially. SER Daniel v. Legursky, 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995)." (Syllabus Point 1, SER Vernatter v. Warden, supra.)

> "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Syllabus Point 5, **State v. Miller**, 194 W.Va. 3, 459 S.E.2d 114 (1995)." (Syllabus Point 3, SER Vernatter v. Warden, supra.)

> "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. Syllabus Point 6, **State v. Miller**, 194 W.Va. 3, 459 S.E.2d 114 (1995)." (Syllabus Point 4, SER Vernatter v. Warden, supra.)

"The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation. Syllabus Point 3, **SER Daniel v. Legusky**, 195 W.Va. 314, 465 S.E.2d 416 (1995)." (Syllabus Point 5, **SER Vernatter v. Warden**, supra.)

"West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined. Syllabus Point 1, **SER Watson v. Hill**, 200 W.Va. 201, 488 S.E.2d 476 (1997)." (Syllabus Point 8, **SER Vernatter v. Warden**, supra.)

Appellant's trial counsel failed to conduct adequate investigation into the facts and law of the case prior to Appellant's second trial. Appellate counsel also failed to conduct adequate investigation and research prior to perfecting and filing a petition on appeal of Appellant's second trial.

Appellant's claims of ineffective assistance of counsel were not brought in the special "Zain" proceedings. They were presented to the trial court in Appellant's first **pro se** petition for post-conviction relief under W.Va. Code §53-4A-1. However, Appellant's claims of ineffective assistance of trial counsel are not **res judicata** in the case **sub judice** as the trial court did not conduct an omnibus hearing in the Zain proceedings by advising Appellant concerning his obligation to raise all grounds for post-conviction relief in that one proceeding, and the court summarily denied Appellant's first **pro se** petition for

habeas corpus relief and did not make specific findings of facts and conclusions of law in its order on Appellant's claim of ineffective assistance of counsel, and this Court refused to review the appeal of the court's summary denial. (Kanawha Case No. 05-MISC-298; Supreme Court No. 061721.)

A refusal by this Court to review a petition on appeal does not bar that issue from being brought in a petition for writ of habeas corpus if the issue had not been previously fully litigated at some prior proceeding or proceedings. **Smith v. Hedrick**, 181 W.Va. 394, 382 S.E.2d 588 (1989):

> This Court's rejection of a petition for appeal is not a decision on the merits precluding all future consideration of the issues raised therein... ."

Syllabus, **Smith v. Hedrick**, supra. Appellant's contentions of ineffective assistance of trial and appellate counsel have not been litigated in any previous proceeding whatsoever.

In reviewing counsel's performance when a claim of ineffectiveness is made, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. Syl. Pt. 6, State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995); SER Watson v. Hill, 200 W.Va. 201, 488 S.E.2d 476 (1997). Since trial counsel's decisions of strategy and/or tactics and the decision not to investigate certain matters, if, indeed, they

-23-

were conscious decisions, do not appear in the record, a fair consideration of Appellant's claims of ineffective assistance of counsel requires that the factual circumstances surrounding the actions, and/or inactions, of defense counsel must be established with some certainty, and on the record, before an appropriate determination can be made as to the merits of Appellant's habeas corpus allegations. **See SER Nazelrod v. Hun,** 199 W.Va. 582, 486 S.E.2d 322 (1997).

Appellant asserts the illegally obtained blood was either smeared on objects removed from the crime scene, or simply falsely stated as being found on the items, thus providing authorities with, allegedly, conclusive evidence Appellant was in the Reggettz home the night of the murders. Authorities testified that only after April, 1980, when the, so called, **legal** blood sample was removed from Appellant did they discover the unknown blood samples matched Appellant. However, the taking of a so called "legal" blood sample from Appellant was contrived inasmuch as the investigating authorities already knew they would link the sample they had in January, 1980, and which are claimed to have been unknown blood samples taken from the crime scene by the infamous Fred S. Zain, to the sample removed from Appellant in April, 1980.

That manufactured evidence was the fortuitous catalyst investigators used to acquire the other material evidence presented at trial to convict Appellant, including his "confession." The same two state troopers who calculatingly induced Appellant into relinquishing a sample of his blood in January, 1980, in October, 1980, as they were beating a

-24-

confession from him, as much as told Appellant they used that illegally obtained sample to "frame" him for the murders. (Second Trial Tr. p. 511-14, 944-45.) Whether the two troopers specifically traveled to Ohio for the express purpose of illegally obtaining a sample of Appellant's blood to frame him or whether it was just fortuntate happenstance for the investigators it worked out the way it did is a matter to be further explored in an evidentiary hearing. Nonetheless, the fact remains, the illegally obtained blood sample was used to implicate Appellant in the horrible crimes. The sheer heinousness of the crimes and a desire to see someone punished for such cruelty quite possibly is what prompted the authorities to manufacture the evidence against an innocent man as they did.

## VI. CONCLUSION

Though this case has an extensive litigious history, including a special "Zain" habeas, many questions remain unanswered on the involvement of serologists, other than Fred Zain. Appellant's case is a prime example of why this Court ruled as it did in the case, **In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division**, 2006 WL 1686169, W.Va., June 16, 2006. The trial court, however, in summarily denying Appellant relief and dismissing his petition brought pursuant to **Renewed Investigation**, abused its discretion and violated Appellant's due process guarantees. Appellant's case should be remanded back to the trial court with directions to carry out the

requirements demanded by this Court in its ruling in **Renewed Investigation**, including the appointment of habeas counsel and conducting a full evidentiary hearing.

## VII. PRAYER FOR RELIEF

Appellant prays now and forevermore that this appeal be granted and that this case is remanded back to the Kanawha County Circuit Court for proceedings consistent with this Court's findings in the case; **In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division**, 2006 WL 1686169, W.Va., June 16, 2006, and for any and all further relief this Court deems just and necessary for the fair administration of justice.

Respectfully submitted by:

John Moss, III, DOC #13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185

On this, the _31st_ day of _January, 2007_ .

Appellant proceeding **pro se.**

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III

     Petitioner,

v.

                                 **Civil Action No. 06-MISC-245**
                                 **Judge Louis H. Bloom**

THOMAS MCBRIDE, Warden,
Mount Olive Correctional Complex,

     Respondent.

## FINAL ORDER DENYING HABEAS RELIEF

Pending before the Court is the *"Petition Under W.Va. Code §53-4A-1 for Writ of Habeas Corpus"* (hereinafter "Petition"), filed by the self-represented petitioner John Moss, III (hereinafter "Mr. Moss"). Mr. Moss's Petition relates to his conviction of three counts of first degree murder in April of 1990. Mr. Moss filed a direct appeal of his conviction to the Supreme Court of Appeals of West Virginia and such appeal was refused in 1991. Mr. Moss filed his first habeas petition in 1994, that petition was denied by this Court, after a full review of the grounds raised therein, and the Supreme Court of Appeals of West Virginia affirmed that denial. Mr. Moss filed a second habeas petition in 2005, that petition was denied by this Court, after full consideration of the grounds raised therein, and an appeal of that decision is currently before the Supreme Court of Appeals of West Virginia. Mr. Moss's current habeas Petition is brought pursuant to the decision of the Supreme Court of Appeals of West Virginia, *In the Matter of: Renewed Investigation of the State Police Crime Laboratory, Serology Division*, 2006 WL 1686169, W.Va., June 16, 2006.

After full consideration of Mr. Moss's current habeas Petition, his two previous habeas petitions, the files relating to his underlying trial, applicable law, and based on the following

# MOSS v. BALLARD
# CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 15

```
FUNCTION = SEQ INQUIRY                                              CASE SCREEN 4
   Case number = 9703 Miscellaneous              Action Log
              JOHN MOSS, III (PRISONER #1373  vs  DAVID BALLARD, WARDEN
Line   Date                      Action / Results
   1  09/28/07 # PET FOR WRIT OF HABEAS CORPUS W/ATTACH; MOT FOR APPT OF CNSL;
   2           # MOT TO PROCEED IN FORMA PAUPERIS
   3  10/04/07 # LET FR JOHN MOSS, III TO CLK DTD 10/2/07
   4  11/15/07 # LET FR JOHN MOSS, III TO CLK DTD 11/13/07
   5  01/09/08 # LET FR JOHN MOSS, III TO CLK DTD 1/7/08
   6  01/09/08 # MOT FOR LEAVE FROM COURT TO AMD HABEAS CORPUS W/ATTACH & COS
   7  03/03/08 " LTR TO CLERK FRM P
   8  05/29/08 SM LET FR JOHN MOSS III TO JUDGE WALKER DTD 5/23/08
   9  06/02/08 # LET FR JOHN MOSS, III TO JUDGE WALKER DTD 5/23/08
  10  09/12/08 # LET FR JOHN MOSS, III TO JUDGE WALKER DTD 9/11/08
  11  09/16/08 # LET FR JOHN MOSS, III TO CLK DTD 9/11/08
  12  10/27/08 # LET FR JOHN MOSS, III TO CLK DTD 10/23/08
  13  10/27/08 # MOT FOR ISSUANCE OF WRIT OF HABEAS CORPUS & APPT OF CNSL W/COS
  14  01/16/09 # LET FR JOHN MOSS, III TO CLK DTD 1/14/09
  15  01/28/09 SM LET FR JOHN MOSS III TO CLK DTD 1/26/09
  16  03/30/09 # LET FR JOHN MOSS, III TO JUDGE BAILEY-WALKER DTD 4/9/08
  17  03/30/09 # LET FR RORY PERRY, II TO JOHN MOSS DTD 2/12/09 W/ATTACH'S
  18  03/31/09 = ORDER HD TO PA; MAILED TO DFT; 3/30/09; LT
  C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image    _
```

```
FUNCTION = SEQ INQUIRY                                         CASE SCREEN 4
```
```
           JOHN MOSS, III (PRISONER #1373  vs. DAVID BALLARD, WARDEN
Line    Date                          Action / Results
  19 03/30/09 FINAL ORDER ENTERED
  20 04/13/09 # PETITIONER'S MOT TO ALTER OR AMD FINAL JUDG & MEMO OF LAW
  21          # IN SUPP W/COS
  22 04/23/09 = ORDER MAILED TO PLF; HD TO PA; 4/20/09; LT
  23 04/20/09 " O DENYING P'S MOT TO AMD FINAL JDGMT/BAILEY
  24 07/29/09 FIB PET & 9COPIES, DSGN REC,DKTG STMT,COS
  25 08/05/09 # RECEIPT FROM WVSCA
  26 08/10/09 # LET FR RORY PERRY, II TO JOHN MOSS, III DTD 8/6/09
  27 08/12/09 *LTR FR J. MOSS TO CLK; MAILED DOCKET SHEET TO MOSS THIS DT
  28 12/23/09 SM RECEIPT OF RECORD FROM WVSCA
  29 12/08/09 *O FR SCA REFUSING PET FOR AP




   C=Chg   D=Del   1-4=Scr   M=Menu   T=Chg Line#   PgUp PgDn P=Prt A=Add I=Image
```

Case 2:09-cv-01406 tDocument 8-3   Filed 02/09/10   Page 199 of 199   Page ID #: 641

```
                                         Jury Trial: N
                                         Exhibits Filed: _
         Defendant's Attorney(s)         Public Access (Y/N): Y

                                              File        Who          Date
                                         Checked Out: _____  _____

                                         _____  _____
Final Order Date: 03/30/09  Stat Close:  03/30/09     _____  _____
Judgement Order: *O: DISMISSAL/BAIL
                                         _____
                                         _____
                                              Judgement
Favor: _      Costs: _____       Decision Type: __      Date: _____
Judgment Amount: _____       Dismissal Type: _____  Date: _____
                                         Post Judgment
Motion to Set Aside: _____           Date Bond Posted: _____
Status:          _                       Bond Amount: _____      Type: __
Appeal Filed:    _____               Writ Type:      ___
                                         Purge Date: _____
<Ent>=cont  N=Notes  M=Menu  C=Chg  P=PlaAt  D=DefAt  F9=Add Rct
                                                                            _
```