# MOSS v. BALLARD
# CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 16

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

2009 MAR 30  PM 12: 08

STATE OF WEST VIRGINIA
EX REL., JOHN MOSS, III,

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

       Petitioner,

vs.

Case No. 07-MISC-403
Judge Jennifer F. Bailey

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

       Respondent.

### FINAL ORDER SUMMARILY DISMISSING
### POST-CONVICTION HABEAS CORPUS PETITION

The above-named petitioner has filed in this Court a *Pro Se* Petition for post-conviction habeas corpus relief. The petitioner has also filed with the Court a motion to amend his original petition and assert eight additional assignments of error. In accord with the requirements of Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, this Court examined the Petition. The Court has also examined the records of prior habeas corpus proceedings initiated by the petitioner.

After a full consideration of the petitioner's current habeas petition, his three previous habeas petitions, files relating to his underlying trial, and all pertinent legal authorities, the Court is of the opinion that the currently pending petition should be **SUMMARILY REFUSED** and **DISMISSED**. The Court also **DENIES** the petitioner's motion to amend his original petition.

1

# FINDINGS OF FACT

1. The West Virginia Supreme Court of Appeals previously summarized the facts of this

case in *In Interest of Moss*, 295 S.E.2d 33 (W.Va. 1982):

> In December of 1979, a woman and her two children were found dead in their St. Albans home. Soon afterward, the deceased woman's husband became a suspect in the triple murder. He is alleged to have confessed to the crime and was subsequently indicted by the Kanawha County Grand Jury. The husband was held in custody for approximately eleven months awaiting trial, during which time his alleged confession was ruled admissible into evidence as voluntarily given. Trial was set for November 12, 1980.

> The record indicates that the appellant was also a suspect in the murders and that his name was recited in the indictment of the accused husband. In January 1980, the investigating authorities traveled to Cleveland, Ohio, to obtain a blood sample from the appellant, who at the time was housed in a juvenile detention center on an unrelated charge, and to question him about the murders. The appellant denied committing the murders. A blood sample was taken, when, at the authorities' request, the appellant pricked his finger and dribbled blood on a cloth provided for this purpose.

> At the time of this interrogation, the appellant was seventeen years of age. The blood sample was taken without a court order, and without the knowledge or consent of the appellant's parents. The authorities were aware that the appellant was a juvenile. They made no effort to contact the appellant's Ohio lawyer. The appellant was advised of his rights prior to questioning, but did not sign a waiver of rights form.

> When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. This apparently was done. Subsequently, in April 1980, the investigating authorities again traveled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders.

> On September 26, 1980, the State filed a detainer against the appellant...based on a malicious wounding charge, unrelated to the homicides. The appellant at this time was serving a term of four to twenty-five years at the Ohio State Reformatory on charges of rape and attempted murder. On October 28, 1980, while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, the appellant confessed to

2

having committed the homicides in Kanawha County. The appellant subsequently made a tape recorded confession after signing a waiver of his *Miranda* rights.

On November 2, 1980, a second detainer was filed by the State against the appellant based on a charge of three counts of murder in the first degree. On December 19, 1980, the appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for December 24, 1980, but as a result of motions for continuance made by the defense, the hearing was not held until January 12, 1981. After the presentation of evidence, which included a replay of the appellant's taped confession, the juvenile referee made a finding of probable cause and referred the appellant to the juvenile jurisdiction of the Circuit Court of Kanawha County.

On January 20, 1981, the State filed a motion to have the appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. The transfer hearing was set for January 28, 1981. Defense counsel's motion for a continuance to allow for psychological and psychiatric testing and evaluation of the appellant was granted. Following subsequent motions for continuance on the part of defense counsel, the transfer hearing was held on June 29, 1981.

*In Interest of Moss*, 295 S.E.2d 33 at 35-37 (W.Va. 1982).

2. Moss appealed the trial court's decision to transfer him to adult jurisdiction of the Court and the Supreme Court reversed and remanded the matter. *Id.*

3. After conducting a second transfer hearing, the Circuit Court entered another order on September 28, 1982, granting the motion to transfer Moss to the Court's adult jurisdiction. Moss appealed the decision and the Supreme Court refused to hear his appeal.

4. A Kanawha County grand jury later returned an indictment, charging Moss with three counts of first degree murder. *See Kanawha County Action No. 82-F-221.*

5. Moss was tried, convicted, and sentenced for the three counts of first degree murder in 1984.

3

6.    The initial conviction of Moss was overturned by the West Virginia Supreme Court of Appeals based upon numerous trial court errors. *See State v. Moss*, 376 S.E.2d 569 (W.Va. 1988). Specifically, the Supreme Court held that the trial court erred when it refused Moss' motion to poll each juror, outside the presence of others, about exposure to prejudicial comments made by the prosecuting attorney. In addition, the Supreme Court found that the trial court erred when it failed to intervene for the purposes of limiting and correcting fundamentally improper remarks made by the prosecuting attorney during closing. Lastly, the Supreme Court held that the trial court erred when it allowed the admission of evidence regarding the results of a polygraph test taken by the victim's husband and father. *Id.*

7.    Moss' second trial was held in 1990. He was again convicted of three counts of first degree murder.

8.    Following the second conviction, Moss appealed to the West Virginia Supreme Court of Appeals. His appeal was refused on March 12, 1991.

### *First Habeas Petition -1994*

9.    Moss filed his first habeas petition in August of 1994. *See Kanawha County Action No. 94-MISC-633.* The case was assigned to the Honorable Judge MacQueen who considered numerous motions, legal memoranda, oral arguments, and evidentiary exhibits.

10.   Moss asserted three grounds in the petition and made the following allegations:

> (1) The admission of Trooper Fred Zain's testimony and test results violated his constitutional rights;

4

(2) The State presented incorrect, false, misleading, overstated, and unscientific evidence; and

(3) The admission of his confessions violated his constitutional rights.

11. On September 10, 1998, Judge MacQueen entered a Memorandum Order which concluded that Moss was not entitled to a new trial on the basis of Trooper Zain's testimony and testing. Specifically, Judge MacQueen held that based on the fact that the scientific conclusions were confirmed as valid, Trooper Zain's testimony was not false, inaccurate, or invalid. Further, Judge MacQueen held that even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction.

12. Moss then filed a motion requesting that Judge MacQueen alter or amend his judgment. Judge MacQueen held a hearing on said motion in October 1998 and denied the motion from the bench. No written order was entered memorializing the ruling from the October 1998 hearing.

13. Due to Judge MacQueen's retirement, the Honorable Judge Louis Bloom became the presiding judge in the habeas matter. After assuming Judge MacQueen's docket, Judge Bloom conducted a status conference on this matter in June of 2001. At that time, the parties were granted additional time to submit evidence and arguments.

14. On February 15, 2002, Judge Bloom entered an order denying Moss' habeas petition. Specifically, Judge Bloom concluded that Trooper Zain's testing and testimony did not result in any prejudice. In reaching that conclusion, the Court noted from the earlier Memorandum Order that there remains sufficient evidence to sustain to conviction. The

5

Court specifically noted that Moss' own confession is a key piece of evidence that stands independently of any Zain-related evidence. The Court further found that Moss' confession is corroborated in a number of reliable ways.

15. In March 2002, the habeas petition was reinstated onto Judge Bloom's docket so that the other issues raised by Moss' petition could be addressed on their merits.

16. After another hearing was conducted, the Judge Bloom entered a final order on January 30, 2003 denying all claims raised by Moss in his habeas petition. Specifically, Judge Bloom found that even if serological evidence were excluded, there would still be sufficient evidence to support Moss' conviction and that the introduction of Zain-related evidence and testimony at Moss' trial did not prejudice the jury. As to the confession, the Court held that Moss' confession was well-corroborated and consistent with details of the crime scene.

17. Moss then appealed the decision to the West Virginia Supreme Court of Appeals, where the denial was affirmed. *See Moss v. Trent*, 603 S.E.2d 656 (W.Va. 2004).

### Second Habeas Petition – 2005

18. Moss filed his second Petition for Writ of Habeas Corpus on July 7, 2005. *See Kanawha County Action No. 05-MISC-298.* Moss made the following assignments of errors in his petition:

> (1) The trial court abused its discretion and committed reversible error in ruling that the first two confessions were admissible under the "law of the case doctrine;"
>
> (2) The factual determination by the West Virginia Supreme Court of Appeals that no prompt presentment objections were entered on the first two alleged confessions is clearly erroneous and works a manifest injustice;

6

(3) The petitioner was deprived of his Sixth Amendment's guarantee to effective assistance of counsel;

(4) The petitioner did not receive a full and fair hearing on his motion and memorandum to suppress samples of blood, confession, and other physical evidence seized due to the improper tactics of Fred S. Zain and the West Virginia State Troopers and Crime Laboratory;

(5) The petitioner's Sixth Amendment right to a fair and impartial jury was contravened when the State knew or should have known of the false and misleading testimony and evidence presented by Fred Zain;

(6) The trial court abused its discretion and committed reversible error when it admitted petitioner's blood samples, confessions, and all evidence incident thereto into evidence, when the samples of blood were obtained in violation of Federal and State Constitutional rights; and

(7) The prosecution made improper closing arguments that denied the petitioner a fair trial.

19.     Judge Bloom denied Moss' petition, after a full consideration of all seven grounds raised

therein. Moss then appealed to the Supreme Court, where the petition for appeal was

refused.

20.     As to Moss' allegation of ineffective assistance of counsel, the Court found that all

claims related to the admissibility of confessions, which had been previously raised,

considered, and denied, on the merits, by the Supreme Court of Appeals and the trial

court in Moss' prior habeas petition and appeal.

### *Third Habeas Petition - 2006*

21.     Moss filed his third habeas petition on June 22, 2006. *See Kanawha County Action No.*

*06-MISC-245.* Moss made the following assignments of error in his petition:

(1) Blood test results and reports of offered serology evidence were falsified or were substantially incorrect.

(2) Ineffective assistance of trial counsel in failing to conduct an adequate investigation.

7

22. The Court found that the two grounds raised in the petition related to the alleged improper tactics of the West Virginia State Police Crime Laboratory Serology Division in preparing blood test results and reports.

23. Judge Bloom summarily denied and dismissed the petition on the grounds that the allegations were previously raised, considered, and denied on the merits by the West Virginia Supreme Court of Appeals.

24. As to the ineffective assistance of counsel claim, the Court found the issue to be moot because there remained sufficient evidence to sustain the conviction.

25. Moss appealed the decision to the Supreme Court and said appeal was refused.

### Fourth and Current Habeas Petition

26. Moss filed the petition currently pending before this Court on September 28, 2007. The petition is based upon the following assertion:

> (1) The petitioner received ineffective assistance of counsel as guaranteed by the Constitutions of West Virginia and the United States.

27. The Court finds as fact that the assertion tendered by Moss in his current petition relates to physical evidence and the reliability of his confession. Specifically, Moss asserts that his counsel failed to present testimony regarding silverware and a camera allegedly stolen from the victim's home. Moss asserts that if such testimony had been provided and his counsel had not acted deficiently, there would not be evidence sufficient to sustain his conviction. Moss further questions the reliability of his confession and his attorneys presentment of testimony in relation thereto.

28. The Court find that the issue of ineffective assistance of counsel has been alleged by Moss in two of his prior habeas petitions. In his second petition, the Court ultimately

8

found the admissibility of confessions had been previously raised, considered, and denied on the merits by both the Supreme Court of Appeals and the Circuit Court of Kanawha County. In his third habeas petition, the Court ultimately held that the issue was moot because there remained sufficient evidence on the record to sustain the conviction.

29. On January 9, 2008, Moss filed a "Motion for Leave from the Court to Amend Habeas Petition." In said motion, Moss sought to add the following assertions to his habeas petition:

> (1) The trial court abused its discretion and committed reversible error in ruling that the first two confessions were admissible under the "law of the case doctrine;"

> (2) The factual determination by the West Virginia Supreme Court of Appeals that no prompt presentment objections were entered on the first two alleged confessions is clearly erroneous and works a manifest injustice;

> (3) Petitioner was deprived of the Sixth Amendment's guarantee to effective assistance of counsel;

> (4) Petitioner did not receive a full and fair hearing on his motion and memorandum to suppress samples of blood, confession, and other physical evidence seized due to the improper tactics of Fred S. Zain and the West Virginia State Police Troopers and Crime Laboratory;

> (5) Petitioner's Sixth Amendment right to a fair and impartial jury was contravened when the state knew, or should have known, of the false or misleading testimony and evidence presented by a state witness;

> (6) The trial court abused its discretion and committed reversible error when it admitted petitioner's blood samples, confessions, and all evidence incident thereto into evidence, when the samples of blood were obtained in violation of federal and state constitutional rights;

> (7) Improper closing arguments by the prosecution denied the petitioner a fair trial; and

> (8) Blood test results and reports of offered serology evidence were falsified or were substantially incorrect.

9

## STATEMENT OF LAW

1.  Rule 10 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West
    Virginia provides that the "West Virginia Rules of Civil Procedure, to the extent they are
    not inconsistent with these rules, may be applied, when appropriate, to petitions filed in
    West Virginia circuit courts under these rules." Habeas Rules, Rule 10.

2.  Meanwhile, Rule 15 of the West Virginia Rules of Civil Procedure provides that leave to
    amend should be freely given when justice so requires. W.Va. R. Civ. P. 15.

3.  According to the Rules Governing Post-Conviction Habeas Corpus Proceedings in West
    Virginia, circuit courts are required to conduct an initial evaluation of habeas petitions
    before requiring an answer from the respondent. Habeas Rules, Rule 4.

4.  After conducting this initial evaluation, the circuit court can either summarily dismiss the
    petition or order the respondent to file an answer. *Id.*

5.  The Court may refuse the petition if it is satisfied that the petitioner is entitled to no
    relief, after the Court reviews the petition, the documentary evidence attached thereto, the
    record of the underlying conviction, and the records of any previous attacks on the
    conviction or sentence. W.Va. Code §53-4A-3(a).

6.  A claim for relief in post-conviction habeas corpus can only be based on contentions not
    previously and finally adjudicated. W.Va. Code §53-4A-1(a).

7.  The West Virginia Supreme Court of Appeals has held that the decision to summarily
    dismiss can be reached without a hearing and without the appointment of counsel.
    *Mugnano v. Painter*, 575 S.E.2d 590, 592 (W.Va. 2002) (per curium) (citing Syl. pt. 1,
    *Perdue v. Coiner*, 194 S.E.2d 657 (W.Va. 1973).

8.    If the circuit court summarily dismisses all or part of the claims asserted in the petition, it
      is required to enter a specific dismissal order. The West Virginia Supreme Court of
      Appeals has held that "[t]he court's summary dismissal order shall contain specific
      findings of fact and conclusions of law as to the manner in which each ground raised in
      the petition has been previously and finally adjudicated and/or waived." Syl. Pt. 5,
      *Mathena v. Haines*, 633 S.E.2d 771 (W.Va. 2006).

9.    West Virginia statutory law provides that contentions in habeas petitions that have been
      previously and finally adjudicated, after a decision on the merits and opportunity for
      appeal, need not be considered unless the prior decision was clearly wrong. W.Va. Code
      §53-4A-1.

10.   When any contentions or grounds could have been raised by petition at trial, on direct
      appeal, or in a proceeding or proceedings in a prior habeas petition, but were not
      advanced, there shall be a presumption that the petitioner intelligently and knowingly
      failed to advance such contention or contentions and grounds. W.Va. Code §53-4A-1(c).

11.   The Court evaluates habeas petitions with the awareness that "[a] habeas corpus
      proceeding is not a substitute for a writ of error in that ordinary trial error not involving
      constitutional violations will not be reviewed." Syl. pt. 4, *State ex rel. McMannis v.
      Mohn*, 254 S.E.2d 805, 806 (W.Va. 1979).

## CONCLUSIONS OF LAW

      As a preliminary issue, the Court finds that justice does not require that the petitioner be
allowed to amend his currently pending habeas petition to include assertions that have been
addressed in previous habeas petitions. The first seven proposed amendments to the petition
were addressed in Civil Action No. 05-MISC-298, while the eighth proposed amendment was

11

addressed in Civil Action No. 06-MISC-245. Therefore, the Court **DENIES** the petitioner's Motion to Amend and declines to consider the eight amended assertions.

As to the original petition filed, the Court notes that the petitioner has filed numerous appeals to the West Virginia Supreme Court of Appeals and three habeas petitions in the Circuit Court of Kanawha County. In two of the habeas petitions filed in Kanawha County, Moss indicated that he was deprived of his Sixth Amendment right to effective assistance of counsel. In one case, Judge Bloom denied Moss' petition on the ground that the issue had been previously raised, considered, and denied. In another denial, Judge Bloom ordered that the issue was moot because there remained sufficient evidence to sustain the conviction.

In accord with the prior holdings of this circuit, the Court concludes that Moss' claim for ineffective assistance of counsel must be **SUMMARILY DENIED** and **DISMISSED** because the issue of effective assistance of counsel has been previously and finally adjudicated. Additionally, any claims of deficient counsel were waived by the petitioner because such claims should have been advanced on direct appeal or in prior habeas proceedings.

The Court further concludes that Moss' claim regarding the reliability of his confession must be **SUMMARILY DENIED** and **DISMISSED** because the admissibility of his confession has been previously raised, considered, and denied on the merits by both the West Virginia Supreme Court of Appeals and the Circuit Court of Kanawha County.

<u>DECISION</u>

For the reasons set forth above, the Court does hereby **SUMMARILY DENY** and **DISMISS** all grounds that were raised in Moss' Petition for Writ of Habeas Corpus. The Court further **DENIES** the petitioner's motion to amend his original petition.

12

This is a final order and the Court notes the objection and exception of the petitioner to this ruling.

There being nothing additional pending before this Court, the Court further **ORDERS** that this matter be **DISMISSED** and **STRICKEN** from the docket of this Court.

The Circuit Clerk shall distribute certified copies of this Order to all counsel of record and self-represented parties.

Entered this _____ day of _____, 2009.

JENNIFER F. BAILEY, JUDGE
Thirteenth Judicial Circuit

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF THE CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS _____
DAY OF _____
_____ CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

13

# MOSS v. BALLARD
# CASE NO. 2:09cv01406

# RESPONDENT'S EXHIBIT 17

STATE OF WEST VIRGINIA

At the Supreme Court of Appeals continued and held at Charleston, Kanawha County, on the 30th of November, 2009, the following order was made and entered **in vacation**:

State of West Virginia ex rel. John Moss, III, Petitioner
Below, Petitioner

vs.) No. 091215

David Ballard, Warden, Mount Olive Correctional Complex,
Respondent Below, Respondent


On a former day, to-wit, August 6, 2009, came the petitioner, John Moss, III, pro se, and presented to the Court his petition praying for an appeal from a judgment of the Circuit Court of Kanawha County, rendered on April 20, 2009, with the record accompanying the petition.

Upon consideration whereof, the Court is of opinion to and doth hereby refuse said petition for appeal.

A True Copy

Attest: _____

Clerk, Supreme Court of Appeals

091215

FILE COPY

DO NOT REMOVE FROM FILE

No. 07-MISC-403

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Appellee.



---

PETITION ON APPEAL FROM A FINAL JUDGMENT OF
THE KANAWHA COUNTY CIRCUIT COURT SUMMARILY
DENYING HABEAS RELIEF AND DISMISSING PETITION

---

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185

On this, the 28th day of July, 2009.

Petitioner proceeding *pro se.*



RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA



# INDEX

<u>Content</u>                                                          <u>Page</u>

I.   KIND OF PROCEEDING AND NATURE OF THE RULING IN THE LOWER
     TRIBUNAL  ...................................................1

II.  STATEMENT OF THE FACTS OF THE CRIME AND CASE  ..............2

III. ASSIGNMENTS OF ERRORS RELIED UPON AND THE MANNER IN
     IN WHICH THEY WERE DECIDED IN THE LOWER TRIBUNAL  ..........9

IV.  POINTS AND AUTHORITIES RELIED ON  .........................11

V.   DISCUSSION OF LAW  ........................................18

VI.  RELIEF PRAYED FOR  ........................................25

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

=======================================

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Appellee.

=======================================

PETITION ON APPEAL

## I. KIND OF PROCEEDING AND NATURE OF
## THE RULING IN THE LOWER TRIBUNAL

Comes now the petitioner, John Moss, III, *pro se*, (hereinafter ("Appellant") and petitions this Honorable Court, pursuant to *W.Va. Code* § 53-4A-9(a), for an appeal from the order entered by the Kanawha County Circuit Court, the Honorable Jennifer F. Walker, summarily denying Appellant's motion, under Rule 59(e), W.Va.R.C.P., for an Order altering or amending the court's previous Order denying Appellant habeas relief and dismissing Appellant's *pro se* petition for writ of habeas corpus ad subjiciendum.

Appellant's petition for state post-conviction relief and memorandum requested the court to, *inter alia*, issue an order to Respondent to show cause why Appellant's convictions and three life sentences without mercy on three counts of first degree murder should not be set aside and ruled void as the same are in violation of the rights secured to Appellant through the Constitutions of the United States and the State of West Virginia, and to thereafter issue an Order demanding the respondent warden to immediately release Appellant.

Appellant handed his *Rule 59(e) Motion* to prison officials on or about 10 April, 2009, and was marked filed 13 April, 2009. Appellant desired to direct the court's attention, *inter alia*, to its mistakes and/or inattention to this Court's prior precedent in entering the 30 March, 2009, order summarily denying habeas relief. The court denied Appellant's Rule 59(e) motion to alter or amend by Order entered on or about 20 April, 2009. Appellant received the Order on or about 27 April, 2009. This, then, is a petition appealing the court's denial of habeas relief and Appellant's Rule 59(e) motion to alter or amend.

## II. STATEMENT OF THE FACTS OF THE CRIME AND CASE

Appellant adopts herein, by reference thereto, the facts as contained in the *Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum*, filed in the Kanawha County Circuit Court on or about 28 September, 2007 and assigned number 07-MISC-403.

This case has an extensive litigious history. It began when, in December, 1979, a woman and her two children were found dead in their St. Albans, West Virginia, home. Soon afterward, the deceased woman's husband, Paul Reggettz, III, became a suspect in the triple murders and confessed to the crimes. On or about 29 April, 1980, Paul Reggettz was indicted by the Kanawha County, West Virginia Grand Jury. The body of the indictment also named Appellant. The husband was held in custody for approximately eleven months, during which time his confession was ruled admissible into evidence as voluntarily given. Mr. Reggettz's trial was set for November 12, 1980.

- 2 -

Appellant became involved in the case when Appellant's uncle, who was in law enforcement at one time, offered his opinion that his nephew may know something about the crimes due to living in the neighborhood. As a result of the information offered by the uncle, in January, 1980, investigating authorities traveled to Cleveland, Ohio, to question Appellant about the murders. Appellant, at that time, was housed in a juvenile detention center on an unrelated charge. Appellant denied committing the murders or having any knowledge of the same. However, the two law enforcement personnel, alone with the juvenile, demanded that Appellant relinquish a blood sample to them, even though they had no warrant, no court order and had not discussed it with Appellant's parents or Ohio court appointed counsel. The troopers directed him to prick his own finger and dribble blood on a cloth provided by the officers for that purpose. Appellant complied and gave the Troopers what they demanded because he "had nothing to hide."

At the time of this first interrogation and relinquishment of physical evidence, Appellant was only seventeen years old, a fact the two troopers were not uncognizant of. When Appellant's Ohio counsel learned of the blood sample taken by the West Virginia authorities, he objected and petitioned an Ohio court for an order that the cloth on which the blood sample was deposited be returned to Appellant. The Ohio court granted counsel's request and ordered that the blood soaked cloth be returned. However, it was never returned to Appellant, a fact the government has neither refuted or denied. Nor did they demonstrate that, if something was returned, whether only part of it was returned, or what may have been on whatever was returned. No testing was conducted to determine if, whatever it was the two troopers avowed was returned, it was the same cloth containing Appellant's blood sample he relinquished, whether it was animal blood, ink, or some other substance resembling blood.

In an opinion written by a previous panel of this Court on an appeal taken pretrial by Appellant from a final order of the Circuit Court, Kanawha County, West Virginia, John Hey, Chief

Judge, transferring the juvenile Appellant to adult jurisdiction, the Court stated that the blood soaked cloth was "apparently" [returned]; *In the Interest of John Moss, Jr.*, 295 S.E.2d 33, 36 (W.Va. 1982) (*Moss I*). However, it is unclear how the Court reached this conclusion as the record does not support it. There is no documentation of a chain of evidence on the illegally obtained blood sample nor evidence of any kind introduced that it was returned. (*See, however*, the 19, 20, 21 & 22 September, 1983, Suppression Hearing Transcript, p. 286, wherein Appellant was questioned on direct examination what his Ohio attorney had told him:

Q.  Did he have to go to court concerning that blood?
A.  Yes.  He said he was going to the courthouse about it.
Q.  And what was the result?
A.  He told me he got the blood stopped or something.
Q.  He got the blood samples back?
A.  Yeah.

(19, 20, 21 & 22 September, 1983, Transcript, designated as part of the record herein.)

Nevertheless, in spite of Appellant's assertions that the cloth was never returned to him and contrary to Appellant's wishes, counsel adopted this Court's postulation and failed to develop this erroneous fact in the lower proceedings.

In April 1980, the investigating authorities, including the Kanawha County Assistant Prosecuting Attorney, Charles Pettry, again traveled to Cleveland to obtain a blood sample from Appellant pursuant to an order, allegedly, issued by an Ohio court.  Based on the alleged blood sample analysis by West Virginia State Police Crime Laboratory Serologist, Fred Salem Zain, on 26 September, 1980, West Virginia filed a detainer against Appellant, pursuant to *W.Va. Code* §62-14-1 *et seq.*, requesting that a juvenile be held, based on a malicious wounding charge unrelated to the murders.

On 28 October, 1980, ostensibly while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, although they were the chief investigating officers in the Reggettz murders, a "confession" was

- 4 -

obtained from the young suspect. On that same date, a tape recorded statement was then made after a foray to the Parkersburg detachment of the W.Va. State Police for the sole purpose of obtaining that recorded statement. (First and second "confessions.") However, though Appellant signed a waiver of rights form at that time, Appellant was not brought before a juvenile referee, magistrate or judicial officer to have the waiver explained to him. It is interesting to note that the adult suspect, Paul Reggettz, III, *was* promptly presented to a magistrate by the same troopers who traveled to Ohio to illegally extract Appellant's blood, and/or the same troopers who, again, on 28 October, 1980, traveled to Ohio wherein they obtained Appellant's "confessions." This is an indication that the actions by the West Virginia authorities were intentionally designed to intimidate and coerce the juvenile, a fact this Court was not uncognizant of.

On 30 October, 1980, Appellant was returned to Ohio by two different members of the West Virginia State Police Troopers Woodyard and Allen. These two troopers also asserted Appellant just all of a sudden wished to discuss further details of the crime which he had not previously told authorities. (Third "confession".) It is clear from the evidence presented in this case that seldom, if ever, are investigations afforded such a reflective and considerate suspect as the four troopers encountered with Appellant. Perhaps it was the two scenic car rides the four troopers so graciously presented Appellant with that induced him to make their jobs of investigating the murders so simple as to voluntarily provide them with so much vital information. It has always been a subject of contemplation why it was only during these car rides did any authority allege Appellant wished to "confess." For example, of all the authorities Appellant came into contact with; his Ohio attorney, the Ohio juvenile facility staff, Kanawha County Jail personnel, etc., he chose to confess only to the troopers who transported him? Perhaps it was the solitary surroundings the young suspect encountered with the burly troopers.

- 5 -

Be that as it may, on 2 November, 1980, a second detainer was filed by West Virginia against Appellant, again requesting that a juvenile be held, based on a charge of three counts of first degree murder. On 18 December, 1980, Appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for 24 December, 1980, but as a result of motions for continuances made by the defense, the hearing was not held until 12 January, 1981, at which time probable cause was found by the juvenile referee who then referred Appellant to the juvenile jurisdiction of the Circuit Court.

On 20 January, 1981, West Virginia filed a motion to have Appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. Continuances were granted on defense's several motions to allow for psychological and psychiatric evaluation, etc., and a transfer hearing was held on 29 June, 1981. After protracted litigation, at a 6 August, 1981 hearing, the court issued from the bench its decision to transfer Appellant to adult status.

On 13 August, 1981, West Virginia presented its case against Appellant to the grand jury, which returned an indictment charging him with three counts of murder in the first degree.

After another prolonged period of time within which issues pertaining to the state's transfer proceedings were litigated, (*Moss I*) another indictment was returned, on or about 30 September, 1982, again charging Appellant with three counts of first degree murder.

Prior to trial, defense counsel filed a *Motion To Suppress*, objecting to, *inter alia*, entering Appellant's two alleged confessions of 28 October, 1983, into the trial. A hearing was held on Appellant's motion on 19, 20, 21 & 22, September, 1983. At the close of the hearing the court ordered that the parties could submit memorandums of law on the issues as brought through the hearing. The third "confession" was not a subject of the motion and memorandum at the hearing because the state had not informed anyone of its intent to use that "confession" at trial until the trial was underway.

- 6 -

Trial commenced on 21 February, 1984, by the court disposing of the state's pretrial motion asking the court to order the young defendant be restrained, by reading the indictment into the record, and the beginning of jury *voir dire*. On or about 26 April, 1984, Appellant was convicted of three counts of first degree murder without a recommendation of mercy.

After considering and denying defense post trial motions, a petition for appeal was filed on Appellant's behalf. In *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988), (*Moss II*) this Court reversed Appellant's convictions because; (1) [T]he trial judge committed reversible error when he refused to poll the jurors; (2) [M]anifest injustice resulted from the prosecutor's remarks; and, (3) [T]he introduction of the husband's polygraph test results was so prejudicial that the trial court's instruction not to consider such evidence was insufficient to cure the error.

Though not adjudicative of the decision to reverse Appellant's first convictions, this Court nonetheless wrote on the issue on appeal of the West Virginia authorities' failure to promptly present the juvenile defendant to a neutral judicial officer upon being taken into custody. The Court ruled that had objections been made on the first two "confessions" the decision in *Ellsworth J.R.*, 331 S.E.2d 503 (W.Va. 1985), would have been retroactively applied and the first two confessions, like the third, would have been inadmissible.

A second trial was held after various pretrial proceedings, including a hearing on defense counsel's motion for the suppression of Appellant's alleged confessions on the basis of authorities' failure to promptly present Appellant—who at the time was under juvenile jurisdiction-to a neutral judicial officer. On 26 April, 1990, Appellant was again convicted of three counts of first degree murder without a recommendation of mercy. Appellant's counsel then filed, on 14 January, 1991, a petition for appeal, and Appellant, *pro se*, filed, on 23 February, 1991, a supplemental petition for appeal. This Court, however, refused to review the petitions without comment.

On or about 18 August, 1994, Appellant then filed a ("Special Zain") Petition For Writ of Habeas Corpus in the Kanawha County Circuit Court, pursuant to this Court's prophylactic remedy for persons convicted in cases involving the false and/or misleading testimony or evidence presented by Fred S. Zain. After protracted proceedings, the circuit court denied Appellant's prayer for relief and dismissed the petition. Appellant appealed that denial and, in a written *per curiam* opinion, *Moss v. Trent*, 603 S.E.2d 656 (2004), 2004 W.Va. Lexis 121, No. 31646, July 1, 2004, (*Moss III*), this Court upheld the circuit court's denial. Appellant then timely filed his *Petition For Rehearing*, which was also refused.

Appellant thereafter filed his petition for writ of *certiorari* in the United States Supreme Court. By Order entered 24 January, 2005, the Court refused *cert*. On or about 2 July, 2005, Appellant's *Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1*, for his remaining contentions of the constitutional and procedural violations which result in Appellant's continued unlawful incarceration, was filed.

By Order entered on or about 7 February, 2006, Appellant's habeas petition and contentions were summarily denied and dismissed by The Honorable Duke Bloom. Petitioner filed an appeal to Judge Bloom's summary denial and dismissal but this Court, again, refused to review Appellant's claims.

Petitioner then filed the action *sub judice*, and appeals the circuit court's denial of his Rule 59(e) motion and Order summarily denying him habeas corpus relief.

### III. ASSIGNMENT OF ERRORS RELIED UPON AND THE MANNER IN WHICH THEY WERE DECIDED IN THE LOWER TRIBUNAL.

THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR BY MAKING ERRONEOUS FINDINGS OF FACTS AND CONCLUSIONS OF LAW.

The Honorable Jennifer F. Bailey summarily denied and dismissed Appellant's *Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum*, in the process thumbing her nose at this Court's mandate in *Zain III; In The Matter of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division*, 633 S.E.2d 762 (W.Va. 2006):

> "A prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence and who challenges his or her conviction based on serology evidence is to be granted a full habeas corpus hearing on the issue of the serology. The prisoner is to be represented by counsel unless he or she knowingly and intelligently waives that right. The circuit court is to review the serology evidence presented with searching and painstaking scrutiny. At the close of the evidence, the circuit court is to draft a comprehensive order which includes detailed findings as to the truth or falsity of the serology evidence...." *Syl. Pt. 4*, <u>Id.</u>

> "A prisoner who was convicted between 1979 and 1999 and against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence may bring a petition for a writ of habeas corpus based on the serology evidence despite the fact that the prisoner brought a prior habeas corpus challenge to the same serology evidence, and the challenge was finally adjudicated." *Syl. Pt. 6*, <u>Id.</u>

In her Order denying and dismissing the petition, Judge Walker failed to make findings of facts on Appellant's contentions that his trial counsel were ineffective for failing to conduct adequate investigations, and/or misconstrued Appellant's contentions, leading to erroneous findings of facts and conclusions of law. For example, Judge Walker states the contentions Appellant raises in his current petition [¶ 27.], but fails to make a finding on the facts of Appellant's contentions

and whether Appellant's counsels' performances were deficient. In [¶ 28.] Judge Walker makes a finding that Appellant raised an issue of ineffective assistance of counsel in two prior habeas petitions but does not recognize that the acts and/or omissions of Appellant's claims of ineffective assistance of counsel were in those prior petitions were completely separate and distinct from the acts and/or omissions of counsel in the current petition. Judge Walker seems to be placing Appellant's claims of ineffective assistance of counsel under a blanket review by stating all the remaining evidence, including Appellant's "confessions" are enough to sustain a conviction. She fails to recognize that if Appellant's allegations of ineffective assistance of counsel claims are true, then there would be no remaining evidence to sustain a conviction on. It would all have been rendered inadmissible!

For example, Judge Walker never made a finding whether Appellant's counsel failed to bring the second trial court's attention to the erroneous conclusion made by the prior panel of this Court that no objections had been made on the first two "confessions," or whether objections had actually been made, and, if there had been objections, whether the remaining "confessions" would have been allowed at the second trial.

Judge Walker did not allow the amendment of Appellant's petition even though the state had not been required to answer the original petition. Appellant should freely have been given permission to amend his petition because justice required it. None of the contentions Appellant wanted to amend his petition with had ever been presented with the assistance of counsel and no omnibus habeas corpus hearing was held on the contentions.

Judge Walker did not make the factual finding whether counsel did or did not present the same witness at the second trial that was presented at the first trial in relation to the flatware presented as evidence. Appellant's claim is that if counsel had presented the same witness and testimony, the flatware would have been discounted as being inculpatory.

Your Appellant *was* convicted in 1984 and 1990, between the years 1979 and 1999. Your Appellant's Zain I issues *were* previously and finally adjudicated. *Syl. Pt. 6*, Id. Judge Walker *did not* appoint counsel and *did not* grant your Appellant a full habeas corpus hearing. *Syl. Pt. 4*, Id. Therefore, she *did not* review the potential serology evidence with searching and painstaking scrutiny. Judge Walker *did not* draft a comprehensive order which includes detailed findings as to the truth or falsity of the potential evidence. In short, she *did not do anything* as required by the rulings in *Zain III*.

Neither did Judge Walker consider the additional contentions by Appellant in his Motion To Amend. None of those contentions were subject to the doctrine of *res judicata* due to the fact no omnibus habeas corpus hearing was held in Appellant's *Zain I* proceedings and no Losh checklist of potential grounds was submitted by Appellant. Judge Walker merely denied Appellant's motion to amend by stating the issues had previously been decided. She is clearly erroneous.

## IV. POINTS AND AUTHORITIES RELIED ON

*Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 74 L.Ed. 1314 (1935); "He may prosecute with earnestness and vigor -- indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much her duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

*Call v. McKenzie*, 220 S.E.2d 665 (W.Va. 1975); "A knowing and intelligent waiver of a constitutional right can only occur on record."

*Cardwell v. Taylor*, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983); [Habeas] relief could be granted if statements were involuntary and therefore obtained in violation of the Fifth Amendment.

*Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1995); "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert the circuit court to the nature of the claimed defect."

*Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1975); Probable cause must first exist [for an intrusive extraction of blood] because the guidelines and standards relating to search and seizure under the Fourth Amendment.

*Daniel v. Legursky*, 195 W.Va. 314, 320 S.E.2d 416 (1995); "An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."

*DiPaola v. Riddle*, 581 F.2d 1111 (4th Cir. 1978); A trial judge should have the first opportunity to rule upon objections to evidence, and the judge's ruling should be made at the time the evidence is offered or even in advance of trial; ordinarily, a party should not be permitted to stand silently by and later to contest the admissibility of crucial evidence only after the fact-finding has gone against them; counsel is required to assert their objection(s) in a timely fashion, but considerations of timeliness do not require a recitation of facts that are unknown to counsel and their client and they are not chargeable by law with knowledge of them.

*Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978); Appellant carries both burdens of pleading and proving the facts and the reasons why he did not receive an opportunity for full and fair litigation.

*Duncan v. Louisiana*, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968); "[T]he accused shall enjoy the right to trial by an impartial jury."

*Durley v. Mayo*, 351 U.S. 277, 100 L.Ed. 1178, 76 S.Ct. 806 (1956); "It is well settled that to obtain a conviction by the use of testimony known by the prosecution to be perjured offends due process."

*Earp v. Vanderpool*, 160 W.Va. 113, 232 S.E.2d 513 (1976); The purpose of requiring a specific objection is to bring into focus the precise nature of the alleged errors so the trial court is afforded an opportunity to correct them.

*Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972); "In West Virginia, there is a rebuttable presumption petitions in habeas corpus proceedings knowingly and intelligently waive issues and/or contentions in prior proceedings.

*Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984); "Waiver is deemed to occur 'when the petitioner could have advanced, but intelligently and knowingly failed to advance,' a contention or ground for relief in a prior proceeding, and the failure to

assert available claims at such time gives rise to a rebuttable presumption of a knowing and intelligent waiver of such claims."

*In The Matter of an Investigation of the W.Va. State Police Crime Lab., Serology Div.*, 190 W.Va. 321, 438 S.E.2d 501 (1993); Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938); A knowing and intelligent waiver of a constitutional right can only occur on record.

*Konchesky v. S.J. Groves & Sons Co. Inc.*, 148 W.Va. 411, 135 S.E.2d 299 (1964); "Rule 46 of the West Virginia Rules of Civil Procedure, which provides that in lieu of a formal exception it is sufficient if a party against whom a ruling or order is made opposes the action taken by the court at the time it is made and indicates the action which he desires, or, if such party did not have an opportunity to object at the time any ruling or order was made by the trial court on a motion of the opposing party, no objection or exception is required and an appellate court may consider the alleged error even though no formal objection or exception was made or taken."

*Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981); "An omnibus habeas corpus hearing as contemplated in W.Va. Code §53-4A-1 et seq. (1967) occurs when; (1) an applicant for habeas corpus is represented by counsel or appears pro se having knowingly and intelligently waived his right to counsel; (2) the trial court inquires into all the standard grounds for habeas relief; (3) a knowing and intelligent waiver of those grounds not asserted is made by applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; (4) the trial court drafts a comprehensive order including findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding."

*McClure v. Trent*, 202 W.Va. 338, 504 S.E.2d 165 (1998); Any issues not presented in a "Special Zain" habeas should be filed in a new petition for writ of habeas corpus.

*Nazelrod v. Hun*, 199 W.Va. 582, 486 S.E.2d 322 (1997); "An examination of the ineffective assistance of counsel claim requires an examination of facts not developed in the appellant's transcript. For instance, the advice that trial counsel gave, or

failed to give the appellant, is not in the trial transcript. Similarly, why counsel failed to object to evidence, or what his specific trial strategy was, does not appear in the record."

*Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973); "A court having jurisdiction over habeas corpus proceedings may deny a petition for writ of habeas corpus without a hearing and without appointing counsel for the petition if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.

*Phares v. Brooks*, 214 W.Va. 442, 590 S.E.2d 370 (2003); There are narrowly configured exceptions to the law of the case doctrine which would allow a lower court to depart from a mandate of [West Virginia Supreme] Court." Those exceptions include: (1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *U.S. v. Matthews*, 312 F.3d 652 (5th Cir. 2002).

*Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Due process of law precludes convictions brought about by methods which offend a sense of justice. "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his [body]."

*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966); [A]ll compelled blood tests are seizures subject to the reasonableness requirement of the Fourth Amendment to the United States Constitution."

*SER Frazier & Oxley L.C. v. Cummings*, 591 S.E.2d 728 (2003); "The [law of the case] doctrine is a salutary rule of policy and practice, grounded in important considerations related to stability in the decision making process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." "Appellate remands are characterized as general or limited. A general remand broadly remands the case and 'when a cause is broadly remanded for a new trial all of the issues are opened anew as if there had been no trial, and the parties have a right to amend their pleadings as necessary.' A limited remand, however, 'prohibits relitigation of some issues on remand, or directs that only some expressly severed issues or causes may still be litigated.' Under a limited remand, 'the court on remand is precluded from considering other issues, or new matters, affecting the cause.' In other words, 'when the further proceedings are specified in the mandate, the district court is limited to holding such as are directed.' When the remand is general, however, the district court is free to decide anything not foreclosed by the mandate."

- 14 -

*SER Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975); "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong."

*SER Vernatter v. Warden*, 207 W.Va. 11, 528 S.E.2d 207 (1999); "An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."

*State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979); Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

*State v. Boyd*, 233 S.E.2d 710 (W.Va. 1977); "The crime of which this defendant is accused is so revolting that it is difficult for the average jury to give the one accused the benefit of a reasonable doubt. Its very nature should have prompted the prosecuting attorney to exercise the highest degree of decorum in the conduct of the trial."

*State v. Bradford*, 199 W.Va. 338, 484 S.E.2d 221 (1997); It is not necessary in West Virginia for lawyers to make running objections to evidentiary rulings by the trial court because the West Virginia Supreme Court recognizes the continuing objection.

*State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995); Because the defendant filed a Motion In Limine, seeking to bar the state from calling his wife as a witness, approximately two months in advance of trial, and that he merely cited W.Va. Code §57-3-3, it met the specificity requirement because that statute dealt only with one subject.

*State v. Critzer*, 280 S.E.2d 288 (W.Va. 1981); "A prosecuting attorney has a duty not to make statements concerning facts not in evidence or not inferable from the evidence."

*State v. Ellsworth, J.R.*, 331 S.E.2d 503 (1985); "[W]hen a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate."

*State v. Humphrey*, 351 S.E.2d 613 (1986); "[T]rial error not raised in the trial court will not be addressed on appeal."

*State v. Kanney*, 169 W.Va. 764, 289 S.E.2d 485 (1982);  A party does not waive an objection once made and overruled by the failure to renew the objection each time the same or similar evidence is introduced.

*State v. Noe*, 230 S.E.2d 826 (W.Va. 1976);  Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Nuckolls*, 273 S.E.2d 87 (W.Va. 1980);  Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Starcher*, 282 S.E.2d 877 (W.Va. 1981);  Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Taylor*, 130 W.Va. 74, 42 S.E.2d 549 (1947);  A party does not waive an objection once made and overruled by the failure to renew the objection each time the same or similar evidence is introduced.

*State v. Walker*, 207 W.Va. 415, 533 S.E.2d 48 (2000);  Defendant fairly presented the matter to the trial court and obtained a definitive ruling rendering the issue properly preserved for appeal.

*Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976);  Neither state nor federal prisoners could collaterally attack state convictions on grounds that illegal evidence was admitted at trial where the "[S]tate has provided an opportunity for full and fair litigation of a Fourth Amendment claim."

*Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.C. 2052 (1984): Two-part test of effective assistance of defense counsel held (1) reasonably effective assistance and (2) reasonable probability of different result with effective assistance.  "Counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." "The court must...determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance." "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are vitually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations [of the law] or to make a reasonable decision that makes particular investigations unnecessary."

*Tolley v. Carboline Co.*, 617 S.E.2d 508 (2005);  The law of the case doctrine generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or reexamined in a second appeal.

*United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979);  The exclusionary rule has primarily rested on the judgment that the importance of deterring police conduct that may invade the constitutional rights of individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial.

*United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002);  There are narrowly configured exceptions to the law of the case doctrine which would allow a lower court to depart from a mandate of [West Virginia Supreme] Court."  Those exceptions include: (1)  The evidence at a subsequent trial is substantially different;  (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice.

*United States v. Weatherless*, 734 F.2d 179 (4th Cir. 1984);  To justify the granting of a mistrial or new trial, the misconduct of the prosecutor must be so egregious as to render ineffectual the type of curative measure employed.

*Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997);  Circuit court, in denying habeas petition, must make specific findings of facts and conclusions of law.

*Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963);  Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal trial against the victim of the illegal search and seizure.  The rule's prohibition applies to such direct evidence as well as to "fruit of the poisonous tree[.]"

U.S. Constitution's Fourth, Fifth, Sixth, & Fourteenth Amendments

W.Va. Constitution Art. III, §§ 3, 6, 10 & 14

W.Va. Code §§ 49-5-8, 49-5-8(d), 53-4A-1 *et seq.*

Rules 12, W.Va.R.Cr.P.;  Requires that objections and motions to suppress must be raised prior to trial unless the grounds are not known to the defendant prior to trial.  W.Va.R.Cr.P. 12(b)(3).

Rule 103 W.Va.R.E.; Requires that a meaningful objection be made to the trial court.  In addition to specificity, Rule 103(a)(1) has a timeliness requirement for objections.  To be timely under the rule, a protest should be registered as soon as the defect becomes apparent.  W.Va.R.E. 103(a)(1)

## V. DISCUSSION OF LAW

This appeal may deviate somewhat from those this Court usually reviews. Instead of putting forth legal arguments, which have been presented by Petitioner *ad infinitum*, to no avail, this appeal will be presented on a personal, heart felt level, begging for just an opportunity to present the colorable claims herein to the circuit court with the assistance of counsel.

This so called prison writ writer and/or "jailhouse lawyer" cannot understand why the state of West Virginia is afraid to give the petitioner named herein the Due Process to which he is entitled, and which virtually everyone else similarly situated in this state receives. Why has Petitioner not been permitted to present *all* his claims together at one time with the assistance of counsel? If Petitioner is given a chance to develop and raise all his claims in one proceeding with the effective assistance of a trained professional, instead of being reduced to relying on this woefully inadequate, uneducated, neophyte prisoner assistant, then his claims will undoubtedly demonstrate Petitioner's entitlement to habeas corpus relief. This writer is tired of beating his head against the immovable wall of a circuit court steadfast in it's predilection to summarily denying and dismissing Petitioner's habeas corpus claims. Instead of relying on presenting this Court with the same old worn out legal arguments and comments, a personal discussion follows. This writer stands and relies on the former petition on appeal, West Virginia Supreme Court No. **061721**, which appealed the Kanawha County Circuit Court's summary dismissal and denial of Petitioner's habeas corpus claims, in Kanawha County Case No. **05-MISC-298**, and the Points And Authorities section of this petition pertains to the legal arguments presented therein. This writer can do no better than that, or what has been filed to date. He would respectfully request that it be read in conjunction with this "petition."

At first glance, it would appear that Petitioner *has* received ample review of his case. After all, there are three (3) decisions by this Court. However, a closer examination of the

totality of the circumstances in the case reveals that, due to improper actions taken by several state actors, that is exactly what all the previous rulings are, *appearances* of Due Process, a chimera of meaningful appellate review that leaves this innocent person doomed to a life behind bars for the remainder of his life without a *meaningful* stamp of appellate approval.

No one is placing blame on this tribunal for not getting it right. No, the fault lies elsewhere; in the two State Police Troopers who illegally seized Petitioner's blood and took it to Fred Zain, the notorious liar and thief of innocent men's lives, the same two troopers who beat a confession out of the young defendant; two totally different troopers who, to support the previous two troopers' story of obtaining a voluntary confession, also falsely stated Petitioner confessed to them, though they did not feel it necessary to record it; former counsel for failing in their duty to effectively represent Petitioner, and on down to the present circuit court judges who refuse to abide by the mandate of this court to appoint counsel and conduct a full evidentiary hearing.

The full story, with factual development, has never come before this Court to allow it to conduct meaningful appellate review of Petitioner's claims on habeas corpus. A short synopsis of the factual, and, thus, legal, assertions by Petitioner that has never been ruled on by *any* court are:

1. Petitioner's blood, contrary to the state's assertions were in the possession of Fred Zain in January, 1980, as evidenced by the January 30, 1980 "Blood Grouping Table" discovered in Petitioner's case during proceedings of the Zain I petition;

2. That Fred Zain used those samples to manufacture evidence to name Petitioner as a suspect in the Reggettz murders;

3. That all evidence flowing from the illegal blood samples planted by Fred Zain are fruits of the poisonous tree and should have been excluded as evidence;

4. Petitioner's trial counsel were ineffective for failing to properly litigate issues pertaining to this Court's rulings in its second decision in the criminal case, *Moss II*, and/or for failing to object to the state failure to promptly present Petitioner to a neutral judicial officer prior to recording his "confessions";

This writer can think of nothing further to add, other than if Petitioner is not allowed to develop his claims with the assistance of counsel then a miscarriage of justice will have occurred. The following is an appeal of Petitioner in his own words.

For almost thirty (30) years someone else has been representing me in my fight for justice. Even now my *pro se* petitions has been with the help of inmates that I have served time with for many years. It has been my lack of knowledge in putting a petition together that has hindered me in fighting for justice. If it wasn't for these skilled inmates I wouldn't have understood the decisions that has been made in my case. If it wasn't for this help many issues would have been over looked. Now that I am challenging them for some reason the Kanawha Circuit Court and this Court has refused to review and appoint legal representation like other prisoners got. I don't understand why.

I chose to write this along with my appeal of Judge Jennifer Bailey final order denying my case. I feel, in almost thirty years and my final appeal in the WV Court, I thought I would beg one more time for fairness and Due Process. Yes, twice I have been tried and twice I was wrongly convicted of a crime I did not do. From the first day of my first trial the prosecution lied, with Trooper Fred Zain and WV State Police. The day I met WV Troopers they lied. That was when they took a sample of my blood and the next lie was them (WV Troopers) saying they returned that sample of blood, which they knew was illegal to have.

The foundation of the states case against me is founded on the illegal blood sample that was taken from me in January

- 20 -

1980. This is where the case began. I believe four WV State Troopers knew what happen to that illegal sample of blood and all four lied from day one. They know what they was going to do before they left WV. What other reason would their be for them to bring a stick pin and cotton swab into a Juvenile Detention Home?

Later when Murphy/Zain reports and records was turned over to the prosecutor's office, they in turn should have disclosed that information to my attorneys. They didn't disclose all blood reports, until the investigation of the WV Crime Lab, Serology Division, over ten years after the illegal sample was taken. The only way my name would appear on any work sheet from January 1980 would be of the illegal blood sample that was taken in January 1980, by WV Troopers. That report was very important information to my case. This issue has never been developed.

How can I prove my innocence or get a fair chance at justice when the two chief investigating officers and the states top serologist (at that time) lied about the scientific work that was supposedly done?

It was never proven that the blood sample was given back to me or anyone representing me, in Ohio or WV. I read in this courts July 1982 opinion: "(170 W.Va. 546) When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. **This apparently was done.** Subsequently, in April 1980, the investigating authorities again traveled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders." The blood sample wasn't given back and I don't know how this court come up with that conclusion because there is nothing in my files or any court record that the

- 21 -

illegal blood sample from January 1980 was returned to me or an attorney representing me. My own habeas attorney adopted that lie or he was just trusting the court to write the truth, the way I have been for almost thirty years.

When the two chief investigating officers went back to Cleveland in April 1980 they went with an attorney. After taking my blood illegally in January 1980, they needed to make everything look legal, therefor they needed representation. I was the only one throughout the whole process of drawing my blood who wasn't represented and I was only a juvenile. Twice blood was taken and twice I was at the mercy of the State of WV. What the WV State Police didn't expect, a major investigation would later be launch many years later into the WV State Police Crime Lab, Serology Division, Trooper Zain and other serologist that worked with him.

Your Honors, from day one, way back in January 1980, the WV State Police lied and this court know, to tell one lie, you're going to tell more to support the first one. When the two chief investigating officers of a triple homicide, along with two top serologist lie about the evidence, to me their credibility is no good but for some reason it's not looked upon that way, with this court. In all the cases Robert Murphy and Fred Zain was involved in, they done more in mine and because of there involvement I deserve a complete review of the issues pertaining to all the serology evidence. Fred Zain was trained by Robert Murphy, not the other way around. Trooper Robert Murphy was the true puppet master and then mysteriously quit the WV State Police or did he quit? These are issues I'm being denied to developed. This court saw something more than what Zain done and I'm assuming that's why Zain III was created. According to this court's last opinion in Zain III, I'm entitled to a court appoint attorney and a full review of my case because of the work Robert Murphy, the serologist other than Zain done in my case. I

- 22 -

ask this court for nothing more than what others has received, Due Process and a fair review of my case.

Your Honors, December 1988 this court reversed my conviction and being that I was granted a new trial, I thought I could challenge all the evidence that the prosecutor intended to use against me and that being the confessions. Like my first trial, my attorney's objected to the two October 1980 confessions, in my second trial. The first two confessions was objected to before the third one. During a suppression hearing that was about three days long in my first trial, is when the objection was made. The two October confessions was objected to because it was the only time I testified in my first trial, during a suppression hearing. This court said in it's opinion December 1988, "Three confessions, were obtained prior to our holding in Ellsworth J.R., however, and our review of the record reveals that a prompt presentment objection was preserved before the trial court only with respect to the third confession. Since the issue was not preserved on the first two confessions, the decision in Ellsworth J.R. will not be applied retroactively to exclude those confessions, but will only be applied retroactively to exclude the third confession obtained from the appellant on October 30, 1980. Accordingly, the appellant's third confession is hereby declared invalid and inadmissible." Again, why was I held to such a high standard to understand all the rules of law and the constitution of Ohio, WV and the United States, at seventeen and eighteen years old. To be personal, which I believe it has become, a personal issue as to when a child is able to understand the rules of law as you as an adult understand them. I doubt either of you was let out the house when you was seventeen or eighteen years of age. If you where at either age it was to further your education to do what it is you're doing right now. In no way am I trying to insult or embarrass this court with this statement. I just want this court to honestly think about what they would have done, if they where innocent

- 23 -

of a crime and they came face to face with two Troopers asking you if he committed or had any knowledge of a triple murder and if you would give a sample of blood. Like me, you would give that blood sample because you're innocent and have nothing to hide. I gave blood because I am innocent and had nothing to hide.

As to the confessions, like me, you would have denied committing the crimes first because you're innocent, second request to see your attorney. Especially when you found out the same two troopers did something wrong when they took your blood, you wouldn't trust these guys. And if they got a volunteered confession, like they lied and said they did in this case, they would have taken me before a judge, magistrate or referee, like the law require them to do, like they done with Reggettz. It wasn't these two Troopers first day on the job, and it don't take a genius to figure out what they was going to do when I was placed in the police car. Taking me to Parkersburg, WV wasn't a simple trip on the way or when I got there, it physically hurt very much.

I know this is not normal for a petitioner to petition the court like this in trying to get his case reviewed and also it's not normal for the same court to denied a petitioner a review when the court issued a mandated order, ordering lower courts to appoint an attorney if any serologist other than Fred Zain was involved in his or her case. Robert Murphy and Fred Zain done more in my case than any of the cases that has petitioned the lower court or this courts for review in Zain I, II and III.

I, John Moss, III, ask this court for no more than what it has given all who has petitioned the court in seeking Due Process. I just want the representation this court promised me, so I can resolve issues that has never been addressed. It is my hope and prayer this court send my case back for full review of all issues. Thank you and God Bless!

- 24 -

## VI. RELIEF PRAYED FOR

Petitioner prays now and forevermore that this case be remanded to the Circuit Court of Kanawha County for factual development of Petitioner's contentions by appointing counsel to draft and file a petition for writ of habeas corpus on behalf of Petitioner.

Respectfully submitted by:

John Moss, III, DOC# 13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

On this, the 28th day of July, 2009

Petitioner proceeding *pro se*.

- 25 -

## CERTIFICATE OF SERVICE

I, John Moss, III, *pro se* Appellant, do hereby certify that copies of the foregoing petition for appeal, designation of the record on appeal, and *Supreme Court of Appeals of West Virginia Docketing Statement* has been served upon counsel for the respondent by handing true copies thereof to prison officials this, the 28th day of July, 2009, for mailing in the regular course of the United States mail, postage prepaid, in a correctly addressed and stamped envelope, addressed to:

    Mark Plants, Prosecutor
    Kanawha County Circuit Court
    700 Washington Street, East
    Suite 400
    Charleston, WV  25301

John Moss, III, *pro se* Appellant

FILED
2009 JUL 29  PM 3: 58
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**FILE COPY**

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## DOCKETING STATEMENT

DO NOT REMOVE
FROM FILE

---

**Style of Case:**

John Moss, III,

     Petitioner,

v.

David Ballard, Warden,

     Respondent.

Circuit Judge:  Jennifer F. Walker
County: Kanawha

F I L E D

AUG – 6 2009

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Type of Action:**

Civil    X
Criminal ___

Petitioner(s):

Plaintiff(s)   X
Defendant(s) ___

Circuit
Number: 13th

2009 JUL 29 PM 3:53
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT
F I L E D

## A. TIMELINESS OF APPEAL

1.      Date of entry of judgement or order appealed from:  March 30, 2009

2.      Filing date of any post-judgment motion filed by any party pursuant to R.Civ.P. 50(b), 52(b), or 59:   April 13, 2009

3.      Date of entry of order deciding post-judgment motion:  April 20, 2009

4.      Date of filing of petition for appeal:  July 28, 2009.

5.      Date of entry of order extending appeal period:

6.      Time extended to:  _____, 200___.

## B. FINALITY OF ORDER OR JUDGMENT

Is the order or judgment appealed from a final decision on the merits as to all issues and parties?
     X   YES    ___   NO

If no, was the order or judgment entered pursuant to R.Civ.P. 54(b)?
     ___   YES    X   NO     ___   N/A

Has the defendant been convicted?    X   YES    ___   NO     ___   N/A
Has a sentence been imposed?    X   YES    ___   NO     ___   N/A
Is the defendant incarcerated?    X   YES    ___   NO     ___   N/A

C. Has this case previously been appealed?    ___ YES    X   NO     ___   N/A

*If yes, give the case name, docket number, and disposition of each prior appeal on a separate sheet.*

D. Are there any related cases currently pending in the Supreme Court of Appeals or Circuit Court?
     ___ YES    X   NO

*If yes, cite the case and the manner in which it is related on a separate sheet.*

## CASE INFORMATION

E. State generally the **nature of the suit**, the **relief sought**, and the **outcome below.**     This appeal is from a final order denying relief on a petition under W.V. Code § 53-4A-1, et. seq., for a writ of habeas corpus by a person in state custody. Petitioner sought immediate release from incarceration and/or a new trial.

F. State the **issues to be raised on appeal.**     The trial court abused its discretion and committed reversible error in violation of Due Process when it summarily denied and dismissed Petitioner's petition under West Virginia Code § 53-4A-1 for writ of habeas corpus without following the requirements of the statute and directives of this Court from the decision in the case, *In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division.*

## CASE MANAGEMENT INFORMATION

G. Do you wish to make an oral presentation of the petition?     _X_ YES    ___ NO

H. Has the entire or only portions of the record been designated?  _X_ ENTIRE ___ PORTION

I. If the appeal is granted, do you desire reproduction of the record or that the case be heard on the original record?  ___ REPRODUCED  _X_  ORIGINAL

J. **List counsel for each adverse party** to the appeal. Include name, firm name, address, and telephone number. If unrepresented by counsel, provide the address and telephone number of the adverse party.  Mark Plants, Kanawha County Prosecuting; 700 Washington St. E.; Suite 400; Charleston, WV 25301

K. **List the Petitioner(s) name:**         John Moss, III

If incarcerated, provide institutional address:   Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

L. **Name of attorney or pro se litigant filing Docketing Statement:**  Same as above.

___ ATTORNEY   _X_ PRO SE

Will you be handling the appeal?      _X_  YES   ___ NO

If so, provide firm name, address, and telephone number:  N/A

*[signature]* John Moss, III

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

Date: July _28_, 2009.

– 2 –

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. JOHN MOSS, III

v.                                                  CIVIL ACTION NO. 07-MISC-403

DAVID BALLARD, Warden, Mount Olive Correctional Complex

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, to-wit:

I, Cathy S. Gatson, Clerk of the Circuit Court of Kanawha County, West Virginia, hereby certify that pauper's affidavit has been filed to guarantee costs of the preparation and indexing of the record, fees for filing the petition, and making and certifying necessary copies of orders, costs of transmission and return of the record and the making of a transcript of the record, in case appeal be allowed in the within action lately pending in said Circuit Court.

I further certify that petition to the Supreme Court of Appeals in the within action has been filed in duplicate in my office, a duplicate remaining therein on file.

Given under my hand and the seal of said Court, this 3rd day of August, 2009.

*Cathy S Gatson*
CATHY S. GATSON, Clerk
Kanawha County Circuit Court
Kanawha County, West Virginia



FILED
AUG − 6 2009
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# WEST VIRGINIA SUPREME COURT
## OF APPEALS

FILED
2009 DEC -8 PM 1:10
CATHY S. ...
KANAWHA COUNTY CIRCUIT
COURT

To:           Kanawha County Circuit Clerk

Date:         December 4, 2009

Style:        Ser John Moss, III            07-MISC-403

              vs.)  No. 091215

              David Ballard

Received of Rory L. Perry, II, Clerk, Supreme Court of Appeals of West

Virginia, a copy of the **Court's Order and Original Record** in the above-

styled action.  Dated at *Charleston, Kanawha County*, West

Virginia, this ___23___ day of ___December___, 2009.

_____Cathy S Gatson_____
Circuit Clerk  lt

Please return to the West Virginia Supreme Court of Appeals, Clerk's
Office, State Capitol Complex, Building 1, Rm. E-317, Charleston,
WV 25305 Attn: Angie Wilkinson. If you have any questions please
call 340-2326.

August 6, 2009

John Moss, III, DOC #13734
Mt. Olive Correctional Center
Post Office Box 5
Mt. Olive, West Virginia 25185-0005

RE:    *SER John Moss, III v. David Ballard, Warden, Supreme Court No. 091215*

Dear Mr. Moss:

This letter is to acknowledge receipt of your petition for appeal in the above-styled proceeding from the Circuit Court of Kanawha County.

When the Court renders a decision concerning your petition for appeal, you will be notified by this office and receive a written copy of the Court's order.

If you have any questions, please contact this office.

Sincerely,

Rory L. Perry II
Clerk

cc:    Kanawha County Circuit Court Clerk
       Post Office Box 2351
       Charleston, West Virginia 25328

No. *07-MISC-403*

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

==========================================

STATE OF WEST VIRGINIA, EX REL.,
JOHN MOSS, III,

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Appellee.

==========================================

---

## DESIGNATION OF THE RECORD ON APPEAL

---

NOW COMES John Moss, III, pro se petitioner, pursuant to Rule 4(c) of the West Virginia Rules of Appellate Procedure, and designates the entire record, including all documents, materials, transcripts, etc., the Court considered in ruling to deny Petitioner habeas corpus relief and dismiss the petition in Civil Action No. 07-MISC-403, Kanawha County Circuit Court, The Honorable Jennifer F. Walker, but specifically, the following items:

1. Petition and Memorandum for writ of habeas corpus ad subjiciendum filed in Kanawha County Circuit Court Clerk's office and assigned Case No. 07-MISC-403;

2. Motion To Amend;

3. Order entered denying habeas relief, Petitioner's Motion to Amend, and dismissing the petition;

- 1 -

4.  Petitioner's Rule 59(e) Motion to Alter or Amend Final Judgment Order;

5.  Order denying Petitioner's Rule 59(e) Motion.

6.  Petition on Appeal in West Virginia Supreme Court No. **061721**, Kanawha County Circuit Court Case No. **05-MISC-298**.

Respectfully submitted by:

_____
John Moss, III, DOC# 13734
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185

On this, the 28th day of July, 2009.

Petitioner proceeding *pro se*

- 2 -

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## DOCKETING STATEMENT

Style of Case:

John Moss, III,

     Petitioner,

v.

David Ballard, Warden,

     Respondent.

Circuit Judge:  Jennifer F. Walker
County: Kanawha

AUG – 6 2009

Type of Action:

Civil    X
Criminal ___

Petitioner(s):

Plaintiff(s)  X
Defendant(s) ___

Circuit
Number: 13th

## A. TIMELINESS OF APPEAL

1.  Date of entry of judgement or order appealed from:  March 30, 2009

2.  Filing date of any post-judgment motion filed by any party pursuant to R.Civ.P. 50(b), 52(b), or 59:   April 13, 2009

3.  Date of entry of order deciding post-judgment motion:  April 20, 2009

4.  Date of filing of petition for appeal:  July 28, 2009.

5.  Date of entry of order extending appeal period:

6.  Time extended to: _____, 200___.

## B. FINALITY OF ORDER OR JUDGMENT

Is the order or judgment appealed from a final decision on the merits as to all issues and parties?
    X  YES   ___  NO

If no, was the order or judgment entered pursuant to R.Civ.P. 54(b)?
     ___  YES  X  NO   ___  N/A

Has the defendant been convicted?   X  YES  ___  NO   ___  N/A
Has a sentence been imposed?     X  YES  ___  NO   ___  N/A
Is the defendant incarcerated?     X  YES  ___  NO   ___  N/A

C.  Has this case previously been appealed?   ___  YES  X  NO   ___  N/A

*If yes, give the case name, docket number, and disposition of each prior appeal on a separate sheet.*

D.  Are there any related cases currently pending in the Supreme Court of Appeals or Circuit Court?
   ___  YES  X  NO

*If yes, cite the case and the manner in which it is related on a separate sheet.*

## CASE INFORMATION

E.  State generally the **nature of the suit**, the **relief sought**, and the **outcome below.**    This appeal is from a  final order denying relief on a petition under W.V. Code § 53-4A-1, et. seq., for a writ of habeas corpus by a person in state custody.  Petitioner sought immediate release from incarceration and/or a new trial.

F.  State the **issues to be raised on appeal.**    The trial court abused its discretion and committed reversible error in violation of Due Process when it summarily denied and dismissed Petitioner's petition under West Virginia Code § 53-4A-1 for writ of habeas corpus without following the requirements of the statute and directives of this Court from the decision in the case, *In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division.*

## CASE MANAGEMENT INFORMATION

G.  Do you wish to make an oral presentation of the petition?     _X_ YES    ___ NO

H.  Has the entire or only portions of the record been designated?  _X_  ENTIRE ___ PORTION

I.  If the appeal is granted, do you desire reproduction of the record or that the case be heard on the original record?  ___ REPRODUCED  _X_    ORIGINAL

**J.  List counsel for each adverse party** to the appeal.  Include name, firm name, address, and telephone number.  If unrepresented by counsel, provide the address and telephone number of the adverse party.  Mark Plants, Kanawha County Prosecuting; 700 Washington St. E.; Suite 400; Charleston, WV 25301
**K.  List the Petitioner(s) name:**        John Moss, III

If incarcerated, provide institutional address:   Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

**L.  Name of attorney or pro se litigant filing Docketing Statement:**  Same as above.

___ ATTORNEY   _X_ PRO SE

Will you be handling the appeal?        _X_  YES    ___ NO

If so, provide firm name, address, and telephone number:  N/A

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

Date: July _28_, 2009.

- 2 -

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Appellee.

---

## PETITION ON APPEAL FROM A FINAL JUDGMENT OF THE KANAWHA COUNTY CIRCUIT COURT SUMMARILY DENYING HABEAS RELIEF AND DISMISSING PETITION

---

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185

On this, the 28th day of July, 2009.

Petitioner proceeding *pro se*.



# INDEX

<u>Content</u>                                                                                  <u>Page</u>

I.    KIND OF PROCEEDING AND NATURE OF THE RULING IN THE LOWER
      TRIBUNAL  .....................................................1

II.   STATEMENT OF THE FACTS OF THE CRIME AND CASE  ..............2

III.  ASSIGNMENTS OF ERRORS RELIED UPON AND THE MANNER IN
      IN WHICH THEY WERE DECIDED IN THE LOWER TRIBUNAL  ..........9

IV.   POINTS AND AUTHORITIES RELIED ON  .........................11

V.    DISCUSSION OF LAW  ........................................18

VI.   RELIEF PRAYED FOR  ........................................25

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

=======================================

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex.

Appellee.

=======================================

_____

PETITION ON APPEAL

_____

## I. KIND OF PROCEEDING AND NATURE OF THE RULING IN THE LOWER TRIBUNAL

Comes now the petitioner, John Moss, III, *pro se*, (hereinafter ("Appellant") and petitions this Honorable Court, pursuant to *W.Va. Code* § 53-4A-9(a), for an appeal from the order entered by the Kanawha County Circuit Court, the Honorable Jennifer F. Walker, summarily denying Appellant's motion, under Rule 59(e), W.Va.R.C.P., for an Order altering or amending the court's previous Order denying Appellant habeas relief and dismissing Appellant's *pro se* petition for writ of habeas corpus ad subjiciendum.

Appellant's petition for state post-conviction relief and memorandum requested the court to, *inter alia*, issue an order to Respondent to show cause why Appellant's convictions and three life sentences without mercy on three counts of first degree murder should not be set aside and ruled void as the same are in violation of the rights secured to Appellant through the Constitutions of the United States and the State of West Virginia, and to thereafter issue an Order demanding the respondent warden to immediately release Appellant.

Appellant handed his *Rule 59(e) Motion* to prison officials on or about 10 April, 2009, and was marked filed 13 April, 2009. Appellant desired to direct the court's attention, *inter alia*, to its mistakes and/or inattention to this Court's prior precedent in entering the 30 March, 2009, order summarily denying habeas relief. The court denied Appellant's Rule 59(e) motion to alter or amend by Order entered on or about 20 April, 2009. Appellant received the Order on or about 27 April, 2009. This, then, is a petition appealing the court's denial of habeas relief and Appellant's Rule 59(e) motion to alter or amend.

## II. STATEMENT OF THE FACTS OF THE CRIME AND CASE

Appellant adopts herein, by reference thereto, the facts as contained in the *Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum*, filed in the Kanawha County Circuit Court on or about 28 September, 2007 and assigned number 07-MISC-403.

This case has an extensive litigious history. It began when, in December, 1979, a woman and her two children were found dead in their St. Albans, West Virginia, home. Soon afterward, the deceased woman's husband, Paul Reggettz, III, became a suspect in the triple murders and confessed to the crimes. On or about 29 April, 1980, Paul Reggettz was indicted by the Kanawha County, West Virginia Grand Jury. The body of the indictment also named Appellant. The husband was held in custody for approximately eleven months, during which time his confession was ruled admissible into evidence as voluntarily given. Mr. Reggettz's trial was set for November 12, 1980.

- 2 -

Appellant became involved in the case when Appellant's uncle, who was in law enforcement at one time, offered his opinion that his nephew may know something about the crimes due to living in the neighborhood. As a result of the information offered by the uncle, in January, 1980, investigating authorities traveled to Cleveland, Ohio, to question Appellant about the murders. Appellant, at that time, was housed in a juvenile detention center on an unrelated charge. Appellant denied committing the murders or having any knowledge of the same. However, the two law enforcement personnel, alone with the juvenile, demanded that Appellant relinquish a blood sample to them, even though they had no warrant, no court order and had not discussed it with Appellant's parents or Ohio court appointed counsel. The troopers directed him to prick his own finger and dribble blood on a cloth provided by the officers for that purpose. Appellant complied and gave the Troopers what they demanded because he "had nothing to hide."

At the time of this first interrogation and relinquishment of physical evidence, Appellant was only seventeen years old, a fact the two troopers were not uncognizant of. When Appellant's Ohio counsel learned of the blood sample taken by the West Virginia authorities, he objected and petitioned an Ohio court for an order that the cloth on which the blood sample was deposited be returned to Appellant. The Ohio court granted counsel's request and ordered that the blood soaked cloth be returned. However, it was never returned to Appellant, a fact the government has neither refuted or denied. Nor did they demonstrate that, if something was returned, whether only part of it was returned, or what may have been on whatever was returned. No testing was conducted to determine if, whatever it was the two troopers avowed was returned, it was the same cloth containing Appellant's blood sample he relinquished, whether it was animal blood, ink, or some other substance resembling blood.

In an opinion written by a previous panel of this Court on an appeal taken pretrial by Appellant from a final order of the Circuit Court, Kanawha County, West Virginia, John Hey, Chief

Judge, transferring the juvenile Appellant to adult jurisdiction, the Court stated that the blood soaked cloth was "apparently" [returned]; *In the Interest of John Moss, Jr.*, 295 S.E.2d 33, 36 (W.Va. 1982) (*Moss I*). However, it is unclear how the Court reached this conclusion as the record does not support it. There is no documentation of a chain of evidence on the illegally obtained blood sample nor evidence of any kind introduced that it was returned. (*See, however*, the 19, 20, 21 & 22 September, 1983, Suppression Hearing Transcript, p. 286, wherein Appellant was questioned on direct examination what his Ohio attorney had told him:

Q. Did he have to go to court concerning that blood?
A. Yes. He said he was going to the courthouse about it.
Q. And what was the result?
A. He told me he got the blood stopped or something.
Q. He got the blood samples back?
A. Yeah.

(19, 20, 21 & 22 September, 1983, Transcript, designated as part of the record herein.)

Nevertheless, in spite of Appellant's assertions that the cloth was never returned to him and contrary to Appellant's wishes, counsel adopted this Court's postulation and failed to develop this erroneous fact in the lower proceedings.

In April 1980, the investigating authorities, including the Kanawha County Assistant Prosecuting Attorney, Charles Pettry, again traveled to Cleveland to obtain a blood sample from Appellant pursuant to an order, allegedly, issued by an Ohio court. Based on the alleged blood sample analysis by West Virginia State Police Crime Laboratory Serologist, Fred Salem Zain, on 26 September, 1980, West Virginia filed a detainer against Appellant, pursuant to *W.Va. Code* §62-14-1 *et seq.*, requesting that a juvenile be held, based on a malicious wounding charge unrelated to the murders.

On 28 October, 1980, ostensibly while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, although they were the chief investigating officers in the Reggettz murders, a "confession" was

- 4 -

obtained from the young suspect. On that same date, a tape recorded statement was then made after a foray to the Parkersburg detachment of the W.Va. State Police for the sole purpose of obtaining that recorded statement. (First and second "confessions.") However, though Appellant signed a waiver of rights form at that time, Appellant was not brought before a juvenile referee, magistrate or judicial officer to have the waiver explained to him. It is interesting to note that the adult suspect, Paul Reggettz, III, *was* promptly presented to a magistrate by the same troopers who traveled to Ohio to illegally extract Appellant's blood, and/or the same troopers who, again, on 28 October, 1980, traveled to Ohio wherein they obtained Appellant's "confessions." This is an indication that the actions by the West Virginia authorities were intentionally designed to intimidate and coerce the juvenile, a fact this Court was not uncognizant of.

On 30 October, 1980, Appellant was returned to Ohio by two different members of the West Virginia State Police Troopers Woodyard and Allen. These two troopers also asserted Appellant just all of a sudden wished to discuss further details of the crime which he had not previously told authorities. (Third "confession".) It is clear from the evidence presented in this case that seldom, if ever, are investigations afforded such a reflective and considerate suspect as the four troopers encountered with Appellant. Perhaps it was the two scenic car rides the four troopers so graciously presented Appellant with that induced him to make their jobs of investigating the murders so simple as to voluntarily provide them with so much vital information. It has always been a subject of contemplation why it was only during these car rides did any authority allege Appellant wished to "confess." For example, of all the authorities Appellant came into contact with; his Ohio attorney, the Ohio juvenile facility staff, Kanawha County Jail personnel, etc., he chose to confess only to the troopers who transported him? Perhaps it was the solitary surroundings the young suspect encountered with the burly troopers.

- 5 -

Be that as it may, on 2 November, 1980, a second detainer was filed by West Virginia against Appellant, again requesting that a juvenile be held, based on a charge of three counts of first degree murder. On 18 December, 1980, Appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for 24 December, 1980, but as a result of motions for continuances made by the defense, the hearing was not held until 12 January, 1981, at which time probable cause was found by the juvenile referee who then referred Appellant to the juvenile jurisdiction of the Circuit Court.

On 20 January, 1981, West Virginia filed a motion to have Appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. Continuances were granted on defense's several motions to allow for psychological and psychiatric evaluation, etc., and a transfer hearing was held on 29 June, 1981. After protracted litigation, at a 6 August, 1981 hearing, the court issued from the bench its decision to transfer Appellant to adult status.

On 13 August, 1981, West Virginia presented its case against Appellant to the grand jury, which returned an indictment charging him with three counts of murder in the first degree.

After another prolonged period of time within which issues pertaining to the state's transfer proceedings were litigated, (*Moss I*) another indictment was returned, on or about 30 September, 1982, again charging Appellant with three counts of first degree murder.

Prior to trial, defense counsel filed a *Motion To Suppress*, objecting to, *inter alia*, entering Appellant's two alleged confessions of 28 October, 1983, into the trial. A hearing was held on Appellant's motion on 19, 20, 21 & 22, September, 1983. At the close of the hearing the court ordered that the parties could submit memorandums of law on the issues as brought through the hearing. The third "confession" was not a subject of the motion and memorandum at the hearing because the state had not informed anyone of its intent to use that "confession" at trial until the trial was underway.

- 6 -

Trial commenced on 21 February, 1984, by the court disposing of the state's pretrial motion asking the court to order the young defendant be restrained, by reading the indictment into the record, and the beginning of jury voir dire. On or about 26 April, 1984, Appellant was convicted of three counts of first degree murder without a recommendation of mercy.

After considering and denying defense post trial motions, a petition for appeal was filed on Appellant's behalf. In State v. Moss, 180 W.Va. 363, 376 S.E.2d 569 (1988), (Moss II) this Court reversed Appellant's convictions because; (1) [T]he trial judge committed reversible error when he refused to poll the jurors; (2) [M]anifest injustice resulted from the prosecutor's remarks; and, (3) [T]he introduction of the husband's polygraph test results was so prejudicial that the trial court's instruction not to consider such evidence was insufficient to cure the error.

Though not adjudicative of the decision to reverse Appellant's first convictions, this Court nonetheless wrote on the issue on appeal of the West Virginia authorities' failure to promptly present the juvenile defendant to a neutral judicial officer upon being taken into custody. The Court ruled that had objections been made on the first two "confessions" the decision in Ellsworth J.R., 331 S.E.2d 503 (W.Va. 1985), would have been retroactively applied and the first two confessions, like the third, would have been inadmissible.

A second trial was held after various pretrial proceedings, including a hearing on defense counsel's motion for the suppression of Appellant's alleged confessions on the basis of authorities' failure to promptly present Appellant—who at the time was under juvenile jurisdiction—to a neutral judicial officer. On 26 April, 1990, Appellant was again convicted of three counts of first degree murder without a recommendation of mercy. Appellant's counsel then filed, on 14 January, 1991, a petition for appeal, and Appellant, pro se, filed, on 23 February, 1991, a supplemental petition for appeal. This Court, however, refused to review the petitions without comment.

On or about 18 August, 1994, Appellant then filed a ("Special Zain") Petition For Writ of Habeas Corpus in the Kanawha County Circuit Court, pursuant to this Court's prophylactic remedy for persons convicted in cases involving the false and/or misleading testimony or evidence presented by Fred S. Zain. After protracted proceedings, the circuit court denied Appellant's prayer for relief and dismissed the petition. Appellant appealed that denial and, in a written *per curiam* opinion, *Moss v. Trent*, 603 S.E.2d 656 (2004), 2004 W.Va. Lexis 121, No. 31646, July 1, 2004, (*Moss III*), this Court upheld the circuit court's denial. Appellant then timely filed his *Petition For Rehearing*, which was also refused.

Appellant thereafter filed his petition for writ of *certiorari* in the United States Supreme Court. By Order entered 24 January, 2005, the Court refused *cert*. On or about 2 July, 2005, Appellant's *Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1*, for his remaining contentions of the constitutional and procedural violations which result in Appellant's continued unlawful incarceration, was filed.

By Order entered on or about 7 February, 2006, Appellant's habeas petition and contentions were summarily denied and dismissed by The Honorable Duke Bloom. Petitioner filed an appeal to Judge Bloom's summary denial and dismissal but this Court, again, refused to review Appellant's claims.

Petitioner then filed the action *sub judice*, and appeals the circuit court's denial of his Rule 59(e) motion and Order summarily denying him habeas corpus relief.

- 8 -

III. ASSIGNMENT OF ERRORS RELIED UPON
AND THE MANNER IN WHICH THEY WERE
DECIDED IN THE LOWER TRIBUNAL.

THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR BY
MAKING ERRONEOUS FINDINGS OF FACTS AND CONCLUSIONS
OF LAW.

The Honorable Jennifer F. Bailey summarily denied and
dismissed Appellant's *Petition Under § 53-4A-1 For Writ Of Habeas
Corpus Ad Subjiciendum*, in the process thumbing her nose at this
Court's mandate in *Zain III*; *In The Matter of: Renewed
Investigation Of The State Police Crime Laboratory, Serology
Division*, 633 S.E.2d 762 (W.Va. 2006):

> "A prisoner against whom a West Virginia State Police
> Crime Laboratory serologist, other than Fred Zain,
> offered evidence and who challenges his or her
> conviction based on serology evidence is to be granted a
> full habeas corpus hearing on the issue of the serology.
> The prisoner is to be represented by counsel unless he
> or she knowingly and intelligently waives that right.
> The circuit court is to review the serology evidence
> presented with searching and painstaking scrutiny. At
> the close of the evidence, the circuit court is to draft
> a comprehensive order which includes detailed findings
> as to the truth or falsity of the serology evidence...."
> *Syl. Pt. 4*, Id.

> "A prisoner who was convicted between 1979 and 1999 and
> against whom a West Virginia State Police Crime
> Laboratory serologist, other than Fred Zain, offered
> evidence may bring a petition for a writ of habeas
> corpus based on the serology evidence despite the fact
> that the prisoner brought a prior habeas corpus
> challenge to the same serology evidence, and the
> challenge was finally adjudicated." *Syl. Pt. 6*, Id.

In her Order denying and dismissing the petition, Judge
Walker failed to make findings of facts on Appellant's contentions
that his trial counsel were ineffective for failing to conduct
adequate investigations, and/or misconstrued Appellant's
contentions, leading to erroneous findings of facts and
conclusions of law. For example, Judge Walker states the
contentions Appellant raises in his current petition [¶ 27.], but
fails to make a finding on the facts of Appellant's contentions

- 9 -

and whether Appellant's counsels' performances were deficient. In [¶ 28.] Judge Walker makes a finding that Appellant raised an issue of ineffective assistance of counsel in two prior habeas petitions but does not recognize that the acts and/or omissions of Appellant's claims of ineffective assistance of counsel were in those prior petitions were completely separate and distinct from the acts and/or omissions of counsel in the current petition. Judge Walker seems to be placing Appellant's claims of ineffective assistance of counsel under a blanket review by stating all the remaining evidence, including Appellant's "confessions" are enough to sustain a conviction. She fails to recognize that if Appellant's allegations of ineffective assistance of counsel claims are true, then there would be no remaining evidence to sustain a conviction on. It would all have been rendered inadmissible!

For example, Judge Walker never made a finding whether Appellant's counsel failed to bring the second trial court's attention to the erroneous conclusion made by the prior panel of this Court that no objections had been made on the first two "confessions," or whether objections had actually been made, and, if there had been objections, whether the remaining "confessions" would have been allowed at the second trial.

Judge Walker did not allow the amendment of Appellant's petition even though the state had not been required to answer the original petition. Appellant should freely have been given permission to amend his petition because justice required it. None of the contentions Appellant wanted to amend his petition with had ever been presented with the assistance of counsel and no omnibus habeas corpus hearing was held on the contentions.

Judge Walker did not make the factual finding whether counsel did or did not present the same witness at the second trial that was presented at the first trial in relation to the flatware presented as evidence. Appellant's claim is that if counsel had presented the same witness and testimony, the flatware would have been discounted as being inculpatory.

Your Appellant *was* convicted in 1984 and 1990, between the years 1979 and 1999. Your Appellant's Zain I issues *were* previously and finally adjudicated. *Syl. Pt. 6, Id.* Judge Walker *did not* appoint counsel and *did not* grant your Appellant a full habeas corpus hearing. *Syl. Pt. 4, Id.* Therefore, she *did not* review the potential serology evidence with searching and painstaking scrutiny. Judge Walker *did not* draft a comprehensive order which includes detailed findings as to the truth or falsity of the potential evidence. In short, she *did not do anything* as required by the rulings in *Zain III.*

Neither did Judge Walker consider the additional contentions by Appellant in his Motion To Amend. None of those contentions were subject to the doctrine of *res judicata* due to the fact no omnibus habeas corpus hearing was held in Appellant's *Zain I* proceedings and no Losh checklist of potential grounds was submitted by Appellant. Judge Walker merely denied Appellant's motion to amend by stating the issues had previously been decided. She is clearly erroneous.

## IV. POINTS AND AUTHORITIES RELIED ON

*Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 74 L.Ed. 1314 (1935); "He may prosecute with earnestness and vigor -- indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much her duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

*Call v. McKenzie*, 220 S.E.2d 665 (W.Va. 1975); "A knowing and intelligent waiver of a constitutional right can only occur on record."

*Cardwell v. Taylor*, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983); [Habeas] relief could be granted if statements were involuntary and therefore obtained in violation of the Fifth Amendment.

*Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1995); "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert the circuit court to the nature of the claimed defect."

*Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1975); Probable cause must first exist [for an intrusive extraction of blood] because the guidelines and standards relating to search and seizure under the Fourth Amendment.

*Daniel v. Legursky*, 195 W.Va. 314, 320 S.E.2d 416 (1995); "An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."

*DiPaola v. Riddle*, 581 F.2d 1111 (4th Cir. 1978); A trial judge should have the first opportunity to rule upon objections to evidence, and the judge's ruling should be made at the time the evidence is offered or even in advance of trial; ordinarily, a party should not be permitted to stand silently by and later to contest the admissibility of crucial evidence only after the fact-finding has gone against them; counsel is required to assert their objection(s) in a timely fashion, but considerations of timeliness do not require a recitation of facts that are unknown to counsel and their client and they are not chargeable by law with knowledge of them.

*Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978); Appellant carries both burdens of pleading and proving the facts and the reasons why he did not receive an opportunity for full and fair litigation.

*Duncan v. Louisiana*, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968); "[T]he accused shall enjoy the right to trial by an impartial jury."

*Durley v. Mayo*, 351 U.S. 277, 100 L.Ed. 1178, 76 S.Ct. 806 (1956); "It is well settled that to obtain a conviction by the use of testimony known by the prosecution to be perjured offends due process."

*Earp v. Vanderpool*, 160 W.Va. 113, 232 S.E.2d 513 (1976); The purpose of requiring a specific objection is to bring into focus the precise nature of the alleged errors so the trial court is afforded an opportunity to correct them.

*Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972); "In West Virginia, there is a rebuttable presumption petitions in habeas corpus proceedings knowingly and intelligently waive issues and/or contentions in prior proceedings.

*Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984); "Waiver is deemed to occur 'when the petitioner could have advanced, but intelligently and knowingly failed to advance,' a contention or ground for relief in a prior proceeding, and the failure to

assert available claims at such time gives rise to a rebuttable presumption of a knowing and intelligent waiver of such claims."

*In The Matter of an Investigation of the W.Va. State Police Crime Lab., Serology Div.*, 190 W.Va. 321, 438 S.E.2d 501 (1993); Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938); A knowing and intelligent waiver of a constitutional right can only occur on record.

*Konchesky v. S.J. Groves & Sons Co. Inc.*, 148 W.Va. 411, 135 S.E.2d 299 (1964); "Rule 46 of the West Virginia Rules of Civil Procedure, which provides that in lieu of a formal exception is sufficient if a party against whom a ruling or order is made opposes the action taken by the court at the time it is made and indicates the action which he desires, or, if such party did not have an opportunity to object at the time any ruling or order was made by the trial court on a motion of the opposing party, no objection or exception is required and an appellate court may consider the alleged error even though no formal objection or exception was made or taken."

*Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981); "An omnibus habeas corpus hearing as contemplated in W.Va. Code §53-4A-1 et seq. (1967) occurs when; (1) an applicant for habeas corpus is represented by counsel or appears pro se having knowingly and intelligently waived his right to counsel; (2) the trial court inquires into all the standard grounds for habeas relief; (3) a knowing and intelligent waiver of those grounds not asserted is made by applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; (4) the trial court drafts a comprehensive order including findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding."

*McClure v. Trent*, 202 W.Va. 338, 504 S.E.2d 165 (1998); Any issues not presented in a "Special Zain" habeas should be filed in a new petition for writ of habeas corpus.

*Nazelrod v. Hun*, 199 W.Va. 582, 486 S.E.2d 322 (1997); "An examination of the ineffective assistance of counsel claim requires an examination of facts not developed in the appellant's transcript. For instance, the advice that trial counsel gave, or

failed to give the appellant, is not in the trial transcript. Similarly, why counsel failed to object to evidence, or what his specific trial strategy was, does not appear in the record."

*Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973); "A court having jurisdiction over habeas corpus proceedings may deny a petition for writ of habeas corpus without a hearing and without appointing counsel for the petition if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.

*Phares v. Brooks*, 214 W.Va. 442, 590 S.E.2d 370 (2003); There are narrowly configured exceptions to the law of the case doctrine which would allow a lower court to depart from a mandate of [West Virginia Supreme] Court." Those exceptions include: (1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *U.S. v. Matthews*, 312 F.3d 652 (5th Cir. 2002).

*Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Due process of law precludes convictions brought about by methods which offend a sense of justice. "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his [body]."

*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966); [A]ll compelled blood tests are seizures subject to the reasonableness requirement of the Fourth Amendment to the United States Constitution."

*SER Frazier & Oxley L.C. v. Cummings*, 591 S.E.2d 728 (2003); "The [law of the case] doctrine is a salutary rule of policy and practice, grounded in important considerations related to stability in the decision making process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." "Appellate remands are characterized as general or limited. A general remand broadly remands the case and 'when a cause is broadly remanded for a new trial all of the issues are opened anew as if there had been no trial, and the parties have a right to amend their pleadings as necessary.' A limited remand, however, 'prohibits relitigation of some issues on remand, or directs that only some expressly severed issues or causes may still be litigated.' Under a limited remand, 'the court on remand is precluded from considering other issues, or new matters, affecting the cause.' In other words, 'when the further proceedings are specified in the mandate, the district court is limited to holding such as are directed.' When the remand is general, however, the district court is free to decide anything not foreclosed by the mandate."

*SER Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975); "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong."

*SER Vernatter v. Warden*, 207 W.Va. 11, 528 S.E.2d 207 (1999); "An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."

*State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979); Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

*State v. Boyd*, 233 S.E.2d 710 (W.Va. 1977); "The crime of which this defendant is accused is so revolting that it is difficult for the average jury to give the one accused the benefit of a reasonable doubt. Its very nature should have prompted the prosecuting attorney to exercise the highest degree of decorum in the conduct of the trial."

*State v. Bradford*, 199 W.Va. 338, 484 S.E.2d 221 (1997); It is not necessary in West Virginia for lawyers to make running objections to evidentiary rulings by the trial court because the West Virginia Supreme Court recognizes the continuing objection.

*State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995); Because the defendant filed a Motion In Limine, seeking to bar the state from calling his wife as a witness, approximately two months in advance of trial, and that he merely cited W.Va. Code §57-3-3, it met the specificity requirement because that statute dealt only with one subject.

*State v. Critzer*, 280 S.E.2d 288 (W.Va. 1981); "A prosecuting attorney has a duty not to make statements concerning facts not in evidence or not inferable from the evidence."

*State v. Ellsworth, J.R.*, 331 S.E.2d 503 (1985); "[W]hen a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate."

*State v. Humphrey*, 351 S.E.2d 613 (1986); "[T]rial error not raised in the trial court will not be addressed on appeal."

*State v. Kanney*, 169 W.Va. 764, 289 S.E.2d 485 (1982); A party does not waive an objection once made and overruled by the failure to renew the objection each time the same or similar evidence is introduced.

*State v. Noe*, 230 S.E.2d 826 (W.Va. 1976); Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Nuckolls*, 273 S.E.2d 87 (W.Va. 1980); Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Starcher*, 282 S.E.2d 877 (W.Va. 1981); Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Taylor*, 130 W.Va. 74, 42 S.E.2d 549 (1947); A party does not waive an objection once made and overruled by the failure to renew the objection each time the same or similar evidence is introduced.

*State v. Walker*, 207 W.Va. 415, 533 S.E.2d 48 (2000); Defendant fairly presented the matter to the trial court and obtained a definitive ruling rendering the issue properly preserved for appeal.

*Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Neither state nor federal prisoners could collaterally attack state convictions on grounds that illegal evidence was admitted at trial where the "[S]tate has provided an opportunity for full and fair litigation of a Fourth Amendment claim."

*Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.C. 2052 (1984): Two-part test of effective assistance of defense counsel held (1) reasonably effective assistance and (2) reasonable probability of different result with effective assistance. "Counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." "The court must...determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance." "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are vitually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations [of the law] or to make a reasonable decision that makes particular investigations unnecessary."

*Tolley v. Carboline Co.*, 617 S.E.2d 508 (2005); The law of the case doctrine generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or reexamined in a second appeal.

*United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); The exclusionary rule has primarily rested on the judgment that the importance of deterring police conduct that may invade the constitutional rights of individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial.

*United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002); There are narrowly configured exceptions to the law of the case doctrine which would allow a lower court to depart from a mandate of [West Virginia Supreme] Court." Those exceptions include: (1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice.

*United States v. Weatherless*, 734 F.2d 179 (4th Cir. 1984); To justify the granting of a mistrial or new trial, the misconduct of the prosecutor must be so egregious as to render ineffectual the type of curative measure employed.

*Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997); Circuit court, in denying habeas petition, must make specific findings of facts and conclusions of law.

*Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal trial against the victim of the illegal search and seizure. The rule's prohibition applies to such direct evidence as well as to "fruit of the poisonous tree[.]"

U.S. Constitution's Fourth, Fifth, Sixth, & Fourteenth Amendments

W.Va. Constitution Art. III, §§ 3, 6, 10 & 14

W.Va. Code §§ 49-5-8, 49-5-8(d), 53-4A-1 *et seq.*

Rules 12, W.Va.R.Cr.P.; Requires that objections and motions to suppress must be raised prior to trial unless the grounds are not known to the defendant prior to trial. W.Va.R.Cr.P. 12(b)(3).

Rule 103 W.Va.R.E.; Requires that a meaningful objection be made to the trial court. In addition to specificity, Rule 103(a)(1) has a timeliness requirement for objections. To be timely under the rule, a protest should be registered as soon as the defect becomes apparent. W.Va.R.E. 103(a)(1)

## V. DISCUSSION OF LAW

This appeal may deviate somewhat from those this Court usually reviews. Instead of putting forth legal arguments, which have been presented by Petitioner *ad infinitum*, to no avail, this appeal will be presented on a personal, heart felt level, begging for just an opportunity to present the colorable claims herein to the circuit court with the assistance of counsel.

This so called prison writ writer and/or "jailhouse lawyer" cannot understand why the state of West Virginia is afraid to give the petitioner named herein the Due Process to which he is entitled, and which virtually everyone else similarly situated in this state receives. Why has Petitioner not been permitted to present *all* his claims together at one time with the assistance of counsel? If Petitioner is given a chance to develop and raise all his claims in one proceeding with the effective assistance of a trained professional, instead of being reduced to relying on this woefully inadequate, uneducated, neophyte prisoner assistant, then his claims will undoubtedly demonstrate Petitioner's entitlement to habeas corpus relief. This writer is tired of beating his head against the immovable wall of a circuit court steadfast in it's predilection to summarily denying and dismissing Petitioner's habeas corpus claims. Instead of relying on presenting this Court with the same old worn out legal arguments and comments, a personal discussion follows. This writer stands and relies on the former petition on appeal, West Virginia Supreme Court No. **061721**, which appealed the Kanawha County Circuit Court's summary dismissal and denial of Petitioner's habeas corpus claims, in Kanawha County Case No. **05-MISC-298**, and the Points And Authorities section of this petition pertains to the legal arguments presented therein. This writer can do no better than that, or what has been filed to date. He would respectfully request that it be read in conjunction with this "petition."

At first glance, it would appear that Petitioner *has* received ample review of his case. After all, there are three (3) decisions by this Court. However, a closer examination of the

totality of the circumstances in the case reveals that, due to improper actions taken by several state actors, that is exactly what all the previous rulings are, *appearances* of Due Process, a chimera of meaningful appellate review that leaves this innocent person doomed to a life behind bars for the remainder of his life without a *meaningful* stamp of appellate approval.

No one is placing blame on this tribunal for not getting it right. No, the fault lies elsewhere; in the two State Police Troopers who illegally seized Petitioner's blood and took it to Fred Zain, the notorious liar and thief of innocent men's lives, the same two troopers who beat a confession out of the young defendant; two totally different troopers who, to support the previous two troopers' story of obtaining a voluntary confession, also falsely stated Petitioner confessed to them, though they did not feel it necessary to record it; former counsel for failing in their duty to effectively represent Petitioner, and on down to the present circuit court judges who refuse to abide by the mandate of this court to appoint counsel and conduct a full evidentiary hearing.

The full story, with factual development, has never come before this Court to allow it to conduct meaningful appellate review of Petitioner's claims on habeas corpus. A short synopsis of the factual, and, thus, legal, assertions by Petitioner that has never been ruled on by *any* court are:

1. Petitioner's blood, contrary to the state's assertions were in the possession of Fred Zain in January, 1980, as evidenced by the January 30, 1980 "Blood Grouping Table" discovered in Petitioner's case during proceedings of the Zain I petition;

2. That Fred Zain used those samples to manufacture evidence to name Petitioner as a suspect in the Reggettz murders;

3. That all evidence flowing from the illegal blood samples planted by Fred Zain are fruits of the poisonous tree and should have been excluded as evidence;

4.  Petitioner's trial counsel were ineffective for failing
    to properly litigate issues pertaining to this Court's
    rulings in its second decision in the criminal case,
    *Moss II*, and/or for failing to object to the state
    failure to promptly present Petitioner to a neutral
    judicial officer prior to recording his "confessions";

This writer can think of nothing further to add, other
than if Petitioner is not allowed to develop his claims with
the assistance of counsel then a miscarriage of justice will
have occurred. The following is an appeal of Petitioner in
his own words.

For almost thirty (30) years someone else has been
representing me in my fight for justice. Even now my *pro se*
petitions has been with the help of inmates that I have
served time with for many years. It has been my lack of
knowledge in putting a petition together that has hindered me
in fighting for justice. If it wasn't for these skilled
inmates I wouldn't have understood the decisions that has
been made in my case. If it wasn't for this help many issues
would have been over looked. Now that I am challenging them
for some reason the Kanawha Circuit Court and this Court has
refused to review and appoint legal representation like other
prisoners got. I don't understand why.

I chose to write this along with my appeal of Judge
Jennifer Bailey final order denying my case. I feel, in
almost thirty years and my final appeal in the WV Court, I
thought I would beg one more time for fairness and Due
Process. Yes, twice I have been tried and twice I was
wrongly convicted of a crime I did not do. From the first
day of my first trial the prosecution lied, with Trooper Fred
Zain and WV State Police. The day I met WV Troopers they
lied. That was when they took a sample of my blood and the
next lie was them (WV Troopers) saying they returned that
sample of blood, which they knew was illegal to have.

The foundation of the states case against me is founded
on the illegal blood sample that was taken from me in January

- 20 -

1980. This is where the case began. I believe four WV State Troopers knew what happen to that illegal sample of blood and all four lied from day one. They know what they was going to do before they left WV. What other reason would their be for them to bring a stick pin and cotton swab into a Juvenile Detention Home?

Later when Murphy/Zain reports and records was turned over to the prosecutor's office, they in turn should have disclosed that information to my attorneys. They didn't disclose all blood reports, until the investigation of the WV Crime Lab, Serology Division, over ten years after the illegal sample was taken. The only way my name would appear on any work sheet from January 1980 would be of the illegal blood sample that was taken in January 1980, by WV Troopers. That report was very important information to my case. This issue has never been developed.

How can I prove my innocence or get a fair chance at justice when the two chief investigating officers and the states top serologist (at that time) lied about the scientific work that was supposedly done?

It was never proven that the blood sample was given back to me or anyone representing me, in Ohio or WV. I read in this courts July 1982 opinion: "(170 W.Va. 546) When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. **This apparently was done.** Subsequently, in April 1980, the investigating authorities again traveled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders." The blood sample wasn't given back and I don't know how this court come up with that conclusion because there is nothing in my files or any court record that the

illegal blood sample from January 1980 was returned to me or an attorney representing me. My own habeas attorney adopted that lie or he was just trusting the court to write the truth, the way I have been for almost thirty years.

When the two chief investigating officers went back to Cleveland in April 1980 they went with an attorney. After taking my blood illegally in January 1980, they needed to make everything look legal, therefor they needed representation. I was the only one throughout the whole process of drawing my blood who wasn't represented and I was only a juvenile. Twice blood was taken and twice I was at the mercy of the State of WV. What the WV State Police didn't expect, a major investigation would later be launch many years later into the WV State Police Crime Lab, Serology Division, Trooper Zain and other serologist that worked with him.

Your Honors, from day one, way back in January 1980, the WV State Police lied and this court know, to tell one lie, you're going to tell more to support the first one. When the two chief investigating officers of a triple homicide, along with two top serologist lie about the evidence, to me their credibility is no good but for some reason it's not looked upon that way, with this court. In all the cases Robert Murphy and Fred Zain was involved in, they done more in mine and because of there involvement I deserve a complete review of the issues pertaining to all the serology evidence. Fred Zain was trained by Robert Murphy, not the other way around. Trooper Robert Murphy was the true puppet master and then mysteriously quit the WV State Police or did he quit? These are issues I'm being denied to developed. This court saw something more than what Zain done and I'm assuming that's _____ why Zain III was created. According to this court's last opinion in Zain III, I'm entitled to a court appoint attorney and a full review of my case because of the work Robert Murphy, the serologist other than Zain done in my case. I

- 22 -

ask this court for nothing more than what others has received, Due Process and a fair review of my case.

Your Honors, December 1988 this court reversed my conviction and being that I was granted a new trial, I thought I could challenge all the evidence that the prosecutor intended to use against me and that being the confessions. Like my first trial, my attorney's objected to the two October 1980 confessions, in my second trial. The first two confessions was objected to before the third one. During a suppression hearing that was about three days long in my first trial, is when the objection was made. The two October confessions was objected to because it was the only time I testified in my first trial, during a suppression hearing. This court said in it's opinion December 1988, "Three confessions, were obtained prior to our holding in Ellsworth J.R., however, and our review of the record reveals that a prompt presentment objection was preserved before the trial court only with respect to the third confession. Since the issue was not preserved on the first two confessions, the decision in Ellsworth J.R. will not be applied retroactively to exclude those confessions, but will only be applied retroactively to exclude the third confession obtained from the appellant on October 30, 1980. Accordingly, the appellant's third confession is hereby declared invalid and inadmissible." Again, why was I held to such a high standard to understand all the rules of law and the constitution of Ohio, WV and the United States, at seventeen and eighteen years old. To be personal, which I believe it has become, a personal issue as to when a child is able to understand the rules of law as you as an adult understand them. I doubt either of you was let out the house when you was seventeen or eighteen years of age. If you where at either age it was to further your education to do what it is you're doing right now. In no way am I trying to insult or embarrass this court with this statement. I just want this court to honestly think about what they would have done, if they where innocent

of a crime and they came face to face with two Troopers asking you if he committed or had any knowledge of a triple murder and if you would give a sample of blood. Like me, you would give that blood sample because you're innocent and have nothing to hide. I gave blood because I am innocent and had nothing to hide.

As to the confessions, like me, you would have denied committing the crimes first because you're innocent, second request to see your attorney. Especially when you found out the same two troopers did something wrong when they took your blood, you wouldn't trust these guys. And if they got a volunteered confession, like they lied and said they did in this case, they would have taken me before a judge, magistrate or referee, like the law require them to do, like they done with Reggettz. It wasn't these two Troopers first day on the job, and it don't take a genius to figure out what they was going to do when I was placed in the police car. Taking me to Parkersburg, WV wasn't a simple trip on the way or when I got there, it physically hurt very much.

I know this is not normal for a petitioner to petition the court like this in trying to get his case reviewed and also it's not normal for the same court to denied a petitioner a review when the court issued a mandated order, ordering lower courts to appoint an attorney if any serologist other than Fred Zain was involved in his or her case. Robert Murphy and Fred Zain done more in my case than any of the cases that has petitioned the lower court or this courts for review in Zain I, II and III.

I, John Moss, III, ask this court for no more than what it has given all who has petitioned the court in seeking Due Process. I just want the representation this court promised me, so I can resolve issues that has never been addressed. It is my hope and prayer this court send my case back for full review of all issues. Thank you and God Bless!

- 24 -

## VI. RELIEF PRAYED FOR

Petitioner prays now and forevermore that this case be remanded to the Circuit Court of Kanawha County for factual development of Petitioner's contentions by appointing counsel to draft and file a petition for writ of habeas corpus on behalf of Petitioner.

Respectfully submitted by:

John Moss, III, DOC# 13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

On this, the 28th day of July, 2009

Petitioner proceeding *pro se*.

CERTIFICATE OF SERVICE

I, John Moss, III, *pro se* Appellant, do hereby certify that copies of the foregoing petition for appeal, designation of the record on appeal, and *Supreme Court of Appeals of West Virginia Docketing Statement* has been served upon counsel for the respondent by handing true copies thereof to prison officials this, the 28th day of July, 2009, for mailing in the regular course of the United States mail, postage prepaid, in a correctly addressed and stamped envelope, addressed to:

    Mark Plants, Prosecutor
    Kanawha County Circuit Court
    700 Washington Street, East
    Suite 400
    Charleston, WV  25301


John Moss, III, *pro se* Appellant

**John Moss, III, DOC# 13734**
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

**DO NOT REMOVE
FROM FILE**

July 28, 2009

Ms. Cathy Gatson, Clerk
Kanawha County Circuit Court
111 Court Street
Charleston, WV 25301

F I L E D

AUG - 6 2009

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Re:    SER Moss v. Ballard, No. 07-MISC-403

Dear Ms. Gatson:

Enclosed for filing in the above referenced case file, please find the original and nine (9) copies of my *pro se* Petition On Appeal, Designation of the Record on Appeal, West Virginia Supreme Court of Appeals Docketing Statement, as well as certification that the same has been served upon counsel for the respondent warden, all of which I request you file in the appropriate case file and pass them along to the West Virginia Supreme Court as per the applicable rules.

I have also included an extra copy of this cover letter and a self-addressed, stamped envelope. Please date and time stamp the extra copy, indicating the date on which your office received and filed the aforementioned documents, place the date and time stamped copy in the provided envelope and mail it back to me. Thank you.

Sincerely yours,

John Moss, III

JM/tlb
Encls.
cc:        Prosecuting Attorney
           file

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

=========================================

STATE OF WEST VIRGINIA, EX REL.,
JOHN MOSS, III,

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Appellee.

=========================================

**DO NOT REMOVE FROM FILE**

F I L E D

AUG - 6 2009

RO... ... ...
SUPRE... COURT OF...
OF WEST VIRGINIA

---

## DESIGNATION OF THE RECORD ON APPEAL

---

NOW COMES John Moss, III, *pro se* petitioner, pursuant to Rule 4(c) of the West Virginia Rules of Appellate Procedure, and designates the entire record, including all documents, materials, transcripts, etc., the Court considered in ruling to deny Petitioner habeas corpus relief and dismiss the petition in Civil Action No. 07-MISC-403, Kanawha County Circuit Court, The Honorable Jennifer F. Walker, but specifically, the following items:

1.  Petition and Memorandum for writ of habeas corpus ad subjiciendum filed in Kanawha County Circuit Court Clerk's office and assigned Case No. 07-MISC-403;

2.  Motion To Amend;

3.  Order entered denying habeas relief, Petitioner's Motion to Amend, and dismissing the petition;

- 1 -

4. Petitioner's Rule 59(e) Motion to Alter or Amend Final Judgment Order;

5. Order denying Petitioner's Rule 59(e) Motion.

6. Petition on Appeal in West Virginia Supreme Court No. <u>061721</u>, Kanawha County Circuit Court Case No. <u>05-MISC-298</u>.

Respectfully submitted by:

John Moss, III DOC# 13734
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185

On this, the 28th day of July, 2009.

Petitioner proceeding *pro se*

DO NOT REMOVE
FROM FILE

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## DOCKETING STATEMENT

Style of Case:

John Moss, III,

    Petitioner,

v.

David Ballard, Warden,

    Respondent.

Circuit Judge:  Jennifer F. Walker
County: Kanawha

FILED
AUG – 6 2009
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Type of Action:

Civil    X
Criminal ___

Petitioner(s):

Plaintiff(s)   X
Defendant(s) ___

Circuit
Number: 13th

## A. TIMELINESS OF APPEAL

1. Date of entry of judgement or order appealed from:  March 30, 2009

2. Filing date of any post-judgment motion filed by any party pursuant to R.Civ.P. 50(b), 52(b), or 59:   April 13, 2009

3. Date of entry of order deciding post-judgment motion:  April 20, 2009

4. Date of filing of petition for appeal:  July 28, 2009.

5. Date of entry of order extending appeal period:

6. Time extended to: _____, 200__.

## B. FINALITY OF ORDER OR JUDGMENT

Is the order or judgment appealed from a final decision on the merits as to all issues and parties?
    X  YES   ___  NO

If no, was the order or judgment entered pursuant to R.Civ.P. 54(b)?
    ___  YES   X NO   ___  N/A

Has the defendant been convicted?    X  YES   ___ NO   ___  N/A
Has a sentence been imposed?    X  YES   ___ NO   ___  N/A
Is the defendant incarcerated?    X  YES   ___ NO   ___  N/A

C. Has this case previously been appealed?    ___ YES   X NO   ___  N/A

*If yes, give the case name, docket number, and disposition of each prior appeal on a separate sheet.*

D. Are there any related cases currently pending in the Supreme Court of Appeals or Circuit Court?
    ___ YES   X  NO

*If yes, cite the case and the manner in which it is related on a separate sheet.*

## CASE INFORMATION

E. State generally the **nature of the suit**, the relief sought, and the **outcome below.**    This appeal is from a  final order denying relief on a petition under W.V. Code § 53-4A-1, et. seq., for a writ of habeas corpus by a person in state custody   Petitioner sought immediate release from incarceration and/or a new trial.

F. State the **issues to be raised on appeal.**    The trial court abused its discretion and committed reversible error in violation of Due Process when it summarily denied and dismissed Petitioner's petition under West Virginia Code § 53-4A-1 for writ of habeas corpus without following the requirements of the statute and directives of this Court from the decision in the case, *In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division.*

## CASE MANAGEMENT INFORMATION

G. Do you wish to make an oral presentation of the petition?     _X_ YES   ___ NO

H. Has the entire or only portions of the record been designated?  _X_ ENTIRE ___ PORTION

I. If the appeal is granted, do you desire reproduction of the record or that the case be heard on the original record?  ___ REPRODUCED  _X_  ORIGINAL

J. **List counsel for each adverse party** to the appeal.  Include name, firm name, address, and telephone number.  If unrepresented by counsel, provide the address and telephone number of the adverse party.  Mark Plants, Kanawha County Prosecuting; 700 Washington St. E.; Suite 400; Charleston, WV 25301

K. **List the Petitioner(s) name:**        John Moss, III

If incarcerated, provide institutional address:   Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

L. **Name of attorney or pro se litigant filing Docketing Statement:** Same as above.

___ ATTORNEY  _X_ PRO SE

Will you be handling the appeal?      _X_  YES   ___ NO

If so, provide firm name, address, and telephone number:  N/A

John Moss III

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

Date: July _28_, 2009.

- 2 -

No. _____

**DO NOT REMOVE FROM FILE**

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Appellee.

---

PETITION ON APPEAL FROM A FINAL JUDGMENT OF
THE KANAWHA COUNTY CIRCUIT COURT SUMMARILY
DENYING HABEAS RELIEF AND DISMISSING PETITION

---

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185

On this, the 28th day of July, 2009.

Petitioner proceeding *pro se.*



FILED
AUG - 6 2009
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# INDEX

Content                                                                    Page

I.    KIND OF PROCEEDING AND NATURE OF THE RULING IN THE LOWER
      TRIBUNAL  ..................................................... 1

II.   STATEMENT OF THE FACTS OF THE CRIME AND CASE  .............. 2

III.  ASSIGNMENTS OF ERRORS RELIED UPON AND THE MANNER IN
      IN WHICH THEY WERE DECIDED IN THE LOWER TRIBUNAL  .......... 9

IV.   POINTS AND AUTHORITIES RELIED ON  ......................... 11

V.    DISCUSSION OF LAW  ........................................ 18

VI.   RELIEF PRAYED FOR  ........................................ 25

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

=======================================

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III

Appellant,

vs.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

Appellee.

=======================================

---

PETITION ON APPEAL

---

### I. KIND OF PROCEEDING AND NATURE OF
### THE RULING IN THE LOWER TRIBUNAL

Comes now the petitioner, John Moss, III, pro se, (hereinafter ("Appellant") and petitions this Honorable Court, pursuant to *W.Va. Code* § 53-4A-9(a), for an appeal from the order entered by the Kanawha County Circuit Court, the Honorable Jennifer F. Walker, summarily denying Appellant's motion, under Rule 59(e), W.Va.R.C.P., for an Order altering or amending the court's previous Order denying Appellant habeas relief and dismissing Appellant's *pro se* petition for writ of habeas corpus ad subjiciendum.

Appellant's petition for state post-conviction relief and memorandum requested the court to, *inter alia*, issue an order to Respondent to show cause why Appellant's convictions and three life sentences without mercy on three counts of first degree murder should not be set aside and ruled void as the same are in violation of the rights secured to Appellant through the Constitutions of the United States and the State of West Virginia, and to thereafter issue an Order demanding the respondent warden to immediately release Appellant.

Appellant handed his *Rule 59(e) Motion* to prison officials on or about 10 April, 2009, and was marked filed 13 April, 2009. Appellant desired to direct the court's attention, *inter alia*, to its mistakes and/or inattention to this Court's prior precedent in entering the 30 March, 2009, order summarily denying habeas relief. The court denied Appellant's Rule 59(e) motion to alter or amend by Order entered on or about 20 April, 2009. Appellant received the Order on or about 27 April, 2009. This, then, is a petition appealing the court's denial of habeas relief and Appellant's Rule 59(e) motion to alter or amend.

## II. STATEMENT OF THE FACTS OF THE CRIME AND CASE

Appellant adopts herein, by reference thereto, the facts as contained in the *Petition Under § 53-4A-1 For Writ Of Habeas Corpus Ad Subjiciendum*, filed in the Kanawha County Circuit Court on or about 28 September, 2007 and assigned number <u>07-MISC-403</u>.

This case has an extensive litigious history. It began when, in December, 1979, a woman and her two children were found dead in their St. Albans, West Virginia, home. Soon afterward, the deceased woman's husband, Paul Reggettz, III, became a suspect in the triple murders and confessed to the crimes. On or about 29 April, 1980, Paul Reggettz was indicted by the Kanawha County, West Virginia Grand Jury. The body of the indictment also named Appellant. The husband was held in custody for approximately eleven months, during which time his confession was ruled admissible into evidence as voluntarily given. Mr. Reggettz's trial was set for November 12, 1980.

- 2 -

Appellant became involved in the case when Appellant's uncle, who was in law enforcement at one time, offered his opinion that his nephew may know something about the crimes due to living in the neighborhood. As a result of the information offered by the uncle, in January, 1980, investigating authorities traveled to Cleveland, Ohio, to question Appellant about the murders. Appellant, at that time, was housed in a juvenile detention center on an unrelated charge. Appellant denied committing the murders or having any knowledge of the same. However, the two law enforcement personnel, alone with the juvenile, demanded that Appellant relinquish a blood sample to them, even though they had no warrant, no court order and had not discussed it with Appellant's parents or Ohio court appointed counsel. The troopers directed him to prick his own finger and dribble blood on a cloth provided by the officers for that purpose. Appellant complied and gave the Troopers what they demanded because he "had nothing to hide."

At the time of this first interrogation and relinquishment of physical evidence, Appellant was only seventeen years old, a fact the two troopers were not uncognizant of. When Appellant's Ohio counsel learned of the blood sample taken by the West Virginia authorities, he objected and petitioned an Ohio court for an order that the cloth on which the blood sample was deposited be returned to Appellant. The Ohio court granted counsel's request and ordered that the blood soaked cloth be returned. However, it was never returned to Appellant, a fact the government has neither refuted or denied. Nor did they demonstrate that, if something was returned, whether only part of it was returned, or what may have been on whatever was returned. No testing was conducted to determine if, whatever it was the two troopers avowed was returned, it was the same cloth containing Appellant's blood sample he relinquished, whether it was animal blood, ink, or some other substance resembling blood.

In an opinion written by a previous panel of this Court on an appeal taken pretrial by Appellant from a final order of the Circuit Court, Kanawha County, West Virginia, John Hey, Chief

- 3 -

Judge, transferring the juvenile Appellant to adult jurisdiction, the Court stated that the blood soaked cloth was "apparently" [returned]; *In the Interest of John Moss, Jr.*, 295 S.E.2d 33, 36 (W.Va. 1982) (*Moss I*). However, it is unclear how the Court reached this conclusion as the record does not support it. There is no documentation of a chain of evidence on the illegally obtained blood sample nor evidence of any kind introduced that it was returned. (*See, however*, the 19, 20, 21 & 22 September, 1983, Suppression Hearing Transcript, p. 286, wherein Appellant was questioned on direct examination what his Ohio attorney had told him:

Q.   Did he have to go to court concerning that blood?
A.   Yes. He said he was going to the courthouse about it.
Q.   And what was the result?
A.   He told me he got the blood stopped or something.
Q.   He got the blood samples back?
A.   Yeah.

(19, 20, 21 & 22 September, 1983, Transcript, designated as part of the record herein.)

Nevertheless, in spite of Appellant's assertions that the cloth was never returned to him and contrary to Appellant's wishes, counsel adopted this Court's postulation and failed to develop this erroneous fact in the lower proceedings.

In April 1980, the investigating authorities, including the Kanawha County Assistant Prosecuting Attorney, Charles Pettry, again traveled to Cleveland to obtain a blood sample from Appellant pursuant to an order, allegedly, issued by an Ohio court. Based on the alleged blood sample analysis by West Virginia State Police Crime Laboratory Serologist, Fred Salem Zain, on 26 September, 1980, West Virginia filed a detainer against Appellant, pursuant to *W.Va. Code* §62-14-1 *et seq.*, requesting that a juvenile be held, based on a malicious wounding charge unrelated to the murders.

On 28 October, 1980, ostensibly while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, although they were the chief investigating officers in the Reggettz murders, a "confession" was

- 4 -

obtained from the young suspect. On that same date, a tape recorded statement was then made after a foray to the Parkersburg detachment of the W.Va. State Police for the sole purpose of obtaining that recorded statement. (First and second "confessions.") However, though Appellant signed a waiver of rights form at that time, Appellant was not brought before a juvenile referee, magistrate or judicial officer to have the waiver explained to him. It is interesting to note that the adult suspect, Paul Reggettz, III, *was* promptly presented to a magistrate by the same troopers who traveled to Ohio to illegally extract Appellant's blood, and/or the same troopers who, again, on 28 October, 1980, traveled to Ohio wherein they obtained Appellant's "confessions." This is an indication that the actions by the West Virginia authorities were intentionally designed to intimidate and coerce the juvenile, a fact this Court was not uncognizant of.

On 30 October, 1980, Appellant was returned to Ohio by two different members of the West Virginia State Police Troopers Woodyard and Allen. These two troopers also asserted Appellant just all of a sudden wished to discuss further details of the crime which he had not previously told authorities. (Third "confession".) It is clear from the evidence presented in this case that seldom, if ever, are investigations afforded such a reflective and considerate suspect as the four troopers encountered with Appellant. Perhaps it was the two scenic car rides the four troopers so graciously presented Appellant with that induced him to make their jobs of investigating the murders so simple as to voluntarily provide them with so much vital information. It has always been a subject of contemplation why it was only during these car rides did any authority allege Appellant wished to "confess." For example, of all the authorities Appellant came into contact with; his Ohio attorney, the Ohio juvenile facility staff, Kanawha County Jail personnel, etc., he chose to confess only to the troopers who transported him? Perhaps it was the solitary surroundings the young suspect encountered with the burly troopers.

- 5 -

Be that as it may, on 2 November, 1980, a second detainer was filed by West Virginia against Appellant, again requesting that a juvenile be held, based on a charge of three counts of first degree murder. On 18 December, 1980, Appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for 24 December, 1980, but as a result of motions for continuances made by the defense, the hearing was not held until 12 January, 1981, at which time probable cause was found by the juvenile referee who then referred Appellant to the juvenile jurisdiction of the Circuit Court.

On 20 January, 1981, West Virginia filed a motion to have Appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. Continuances were granted on defense's several motions to allow for psychological and psychiatric evaluation, etc., and a transfer hearing was held on 29 June, 1981. After protracted litigation, at a 6 August, 1981 hearing, the court issued from the bench its decision to transfer Appellant to adult status.

On 13 August, 1981, West Virginia presented its case against Appellant to the grand jury, which returned an indictment charging him with three counts of murder in the first degree.

After another prolonged period of time within which issues pertaining to the state's transfer proceedings were litigated, (*Moss I*) another indictment was returned, on or about 30 September, 1982, again charging Appellant with three counts of first degree murder.

Prior to trial, defense counsel filed a *Motion To Suppress*, objecting to, *inter alia*, entering Appellant's two alleged confessions of 28 October, 1983, into the trial. A hearing was held on Appellant's motion on 19, 20, 21 & 22, September, 1983. At the close of the hearing the court ordered that the parties could submit memorandums of law on the issues as brought through the hearing. The third "confession" was not a subject of the motion and memorandum at the hearing because the state had not informed anyone of its intent to use that "confession" at trial until the trial was underway.

- 6 -

Trial commenced on 21 February, 1984, by the court disposing of the state's pretrial motion asking the court to order the young defendant be restrained, by reading the indictment into the record, and the beginning of jury *voir dire*. On or about 26 April, 1984, Appellant was convicted of three counts of first degree murder without a recommendation of mercy.

After considering and denying defense post trial motions, a petition for appeal was filed on Appellant's behalf. In *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988), (*Moss II*) this Court reversed Appellant's convictions because; (1) [T]he trial judge committed reversible error when he refused to poll the jurors; (2) [M]anifest injustice resulted from the prosecutor's remarks; and, (3) [T]he introduction of the husband's polygraph test results was so prejudicial that the trial court's instruction not to consider such evidence was insufficient to cure the error.

Though not adjudicative of the decision to reverse Appellant's first convictions, this Court nonetheless wrote on the issue on appeal of the West Virginia authorities' failure to promptly present the juvenile defendant to a neutral judicial officer upon being taken into custody. The Court ruled that had objections been made on the first two "confessions" the decision in *Ellsworth J.R.*, 331 S.E.2d 503 (W.Va. 1985), would have been retroactively applied and the first two confessions, like the third, would have been inadmissible.

A second trial was held after various pretrial proceedings, including a hearing on defense counsel's motion for the suppression of Appellant's alleged confessions on the basis of authorities' failure to promptly present Appellant-who at the time was under juvenile jurisdiction-to a neutral judicial officer. On 26 April, 1990, Appellant was again convicted of three counts of first degree murder without a recommendation of mercy. Appellant's counsel then filed, on 14 January, 1991, a petition for appeal, and Appellant, *pro se*, filed, on 23 February, 1991, a supplemental petition for appeal. This Court, however, refused to review the petitions without comment.

- 7 -

On or about 18 August, 1994, Appellant then filed a ("Special Zain") Petition For Writ of Habeas Corpus in the Kanawha County Circuit Court, pursuant to this Court's prophylactic remedy for persons convicted in cases involving the false and/or misleading testimony or evidence presented by Fred S. Zain. After protracted proceedings, the circuit court denied Appellant's prayer for relief and dismissed the petition. Appellant appealed that denial and, in a written *per curiam* opinion, *Moss v. Trent*, 603 S.E.2d 656 (2004), 2004 W.Va. Lexis 121, No. 31646, July 1, 2004, (*Moss III*), this Court upheld the circuit court's denial. Appellant then timely filed his *Petition For Rehearing*, which was also refused.

Appellant thereafter filed his petition for writ of *certiorari* in the United States Supreme Court. By Order entered 24 January, 2005, the Court refused *cert*. On or about 2 July, 2005, Appellant's *Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1*, for his remaining contentions of the constitutional and procedural violations which result in Appellant's continued unlawful incarceration, was filed.

By Order entered on or about 7 February, 2006, Appellant's habeas petition and contentions were summarily denied and dismissed by The Honorable Duke Bloom. Petitioner filed an appeal to Judge Bloom's summary denial and dismissal but this Court, again, refused to review Appellant's claims.

Petitioner then filed the action *sub judice*, and appeals the circuit court's denial of his Rule 59(e) motion and Order summarily denying him habeas corpus relief.

III. ASSIGNMENT OF ERRORS RELIED UPON
AND THE MANNER IN WHICH THEY WERE
DECIDED IN THE LOWER TRIBUNAL.

THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR BY
MAKING ERRONEOUS FINDINGS OF FACTS AND CONCLUSIONS
OF LAW.

The Honorable Jennifer F. Bailey summarily denied and
dismissed Appellant's *Petition Under § 53-4A-1 For Writ Of Habeas
Corpus Ad Subjiciendum*, in the process thumbing her nose at this
Court's mandate in *Zain III; In The Matter of: Renewed
Investigation Of The State Police Crime Laboratory, Serology
Division*, 633 S.E.2d 762 (W.Va. 2006):

   "A prisoner against whom a West Virginia State Police
   Crime Laboratory serologist, other than Fred Zain,
   offered evidence and who challenges his or her
   conviction based on serology evidence is to be granted a
   full habeas corpus hearing on the issue of the serology.
   The prisoner is to be represented by counsel unless he
   or she knowingly and intelligently waives that right.
   The circuit court is to review the serology evidence
   presented with searching and painstaking scrutiny.   At
   the close of the evidence, the circuit court is to draft
   a comprehensive order which includes detailed findings
   as to the truth or falsity of the serology evidence...."
   *Syl. Pt. 4*, Id.

   "A prisoner who was convicted between 1979 and 1999 and
   against whom a West Virginia State Police Crime
   Laboratory serologist, other than Fred Zain, offered
   evidence may bring a petition for a writ of habeas
   corpus based on the serology evidence despite the fact
   that the prisoner brought a prior habeas corpus
   challenge to the same serology evidence, and the
   challenge was finally adjudicated." *Syl. Pt. 6*, Id.

In her Order denying and dismissing the petition, Judge
Walker failed to make findings of facts on Appellant's contentions
that his trial counsel were ineffective for failing to conduct
adequate investigations, and/or misconstrued Appellant's
contentions, leading to erroneous findings of facts and
conclusions of law.   For example, Judge Walker states the
contentions Appellant raises in his current petition [¶ 27.], but
fails to make a finding on the facts of Appellant's contentions

- 9 -

and whether Appellant's counsels' performances were deficient. In [¶ 28.] Judge Walker makes a finding that Appellant raised an issue of ineffective assistance of counsel in two prior habeas petitions but does not recognize that the acts and/or omissions of Appellant's claims of ineffective assistance of counsel were in those prior petitions were completely separate and distinct from the acts and/or omissions of counsel in the current petition. Judge Walker seems to be placing Appellant's claims of ineffective assistance of counsel under a blanket review by stating all the remaining evidence, including Appellant's "confessions" are enough to sustain a conviction. She fails to recognize that if Appellant's allegations of ineffective assistance of counsel claims are true, then there would be no remaining evidence to sustain a conviction on. It would all have been rendered inadmissible!

For example, Judge Walker never made a finding whether Appellant's counsel failed to bring the second trial court's attention to the erroneous conclusion made by the prior panel of this Court that no objections had been made on the first two "confessions," or whether objections had actually been made, and, if there had been objections, whether the remaining "confessions" would have been allowed at the second trial.

Judge Walker did not allow the amendment of Appellant's petition even though the state had not been required to answer the original petition. Appellant should freely have been given permission to amend his petition because justice required it. None of the contentions Appellant wanted to amend his petition with had ever been presented with the assistance of counsel and no omnibus habeas corpus hearing was held on the contentions.

Judge Walker did not make the factual finding whether counsel did or did not present the same witness at the second trial that was presented at the first trial in relation to the flatware presented as evidence. Appellant's claim is that if counsel had presented the same witness and testimony, the flatware would have been discounted as being inculpatory.

Your Appellant *was* convicted in 1984 and 1990, between the years 1979 and 1999. Your Appellant's Zain I issues *were* previously and finally adjudicated. *Syl. Pt. 6*, Id. Judge Walker *did not* appoint counsel and *did not* grant your Appellant a full habeas corpus hearing. *Syl. Pt. 4*, Id. Therefore, she *did not* review the potential serology evidence with searching and painstaking scrutiny. Judge Walker *did not* draft a comprehensive order which includes detailed findings as to the truth or falsity of the potential evidence. In short, she *did not do anything* as required by the rulings in *Zain III*.

Neither did Judge Walker consider the additional contentions by Appellant in his Motion To Amend. None of those contentions were subject to the doctrine of *res judicata* due to the fact no omnibus habeas corpus hearing was held in Appellant's *Zain I* proceedings and no Losh checklist of potential grounds was submitted by Appellant. Judge Walker merely denied Appellant's motion to amend by stating the issues had previously been decided. She is clearly erroneous.

IV. POINTS AND AUTHORITIES RELIED ON

*Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 74 L.Ed. 1314 (1935); "He may prosecute with earnestness and vigor -- indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much her duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

*Call v. McKenzie*, 220 S.E.2d 665 (W.Va. 1975); "A knowing and intelligent waiver of a constitutional right can only occur on record."

*Cardwell v. Taylor*, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983); [Habeas] relief could be granted if statements were involuntary and therefore obtained in violation of the Fifth Amendment.

*Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1995); "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert the circuit court to the nature of the claimed defect."

- 11 -

*Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1975); Probable cause must first exist [for an intrusive extraction of blood] because the guidelines and standards relating to search and seizure under the Fourth Amendment.

*Daniel v. Legursky*, 195 W.Va. 314, 320 S.E.2d 416 (1995); "An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."

*DiPaola v. Riddle,* 581 F.2d 1111 (4th Cir. 1978); A trial judge should have the first opportunity to rule upon objections to evidence, and the judge's ruling should be made at the time the evidence is offered or even in advance of trial; ordinarily, a party should not be permitted to stand silently by and later to contest the admissibility of crucial evidence only after the fact-finding has gone against them; counsel is required to assert their objection(s) in a timely fashion, but considerations of timeliness do not require a recitation of facts that are unknown to counsel and their client and they are not chargeable by law with knowledge of them.

*Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978); Appellant carries both burdens of pleading and proving the facts and the reasons why he did not receive an opportunity for full and fair litigation.

*Duncan v. Louisiana*, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968); "[T]he accused shall enjoy the right to trial by an impartial jury."

*Durley v. Mayo*, 351 U.S. 277, 100 L.Ed. 1178, 76 S.Ct. 806 (1956); "It is well settled that to obtain a conviction by the use of testimony known by the prosecution to be perjured offends due process."

*Earp v. Vanderpool*, 160 W.Va. 113, 232 S.E.2d 513 (1976); The purpose of requiring a specific objection is to bring into focus the precise nature of the alleged errors so the trial court is afforded an opportunity to correct them.

*Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972); "In West Virginia, there is a rebuttable presumption petitions in habeas corpus proceedings knowingly and intelligently waive issues and/or contentions in prior proceedings.

*Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984); "Waiver is deemed to occur 'when the petitioner could have advanced, but intelligently and knowingly failed to advance,' a contention or ground for relief in a prior proceeding, and the failure to

assert available claims at such time gives rise to a rebuttable
presumption of a knowing and intelligent waiver of such claims."

*In The Matter of an Investigation of the W.Va. State Police Crime
Lab., Serology Div.*, 190 W.Va. 321, 438 S.E.2d 501 (1993); Where
improper evidence of a nonconstitutional nature is introduced by
the State in a criminal trial, the test to determine if the error
is harmless is: (1) the inadmissible evidence must be removed
from the State's case and a determination made as to whether the
remaining evidence is sufficient to convince impartial minds of
the defendant's guilt beyond a reasonable doubt; (2) if the
remaining evidence is found to be insufficient, the error is not
harmless; (3) if the remaining evidence is sufficient to support
the conviction, an analysis must then be made to determine
whether the error had any prejudicial effect on the jury.

*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461
(1938); A knowing and intelligent waiver of a constitutional
right can only occur on record.

*Konchesky v. S.J. Groves & Sons Co. Inc.*, 148 W.Va. 411, 135
S.E.2d 299 (1964); "Rule 46 of the West Virginia Rules of Civil
Procedure, which provides that in lieu of a formal exception it
is sufficient if a party against whom a ruling or order is made
opposes the action taken by the court at the time it is made and
indicates the action which he desires, or, if such party did not
have an opportunity to object at the time any ruling or order was
made by the trial court on a motion of the opposing party, no
objection or exception is required and an appellate court may
consider the alleged error even though no formal objection or
exception was made or taken."

*Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981); "An
omnibus habeas corpus hearing as contemplated in W.Va. Code
§53-4A-1 et seq. (1967) occurs when; (1) an applicant for habeas
corpus is represented by counsel or appears pro se having
knowingly and intelligently waived his right to counsel; (2) the
trial court inquires into all the standard grounds for habeas
relief; (3) a knowing and intelligent waiver of those grounds
not asserted is made by applicant upon advice of counsel unless
he knowingly and intelligently waived his right to counsel; (4)
the trial court drafts a comprehensive order including findings
on the merits of the issues addressed and a notation that the
defendant was advised concerning his obligation to raise all
grounds for post-conviction relief in one proceeding."

*McClure v. Trent*, 202 W.Va. 338, 504 S.E.2d 165 (1998); Any
issues not presented in a "Special Zain" habeas should be filed
in a new petition for writ of habeas corpus.

*Nazelrod v. Hun*, 199 W.Va. 582, 486 S.E.2d 322 (1997); "An
examination of the ineffective assistance of counsel claim
requires an examination of facts not developed in the appellant's
transcript. For instance, the advice that trial counsel gave, or

- 13 -

failed to give the appellant, is not in the trial transcript.
Similarly, why counsel failed to object to evidence, or what his
specific trial strategy was, does not appear in the record."

*Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973);  "A court
having jurisdiction over habeas corpus proceedings may deny a
petition for writ of habeas corpus without a hearing and without
appointing counsel for the petition if the petition, exhibits,
affidavits or other documentary evidence filed therewith show to
such court's satisfaction that the petitioner is entitled to no
relief.

*Phares v. Brooks*, 214 W.Va. 442, 590 S.E.2d 370 (2003);  There
are narrowly configured exceptions to the law of the case
doctrine which would allow a lower court to depart from a mandate
of [West Virginia Supreme] Court."  Those exceptions include:
(1)  The  evidence  at  a  subsequent  trial  is  substantially
different;  (2) there has been an intervening change of law by a
controlling authority; and (3) the earlier decision is clearly
erroneous and would work a manifest injustice.  *U.S. v. Matthews*,
312 F.3d 652 (5th Cir. 2002).

*Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183
(1952);  Due process of law precludes convictions brought about
by methods which offend a sense of justice.  "It would be a
stultification  of  the  responsibility  which  the  course  of
constitutional history has cast upon this Court to hold that in
order to convict a man the police cannot extract by force what is
in his mind but can extract what is in his [body]."

*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d
903 (1966);  [A]ll compelled blood tests are seizures subject to
the reasonableness requirement of the Fourth Amendment to the
United States Constitution."

*SER Frazier & Oxley L.C. v. Cummings*, 591 S.E.2d 728 (2003);
"The [law of the case] doctrine is a salutary rule of policy and
practice,  grounded  in  important  considerations  related  to
stability  in  the  decision  making  process,  predictability  of
results, proper working relationships between trial and appellate
courts,  and  judicial  economy."   "Appellate  remands  are
characterized as general or limited.  A general remand broadly
remands the case and 'when a cause is broadly remanded for a new
trial all of the issues are opened anew as if there had been no
trial, and the parties have a right to amend their pleadings as
necessary.'  A limited remand, however, 'prohibits relitigation
of some issues on remand, or directs that only some expressly
severed issues or causes may still be litigated.'  Under a
limited  remand,  'the  court  on  remand  is  precluded  from
considering other issues, or new matters, affecting the cause.'
In other words, 'when the further proceedings are specified in
the mandate, the district court is limited to holding such as are
directed.'  When the remand is general, however, the district
court is free to decide anything not foreclosed by the mandate."

- 14 -

*SER Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975); "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong."

*SER Vernatter v. Warden*, 207 W.Va. 11, 528 S.E.2d 207 (1999); "An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."
*State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979);   Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is:  (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt;   (2) if the remaining evidence is found to be insufficient, the error is not harmless;  (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

*State v. Boyd*, 233 S.E.2d 710 (W.Va. 1977);   "The crime of which this defendant is accused is so revolting that it is difficult for the average jury to give the one accused the benefit of a reasonable doubt.   Its very nature should have prompted the prosecuting attorney to exercise the highest degree of decorum in the conduct of the trial."

*State v. Bradford*, 199 W.Va. 338, 484 S.E.2d 221 (1997);   It is not necessary in West Virginia for lawyers to make running objections to evidentiary rulings by the trial court because the West Virginia Supreme Court recognizes the continuing objection.

*State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995);   Because the defendant filed a Motion In Limine, seeking to bar the state from calling his wife as a witness, approximately two months in advance of trial, and that he merely cited W.Va. Code §57-3-3, it met the specificity requirement because that statute dealt only with one subject.

*State v. Critzer*, 280 S.E.2d 288 (W.Va. 1981);   "A prosecuting attorney has a duty not to make statements concerning facts not in evidence or not inferable from the evidence."

*State v. Ellsworth, J.R.*, 331 S.E.2d 503 (1985);   "[W]hen a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate."

*State v. Humphrey*, 351 S.E.2d 613 (1986);   "[T]rial error not raised in the trial court will not be addressed on appeal."

*State v. Kanney*, 169 W.Va. 764, 289 S.E.2d 485 (1982); A party does not waive an objection once made and overruled by the failure to renew the objection each time the same or similar evidence is introduced.

*State v. Noe*, 230 S.E.2d 826 (W.Va. 1976); Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Nuckolls*, 273 S.E.2d 87 (W.Va. 1980); Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Starcher*, 282 S.E.2d 877 (W.Va. 1981); Taken as a whole, the state's remarks in closing...infused the entire trial process with so a fundamental unfairness as to deprive Appellant the guarantees of a fair trial.

*State v. Taylor*, 130 W.Va. 74, 42 S.E.2d 549 (1947); A party does not waive an objection once made and overruled by the failure to renew the objection each time the same or similar evidence is introduced.

*State v. Walker*, 207 W.Va. 415, 533 S.E.2d 48 (2000); Defendant fairly presented the matter to the trial court and obtained a definitive ruling rendering the issue properly preserved for appeal.

*Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Neither state nor federal prisoners could collaterally attack state convictions on grounds that illegal evidence was admitted at trial where the "[S]tate has provided an opportunity for full and fair litigation of a Fourth Amendment claim."

*Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.C. 2052 (1984): Two-part test of effective assistance of defense counsel held (1) reasonably effective assistance and (2) reasonable probability of different result with effective assistance. "Counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." "The court must...determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance." "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are vitually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations [of the law] or to make a reasonable decision that makes particular investigations unnecessary."

*Tolley v. Carboline Co.*, 617 S.E.2d 508 (2005);  The law of the case doctrine generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or reexamined in a second appeal.

*United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979);  The exclusionary rule has primarily rested on the judgment that the importance of deterring police conduct that may invade the constitutional rights of individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial.

*United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002);  There are narrowly configured exceptions to the law of the case doctrine which would allow a lower court to depart from a mandate of [West Virginia Supreme] Court."  Those exceptions include: (1) The evidence at a subsequent trial is substantially different;  (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice.

*United States v. Weatherless*, 734 F.2d 179 (4th Cir. 1984);  To justify the granting of a mistrial or new trial, the misconduct of the prosecutor must be so egregious as to render ineffectual the type of curative measure employed.

*Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997);  Circuit court, in denying habeas petition, must make specific findings of facts and conclusions of law.

*Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963);  Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal trial against the victim of the illegal search and seizure.  The rule's prohibition applies to such direct evidence as well as to "fruit of the poisonous tree[.]"

U.S. Constitution's Fourth, Fifth, Sixth, & Fourteenth Amendments

W.Va. Constitution Art. III, §§ 3, 6, 10 & 14

W.Va. Code §§ 49-5-8, 49-5-8(d), 53-4A-1 *et seq.*

Rules 12, W.Va.R.Cr.P.;  Requires that objections and motions to suppress must be raised prior to trial unless the grounds are not known to the defendant prior to trial.  W.Va.R.Cr.P. 12(b)(3).

Rule 103 W.Va.R.E.; Requires that a meaningful objection be made to the trial court.  In addition to specificity, Rule 103(a)(1) has a timeliness requirement for objections.  To be timely under the rule, a protest should be registered as soon as the defect becomes apparent.  W.Va.R.E. 103(a)(1)

## V. DISCUSSION OF LAW

This appeal may deviate somewhat from those this Court usually reviews. Instead of putting forth legal arguments, which have been presented by Petitioner *ad infinitum*, to no avail, this appeal will be presented on a personal, heart felt level, begging for just an opportunity to present the colorable claims herein to the circuit court with the assistance of counsel.

This so called prison writ writer and/or "jailhouse lawyer" cannot understand why the state of West Virginia is afraid to give the petitioner named herein the Due Process to which he is entitled, and which virtually everyone else similarly situated in this state receives. Why has Petitioner not been permitted to present *all* his claims together at one time with the assistance of counsel? If Petitioner is given a chance to develop and raise all his claims in one proceeding with the effective assistance of a trained professional, instead of being reduced to relying on this woefully inadequate, uneducated, neophyte prisoner assistant, then his claims will undoubtedly demonstrate Petitioner's entitlement to habeas corpus relief. This writer is tired of beating his head against the immovable wall of a circuit court steadfast in it's predilection to summarily denying and dismissing Petitioner's habeas corpus claims. Instead of relying on presenting this Court with the same old worn out legal arguments and comments, a personal discussion follows. This writer stands and relies on the former petition on appeal, West Virginia Supreme Court No. **061721**, which appealed the Kanawha County Circuit Court's summary dismissal and denial of Petitioner's habeas corpus claims, in Kanawha County Case No. 05-MISC-298, and the Points And Authorities section of this petition pertains to the legal arguments presented therein. This writer can do no better than that, or what has been filed to date. He would respectfully request that it be read in conjunction with this "petition."

At first glance, it would appear that Petitioner *has* received ample review of his case. After all, there are three (3) decisions by this Court. However, a closer examination of the

totality of the circumstances in the case reveals that, due to improper actions taken by several state actors, that is exactly what all the previous rulings are, *appearances* of Due Process, a chimera of meaningful appellate review that leaves this innocent person doomed to a life behind bars for the remainder of his life without a *meaningful* stamp of appellate approval.

No one is placing blame on this tribunal for not getting it right.   No, the fault lies elsewhere; in the two State Police Troopers who illegally seized Petitioner's blood and took it to Fred Zain, the notorious liar and thief of innocent men's lives, the same two troopers who beat a confession out of the young defendant; two totally different troopers who, to support the previous two troopers' story of obtaining a voluntary confession, also falsely stated Petitioner confessed to them, though they did not feel it necessary to record it; former counsel for failing in their duty to effectively represent Petitioner, and on down to the present circuit court judges who refuse to abide by the mandate of this court to appoint counsel and conduct a full evidentiary hearing.

The full story, with factual development, has never come before this Court to allow it to conduct meaningful appellate review of Petitioner's claims on habeas corpus. A short synopsis of the factual, and, thus, legal, assertions by Petitioner that has never been ruled on by *any* court are:

1.     Petitioner's blood, contrary to the state's assertions were in the possession of Fred Zain in January, 1980, as evidenced by the January 30, 1980 "Blood Grouping Table" discovered in Petitioner's case during proceedings of the Zain I petition;

2.   That Fred Zain used those samples to manufacture evidence to name Petitioner as a suspect in the Reggettz murders;

3.   That all evidence flowing from the illegal blood samples planted by Fred Zain are fruits of the poisonous tree and should have been excluded as evidence;

4.   Petitioner's trial counsel were ineffective for failing
     to properly litigate issues pertaining to this Court's
     rulings in its second decision in the criminal case,
     *Moss II*, and/or for failing to object to the state
     failure to promptly present Petitioner to a neutral
     judicial officer prior to recording his "confessions";

     This writer can think of nothing further to add, other
than if Petitioner is not allowed to develop his claims with
the assistance of counsel then a miscarriage of justice will
have occurred.   The following is an appeal of Petitioner in
his own words.

     For almost thirty (30) years someone else has been
representing me in my fight for justice.  Even now my *pro se*
petitions has been with the help of inmates that I have
served time with for many years.   It has been my lack of
knowledge in putting a petition together that has hindered me
in fighting for justice.  If it wasn't for these skilled
inmates I wouldn't have understood the decisions that has
been made in my case.  If it wasn't for this help many issues
would have been over looked.  Now that I am challenging them
for some reason the Kanawha Circuit Court and this Court has
refused to review and appoint legal representation like other
prisoners got.  I don't understand why.

     I chose to write this along with my appeal of Judge
Jennifer Bailey final order denying my case.  I feel, in
almost thirty years and my final appeal in the WV Court, I
thought I would beg one more time for fairness and Due
Process.  Yes, twice I have been tried and twice I was
wrongly convicted of a crime I did not do.  From the first
day of my first trial the prosecution lied, with Trooper Fred
Zain and WV State Police.  The day I met WV Troopers they
lied.  That was when they took a sample of my blood and the
next lie was them (WV Troopers) saying they returned that
sample of blood, which they knew was illegal to have.

     The foundation of the states case against me is founded
on the illegal blood sample that was taken from me in January

- 20 -

1980. This is where the case began. I believe four WV State Troopers knew what happen to that illegal sample of blood and all four lied from day one. They know what they was going to do before they left WV. What other reason would their be for them to bring a stick pin and cotton swab into a Juvenile Detention Home?

Later when Murphy/Zain reports and records was turned over to the prosecutor's office, they in turn should have disclosed that information to my attorneys. They didn't disclose all blood reports, until the investigation of the WV Crime Lab, Serology Division, over ten years after the illegal sample was taken. The only way my name would appear on any work sheet from January 1980 would be of the illegal blood sample that was taken in January 1980, by WV Troopers. That report was very important information to my case. This issue has never been developed.

How can I prove my innocence or get a fair chance at justice when the two chief investigating officers and the states top serologist (at that time) lied about the scientific work that was supposedly done?

It was never proven that the blood sample was given back to me or anyone representing me, in Ohio or WV. I read in this courts July 1982 opinion: "(170 W.Va. 546) When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. **This apparently was done.** Subsequently, in April 1980, the investigating authorities again traveled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders." The blood sample wasn't given back and I don't know how this court come up with that conclusion because there is nothing in my files or any court record that the

- 21 -

illegal blood sample from January 1980 was returned to me or an attorney representing me. My own habeas attorney adopted that lie or he was just trusting the court to write the truth, the way I have been for almost thirty years.

When the two chief investigating officers went back to Cleveland in April 1980 they went with an attorney. After taking my blood illegally in January 1980, they needed to make everything look legal, therefor they needed representation. I was the only one throughout the whole process of drawing my blood who wasn't represented and I was only a juvenile. Twice blood was taken and twice I was at the mercy of the State of WV. What the WV State Police didn't expect, a major investigation would later be launch many years later into the WV State Police Crime Lab, Serology Division, Trooper Zain and other serologist that worked with him.

Your Honors, from day one, way back in January 1980, the WV State Police lied and this court know, to tell one lie, you're going to tell more to support the first one. When the two chief investigating officers of a triple homicide, along with two top serologist lie about the evidence, to me their credibility is no good but for some reason it's not looked upon that way, with this court. In all the cases Robert Murphy and Fred Zain was involved in, they done more in mine and because of there involvement I deserve a complete review of the issues pertaining to all the serology evidence. Fred Zain was trained by Robert Murphy, not the other way around. Trooper Robert Murphy was the true puppet master and then mysteriously quit the WV State Police or did he quit? These are issues I'm being denied to developed. This court saw something more than what Zain done and I'm assuming that's _____ why Zain III was created. According to this court's last opinion in Zain III, I'm entitled to a court appoint attorney and a full review of my case because of the work Robert Murphy, the serologist other than Zain done in my case. I

- 22 -

ask this court for nothing more than what others has received, Due Process and a fair review of my case.

Your Honors, December 1988 this court reversed my conviction and being that I was granted a new trial, I thought I could challenge all the evidence that the prosecutor intended to use against me and that being the confessions. Like my first trial, my attorney's objected to the two October 1980 confessions, in my second trial. The first two confessions was objected to before the third one. During a suppression hearing that was about three days long in my first trial, is when the objection was made. The two October confessions was objected to because it was the only time I testified in my first trial, during a suppression hearing. This court said in it's opinion December 1988, "Three confessions, were obtained prior to our holding in Ellsworth J.R., however, and our review of the record reveals that a prompt presentment objection was preserved before the trial court only with respect to the third confession. Since the issue was not preserved on the first two confessions, the decision in Ellsworth J.R. will not be applied retroactively to exclude those confessions, but will only be applied retroactively to exclude the third confession obtained from the appellant on October 30, 1980. Accordingly, the appellant's third confession is hereby declared invalid and inadmissible." Again, why was I held to such a high standard to understand all the rules of law and the constitution of Ohio, WV and the United States, at seventeen and eighteen years old. To be personal, which I believe it has become, a personal issue as to when a child is able to understand the rules of law as you as an adult understand them. I doubt either of you was let out the house when you was seventeen or eighteen years of age. If you where at either age it was to further your education to do what it is you're doing right now. In no way am I trying to insult or embarrass this court with this statement. I just want this court to honestly think about what they would have done, if they where innocent

- 23 -

of a crime and they came face to face with two Troopers asking you if he committed or had any knowledge of a triple murder and if you would give a sample of blood. Like me, you would give that blood sample because you're innocent and have nothing to hide. I gave blood because I am innocent and had nothing to hide.

As to the confessions, like me, you would have denied committing the crimes first because you're innocent, second request to see your attorney. Especially when you found out the same two troopers did something wrong when they took your blood, you wouldn't trust these guys. And if they got a volunteered confession, like they lied and said they did in this case, they would have taken me before a judge, magistrate or referee, like the law require them to do, like they done with Reggettz. It wasn't these two Troopers first day on the job, and it don't take a genius to figure out what they was going to do when I was placed in the police car. Taking me to Parkersburg, WV wasn't a simple trip on the way or when I got there, it physically hurt very much.

I know this is not normal for a petitioner to petition the court like this in trying to get his case reviewed and also it's not normal for the same court to denied a petitioner a review when the court issued a mandated order, ordering lower courts to appoint an attorney if any serologist other than Fred Zain was involved in his or her case. Robert Murphy and Fred Zain done more in my case than any of the cases that has petitioned the lower court or this courts for review in Zain I, II and III.

I, John Moss, III, ask this court for no more than what it has given all who has petitioned the court in seeking Due Process. I just want the representation this court promised me, so I can resolve issues that has never been addressed. It is my hope and prayer this court send my case back for full review of all issues. Thank you and God Bless!

- 24 -

## VI. RELIEF PRAYED FOR

Petitioner prays now and forevermore that this case be remanded to the Circuit Court of Kanawha County for factual development of Petitioner's contentions by appointing counsel to draft and file a petition for writ of habeas corpus on behalf of Petitioner.

Respectfully submitted by:

John Moss, III DOC# 13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

On this, the 28th day of July, 2009

Petitioner proceeding *pro se*.

- 25 -

CERTIFICATE OF SERVICE

I, John Moss, III, *pro se* Appellant, do hereby certify that copies of the foregoing petition for appeal, designation of the record on appeal, and *Supreme Court of Appeals of West Virginia Docketing Statement* has been served upon counsel for the respondent by handing true copies thereof to prison officials this, the 28th day of July, 2009, for mailing in the regular course of the United States mail, postage prepaid, in a correctly addressed and stamped envelope, addressed to:

Mark Plants, Prosecutor
Kanawha County Circuit Court
700 Washington Street, East
Suite 400
Charleston, WV  25301


John Moss, III, *pro se* Appellant

**MOSS v. BALLARD**
**CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 18**

STATE OF WEST VIRGINIA

At a Regular Term of the Supreme Court of Appeals continued and held at Charleston, Kanawha County, on the 13th of September, 2007, the following order was made and entered:

State of West Virginia ex rel. John Moss, III,
Petitioner

vs.) No. 072486

Thomas McBride, II, Warden, Respondent

On a former day, to-wit, July 31, 2007, came the petitioner, John Moss, III, pro se, and presented to the Court his petition praying for a writ of habeas corpus ad subjiciendum to be directed to the respondent, Thomas McBride, II, Warden, commanding him to appear before this Court and show cause, if any he can, why he detains and restrains said petitioner of and from his liberty.

Upon consideration whereof, the Court is of opinion that a rule should not be awarded, and the writ prayed for by the petitioner is hereby refused.

A True Copy

Attest: _____
Clerk, Supreme Court of Appeals

PETITION UNDER W.VA. CODE § 53-4A-1 FOR WRIT OF HABEAS CORPUS

| STATE OF WEST VIRGINIA | County Kanawha | |
|---|---|---|
| Name John Moss, III | Prisoner No. 13734 | Case No. 82-F-221 |

Place of Confinement

Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185

772486

DO NOT REMOVE
FILE COPY

FILE COPY

Name of Petitioner (include name under which convicted)     Name of Respondent (authorized person having custody of petitioner)

John Moss, III          v.          Thomas L. McBride, Warden

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  Kanawha County Circuit

   Court, Charleston, WV

2. Date of judgment of conviction  First Trial -- 24 April, 1984; Second Trial -- 26 April, 1990

3. Length of sentence  Life without possibility of parole -- Three Counts

4. Nature of offense involved (all counts)  First degree murder -- Three Counts

   FILED

5. What was your plea? (Check one)
   (a)  Not guilty  X
   (b)  Guilty  ☐
   (c)  Nolo Contendere  ☐

   JUL 31 2007

   RORY L. PERRY II, CLERK
   SUPREME COURT OF APPEALS
   OF WEST VIRIGINIA

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

6. If you pleaded not guilty, what kind of trial did you have?  (Check one)
   (a)  Jury  X
   (b)  Judge only  ☐

7. Did you testify at the trial?
   Yes  ☐     No  X

8. Did you file a direct appeal from the judgment of conviction in the Supreme Court of Appeals?
   Yes  X     No  ☐

- 2 -

9.  If you did appeal, answer the following:

    (a)   Date of filing   First Trial - Unknown; Second Trial - 14 January, 1991;  23 February, 1991

    (b)   Grounds raised   See attached additional pages 3a-3c

    (c)   Was the petition granted   X   or refused   X ? First trial was reversed; Second trial refused.

    (d)   If refused, what was date of refusal?   12 March, 1991

    (e)   If granted, give date and type of result and citation if known.   First appeal: *State v. Moss,* 180 W.Va. 363

    376 S.E.2d 569 (1988)

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

    Yes   X   No   ☐

11. If your answer to 10 was "yes," give the following information:

    (a)   (1)   Name of court   Kanawha County Circuit Court -- U.S. & W.V. Supreme Courts

           (2)   Nature of proceeding   "Special Zain" Habeas -- Writ of *Certiorari* on denial of collateral

                appeal; Application for state post-conviction relief -- See attached pages 3a-3c

           (3)   Grounds raised   Petitioner's incarceration is illegal and in violation of his constitutional

                rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States

                Constitution and Article III, Sections 1, 5, 10 and 14 of the West Virginia Constitution,

                based upon the following, To-Wit:  1. The admission of testimony and test results

                performed by Trooper Fred Salem Zain. See attached additional pages 3a-3c

           (4)   Did you receive an evidentiary hearing on your petition, application or motion?

                Yes   ☐   No   ☐   Not a full and fair hearing.

           (5)   Result   Denied and dismissed

           (6)   Date of result   31 July, 2003

    (b)   As to any second petition, application or motion give the same information:

           (1)   Name of court   Same

            (2)   Nature of proceeding   Habeas corpus

- 3 -

## Attached Additional Page 3a

(Answer to Question 9(b)) (First Appeal)

A.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED INTO EVIDENCE JOHN MOSS'S CONFESSIONS TO THE REGGETTZ MURDERS.

    1.  The Confessions Were Obtained Through Exploitation Of Custody Obtained Through A Statutorily Defective Transfer Pursuant To The Interstate Agreement On Detainers.

    2.  The Confessions Were Obtained As The Result Of The Police's Intentional Failure To Comply With The Juvenile Prompt Presentment Statute, *W.Va. Code*, 49-5-8(d).

    3.  The Confessions Were Obtained Through Coerced Waiver Of Constitutional Rights.

B.  THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE STATE'S INTRODUCTION INTO THE TRIAL OF THE RESULTS OF POLYGRAPH EXAMINATIONS GIVEN TO A WITNESS, PAUL REGGETTZ.

C.  THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE REFUSAL OF THE TRIAL COURT TO POLL THE JURY AS TO POSSIBLE PREJUDICE CAUSED BY PUBLIC RADIO BROADCAST DURING WHICH THE PROSECUTOR EXPRESSED HIS PERSONAL OPINION OF THE GUILT OF JOHN MOSS.

D.  IMPROPER CLOSING ARGUMENT BY THE PROSECUTOR, UNCORRECTED BY THE TRIAL COURT, DENIED THE DEFENDANT A FAIR TRIAL.

    1.  Appeals To The Passions And Prejudices Of The Jury.

    2.  Expressions Of Personal Opinion And Beliefs.

    3.  Misstatement Of The Evidence.

    4.  Argument Concerning Consequences Of Jury Verdict.

    5.  Elevated Standard Of Fairness And Impartiality.

    6.  Contemporaneous Objection Requirement.

    7.  Responsibility Of Trial Court.

(Second appeal.) (Counsel's submitted petition.)

A.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO GRANT DEFENDANT'S MOTION FOR A MISTRIAL DUE TO THE PROSECUTRIX'S PREJUDICIAL AND INFLAMMATORY STATEMENT DURING HER CLOSING ARGUMENT.

Attached Additional Page 3b

B.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO RENDER INADMISSIBLE THE TWO CONFESSIONS OF THE JUVENILE DEFENDANT, JOHN MOSS, WHICH WERE OBTAINED AS A RESULT OF UNJUSTIFIED DELAY AND WERE OBTAINED PRIOR TO PRESENTMENT TO A NEUTRAL JUDICIAL OFFICER.

C(1).  THE TRIAL COURT ERRED IN RULING THAT THE STATE HAD MET THE BURDEN OF PROOF IMPOSED UPON IT TO ESTABLISH THAT THE ELECTROPHORESIS MULTI-SYSTEM TECHNIQUE ENJOYS GENERAL ACCEPTANCE IN THE SCIENTIFIC COMMUNITY.

C(2).  THE TRIAL COURT ERRED IN RULING THAT THE STATE HAD ESTABLISHED A PROPER FOUNDATION FOR THE INTRODUCTION OF ELECTROPHORESIS MULTI-SYSTEM BLOOD STAIN TEST RESULTS, THEREBY RENDERING THESE RESULTS INADMISSIBLE AS A MATTER OF LAW.

(Supplemental *pro se* petition.)

1.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED PETITIONER'S CONFESSIONS OF THE REGGETTZ MURDERS INTO EVIDENCE.

2.    IMPROPER CLOSING ARGUMENTS BY THE PROSECUTION DENIED THE PETITIONER A FAIR TRIAL.

3.    THE IMPROPER ADMISSION OF SEROLOGY TEST RESULTS DENIED THE PETITIONER A FAIR TRIAL.

4.    PETITIONER WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL AND EQUAL PROTECTION OF THE LAW.

(Answer to Question 11(a)(2)) (cont.)

Collateral appeal of the denial of habeas relief;  Renewed Investigation (Zain III) petition for writ of habeas corpus;  Collateral appeal of the denial of habeas relief on Renewed Investigation (Zain III) petition.

(Response to question 11(a)(3)) (cont.)

Whose Credentials, Credibility, And Test Results Have All Been Found By The West Virginia Supreme Court Of Appeals To Be Inherently Unreliable And A Violation Of A Criminal Defendant's Constitutional Rights.

2.    The Presentation By The State Of Incorrect, False, Misleading, Overstated, And Unscientific Evidence.

# Attached Additional Page 3c

3.    The Admission Of The Alleged Confessions Given By Petitioner, Which Resulted From A Violation Of His Constitutional Rights. Although The Issues Regarding The Confessions Have Been Extensively Litigated In Many Hearings, Petitioner Reserves The Right To Develop New Information And New Arguments With Regard To The Alleged Confessions That Were Previously Unavailable.

(Counsel's supplemental habeas corpus brief.)

The State Failed To Preserve Evidence And The Results Of Testing Of Evidence.

(3)     Grounds raised   _See attached additional page no. 4a._

(4)     Did you receive an evidentiary hearing on your petition, application or motion?

Yes  ☐     No     X

(5)     Result   _Summarily  denied and dismissed_

(6)     Date of result   _7 February, 2006_

(c)     Did you appeal to the highest court having jurisdiction the result of action taken on any petition, application or motion?

(1)     First petition, etc.          Yes  X     No  ☐

(2)     Second petition, etc.      Yes  X     No  ☐

(d)     If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_N/A_

12.   State *concisely* every ground on which you claim that you are being held unlawfully.  Summarize *briefly* the *facts* supporting each
ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.

**CAUTION:**       In order to proceed in the circuit court, you must state grounds that have **NOT** been previously and finally
adjudicated or waived.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds
at a later date.

       For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings.
Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise any grounds which you may
have other than those listed.  However, *you should raise in this petition all available grounds* (relating to this conviction) on which
you base your allegations that you are being held in custody unlawfully.
       Do not check any of these listed grounds.  If you select one or more of these grounds for relief, you must allege facts.  The
petition will be returned to you if you merely check (a) through (j) or any one of these grounds.
(a)     Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the
        nature of the charge and the consequences of the plea.
(b)     Conviction obtained by use of coerced confession.
(c)     Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d)     Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e)     Conviction obtained by a violation of the privilege against self-incrimination.
(f)     Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to
        the defendant.
(g)     Conviction obtained by a violation of the protection against double jeopardy.
(h)     Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i)     Denial of effective assistance of counsel.
(j)     Denial of right of appeal.

— 4 —

Attached Additional Page 4a

(Answer to question 11(b)(3)):

a.      The trial court abused its discretion and committed reversible error in ruling that the first two confessions were admissible under the "Law of the Case Doctrine."

b.      The factual determination by the West Virginia Supreme Court of Appeals that no prompt presentment objections were entered on the first two alleged confessions is clearly erroneous and works a manifest injustice.

c.      Petitioner was deprived of the Sixth Amendment's guarantee of the effective assistance of counsel.

d.      Petitioner did not receive a full and fair hearing on his motion and memorandum to suppress samples of blood, confession, and other physical evidence seized due to the improper tactics of Fred S. Zain and the West Virginia State Police Troopers and Crime Laboratory.

e.      Petitioner's Sixth Amendment right to a fair and impartial jury was contravened when the state knew, or should have known, of the false or misleading testimony and evidence presented by a state witness.

f.      The trial court abused its discretion and committed reversible error when it admitted Petitioner's blood samples, confessions, and all evidence incident thereto into evidence, when the samples of blood were obtained in violation of federal and state constitutional rights.

g.      Improper closing arguments by the prosecution denied Petitioner a fair trial.


        In addition to the second application for state post conviction relief filed, Petitioner, *pro se*, filed a third application pursuant to this Court's ruling in *In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division*, on or about 22 June, 2006. The circuit court summarily denied and dismissed the petition by order entered on or about 16 October, 2006. Petitioner filed his *pro se* appeal on the summary denial of his petition on or about 2 February, 2007. This Court refused to review the petition by order entered on or about 9 July, 2007. The contentions presented in the third application were:

1.      BLOOD TEST RESULTS AND REPORTS OF OFFERED SEROLOGY EVIDENCE WERE FALSIFIED OR WERE SUBSTANTIALLY INCORRECT.

2.      INEFFECTIVE ASSISTANCE OF COUNSEL.

A.  Ground one:   See attached additional pages 5a-5c

Supporting FACTS (state *briefly* without citing cases or law)   See attached additional pages 5a-5c

B.  Ground two:   See attached additional pages 5a-5c

Supporting FACTS (state *briefly* without citing cases or law)   See attached additional pages 5a-5c

C.  Ground three:   See attached additional pages 5a-5c

Supporting FACTS (state *briefly* without citing cases or law)   See attached additional pages 5a-5c

D.  Ground four:   See attached additional pages 5a-5c

- 5 -

Attached Additional Page 5a

(Responses to questions 12a thru 12i.)

1.  THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RULING THAT THE FIRST TWO CONFESSIONS WERE ADMISSIBLE UNDER THE "LAW OF THE CASE DOCTRINE."

    Petitioner's convictions and sentences resulting from his first trial was reversed by this Court due to improper remarks by the prosecuting attorney, results of polygraph examination entered into evidence, and prejudicial pre-trial publicity. Though not determinative of the decision in the first appeal, this Court also ruled upon Petitioner's issue of his confessions being inadmissible due to a lack of promptly presenting him to a neutral judicial officer. This Court ruled that, unlike the third confession, the first two confessions were properly admitted at the first trial because no objections were made upon the first two confessions.

    Prior to the second trial, defense attorneys objected to the admission of the first two confessions due to a lack of promptly presenting Petitioner before a neutral judicial officer. The trial court, however, ruled that it would allow the admission of the first two confessions into the second trial due to this Court's previous ruling being law of the case. This worked a manifest injustice in Petitioner's trial.

2.  THE FACTUAL DETERMINATION BY THE WEST VIRGINIA SUPREME COURT OF APPEALS THAT NO PROMPT PRESENTMENT OBJECTIONS WERE ENTERED ON THE FIRST TWO ALLEGED CONFESSIONS IS CLEARLY ERRONEOUS AND WORKS A MANIFEST INJUSTICE.

    (See above factual discussion.) In addition, defense attorneys at the first trial did object to the first two confessions. An extensive hearing was held on defense motions to suppress the first two confessions on or about 19, 20, 21 & 22 September, 1983. After the hearing, opposing parties submitted additional briefs on the hearing, and the trial court issued its ruling in a letter style order from the bench. Defense attorneys did not object to the third confession at that time because they were unaware, until the first day of trial, of the state's intention to use the third confession at trial.

3.  PETITIONER WAS DEPRIVED OF THE SIXTH AMENDMENT'S GUARANTEE OF THE EFFECTIVE ASSISTANCE OF COUNSEL:

    a.  Counsel Failed To Bring To The Trial And Appellate Court's Attention The Fact That The Two October 28, 1980, Confessions Were The Subject Of An Extensive Motion And Memorandum, Hearing, And Testimony And Was, In Fact, Objected To By Counsel Prior To The First Trial, Based On, *Inter Alia*, *W.Va. Code* §49-5-8(d).

    b.  If Trial Counsel, At The First Trial, Failed To Object To The West Virginia Authorities' Failure To Promptly Present The Juvenile Defendant To A Neutral Judicial Officer Prior To Taking Petitioner's Alleged Confessions.

    Appellate counsel from the first trial failed to request this Court rehear the first appeal and to inform the Court that objections were, indeed, entered on the first two confessions at the first trial. Second trial attorneys failed to bring to the trial court's attention the fact that objections had been made on the first two confessions at the first trial, and to brief the issue on appeal.

4.    PETITIONER DID NOT RECEIVE A FULL AND FAIR HEARING ON HIS MOTION
      AND MEMORANDUM TO SUPPRESS SAMPLES OF BLOOD, CONFESSION,
      AND OTHER PHYSICAL EVIDENCE SEIZED DUE TO THE IMPROPER TACTICS
      OF FRED S. ZAIN AND THE WEST VIRGINIA STATE POLICE TROOPERS AND
      CRIME LABORATORY.

      Troopers Robert Murphy and Fred Zain manufactured serology evidence against
Petitioner when they used an illegally obtained blood sample from Petitioner. Troopers
Murphy and Zain used the illegally obtained blood sample to plant it on certain items found at
the crime scene. The state did not provide evidence of the troopers' misdeeds, i.e., a blood
grouping table indicating the troopers had a sample of Petitioner's blood, in January, 1980, the
same date the illegal sample was extracted from Petitioner, prior to the extraction of the "legal"
sample being taken in April, 1980. Petitioner was not a serious suspect in the murders of the
Reggettz family until the manufactured evidence was divulged by the two troopers and alleged
to have come from items from the crime scene. This, ostensibly, placed Petitioner at the
crime scene.

5.    PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY
      WAS CONTRAVENED WHEN THE STATE KNEW, OR SHOULD HAVE KNOWN,
      OF THE FALSE OR MISLEADING TESTIMONY AND EVIDENCE PRESENTED BY
      A STATE WITNESS.

      The state's prosecutor is charged with turning over to defense, upon a request to do
so, any information gathered or known to investigating officers whether the prosecutor is told
of the discoverable information or not. The state did not divulge to Petitioner the falsified or
substantially incorrect serology evidence prior to or during trial.

6.    THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE
      ERROR WHEN IT ADMITTED PETITIONER'S BLOOD SAMPLES, CONFESSIONS
      AND ALL EVIDENCE INCIDENT THERETO INTO EVIDENCE, WHEN THE
      SAMPLES OF BLOOD WERE OBTAINED IN VIOLATION OF FEDERAL AND
      CONSTITUTIONAL RIGHTS.

      The samples of blood obtained from Petitioner were derived from him on two separate
occasions. On the first occasion, the police did not have a court order, warrant, or permission
from Petitioner's parents or counsel, even though Petitioner was a juvenile at the time. On the
second occasion a court order was issued by an Ohio court. On neither occasion was
counsel present with Petitioner and it was only after the blood samples were obtained that
Petitioner became a serious suspect in the homicides of the Reggettz family. In essence, the
results of the illegally obtained, and manufactured blood evidence, provided the authorities in
West Virginia the probable cause evidence which they previously lacked.
      The "confessions" are a direct result of the illegal search and seizures of Petitioner's
blood carried out by representatives of West Virginia on 30 January, and 22 April, 1980.

7.    IMPROPER CLOSING ARGUMENTS BY THE PROSECUTION DENIED THE
      PETITIONER A FAIR TRIAL.

      The prosecutor made comments that drew the jury's attention to the possibility of
special facts known only by the prosecutor that they, the jurors, were not privy to. Those
comments also attacked opposing counsel's strategy and/or presentation of Petitioner's case,
and on Petitioner's credibility and failure to testify.

## Attached Additional Page 5c

The prosecutor also made comments on uncharged crimes and his personal opinion when talking of Mrs. Reggettz's sanitary napkin and panties lying on the floor. The prosecutor improperly alluded to the differences in race between Petitioner and the victims.

8.    BLOOD TEST RESULTS AND REPORTS OF OFFERED SEROLOGY EVIDENCE WERE FALSIFIED OR WERE SUBSTANTIALLY INCORRECT.

9.    INEFFECTIVE ASSISTANCE OF COUNSEL.

16. Have you, or an attorney representing you, obtained a transcript of the criminal proceedings which resulted in the conviction under attack?

Yes   **X**    No   ☐

17. If your answer to 16 was "no," have you submitted an Appellate Transcript Request form for transcripts to the circuit court, a court reporter, or any other tribunal or individual?

Yes   ☐    No   ☐

18. If your answer to 17 was "yes," attach a copy, if available, of the Appellate Transcript Request form and provide the name of the court or person to whom it was submitted and the date of submission.

   (a)    Copy of request is attached    ☐

   (b)    Date    ☐

   (c)    Name   _____

19. Were you sentenced on more than one count of an indictment, or more than one indictment, in the same court and at the same time?

Yes   **X**    No   ☐

20. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes   ☐    No   **X**

If so, give name and location of court which imposed sentence to be served in the future:   **N/A** _____

_____

   (b)    Give date and length of the above sentence: _____

_____

   (c)    Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

      Yes   ☐    No   ☐

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____
                Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   <u>July 30, 2007</u>_____
                 (date)

_____
                Signature of Petitioner

– 7 –

DO NOT REMOVE
FILE COPY
FILE COPY

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

        Petitioner,

vs.

                                     Civil Action No. _____
                                     Underlying Proceedings CR-82-F-221

THOMAS McBRIDE, Warden,
Mount Olive Correctional Complex,

        Respondent.

FILED

JUL 3 1 2007

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRIGINIA

MEMORANDUM

## I. INTRODUCTION AND JURISDICTION

        Comes now the petitioner, John Moss, III, *pro se*, and moves this Honorable Court to issue an order that sets aside and voids Petitioner's three life sentences without mercy for three counts of first degree murder as they are in violation of the rights secured to this petitioner through the Constitutions of the United States and the State of West Virginia. This Court has jurisdiction to rule upon this Petition for Writ of Habeas Corpus Ad-Subjiciendum pursuant to the Constitution of West Virginia, *West Virginia Code*, Chapter 53, Article 4A, Section 1, *et seq.*, and the *West Virginia Rules of Appellate Procedure*.

        Other than a special "Zain" habeas, at which there was not a Losh list signed and/or executed, Petitioner has previously filed two other petitions for writ of habeas corpus in the circuit court of Kanawha County. The court summarily denied and dismissed those two petitions without appointing counsel and without holding an omnibus or evidentiary hearing.

        Additionally, this Court refused to review several of Petitioner's contentions herein that were previously presented on appeal in his 14 January, 1991, petition on appeal, as well as his 23 February, 1991, supplemental petition. Those contentions can be reiterated in this petition for writ of habeas corpus ad subjiciendum, whereas the refusal by this Court to review Petitioner's contentions of error on appeal was not an adjudication on the merits of said contentions. Therefore, the Court should not utilize the doctrine of *res judicata* to summarily dismiss the contentions as being previously and finally adjudicated.

This Court opined the following in *Smith v. Hedrick*, 181 W.Va. 394, 382 S.E.2d 588 (1989):

> This Court's rejection of a petition for appeal is not a decision on the merits precluding all future consideration of the issues raised therein, unless, as stated in Rule 7 of the West Virginia Rules of Appellate Procedure, such petition is rejected because the lower court's judgment or order is plainly right, in which case no other petition for appeal shall be permitted.

Petitioner avers his 1991 petitions on appeal were not rejected by this Court because the lower court's judgment was plainly right and, therefore, this Court should give careful consideration to his contentions.

## II. STATEMENT OF THE CASE

In December, 1979, a woman and her two children were found dead in their St. Albans, West Virginia home. Soon afterward, the deceased woman's husband, Paul Reggettz, became a suspect in the triple murders and actually confessed to the crimes. He was subsequently indicted by the January, 1980, term of the Kanawha County, West Virginia Grand Jury. The husband was held in custody for approximately eleven months, during which time his confession was ruled admissible into evidence as voluntarily given. Mr. Reggettz's trial was set for November 12, 1980.

Petitioner became involved in the case when Petitioner's uncle, who was in law enforcement at one time, offered his opinion that his nephew may know something about the crimes due to living in the neighborhood. As a result of the information offered by the uncle, in January, 1980, investigating authorities traveled to Cleveland, Ohio, to question Petitioner about the murders. At that time, Petitioner was housed in a juvenile detention center on an unrelated charge. Petitioner denied having any knowledge of the crimes. However, the two law enforcement personnel demanded that Petitioner provide them a blood sample, even though they had no warrant, no court order and had not discussed it with Petitioner's parents or Ohio court appointed counsel. The troopers directed him to prick his own finger and dribble blood on a cloth provided by the officers for that purpose. Petitioner complied and gave the Troopers what they demanded because he "had nothing to hide."

At the time of this first interrogation and relinquishment of physical evidence, Petitioner was only seventeen years old, a fact the two troopers were not uncognizant of. When Petitioner's Ohio counsel learned of the blood sample taken by the West Virginia authorities, he objected and petitioned an Ohio court for an order that the cloth on which the blood sample was deposited be returned to Petitioner. The Ohio court granted counsel's request and ordered that the blood soaked cloth be returned. However, it was never returned to Petitioner

- 2 -

and authorities cannot affirmatively demonstrate what became of the cloth or the blood samples smeared on it. Nor did they demonstrate that, if something was returned, was only part of it returned, what was on whatever was returned, e.g., no testing was conducted to determine if, whatever it was the two troopers avowed was returned, it contained Petitioner's blood sample he relinquished, animal blood, ink, or some other substance resembling blood.

In an opinion written by this Court on an appeal taken pretrial by Petitioner from a final order of the Circuit Court, Kanawha County, West Virginia, John Hey, C.J., transferring the juvenile Petitioner to adult jurisdiction, the Court stated that the blood soaked cloth was "apparently" [returned]; *In the Interest of John Moss, Jr.*, 295 S.E.2d 33, 36 (W.Va. 1982). However, it is unclear how the court reached this conclusion as the record does not support it (6/29/81 Juvenile Transfer Hearing Transcript). Nevertheless, in spite of Petitioner's assertions that the cloth was never returned to him and contrary to Petitioner's wishes, counsel adopted the state supreme court's erroneous postulation and failed to develop this erroneous fact in the lower proceedings. It is also noteworthy here that Judge Hey, who presided over the juvenile transfer proceedings and first trial, was forced to resign his position in disgrace when it was demonstrated that he was routinely inebriated while sitting on the bench.

In April 1980, the investigating authorities again traveled to Cleveland to obtain a blood sample from Petitioner pursuant to an order issued by an Ohio court. Based on the alleged analysis by West Virginia State Police Crime Laboratory Serologist, Fred Salem Zain, on 26 September, 1980, West Virginia filed a detainer against Petitioner, pursuant to W.Va. Code § 62-14-1 *et seq.*, requesting that a juvenile be held, based on a malicious wounding charge unrelated to the murders. Petitioner at this time was serving a term imposed by Ohio on unrelated charges.

On 28 October, 1980, ostensibly while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge although they were the chief investigating authorities in the Reggettz murders, a confession was coerced out of the seventeen-year-old boy. On that same date, a tape recorded confession was then made after Petitioner signed a Miranda waiver. (First and second confessions.) However, Petitioner was not brought before a juvenile referee, magistrate or judicial officer at that time to have the waiver explained to him. It is interesting to note that the adult suspect, Paul Reggettz, Sr., *was* promptly presented to a magistrate by the same troopers who traveled to Ohio to illegally extract Petitioner's blood and then on 28 October, 1980, wherein they obtained his "confessions." This is an indication that the actions by the West Virginia authorities were intentionally designed to intimidate and coerce the juvenile.

- 3 -

On 30 October, 1980, Petitioner was returned to Ohio by two different members of the West Virginia State Police, Troopers Woodyard and Allen. These two troopers also asserted Petitioner just all of a sudden wished to discuss further details of the crime which he had not previously told authorities. (Third confession.) It is clear from the evidence presented in this case that seldom, if ever, are investigations afforded such a reflective and considerate suspect as the four troopers who transported the forlorn juvenile encountered with Petitioner. Perhaps it was the two scenic car rides the troopers so graciously presented him with that induced him to make their jobs so easy as to voluntarily provide them with so much vital information. It has always been a subject of contemplation why it was only during these car rides did any authority allege Petitioner wished to "confess." For example, of all the authorities Petitioner came into contact with; his Ohio attorney, the Ohio juvenile facility staff, Kanawha County Jail personnel, etc., he chose to confess only to the troopers who transported him. Perhaps it was the solitary surroundings the young suspect encountered with the burly troopers.

Be that as it may, on 2 November, 1980, a second detainer was filed by West Virginia against Petitioner, again requesting that a juvenile be held, based on a charge of three counts of first degree murder. On 18 December, 1980, Petitioner was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for 24 December, 1980, but as a result of motions for continuance made by the defense, the hearing was not held until 12 January, 1981, at which time probable cause was found by the juvenile referee who then referred Petitioner to the juvenile jurisdiction of the Circuit Court.

On 20 January, 1981, West Virginia filed a motion to have Petitioner transferred to the criminal jurisdiction of the circuit court and tried as an adult. Continuances were granted on defense's several motions to allow for psychological and psychiatric evaluation, etc., and a transfer hearing was held on 29 June, 1981. After protracted litigation, at a 6 August, 1981 hearing, the court issued from the bench its decision to transfer Petitioner to adult status. On 13 August, 1981, West Virginia presented its case against Petitioner to the grand jury, which returned an indictment charging him with three counts of murder in the first degree.

Prior to trial, defense counsel filed a *Motion To Suppress* Petitioner's alleged confessions and a hearing was held on Petitioner's motion. After another prolonged period of time within which issues pertaining to the state's transfer proceedings were litigated, another indictment was returned, on or about 30 September, 1982, again charging Petitioner with three counts of first degree murder. Trial was commenced on 21 March, 1984, wherein Petitioner was convicted of three counts of first degree murder without receiving a recommendation of mercy.

-4-

After considering and denying defense post trial motions, a petition for appeal was filed on Petitioner's behalf. In *State v. Moss,* 180 W.Va. 363, 376 S.E.2d 569 (1988), this Court reversed Petitioner's convictions because; (1) [T]he trial judge committed reversible error when he refused to poll the jurors; (2) [M]anifest injustice resulted from the prosecutor's remarks; and, (3) [T]he introduction of the husband's polygraph test results in this instance was so prejudicial that the trial court's instruction not to consider such evidence was insufficient to cure the error... .

Though not adjudicative of the Court's decision to reverse Petitioner's first convictions, it nonetheless wrote on the issue on appeal of the West Virginia authorities' failure to promptly present the juvenile defendant to a neutral judicial officer upon being taken into custody. The Court ruled that had objections been made on the first two confessions the decision in *Ellsworth J.R.,* 331 S.E.2d 503 (W.Va. 1985) would have been retroactively applied and they, like the third confession, would have been inadmissible.

After various pretrial proceedings, including a hearing on defense counsel's motion for the suppression of Petitioner's alleged confessions on the basis of authorities' failure to promptly present Petitioner–who, at the time, was under juvenile jurisdiction–to a neutral judicial officer, on 26 April, 1990, Petitioner was again convicted of three counts of first degree murder without a recommendation of mercy. Petitioner's counsel then filed, on 14 January, 1991, a petition for appeal, and Petitioner, *pro se,* filed, on 23 February, 1991, a supplemental petition for appeal. The court, however, refused to review the petitions without comment.

On or about 18 August, 1994, Petitioner then filed a Petition For Writ of Habeas Corpus (Special "Zain" Habeas) in the Kanawha County Circuit Court, pursuant to this Court's prophylactic remedy for persons convicted in cases involving the false and/or misleading testimony or evidence presented by Fred S. Zain. After protracted proceedings the circuit court denied Petitioner's prayer for relief and dismissed the petition. Petitioner appealed that denial and this Court, in a written *per curiam* opinion, cited as *Moss v. Trent,* 2004 W.Va. Lexis 121, No. 31646, July 1, 2004, upheld the circuit court's denial. Petitioner then timely filed his *Petition For Rehearing,* and the Court refused to consider it.

Petitioner then filed his petition for writ of *certiorari* in the United States Supreme Court. By Order entered 24 January, 2005, the Court refused *cert.* Petitioner now files this original jurisdiction *Petition For Writ Of Habeas Corpus Ad Subjiciendum Under W.Va. Code § 53-4A-1,* for his remaining contentions of the constitutional and procedural violations which result in Petitioner's continued unlawful incarceration.

-5-

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

        Petitioner,

vs.

                                        Civil Action No. _____
                                        Underlying Proceedings <u>CR-82-F-221</u>

THOMAS McBRIDE, Warden,
Mount Olive Correctional Complex,

        Respondent.

## MEMORANDUM

### I. INTRODUCTION AND JURISDICTION

Comes now the petitioner, John Moss, III, *pro se*, and moves this Honorable Court to issue an order that sets aside and voids Petitioner's three life sentences without mercy for three counts of first degree murder as they are in violation of the rights secured to this petitioner through the Constitutions of the United States and the State of West Virginia. This Court has jurisdiction to rule upon this Petition for Writ of Habeas Corpus Ad-Subjiciendum pursuant to the Constitution of West Virginia, *West Virginia Code*, Chapter 53, Article 4A, Section 1, *et seq.*, and the *West Virginia Rules of Appellate Procedure*.

Other than a special "Zain" habeas, at which there was not a Losh list signed and/or executed, Petitioner has previously filed two other petitions for writ of habeas corpus in the circuit court of Kanawha County. The court summarily denied and dismissed those two petitions without appointing counsel and without holding an omnibus or evidentiary hearing.

Additionally, this Court refused to review several of Petitioner's contentions herein that were previously presented on appeal in his 14 January, 1991, petition on appeal, as well as his 23 February, 1991, supplemental petition. Those contentions can be reiterated in this petition for writ of habeas corpus ad subjiciendum, whereas the refusal by this Court to review Petitioner's contentions of error on appeal was not an adjudication on the merits of said contentions. Therefore, the Court should not utilize the doctrine of *res judicata* to summarily dismiss the contentions as being previously and finally adjudicated.

### III. CONTENTIONS PRESENTED

a.      THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RULING THAT THE FIRST TWO CONFESSIONS WERE ADMISSIBLE UNDER THE "LAW OF THE CASE DOCTRINE."

b.      THE FACTUAL DETERMINATION BY THE WEST VIRGINIA SUPREME COURT OF APPEALS THAT NO PROMPT PRESENTMENT OBJECTIONS WERE ENTERED ON THE FIRST TWO ALLEGED CONFESSIONS IS CLEARLY ERRONEOUS AND WORKS MANIFEST INJUSTICE.

c.      PETITIONER WAS DEPRIVED OF THE SIXTH AMENDMENT'S GUARANTEE OF THE EFFECTIVE ASSISTANCE OF COUNSEL:

      (1).     Counsel Failed To Bring To The Trial And Appellate Court's Attention The Fact That The Two October 28, 1980, Confessions Were The Subject Of An Extensive Motion And Memorandum, Hearing, And Testimony And Was, In Fact, Objected To By Counsel Prior To The First Trial, Based On, *Inter Alia, W.Va. Code* § 49-5-8(d).

      (2).     If Trial Counsel, At The First Trial, Failed To Object To The West Virginia Authorities' Failure To Promptly Present The Juvenile Defendant To A Neutral Judicial Officer Prior To Taking Petitioner's Alleged Confessions.

d.      PETITIONER DID NOT RECEIVE A FULL AND FAIR HEARING ON HIS MOTION AND MEMORANDUM TO SUPPRESS SAMPLES OF BLOOD, CONFESSION, AND OTHER PHYSICAL EVIDENCE SEIZED DUE TO THE IMPROPER TACTICS OF FRED S. ZAIN AND THE WEST VIRGINIA STATE POLICE TROOPERS AND CRIME LABORATORY.

e.      PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY WAS CONTRAVENED WHEN THE STATE KNEW, OR SHOULD HAVE KNOWN, OF THE FALSE OR MISLEADING TESTIMONY AND EVIDENCE PRESENTED BY A STATE WITNESS.

f.      THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED PETITIONER'S BLOOD SAMPLES, CONFESSIONS AND ALL EVIDENCE INCIDENT THERETO INTO EVIDENCE, WHEN THE SAMPLES OF BLOOD WERE OBTAINED IN VIOLATION OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS.

g.      IMPROPER CLOSING ARGUMENTS BY THE PROSECUTION DENIED THE PETITIONER A FAIR TRIAL.

h.      BLOOD TEST RESULTS AND REPORTS OF OFFERED SEROLOGY EVIDENCE BY TROOPER MURPHY WERE FALSIFIED OR SUBSTANTIALLY INCORRECT.

i.     PETITIONER'S GUARANTEE TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW WERE VIOLATED WHEN THE KANAWHA COUNTY CIRCUIT COURT SUMMARILY DENIED AND DISMISSED PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO THIS COURT'S RULING IN THE CASE: *IN THE MATTER OF: RENEWED INVESTIGATION OF THE STATE POLICE CRIME LABORATORY, SEROLOGY DIVISION,* AND THIS COURT REFUSED TO REVIEW PETITIONER'S APPEAL OF THAT SUMMARY DENIAL AND DISMISSAL

### 1. FACTS AND DISCUSSION ON CONTENTIONS RAISED

a.     THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RULING THAT THE FIRST TWO CONFESSIONS WERE ADMISSIBLE UNDER THE "LAW OF THE CASE DOCTRINE."

The opinion of this Court in *Moss II* clearly implied that, had objections been made–during the first trial–the first two confessions, like the third, would also have been inadmissible under the prompt presentment exclusionary rule announced in *State v. Ellsworth, J.R.,* 331 S.E.2d 503 (W.Va. 1985), because it was uncontested that Petitioner had not been taken before a neutral judicial officer even after giving all three confessions. The second trial court, however, felt it was compelled–under the law of the case doctrine–not to make an independent and/or *de novo* review–because of this Court's decision in *Moss II,* i.e., that the holding in *Ellsworth J.R.* would not be applied retroactively because of the lack of objections–of Petitioner's motion to suppress the alleged confessions based on the failure to promptly present Petitioner to a neutral judicial officer, and subsequent objections to the denial of Petitioner's motion.

In West Virginia, at least in the context *sub judice,* the law of the case doctrine has never before been expounded on by this Court, but other courts have explained it thus:

> In the absence of statute the phrase "law of the case" merely expresses the practice of courts generally to refuse to reopen what has been decided; it is not a limit to their power. *Messenger v. Anderson,* 225 U.S. 436, 444, 56 L.Ed. 1152, 32 S.Ct. 739 (1912) (Holmes, J.).

> Unlike the more precise requirements of *res judicata* and *collateral estoppel,* law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides on a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. See, *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815-16, 100 L.Ed.2d 811, 108 S.Ct. 2166 (1988); *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318, 333 (1983) (dictum).

> Observations, commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations, and are not, therefore, law of the case. See, e.g., *Quern v. Jordan,* 440 U.S. 332, 347 n.18, 99 S.Ct. 1139, 1148 n.18, 59 L.Ed.2d 358 (1979). *Gertz v. Robert Welch, Inc.,*

680 F.2d 527, 533.

The doctrine is a self-imposed prudential limitation of the court's power. IB Moore's Federal Practice 0.404[10] at 573 (2d ed. (1980). It is not an immutable rule, but rather a way to foreclose continued appeals for reconsideration of prior rulings of law. *Southern Railway Co. v. Clift*, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922).

When an appellate court issues a specific mandate it is not subject to interpretation, the circuit court has an obligation to carry out the order. A different result would encourage and invite circuit courts to engage in *ad hoc* analysis of the propriety of appellate court rulings. Post mandate maneuvering in the circuit courts would undermine the authority of appellate courts and create a great deal of uncertainty in the judicial process. It would also eliminate any semblance of finality.

There are three general exceptions to the law of the case doctrine. It should not be applied when: [1] the evidence on a subsequent trial is substantially different, [2] controlling authority has since made a contrary decision of the law applicable to such issues, or [3] the decision was clearly erroneous and would work a manifest injustice. *Sejman v. Warner-Lambert Co.*, 885 F.2d 66, 69 (4th Cir. 1988); *See also, E.E.O.C. v. International Longshoremen's Association*, 623 F.2d 1054, 1058 (5th Cir. 1980).

Most importantly, the law of the case rule should not be applied to any issues which were **not necessary to the decision** on the first appeal. *See, People v. Medina*, 6 Cal.3d 484, 491, 99 Cal.Rptr. 630, 492 P.2d 686 (1972). And above all, the rule should never be made the instrument of injustice. *Gore v. Bingaman*, 20 Cal.2d 118, 122-123, 124 P.2d 17, 20 (1942).

This Court considered the confession issues in *Moss II* "[b]ecause the admissibility of the . . . three confessions . . . [would] again be of concern on remand . . . ." *State v. Moss*, 376 S.E.2d 569, 575. The holding, therefore, was not necessary to the decision itself; the Court had already decided that "[e]ach of [the first three] errors require[d] reversal." *Id.* at 572. Had the Court foregone consideration of the confession issues altogether, the conviction of the Petitioner would still have been reversed, and all Petitioner's rights reinstated. *See United States v. Watson*, 146 F.Supp 258, 259 (D.C. 1956) (After a conviction is reversed and a case is remanded for a new trial, all rights a defendant originally had are reinstated and he is not precluded from filing a motion to suppress evidence prior to his retrial. Nor is he precluded from urging in support thereof legal grounds not previously raised.) *Cf. United States v. Romano*, 241 F.Supp 933 (S.D.Me. 1965); *United States v. Paroutian*, 319 F.2d 661 (2d Cir. 1963), cert. denied, 375 U.S. 981, 84 S.Ct. 494, 11 L.Ed.2d 426 (1964); *Booth v. United States*, 154 F. 836, 837 (2d Cir. 1907).

Assuming arguendo, however, that the law of the case was applicable to the Court's former determination regarding the admissibility of the petitioner's confessions, still there would be exceptions to its application. For example, if the evidence upon remand was substantially different, or if an intervening decision had altered the applicable rule of law, it is clear that the law of the case would not govern. *See Naples v. United States*, 359 F.2d 276 (C.A.D.C. 1966); *People v. Medesto*, 427 P.2d 788 (Cal. (1967). The Petitioner's case is undoubtedly exceptional. Not only was the evidence different on remand, but the intervening decision of *State v. Ellsworth, J.R.*, 331 S.E.2d 503 (W.Va. 1985), had altered the applicable rule of law. Moreover, insofar as the decision of this Court in *Moss II* would foreclose the Petitioner from objecting anew, that decision was clearly erroneous and works a manifest injustice.

In *United States v. Coward*, 669 F.2d 180 (4th Cir. 1982), the defendant's first conviction had been overruled; he was retried and once again convicted. At his first trial, evidence was "erroneously" suppressed by the trial court, but the Government did not appeal on this ground. At the second trial, this same evidence was introduced after a new suppression hearing where the Government was permitted to clarify the error of the first suppression hearing. On appeal, the Fourth Circuit stated that "[r]emand of the case for a new trial effectively cleansed the slate; the District Court properly corrected as many errors of the first trial as was possible." *Id.* at 184. (Emphasis added).

Likewise, in *State v. Darwin*, 161 Conn. 413, 288 A.2d 422 (1971), the defendant had been convicted and appealed to the Connecticut Supreme Court. That court affirmed, holding that "[t]he . . . claims [concerning attacks on the validity of the search warrant] now come too late. The [trial] court was never asked to rule on the claims, and under settled Connecticut practice they cannot now be considered." *State v. Darwin*, 155 Conn. 124, 142, 230 A.2d 573, 582. Darwin petitioned the United States Supreme Court for *certiorari*, and the case was reversed on the unrelated issue of the voluntariness of Darwin's confession, *Darwin v. Connecticut*, 391 U.S. 346, 20 L.Ed.2d 630, 88 S.Ct. 1488 (1968). At his second trial, Darwin filed a motion to suppress certain evidence obtained as a result of an insufficient search warrant; this issue formed the basis for his second appeal. Conceding the validity of this claim, the State argued three reasons against it, "(1) that by not attacking it before or during the first trial the defect was waived, (2) that the defendant had no standing to challenge the search of his wife's car and (3) that by reversing on the ground of an inadmissible confession, and by not mentioning the search warrant, the validity of which the defendant had raised before it, the United States Supreme Court implied . . . the warrant was valid. Rejecting the State's argument altogether, the Connecticut Supreme Court reversed, holding this:

- 9 -

The first trial ended in a verdict of guilty and a judgment was rendered. That judgment was appealed, first to this court then to the United States Supreme Court. The end result was a reversal and the ordering of a new trial. The purpose of a new trial is to have an error-free trial. The trial is "new" in every sense. It is as if no trial had ever taken place. *Darwin*, *supra*, citing *State v. Adjimi*, 170 So. 2d 340 (Fla.App.); *Cichos v. State*, 246 Ind. 680, 208 N.E.2d 685; *People v. Corbo*, 17 A.D.2d 351, 234 N.Y.S.2d 662. An invalid search, therefore, which was not contested on the first trial may be contested by a motion to suppress prior to the second trial. *United States v. Romano*, 241 F. Supp. 933 (D.Me.); *United States v. Watson*, 146 F.Supp. 258 (D.D.C.). By the same token, evidence which was not objected to at the first trial may be contested at the second. It would not be compatible with the theory of a new trial to tie the hands of counsel so that any errors waived in the first trial are forever waived. Thus, the defendant did have a right to raise the issue of a defective search warrant; that right had not been waived. *Id.* 288 A.2d 425. (Emphasis added).

The law of the case doctrine was designed to stop the needless repetition of meritless arguments already fairly adjudicated; it was not intended to be used as an instrument of injustice to blindly preclude consideration of legitimate issues never before decided. The Petitioner's first argument was never fairly considered by this Court because the Court declared a procedural default. "* * * [T]rial error not raised in the trial court will not be addressed on appeal." *See State v. Humphrey*, 351 S.E.2d 613 (W.Va. 1986). Petitioner herein was granted a "new" trial, however, and this cleansed the slate of "all" errors at his first trial, including those made by his first trial attorney. Petitioner had new lawyers, and they objected in a timely fashion with sufficient specificity. This is not a case where the same facts which were previously decided not to warrant a positive outcome are again sought to be considered without a substantial change in the evidence; the obvious futility the law of the case doctrine was designed to avert.

The ultimate responsibility of the courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which calls into question the very legitimacy of a court's adjudicatory authority. These questions are of such overriding import that the United States Supreme Court has, in other contexts, carved out special exceptions for them to the general rules of procedure.

Law of the case does not and cannot limit the power of a court to reconsider an earlier ruling. The force of law of the case doctrine is affected by the nature of the first ruling and by the nature of the issues involved. If the ruling is avowedly tentative or the issues especially important, it may be said that ("law of the case" principles do not apply). See 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478.5. This being the case, the first part of the trial court's order, holding the confessions admissible under the law of the case

- 10 -

doctrine, was an abuse of discretion and reversible error.

Additionally, the second part of the trial court's order, dealing with the "foray or diversion" of the police in stopping at the Parkersburg State Police detachment, though logically incongruous with the W.Va. Supreme Court's *Moss II* opinion, is incorrect both as to findings of facts and legal conclusions. As previously discussed, the admissibility of the three confessions obtained from Petitioner by the police between October 28 - 30, 1980, is an issue which this Court reviewed in *Moss II*. The Court there held that the third confession, the one allegedly given by Petitioner on October 30, 1980, should not have been admitted into evidence because it was obtained in violation of the prompt presentment provisions of *W.Va. Code* § 49-5-8(d), and this Court's ruling in *State v. Ellsworth J.R.*, 31 S.E.2d 503 (W.Va. 1985). With regard to the two alleged confessions obtained from Petitioner on October 28, 1980, at the Parkersburg State Police Detachment, the exclusionary rule of *Ellsworth J.R.* was deemed inapplicable only because a timely prompt presentment objection had not been made.

The second trial court, however, ruled that "the taking of the statement [did] not violate either specific language or the principles embodied in the juvenile statute requiring an immediate presentment." (Tr. 20). In *Moss II*, the Court found that the facts clearly established that the [Petitioner] had not been presented to a referee, circuit judge, or magistrate, even after he had given three confessions to the murders. *State v. Moss*, 376 S.E.2d at 581. If noncompliance with the juvenile prompt presentment requirement occurred for the primary purpose of obtaining a confession from the juvenile, then such noncompliance renders the confessions inadmissible into evidence. *Ellsworth*, 331 S.E.2d at 508.

The stop in Parkersburg was initiated by the police to obtain a confession from the juvenile Petitioner. To allow the intimidation of juveniles through the tactic of delay is unconscionable. The juvenile prompt presentment statute exists for the purpose of assuring that juveniles who are frightened and overwhelmed by the circumstances involving the accusation of committing a serious crime are taken before a neutral party who can explain the types of options that are available to him. A juvenile is to be afforded the same rights as are available to adults and in order to do so, he must be told what those rights are and be made aware that exercising those rights is perfectly legal, acceptable to the police officers around him, and actually recommended for his own defense.

Of particular interest here is, not only was Petitioner not taken to a neutral judicial officer after allegedly confessing to the murders, but he was never taken to a magistrate. The state has never offered an explanation as to what obstacles intervened to preclude experienced State Police Troopers from following the law. The adult suspect, Paul Reggettz, Sr., was promptly presented. Why wasn't the young Petitioner herein? When applying the

- 11 -

*Ellsworth* rule to the situation presented in the instant case, it is obvious that the trial court should have denied admission of the two confessions obtained on October 28, 1980, into evidence.

This Court's interpretation of the prompt presentment statute in *Ellsworth* was two-pronged. First, the Court looked to the language of the statute, which provides that a juvenile must be presented before a neutral judicial officer. The Court stated:

> [this provision was] designed to ensure that if a juvenile referee or judge is not available, a child in custody must be *immediately* brought before a magistrate. In placing this construction on the statute, we have restricted the import of the proceeding language that indicates a delay may not "exceed the next succeeding judicial day."

> We do so because we do not believe that this language was intended to sanction *any delay* in taking a juvenile directly to a judicial officer. Rather, this clause relates to how long a detention hearing may lawfully be delayed while a child is held in custody. [(emphasis added) *Ellsworth*, 331 S.E.2d at 507.]

The *Ellsworth* Court continued its reasoning by stating that, "It is obvious that advising the juvenile as to his constitutional rights can be done immediately upon the appearance of the child." *Id.* The interpretation of the juvenile prompt presentment statute therefore dictates that Petitioner should have been taken before a neutral judicial officer immediately. This interpretation does not even allow the "next judicial day" time frame.

The second principle the *Ellsworth* Court addresses is the issue of delay when traveling to appear before a judicial officer. The facts of the *Ellsworth* case indicate that Ellsworth confessed to the murder in question while riding in the police car which presumably was traveling to the offices of the neutral judicial officer. The police stopped en route in order to reduce to writing the oral confession offered in the car. Delay as a result of the need to reduce to writing the oral confession is "designed to insure that what the defendant desires to relate is accurately recorded." *Ellsworth*, 331 S.E.2d at 509. In *Ellsworth*, the Court assumed that the stop to record a statement was for the purpose of recording a confession already given and that had the defendant not volunteered to confess he would have been promptly presented.

In order to arrive at the prompt presentment exception recognized in *Ellsworth*, the Court posed three questions: (1) Was the juvenile taken before a magistrate? (2) was the confession obtained as a result of delay? and, (3) was the primary purpose of the delay to obtain a confession? It is clear that Petitioner was not taken before a magistrate; that the confessions were obtained as a result of the troopers' decision to stop in Parkersburg not as a result of the Petitioner's offering of a confession; and that the primary purpose of the delay was to obtain a confession.

Trooper Smith, one of the officers traveling with Petitioner, provided the following statement describing the applicable facts:

> "It was then said to the effect, that we needed to get it straightened out but that something of that importance needed to be discussed some place other than the back seat of the car in which we were riding. Going on to say it needed to be discussed in a place where you could sit down, have a cup of coffee and could look each other in the face."

It is to be noted, however, that the delay was not for the purpose of recording a confession which had already been offered as in *Ellsworth.* The statement of Trooper Smith indicates that there was no clear or specific understanding between Petitioner and the troopers that he was prepared to discuss the Reggettz murders at that moment while traveling or at any other time. The nod of his head as described by Trooper Smith is not tantamount to an expression of the desire to offer a confession. The entire conversation was conceived and prompted by the trooper, not Petitioner. In a September, 1983 Suppression Hearing, Trooper Smith states:

> "...I said something to the effect of, now John, we both know what I am talking about and it is important we get it straightened out. *He did not at that time acknowledge that he did know what we were talking about.* After expressing a couple of more times to John that it was extremely important that the matter needed to be straightened out, it was told to John or asked of him something to the effect of, John why do you think we got a sample of your blood. After mentioning the blood, John was again told something to the effect of, now John, we both know what I am talking about, *he agreed shaking his head yes.*"

The delay in Petitioner's case does not qualify as the statutory prompt presentment requirement because Petitioner had not confessed nor suggested that he wished to confess prior to the stop in Parkersburg. In *Ellsworth,* the purpose for the delay in presenting the juvenile to a judicial officer was to accurately record the accused's statement. Therefore, the confession was inadmissible.

The second trial court's ruling that "the taking of the statement [did] not violate either specific language or the principles embodied in the juvenile statute requiring an immediate presentment..." is what does violate the "law of the case doctrine. This Court had ruled the trooper's actions violated the statute and holdings in *Ellsworth.* Under the law of the case doctrine that is what bound the lower court.

Because Petitioner's prompt presentment objections were timely raised prior to, not only his second trial but also his first trial, Petitioner's conviction should be reversed and his confessions thrown out as they were obtained in violation of the prompt presentment requirement. The second trial court's ruling not to apply the exclusionary rule, because of the law of the case doctrine, was an abuse of discretion and reversible error.

-13-

b.  THE FACTUAL DETERMINATION BY THE WEST VIRGINIA SUPREME
    COURT OF APPEALS THAT NO PROMPT PRESENTMENT OBJECTIONS
    WERE ENTERED ON THE FIRST TWO ALLEGED CONFESSIONS IS
    CLEARLY ERRONEOUS AND WORKS MANIFEST INJUSTICE.

This Court reversed Petitioner's first conviction on the 19th of December 1988. See
*State v. Moss*, 376 S.E.2d 569 (W.Va. 1988) ("Moss II"). That opinion clearly implied that, had
an objection been made, with the [f]irst two confessions, like the [t]hird, they would also have
been inadmissible under the prompt presentment exclusionary rule because it was
uncontested that the Petitioner had not been taken before a magistrate even after giving all
three confessions. Petitioner contests this Court's determination that objections to the first
two "confessions" were not made.

    In the September, 1983, Suppression Hearing, Petitioner was extensively examined
on and testified to, *inter alia*, the West Virginia Troopers' failure to take him before a neutral
judicial officer. At the conclusion of the hearing the trial court set a briefing schedule for
counsel on both sides to brief issues raised at the hearing and also set a date of October 12,
1983, at 9:00 a.m., to render a ruling from the bench on the admissibility of the confessions.

    In his 3 October, 1983, *Memorandum In Support Of Defendant's Motion To Suppress
Samples Of Blood, Confession, And Other Physical Evidence Seized From John Moss By
Employees Of The State Of West Virginia*, trial counsel wrote with great fervor on the rights of
Petitioner, as a juvenile, under *W.Va. Code*, § 49-5-1, *et seq.*, that were violated. Trial counsel
specifically quoted § 49-5-8(d) and the only available West Virginia decision on the issue
available at the time, i.e., *State ex rel. J.M. v. Taylor*, 276 S.E.2d 199 (W.Va. 1981), and
complained Petitioner was questioned in a lonely and hostile environment without first being
taken before an interested and friendly adult such as a juvenile referee or magistrate. Trial
counsel posited that the totality of the circumstances dictated that all three confessions should
be suppressed:

> "Because of the nature of the events and circumstances, the taking of the
> confessions from John Moss constituted a communicative contact between
> the defendant while he was still technically within the juvenile jurisdiction of this
> Court and had all of the appearances of a situation impacted with duress and
> coercion by governmental agents... ."

Additionally, when writing on the voluntariness of the confessions, trial counsel made
numerous mention of the confessions (plural) in the Memo:

4. The Taking of the Confessions, (1983 Memo at 58);

Later, John Moss gave certain confessions concerning his involvement... .
(1983 Memo at 60);

This abuse whch (sic) was continual and systematic overborne (sic) the will of

- 14 -

John Moss that resulted in the confessions in question. (1983 Memo at 60);

As defendant discussed at considerable length in the preceding sections of this Memorandum, *the confessions obtained from John Moss on the 28th day of October, 1980*, were taken while under the juvenile jurisdiction of this Court. (1983 Memo at 62)(emphasis added);

In the present case, John Moss was not permitted his right to have an attorney present either at or before his confessions were taken (1983 Memo at 62-63);

[T]he taking of the confessions from John Moss constituted communicative contact between the defendant... . (1983 Memo at 64);

In the absence of such constitutional rights, the results of the confessions should be suppressed and declared inadmissible. (1983 Memo at 64);

[T]he evidence clearly indicates the confessions taken from John Moss to be unlawfully taken. (1983 Memo at 65);

Thus, the facts indicate that as a result of information contained in John Moss's confession shortly after the confessions were taken from John Moss o[n] October 28, 1980, Troopers Williams and Smith went to John Moss's home in Cleveland, Ohio... . (1983 Memo at 65);

Therefore, assuming the confessions to have been illegally obtained from John Moss... . (1983 Memo at 65);

The record herein unequivocally demonstrates trial counsel objected to the two 28 October, 1980, confessions due to Petitioner not being taken before an interested or friendly adult such as a juvenile referee or magistrate. Additionally, on 30 December, 1983, the state filed its *Memorandum In Opposition To Defendant's Motion To Suppress*, wherein it argues against counsel's assertion that Petitioner was not taken before a neutral judicial officer even after giving the two alleged confessions, the oral one then the recorded one. This Court's contrary determination, in 1988, and the resulting constitutional violations, therefore, works manifest injustice. In light of this Court's holdings, i.e., that, although all the blood work conducted by Fred S. Zain and the W.Va. State Police Crime Laboratory was unreliable at Petitioner's two trials, Petitioner's claim the Zain evidence was prejudicial was unfounded because of Petitioner's confessions and the other evidence introduced, if a correct factual determination had been made, i.e., that objections were made on the two 28 October, 1980, confessions, the rulings in *Ellsworth J.R.*, would--as the third confession given on 30 October, 1980--also would have been retroactively applied to those two confessions and they too would have been excluded at the second trial. The fact the two 28 October, 1980, confessions should have been suppressed but were not cannot be considered harmless because, coupled with the fact the Zain evidence was later excluded, no substantive evidence with which to convict Petitioner would have existed upon which the court could rule that, even with

excluding the Zain false and misleading evidence, the results of the proceedings would not have changed because of the confessions and evidence resulting therefrom.

c.   PETITIONER WAS DEPRIVED OF THE SIXTH AMENDMENT'S GUARANTEE OF THE EFFECTIVE ASSISTANCE OF COUNSEL:

    (1).   Second Trial Counsel Failed To Bring To The Trial And Appellate Court's Attention The Fact That The Two October 28, 1980, Confessions Were The Subject Of An Extensive Motion And Memorandum, Hearing, And Testimony And Was, In Fact, Objected To By Counsel Prior To The First Trial, Based On, *Inter Alia, W.Va. Code* § 49-5-8(d).

    (2).   If Trial Counsel, At The First Trial, Failed To Object To The West Virginia Authorities' Failure To Promptly Present The Juvenile Defendant To A Neutral Judicial Officer Prior To Taking Petitioner's Alleged Confessions.

Petitioner incorporates herein, by reference thereto, the facts as previously asserted in this Memo. In a September 19, 20, 21 & 22, 1983, Suppression Hearing, Petitioner extensively testified, *inter alia*, on the West Virginia Troopers' failure to take him before a neutral judicial officer. The focus of that hearing was the two "confessions" of 28 October, 1980. The state failed to divulge the existence of and their intention to use, the third "confession" until the first day of jury voir dire. At the conclusion of the September, 1983, hearing, the trial court set a briefing schedule as well as a date of October 12, 1983, at 9:00 a.m. to render a ruling from the bench on the admissibility of the two 10/28/80 "confessions" (1983 Supp.Hrg. pp. 345-46). It is not clear, due to the passage of time, whether any hearing was held on that date and Petitioner has been unable to obtain a transcript of the court's ruling or entered Order. It is undisputed, however, that the first two "confessions" were used at trial.

Additionally, once the state, on the eve of trial, informed trial counsel of the existence and its intention of using the third "confession" of 30 October, 1980, trial counsel objected to it but the court allowed it, also. This Court, of course, later stated the third "confession" should have been excluded. In their opinion they implied that had objections been made to the first two "confessions," those, like the third, should also have been excluded.

Petitioner's counsel at his second trial were ineffective for failing to bring the court's attention to, or otherwise asserting and failing to enter into the record, Petitioner's *Motion To Suppress Samples Of Blood, Confession, And Other Physical Evidence Seized From John Moss By Employees Of The State Of West Virginia*, and *Memorandum In Support* thereof, as well as the transcript of the suppression hearings held on 19, 20, 21 & 22 September, 1983. Those documents and transcripts unequivocally demonstrate that counsel at the first trial did indeed object to the failure of state authorities to promptly present Petitioner to a neutral

judicial office in violation of *W.Va. Code* § 49-5-8(d) and the holdings, made retroactive to Petitioner's case on the third confession, in *State v. Ellsworth J.R.*, 175 W.Va. 64, 331 S.E.2d 503 (1985), and that the factual determination to the contrary by this Court, i.e., that "[A] prompt presentment objection was preserved before the trial court only with respect to the third confession" is clearly erroneous. The results of the second trial court's ruling, therefore, would certainly have been different and the two confessions of 28 October, 1980, would have been excluded, as well as the evidence resulting therefrom. Coupled with Reggettz's confession, without the three confessions and the "poisoned" evidence resulting therefrom, the results of Petitioner's trial would be an acquittal. Indeed, a trial probably would not have occurred, because the state would have no evidence to present.

The United States Supreme Court, in *Wiggans v. Smith*, 123 S.Ct. 2527 (2003), reaffirmed the principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Court, through their infinite wisdom, also went on to paint, in broad strokes, a clear picture of the complex, as well as the multifaceted, legal obligations every defense counsel should undertake in order to provide a criminal defendant with the constitutionally mandated effective assistance of counsel. The Court also explicitly made clear that there are a plethora of complicated tasks involving the adequate representation of a capital-charge criminal defendant. Furthermore, they are virtually unlimited and the multitask demands placed on counsel are often onerous and time consuming.

It has been well established in this state that, in reviewing claims of ineffective assistance of counsel, the standards delineated in *Strickland v. Washington*, *supra*, govern.

> In the West Virginia Courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) counsel's performance was deficient under an objective standard of reasonableness; (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. (Syllabus Point 5 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995)).

> In reviewing counsel's performance a court must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight, or second guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. (Syllabus Point 6, *State v. Miller*, *supra*).

Petitioner avers that he is entitled to a hearing in order for him to have a fair and adequate opportunity to litigate his claims of ineffective assistance of counsel and to develop a record to support his allegations that are not discernible from the existing record. "Lacking an adequate record, [a]...court simply is unable to determine the egregiousness of many of the

claimed deficiencies." *State v. Miller*, 459 S.E.2d 114, 126 (W.Va. 1995). "In cases involving ineffective assistance...intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior." *Id.* at 125-26.

In *SER Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997), the trial court dismissed a habeas corpus petition alleging ineffective assistance of counsel without conducting an evidentiary hearing. On appeal, the Court directed the lower court to hold an evidentiary hearing on the ineffective assistance of counsel claims. The opinion of the Court is sound in that the rationale of *Miller* is to force the litigation of ineffective assistance of counsel claims in habeas actions and not on direct appeal. If the lower court fails to allow record development to take place at this time, then an important thrust of the *Miller* decision is wasted. *See*, *SER Nazelrod v. Hun*, 199 W.Va. 582, 486 S.E.2d 322 (1997)(*per curiam*) [(where the Court] found that a trial court's denial of a habeas claim for ineffective assistance of counsel without a hearing may require remand for a hearing *if the claim is one that has the appearance of being cognizable*). In *Nazelrod*, the Court remanded for a hearing and, in doing so, opined the following:

> An examination of the ineffective assistance of counsel claims *requires an examination of facts not developed in the appellant's trial transcript*. For instance, the advice that trial counsel gave, or failed to give the appellant, is not given in the trial transcript. Similarly, why counsel failed to object to evidence, or what his specific trial strategy was, does not appear in the record.

The constitutional guarantee of effective assistance of counsel at trial applies to every criminal prosecution, without regard to whether counsel is retained or appointed. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan*, 444 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Similarly, the Court in *Tucker v. Holland*, 327 S.E.2d 388 (W.Va. 1985), observed that the constitutional right to qualitatively sufficient representation is not diminished because retained rather than appointed counsel is involved.

The Court in *Strickland* made it clear that rarely can there be a successful claim of ineffectiveness in cases where there had been adequate investigation as to both law and facts. In this context, the Court stated:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonably professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be

directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

It is clear that representation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case. When a petitioner claims that the trial attorney failed to investigate, the petitioner must show that the claim has some merit. It is simply not enough for a petitioner to allege there might have been deficiency in some aspect of trial. *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992).

This Court reversed Petitioner's first conviction on the 19th of December 1988. See *State v. Moss*, 376 S.E.2d 569 (W.Va. 1988) ("Moss II"). That opinion clearly implied that, had an objection been made, with the [f]irst two confessions, like the [t]hird, they would also have been inadmissible under the prompt presentment exclusionary rule because it was uncontested that the Petitioner had not been taken before a magistrate even after giving all three confessions. Although Petitioner contests this Court's determination that objections to the first two confessions were not made (see Contention "b" *supra*) he maintains that, even if by some improbable stretch that determination is not found to be erroneous and that objections were *not* entered on the first two alleged confessions, then trial counsel were ineffective for failing to do so. They were also ineffective for not requesting a rehearing and bringing to the Court's attention that objections were made to the "confessions" when this Court erroneously ruled that no objections were made.

Petitioner's second trial attorneys failed to bring the trial court's attention to the fact that objections were entered on the first two confessions. In furtherance of that ineffectiveness, appellate counsel failed to also inform the Court of its serious erroneous determination of the facts. Appellate counsel also failed to include other, stronger, meritorious issues in their petition for appeal when they actually prepared the petition prior to the second trial itself, but, most tellingly, prior to the second trial court's "law of the case" ruling. The petition on appeal did not respond to the first part of the trial court's two-part ruling on the admissibility of Petitioner's confessions because it was already written when that decision issued. This is flagrant ineffectiveness. Because appellate counsel's strategy or tactics for not raising the stronger issues on appeal does not appear anywhere in the record, Petitioner is entitled, at the very least, to appointment of counsel to develop the reason or reasons why counsel was so woefully ineffective and to thereafter demonstrate his entitlement to relief by reinstatement of his right to appeal his convictions.

d.     PETITIONER DID NOT RECEIVE A FULL AND FAIR HEARING ON HIS
MOTION AND MEMORANDUM TO SUPPRESS SAMPLES OF BLOOD,
CONFESSION, AND OTHER PHYSICAL EVIDENCE SEIZED DUE TO THE
IMPROPER TACTICS OF FRED S. ZAIN AND THE WEST VIRGINIA
STATE POLICE TROOPERS AND CRIME LABORATORY.

The two samples of blood obtained from Petitioner were derived from him on two separate trips by West Virginia State Police Troopers to Ohio where Petitioner was being held. On the first occasion, 30 January, 1980, the Troopers did not have a court order, warrant, or permission from Petitioner's counsel or parents. On the second occasion, 28 April, 1980, however, an Ohio court order was obtained to allow West Virginia authorities to extract a blood sample. On neither occasion was counsel present with Petitioner, even though the assistant prosecuting attorney for West Virginia was present at the second, forced, extraction. It was only after the first blood sample was obtained that Petitioner became a suspect in the homicides of the Reggettz family. It was alleged by West Virginia authorities that the cloth containing the first sample was returned to Petitioner. Petitioner, however, unequivocally avers the cloth, or all of it, was not returned but was taken to Fred S. Zain on 30 January, 1980, by Zain's fellow troopers, Williams and Smith. It was only after Zain had a known sample of Petitioner's blood, with which he falsely stated had been gathered at the crime scene, that Petitioner became a serious point of focus in the investigation of Petitioner's alleged involvement in the murders of the Reggettz family.

The fact Zain had a known sample of Petitioner's blood in January, 1980, is borne out by the copy of Zain's January, 1980, lab table listing blood groupings from fourteen (14) individuals, including Petitioner. As is apparent from Zain's table, a known sample of Petitioner's blood grouping was in his possession in January, 1980, and he listed it in his table. The only possible way for Zain to have a *known* sample of Petitioner's blood in January, 1980, was to have received at least a portion of the illegally gotten sample obtained by Troopers Williams and Smith from Petitioner on 30 January, 1980.

In essence, the illegally retrieved blood sample and constitutionally prohibited questioning of the, at the time, juvenile Petitioner ostensibly provided West Virginia authorities with probable cause evidence to obtain an Ohio court order to allow authorities to take another blood sample from Petitioner. This allowed Zain to perpetuate his fraudulent representations in the probable cause process by alleging the sample of blood taken from Petitioner on 22 April, 1980, matched unknown blood samples gathered at the crime scene. In fact, the sample taken from Petitioner on 22 April, 1980, did not match any unknown sample gathered by Zain at the Reggettz crime scene, later allegedly determined, by Zain, to be that of Petitioner. It matched only the known sample illegally obtained from Petitioner on 30 January, 1980. Zain fraudulently manipulated blood sampling evidence, with total disregard for the

truth, to reflect Petitioner to be a prime suspect in the murders of the Reggettz family. This information which was known, or should have been known, by the prosecutor was withheld from Petitioner and did not become known to him until the investigation of Zain and the West Virginia Police Crime Laboratory in which Petitioner received the noted blood grouping table dated January, 1980. Trial counsel was diligent in seeking all evidence in possession of the state, but due to the late divulgence of the table by the state, Petitioner did not have a full and fair opportunity to litigate his Fourth, Fifth, Sixth and Fourteenth Amendment claims at the 19, 20, 21, & 22 September, 1983, suppression hearing prior to the first trial, or the 26 February, 1990, suppression hearing prior to the second trial.

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966), the Court indicated that all compelled blood tests are seizures subject to the reasonableness requirement of the Fourth Amendment to the United States Constitution. Since the holding in *Schmerber*, the courts of this land have concertedly held the Fourth Amendment rules on search and seizure should guide the courts when law enforcement seek blood from internal body cavities.

In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held that neither state nor federal prisoners could collaterally attack state convictions on grounds that illegal evidence was admitted at trial where the "[S]tate has provided an opportunity for full and fair litigation of a Fourth Amendment claim." 428 U.S. at 494. The Supreme Court reaffirmed its decision in *Stone v. Powell, supra*, and held that habeas relief could not be granted to a state prisoner on the ground that the custodial statements made by him were obtained in violation of the Fourth Amendment. *Cardwell v. Taylor*, 461 U.S. 571, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983). The Court in *Cardwell* held that relief could be granted if statements were involuntary and therefore obtained in violation of the Fifth Amendment.

The Petitioner carries both burdens of pleading and proving the facts and the reasons why he did not receive an opportunity for full and fair litigation. *Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978).

In sum, Petitioner was denied a full and fair opportunity to litigate his Fourth Amendment claim prior to trial due to the improper actions of the state through its prosecutor and investigative body. A hearing on the matter in these habeas corpus proceedings, therefore, is mandatory and vital to afford Petitioner a full and fair opportunity to demonstrate his entitlement to relief.

e.  PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY WAS CONTRAVENED WHEN THE STATE KNEW, OR SHOULD HAVE KNOWN, OF THE FALSE OR MISLEADING TESTIMONY AND EVIDENCE PRESENTED BY A STATE WITNESS.

Petitioner incorporates herein, by reference thereto, the facts as previously stated in this Memo. An investigative trooper is an agent of the state and under the supervision of the prosecutor. In the case *sub judice*, Zain was a trooper in the West Virginia State Police Crime Laboratory and under the control or supervision of the Kanawha County Prosecuting Attorneys' Office. The prosecutor knew, or should have known, of the false and/or misleading information and testimony provided in Petitioner's case by Zain. Because Zain's false or misleading testimony was presented to the jury, Petitioner did not receive his constitutional right to a fair and impartial jury. In all criminal prosecutions, state and federal, "the accused shall enjoy the right to trial by an impartial jury." U.S. Const. Amdt. 6; *Duncan v. Louisiana*, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968).

Additionally, the West Virginia Supreme Court's prophylactic remedial device of forcing prisoners who had Zain test evidence and/or testify at their trials file and litigate only claims related to Zain and to thereafter make a determination if, absent Zain evidence, the remaining evidence is enough to convict, is inadequate in Petitioner's case due to the overall circumstances of Zain participating in the probable cause process and the fact Petitioner was precluded from litigating all the issues in the "Special Zain" habeas proceedings.

f.   THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED PETITIONER'S BLOOD SAMPLES, CONFESSIONS AND ALL EVIDENCE INCIDENT THERETO INTO EVIDENCE, WHEN THE SAMPLES OF BLOOD WERE OBTAINED IN VIOLATION OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS.

Petitioner incorporates herein, by reference thereto, the facts as previously stated in this Memo. The samples of blood obtained from Petitioner were derived from him on two separate occasions. On the first occasion, the police did not have a court order, warrant, or permission from Petitioner's parents or counsel, but on the second occasion, a court ordere was issued by an Ohio court. On neither occasion was counsel present with Petitioner and it was only after the blood samples were obtained that Petitioner became a suspect in the homicides of the Reggettz family. In essence, the results of the blood tests provided the authorities in West Virginia with the probable cause evidence which they had previiously lacked. Also, Troopers Williams' and Smith's discussion with Petitioner on 30 January, 1980, created investigative leads which they pursued upon their return to West Virginia. Thereafter, these troopers obtained physical and testimonial evidence from Arbutus and William Johnson in the form of flatware which was presented at trial and which this Court relied upon for affirming the denial of Petitioner's special Zain habeas corpus petition for relief. Both courts, however, failed to recognize the fact that unequivocal and conclusive evidence was presented by the defense demonstrating that the flatware did not come from the Reggettz home.

-22-

The United States Supreme Court, in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 903 (1966), indicated that all compelled blood tests are seizures subject to the reasonableness requirement of the Fourth Amendment to the United States Constitution. The facts of Petitioner's case clearly demonstrate that Petitioner was forced to give the authorities probable cause evidence which effectively incriminated him before there was probable cause evidence to believe Petitioner committed the homicides, making the compelled taking of Petitioner's blood unreasonable.

The evidence is clear from the testimony of police authorities testifying at all hearings held that there was a complete lack of probable cause on 22 April, 1980, the date of the second extraction, pursuant to an Ohio court order, of Petitioner's blood. Even though that order directed Petitioner to give blood it is undebatable that Trooper Smith's and Prosecuting Attorney Mike Roark's affidavit appended to the petition for the Ohio court order does not state probable cause. First, the affidavit is written in conclusory language and, second, Trooper Smith testified in the suppression hearing that blood was not an issue in the felonious shooting case at the Moose Club in St. Albans, West Virginia, thereby negating the felonious assault allegation in the affidavit. Finally, there are no other facts stated which even remotely constitute a factual foundation reflecting probable cause on 22 April, 1980, as every investigating officer who has testified has conceded.

Trooper Smith attempted but failed miserably in his suppression hearing testimony to state reasons for having probable cause to extract Petitioner's blood on the 22nd day of April, 1980. Trooper Smith stated three reasons to believe there was reasonable grounds to believe Petitioner committed the Reggettz homicides:

(1)     Petitioner lived in close proximity to the Reggettz home;

(2)     Trooper Smith had a newspaper article that indicated Petitioner had used a .25 caliber revolver in a crime in Ohio and that a .25 caliber revolver was used in the Moose Club shooting;

(3)     Petitioner indicated to a friend he desired to burglarize the Reggettz home.

At the same time, Trooper Smith testified he had knowledge of 1 and 2 above before 30 January, 1980, when he unlawfully extracted blood from Petitioner. More importantly, Trooper Smith testified that on 30 January, 1980, he did not have reasonable grounds to believe Petitioner committed the Reggettz murders. All evidence indicates no facts were added to the state police investigation which would enhance probable cause between 30 January and 22 April, 1980, when the second blood was taken from Petitioner.

- 23 -

Consent is not an issue in the taking of Petitioner's blood on 22 April, 1980, because assistant prosecuting attorney, Chuck Pettry, who accompanied the troopers to Ohio to extract the blood, testified in the suppression hearing that he did not attempt to secure Petitioner's consent because he, Pettry, did not consider the taking of Petitioner's blood a search and seizure under the Fourth Amendment to the United States Constitution.

In *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed.2d 183 (1952), the Supreme Court stated that due process of law precludes convictions brought about by methods which offend a sense of justice. "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his [body]."

On the facts of Petitioner's case, a parallel can be drawn with *Rochin* and its progeny in that West Virginia law enforcement officers cannot establish probable cause evidence from seizing Petitioner's blood without pursuing a search warrant based on independently stated factual probable cause. There was no probable cause evidence until *after* the illegally extracted blood samples were obtained. Additionally, there was no danger that the evidence (blood) would disappear.

In obtaining samples of Petitioner's blood under forced circumstances (which strain of blood was, according to Zain, consistent with that found at the scene of the homicides of the Reggetz family; (*See* Contention (d.), *supra*)) the blood samples resulted in incriminating evidence prejudicial to Petitioner.

The United States Supreme Court has indicated where there is probable cause to believe one has committed a crime, scientific tests and intrusions of the body are constitutionally permissible. In *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1975), the Court held that when the defendant voluntarily appeared at the police station for questioning on the strangulation of his wife, the warrantless taking of scrapings from the defendant's fingernails was permissible because of independent existing probable cause. Probable cause must first exist because the guidelines and standards relating to search and seizure under the Fourth Amendment applies.

The touchstone of the Fourth Amendment is the protection of privacy, and to that end, it prohibits unreasonable invasions without a warrant. Facts are the proper basis upon which probable cause for the issuance of a search warrant is to be ascertained. Petitioner submits that his blood samples at issue were not taken incident to a lawful arrest, nor, as admitted to by all officers in this case, was there a reasonable belief or probable cause to believe Petitioner had committed the homicides of the Reggettz family.

- 24 -

Concerted court precedent indicates that, since Petitioner's rights were violated when a sample of his blood was obtained, the blood sample and the results thereof should be excluded from evidence in a trial on the merits of guilt. Physical by products of illegally obtained statements are inadmissible during a trial of the defendant as "poisonous fruit" of illegal statements. Such physical evidence is protected by the Fourth Amendment, and the exclusionary sanction applies to any fruits of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention. The exclusionary rule has primarily rested on the judgment that the importance of deterring police conduct that may invade the constitutional rights of individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal trial against the victim of the illegal search and seizure. The rule's prohibition applies to such direct evidence as well as to "fruit of the poisonous tree"—secondary evidence derived from the illegally seized evidence itself. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

It is not debated that on 30 January, 1980, troopers of the West Virginia Department of Public Safety violated Petitioner's rights by extracting a blood sample from him while he was incarcerated in the state of Ohio. More importantly, during that meeting, certain information was secured which was used at trial. Petitioner supplied the troopers with the names of his friends. After leaving Ohio, the troopers contacted William Johnson and took a written statement which tended to incriminate Petitioner.

Also, Trooper Williams testified that after the 22 April, 1980, meeting with Petitioner, where blood was again extracted, upon a court order, but without probable cause, that "[W]e obtained [another] written statement from William Johnson[.]" That statement alleged that Petitioner had indicated he desired to burglarize the Reggettz home and that Petitioner had given Arbutus Johnson flatware that came from the Reggettz home. The trooper admits this statement was not taken until after the blood laboratory results on Petitioner were disclosed and after the trooper came to the conclusion Petitioner was a suspect. Thereafter, written statements were taken from Arbutus Johnson concerning the flatware allegedly stolen from the Reggettz residence as well as the flatware being secured.

Decisions on this issue indicate that where an illegal search confrontation has provided the prosecution with the names and later testimony of witnesses it might not have otherwise acquired such are inadmissible as the fruits of an illegal search. The blood sample taken from Petitioner without probable cause constituted illegally obtained evidence which

should have been suppressed, just as all fruits of the search and seizure, i.e., flatware, statements of William and Arbutus Johnson, and alleged confessions should have been.

If it had not been for the totality of the circumstances, i.e., unlawful extraction of Petitioner's blood on 30 January, 1980, which resulted in statements being taken from William and Arbutus Johnson and which resulted in securing the flatware against Petitioner, and the unlawful extraction of Petitioner's blood on 22 April, 1980, which resulted in a second statement from William and Arbutus Johnson, Petitioner would not have even been a suspect in the murders of the Reggettz family, thus negating the possibility of securing inculpatory statements from Petitioner by Troopers Williams and Smith on 28 October, 1980, and by Troopers Woodyard and Allen on 30 October, 1980.

The confessions are a direct result of the illegal search and seizures of Petitioner's blood carried out by representatives of West Virginia on 30 January, and 22 April, 1980, and should have been excluded from trial. The trial court abused its discretion and committed reversible error when it ruled contrary thereto.

It is submitted at the outset that to have required Petitioner to submit to the withdrawal of his blood for testing against his will and without his consent and over his objection is violative of his Fifth Amendment privilege against self-incrimination and is a denial of his right to due process of law as being fundamentally unfair.

The case of *Schmerber v. California, supra,* involved the implied consent to submit to blood sample testing by an operator of a motor vehicle. The United States Supreme Court ruled that the accused's privilege against self-incrimination had not been violated, reasoning that since the blood test evidence, although an incriminating product of compulsion, was neither Schmerber's testimony nor evidence relating to some communicative act or writing by him. Therefore, it was not inadmissible on privilege grounds. That position has been followed in a plethora of cases involving driving under the influence and implied consent matters. Because the "implied consent" statute was at issue in *Schmerber,* the defendant there could reasonably expect and anticipate that the alcoholic content of his blood was directly in issue.

In the present case, the blood alcohol content of Petitioner is not directly an issue. The results of any testing of blood taken from Petitioner against his will, without his consent, and over his objection upon the invocation of his privilege against self-incrimination can only be used collaterally to confirm or corroborate the compatibility of Petitioner's blood type with the blood type of blood smears found at the residence where the alleged homicides occurred. Such evidence is merely circumstantial at best. Petitioner should not be required to submit to a process involving the intrusive violation of his very person against his will, without his consent, over his objection and after his assertion of his privilege against self-incrimination when there is no reasonable causal relationship of the test sought to be administered on the

body of Petitioner and the crime in question.

If the extraction from Petitioner and the use of the results of such tests at trial against him is some communication or testimony from inside the person of the Petitioner, contrary to *Schmerber*, then the Petitioner was entitled to the constitutionally afforded privilege against self-incrimination if he desires that no such communication from him be given to state officials for use against him. If, in fact, the extraction of Petitioner's blood, for the purpose of using the results of such tests of Petitioner's blood, was taken involuntarily, without his consent, and over his objection, must then be inadmissible hearsay which, if desired to be used by the state, can only be prejudicial to Petitioner and, hence, reversible error.

To allow the state to use the results of the tests performed upon the blood samples taken from Petitioner who was required and compelled to submit to the extraction of his own blood for purposes of using the same against him at trial and which would materially assist the state in obtaining evidence to be used against Petitioner in a criminal trial could only constitute prejudicial and reversible error.

Although the blood samples taken from Petitioner were taken after an order was obtained from an Ohio court, the tests on Petitioner's blood samples must be admissible under West Virginia law, and there was no express authority for the admissions of such tests or analyses into evidence before a West Virginia court. Instead, a determination of probable cause seems more reasonable before such blood samples can be obtained, and yet the police officers did not have probable cause against Petitioner until after the blood samples were obtained. The blood samples taken against his will and without his consent give the state the probable cause evidence it needed. In other words, the probable cause evidence against Petitioner was obtained in violation of his Fifth Amendment right against self-incrimination.

The taking of Petitioner's blood constituted a communication from inside Petitioner's body much like a verbal confession, and as such is protected by the Fifth Amendment to the United States Constitution. The extraction of the blood itself is protected by the protection against unlawful search and seizures forbidden by the Fourth Amendment to the United States Constitution as made applicable to the states through the Fourteenth Amendment. To have permitted such tests or analyses to go into evidence in Petitioner's trial constituted prejudicial and reversible error. Importantly, all "fruits" of the blood sample, i.e., statements of William and Arbutus Johnson, flatware, and the confessions later obtained from Petitioner should have been excluded from the evidence. The trial court's ruling in opposition thereto was an abuse of discretion and reversible error.

g.    IMPROPER CLOSING ARGUMENTS BY THE PROSECUTION DENIED
      THE PETITIONER A FAIR TRIAL.

When all was said and done, the trial of this case came down to the simple matter of
which confessor the jury was willing to believe.  Both the Petitioner and Paul Reggettz had
confessed to the murders.  Both had unsuccessfully attacked their confessions as being
unconstitutionally coerced.  Paul Reggettz testified for the state.  He told the jury of the
pressures and tactics the police used to illegally extract his confession.  The jury saw him
testify; they heard his version of the story.  The petitioner, on the other hand, invoked his
constitutional right not to testify.  The jury had only his confession to go by.  The significance
of this fact was not lost on the prosecution in its summation.  Repeated references were made
in relation to Mr. Reggettz such as:

> [Y]ou saw him on the stand.  He told you... (Tr. 1322); Paul told you.... You
> heard him say it.  (Tr. 1323); Paul Reggettz told you [about the interrogation];
> He told you how they fired questions at him; You heard what Paul said [about
> the interrogation].  (Tr. 1324); Paul told you that he just couldn't take it [the
> interrogation].  (Tr. 1326); You saw Paul Reggettz on the stand.  He told you...
> (Tr. 1330);  And now Paul Reggettz says – he's able to testify and he can
> say... (Tr. 1386).

References were also made with regard to the petitioner:

> John Moss told you... (Tr. 1330); [Y]ou heard the defendant on the stand... (Tr.
> 1332); And then John testified that he....  That's what he told you (Tr. 1335).

Contrary to the state's argument, however, Petitioner did not testify.  He was never on
the stand before the jury.  He told the jury nothing.  The jury was aware of that fact and they
were made even more aware of it by the state's improper remarks that Petitioner had taken
the stand, through his "confessions," and that he had testified.  This ploy was designed with
one purpose in mind.  To draw attention to the failure of Petitioner to testify, deny his
confession, and to assert his innocence.

> I want you to ask defense counsel–again, ask them to explain how Paul
> Reggettz's confession changes any of the evidence against John Moss.  See
> if they can explain it.  (Tr. 1331).
>
> Did you notice...they didn't talk about the blood?  Did you notice that there is no
> explanation.... (Tr. 1370).
>
> He didn't necessarily tell the whole story.  (Tr. 1376).
>
> Why did he kill [her]?  He doesn't say.... (Tr. 1377).

Those comments also drew the attention of the jury to the possibility of special facts
known by the prosecutor that they, the jurors, were not privy to; it attacked opposing counsel's

- 28 -

strategy and/or presentation of his case; and was a comment on Petitioner's, or his witnesses' credibility.

Taken as a whole, the state's remarks in closing amounted to improper comments on the failure of Petitioner to testify and infused the entire trial process with so a fundamental unfairness as to deprive Petitioner the guarantees of a fair trial. *State v. Starcher*, 282 S.E.2d 877 (W.Va. 1981); *State v. Nuckolls*, 273 S.E.2d (W.Va. 1980); *State v. Noe*, 230 S.E.2d 826 (W.Va. 1976).

The state also made the following comments:

> He knew Vanessa Reggettz was there by herself with her two children, didn't he? He knew that her husband worked at night. He didn't necessarily tell the whole story. Perhaps that's why Vanessa Reggettz's panties are on the bed—not on her body. Why her sanitary napkin was on the floor—a homemade sanitary napkin, not a store bought one, something has no pins to secure it, no tape to secure it, no belt to secure it. It was secured in place by her underwear, but her underwear is off her body and her sanitary napkin is on the floor.
>
> He did leave out a struggle in the front bedroom and he left out taking off her underwear. [(Emphasis added.) (Tr. 1376 and 1377)].

At the conclusion of the State's argument, Petitioner's counsel asked to approach the bench. The court, *sua sponte*, said, "I know you are going to raise an objection. [I]s it something that you think you want a curative instruction on or is it instructional?" (Tr. 1391). Petitioner's counsel replied, "I don't know." (Tr. 1391). The court continued: "The reason I ask is this, if you don't think it's something that can be taken care of by a curative instruction..." (Tr. 1391). "You made the timely request to object. I take it you object to the inference drawn from the panties and such?" (Tr. 1392). Defendant's counsel replied; "[Y]es." (Tr. 1392).

Petitioner's counsel moved for a motion for mistrial. (Tr. 1395). The court stated; "I overruled the motion for mistrial, and I will deny the request for a curative instruction." (Tr. 1396).

To justify the granting of a mistrial or new trial, the misconduct of the prosecutor must be so egregious as to render ineffectual the type of curative measure employed. *United States v. Weatherless*, 734 F.2d 179, 182, (4th Cir. 1984). The court immediately recognized the egregious nature of the state's inflammatory remarks, and understood that a curative instruction would not nullify the prejudicial inferences to the defendant. The court, therefore, should have granted the mistrial.

There was absolutely no basis for the state to make an argument that the defendant had sex with the victim, Vanessa Reggettz. No evidence was put forth during the course of

the trial that remotely indicated that sex played any part in the crime.

The type of conduct engaged in by the state in Petitioner's case was interdicted by this Court: "The crime of which this defendant is accused is so revolting that it is difficult for the average jury to give the one accused the benefit of a reasonable doubt. Its very nature should have prompted the prosecuting attorney to exercise the highest degree of decorum in the conduct of the trial." *State v. Boyd*, 233 S.E.2d 710, 717 (W.Va. 1977).

Instead of exercising discretion, the state graphically and deliberately drew a mental image of a homemade sanitary napkin. What possible relevance does the fact the victim's sanitary napkin is homemade, has no pins, no tape and no belt to secure it have? None. Such conduct is not in consonance with the expectation that the prosecution will exercise the highest degree of decorum in the conduct of a trial. The only possible inference that one can make from the aforementioned argument is that the prosecutor was conscious of the fact she was talking to a white jury panel, the majority of whom were women, about a black defendant. It would have been damning if it had been a white defendant, but the implication of a black man having sex with a white woman, during her menstruation, is greater.

The litany of the sanitary napkin and its particulars were deliberately designed only to inflame the jury. The impact of a prosecutor's remarks is to be determined by considering the tendency of such remarks to mislead the jury, whether the remarks are isolated or extensive, and whether the remarks were deliberate or accidental. The remarks made by the state here were deliberate and without basis in fact. "A prosecuting attorney has a duty not to make statements concerning facts not in evidence or not inferable from the evidence." *State v. Critzer*, 280 S.E.2d 288 (W.Va. 1981).

The United States Supreme Court sets forth the following guidance to prosecutors: "He may prosecute with earnestness and vigor–indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much her duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935).

The state waited until its closing rebuttal argument to convey the aforementioned sex allegations, knowing that Petitioner's counsel would be unable to mitigate the prejudicial harm her inflammatory remarks would make. As has been noted, curative instructions would not be able to erase the mental image of the defendant, a black man, having sex with the attractive white victim, Vanessa Reggettz, during her menstrual period, a taboo that most people find less than pleasant. Only a new trial could cure the misconduct of the prosecutor.

h.    BLOOD TEST RESULTS AND REPORTS OF OFFERED SEROLOGY EVIDENCE BY TROOPER MURPHY WERE FALSIFIED OR SUBSTANTIALLY INCORRECT.

The offered evidence complained of by Petitioner by is connected to a Blood Grouping Table Analysis Sheet. (Hereinafter "Table.") The Table clearly demonstrates that, contrary to what was testified to by members of the West Virginia State Police and/or Crime Laboratory, Serology Division, other than Fred Zain, a known sample of Petitioner's blood was in their possession in January, 1980. The only way the serologists could have had a known sample of Petitioner's blood at that time was as a result of the illegally obtained sample taken from Petitioner in January, 1980. The illegally extracted sample is what serologists, other than Fred Zain, used to link Petitioner to the crime scene, and provided probable cause to direct authorities' investigation solely on Petitioner. Without such erroneous and/or intentionally false, misleading evidence, the other evidence, no matter how circumstantial, erroneous, or coerced it may have been, would not have been presented against Petitioner.

j.    PETITIONER'S GUARANTEE TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW WERE VIOLATED WHEN THE KANAWHA COUNTY CIRCUIT COURT SUMMARILY DENIED AND DISMISSED PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO THIS COURT'S RULING IN THE CASE: *IN THE MATTER OF: RENEWED INVESTIGATION OF THE STATE POLICE CRIME LABORATORY, SEROLOGY DIVISION*, AND THIS COURT REFUSED TO REVIEW PETITIONER'S APPEAL OF THAT SUMMARY DENIAL AND DISMISSAL.

Both, the West Virginia Constitution and the Constitution of the United States guarantee that all defendants be treated equally in the sight of the law. Your Petitioner herein was not.

On or about 16, June, 2006, this Court filed its decision in the case; *In The Matter Of: Renewed Investigation Of The State Police Crime Laboratory, Serology Division*, West Virginia Supreme Court No. 32885, a case that has been, erroneously, dubbed "Zain III." In its decision, the Court stated the following syllabus points:

> A prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence and who challenges his or her conviction based on the serology evidence is to be grated a full habeas corpus hearing on the issue of the serology evidence. The prisoner is to be represented by counsel unless he or she knowingly and intelligently waives that right. The circuit court is to review the serology evidence presented by the prisoner with searching and painstaking scrutiny. At the close of the evidence, the circuit court is to draft a comprehensive order which includes detailed findings as to the truth or falsity of the serology evidence and if the evidence is found to be false, whether the prisoner has shown the necessity of a new trial based on the five factors set forth in the syllabus of *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979). *Syllabus Point* 4.

- 31 -

> A prisoner who was convicted between 1979 and 1999 and against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence may bring a petition for a writ of habeas corpus based on the serology evidence despite the fact that the prisoner brought a prior habeas corpus challenge to the same serology evidence, and the challenge was finally adjudicated. *Syllabus Point* 6.

Petitioner was tried and convicted in the time frames set forth by the Court; he previously had a Zain habeas proceeding; serologists other than Fred Zain offered evidence leading to Petitioner's convictions and sentences. Despite the fact, however, that Petitioner filed a petition for writ of habeas corpus alleging that serologists, other than Fred Zain, offered evidence, the Kanawha County Circuit Court summarily denied the petition without appointing counsel, without conducting a full habeas corpus hearing on the issue of the serology evidence, and by not reviewing the serology evidence presented by the Petitioner with searching and painstaking scrutiny. The court did not draft a comprehensive order as to the findings of the truth or falsity of the evidence, either.

Additionally, although Petitioner did have a Zain proceeding and filed a *pro se* petition for writ of habeas corpus relief prior to filing his petition pursuant to *Renewed Investigation*, no Losh checklist of grounds has ever been signed and executed. The Kanawha Court merely summarily denied and dismissed all of Petitioner's contentions in his *pro se* petition even though those contentions, if true, would entitle Petitioner to habeas corpus relief. This Court, also refused to review Petitioner's *pro se* petition on appeal of the summary denial and dismissal of Petitioner's previous petition.

This petitioner is being singled out to not receive the prophylactic remedial measures this Court found necessary for the administration of justice. That is, unless this Court wishes to merely give lip service to their oaths to uphold the constitution and laws of this state as well as the constitution of the United States, and never intended to afford all prisoners, as stated in *Renewed Investigation*, the procedures announced.


## IV. CONCLUSION

Petitioner herein has made a *prima facie* showing that, if the facts set forth in this petition and memorandum are true, he has colorable grounds for habeas corpus relief. However, Petitioner requires the appointment of counsel to review the record, etc., (*see* Motion for Appointment of Counsel, filed contemporaneously herewith) and to thereafter advise Petitioner of all the grounds available to him.

The contentions presented here by Petitioner have not been previously and fully litigated or waived in any proceeding or proceedings prior to the instant one. Even though Petitioner had a special Zain habeas proceeding, including a Final Order by the trial court and a

decision by this Court, (*Moss v. Trent*, 603 S.E.2d 656 (2004), no omnibus hearing, as outlined in *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981), was conducted by the court in the Zain proceeding and no Losh list was signed or executed, thus, Petitioner was not questioned on issues of waiver. The trial court's Order denying Petitioner's Zain petition was void of any notation that Petitioner was advised concerning his obligation to raise all grounds for post-conviction relief in that, or any, proceeding. The Zain proceeding was the only proceeding Petitioner had counsel and has not been afforded a full and fair opportunity to present his remaining claims.

## V. PRAYER FOR RELIEF

WHEREFORE, Petitioner prays now and forevermore that the Court issue his petition for writ of habeas corpus and direct the respondent warden to show cause, if any he can, why Petitioner's convictions and sentences on three counts of first degree murder should not hereafter be set aside as the same are void as a matter of constitutional law, and for any further relief as the court deems just and necessary.

Respectfully submitted by:

John Moss, III
One Mountainside Way
Mt Olive, WV 25185
MOCC Telephone: 304.442.7213

On this, the 30th day of July, 2007.

Petitioner proceeding *pro se.*

-33-

## VI. VERIFICATION

I, John Moss, III, by my signature below, do hereby verify that I have read, or have had read to me, the foregoing petition and memorandum for writ of habeas corpus. That the facts and allegations contained therein are true and correct to the best of my knowledge, except as to those facts and allegations found to be upon information and belief, and, as to those, I believe them to be true.

John Moss, III - *pro se* Petitioner

Executed on the 29th day of July, 2007.

My commission expires: June 5, 2016

```
OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SANDRA G. LAWRENCE
Mt. Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185
My Commission Expires June 5, 2016
```

NOTARY PUBLIC

- 34 -

## VII. MEMORANDUM OF PARTIES

The Petitioner herein is:

John Moss, III, DOC# 13734
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, West Virginia 25185

proceeding *pro se.*

The respondent and his address is:

Thomas L. McBride, Warden
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, West Virginia 25185

Represented by the Kanawha County Prosecuting Attorneys Office, whose address is:

Kanawha County Prosecuting Attorney
700 Washington St. E.
Suite 400
Charleston, WV 25301

- 35 -

No. _____

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

---

STATE OF WEST VIRGINIA, EX REL.
JOHN MOSS, III,

Petitioner,

vs.

THOMAS L. McBRIDE, Warden
Mount Olive Correctional Complex,

Respondent.

---

## CERTIFICATE OF SERVICE

I, John Moss, III, by my signature below, do hereby certify that a copy of the foregoing *pro se Petition Under W.Va. Code §53-4A-1 For Writ of Habeas Corpus*, with *Memorandum*, *Post-Conviction Habeas Corpus Form Application To Proceed In Forma Pauperis And Affidavit*, and *Motion For The Appointment Of Counsel*, has been served upon the respondent by handing true and exact copies thereof to prison officials this, the 30th day of July, 2007, for mailing in the regular course of the United States Mail, postage prepaid, addressed as follows:

Kanawha County Prosecuting Attorney
700 Washington St. E.
Suite 400
Charleston, WV 25301

John Moss, III, *pro se Petitioner*

FILE COPY

DO NOT REMOVE
FILE COPY

**APPENDIX B**

## POST-CONVICTION HABEAS CORPUS FORM
## APPLICATION TO PROCEED IN FORMA PAUPERIS
## AND AFFIDAVIT

FILED

JUL 3 1 2007

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

| STATE OF WEST VIRGINIA | County Kanawha | |
|---|---|---|
| Name John Moss, III | Prisoner No. 13734 | Case No. 82-F-221 |

| Place of Confinement | | |
|---|---|---|
| | Mount Olive Correctional Complex<br>One Mountainside Way<br>Mt. Olive, WV 25185 | GRANT/REFUSE/ACCEPT/Date: 9/13/07  5-0<br>Recused/Not Participating _____<br><br>Chief Justice _____ |

| Name of Petitioner (include name under which convicted) | | Name of Respondent (authorized person having custody of petitioner) |
|---|---|---|
| John Moss, III | v. | Thomas McBride, Warden |

NOTICE:    This form is only to be used by incarcerated persons seeking post-conviction habeas corpus relief pursuant to W.Va. Code § 53-4A-1, *et seq.*

◆ ◆ ◆

I, John Moss, III _____, declare that I am the petitioner in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs, I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the petition.

In support of this application, I answer the following questions under penalty of perjury:

1.    State the place of your incarceration Mount Olive Correctional Complex _____.

Are you employed at the institution? No _____    Do you receive any payment from the institution? No _____

Have the institution fill out the Certificate portion of this application and attach a ledger sheet from the institution(s) of your incarceration showing at least the past six months' transactions.

2.    In the past twelve months have you received any money from any of the following sources?

| | | | |
|---|---|---|---|
| a. | Business, profession or other self-employment | Yes X | No ☐ |
| b. | Rent payments, interest or dividends | Yes ☐ | No X |
| c. | Pensions, annuities or life insurance payments | Yes ☐ | No X |
| d. | Disability or workers compensation payments | Yes ☐ | No X |
| e. | Gifts or inheritances | Yes X | No ☐ |
| f. | Any other sources | Yes ☐ | No X |

If the answer to any of the above is "Yes" describe each source of money and state the amount received and what you expect you will continue to receive. I make a small amount from my arts and crafts shop. I sometimes receive small gifts from friends and family. $100.00 - $100.00

3. Other than any institutional accounts, do you have any cash, checking or savings accounts?  ☐ Yes  X No

If "Yes" state the total amount _____

4. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or other valuable property?

☐ Yes      X No

If "Yes" describe the property and state its value.

_____

_____

5. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.

   N/A _____

_____

_____

I declare under penalty of perjury that the above information is true and correct.

_July 30, 2007_          _John Moore_
   DATE                    SIGNATURE OF APPLICANT

## CERTIFICATE

## (To be completed by the institution of incarceration)

I certify that the applicant named herein has the sum of $ __120.32__ in a trustee spending account to his/her credit

at (name of institution) __Mount Olive Correctional Complex__ . I further certify that during the past

six months the applicant's average balance was $ __6.78__ , and the average of monthly deposits was

$ __243.94__

_30 July 2007_          _A. Oats_
   DATE                    SIGNATURE OF AUTHORIZED OFFICER

AMBER                    MOUNT OLIVE CORRECTIONAL COMPLEX                    OTRTASTA

                    T R U S T    A C C O U N T    S T A T E M E N T

DOC# : 0000013734      Name: MOSS, JOHN JR.                        BKG#        1998520
LOCATION:   MOCC-ELM

ACCOUNT BALANCES  TOTAL :          125.90    CURRENT:       125.90   HOLD:       0.00

                                  01/01/2007       07/30/2007

SUB ACCOUNT                     START BALANCE     END BALANCE

DRAWING ACCOUNT                     0.01            40.32
VOLUNTARY SAVINGS                   0.00            80.00
MEMO CONTROL                        0.00             0.00
MANDATORY CONTROL                   5.57             5.58

                        DEBTS AND OBLIGATIONS
WRITE
OFF    TYPE    PAYABLE                  INFO NUMBER          AMOUNT OWING        AMOUNT PAID


        TRANSACTION DESCRIPTIONS --              MANDATORY CONTROL  SUB-ACCOUNT

DATE          TRANSACTION DESCRIPTION       RECEIPT #   TRANSACTION AMT          BALANCE

04/27/2007    Interest Distribution                               0.00             5.57
04/27/2007    Interest Distribution                               0.00             5.57
04/27/2007    Interest Distribution                               0.00             5.57
05/01/2007    Interest Distribution                               0.00             5.57
05/04/2007    Interest Distribution                               0.00             5.57
05/11/2007    Interest Distribution                               0.00             5.57
05/11/2007    Interest Distribution                               0.00             5.57
05/11/2007    Interest Distribution                               0.00             5.57
05/22/2007    Interest Distribution                               0.00             5.57
06/01/2007    Interest Distribution                               0.00             5.57
07/27/2007    Interest Distribution                               0.01             5.58

        TRANSACTION DESCRIPTIONS --               DRAWING ACCOUNT  SUB-ACCOUNT

DATE          TRANSACTION DESCRIPTION       RECEIPT #   TRANSACTION AMT          BALANCE

01/02/2007    Other Receipt STAFF SALES                          13.50            13.51
01/02/2007    I TO I                                             13.50            27.01
01/02/2007    SS                                         (       17.94)            9.07
01/03/2007    CRS SAL ORD #952931                         (        7.91)            1.16
01/04/2007    CRS SAL ORD #953585                         (        0.54)            0.62
01/10/2007    Postal Receipt C GALLOWAY 660797                   30.00            30.62
01/10/2007    Postage Draw 01/09/07                       (        0.78)           29.84
01/10/2007    CRS SAL ORD #955380                         (        1.50)           28.34
01/10/2007    CRS SAL ORD #955496                         (        8.93)           19.41

07/30/2007 09:14                 DEPARTMENT OF CORRECTIONS              Page    2 Of    8

AMBER                       MOUNT OLIVE CORRECTIONAL COMPLEX                    OTRTASTA

               T R U S T   A C C O U N T   S T A T E M E N T


DOC#  : 0000013734      Name: MOSS, JOHN JR.                    BKG#       1998520
LOCATION:   MOCC-ELM

| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|-------------------------|-----------|-----------------|---------|
| 01/10/2007 | CRS SAL ORD #955542 | | (      11.07) | 8.34 |
| 01/11/2007 | CRS SAL ORD #955825 | | (       7.23) | 1.11 |
| 01/15/2007 | CRS SAL ORD #956855 | | (       0.58) | 0.53 |
| 01/16/2007 | Postal Receipt C MOSS 236622 | | 20.00 | 20.53 |
| 01/16/2007 | Other Receipt STAFF SALES | | 175.95 | 196.48 |
| 01/16/2007 | SS | | (      17.53) | 178.95 |
| 01/16/2007 | GRIZZLY INDUSTRIES | | (      36.85) | 142.10 |
| 01/18/2007 | Postal Receipt M GIBSON 237793 | | 50.00 | 192.10 |
| 01/18/2007 | CRS SAL ORD #957726 | | (      27.81) | 164.29 |
| 01/18/2007 | CRS SAL ORD #958239 | | (       6.35) | 157.94 |
| 01/18/2007 | CRS SAL ORD #958240 | | (       4.57) | 153.37 |
| 01/18/2007 | CRS SAL ORD #958242 | | (       1.32) | 152.05 |
| 01/21/2007 | CRS SAL ORD #958943 | | (      23.60) | 128.45 |
| 01/22/2007 | CRS SAL ORD #959618 | | (       3.00) | 125.45 |
| 01/23/2007 | OENN STATE INDUSTRIES | | (     109.10) | 16.35 |
| 01/24/2007 | CRS SAL ORD #960253 | | (       3.92) | 12.43 |
| 01/24/2007 | CRS SAL ORD #960363 | | (       6.55) | 5.88 |
| 01/25/2007 | CRS SAL ORD #960837 | | (       1.84) | 4.04 |
| 01/27/2007 | CRS SAL ORD #961397 | | (       3.97) | 0.07 |
| 02/06/2007 | Postal Receipt J EDDENS 267405 | | 5.00 | 5.07 |
| 02/06/2007 | Other Receipt STAFF SALES | | 1.70 | 6.77 |
| 02/06/2007 | I TO I | | 27.00 | 33.77 |
| 02/06/2007 | SS | | (       2.91) | 30.86 |
| 02/06/2007 | CRS SAL ORD #964538 | | (      21.72) | 9.14 |
| 02/06/2007 | CRS SAL ORD #964548 | | (       3.27) | 5.87 |
| 02/07/2007 | CRS SAL ORD #964762 | | (       0.58) | 5.29 |
| 02/07/2007 | CRS SAL ORD #964840 | | (       2.22) | 3.07 |
| 02/08/2007 | CRS SAL ORD #965215 | | (       2.66) | 0.41 |
| 02/09/2007 | Postal Receipt C GALLOWAY 267558 | | 30.00 | 30.41 |
| 02/09/2007 | Postage Draw 01/31/07 | | (       8.44) | 21.97 |
| 02/10/2007 | CRS SAL ORD #965790 | | (      13.90) | 8.07 |
| 02/10/2007 | CRS SAL ORD #965795 | | (       7.35) | 0.72 |
| 02/14/2007 | CRS SAL ORD #967179 | | (       0.57) | 0.15 |
| 02/15/2007 | Regular Payroll Receipt | | 40.00 | 40.15 |
| 02/15/2007 | Medical Payable 01/23/07 | | (       3.00) | 37.15 |

07/30/2007 09:14        DEPARTMENT OF CORRECTIONS        Page    3 Of    8

AMBER                MOUNT OLIVE CORRECTIONAL COMPLEX                    OTRTASTA

        T R U S T   A C C O U N T   S T A T E M E N T


DOC# : 0000013734    Name: MOSS, JOHN JR.                    BKG#      1998520
LOCATION:   MOCC-ELM


| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|------------------------|-----------|-----------------|---------|
| 02/15/2007 | Temporary Transfer FOOD | | ( 21.16) | 15.99 |
| 02/17/2007 | CRS SAL ORD #967437 | | ( 15.51) | 0.48 |
| 02/21/2007 | Postal Receipt C GALLOWAY 267249 | | 100.00 | 100.48 |
| 02/21/2007 | CRS SAL ORD #969180 | | ( 6.12) | 94.36 |
| 02/22/2007 | PENN STATE INDUSTRIES | | ( 67.75) | 26.61 |
| 02/22/2007 | CRS SAL ORD #969491 | | ( 0.68) | 25.93 |
| 02/22/2007 | CRS SAL ORD #969588 | | ( 3.94) | 21.99 |
| 02/22/2007 | CRS SAL ORD #969756 | | ( 21.73) | 0.26 |
| 03/06/2007 | Postal Receipt C GALLOWAY 360859 | | 100.00 | 100.26 |
| 03/06/2007 | CRS SAL ORD #973694 | | ( 3.49) | 96.77 |
| 03/06/2007 | CRS SAL ORD #973701 | | ( 25.50) | 71.27 |
| 03/06/2007 | CRS SAL ORD #973722 | | ( 6.99) | 64.28 |
| 03/07/2007 | CRS SAL ORD #974007 | | ( 2.64) | 61.64 |
| 03/08/2007 | CRS SAL ORD #974451 | | ( 6.31) | 55.33 |
| 03/08/2007 | CRS SAL ORD #974486 | | ( 18.11) | 37.22 |
| 03/08/2007 | CRS SAL ORD #974651 | | ( 10.51) | 26.71 |
| 03/08/2007 | CRS SAL ORD #974653 | | ( 4.36) | 22.35 |
| 03/12/2007 | CRS SAL ORD #975955 | | ( 3.66) | 18.69 |
| 03/13/2007 | CRS SAL ORD #976315 | | ( 4.31) | 14.38 |
| 03/14/2007 | CRS SAL ORD #976597 | | ( 10.13) | 4.25 |
| 03/14/2007 | CEC SAL ORD #976597 | | 2.28 | 6.53 |
| 03/14/2007 | CRS SAL ORD #976601 | | ( 1.37) | 5.16 |
| 03/20/2007 | CRS SAL ORD #978526 | | ( 3.70) | 1.46 |
| 03/21/2007 | CRS SAL ORD #978767 | | ( 1.36) | 0.10 |
| 03/22/2007 | Other Receipt STAFF SALES | | 18.00 | 18.10 |
| 03/22/2007 | I TO I | | ( 7.20) | 10.90 |
| 03/22/2007 | AC 10% | | ( 0.80) | 10.10 |
| 03/22/2007 | TAX | | ( 0.48) | 9.62 |
| 03/22/2007 | I TO I | | ( 6.30) | 3.32 |
| 03/22/2007 | AC 10% | | ( 0.70) | 2.62 |
| 03/22/2007 | TAX | | ( 0.42) | 2.20 |
| 03/22/2007 | Postage Draw 03/22/07 | | ( 2.19) | 0.01 |
| 03/27/2007 | Other Receipt STAFF SALES | | 195.97 | 195.98 |
| 03/27/2007 | PENN STATE INDUSTRIES | | ( 162.70) | 33.28 |
| 03/28/2007 | CRS SAL ORD #981595 | | ( 4.77) | 28.51 |

```
07/30/2007 09:14          DEPARTMENT OF CORRECTIONS          Page    4 Of    8
AMBER                  MOUNT OLIVE CORRECTIONAL COMPLEX                OTRTASTA
                 T R U S T   A C C O U N T   S T A T E M E N T
```

```
DOC#  : 0000013734     Name:  MOSS, JOHN JR.                BKG#      1998520
LOCATION:   MOCC-ELM
```

| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|------------------------|-----------|-----------------|---------|
| 03/28/2007 | CRS SAL ORD #981894 | | ( 17.51) | 11.00 |
| 03/28/2007 | CRS SAL ORD #982053 | | ( 2.32) | 8.68 |
| 03/28/2007 | CRS SAL ORD #982054 | | ( 0.68) | 8.00 |
| 03/28/2007 | CRS SAL ORD #982055 | | ( 4.40) | 3.60 |
| 03/31/2007 | CRS SAL ORD #982975 | | ( 2.10) | 1.50 |
| 03/31/2007 | CRS SAL ORD #982977 | | ( 1.42) | 0.08 |
| 04/10/2007 | Postal Receipt C GALLOWAY 381190 | | 40.00 | 40.08 |
| 04/10/2007 | Other Receipt STAFF SALES | | 18.00 | 58.08 |
| 04/10/2007 | Other Receipt STAFF SALES | | 4.50 | 62.58 |
| 04/10/2007 | CRS SAL ORD #986559 | | ( 16.85) | 45.73 |
| 04/11/2007 | Postage Draw 04/11/07 | | ( 1.11) | 44.62 |
| 04/11/2007 | Postage Draw 04/11/07 | | ( 6.08) | 38.54 |
| 04/11/2007 | CRS SAL ORD #986801 | | ( 34.19) | 4.35 |
| 04/12/2007 | CRS SAL ORD #987248 | | ( 2.87) | 1.48 |
| 04/19/2007 | I TO I | | 9.00 | 10.48 |
| 04/19/2007 | CRS SAL ORD #989775 | | ( 4.06) | 6.42 |
| 04/19/2007 | CRS SAL ORD #989780 | | ( 4.26) | 2.16 |
| 04/22/2007 | CRS SAL ORD #990649 | | ( 1.46) | 0.70 |
| 04/24/2007 | CRS SAL ORD #591781 | | ( 0.68) | 0.02 |
| 04/25/2007 | Other Receipt STAFF SALES | 5 | 40.50 | 40.52 |
| 04/25/2007 | CRS SAL ORD #992026 | | ( 4.58) | 35.94 |
| 04/25/2007 | CRS SAL ORD #992330 | | 17.89) | 18.05 |
| 04/25/2007 | CRS SAL ORD #992337 | | ( 3.37) | 14.68 |
| 04/26/2007 | CRS SAL ORD #992633 | | ( 4.44) | 10.24 |
| 04/27/2007 | Postage Draw 4/27/07 | | ( 7.65) | 2.59 |
| 04/29/2007 | CRS SAL ORD #993644 | | ( 2.11) | 0.48 |
| 04/30/2007 | Postal Receipt M WOMACK 414941 | | 25.00 | 25.48 |
| 04/30/2007 | CRS SAL ORD #994137 | | ( 9.20) | 16.28 |
| 04/30/2007 | CRS SAL ORD #994142 | | ( 4.79) | 11.49 |
| 04/30/2007 | CRS SAL ORD #994144 | | ( 0.48) | 11.01 |
| 05/01/2007 | CRS SAL ORD #994215 | | ( 2.61) | 8.40 |
| 05/01/2007 | CRS SAL ORD #994477 | | ( 3.95) | 4.45 |
| 05/02/2007 | Media Lab 04/25/07 | | ( 3.00) | 1.45 |
| 05/02/2007 | CRS SAL ORD #994844 | | ( 1.42) | 0.03 |
| 05/04/2007 | Postal Receipt D MASON 414462 | | 20.00 | 20.03 |

07/30/2007 09:14      DEPARTMENT OF CORRECTIONS     Page   5 Of   8

AMBER            MOUNT OLIVE CORRECTIONAL COMPLEX      OTRTASTA

### T R U S T   A C C O U N T   S T A T E M E N T

DOC# : 0000013734    Name: MOSS, JOHN JR.          BKG#     1998520

LOCATION: MOCC-ELM

| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|------------------------|-----------|-----------------|---------|
| 05/05/2007 | CRS SAL ORD #995820 | | ( 13.61) | 6.42 |
| 05/05/2007 | CRS SAL ORD #995993 | | ( 2.84) | 3.58 |
| 05/07/2007 | CRS SAL ORD #996674 | | ( 0.78) | 2.80 |
| 05/08/2007 | Postal Receipt C GALLOWAY 414561 | | 50.00 | 52.80 |
| 05/08/2007 | CRS SAL ORD #997263 | | ( 5.94) | 46.86 |
| 05/08/2007 | CRS SAL ORD #997270 | | ( 1.59) | 45.27 |
| 05/09/2007 | CRS SAL ORD #997673 | | ( 7.11) | 38.16 |
| 05/09/2007 | CRS SAL ORD #997678 | | ( 3.41) | 34.75 |
| 05/10/2007 | CRS SAL ORD #998181 | | ( 14.62) | 20.13 |
| 05/10/2007 | CRS SAL ORD #998353 | | ( 2.38) | 17.75 |
| 05/12/2007 | CRS SAL ORD #998876 | | ( 3.01) | 14.74 |
| 05/12/2007 | CRS SAL ORD #998886 | | ( 1.05) | 13.69 |
| 05/13/2007 | CRS SAL ORD #999310 | | ( 2.28) | 11.41 |
| 05/13/2007 | CRS SAL ORD #999311 | | ( 3.90) | 7.51 |
| 05/14/2007 | Postal Receipt M WOMACK 289333 | | 20.00 | 27.51 |
| 05/14/2007 | CRS SAL ORD #999698 | | ( 3.06) | 24.45 |
| 05/14/2007 | CRS SAL ORD #999857 | | ( 3.17) | 21.28 |
| 05/16/2007 | Other Receipt STAFF SALES | | 18.00 | 39.28 |
| 05/16/2007 | I TO I | | 22.50 | 61.78 |
| 05/16/2007 | I TO I | | 9.00 | 70.78 |
| 05/16/2007 | SS- LUMBER | | ( 20.00) | 50.78 |
| 05/16/2007 | I TO I | | ( 9.00) | 41.78 |
| 05/16/2007 | AC 10% | | ( 1.00) | 40.78 |
| 05/16/2007 | AX | | ( 0.60) | 40.18 |
| 05/17/2007 | CRS SAL ORD #1000881 | | ( 5.03) | 35.15 |
| 05/18/2007 | Other Receipt STAFF SALES | | 13.50 | 48.65 |
| 05/20/2007 | CRS SAL ORD #1001867 | | ( 2.91) | 45.74 |
| 05/20/2007 | CRS SAL ORD #1001868 | | ( 5.91) | 39.83 |
| 05/21/2007 | CRS SAL ORD #1002386 | | ( 8.50) | 31.33 |
| 05/22/2007 | CRS SAL ORD #1002793 | | ( 3.06) | 28.27 |
| 05/23/2007 | Postage Draw 05/23/07 | | ( 8.37) | 19.90 |
| 05/23/2007 | Other Receipt STAFF SALES | | 90.00 | 109.90 |
| 05/24/2007 | CRS SAL ORD #1003123 | | ( 1.05) | 108.85 |
| 05/24/2007 | CRS SAL ORD #1003519 | | ( 9.16) | 99.69 |
| 05/24/2007 | CRS SAL ORD #1003521 | | ( 5.08) | 94.61 |

07/30/2007 09:14          DEPARTMENT OF CORRECTIONS          Page    6 Of    8

AMBER                 MOUNT OLIVE CORRECTIONAL COMPLEX                 OTRTASTA

                    T R U S T   A C C O U N T   S T A T E M E N T


DOC#  : 0000013734      Name: MOSS, JOHN JR.                    BKG#      1998520
LOCATION:   MOCC-ELM

| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|------------------------|-----------|-----------------|---------|
| 05/24/2007 | CRS SAL ORD #1003736 | | (    11.41) | 83.20 |
| 05/27/2007 | CRS SAL ORD #1004637 | | (    15.97) | 67.23 |
| 05/27/2007 | CRS SAL ORD #1004644 | | (     1.42) | 65.81 |
| 05/29/2007 | CRS SAL ORD #1004920 | | (     1.69) | 64.12 |
| 05/29/2007 | Sub-Account Transfer | | (    60.00) | 4.12 |
| 05/29/2007 | CRS SAL ORD #1005130 | | (     3.15) | 0.97 |
| 05/31/2007 | CRS SAL ORD #1006062 | | (     0.78) | 0.19 |
| 06/05/2007 | Sub-Account Transfer | | 60.00 | 60.19 |
| 06/05/2007 | CRS SAL ORD #1007794 | | (     8.95) | 51.24 |
| 06/05/2007 | CRS SAL ORD #1007795 | | (     0.42) | 50.82 |
| 06/06/2007 | CRS SAL ORD #1008050 | | (     2.68) | 48.14 |
| 06/07/2007 | GRIZZLY INDUSTRIAL | | (    25.90) | 22.24 |
| 06/07/2007 | CRS SAL ORD #1008518 | | (     5.30) | 16.94 |
| 06/07/2007 | CRS SAL ORD #1008839 | | (     6.36) | 10.58 |
| 06/07/2007 | CRS SAL ORD #1008857 | | (     1.42) | 9.16 |
| 06/07/2007 | CRS SAL ORD #1008859 | | (     2.57) | 6.59 |
| 06/09/2007 | CRS SAL ORD #1009233 | | (     3.42) | 3.17 |
| 06/10/2007 | CRS SAL ORD #1009574 | | (     2.62) | 0.55 |
| 06/13/2007 | Other Receipt STAFF SALES | | 54.00 | 54.55 |
| 06/13/2007 | ARMOR CRAFT | | (    17.40) | 37.15 |
| 06/13/2007 | CRS SAL ORD #1010794 | | (     3.25) | 33.90 |
| 06/13/2007 | CRS SAL ORD #1011008 | | (     2.66) | 31.24 |
| 06/13/2007 | CRS SAL ORD #1011009 | | (    11.08) | 20.16 |
| 06/14/2007 | Regular Payroll Receipt | | 40.00 | 60.16 |
| 06/15/2007 | I TO I | | 42.30 | 102.46 |
| 06/18/2007 | CRS SAL ORD #1012387 | | (    18.49) | 83.97 |
| 06/19/2007 | PENN STATE INDUSTRIES | | (    73.75) | 10.22 |
| 06/20/2007 | CRS SAL ORD #1013483 | | (     7.95) | 2.27 |
| 06/21/2007 | CRS SAL ORD #1014099 | | (     1.60) | 0.67 |
| 06/22/2007 | Postal Receipt R GIBSON 673505 | | 100.00 | 100.67 |
| 06/22/2007 | Postal Receipt R GIBSON 673506 | | 100.00 | 200.67 |
| 06/24/2007 | CRS SAL ORD #1014965 | | (     0.80) | 199.87 |
| 06/25/2007 | CRS SAL ORD #1015567 | | (    10.53) | 189.34 |
| 06/26/2007 | PENN STATE INDUSTRIES | | (   167.05) | 22.29 |
| 06/26/2007 | Postage Draw6/25/07 | | (     0.10) | 22.19 |

07/30/2007 09:14        DEPARTMENT OF CORRECTIONS       Page   7 Of   8

AMBER            MOUNT OLIVE CORRECTIONAL COMPLEX         OTRIASTA

T R U S T   A C C O U N T   S T A T E M E N T

DOC# : 0000013734    Name: MOSS, JOHN JR.              BKG#      1998520

LOCATION:   MOCC-ELM

| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|-------------------------|-----------|-----------------|---------|
| 06/26/2007 | CRS SAL ORD #1015906 | | ( 2.48) | 19.71 |
| 06/26/2007 | CRS SAL ORD #1015908 | | ( 0.99) | 18.72 |
| 06/26/2007 | CRS SAL ORD #1015911 | | ( 2.81) | 15.91 |
| 06/26/2007 | CRS SAL ORD #1015916 | | ( 2.16) | 13.75 |
| 06/27/2007 | CRS SAL ORD #1016160 | | ( 3.45) | 10.30 |
| 06/28/2007 | Postal Receipt C.GALLOWAY 781721 | | 50.00 | 60.30 |
| 06/28/2007 | CRS SAL ORD #1016824 | | ( 16.29) | 44.01 |
| 06/28/2007 | CRS SAL ORD #1016825 | | ( 0.71) | 43.30 |
| 06/30/2007 | CRS SAL ORD #1017366 | | ( 14.25) | 29.05 |
| 07/01/2007 | CRS SAL ORD #1017720 | | ( 2.22) | 26.83 |
| 07/01/2007 | CRS SAL ORD #1017725 | | ( 4.08) | 22.75 |
| 07/01/2007 | CRS SAL ORD #1017753 | | ( 0.79) | 21.96 |
| 07/02/2007 | CRS SAL ORD #1018200 | | ( 3.62) | 18.34 |
| 07/03/2007 | Other Receipt STAFF SALES | | 14.40 | 32.74 |
| 07/03/2007 | SS | | ( 11.96) | 20.78 |
| 07/03/2007 | CRS SAL ORD #1018536 | | ( 6.82) | 13.96 |
| 07/03/2007 | CRS SAL ORD #1018553 | | ( 2.53) | 11.43 |
| 07/05/2007 | Other Receipt STAFF SALES | | 9.00 | 20.43 |
| 07/05/2007 | Other Receipt STAFF SALES | | 22.50 | 42.93 |
| 07/05/2007 | CRS SAL ORD #1018854 | | ( 5.53) | 37.40 |
| 07/05/2007 | CRS SAL ORD #1018991 | | ( 13.03) | 24.37 |
| 07/07/2007 | CRS SAL ORD #1019427 | | ( 8.66) | 15.71 |
| 07/07/2007 | CRS SAL ORD #1019433 | | ( 0.99) | 14.72 |
| 07/09/2007 | CRS SAL ORD #1020514 | | ( 4.27) | 10.45 |
| 07/09/2007 | CRS SAL ORD #1020552 | | ( 3.21) | 7.24 |
| 07/10/2007 | Other Receipt STAFF SALES | | 18.00 | 25.24 |
| 07/10/2007 | Other Receipt STAFF SALES | | 19.80 | 45.04 |
| 07/10/2007 | CRS SAL ORD #1020894 | | ( 3.38) | 41.66 |
| 07/11/2007 | CRS SAL ORD #1021309 | | ( 4.40) | 37.26 |
| 07/12/2007 | Other Receipt STAFF SALES | | 45.00 | 82.26 |
| 07/12/2007 | SS | | ( 40.00) | 42.26 |
| 07/12/2007 | CRS SAL ORD #1021676 | | ( 1.78) | 40.48 |
| 07/12/2007 | CRS SAL ORD #1021811 | | ( 2.54) | 37.94 |
| 07/14/2007 | CRS SAL ORD #1022345 | | ( 2.62) | 35.32 |
| 07/15/2007 | CRS SAL ORD #1022588 | | ( 7.74) | 27.58 |

07/30/2007 09:14     DEPARTMENT OF CORRECTIONS          Page    8 Of    8

ÀMBER              MOUNT OLIVE CORRECTIONAL COMPLEX              OTRTASTA

            T R U S T   A C C O U N T   S T A T E M E N T

DOC# : 0000013734   Name: MOSS, JOHN JR.            BKG#        1998520
LOCATION:   MOCC-ELM

| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|------------------------|-----------|-----------------|---------|
| 07/16/2007 | Postal Receipt L EDDENS 781317 | | 20.00 | 47.58 |
| 07/16/2007 | AA PIZZA | | ( 25.40) | 22.18 |
| 07/18/2007 | Sub-Account Transfer | | ( 20.00) | 2.18 |
| 07/18/2007 | CRS SAL ORD #1023624 | | ( 1.61) | 0.57 |
| 07/19/2007 | Other Receipt STAFF SALES | | 13.50 | 14.07 |
| 07/19/2007 | Other Receipt STAFF SALES | | 16.20 | 30.27 |
| 07/19/2007 | Other Receipt STAFF SALES | | 13.50 | 43.77 |
| 07/21/2007 | CRS SAL ORD #1024772 | | ( 12.05) | 31.72 |
| 07/23/2007 | Sub-Account Transfer | | ( 30.00) | 1.72 |
| 07/24/2007 | Other Receipt STAFF SALES | | 27.00 | 28.72 |
| 07/24/2007 | Other Receipt STAFF SALES | | 16.20 | 44.92 |
| 07/24/2007 | I TO I | | 32.40 | 77.32 |
| 07/24/2007 | I TO I | | 27.90 | 105.22 |
| 07/25/2007 | CRS SAL ORD #1026476 | | ( 7.87) | 97.35 |
| 07/25/2007 | CRS SAL ORD #1026483 | | ( 6.74) | 90.61 |
| 07/25/2007 | CRS SAL ORD #1026709 | | ( 4.69) | 85.92 |
| 07/26/2007 | Other Receipt STAFF SALES | | 19.80 | 105.72 |
| 07/26/2007 | Other Receipt STAFF SALES | | 29.70 | 135.42 |
| 07/26/2007 | SS | | ( 50.00) | 85.42 |
| 07/26/2007 | S STAX | | 0.00 | 85.42 |
| 07/27/2007 | Sub-Account Transfer | | ( 30.00) | 55.42 |
| 07/29/2007 | CRS SAL ORD #1027448 | | ( 12.61) | 42.81 |
| 07/29/2007 | CRS SAL ORD #1027474 | | ( 2.49) | 40.32 |

TRANSACTION DESCRIPTIONS --                    VOLUNTARY SAVINGS  SUB-ACCOUNT

| DATE | TRANSACTION DESCRIPTION | RECEIPT # | TRANSACTION AMT | BALANCE |
|------|------------------------|-----------|-----------------|---------|
| 05/29/2007 | Sub-Account Transfer | | 60.00 | 60.00 |
| 06/05/2007 | Sub-Account Transfer | | ( 60.00) | 0.00 |
| 07/18/2007 | Sub-Account Transfer | | 20.00 | 20.00 |
| 07/23/2007 | Sub-Account Transfer | | 30.00 | 50.00 |
| 07/27/2007 | Sub-Account Transfer | | 30.00 | 80.00 |

DO NOT REMOVE
FILE COPY

No. _____

FILE COPY

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

AT

CHARLESTON

===========================================

STATE OF WEST VIRGINIA, EX REL.
John Moss, III,

Petitioner,

vs.

THOMAS L. McBRIDE, Warden,
Mount Olive Correctional Complex,

Respondent.

===========================================

## MOTION FOR THE APPOINTMENT OF COUNSEL

COMES NOW the above named petitioner and hereby moves this Honorable Court for the appointment of counsel to represent his interests in these proceedings of the Court's original jurisdiction in habeas corpus. Petitioner avers, in the enclosed *Post-Conviction Habeas Corpus Form Application To Proceed In Forma Pauperis And Affidavit*, he is an indigent prisoner within the meaning of the statute and without funds to retain counsel of his choice.

Due to the complexities of the issues alleged, and Petitioner's inability to interview potential witnesses, etc., the appointment of counsel is necessary for the equal protection of the laws.

WHEREFORE, Petitioner prays now and forevermore that the Court grant his petition.

Respectfully submitted by:

John Moss, III
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185

On this, the 30th day of July, 2007.

Petitioner proceeding, *pro se*.

-2-

**John Moss, III, DOC# 13734**
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

July 30, 2007

```
 F I L E D
   JUL 3 1 2007
 RORY L. PERRY II, CLERK
 SUPREME COURT OF APPEALS
    OF WEST VIRIGINIA
```

Mr. Rory L. Perry, II, Clerk
West Virginia Supreme Court of Appeals
State Capitol Complex, Room E-317
1900 Kanawha Blvd. E.
Charleston, WV  25305

Re:     Filing Original Jurisdiction Petition For Writ of Habeas Corpus

Dear Mr. Perry:

Enclosed, pursuant to Rule 2a of the *Rules Governing Post-Conviction Habeas Corpus Proceedings In West Virginia*, please find for filing in the appropriate case file for the Court's consideration the original and two (2) copies of my *pro se* petition for writ of habeas corpus and memorandum, *Post-Conviction Habeas Corpus Form Application To Proceed In Forma Pauperis And Affidavit, Motion For The Appointment Of Counsel* and certification that the same has been served upon the respondent warden by mailing a copy to the Kanawha County Prosecuting Attorney's Office.

I have included an extra copy of the petition.  Please date and time stamp the extra copy, indicating the date your office received and filed my petition, and return it to me at the above address.  Thank you.

Sincerely yours,

*John Moss III*

John Moss, III

JM/tlb
Encs.
cc:     Kanawha County Prosecutor
        file

July 31, 2007


John Moss, III, DOC #13734
Mt. Olive Correctional Center
Post Office Box 5
Mt. Olive, West Virginia 25185-0005

**RE:    *SER John Moss, III v. Thomas McBride, Warden, Supreme Court No. 072486***

Dear Mr. Moss:

Your petition for writ of habeas corpus was received and filed in this office on July 31, 2007.

Your petition will be submitted to the Court for its consideration.  You will be notified of the Court's decision by copy of its order.

Should you have any questions, please contact this office.

Sincerely,



Rory L. Perry II
Clerk

**MOSS v. BALLARD
CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 19**

295 S.E.2d 33, 170 W.Va. 543, Moss, In Interest of, (W.Va. 1982)                    **Page 1**

*33  295 S.E.2d 33

170 W.Va. 543

Supreme Court of Appeals of West Virginia.

**In the Interest of John MOSS, Jr.**
No. 15490.
July 15, 1982.
Rehearing Denied Sept. 16, 1982.

Appeal was taken by a juvenile from a final order of the Circuit Court, Kanawha County, John Hey, C.J., transferring juvenile to adult jurisdiction. The Supreme Court of Appeals, McGraw, J., held that: (1) the juvenile referee at a preliminary hearing and a judge at the transfer hearing both erred by restricting the evidence on the issue of probable cause in refusing to allow the juvenile to present evidence that another individual committed the crimes with which he was charged; (2) admission at transfer hearing of transcript of preliminary hearing in which a state trooper was State's sole witness was reversible error; (3) ordering transfer hearing reopened to permit State to introduce juvenile's confession, text of which was inadvertently omitted from preliminary hearing transcript, was not an abuse of discretion; (4) use of juvenile's confessions at transfer hearing to determine probable cause was improper; and (5) transfer hearing judge should not have considered testimony of probation officer who did not have sufficient knowledge of juvenile's background on which to base expert opinion.

Reversed and remanded.

West Headnotes

[1] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
      Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
      Determination.
  A determination of probable cause is sufficient ground for transfer of a juvenile to adult jurisdiction without further inquiry. Code, 49-5-10, 49-5-10(d)(1).

[2] Infants ☞68.7(3)
 211 ----

211VI Crimes
 211k68 Rights and Privileges as to Prosecutions
  211k68.7  Waiver  of  Juvenile  Court
    Jurisdiction;  Transfer to Adult Court
  211k68.7(3)  Hearing,  Evidence,  and
    Determination.
Probable cause to transfer a juvenile to adult jurisdiction is more than mere suspicion and less than clear and convincing proof and exists when the facts and circumstances as established by probative evidence are sufficient to warrant a prudent person in the belief that an offense has been committed and that the juvenile committed it. Code, 49-5-10, 49-5-10(d)(1).

[3] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
      Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
      Determination.
A juvenile is entitled to rebut the state's proof of probable cause at a preliminary or transfer hearing by showing that he was not the person who committed the crime. Code, 49-5-10, 49-5-10(d)(1).

[4] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
      Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
      Determination.
Mere showing that another person has been charged with the commission of the crime is not, in and of itself, sufficient to warrant a finding of no probable cause in a preliminary or juvenile transfer hearing. Code, 49-5-10, 49-5-10(d)(1).

[5] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
      Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
      Determination.
A juvenile attempting to rebut the state's proof of probable cause at a preliminary or transfer hearing by showing that he was not the person who

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

295 S.E.2d 33, 170 W.Va. 543, Moss, In Interest of, (W.Va. 1982)                    **Page 2**

committed the crime must show that the evidence of the other person's guilt is inconsistent with the state's theory of probable cause. Code, 49-5-10, 49-5-10(d)(1).

[6] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
        Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
        Determination.

A juvenile may not turn a preliminary or transfer hearing on probable cause into an evidentiary battle on the ultimate issue of guilt or innocence by seeking to elicit testimony that other person committed the crime. Code 49-5-10, 49-5-10(d)(1).

[7] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
        Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
        Determination.

If the defense can rebut state's proof of probable cause at a preliminary or transfer hearing by showing that another person committed the crime, and such evidence shows that the juvenile could not have committed the crime, such evidence should be admitted solely for a determination of probable cause. Code, 49-5-10, 49-5-10(d)(1).

[8] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
        Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
        Determination.

The juvenile referee at a preliminary hearing and the judge at the transfer hearing both erred by restricting the evidence on the issue of probable cause in refusing to allow the juvenile to present evidence that another individual committed the crimes with which he was charged. Code, 49-5-10, 49-5-10(d)(1).

[9] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes

[9] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
        Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
        Determination.

[See headnote text below]

[9] Infants ⬤⟳68.8
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
   211k68.8 Review.

Admission at the juvenile transfer hearing of the transcript of the preliminary hearing in which a state trooper was the State's only witness was reversible error in absence of evidence that that trooper was unavailable as a witness at the transfer hearing. Code, 49-5-10(d)(1).

[10] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
        Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
        Determination.

The probable cause determination at a juvenile transfer hearing may not be based entirely on hearsay evidence. Code, 49-5-10(d)(1).

[11] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
        Jurisdiction;  Transfer to Adult Court
    211k68.7(3)  Hearing,  Evidence,  and
        Determination.

The court at a juvenile transfer hearing must make an independent determination of whether there is probable cause to believe that juvenile has committed one of the crimes specified for transfer in the proceeding to criminal jurisdiction. Code, 49-5-10(d)(1).

[12] Infants ⬤⟳68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7  Waiver  of  Juvenile  Court
        Jurisdiction;  Transfer to  *33  Adult
        Court

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

211k68.7(3) Hearing, Evidence, and Determination.

[See headnote text below]

[12] Infants ☞68.8
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
   211k68.8 Review.
It is within the sound discretion of the court in the furtherance of the interests of justice in a juvenile transfer hearing to permit either party, after it has rested, to reopen the case for the purpose of offering further evidence and, unless that discretion is abused, the action of the court will not be disturbed. Code, 49-5-10, 49-5-10(d)(1).

[13] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court Jurisdiction; Transfer to Adult Court
    211k68.7(3) Hearing, Evidence, and Determination.
Decision to reopen the juvenile transfer hearing upon request of the State in order to permit the introduction of the juvenile's confession, the text of which had been inadvertently omitted from the preliminary hearing transcript, was not an abuse of discretion. Code, 49-5-10, 49-5-10(d)(1).

[14] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court Jurisdiction; Transfer to Adult Court
    211k68.7(3) Hearing, Evidence, and Determination.
The court at a juvenile transfer hearing must determine the validity of a confession before allowing it to be used against the juvenile even in the absence of an objection to the introduction of the confession or in absence of a request for a voluntariness hearing. Code, 49-5-10, 49-5-10(d)(1).

[15] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court

Jurisdiction; Transfer to Adult Court
    211k68.7(3) Hearing, Evidence, and Determination.
Use of juvenile's confession at the transfer hearing was improper without an initial determination respecting the voluntariness of the confession. Code, 49-5-10, 49-5-10(d)(1).

[16] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court Jurisdiction; Transfer to Adult Court
    211k68.7(3) Hearing, Evidence, and Determination.
Opinion of properly qualified expert is not admissible at a juvenile transfer hearing unless a proper foundation is laid either through the testimony of other witnesses or the exhibition of personal knowledge of the juvenile's background. Code, 49-5-10, 49-5-10(d)(1).

[17] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court Jurisdiction; Transfer to Adult Court
    211k68.7(3) Hearing, Evidence, and Determination.
The judge at the juvenile transfer hearing should not have considered the probation officer's testimony where the statement by the officer on direct examination that he did not spend much time looking at the juvenile's file and his admission on cross-examination that he had had no personal contact with juvenile revealed that the officer did not have sufficient knowledge of the juvenile's background on which to base an expert opinion. Code, 49-5-10, 49-5-10(d)(1).

[18] Infants ☞68.7(3)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court Jurisdiction; Transfer to Adult Court
    211k68.7(3) Hearing, Evidence, and Determination.
A juvenile transfer court is not precluded from hearing opinion evidence at a transfer hearing and giving it weight when making the decision to transfer, but when a party seeks to introduce such

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

evidence, it must be competent and comport with the requirements. Code, 49-5-10, 49-5-10(d)(1).

*35 [170 W.Va. 544] Syllabus by the Court

1. Probable cause for the purpose of transfer of a juvenile to adult jurisdiction is more than mere suspicion and less than clear and convincing proof. Probable cause exists when the facts and circumstances as established by probative evidence are sufficient to warrant a prudent person in the belief that an offense has been committed and that the accused committed it.

2. The accused is entitled to rebut the State's proof of probable cause at a preliminary[170 W.Va. 545] or transfer hearing by showing that he was not the person who committed the crime.

3. The probable cause determination at a juvenile transfer hearing may not be based entirely on hearsay evidence.

4. "W.Va.Code § 49-5-10(d) [1978] requires that the circuit court make an independent determination of whether there is probable cause to believe that a juvenile has committed one of the crimes specified for transferring the proceeding to criminal jurisdiction." Syllabus, *In the Interest of Clark*, 168 W.Va. 493, 285 S.E.2d 369 (1981).

5. "It is within the sound discretion of the court in the furtherance of the interests of justice to permit either party, after it has rested, to reopen the case for the purpose of offering further evidence and unless that discretion is abused the action of the trial court will not be disturbed."   Syllabus Point 4, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d *36 666 (1974); Syllabus Point 4, *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981).

6. At a transfer hearing, the court must determine the validity of a confession before allowing it to be used against the accused.

7. The opinion of a properly qualified expert is not admissible at a transfer hearing unless a proper foundation is laid, either through the testimony of other witnesses or the exhibition of personal knowledge of the child's background.

McKittrick & Vaughan, Parrish McKittrick and Harry C. Taylor II, St. Albans, for Moss.

James E. Roark, Pros. Atty., Beverly S. Selby and Frances W. McCoy, Asst. Pros. Attys., Charleston, for State.

McGRAW, Justice:

In this appeal from a final order of the Circuit Court of Kanawha County, the appellant, John Moss, Jr., challenges the transfer of his case from the circuit court's juvenile jurisdiction to its criminal jurisdiction.   The appellant raises numerous assignments of error which can be reduced to three grounds for appeal.   The appellant contends that the circuit court erred in rulings on evidentiary matters at the preliminary and the transfer hearings, that the court erred in permitting the State to reopen the transfer hearing for the presentation of additional evidence, and that the State erred in presenting its case to the grand jury immediately before this appeal was filed.   We find merit in several of the appellant's contentions and we reverse.

In December of 1979, a woman and her two children were found dead in their St. Albans home. Soon afterward, the deceased woman's husband became a suspect in the triple murder.   He is alleged to have confessed to the crime and was subsequently indicted by the Kanawha County Grand Jury.   The husband was held in custody for approximately eleven months awaiting trial, during which time his alleged confession was ruled admissible into evidence as voluntarily given.   Trial was set for November 12, 1980.

The record indicates that the appellant was also a suspect in the murders and that his name was recited in the indictment of the accused husband.   In January 1980, the investigating authorities traveled to Cleveland, Ohio, to obtain a blood sample from the appellant, who at the time was housed in a juvenile detention center on an unrelated charge, and to question him about the murders.   The appellant denied committing the murders.   A blood sample was taken, when, at the authorities' request, the appellant pricked his finger and dribbled blood on a cloth provided for this purpose.

At the time of this interrogation, the appellant was seventeen years of age.   The blood sample was taken without a court order, and without the knowledge or consent of the appellant's parents. The authorities were aware that the appellant was a juvenile.   They made no effort to contact the

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

appellant's Ohio lawyer. The appellant was advised of his rights prior to questioning, but did not sign a waiver of rights form.

[170 W. Va. 546] When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. This apparently was done. Subsequently, in April 1980, the investigating authorities again travelled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders.

On September 26, 1980, the State filed a detainer against the appellant, pursuant to W. Va. Code § 62-14-1 *et seq.* (1977 Replacement Vol.), based on a malicious wounding charge, unrelated to the homicides. The appellant at this time was serving a term of four to twenty-five years at the Ohio State Reformatory on charges of rape and attempted murder. On October 28, 1980, *37 while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, the appellant confessed to having committed the homicides in Kanawha County. The appellant subsequently made a tape recorded confession after signing a waiver of his *Miranda* rights.

On November 2, 1980, a second detainer was filed by the State against the appellant based on a charge of three counts of murder in the first degree. On December 18, 1980, the appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for December 24, 1980, but as a result of motions for continuance made by the defense, the hearing was not held until January 12, 1981. After the presentation of evidence, which included a replay of the appellant's taped confession, the juvenile referee made a finding of probable cause and referred the appellant to the juvenile jurisdiction of the Circuit Court of Kanawha County.

On January 20, 1981, the State filed a motion to have the appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. The transfer hearing was set for January 28, 1981. Defense counsel's motion for a continuance to allow

for psychological and psychiatric testing and evaluation of the appellant was granted. Following subsequent motions for continuance on the part of defense counsel, the transfer hearing was held on June 29, 1981.

At the transfer hearing, the State presented testimony from a member of the appellant's family as to his background, testimony of school personnel as to the appellant's grades and behavior in school and testimony of the county's chief probation officer and a psychiatrist as to the appellant's prospects for rehabilitation. The State also introduced into evidence a transcript of the preliminary hearing which was stipulated by defense counsel to be a true and accurate reporting of that proceeding. The defense called as a witness one of the state troopers who investigated the murders and attempted to elicit from him testimony as to the adult who had previously been indicted for the crimes. The court at first overruled the State's objection to this testimony, but later sustained the objection on the ground that the matters upon which the defense sought the testimony, namely the confession of another individual to having committed the crimes in question, was a question which should properly be raised at trial and not at the transfer hearing. At the conclusion of the evidence the court took the issue of transfer under advisement.

Before any ruling on the transfer had issued, the State discovered that the transcript of the preliminary hearing did not contain a transcript of the appellant's tape recorded confession. Instead, the tape recording which had been played at the preliminary hearing had merely been incorporated by reference into the record. On July 9, 1981, the State filed with the circuit court a motion to reopen the transfer hearing for the purpose of introducing the confession into evidence. A hearing on the motion was held on August 6, 1981, at which time counsel for the appellant opposed reopening the transfer hearing. The court granted the State's motion and proceeded to allow the State to play the tape [170 W. Va. 547] recorded confession. At the conclusion of the hearing the court issued from the bench its decision that the appellant be transferred to the criminal jurisdiction of the court, and indicated that further proceedings would be stayed until counsel had an opportunity to file an appeal. The final order issued August 11, 1981, incorporated the court's conclusions but made no mention of the stay of proceedings.

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

On August 13, 1981, the State presented its case against the appellant to the grand jury, which returned an indictment charging the appellant with three counts of murder in the first degree. The following day counsel for the appellant filed a motion for a stay of further proceedings and a motion to quash the indictment. On August 20, 1981, the date set for a hearing on the defense motions, the appellant filed a notice of intent to appeal the court's decision to transfer the appellant to criminal jurisdiction **\*38** and a request for a transcript. At the hearing conducted August 20, 1981, the court granted the stay of proceedings, but did not rule on the appellant's motion to quash the indictment. This Court subsequently granted the appellant's petition for appeal.

I.

The appellant's first assignment of error is that both the juvenile referee at the preliminary hearing and the judge at the transfer hearing erred in refusing to allow the juvenile to present evidence that another individual committed the crimes with which the appellant was charged. Specifically, the appellant contends that he was not permitted to present direct testimony or to cross-examine the State's witnesses as to the confession and indictment of the other suspect. The State contends that the failure of the referee and the transfer judge to permit such testimony was not error because the only purpose of the two hearings was to determine whether probable cause existed.

[1][2] The purpose of a preliminary hearing is to determine whether there is probable cause to believe the accused has committed the crime charged. Under the provisions of W.Va.Code § 49-5-10(d)(1) (1980 Replacement Vol.), a court may, after an adequate hearing, transfer a juvenile to criminal jurisdiction upon a finding that there is probable cause to believe that the child has committed one of the crimes enumerated therein. (FN1) In such circumstances a determination of probable cause is sufficient ground for transfer without further inquiry. *State ex rel. Cook v. Helms*, 170 W.Va. 200 292 S.E.2d 610 (1981),. (FN2) We have previously discussed the quantum of evidence necessary to sustain a finding of probable cause at a transfer hearing. In *In re E.H.*, 166 W.Va. 615, 276 S.E.2d 557 (1981), we said that the probable cause standard is something less than clear and convincing proof.

Probable cause, as a standard of proof, is used at different stages of criminal and juvenile procedures. However, it is desirable[170 W.Va. 548] to have a single clearly articulated definition applicable to arrest, issuance of a warrant, preliminary examination, as well as juvenile transfer. In the context of arrest, we have held: "Probable cause ... exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that an offense has been committed." Syl. Pt. 1, *State v. Drake*, 170 W.Va.167, 291 S.E.2d 484 (1982); Syl. Pt. 7, *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980); Syl. Pt. 3, *State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973); Syl. Pt. 1, *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971). In *State v. Duvernoy, supra*, the Court added the caveat that an officer cannot without a warrant lawfully arrest one on a mere **\*39** suspicion. Such does not meet the requirements of showing probable cause. *See also U. S. v. Henry*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

The following instructive discussion of the probable cause standard is found in *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), *cited in State v. Plantz*, 155 W.Va. at 35, 180 S.E.2d at 621:

In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

"The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." *McCarthy v. De Armit*, 99 Pa.St. 63, 69, quoted with approval in the *Carroll* opinion. 267 U.S. at 161 [, 45 S.Ct. at 288]. And this "means less than evidence which would justify condemnation" or conviction, as Marshall, C. J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States*, 267

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543].

338 U.S. at 175-6, 69 S.Ct. at 1310-11.

Probable cause for the purpose of transfer of a juvenile to adult jurisdiction is therefore more than mere suspicion and less than clear and convincing proof. *In re E. H., supra.* Probable cause exists when the facts and circumstances as established by probative evidence are sufficient to warrant a prudent person in the belief that an offense has been committed and that the accused committed it.

The question raised by the appellant is whether the court erred in refusing to allow the defense to rebut the State's evidence of probable cause by showing that another individual confessed to having committed the crimes charged and was indicted therefor. The transfer judge refused to permit such testimony to be introduced on the ground that, although it would be admissible at trial as a defense on the ultimate question of the guilt of the accused, it was not relevant to the limited determination of probable cause.

[3][4][5][6][7][8] Certainly, the question of whether a person other than the accused committed the crime charged has a bearing on the determination of probable cause. The purpose of a probable cause hearing is to determine whether there is probable cause to believe that the accused committed the offense charged. The accused is entitled to rebut the State's proof of probable cause at a preliminary or transfer hearing by showing that he was not the person who committed the crime. However, merely showing that another person has been charged with the commission of the crime is not, in and of itself, sufficient to warrant a finding of no probable cause. As in a criminal trial, the accused must show that the evidence of the other person's guilt is inconsistent with the State's theory of probable cause against the accused. Of course, the [170 W.Va. 549] accused may not turn the preliminary or transfer hearing into an evidentiary battle on the ultimate issue of guilt or innocence by seeking to elicit such testimony. However, if the defense can rebut the State's proof of probable cause by showing that another person committed the crime, and such evidence shows that the defendant could not have committed the crime, such evidence should be admitted solely for a determination of probable cause. We therefore conclude that the court erred in restricting the appellant's evidence on this issue at the transfer hearing. The appellant is

entitled to present evidence concerning another suspect's confession to the murders.

**\*40  II.**

The appellant's second assignment of error is the admission at the original transfer hearing of the transcript of the preliminary hearing held on January 12, 1981. The transcript consisted solely of the testimony of Trooper Williams, who was the State's only witness at the preliminary hearing. Trooper Williams was not called as a witness at the first transfer hearing. However, the State did call the juvenile referee who conducted the preliminary hearing as a witness at the transfer hearing.

[9] We can see no justifiable reason for the introduction of the transcript at the transfer hearing. There was no evidence introduced by the State to show that Trooper Williams, the only witness for the State at the preliminary hearing, was unavailable as a witness at the transfer hearing. Indeed, Trooper Williams did testify at the second, or reopened, transfer hearing. In the absence of any evidence to the contrary, we may infer that Trooper Williams was an available witness at the time of the original transfer hearing.

In *State v. R.H.*, 166 W.Va. 280, 273 S.E.2d 578, 586 (1980), we reiterated the rule in this jurisdiction concerning the admissibility of sworn testimony from a former trial or proceeding:

The well-settled rule in West Virginia is that sworn testimony taken from a former trial or proceeding is admissible if there is (1) an inability to obtain the testimony of the witness, (2) an opportunity to cross-examine the witness in the former proceeding, and (3) a substantial identity of parties and the issues. *State v. Dawson,* 129 W.Va. 279, 40 S.E.2d 306 (1946).

Where the witness is unavailable by reason of death or insanity or where the witness is beyond the scope of state process or where the whereabouts of the witness are unknown and cannot be discovered by diligent search or where the witness cannot remember, the prior testimony of the witness is admissible in a subsequent proceeding. *See State v. Spadafore,* 159 W.Va. 236, 220 S.E.2d 655 (1975); *State v. Dawson, supra; Show v. Mount Vernon Farm Dairy Products, Inc.,* 128 W.Va. 598, 37 S.E.2d 459 (1946); *State v. Sauls,* 97 W.Va. 184, 124 S.E.

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

670 (1924). Where the prior testimony is sought to be introduced on the ground that the witness's whereabouts are unknown, such evidence is not admissible unless it is shown that diligent efforts to secure the attendance of the witness were made unsuccessfully. *State v. Sauls, supra.*

This rule precludes admission of the transcript of the preliminary hearing absent some showing that the witness was unavailable.

The State asserts, however, that even if the transcript was inadmissible under the rules of evidence, its introduction did not constitute reversible error since "the failure to give strict adherence to the rules of evidence ... as required in a criminal trial will not be grounds for reversible error at a transfer hearing." *In re E.H., supra* at 166 W.Va. 627, 276 S.E.2d 565.

[10] We do not take this statement to preclude all evidentiary requirements at transfer hearings. Indeed, in other cases we have formulated some evidentiary requirements to be applied at transfer hearings. For example, in *State v. M.M.,* 163 W.Va. 235, 256 S.E.2d 549 (1979), we held that the rules of evidence relating to the introduction of expert testimony applied to transfer hearings. In *In the Interest of S.M.P.,* 168 W.Va. 626, 285 S.E.2d [170 W.Va. 550] 408 (1981), we held that the probable cause determination at a juvenile transfer hearing may not be based entirely on hearsay evidence. Finally, we have the rule stated in *State v. R.H., supra,* regarding the admissibility of prior testimony.

In light of our decisions in these cases, we do not believe *In re E.H., supra,* calls for a total suspension of all rules of evidence at transfer hearings. Rather "there is a broader latitude on evidentiary matters, since it is assumed that a judge can weed out the extraneous from the relevant and because of his legal training will not be influenced by otherwise inadmissible evidence." *Id.* 166 W.Va. at 627, 276 S.E.2d at 565.

*\*41* [11] We think the admission of the transcript of the preliminary hearing at this transfer hearing was reversible error, particularly in view of the fact that one of the purposes of its introduction appeared to be to establish that the juvenile referee had made a finding of probable cause. Indeed, the juvenile referee testified to this at the transfer hearing. " W.Va. Code § 49-5-10(d) [1978] requires that the

circuit court make an independent determination of whether there is probable cause to believe that a juvenile has committed one of the crimes specified for transferring the proceeding to criminal jurisdiction." Syl., *In the Interest of Clark,* 168 W.Va. 793, 285 S.E.2d 369 (1981). In *Clark,* we found that testimony of a referee that he had previously found probable cause was merely conclusory and was not evidence on which a transfer judge may rely in making his or her independent determination. We are confronted with the same situation here.

We are reinforced in our conclusion by the fact that the transfer court apparently relied on the juvenile referee's findings at the preliminary hearing with respect to probable cause. Several times during the transfer hearing the judge referred to the referee's finding of probable cause in limiting defense counsel's examination. At one point, the judge stated "I have ruled that probable cause has been found by the juvenile referee for the purpose of transfer." While the court stated in the final transfer order that it had arrived at its finding of probable cause independently, there are no findings of facts in the transfer order to support this conclusion. Instead the court made conclusory statements that the State had sustained its burden, based on a "totality of the testimony" and that the court's probable cause finding was "independent of any findings heretofore made by the juvenile referee."

W.Va. Code § 49-5-10(e) provides:

If, after a hearing, the court directs the transfer of any juvenile proceeding to criminal jurisdiction, it shall state on the record the findings of fact and conclusions of law upon which its decision is based or shall incorporate such findings of fact and conclusions of law in its order directing transfer.

Failure to set forth the findings and conclusions voids the transfer order. Syl. Pts. 2 and 3, *State ex rel. E.D. v. Aldredge,* 162 W.Va. 20, 245 S.E.2d 849 (1978).

In sum, we find that the prejudicial nature of the transcript of the preliminary hearing and the juvenile referee's testimony with respect to the finding of probable cause rendered their admission at the transfer hearing reversible error.

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

### III.

The appellant's next assignment of error is the transfer court's decision to reopen the transfer hearing upon request of the State. The reopening was requested as a result of this Court's decision in *State ex rel. Cook v. Helms, supra,* which the State read to require an independent determination of probable cause at the transfer hearing. (FN3) The purpose of the reopening was to permit the State to introduce the appellant's confession, the text of which had [170 W.Va. 551] been inadvertently omitted from the preliminary hearing transcript.

[12] "Whether a motion to reopen a case should be granted after the moving party has rested lies within the sound discretion of the court...." Syl. Pt. 3, *State v. Johnson,* 159 W.Va. 682, 226 S.E.2d 442 (1976). "It is within the sound discretion of the court in the furtherance of the interests of justice to permit either party, after it has rested, to reopen the case for the purposes of offering further evidence and unless that discretion is abused the action of the trial court will not be disturbed." Syl. Pt. 4, *State v. *42 Fischer,* 158 W.Va. 72, 211 S.E.2d 666 (1974); *see also State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545 (1981). "The court is not justified in closing the case until all the evidence offered in good faith and necessary to the end of justice has been heard.... When in doubt, reopen." *State v. Daggett, supra,* 167 W.Va. at 423, 280 S.E.2d at 553. Reopening may be ordered on motion of either party. *State v. Fischer supra,* 158 W.Va. at 72-73, 211 W.E.2d at 667. The basic reason for denying a motion to reopen is to avoid unfair surprise to one of the parties. *Id.*

[13] We cannot say in the instant case that the transfer judge abused his discretion in ordering the transfer hearing reopened. There was concern that the law governing probable cause determinations at transfer hearings had been modified by a decision of this Court. It would be senseless for a judge to ignore an appellate decision and simply wait for the pending case to go up on appeal, then come back on remand. This would effectively reopen the case, accomplishing the same purpose at greater expense of time and money.

In addition, after rendering his decision to reopen, the transfer judge offered to allow defense counsel a continuance in order to mitigate any effect of surprise or lack of adequate preparation. This offer was refused by defense counsel, even though he now argues on appeal that he was afforded inadequate notice of the motion to reopen and was not aware that evidence would be offered upon the court's granting of the motion. Clearly, if the appellant had been unfairly surprised by the reopening, he could have taken advantage of the transfer court's offer of more time. He rejected the opportunity to prepare further.

### IV.

[14][15] The appellant next challenges the use of his confession at the transfer hearing. We find that the confession was not properly admitted at the hearing. The lower court should have made a finding on the record at the transfer hearing regarding the voluntariness, and thus admissibility, of the appellant's confession, just as a trial judge must hold an *in camera* voluntariness hearing when a confession is introduced in a criminal trial. *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966); *State v. Smith*, 158 W.Va. 663, 212 S.E.2d 759 (1975); *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976). Such a hearing is required even in the absence of an objection to the introduction of the confession or in the absence of a request for a voluntariness hearing. *State v. Fortner, supra. Arthur v. McKenzie*, 161 W.Va. 747, 245 S.E.2d 852 (1978).

The purpose of holding an *in camera* hearing is to determine the question of voluntariness out of the presence of the jury. A second purpose which we discern is simply to make a determination of voluntariness. At a transfer hearing, where there is no jury and where the ultimate issue is probable cause, not guilt or innocence, the court must nevertheless determine the validity of a confession before allowing it to be used against the accused.

The state argues that under our holding in *State v. Trail,* 163 W.Va. 352, 255 S.E.2d 900 (1979) the admissibility of a confession is not reviewable on appeal from a transfer order. We note, however, that in *Trail*, the confession in question was not introduced into evidence at the transfer hearing and was therefore no part of the court's decision to transfer. That case is clearly distinguishable from the case at bar, in which the appellant's confession was the only piece of probative evidence introduced by the State to support a probable cause determination.

[170 W.Va. 552] V.

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

The appellant also assigns as error the introduction, over objection, of expert testimony at the first transfer hearing by a juvenile probation officer on the issue of the appellant's rehabilitative prospects. The appellant asserts that the probation officer was not qualified to give an expert opinion. The State argues that the probation officer's education and experience make him an expert, qualified to testify about juvenile rehabilitation, and that he had sufficient familiarity with the appellant's background to offer an expert opinion **\*43.** from reading his file and current psychological and psychiatric reports.

[16] In Syllabus Point 1 of *State v. M.M., supra,* we held: "Before a witness is qualified as an expert on the subject of juvenile rehabilitation, that witness must, through training, education or practical experience, possess significant skill and knowledge regarding the rehabilitation of juveniles." Moreover, the opinion of a properly qualified expert is not admissible at a transfer hearing unless a proper foundation is laid, either through the testimony of other witnesses or the exhibition of personal knowledge of the child's background. *Id.*

[17] We conclude that the judge should not have considered the probation officer's testimony. His statement on direct examination that he did not spend much time looking at the appellant's file and his admission on cross-examination that he had had no personal contact with the appellant nor had he gathered any information from the appellant's family, teachers, or friends reveal that he did not have sufficient knowledge of the appellant's background on which to base an expert opinion. *State v. M.M., supra.*

[18] The State also argues that under the decision of a majority of this Court in *State ex rel. Cook v. Helms, supra,* rehabilitative prospects are not an issue at a transfer hearing, where, under W.Va. Code § 49-5-10(d)(1), probable cause alone is sufficient ground for transfer. We note that a minority of this Court still does not agree with the interpretation of W.Va. Code § 49-5-10(d)(1) given in *State ex rel. Cook v. Helms, supra. See Helms, supra,* (dissenting opinion of McGraw, J., joined by Harshbarger, J., filed June 23, 1982). In any event, the transfer court is not precluded from hearing such evidence and giving it weight when making the decision to transfer. When a party seeks to introduce such evidence it must be competent and comport with the requirements of

*State v. M.M., supra.* It does not matter that the State was not *required* to introduce such evidence.

Since we have ruled that the transfer order is invalid, there is no need to address the appellant's final contention that there was a stay in effect from the date of the transfer hearing, which precluded the State from seeking indictments from the grand jury. At this stage, the indictments have no effect in light of our remand of this case to the juvenile jurisdiction of the Kanawha County Circuit Court.

Because of the accumulation of errors in the transfer proceedings below and because of the lack of adequate and reviewable findings of fact in the transfer order and record, we reverse the order of the Circuit Court of Kanawha County, transferring the appellant to the criminal jurisdiction, and remand this case to that court which should commence forthwith and with all deliberate speed further proceedings consistent with this opinion. (FN4)

Reversed and remanded.

(FN1.) W.Va. Code § 49-5-10 provides in material part:

The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:

The child has committed the crime of treason under section one [§ 61-1-1], article one, chapter sixty-one of this Code; the crime of murder under sections one, two and three [§§ 61-2-1, 61-2-2 and 61-2-3], article two, chapter sixty-one of this Code; the crime of robbery involving the use or presenting of firearms or other deadly weapons under section twelve [§ 61-2-12], article two, chapter sixty-one of this Code; the crime of kidnapping under section fourteen-a [§ 61-2-14a], article two, chapter sixty-one of this Code; the crime of first degree arson under section one [§ 61-3-1], article three, chapter sixty-one of this Code; or charging sexual assault in the first degree under section three [§ 61-8B-3], article eight-B, chapter sixty-one of this Code, and in such case, the existence of such probable cause shall be sufficient grounds for transfer without further inquiry...

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

295 S.E.2d 33, 170 W.Va. 543, Moss, In Interest of, (W.Va. 1982)

(FN2.) However, a transfer judge is not precluded from considering other factors bearing on the juvenile's rehabilitative prospects. Indeed, as we said in *Helms, supra,* consideration of personal factors which focus on the offender rather than the offense is a commendable practice which we heartily encourage.

*43_   (FN3.) The procedural requirement of an independent determination of probable cause by the judge presiding at the transfer hearing is rooted in the Due Process Clause, Art. 3, § 10, of our State Constitution and in Chapter 49 of the Code wherein the Legislature established preliminary hearings, W.Va. Code § 49-5-8 (1980 Replacement Vol.), and transfer hearings, W.Va. Code § 49-5-10 (1980 Replacement Vol.), as separate, yet meaningful proceedings. *See also In the Interest of Clark,* 168 W.Va. 493, 285 S.E.2d 369(1981).

(FN4.) In the argument of this case the State represented for the first time that under the provisions of W.Va. Code § 62-14-1, the time within which the appellant's trial must be commenced was within six days of expiration. Subsequently, the appellant filed a letter with the Court in which he contends that the 120 day detainer period has already expired. Neither the State nor the appellant have briefed this issue on appeal. Consequently, we do not here make a finding on the issue.

However, we do note that there is a difference between the time limitations contained in the detainer statutes and the speedy trial provisions of W.Va. Code §§ 62-3-1 and 62-3-21 (1977 Replacement Vol. & Cum. Supp. 1982). We note that the State's representation that only six days remain on the detainer are incorrect, and without so holding, we recognize that under the State's chronology of the events in this case at least 16 and possibly as many as 24 days remain within which the appellant may be brought to trial, without even considering that the provisions of W.Va. Code § 62-14-1 requiring good cause for continuance may be less stringent than analogous provisions of W.Va. Code §§ 62-3-1 and 62-3-21. *See State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 277 S.E.2d 718, 721 (1981).

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.