**MOSS v. BALLARD**
**CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 20**
**(CONTINUATION, pp. 151 - 300)**

1    suspicion that he might be guilty, that is not enough to

2    convict him?

3        JUROR BRADY:  Right.

4        MR. BICKLEY:  And do you think that if you had

5    that conviction, that suspicion, that they hadn't proven

6    their case, and the other eleven jurors felt that they

7    had, and just for the sake of it, you felt that the State

8    had failed to put on evidence of the crime, could you

9    hold out?

10       JUROR BRADY:  Yeah.

11       MR. BICKLEY:  I have no further questions.

12       MR. REVERCOMB:  Taking what Mr. Bickley has just

13   asked you -- say, there was eleven people who felt that

14   we had proved our case beyond a reasonable doubt.  Would

15   you listen to their reasons or their opinions with an

16   open mind?

17       JUROR BRADY:  Yes.

18       MR. REVERCOMB:  Because that's probably what will

19   happen in the deliberations.

20       Of course, Mr. Bickley has already told you and

21   you understand that the presumption of innocence does

22   follow Mr. Moss until you go into the jury deliberations?

23       JUROR BRADY:  Yes.

24       MR. REVERCOMB:  Our burden of proof is beyond a

1   reasonable doubt.  That is not to say that our burden is

2   beyond a doubt, or proof beyond all possible doubt.

3   Would you hold the State to a higher burden that than?

4        JUROR BRADY:  I don't understand.

5        MR. REVERCOMB:  It's hard to talk about what's

6   reasonable doubt.  It's an abstract thing.

7        JUROR BRADY:  That's right.

8        MR. REVERCOMB:  Do you understand that we don't

9   have to prove the case beyond all doubt, beyond a shadow

10  of a doubt?

11       JUROR BRADY:  Right.

12       MR. REVERCOMB:  Just beyond a reasonable doubt?

13       JUROR BRADY:  Yes.

14       MR. REVERCOMB:  You said you didn't live here

15  when this occurred?

16       JUROR BRADY:  No.

17       MR. REVERCOMB:  When did you move here?

18       JUROR BRADY:  In '85.

19       MR. REVERCOMB:  Would you tend to believe a

20  Police Officer's testimony more than another witness's

21  testimony just because he is a Police Officer?

22       JUROR BRADY:  No.

23       MR. REVERCOMB:  Would you tend to believe a

24  Police Officer's testimony less than another person's?

153

1          JUROR BRADY:  No.  I would try to weigh them.

2          MR. REVERCOMB:  Like you would any other person?

3          JUROR BRADY:  Right.

4          MR. REVERCOMB:  Has any of your family ever been

5    charged with a crime?

6          JUROR BRADY:  No.

7          MR. REVERCOMB:  I believe you told us that you

8    have been a victim of burglary.  When did that occur?

9          JUROR BRADY:  That was in 1980.

10         MR. REVERCOMB:  In Greenbrier County?

11         JUROR BRADY:  Yes.

12         MR. REVERCOMB:  And was it solved?

13         JUROR BRADY:  No.

14         MR. REVERCOMB:  Are you satisfied with the job

15   that the Police did?

16         JUROR BRADY:  No.

17         MR. REVERCOMB:  What Law Enforcement agency did

18   the investigation?

19         JUROR BRADY:  None of them did.  We called the

20   Sheriff and the State Police.  They said that they had

21   had a rash of burglaries during Spring Break, and they

22   didn't even come out.

23         MR. REVERCOMB:  So, neither department came out

24   to look?

154

1       JUROR BRADY:  No.

2       MR. REVERCOMB:  Would that cause you to feel any

3    bias against a Police officer?

4       JUROR BRADY:  No.  I guess I would just bear with

5    it.  It wasn't that much.  We weren't living there at the

6    time.

7       MR. REVERCOMB:  I think that's all I have.

8       MR. HUFFMAN:  Ms. Brady, there are witnesses who

9    will testify in this case, among other things, that they

10   are born again christians.  Would that cause you to give

11   their testimony, believe their testimony, any more than

12   others?

13      JUROR BRADY:  No.

14      MR. REVERCOMB:  Would it cause you to believe

15   their testimony less?

16      JUROR BRADY:  No.

17      THE COURT:  Thank you, Ms. Brady.  You can go on

18   back and join the rest of the jurors.  We'll get back to

19   you.

20

21      WHEREUPON, Martha Brady returned to the Jury

22   Lounge.

23

24      THE COURT:  Is there any objection by the

1    defense?

2          MR. BICKLEY:  No.

3          THE COURT:  The State?

4          MR. REVERCOMB:  No.

5          MS. LUSK:  Judge, do you want to take up Carol

6    Hay or hold off on that?

7          THE COURT:  Let's go ahead and take up Carol Hay.

8          MS. LUSK:  Your Honor, I pulled our file and I'm

9    quite concerned.  When I compared what's in the file with

10   the responses given by Ms. Hay, evidently her brother was

11   not convicted of just voluntary manslaughter.  He was a

12   parolee at the time he was convicted, and had been

13   convicted of at least another breaking and entering that

14   she didn't tell us about.

15         We also have some other files on him downstairs,

16   but she also indicated that she thought it was in self-

17   defense.  I believe, in looking at the file here, that

18   he shot from the ground floor up to a second floor

19   window, attempting to shoot one person, then he shot down

20   the street, and apparently somebody was walking away from

21   him.  He shot the victim, who was killed, on the outside

22   rear of his right ankle and in the side.

23         That certainly would not appear to be self-

24   defense type wounds, since they were not inflicted in a

156

1    collision-type manner.

2        The Records Custodian at the Penitentiary didn´t

3    remember the case, so he couldn´t tell me anything about

4    whether Painter had asked for help or not.  But he did

5    say that the man who killed him there in the penitentiary

6    was 5´7", 135 pounds, and that Painter was 6´, 165, and

7    had been in the Marines.

8        I´m concerned that we aren´t getting the full and

9    truthful answers from the juror, to tell you the truth.

10   I´m concerned for a couple of reasons.

11       One of these days, she might be seeking revenge

12   against the State of West Virginia, and harboring very

13   harsh feelings against the State because of the death of

14   her brother.

15       And secondly, I´m concerned about whether she

16   could find a guilty verdict in a case and send somebody

17   to the penitentiary for life, knowing that her brother

18   died there.

19       MR. BICKLEY:   I don´t have any concerns like

20   that.  She indicated to me that -- I have here a fair

21   person.  Also, she is a born again christian.

22       So, as she said, she has good judgment, and I

23   take the lady at her word for being a born again

24   christian.

157

1        MR. REVERCOMB:  Although, your Honor, she did say

2    earlier on the record that it might be a little bit

3    harder for her to return a verdict of guilty without a

4    recommendation of mercy.  Being a christian might have

5    some effect, but she did say that it would be hard for

6    her.

7        THE COURT:  That just means that she is a

8    conscientious juror.  She didn´t lie about anything; did

9    she?

10       MR. BICKLEY:  I don´t think so.

11       MS. LUSK:  She didn´t tell us all of the truth

12   about her brother´s background, I don´t think.  And

13   certainly not the facts of the case.

14       THE COURT:  I just asked that if you have a

15   family member convicted of a crime, and she said yes.

16   Then I asked her, for what, and she said for killing

17   somebody.  And then she volunteered that I should have

18   heard of it because -- or she expected us to have heard

19   of it because he had asked for help, and he had predicted

20   that he was going to be killed.

21       MR. REVERCOMB:  That´s what bothers me, Judge.

22   He asked for help and no one helped him.  Although she

23   said she doesn´t hold that against the Prosecutor, the

24   State of West Virginia didn´t help.

158

1        MR.   LUSK:    Nor  did  anybody  else  at  the

2   Penitentiary, for that matter.  She might believe ---

3        THE  COURT:   It's a hard place to live in the

4   penitentiary.  There is no question of that.

5        MR. BICKLEY:  But she indicated that she could

6   use her good judgment.  She didn't indicate that she

7   could not do it.  She would suck it up if she had to, if

8   necessary.

9        THE  COURT:   I'll take your request to strike

10  under advisement.

11       Okay, Sally.  Michele Williamson.

12

13       WHEREUPON, Michele Williamson was brought back to

14  the Jury Room for individual voir dire.

15

16       THE COURT:  Hi.  You want to come on back?

17       JUROR WILLIAMSON:  Hi.

18       THE COURT:  How are you?

19       JUROR WILLIAMSON:  Fine.

20       THE COURT:  Have you heard anything about this

21  case?

22       JUROR WILLIAMSON:  Not that I know of.

23       THE COURT:  Where do you live now?

24       JUROR WILLIAMSON:  Dunbar.

159

1        THE COURT:  Have you lived there long?

2        JUROR WILLIAMSON:  About two years.

3        THE COURT:  Before that, where did you live?

4        JUROR WILLIAMSON:  In Charleston.

5        THE COURT:  Did you ever live in St. Albans?

6        JUROR WILLIAMSON:  No.

7        THE COURT:  Did you know anything about this

8  trial starting today?

9        JUROR WILLIAMSON:  No.

10       THE COURT:  Have any members of the jury

11  discussed the case with you?

12       JUROR WILLIAMSON:  No.

13       THE COURT:  If something should come up that

14  rings a bell, and you think, "Oh, I remember hearing

15  about that," do you believe that you could put what you

16  have read and heard out of your mind, and base your

17  verdict solely on the evidence that comes in here?

18       JUROR WILLIAMSON:  Oh, yes.

19       THE COURT:  I think that's very important,

20  because the press, more often than not, reports something

21  accurately, but they do it on the basis of about fifteen

22  minutes exposure a day.  The jurors are going to know a

23  lot more than they do.

24       Where did you go to high school?

1          JUROR WILLIAMSON:  Stonewall and Nitro.

2          THE COURT:  Were there black people, other kids,

3     there?

4          JUROR WILLIAMSON:  In Dunbar.

5          THE COURT:  Have you worked with black persons?

6          JUROR WILLIAMSON:  Yes.

7          THE  COURT:  Do  you  belong  to  any  clubs  or

8     organizations that systematically exclude blacks or other

9     persons?

10         JUROR WILLIAMSON:  No.

11         THE  COURT:  Have any members of your immediate

12    family ever been convicted of a crime?

13         JUROR WILLIAMSON:  Not that I know of; no.

14         THE  COURT:  You might have a horse thief back

15    generations ago.

16         JUROR WILLIAMSON:  Who knows?

17         THE  COURT:  The  State,  at  the  close  of  the

18    evidence, might ask you and all of the other jurors who

19    are selected to hear this case to return a verdict of

20    guilty in the first degree of murder.  They are also

21    going to ask this jury not to recommend mercy.  And if

22    that is the verdict of the jury, it will mean that the

23    defendant, Mr. Moss, will go the penitentiary of this

24    State for the rest of his natural life, without any

1  possibility of parole.

2      Do you believe, without any injury to your

3  philosophical or religious beliefs, that you could in

4  good conscience return such a verdict against the

5  defendant, if the evidence warrants?

6      JUROR WILLIAMSON:  Yes.

7      THE COURT:  Obviously, there is another side to

8  this coin.  Mr. Moss has pleaded not guilty.  He is, in

9  fact, and the law presumes him to be not guilty.  And

10 before this jury could find him guilty, the jury must be

11 convinced that the Prosecutor has proven his guilt beyond

12 a reasonable doubt.

13     If the State can't prove him guilty beyond a

14 reasonable doubt, would you have any trouble finding him

15 not guilty?

16     JUROR WILLIAMSON:  No.

17     MR. BICKLEY:  Ms. Williamson, since you have been

18 on the jury panel, have you been selected for any other

19 trials?

20     JUROR WILLIAMSON:  No.

21     MR. BICKLEY:  I'm certain that you understand

22 that Mr. Moss is presumed to be innocent throughout the

23 entire trial ---

24     JUROR WILLIAMS:  Right.

1       MR. BICKLEY: -- until you go into the Jury Room?

2  He also has on obligation to prove that he is innocent.

3  He doesn't have to take the stand, and you must presume

4  that he is innocent until you make your deliberations.

5       JUROR WILLIAMS: Yes.

6       MR. BICKLEY: Do you further understand that if

7  you are suspicious that he is guilty or you have a strong

8  suspicion that he is guilty with nothing more, then you

9  are obligated to find him not guilty?

10      JUROR WILLIAMS: Right.

11      MR. BICKLEY: I have no further questions.

12      MS. LUSK: Do you understand that although the

13  State's burden is not to prove guilt beyond all doubt,

14  and not beyond a shadow of a doubt, our burden is to

15  prove him guilty beyond a reasonable doubt?

16      Can you follow that and not hold us to any higher

17  burden than the State requires?

18      JUROR WILLIAMSON: Right.

19      MS. LUSK: I think that's all we have, Judge.

20      MR. HUFFMAN: Ms. Williamson, if you were picked

21  as a juror on this case, and one of the witnesses, among

22  other things, would testify that he or she was a born

23  again christian, would that fact cause you to believe

24  their testimony any more than someone else?

163

1          JUROR WILLIAMSON:  Not really.

2          MR. REVERCOMB:  Would it cause you to believe

3     their testimony any less?

4          JUROR WILLIAMSON:  No.

5          THE COURT:  That's it.  Thank you.  You can go on

6     back.  Please don't discuss the questions or your answers

7     with the other jurors.

8          JUROR WILLIAMSON:  All right.

9

10         WHEREUPON, Michele Williamson returned to the

11    Jury Lounge.

12

13         THE COURT:  No objections?

14         MS. LUSK:  No.

15         MR. BICKLEY:  No.

16         THE COURT:  Next is Ruth Belcher.

17         We're going to get into something here with

18    Reggettz.  Do you want me to give him his Fifth Amendment

19    Rights?

20         MR. REVERCOMB:  I don't think it's necessary.

21         THE COURT:  If you want, I'll leave that option

22    open.

23         Then you get into the question of -- I'm not

24    suggesting for a second that I'm urging you to do it.

164

1    MS. LUSK:  I don't think it would hurt to advise

2  him.  He was advised the last time, in '84.  The

3  circumstances haven't changed since.

4    THE COURT:  You think we ought to have Joe Thomas

5  be up here?

6    MS. LUSK:  It wouldn't hurt to call him, but he

7  didn't come the last time.

8    THE COURT:  Didn't he?

9    MS.  LUSK:   I  think  they  may  have  had  a

10  conversation.

11

12    WHEREUPON, Ruth Belcher was brought back to the

13  Jury Room for individual voir dire.

14

15    THE COURT:  Come on back, Mrs. Belcher.  How are

16  you doing?

17    JUROR BELCHER:  Okay.

18    THE COURT:  Have you heard anything about this

19  case?

20    JUROR BELCHER:  No, I have not.

21    THE COURT:  It doesn't ring a bell with you in

22  any regard?

23    JUROR BELCHER:  No.

24    THE COURT:  Let me ask -- how long have you lived

1    here in the Kanawha Valley?

2         JUROR BELCHER:  Fourteen years.

3         THE COURT:  If something should come to mind, if

4    you remember something, can you put that out of your mind

5    and make your verdict only on what you hear here in the

6    Courtroom?

7         JUROR BELCHER:  Yes.

8         THE COURT:  Did you know that this trial, this

9    particular trial was starting today?

10        JUROR BELCHER:  Not at all.  I was surprised.

11        THE COURT:  Have any of your fellow jurors said

12   anything to you about this case?

13        JUROR BELCHER:  No.

14        THE COURT:  Have any immediate members of your

15   family ever been convicted of a crime?

16        JUROR BELCHER:  Not immediate, no.

17        THE COURT:  You started to say somebody?

18        JUROR BELCHER:  I was thinking about a nephew.

19        THE COURT:  Now, in this case, the Prosecutor is

20   going to ask the jury to return a verdict of guilty.

21   They are also going to ask the jury not to recommend

22   mercy.

23        If the defendant is found guilty of first degree

24   murder without a recommendation of mercy, he will go to

1    the penitentiary for the rest of his natural life,

2    without any hope of parole.

3                Do you have any religious or philosophical or

4    conscientious beliefs that would prevent you from

5    returning such a verdict?

6                JUROR BELCHER:  No, not if he is found guilty.

7                THE COURT:  The other side of that coin is, he is

8    presumed by the law to be innocent.  He doesn't have to

9    prove his own innocence.  The Prosecutor has to prove his

10   guilt, and they have to prove his guilt beyond a

11   reasonable doubt.

12               If they fail to prove him guilty beyond a

13   reasonable doubt, would you have any difficulty at all

14   in finding him not guilty?

15               JUROR BELCHER:  When you say not guilty, you're

16   not -- if he's innocent, I would not have any difficulty

17   in finding him not guilty.

18               THE COURT:  That's right.

19               MR. BICKLEY:  Ms. Belcher, you understand that

20   during the entire trial, until the jury goes into the

21   Jury Room to deliberate, the presumption of innocence is

22   presumed with Mr. Moss?

23               JUROR BELCHER:  Uh-huh.

24               MR. BICKLEY:  You understand that?

1      JUROR BELCHER: Yes, I do.

2      MR. BICKLEY: Do you understand that the mere

3  suspicion that he might be guilty or even a strong

4  suspicion that he might be guilty is not sufficient to

5  find him guilty?

6      It must be beyond a reasonable doubt?

7      JUROR BELCHER: Yes, I do.

8      MR. BICKLEY: Now, if you were to go into the

9  Jury Room to deliberate, and you honestly felt that the

10  State had not proven its case beyond a reasonable doubt,

11  and you were just suspicious that he might be guilty, but

12  the other eleven presumed or have stated to you that they

13  have found him guilty, could you hold out, if that was

14  your honest conviction?

15      JUROR BELCHER: Yes, I could.

16      MR. BICKLEY: Thank you. I have no further

17  questions.

18      MR. REVERCOMB: Likewise, if those eleven people

19  believed that he was guilty beyond a reasonable doubt,

20  and you just suspected that he was guilty, would you

21  listen to what the others have in mind when they give

22  their reasons for why they have found him guilty?

23      JUROR BELCHER: Uh-huh.

24      MR. REVERCOMB: Would you discuss your feelings

1   in a sense of fairness?

2         JUROR BELCHER:  Yes.

3         MR. REVERCOMB:  Do you understand that it is our

4   burden of proof to find him guilty -- to prove him guilty

5   beyond a reasonable doubt?  It's not our burden to prove

6   him guilty beyond all doubt, or all possible doubt.  It's

7   only a reasonable doubt.

8         Would you hold the State to a higher burden than

9   that?  I know it's hard to understand.

10        JUROR BELCHER:  Say all of that again?

11        MR. REVERCOMB:  It's our duty to prove him guilty

12   beyond a reasonable doubt.  Would you hold the State of

13   West Virginia to a higher burden that that?

14        JUROR BELCHER:  No.

15        MR. REVERCOMB:  You wouldn't require us to prove

16   that he is guilty beyond all possible doubt?

17        JUROR BELCHER:  Well, you're confusing me, the

18   way you're saying it.

19        MR. REVERCOMB:  It is a confusing theory.  I

20   believe the Judge will instruct you that you should find

21   your verdict based upon reason, and our proof has to be

22   reasonable.  There has to be evidence as to why you feel

23   that way.

24        JUROR BELCHER:  Uh-huh.

1       MR. REVERCOMB:  I don't want to confuse you,

2   really.  I just want you to understand that our burden

3   of proof is beyond a reasonable doubt.

4       JUROR BELCHER:  Uh-huh.

5       MR. REVERCOMB:  You say your nephew has been

6   convicted of a crime?

7       JUROR BELCHER:  No, he hasn't been convicted.

8       MR. REVERCOMB:  Has he been charged with a crime?

9       JUROR BELCHER:  I think he is charged or he's

10  incarcerated.

11      MR. REVERCOMB:  Where?

12      JUROR BELCHER:  In Kanawha County.

13      MR. REVERCOMB:  Do you know what he is charged

14  with?

15      JUROR BELCHER:  Well, allegedly he was involved

16  in one where somebody got killed.  So I don't know the

17  details on it.

18      MR. REVERCOMB:  You say allegedly that he is

19  charged with murder?

20      JUROR BELCHER:  I don't know what he is charged

21  with.  But that's what he was arrested for.

22      MR. REVERCOMB:  What's his name?

23      JUROR BELCHER:  Kenneth Mitchell, Levi Kenneth

24  Mitchell.

170

1        MR. REVERCOMB: And I believe he's 19 years old?

2        JUROR BELCHER: Uh-huh.

3        MR. REVERCOMB: Does the fact that he's

4  incarcerated and was arrested for being involved in a

5  murder -- does that cause you problems in this case?

6        JUROR BELCHER: It might.

7        MR. REVERCOMB: Do you feel that he has been

8  treated fairly so far?

9        JUROR BELCHER: I understand that he has. But

10 while he was incarcerated, you mean?

11       MR. REVERCOMB: Yes.

12       JUROR BELCHER: I understand that he has.

13       MR. REVERCOMB: What about the arrest itself --

14 do you feel that it was done fairly?

15       JUROR BELCHER: Evidently, it was.

16       MR. REVERCOMB: But you're saying that it might

17 cause you some difficulty for you to sit on this jury,

18 knowing that your nephew has been arrested for murder?

19       JUROR BELCHER: Yes.

20       THE COURT: Would you tend to believe a Police

21 Officer's testimony more than you would another witness,

22 just because he's a Police Officer?

23       JUROR BELCHER: No.

24       THE COURT: But on the other hand, would you

1  believe a Police Officer's testimony less than you would

2  another person?  You would just believe him like you

3  would anybody else?

4          JUROR BELCHER:  Yes.

5          MR. HUFFMAN:  If there was a person that appeared

6  to testify, among other things, that he was a born again

7  christian, would that cause you to believe his testimony

8  more?

9          JUROR BELCHER:  No.

10         MR. HUFFMAN:  Would it cause you to believe his

11 testimony less?

12         JUROR BELCHER:  No.

13         THE COURT:  Is the fact that your nephew is

14 charged with a crime here now, is that going to make it

15 difficult for you?  Tell me how.

16         JUROR BELCHER:  It wouldn't make it difficult to

17 make a decision.  It's just that my sister and I were

18 pretty close and ---

19         THE COURT:  It's your sister's son?

20         JUROR BELCHER:  Uh-huh.

21         THE COURT:  And you say you're pretty close and,

22 and then I cut you off.

23         JUROR BELCHER:  And I'm pretty close to my

24 nephew.  I babysat him.

172

1        THE COURT:   Does he have a trial date coming up?

2        JUROR BELCHER:   Not yet.

3        THE COURT:   When was he charged -- how long ago?

4        JUROR BELCHER:   It was about the middle of

5    February, along about the 16th of February, something

6    like that.

7        THE COURT:   Do you know who he was alleged to

8    have killed?

9        JUROR BELCHER:   Yes.   A guy named Sam Cooke.

10       THE COURT:   Okay.   So, it was a case that was in

11   the papers?

12       JUROR BELCHER:   Yes.

13       THE COURT:   I remember that.

14       Okay.   I think that's all.   You can have a seat

15   with the rest of the jurors, and we'll get back to you.

16

17       WHEREUPON, Ruth Belcher returned to the Jury

18   Lounge.

19

20       MR. REVERCOMB:   Your Honor, her nephew is placed

21   on the same charge that Mr. Moss is, and it carries the

22   same penalty.

23       MS. LUSK:   Plus, it wasn't dismissed at

24   preliminary hearing.   He was indicted.

173

1    MR. REVERCOMB:  You remember the battle between

2    Bill Forbes and Patsy McGraw?  From what I know of that

3    case -- well, it's a very serious crime, and the victim

4    was a known drug dealer.  And he shot him in the back and

5    the side.

6    THE COURT:  I know.  What do you think that's

7    going to do?  Give her some ill feelings towards your

8    office?

9    MS. LUSK:  It's sympathy for the defendant.

10    MR. REVERCOMB:  And the possibility of realizing

11    come time for us to argue the case that if we ask for

12    life, she may start thinking about her nephew, and what

13    he's facing.  She said it might make it tough for her.

14    MR. BICKLEY:  We have no objection, your Honor.

15    THE COURT:  You have no objection to her being

16    stricken?

17    MR. BICKLEY:  We have no objection to her being

18    on the jury.

19    THE COURT:  Do you want to excuse her?

20

21    WHEREUPON, Wanda Young was brought to the Jury

22    Room for individual voir dire.

23

24    THE COURT:  How are you today, Ms. Young?

174

1   JUROR YOUNG:  Fine.

2   THE COURT:  Have you heard anything about this

3 case?

4   JUROR YOUNG:  No.

5   THE COURT:  Have you read any newspaper articles?

6   JUROR YOUNG:  Yes.

7   THE COURT:  Okay.  I'd like to ask you what you

8 remember.

9   JUROR YOUNG:  Not too much.

10   THE COURT:  Is there anything specific that you

11 remember?

12   JUROR YOUNG:  No.

13   THE COURT:  Do you remember who was killed?

14   JUROR YOUNG:  I remember that three of them were

15 killed.

16   THE COURT:  Do you remember who they were?

17   JUROR YOUNG:  I think it was a mother and her two

18 children.

19   THE COURT:  Do you remember who was charged with

20 that?

21   JUROR YOUNG:  No.

22   THE COURT:  Do you remember that the father, the

23 husband, was originally charged?

24   JUROR YOUNG:  Yes, I think I do.

1       THE COURT:  Do you remember anything else?   Do

2   you remember anything about Mr. Moss?

3       JUROR YOUNG:  No.

4       THE COURT:  Could you put what you remember out

5   of your mind and only decide this case based on what you

6   hear in this Courtroom?

7       JUROR YOUNG:  Most of it is out of my mind.

8       THE COURT:  My biggest concern about that is, in

9   the first place, the media isn't here but a few minutes

10   a day, and they pick up scuttlebutt here and there, and

11   the jury has been in here all day.  The jury is going to

12   have much more knowledge than what they write, anyway.

13   So, both sides of this case are entitled to put on their

14   case for you to consider.

15       Now, have you heard -- did you know that the

16   trial was starting today?

17       JUROR YOUNG:  No.

18       THE COURT:  You found out this morning?

19       JUROR YOUNG:  Yes.

20       THE COURT:  Have you heard any other members of

21   the jury discuss this case before?

22       JUROR YOUNG:  No.

23       THE COURT:  Where did you go to high school?

24       JUROR YOUNG:  Charleston High School.

1          THE COURT:   When you attended, was Charleston

2    High School integrated?

3          JUROR YOUNG:   No.

4          THE COURT:   Have you ever worked with other

5    races?

6          JUROR YOUNG:   Yes.

7          THE COURT:   You work at McJunkin?

8          JUROR YOUNG:   Yes.

9          THE COURT:   For how long?

10         JUROR YOUNG:   Since '68.

11         THE COURT:   Did you work with black persons at

12   McJunkin?

13         JUROR YOUNG:   Yes.

14         THE COURT:   Have you ever belonged to a club or

15   organization that systematically excluded persons because

16   of their race?

17         JUROR YOUNG:   No.

18         THE COURT:   Do you have any immediate family

19   members who have been convicted of a crime?

20         JUROR YOUNG:   No.

21         THE COURT:   Now, the Prosecutors are going to ask

22   the members of this jury at the close of the evidence to

23   find the defendant guilty of first degree murder, and

24   they are going to ask you also not to make a

1   recommendation of mercy.

2         If this jury does that, if this defendant is

3   found guilty of murder in the first degree, he will be

4   sent to the penitentiary of this State for the rest of

5   his natural life, with no hope of parole.

6         Do you believe that if the evidence warrants it

7   in this case, that you could return such a verdict?

8         JUROR YOUNG:  Yes.

9         THE COURT:  Now, that's obviously not the only

10  verdict you can return in this case.  The defendant has

11  pleaded not guilty and is presumed by the law to be not

12  guilty.  And a jury can only find him guilty if the

13  Prosecutor proves that he is guilty beyond a reasonable

14  doubt.

15        If the Prosecutor can't prove that to your

16  satisfaction, would you have any difficulty in finding

17  him not guilty?

18        JUROR YOUNG:  No.

19        THE COURT:  Mr. Bickley.

20        MR. BICKLEY:  Mrs. Young, it's been a long day;

21  hasn't it?

22        JUROR YOUNG:  Yes, it has.

23        MR. BICKLEY:  Have you been selected on a jury

24  during the time that you have been here -- I mean for a

1  trial?

2        JUROR YOUNG:  In this session?

3        MR. BICKLEY:  Yes.

4        JUROR YOUNG:  Yes.

5        MR. BICKLEY:  What trial did you serve on?

6        JUROR YOUNG:  Judge Casey´s.  It was an

7  automobile accident.

8        MR. BICKLEY:  Was it exciting?

9        JUROR YOUNG:  Not really.

10        MR. BICKLEY:  That was a civil case, and this is

11  a criminal case, but I think you know what I am getting

12  ready to say anyway.

13        You understand that Mr. Moss, as he sits here and

14  throughout this entire trial, is presumed to be innocent,

15  until you walk into the Jury Room to deliberate your

16  findings.  Do you understand that?

17        JUROR YOUNG:  Yes, sir.

18        MR. BICKLEY:  Do you also understand that if you

19  have a strong suspicion or even a mere suspicion that he

20  might be guilty, that is enough not to convict him?

21        JUROR YOUNG:  I understand.

22        MR. BICKLEY:  And let´s say that you have a

23  strong suspicion that he might be guilty and you are

24  faced with that conclusion because of the instructions

1    that the Court will read to you, that you feel that the

2    State did not prove it, this is an option -- that the

3    eleven other people have come to different conclusions

4    than yours, they are saying that he is guilty -- do you

5    believe -- do you honestly feel that after listening to

6    their rationale that you could hold out, if that were

7    your sincere conviction?

8          JUROR YOUNG:  I think so.

9          MR. BICKLEY:  I have no further questions.  Thank

10    you, very much.

11          MS. LUSK:  Ms. Young, would you also listen to

12    the other eleven jurors and take into consideration their

13    views?

14          JUROR YOUNG:  Yes.

15          MS. LUSK:  And would you try to reach a verdict

16    in the case, if you could do so without sacrificing your

17    convictions on your part?

18          JUROR YOUNG:  Yes.

19          MS. LUSK:  Now, as Mr. Bickley has told you, the

20    State's burden in this case is to prove the defendant

21    guilty beyond a reasonable doubt.  That is always our

22    burden to prove.

23          Our burden is not that we must prove the case

24    beyond all reasonable doubt or beyond a shadow of a

180

1  doubt.  The burden is beyond a reasonable doubt.

2  Now, based on your reason and your common sense,

3  can you abide by that law and not hold the State to a

4  higher burden that the law requires?

5  JUROR YOUNG:  Yes.

6  MR. HUFFMAN:  Ms. Young, if you were selected for

7  this jury, in the course of the testimony, if a witness

8  testified, among other things, that he or she was a born

9  again christian, would that cause you to believe their

10  testimony more than someone else?

11  JUROR YOUNG:  I don't think so.

12  MR. HUFFMAN:  Would it cause you to believe their

13  testimony any less?

14  JUROR YOUNG:  No.

15  MR. HUFFMAN:  I don't have any further questions.

16  THE COURT:  Thank you, Ms. Young.  We'll be

17  talking with you later.

18

19  WHEREUPON, Wanda Young returned to the Jury

20  Lounge.

21

22  THE COURT:  We have to get wrapped up in here and

23  pick a jury today.

24

181

1          WHEREUPON, Helen Christ was brought to the Jury

2     Room for individual voir dire.

3

4          THE COURT:   Hello.   Would you like to come on

5     back here, please?

6          How are you?

7          JUROR CHRIST:   Fine.

8          THE COURT:   You say your name is Helen Christ?

9          JUROR CHRIST:   Christ.

10         THE COURT:   May I ask you a couple of questions,

11    Ms. Christ.  Have you heard anything about this case?

12         JUROR CHRIST:   No, sir.

13         THE COURT:   Fine.   Where do you live?

14         JUROR CHRIST:   On Jackson Street, on the East

15    End.

16         THE COURT:   How long have you lived there?

17         JUROR CHRIST:   I've lived there for thirteen

18    years.

19         THE COURT:   Did you ever live in St. Albans?

20         JUROR CHRIST:   No, sir.

21         THE COURT:   Did you know before you came down

22    here that this trial was starting today?

23         JUROR CHRIST:   No, sir.

24         THE COURT:   Have you talked to any other members

182

1  of the jury about this case?

2       JUROR CHRIST:  No, sir.

3       THE COURT:  Where did you attend school?

4       JUROR CHRIST:  Clendenin High.

5       THE COURT:  When you attended Clendenin High, was

6  it integrated?

7       JUROR CHRIST:  No, sir.

8       THE COURT:  Have you ever worked with black

9  persons?

10      JUROR CHRIST:  Yes.

11      THE COURT:  Do you believe that it is more likely

12 that a black person is going to commit a crime than a

13 white?

14      JUROR CHRIST:  No.

15      THE COURT:  Have you even been a member of a club

16 or organization that systematically excluded persons

17 because of their race?

18      JUROR CHRIST:  No.

19      THE COURT:  Do you have any immediate family

20 members who have been convicted of a crime?

21      JUROR CHRIST:  No, sir.

22      THE COURT:  I can assure you that the Prosecutors

23 are going to ask you to find a verdict of guilty of first

24 degree murder and no recommendation of mercy.

1      The effect of that would be that the defendant

2  would be sentenced to the penitentiary for the rest of

3  his life, with no hope of parole.

4      If the evidence warrants it, could you return

5  such a verdict without harm to either your religious or

6  philosophic feelings and views?

7      JUROR CHRIST:  Yes, sir.

8      THE COURT:  Now, that is not the only solution.

9  Obviously, the defendant in this case is presumed by the

10  law to be not guilty.  Would you have any difficulty in

11  rendering a verdict of not guilty if the State failed to

12  prove their case?

13      JUROR CHRIST:  No, sir.

14      MR. BICKLEY:  Mrs. Christ, during the time that

15  you've been on the panel, have you been selected for any

16  trials?

17      JUROR CHRIST:  Once.

18      MR. BICKLEY:  What was that?

19      JUROR CHRIST:  A lover's dispute.

20      MR. BICKLEY:  Was it exciting?

21      JUROR CHRIST:  Not really.

22      MR. BICKLEY:  Well, you probably know what I'm

23  about to say.  Mr. Moss, as he sits here, is presumed to

24  be innocent, and throughout the entire course of the

184

1    trial, until you go into the Jury Deliberation Room, and

2    the Court tells you to go in and consider the verdict.

3         Do you understand that?

4         JUROR CHRIST:  Yes, sir.

5         MR. BICKLEY:  Do you further understand that Mr.

6    Moss has no obligation to take the stand.  He has no

7    obligation to prove his innocence.  The State must prove

8    him guilty beyond a reasonable doubt.

9         Did you know that?

10        JUROR CHRIST:  Yes.

11        MR. BICKLEY:  And do you further understand that

12   should you have a strong suspicion that he might be

13   guilty, that's not enough to convict him?

14        JUROR CHRIST:  No, sir.

15        MR. BICKLEY:  Do you understand that?

16        JUROR CHRIST:  Yes.

17        MR. BICKLEY:  If you are just suspicious that he

18   might be guilty, that's not enough.  It has got to be

19   beyond a reasonable doubt.

20        Do you understand that?

21        JUROR CHRIST:  Yes.

22        MR. BICKLEY:  If you have that suspicion and you

23   still felt that way, after deliberating with your fellow

24   jurors, then you must find him not guilty.

185

1    Do you understand that?

2        JUROR CHRIST: Yes, sir.

3        MR. BICKLEY: Do you think that you could do

4    that?

5        JUROR CHRIST: Yes, sir.

6        MS. LUSK: Do you understand also, ma´am, that

7    the State´s burden in this case is to prove that the

8    defendant is guilty beyond a reasonable doubt? That´s

9    all we have got to prove in a criminal case?

10       JUROR CHRIST: Yes.

11       MS. LUSK: Our burden is not to prove him guilty

12   beyond all doubt or beyond a shadow of a doubt, but we

13   have to prove it beyond a reasonable doubt.

14       Would you be able to follow that law and not hold

15   the State to any higher burden than the law requires?

16       JUROR CHRIST: Yes, ma´am.

17       MS. LUSK: If you were in the Jury Deliberation

18   Room and you found yourself in a situation where your

19   opinion differed from your fellow jurors, do you think

20   that you would pay attention to what their views were and

21   consider those views and try to reach a verdict in this

22   case?

23       JUROR CHRIST: Yes, ma´am.

24       MS. LUSK: Thanks.

1          MR. REVERCOMB:  You said, I believe, earlier that

2    your son's house has been burglarized?

3          JUROR CHRIST:  Yes.

4          MR. REVERCOMB:  Is that here in West Virginia?

5          JUROR CHRIST:  Yes, in Kanawha City.

6          MR. REVERCOMB:  How long ago was that?

7          JUROR CHRIST:  About eight years.

8          MR. REVERCOMB:  I believe that you also said that

9    it wasn't solved?

10         JUROR CHRIST:  No.

11         MR. REVERCOMB:  Were you satisfied -- or was your

12   son satisfied with the investigation that the Police did?

13         JUROR CHRIST:  Yes, we were.

14         MR. REVERCOMB:  Even though they couldn't solve

15   it?

16         JUROR CHRIST:  Yes.

17         MR. HUFFMAN:  Ms. Christ, if a Police Officer

18   were to testify in this case, would you believe his

19   testimony more than somebody else's, simply because he

20   is a Police Officer?

21         JUROR CHRIST:  I don't think so, sir.

22         MR. HUFFMAN:  If a witness were to testify, among

23   other things, that they were a born again christian,

24   would that cause you to believe their testimony more than

187

1    anyone else?

2          JUROR CHRIST:   I don't know anything about the

3    born again christian religion.

4          MR. HUFFMAN:   That wouldn't have any effect on

5    you?

6          JUROR CHRIST:   No.   Religion doesn't come into

7    it.

8          THE COURT:   Thank you, Mrs. Christ.   You may go

9    back to the Jury Lounge and join the other jurors.   We

10   hope to wrap this up soon.

11

12         WHEREUPON, Helen Christ returned to the Jury

13   Lounge.

14

15         THE COURT:   Are there any problems?

16   MS. LUSK:   No.

17   MR. BICKLEY:   No.

18         THE COURT:   Sally, we need William Burroughs.

19

20         WHEREUPON, William Burroughs was brought into the

21   Jury Room for individual voir dire.

22

23         THE COURT:   How are you, Mr. Burroughs?

24         JUROR BURROUGHS:   Fine.

188

1        THE COURT:  Where do you live?

2        JUROR BURROUGHS:  Charleston.

3        THE COURT:  How long have you lived in

4    Charleston?

5        JUROR BURROUGHS:  Probably twelve years.

6        THE COURT:  Have you ever lived in St. Albans?

7        JUROR BURROUGHS:  No.

8        THE COURT:  Where did you go to high school?

9        JUROR BURROUGHS:  East Bank.

10       THE COURT:  Have you heard anything at all about

11   this case?

12       JUROR BURROUGHS:  No.

13       THE COURT:  Not a thing?

14       JUROR BURROUGHS:  No.

15       THE COURT:  If something should come to mind,

16   when you hear this evidence out here, and you would say,

17   "Oh, I remember reading about that," can you put what you

18   read out of your mind and decide this case solely on the

19   evidence that comes to you in the Courtroom?

20       JUROR BURROUGHS:  Yes.

21       THE COURT:  That's important, because both sides

22   are entitled to know what evidence that you are

23   considering.  They will put on whatever you will need to

24   know; and also the news media doesn't get it right every

189

1      time.

2              Do you understand that?

3              JUROR BURROUGHS:  Yes, sir.

4              THE    COURT:    Now,  did  you  know  that  this

5      particular trial was starting today?

6              JUROR BURROUGHS:  No, I didn't.

7              THE  COURT:   Have you heard any jurors discuss

8      this case?

9              JUROR BURROUGHS:  No.

10             THE  COURT:   When you attended school, was East

11     Bank segregated?

12             JUROR BURROUGHS:  Yes.

13             THE  COURT:   Have  you  ever  worked  with  black

14     persons?

15             JUROR BURROUGHS:  Yes.

16             THE  COURT:   Have you ever belonged to a club or

17     organization that excluded blacks?

18             JUROR BURROUGHS:  No.

19             THE COURT:  Now, the Prosecutors are going to ask

20     you  to  find  --  and  every  other  juror  to  find  --  the

21     defendant guilty of first degree murder.  They will also

22     ask you to find no mercy -- to make a no mercy finding.

23     And  that  would  result  in  the  defendant  going  to  the

24     penitentiary for the rest of his natural life, without

1    hope of parole, if the jury does that.

2        Do you understand that?

3        JUROR BURROUGHS:  Yes, sir.

4        THE COURT:  Could you return such a verdict

5    without harm to your own personal thoughts and

6    convictions if the evidence warranted it?

7        JUROR BURROUGHS:  If I felt like the evidence was

8    there, I could.

9        THE COURT:  Now, let's look at it from another

10   perspective.  The defendant is, in the eyes of the law,

11   not guilty.  And if the State can't prove him guilty

12   beyond a reasonable doubt, then he's entitled to a

13   finding of not guilty by this jury, if the Prosecutor

14   didn't prove him guilty.

15       Do you think that you would have any trouble

16   finding him not guilty?

17       JUROR BURROUGHS:  No, not if they didn't prove

18   it.

19       THE COURT:  Okay.

20       MR. BICKLEY:  Mr. Burroughs, have you been

21   selected for any other jury trials?

22       JUROR BURROUGHS:  Not this time.

23       MR. BICKLEY:  But of course, you understand that

24   Mr. Moss is innocent throughout the entire course of the

191

1    trial until you go into the Jury Room to deliberate.  Do

2    you understand that?

3           JUROR BURROUGHS:  Yes.

4           MR. BICKLEY:  Do you further understand that if

5    he elects to remain silent and not take the witness stand

6    that that is not to be held against him?

7           JUROR BURROUGHS:  Yes.

8           MR.  BICKLEY:    And   that   he   still   has   the

9    presumption of innocence?

10          JUROR BURROUGHS:  Yes.

11          MR. BICKLEY:  Do you understand that if you were

12   just merely suspicious that he might be guilty, that is,

13   the State must prove its case, must prove him guilty, not

14   that he must prove himself innocent, but if you were just

15   suspicious that he might be guilty, that you are to

16   return a verdict of not guilty?

17          JUROR BURROUGHS:  Yes.

18          MR. BICKLEY:  I have no further questions.

19          MS. LUSK:  Judge, in your list that you had up

20   there, did the Court ask him about crime in the family?

21          THE COURT:  Do you have any immediate family

22   members who have ever been convicted of some crime?

23          JUROR BURROUGHS:  No.

24          MS.  LUSK:    Mr.  Burroughs,  when  Mr.  Bickley

1    described to you that the State has a burden in this case

2    beyond a reasonable doubt, that is the burden in all

3    criminal cases, of course.  And that's a burden that we

4    accept.  But we do not have the burden, however, of

5    proving the case beyond all doubt or beyond a shadow of

6    a doubt.

7           Do you think that you could follow the law and

8    not require the State to prove the case with any higher

9    burden than the law requires?

10          In other words, you can hold us to a burden of

11   reasonable doubt, rather than beyond any doubt?

12          JUROR BURROUGHS:   Beyond a reasonable doubt

13   whether I found him guilty or not?

14          MS. LUSK:  Yes.

15          JUROR BURROUGHS:  Yes.

16          MR. REVERCOMB:  When you were picked late this

17   morning, did you hear the questions that the Judge had

18   asked earlier, whether you knew any of these witnesses

19   or not?

20          Did you know any of the witnesses?

21          JUROR BURROUGHS:  No, I didn't know any of them.

22          MR. REVERCOMB:  And you've already told us that

23   you don't remember anything about this crime.

24          Have you ever been on jury duty before this time?

193

1     JUROR BURROUGHS:  I was three years ago.

2     MR. REVERCOMB:  Did you sit on a criminal trial

3  then?

4     JUROR BURROUGHS:  It was a rape trial.

5     MR. REVERCOMB:  Do you remember what trial that

6  was?

7     JUROR BURROUGHS:  It was concerning a girl from

8  St. Albans.  Her name was Sissy -- that's all I can

9  remember.

10    MR. REVERCOMB:  Was a guilty verdict returned?

11    JUROR BURROUGHS:  Yes.

12    MR. HUFFMAN:  If you were on the jury in this

13  case, and a Police Officer testified, would you give his

14  testimony more weight just because he is a Police

15  Officer?

16    JUROR BURROUGHS:  No.

17    MR. HUFFMAN:  What if there is a witness who was

18  testifying, and in the course of his testimony, he

19  indicated that he was a born again christian?  Would you

20  believe his or her testimony any more because of that?

21    JUROR BURROUGHS:  No.

22    MR. HUFFMAN:  I have no further questions.

23    THE COURT:  Thank you.  We'll get back with you

24  shortly.

194

1

2          WHEREUPON, William Burroughs returned to the Jury

3     Lounge.

4

5          THE COURT:  Let me ask you -- what does he do?

6          MR. REVERCOMB:  He's a lab analyst.

7          THE COURT:  He had a $12,00 to $15,000 Rolex on,

8     with stones set in the face.

9          Okay, bring in Carl McLaughlin.

10

11          WHEREUPON, Carl McLaughlin was brought into the

12     Jury Room for individual voir dire.

13

14          THE COURT:  Hello, Mr. McLaughlin.

15          JUROR McLAUGHLIN:  Hi.

16          THE COURT:  What I need to know is what have you

17     heard about this case?

18          JUROR McLAUGHLIN:  Just what I heard the other

19     night on TV, like on a news update.

20          THE COURT:  What did it say?  I didn't see it.

21          JUROR McLAUGHLIN:  If I can remember the words,

22     it just said that this guy had been granted a new trial

23     because of a trial error.  That was the gist of the whole

24     thing.  It was like a news update.  They would report

195

1   further on the news, or something.    I didn't see

2   anything else.

3        THE COURT:  Do you remember reading or hearing

4   anything about this when all of this happened?

5        JUROR McLAUGHLIN:  Just vaguely.  The only thing

6   I can remember about it was that -- I think his name was

7   Paul -- was held there for a brief time.  That's about

8   all I remember.

9        THE COURT:    Okay.  Do you remember any of the

10  details of what was supposed to have happened?

11       JUROR McLAUGHLIN:   No, just that the three of

12  them were found dead, that's all.

13       THE COURT:  Until you came into the Courtroom

14  this morning, had anybody talked to you about this case?

15       JUROR McLAUGHLIN:  No.

16       THE COURT:   Were you aware that this case was

17  coming up today?

18       JUROR McLAUGHLIN:  No.

19       THE COURT:  Have any jurors talked to anybody

20  about this case?

21       JUROR McLAUGHLIN:  No, not that I know of.

22       THE COURT:  Where did you go to high school?

23       JUROR McLAUGHLIN:  DuPont High School.

24       THE COURT:  DuPont was integrated when you went

196

1     there; wasn't it?

2          JUROR McLAUGHLIN:  Yes.

3          THE COURT:  Where do you work now?

4          JUROR McLAUGHLIN:  Carbide.

5          THE COURT:  That's right.  You told us that.  Do

6     you have black people that you work with?

7          JUROR McLAUGHLIN:  Yes.

8          THE COURT:  Have you ever been a member of a club

9     or organization that systematically excluded blacks from

10    membership?

11          JUROR McLAUGHLIN:  No.

12          THE COURT:  Do you have any immediate family

13    members who have been convicted of a crime?

14          JUROR McLAUGHLIN:  No.

15          THE COURT:  Now, the Prosecuting Attorney is

16    going to ask the jury at the time of closing of the

17    evidence to return a verdict of guilty of first degree

18    murder, with no recommendation of mercy.

19          If that is the verdict of the jury, the defendant

20    will go to the penitentiary and spend the remainder of

21    his life there, without hope of parole.  Can you return

22    such a verdict without going against your scruples and

23    principles or philosophy, if the evidence warrants it?

24          JUROR McLAUGHLIN:  Yes.

1          THE COURT:  By law, the defendant in this case is

2     presumed to be innocent, and that presumption goes with

3     him throughout the trial, until the jury is satisfied of

4     his guilt beyond a reasonable doubt.

5          If the Prosecutor can't prove him guilty beyond

6     a reasonable doubt, would you have any difficulty in

7     returning a not guilty verdict?

8          JUROR McLAUGHLIN:  No, sir.

9          MR. BICKLEY:  No questions.

10          MS. LUSK:  We don't have any, either.

11          THE COURT:   Thank you.   Please don't discuss

12     these questions with other jurors.

13

14          WHEREUPON, Carl McLaughlin returned to the Jury

15     Lounge.

16

17          THE COURT:  I let Pryor go, but we haven't filled

18     his in; have we?  So, the next one is William Boyd.

19

20          WHEREUPON, William Boyd was brought into the Jury

21     Room for individual voir dire.

22

23          THE COURT:  Come on in, Mr. Boyd.  Have a seat.

24     We can't remember if you told us that you had heard

198

1    anything about this case or not.

2         JUROR BOYD:  No, sir.  I may have, but I don't

3    remember anything about it.

4         THE COURT:  If you have and you remember

5    something, could you put that out of your mind and base

6    your verdict solely on the law and the evidence that

7    comes to you in the Courtroom?

8         JUROR BOYD:  Yes.  You told us this morning what

9    it was, and I was sitting there thinking -- I couldn't

10   even think about when it happened.  It just didn't ring

11   a bell with me.  The names didn't ring a bell.

12        THE COURT:  That's good.  But if something does

13   come to mind, though, you will pay attention to all of

14   the evidence?

15        JUROR BOYD:  Right.

16        THE COURT:  Did you know that this trial was

17   starting today?

18        JUROR BOYD:  No, sir.

19        THE COURT:  Have you heard any of the other

20   members of the jury discussing this case?

21        JUROR BOYD:  No.  I just heard one thing they

22   said in there, that we're going to be interviewed

23   individually when we come back.  That's all.  We've

24   talked about everything else, but nothing at all about

199

1    the case.

2         THE COURT:  Were the schools integrated when you

3    went to school?

4         JUROR BOYD:  No.

5         THE COURT:  Have you worked with black people

6    where you work?

7         JUROR BOYD:  Yes, sir.  I grew up in Alabama.

8    There was a school in Alabama that was a black high

9    school, and they named it after my dad when he died.

10        I came here in 1960 as Supervisor of Parks and

11   Recreation.  Eddie James was on the Board.  Dr. Wallace

12   knew me.  Everybody thought, "Here's a guy from Alabama.

13   All hell's going to break loose."  But it didn't.

14        THE COURT:  Where in Alabama?

15        JUROR BOYD:  Indora, I-n-d-o-r-a.

16        THE COURT:  But you have lived here since 1960?

17        JUROR BOYD:  In '60, I came here.

18        THE COURT:  Have you ever belonged to any clubs

19   or organizations that wouldn't allow all people to join?

20        JUROR BOYD:  I'm a Mason.

21        THE COURT:  How long have you been a Mason?

22        JUROR BOYD:  I joined when I was 21, but I

23   haven't been in the Lodge for about fifteen years.

24        THE COURT:  I'm not a Mason.  Do Masons exclude

1    some people?

2         JUROR BOYD:  Yes.

3         THE COURT:  On what basis?

4         JUROR BOYD:  I´m not sure.

5         THE COURT:  Tell me, what is their rationale, why

6    would they not ---

7         JUROR BOYD:  There is -- Catholics, at one time,

8    couldn´t join; I think they can now.  The Jewish people

9    go; they take a different route to join.  I think that´s

10   about all.  The Masons are not integrated, as far as I

11   know.

12        THE COURT:  Okay.  Have any members of your

13   immediate family ever been convicted of a crime?

14        JUROR BOYD:  No, sir.

15        THE COURT:  Now, the Prosecutor is going to ask

16   the jury, and every member of that jury, to return a

17   guilty verdict on each of these charges, and to recommend

18   that the defendant not be granted mercy.

19        Now, what the practical outcome of that is, if

20   the defendant is found guilty of first degree murder with

21   no recommendation of mercy, he will spend the remainder

22   of his natural life in the penitentiary without hope of

23   parole.

24        If the Prosecutor can prove that he is guilty

201

1    beyond a reasonable doubt, would you have any difficulty

2    in returning a guilty verdict?

3        JUROR BOYD:  I don't think so.

4        THE COURT:  Now, Mr. Moss has pleaded not guilty,

5    and by law, he is presumed to be not guilty.  The

6    Prosecutor has to prove his guilt beyond a reasonable

7    doubt, as I said.  If they can't prove that he is guilty

8    beyond a reasonable doubt, would you have any difficulty

9    at all in finding him not guilty?

10       JUROR BOYD:  No, sir, I don't think so.

11       MR. BICKLEY:  Sir, do you support the tenets of

12   the Masons segregation policy?

13       JUROR BOYD:  Yes, sir.

14       MR. BICKLEY:  You believe that they should be

15   segregated?

16       JUROR BOYD:  That's wrong; I think they shouldn't

17   be.

18       MR. BICKLEY:  Now, you understand -- how long

19   have you been on the panel?  Have you been selected to

20   be on any other juries?

21       JUROR BOYD:  No.  I came in on one for a few

22   minutes one day, and they had a deposition and one

23   testimony, and then they settled.  That's all.

24       THE COURT:  Was that the one where the fellow was

202

1    suing 7-Eleven?

2            JUROR BOYD:  Yes.

3            MR. BICKLEY:   During the entire course of the

4    trial, even up until you get in the Jury Room for

5    deliberations, Mr. Moss has the presumption of innocence.

6    Do you understand that principle?

7            JUROR BOYD:  Yes.

8            MR. BICKLEY:  Do you further understand that Mr.

9    Moss has no obligation to prove himself innocent.  He may

10   remain silent, and no inference of guilt can be made from

11   that.  Do you understand that?

12           JUROR BOYD:  Yes, sir.

13           MR. BICKLEY:  And that the State must prove him

14   guilty beyond a reasonable doubt, and if they fail to do

15   that, can you find him innocent?

16           JUROR BOYD:  Yes.

17           MR. BICKLEY:  Do you further understand that you

18   may, during the course of the trial, even in the Jury

19   Room be suspicious that he might be guilty, but that is

20   not enough; that you must find him not guilty?

21           JUROR BOYD:  Yes.

22           MR. BICKLEY:  Let's assume, sir, that you have a

23   strong suspicion that he might be guilty and you go into

24   the Jury Room with this conviction that you have that the

1    State has not proven him guilty, okay, beyond a

2    reasonable doubt.  Do you believe, after you have heard

3    the deliberation, the rationale, the evidence, the

4    opinions of the other jury members, that you could hold

5    out against them if you honestly felt that the State had

6    not proved its case?

7        JUROR BOYD:  Yes, I do.

8        MR. BICKLEY:  Thank you.

9        MR. REVERCOMB:  Do you, likewise, believe -- and

10   under this hypothesis -- and other people feel that Mr.

11   Moss is guilty and you didn't, would you listen to their

12   reasoning, their convictions, and try to arrive at a

13   verdict, if you could, without sacrificing your

14   convictions?

15       JUROR BOYD:  Yes.

16       MR. REVERCOMB:  Of course, our burden of proof in

17   all criminal cases is beyond a reasonable doubt.  Would

18   you hold us to a higher burden than that?  Would you

19   require the State to prove beyond all possible doubt?

20       JUROR BOYD:  Yes, I would.

21       MR. REVERCOMB:  We would have to prove his guilt

22   beyond all possible doubt?

23       JUROR BOYD:  Yes, sir.

24       MR. REVERCOMB:  Do you understand that that's not

204

1    our burden of proof?

2        JUROR BOYD:  Yes.

3        MR. REVERCOMB:  You understand that we are to

4    prove him guilty beyond a reasonable doubt?

5        JUROR BOYD:  Right, beyond a reasonable doubt.

6        MR. REVERCOMB:  And that we don't have to prove

7    that he is guilty beyond all possible doubt?

8        JUROR BOYD:  Beyond a reasonable doubt.

9        MR. REVERCOMB:  Would you require us to prove his

10   guilt beyond all reasonable doubt?

11       JUROR BOYD:  Reasonable doubt -- yes.  I'd have

12   to be sure when I voted, if that was my conviction that

13   he was either guilty or not guilty.  If I had a question

14   in my mind, I don't believe that I could vote the other

15   way, unless I had that question answered.

16       MR. REVERCOMB:  If that was a reasonable doubt?

17       JUROR BOYD:  Yes.

18       MR. REVERCOMB:  Do you think that would apply to

19   any question?

20       JUROR BOYD:  Any question -- yes.

21       MS. LUSK:  I take it that -- and I know that it

22   may seem like we are splitting hairs here, but this is

23   important.  If the Court were to instruct you that the

24   State's burden is to prove the case beyond a reasonable

205

1    doubt, do you believe that if you had any doubt, that you

2    could not vote to convict?

3         JUROR BOYD:  I don't think I could.

4         MS. LUSK:  That's all I have.

5         MR.  REVERCOMB:    If  the  Court  gave  you  an

6    instruction -- I don't know how to put that.  If  the

7    Court gave you an instruction that beyond a reasonable

8    doubt  is  not  necessarily  proof  without  conflict  or

9    without contradiction, could you follow that?

10        That goes back to our question -- if you had any

11   doubt.  You're saying you couldn't vote to convict?

12        JUROR BOYD:  Would you restate your question so

13   that I can understand?

14        MR. REVERCOMB:  I'll try to clarify that.

15        My question is, if the Court instructed you at

16   the end of the case that proof beyond a reasonable doubt

17   does not necessarily mean proof without any conflicts or

18   without any contradictions of the evidence, could you

19   follow that instruction?

20        JUROR BOYD:  If the Judge says, find without a

21   reasonable doubt.

22        MR. REVERCOMB:  And without a reasonable doubt

23   doesn't mean that there should be no conflicts in the

24   evidence or contradictions in the evidence.

1        Could you follow that instruction of law, or if

2    you felt that there were conflicts in the evidence, would

3    you be -- would you find yourself unable to vote him

4    guilty?

5        JUROR BOYD:  I think so.  If I wasn't sure about

6    it, I wouldn't want to vote.  I would want to be sure

7    before I voted, so that I could feel comfortable with it.

8        MR. REVERCOMB:  Okay.  That's all I have.

9        THE COURT:  Thank you, sir.  If you want to go

10   back and join the rest of the jurors, please don't

11   discuss the questions or your answers with the other

12   jurors.

13

14       WHEREUPON, William Boyd returned to the Jury

15   Lounge.

16

17       MR. BICKLEY:  I think you are confusing them.  It

18   makes sense that if he has a doubt, he wouldn't vote.

19   I think you are confusing them.

20       THE COURT:  Are you going to ask me to take him

21   off?

22       MS. LUSK:  Yes.

23       MR. BICKLEY:  Not for cause.  They confused him.

24   He said if he had any doubt, he wouldn't vote; that's the

1    right answer.

2         THE COURT:  They can excuse him if they want.

3         MR. REVERCOMB:  Yes, your Honor, I would move to

4    strike for cause.

5         He has answered that question differently.  He

6    said if he had any doubt; he didn't say whether it was

7    reasonable or not.

8         MR. BICKLEY:  There is not a juror that, if they

9    had some doubt, they would vote him guilty -- if they're

10   honest with themselves.

11        I don't think you understand.  If they have some

12   doubt, then they are suspicious.

13        MR. REVERCOMB:  But that doubt has to be

14   reasonable.

15        THE COURT:  I'm going to keep him.  Let me tell

16   you why.  The only reason I have any reservations about

17   that process right there is because you're asking a juror

18   what he would do before he's ever been charged on the

19   law.  We tend to be the only people that understand them

20   anyway.

21        MR. REVERCOMB:  I'm not sure we even understand

22   them.

23        I question his reasonability of the doubt.  You

24   will have to define it; that's why we don't define it.

208

1    THE COURT:   You assume that the jurors are

2    reasonable.  If their doubt is unreasonable, then you're

3    not going to have any doubt.

4        Sally, next is Linda Haynes.

5

6        WHEREUPON, Linda Haynes was brought into the Jury

7    Room for individual voir dire.

8

9        THE COURT:  Come in, Ms. Haynes.  How are you?

10       JUROR HAYNES:  Fine.

11       THE COURT:  Where do you live?

12       JUROR HAYNES:  The Sissonville area.

13       THE COURT:  Have you ever lived in St. Albans?

14       JUROR HAYNES:  No.

15       THE COURT:  Have you ever heard anything at all

16   about this case?

17       JUROR HAYNES:  Just vaguely, but I can't remember

18   any details.

19       THE COURT:  Just tell me what you remember.

20       JUROR HAYNES:  Just the name, in particular.

21       THE COURT:  Reggettz or Moss?

22       JUROR HAYNES:  Reggettz.  But as far as details,

23   I can't remember anything.

24       THE COURT:  Let me just tell you what the

209

1  evidence will be:  That Mrs. Reggettz and the two

2  children were killed, and that Mr. Reggettz was

3  originally charged with that.

4  He says that he came home and found his family

5  there.

6  JUROR HAYNES:  I can vaguely remember it, but

7  nothing in detail.

8  THE COURT:  If evidence comes in and then you

9  think, "Oh, I remember reading about that," can you put

10  what you read out of your mind and decide this case

11  solely on what you hear in the Courtroom?

12  JUROR HAYNES:  Yes.

13  THE COURT:  That's important to the State and to

14  the defendant for a couple of reasons.  One is, the

15  newsman isn't always right.  Second, the reason for that

16  is, you will know more than the news media does, anyway.

17  They come in and stay for a couple of minutes in this

18  case, and then go out and write a column.  You're the one

19  who sits around and hears all of it.  You feel that you

20  can base your verdict on the evidence?

21  JUROR HAYNES:  Yes.

22  THE COURT:  Did you know that this trial was

23  starting today?

24  JUROR HAYNES:  No, sir.

210

1      THE COURT:  Have you heard any jurors discuss it
2   at all?
3      JUROR HAYNES:  No.
4      THE COURT:  Where did you attend school?
5      JUROR HAYNES:  Sissonville.
6      THE COURT:  When you attended school, were there
7   black children in Sissonville?
8      JUROR HAYNES:  Not at the time I went.
9      THE COURT:  Okay.  Was it because the school was
10  segregated or because there weren't any blacks out there?
11     JUROR HAYNES:  At that time, there just weren't
12  any that lived there.
13     THE COURT:  Do  you work?
14     JUROR HAYNES:  I am self-employed.
15     THE COURT:  Do you work with black people?
16     JUROR HAYNES:  I've got a renter that is black.
17     THE  COURT:  Do  you belong  to  any  clubs  or
18  organizations that systematically exclude black people?
19     JUROR HAYNES:  No.
20     THE COURT:  Now, have any members of your family
21  ever been convicted of a crime?
22     JUROR HAYNES:  Not that I know of.
23     THE COURT:  The State will ask for a verdict in
24  this case that will result in the defendant going to the

1    penitentiary for his natural lifetime, without hope of

2    parole, if they prove their case.

3           Now, if they prove their case, do you have any

4    philosophical or religious reasons or moral ones why you

5    could not return such a verdict?

6           JUROR HAYNES:  I've never thought about it, but

7    I suppose not.

8           THE COURT:  Okay.  Now, it is equally important

9    that the defendant be given his full presumption of

10   innocence.  And so if the State fails to prove its case

11   against him, would you have any difficulty at all in

12   returning a verdict of not guilty?

13          JUROR HAYNES:  Not that I can see.

14          MR. BICKLEY:  Ms. Haynes, did you know that Mr.

15   Reggettz came from Sissonville?  He used to live out

16   Sissonville?

17          JUROR HAYNES:  No, I had no idea.

18          MR. BICKLEY:  Now, during the time that you have

19   been on the panel, have you been selected ---

20          MS. LUSK:  He never lived in Sissonville.

21          MR. BICKLEY:  He never lived out there?

22          MS. LUSK:  No.

23          MR. BICKLEY:  Okay.  Reggettz never lived out

24   Sissonville; that's why you don't know about it.

212

1    Have you been selected for any trials?

2    JUROR HAYNES:  Yes, on one.

3    MR. BICKLEY:  What was that?

4    JUROR HAYNES:  Shop-a-Minit versus -- I can't

5    remember his name; it's a foreign name.

6    MR. BICKLEY:  Was that a civil trial?

7    JUROR HAYNES:  Yes.

8    MR. BICKLEY:  It settled; right?

9    JUROR HAYNES:  Yes, about the second day.

10   MR. BICKLEY:  Do you understand that Mr. Moss,

11   the defendant in this case, does not have any obligation

12   to prove his innocence, but that the government or the

13   State has to prove him guilty?

14   JUROR HAYNES:  Yes.

15   MR. BICKLEY:  Do you understand that beyond a

16   reasonable doubt?

17   JUROR HAYNES:  Yes.

18   MR. BICKLEY:  Do you further understand that you

19   may be suspicious that he might be guilty, but that is

20   not sufficient for you to find him guilty?

21   Do you understand that?

22   JUROR HAYNES:  Yes.

23   MR. BICKLEY:  Do you understand that he has the

24   presumption of innocence during the entire trial, up and

1   including when you come into the Jury Room where you will

2   deliberate?

3         JUROR HAYNES:  Yes.

4         MR. BICKLEY:  And that you could give him that;

5   that you could keep an open mind until you got into the

6   Jury Room to make that deliberation?

7         JUROR HAYNES:  Yes.

8         MR. BICKLEY:  Now, if you should find yourself

9   -- that you had a strong conviction or a strong suspicion

10  of it, that he might be guilty, but that the government

11  or the State had not proven its case beyond a reasonable

12  doubt, and this was an honestly arrived at conviction,

13  you're not just being -- because you're mad at the jury

14  -- holding out just to humor him or her -- that you just

15  honestly arrived at that conviction, and after you heard

16  the rationale of the others, why they feel the way they

17  do and why it is eleven to one against you, do you

18  believe that you could hold out if you honestly felt that

19  the  government  had  not  proved  its  case  beyond  a

20  reasonable doubt?

21        JUROR HAYNES:  I do.

22        MR. BICKLEY: Thank you.

23        MS. LUSK:  Would you also listen to the other

24  jurors, your fellow jurors, and the reasons that they

214

1  have for their opinions?

2       JUROR HAYNES:  I think I would try to listen to

3  what I heard during the trial more than what the jurors

4  themselves had to say.

5       MS. LUSK:  Do you think that you would then find

6  it difficult to freely and openly discuss the case in the

7  Jury Deliberation Room?

8       JUROR HAYNES:  Yes; what's lawful, yes.

9       MS. LUSK:  I'm sorry.  I misunderstood you.

10       JUROR HAYNES:  Whatever is lawful that they can

11  talk about.  I suppose that's everything that came across

12  in trial.

13       MS. LUSK:  Right.  Yeah.  We're talking about the

14  point in the trial when all of the evidence is over with

15  and the case has been submitted to the jury to make a

16  determination, to return a verdict.  And Mr. Bickley, I

17  think, was asking you if you could stand your ground.

18       What I'm asking you is if, during that process,

19  when the twelve jurors are in the Jury Deliberation Room

20  trying to reach a verdict in the case, if you were the

21  only holdout, do you think you would listen to the

22  reasoning behind the opinions of the other eleven?

23       JUROR HAYNES:  As long as it pertained to what

24  they heard?

215

1          MS. LUSK:  Sure.

2          Mr. Bickley has also indicated to you that the

3     State of West Virginia has the burden of proof in this

4     case, as we do in every criminal case, in proving the

5     defendant's guilt beyond a reasonable doubt.

6          We do not have the burden of proof of his guilt

7     beyond all doubt, or beyond any doubt, or beyond a shadow

8     of a doubt.

9          Do you believe that you could follow the law and

10    not hold the State to any higher burden of proof than the

11    law requires; in other words, beyond a reasonable doubt?

12         JUROR HAYNES:  I think so.

13         MR. HUFFMAN:  If you were selected to serve on

14    this jury and a Police Officer were to testify, would you

15    give his testimony more weight than someone else's simply

16    because he was a Police Officer?

17         JUROR HAYNES:  No.

18         MR. HUFFMAN:  If a witness were to testify, among

19    other things, that they are a born again christian, would

20    you give that person's testimony more credibility than

21    someone else?

22         JUROR HAYNES:  No.

23         MR. REVERCOMB:  Would you give a Police Officer's

24    testimony any less weight than anyone else's?

216

1     JUROR HAYNES:  No.

2     MS. LUSK:  Would you give born again christians

3  any less weight?

4     JUROR HAYNES:  No.

5     THE COURT:  Thank you, ma´am.  You can go on back

6  and join the rest of the jurors.

7

8     WHEREUPON, Linda Haynes returned to the Jury

9  Lounge.

10

11    WHEREUPON, Nolan Holstein was brought into the

12  Jury Room for individual voir dire.

13

14    THE COURT:  Come on over, Mr. Holstein.  Thank

15  you for being patient, Mr. Holstein.

16    Where do you live?

17    JUROR HOLSTEIN:  I live down on the West Side.

18    THE COURT:  How long have you lived there?

19    JUROR HOLSTEIN:  About twenty-five or twenty-six

20  years.

21    THE COURT:  You would have lived there when the

22  events giving rise to this case took place.

23    JUROR HOLSTEIN:  Yes.

24    THE COURT:  Do you remember reading anything

217

1    about it?

2         JUROR HOLSTEIN:  No.

3         THE COURT:  Have you ever seen anything in the

4    news at all about it?

5         JUROR HOLSTEIN:  No.

6         THE COURT:  It may be that when you hear some

7    evidence in this case, that will revive your recollection

8    and you will think, "Oh, now I remember."  What is most

9    important to everybody here is that if you do remember

10   something, you put that out of your mind.

11        Do you think you can do that?

12        JUROR HOLSTEIN:  Sure.

13        THE COURT:  You're going to know more about this

14   case than any newspaper reporter or any television

15   reporter because you are going to hear all of the

16   evidence and you are going to be -- it's all going to be

17   brought out in front of you.  So, you would pay attention

18   to that evidence?

19       JUROR HOLSTEIN:  Yes, sir.  Can I say something

20   before we start?

21       THE COURT:  Go right ahead.

22       JUROR HOLSTEIN:  I don't know what problems this

23   might create, but Saturday morning at about 5:30, my car

24   was hit by a hit-and-run driver, and I've turned it in

218

1    to the insurance.  Since then, I've gained his name and

2    license number.  I don't know whether that will create

3    problems or not.

4            THE COURT:  You're going to turn that over to the

5    Police; aren't you?

6            JUROR HOLSTEIN:  Yes.

7            THE COURT:  You don't anticipate that that's

8    going to take you away from this case; do you?

9            JUROR HOLSTEIN:  I hope not.

10           THE COURT:  But you're going to -- that case

11   might end up being prosecuted?

12           JUROR HOLSTEIN:  True.

13           THE COURT:  Did you know anything about this case

14   before today?

15           JUROR HOLSTEIN:  No.

16           THE COURT:  Have you heard any of the other

17   jurors say anything about this case?

18           JUROR HOLSTEIN:  No.

19           THE COURT:  When you attended school, did you

20   attend schools that were integrated?

21           JUROR HOLSTEIN:  Oh, yes.

22           THE COURT:  Where did you go to school?

23           JUROR HOLSTEIN:  I went to high school at

24   Charleston High.

219

1      THE COURT:  And you've worked with black people

2  since you've been working?

3      JUROR HOLSTEIN:  I have black friends, yes.

4      THE  COURT:   Do  you  belong  to  any  clubs  or

5  organizations that systematically exclude persons because

6  of their race?

7      JUROR HOLSTEIN:  No.

8      THE COURT:  Have any members of your family ever

9  been convicted of a crime, other than traffic citations

10  and such?

11      JUROR HOLSTEIN:  Yes.

12      THE COURT:  Who was that?

13      JUROR HOLSTEIN:  My son.  He was convicted of

14  possession of marijuana.

15      THE COURT:  How long ago was that?

16      JUROR HOLSTEIN:  That's been about three years

17  ago.

18      THE COURT:  Where did that happen?

19      JUROR HOLSTEIN:  You mean, where was he charged?

20      THE COURT:  Yes.

21      JUROR  HOLSTEIN:   He  was  charged  before  a

22  Magistrate.

23      THE COURT:  Here in town?

24      JUROR HOLSTEIN:  Yeah.  Judge Zakaib, he's the

220

1    one that charged him and put him on probation.

2         THE COURT:  Do you know who the Prosecutor was on

3    that case -- in your son's case?

4         JUROR HOLSTEIN:   I don't think there was any.

5    Well, yes there was, too, but I don't even remember her

6    name.  I think it was a lady.

7         THE COURT:  Do you have any hard feelings toward

8    the Prosecutor's office as a result of your son's case?

9         JUROR HOLSTEIN:  No.

10        THE COURT:  Was he treated fair?

11        JUROR HOLSTEIN:  Well, to answer that honestly,

12   there is a background to it that I think should have come

13   into play.  For example, he was called -- he was not

14   dealing in marijuana, you understand.  But he knew who

15   was.  He was called by this friend of his who was working

16   with this undercover agent, and he didn't want to do it.

17   He had told him no.

18        They finally talked him into it and drove over

19   and got him, and gave him the money, and took him to the

20   dealer's house.  He went and bought ever how many ounces

21   it was and brought it back to the car, and gave it to

22   him.  And he was arrested.

23        So, under those circumstances, I have a feeling

24   -- he was put on three years probation, and I feel like

221

1    the Judge should have taken that into consideration, and

2    maybe a year or a year and a half probation.

3         I´m not saying he should have gone away clean;

4    but I think three years is kind of long.

5         THE COURT:  Has he finished his probation?

6         JUROR HOLSTEIN: This year he will, yes, sir.

7         THE COURT:  In this case, well let me get back

8    just a second.  Do you think that your experience as the

9    father of your son, would spill over into this case and

10   cause you any problems about judging this case?

11        JUROR HOLSTEIN:  No.  I have a feeling that

12   everyone should be judged fairly.  That was my only

13   consideration in his case.  I think the Judge could have

14   been more fair in putting him on probation.  Don´t just

15   slap his wrist and let him go, and say, "Don´t do it

16   again."  But at the time it was given -- no, I don´t

17   think it would.

18        THE COURT:  You would make every effort to keep

19   that in mind?

20        JUROR HOLSTEIN:  Sure.

21        THE COURT:  In this case, the State is going to

22   seek a life sentence without mercy.  That is, they are

23   going to ask this jury to return a verdict of guilty of

24   first degree murder without a recommendation of mercy.

222

1      If the jury returns such a verdict, then the

2    defendant will go the penitentiary for the rest of his

3    life without chance of parole.  If the evidence warrants

4    it, could you reach such a verdict without injury to your

5    conscience or philosophical or moral values?

6        JUROR HOLSTEIN:  I could, yes.

7        THE COURT:  The other side of the coin, the

8    defendant is presumed by the law to be innocent.  And he

9    has pleaded not guilty.  And if the Prosecutor can't

10    prove beyond a reasonable doubt, then he is entitled to

11    be found not guilty.

12        Do you believe that if the Prosecutor fails in

13    proving him guilty, that you would have any trouble in

14    returning a not guilty verdict?

15        JUROR HOLSTEIN:  No, sir.

16        MR. BICKLEY:  Mr. Holstein, sir, have you been

17    selected for any trials since you have been in this

18    panel?

19        JUROR HOLSTEIN:  Selected, but not served.

20        MR. BICKLEY:  Okay.  But now you understand, I

21    believe, that Mr. Moss has the presumption of innocence

22    throughout the trial and until the Judge dismisses you

23    to go into the Jury Room for deliberations.

24        Do you understand that?

223

1    JUROR HOLSTEIN:  Yes, sir.

2    MR. BICKLEY:  Do you further understand that if

3    Mr. Moss elects to not take the stand, that no inference

4    of guilt can be blamed on him?

5    JUROR HOLSTEIN:  That's right.

6    MR. BICKLEY:  Do you also understand that he does

7    not have to prove that he is innocent.  He has to do

8    nothing and the State must prove him guilty beyond a

9    reasonable doubt?

10   JUROR HOLSTEIN:  Right.

11   MR. BICKLEY:  Now, sir, you may come, at some

12   point in the trial, to feel -- or at the end of the

13   trial, and feel -- be very, very suspicious that he might

14   be guilty, have a strong suspicion that he might be

15   guilty, but it's not to the level of beyond a reasonable

16   doubt.  Do you understand that even if you are suspicious

17   that he might be guilty, that is not enough to convict

18   him?

19   JUROR HOLSTEIN:  That is only human nature.  You

20   would still have to go on the facts.

21   MR. BICKLEY:  That's right.  But you are

22   suspicious and you know that you could not convict him

23   if you found that it was not proved beyond a reasonable

24   doubt?

224

1      JUROR HOLSTEIN:  That's right.

2      MR. BICKLEY:  And if you felt like that when you

3      went into the Jury Room, and you honestly looked at the

4      facts and you found that the facts, the elements of the

5      crime had not been proved by the State, and you arrived

6      at this by a conscientious deliberation, and you went

7      into the Jury Room and the other eleven jurors did not

8      agree with you -- they elected to vote guilty beyond a

9      reasonable doubt, and you had arrived at your conclusion

10     by searching whatever internal workings one does, and you

11     believe that the State had not proved its case beyond a

12     reasonable doubt, but had given it a strong try, could

13     you hold out against the other eleven?

14     JUROR HOLSTEIN:  Yeah, I wouldn't let them make

15     my decision for me.   I've got to live with my own

16     conscience.

17     MR. BICKLEY:  Thank you, sir.

18     MS. LUSK:  Do you think that you could live with

19     it if the other eleven -- and take into consideration why

20     they felt the way they did?

21     JUROR HOLSTEIN:  Yes, I could.

22     MS. LUSK:  And you could consider their views in

23     determining your own?

24     JUROR HOLSTEIN:  Yes.

1        MS. LUSK:  Mr. Bickley indicated to you that it

2   is the State's burden, and the Judge told you also, that

3   the  State's  burden  is  to  prove  the  case  beyond  a

4   reasonable doubt.  It's always our burden in a criminal

5   case.

6        We  are  required  to  prove  his  guilt  beyond  a

7   reasonable doubt, but not beyond a shadow of a doubt.

8   Do you feel that you would hold us to a greater burden

9   than the law requires?

10       In other words, would you make us prove this case

11  beyond all reasonable doubt, when the law doesn't require

12  that?

13       JUROR HOLSTEIN:  Well, I'd have to be satisfied

14  with my own conscience, that you had done that.

15       MS. LUSK:  Sure.

16       JUROR HOLSTEIN:  And if I feel that you have done

17  that, and the other eleven feel that you haven't, then

18  I'm still going to vote the way I feel.

19       MS. LUSK:  Okay.  Good.

20       JUROR HOLSTEIN:  I would just have to do it.

21       MS. LUSK:  Okay.  Thanks.

22       MR. REVERCOMB:  You say that your car was hit by

23  a hit-and-run driver last Saturday morning?

24       JUROR HOLSTEIN:  Yes, sir.

226

1        MR. REVERCOMB: And you found out this person's

2  name?

3        JUROR HOLSTEIN: Yes, sir.

4        MR. REVERCOMB: Who is it?

5        JUROR HOLSTEIN: Charles Griffith.

6        THE COURT: Did you know him before?

7        JUROR HOLSTEIN: I don't know him now.

8        MR. BICKLEY: Have you ever seen him or have you

9  ever met him?

10       JUROR HOLSTEIN: No, sir.

11       MR. REVERCOMB: You've also talked about the fact

12  that Judge Zakaib placed your son on probation; you

13  thought maybe a year was what he deserved.

14       You're not upset with the Police Officers who

15  arrested him; are you? Or, are you?

16       JUROR HOLSTEIN: I hadn't thought about the

17  Police Officers, to tell you the truth.

18       MR. REVERCOMB: Do you think he was trapped?

19       JUROR HOLSTEIN: Yes. I feel that it was

20  entrapment.

21       MR. REVERCOMB: Because they called him and he

22  said no, and they kept pressuring him to do it. And he

23  said, "Okay, I'll take you to this guy's house."

24       JUROR HOLSTEIN: Right.

227

1    MR. REVERCOMB: But that wouldn´t have any -- you

2    wouldn´t let that influence you -- that has nothing to

3    do with this case?

4    JUROR HOLSTEIN: No.

5    MR. REVERCOMB: How old is your son?

6    JUROR HOLSTEIN: He is 31.

7    MR. REVERCOMB: He´s doing okay now that he´s got

8    this trouble behind him?

9    JUROR HOLSTEIN: He´s doing fine.

10   MR. REVERCOMB: That´s all I have.

11   MR. HUFFMAN: I don´t have anything.

12   THE COURT: You can go on home. Please don´t

13   discuss this case with anybody else, and we´d like for

14   you to come back at 9:30 tomorrow.

15   Thank you.

16

17   WHEREUPON, Nolan Holstein was excused for the

18   day.

19

20   THE COURT: Any objection to him?

21   MR. BICKLEY: No.

22   THE COURT: Okay. Bring Mrs. Allen back.

23

24   WHEREUPON, Brenda Allen was brought to the Jury

228

1    Room for individual voir dire.

2         THE COURT:  Hi, Mrs. Allen.  How are you today?

3         JUROR ALLEN:  Fine.

4         THE COURT:  Do you know Arthur, Eugene and Billy

5    Moss?

6         JUROR ALLEN:  Yes.

7         THE COURT:  Did you know that they are related to

8    John Moss?

9         JUROR ALLEN:  I didn´t know that until you said

10   Arthur Moss.

11        THE COURT:  That´s the only one that came to your

12   mind?

13        JUROR ALLEN:  Yes.

14        THE COURT:  Tell me how you know them again?

15        JUROR ALLEN:  Well, Arthur Moss -- he was a

16   Policeman.  I don´t know them that well, it´s just as far

17   as speaking or waving.  Eugene Moss -- my husband knew

18   him, and I´ve talked to him and everything.  Billy -- I

19   just speak to him off and on.  I didn´t know him that

20   well until I was into the Cub Scouts.  His little boy was

21   in it.

22        THE COURT:  Would the fact that you know those

23   -- the defendant´s brothers affect your judgment in

24   judging this case?

229

1      JUROR ALLEN:  No.

2      THE COURT:  Have you heard about anything that

3  happened in this case?

4      JUROR ALLEN:  I've just heard of the name, as far

5  as that goes, as I said, because I don't watch the news.

6      THE COURT:  What name do you remember?

7      JUROR ALLEN:  Just Moss -- something happened

8  about a murder or something like that.

9      THE COURT:  If you should remember any of the

10  facts if you are a juror in this case, could you put that

11  off your mind and listen only to the evidence that comes

12  to you in the Courtroom?

13      JUROR ALLEN:  Yes.

14      THE COURT:  Have you heard anybody discuss this

15  case?

16      JUROR ALLEN:  No.

17      THE COURT:  Not from any other jurors, or

18  anything like that?

19      JUROR ALLEN:  No.

20      THE COURT:  Now, has any of your immediate family

21  members ever been convicted of a crime?

22      JUROR ALLEN:  My brother, he's been in jail.

23      THE COURT:  For what?

24      JUROR ALLEN:  He had a problem with his hands --

230

1    stealing, or something like that.

2          THE COURT:   Where is here -- was he prosecuted

3    here in Kanawha County?

4          JUROR ALLEN:   I think it was here.

5          THE COURT:   Do you know if any members of the

6    Prosecuting Attorney's office, or current members of the

7    Prosecuting  Attorney's  office  are  responsible  for

8    prosecuting him?

9          JUROR ALLEN:   No.

10          THE COURT:   If they have, would that give you any

11    reason  to  feel  adversely  toward  the  Prosecuting

12    Attorney's office?

13          JUROR ALLEN:   No.

14          THE COURT:   Do you think that your brother was

15    treated fairly?

16          JUROR ALLEN:   Yes.

17          THE COURT:   You do?

18          JUROR ALLEN:   Yeah.

19          THE COURT:   By the Police?

20          JUROR ALLEN:   I don't know anything about the

21    Police.  I just know that he went to jail, and that's it.

22          THE COURT:   Did he go to the Kanawha County Jail

23    or the penitentiary?

24          JUROR ALLEN:   Up the river.

231

1          THE COURT:  Huttonsville?

2          JUROR ALLEN:  He went from one to the other.

3          THE COURT:  About how long did he stay?  Do you

4     remember?

5          JUROR ALLEN:  I know he was in there for a long

6     time.  I couldn´t tell you how long.

7          THE COURT:  What´s his name?

8          JUROR ALLEN:  Mark Bruton.

9          THE COURT:  The Prosecutor is going to ask for

10    the harshest punishment that exists under the law of the

11    State of West Virginia.  They are going to ask this jury

12    to find a verdict of guilty of first degree murder and

13    not to recommend mercy.

14          If a jury would return such a verdict, the

15    defendant would go to the penitentiary for the rest of

16    his natural life, without any hope of parole.

17          If the evidence warrants it, do you believe that

18    you could, in good conscience, return such a verdict?

19          JUROR ALLEN:  Yes.

20          THE COURT:  Now, the defendant has obviously

21    pleaded not guilty, and it´s the responsibility of the

22    State to prove him guilty beyond a reasonable doubt.

23          As he sits here today, he is innocent in the eyes

24    of the law, and if the Prosecutor can´t prove that he is

232

1    guilty beyond a reasonable doubt, the is entitled to be

2    found not guilty.

3         If the Prosecutor doesn't prove him guilty, do

4    you believe that you could return a verdict of not

5    guilty?

6         JUROR ALLEN:  Yes.

7         MR. BICKLEY:  Ms. Allen, have you been chosen to

8    serve as a juror in any trial?

9         JUROR ALLEN:  Since I've been here?

10        MR. BICKLEY:  Yes.

11        JUROR ALLEN:  Yes, I have.

12        MR. BICKLEY:  What trial was that, Shop-a-Minit?

13        JUROR ALLEN:  I'm not sure.

14        MR. BICKLEY:  Do you understand that in our legal

15   system, Mr. Moss is presumed to be innocent until you

16   come back to the Jury Room to deliberate?  He is presumed

17   to be innocent throughout the entire trial.

18        JUROR ALLEN:  Uh-huh.

19        MR. BICKLEY:  Are you aware of the fact that Mr.

20   Moss may elect not to take the witness stand, and that

21   no inference of guilt can be given to that fact?

22        Do you know that?

23        JUROR ALLEN:  Yes.

24        MR. BICKLEY:   Further, it may come to you that

233

1     when you go into the Jury Room to deliberate, that you

2     may have a strong suspicion that he may be guilty, and

3     if that is all that you have, you cannot find him guilty.

4            Are you aware of that?

5            JUROR ALLEN: Would you repeat yourself?

6            MR. BICKLEY: Yes, ma'am. There may come a time

7     in the Jury Room -- the State has to prove its case

8     beyond a reasonable doubt. By the time you come to

9     deliberate in the Jury Room, you may be suspicious that

10     he may be guilty, but since the State has not proven this

11     case beyond a reasonable doubt, and you are only

12     suspicious, that is not enough --- that you should not

13     find him guilty.

14            JUROR ALLEN: Yes.

15            MR. BICKLEY: You are only suspicious. You

16     understand?

17            JUROR ALLEN: Yes.

18            MR. BICKLEY: There is a difference between

19     suspicious and beyond a reasonable doubt. If you just

20     have a hunch; do you understand?

21            JUROR ALLEN: Yes.

22            MR. BICKLEY: If these different elements of the

23     crime are in your mind and have not been proven to your

24     satisfaction; do you understand?

234

1        JUROR ALLEN:  Yes.

2        MR. BICKLEY:  Could you find him not guilty under

3    those circumstances?

4        JUROR ALLEN:  Yes.

5        MR. BICKLEY:  And you could vote for him to be

6    acquitted?

7        JUROR ALLEN:  Yes.

8        MR. BICKLEY:  And let's assume that you came to

9    this conclusion, that if you were just merely suspicious

10   that he might be guilty and you arrived at this by an

11   honest conviction and mulling over all of the facts and

12   exhibits and what-have-you, and you come into the Jury

13   Room with the other eleven members of the jury and they

14   are all convinced that he is guilty, could you hold out

15   if that was your honest and sincere conviction?

16       JUROR ALLEN:  Yes.

17       MR. BICKLEY:  Okay.  Thank you very much.

18       MS. LUSK:  Ma'am, you say now that the Eugene

19   Moss that you know -- you say that Eugene Moss had a

20   business down in St. Albans?  Was it a motel?

21       JUROR ALLEN:  No.  As far as I knew him, he

22   didn't have any business like that.

23       MS. LUSK:  How old is he?

24       JUROR ALLEN:  I don't know how old he is.  I

1    think he is older than my husband, but I'm not sure.

2        MS. LUSK:  Might he have sons that are in their

3    twenties?

4        JUROR ALLEN:  I couldn't tell you about that.  I

5    don't know that much about him.

6        MS. LUSK:  Did you know his wife's name?

7        JUROR ALLEN:  I think they called her Peaches.

8    I'm not sure if that's the right one, but I can't tell

9    you her real name.

10       MS. LUSK:  You don't know if her name is Leona?

11       JUROR ALLEN:  All I know her by is Peaches.

12       MS. LUSK:  Now, you said that there was a Billy

13   Moss?

14       JUROR ALLEN:  Yes.

15       MS. LUSK:  And you thought his dad's name was

16   Will?

17       JUROR ALLEN:  No, I didn't know his dad.  I just

18   know Billy.

19       MS. LUSK:  If a Will Moss testified in this case,

20   and it happened to be Billy's daddy, and you felt at the

21   end of the trial that Will had not been truthful, and

22   that in spite of Will's testimony that the State had

23   proven its case beyond a reasonable doubt, would you be

24   uncomfortable facing this family of Moss's, the people

1   that you know?  Would that make you uncomfortable?

2          JUROR ALLEN:  Would you repeat yourself one more

3   time, please?

4          MS. LUSK:  If you voted to convict in this case,

5   and  as  a  result  of  that  John  Moss  went  to  the

6   penitentiary,  would  you  be  uncomfortable  around  his

7   relatives?

8          JUROR ALLEN:  No, because I don't -- you know --

9    all I do is speak to them, just wave or something like

10   that.

11         MS. LUSK:  You wouldn't expect them to give you

12   any flack or anything like that over him going to the

13   penitentiary?

14         JUROR ALLEN:  From them to me?

15         MS. LUSK:  Uh-huh.

16         JUROR ALLEN:  No, I don't think so.  Not that I

17   know of, no.

18         MS. LUSK:  Would the fact that your own brother

19   has been in the penitentiary make you uncomfortable

20   voting to send someone else there?

21         JUROR ALLEN:  No.

22         MR. REVERCOMB:  Do you have any idea how old

23   Billy Moss is -- if he's in his twenties or in his

24   forties?

1      JUROR ALLEN:  Billy Moss -- I think he came out

2  about the same time my sister did; I'm not sure.  She's

3  in her thirties.

4      MR. REVERCOMB:  Do you know where he works?

5      JUROR ALLEN:  Yeah, he works at the Carbide Tech

6  Center.

7      MR. REVERCOMB:  If he testified in this trial,

8  would that -- would you have trouble treating his

9  testimony like you would the other witnesses?

10      JUROR ALLEN:  No.

11      MR. REVERCOMB:  You wouldn't necessarily give his

12  testimony more weight because you know him?

13      JUROR ALLEN:  No.

14      MR. REVERCOMB:  Or less weight?

15      JUROR ALLEN:  No.

16      MS. LUSK:  Ms. Allen, I forgot to ask you -- Mr.

17  Bickley, in his questions to you, indicated to you that

18  the State has the burden in this case, as it is in every

19  criminal case, is to prove the defendant guilty beyond

20  a reasonable doubt.

21      The law does not require us to prove him guilty

22  beyond all doubt or beyond any doubt.  Do you think that

23  you could follow that law and not require a greater

24  burden than the law requires?

238

1    In other words, would you hold the State to any

2    higher burden than the law requires? Can you follow the

3    law of beyond a reasonable doubt, but not beyond any

4    doubt?

5        JUROR ALLEN:  Yes.

6        MS. LUSK:  Okay. And in the same regard, if you

7    were to go back and find yourself in the Jury

8    Deliberation Room with eleven people voting one way and

9    you voting the other, do you believe that you would

10   listen to your fellow jurors and listen to the reasons

11   that they have all agreed?

12       JUROR ALLEN:  Yes.

13       MS. LUSK:  And you could take those reasons and

14   their considerations in your own mind ---

15       JUROR ALLEN:  Yes.

16       MS. LUSK:  -- to try to reach a verdict?

17       JUROR ALLEN:  Yes.

18       MS. LUSK:  Do you know Kevin Moss?

19       JUROR ALLEN:  Kevin?

20       MS. LUSK:  Kevin Moss. Do you know a person by

21   the name of Kevin Moss?

22       JUROR ALLEN:  I don't know. He could be one of

23   the younger brothers, a younger one.

24       MS. LUSK:  Could be?

239

1      JUROR ALLEN:  I don't know.  I don't know all of

2   them.  I just know a couple of them.

3      MS. LUSK:  You know Billy to nod, say hello to

4   him?

5      JUROR ALLEN:  Yes.

6      MS. LUSK:  And you don't know whether Eugene has

7   any children or not?

8      JUROR ALLEN:  I think he might have.  I think he

9   might have a boy or a girl, but that's as far as I know

10   of them.

11      MS. LUSK:  You just don't know him well enough?

12      JUROR ALLEN:  That's right.

13      THE COURT:  Thank you.  If you want to, you can

14   go on home.  Please don't discuss this, any of the

15   questions with anybody.  You don't have to be back until

16   9:30 tomorrow.  Just report back to the Jury Lounge

17   tomorrow.

18

19      WHEREUPON, Brenda Allen was excused for the day.

20

21      THE COURT:  I don't know if I ought to let you

22   argue hung jury this early in the case.

23      MS. LUSK:  He started with three or four

24   questions and now they're a half hour long.

240

1      THE COURT:  Okay.  We're ready for Alice Fawcett.

2      MR. REVERCOMB:  Your Honor, she answered the

3  question all right, but ---

4      MS. LUSK:  It's like she knows these guys.

5      THE COURT:  Do we know if these are the same

6  people?

7      MS. LUSK:  Reggettz rented from these people.

8      THE COURT:  Eugene Moss?

9      MS. LUSK:  Well ---

10     MR. BICKLEY:  They rented from an uncle.  The one

11  that she knows is his cousin.

12     MR. REVERCOMB:  Billy Moss is his cousin.  It was

13  Eugene's son.

14     MR. BICKLEY:  Not the motel Eugene -- there are

15  two Eugenes.  She knows the Junior.

16

17     WHEREUPON, Alice Fawcett was brought to the Jury

18  Room for individual voir dire.

19

20     THE COURT:  Ms. Fawcett, we're going to try to

21  get you out of here real quick.

22     JUROR FAWCETT:  It if depends on what I know, I

23  won't take long.

24     THE COURT:  Have you heard anything about this

241

1   case?

2           JUROR FAWCETT:  Not that I know of.

3           THE COURT:  Where do you live now?

4           JUROR FAWCETT:  Off Corridor G.

5           THE COURT:  Have you ever lived in St. Albans?

6           JUROR FAWCETT:  No.

7           THE COURT:  If you were to hear evidence in this

8   case that would cause you to remember, or should remind

9   you of something that you've seen in the news media or

10  read in the newspapers, could you put those news accounts

11  out of your mind and base your verdict solely upon this

12  case and law of the evidence that comes into this

13  Courtroom?

14          JUROR FAWCETT:  Yes, I believe that I could.

15          THE COURT:  Did you know that this trial was

16  starting today?

17          JUROR FAWCETT:  No.  I had no idea.

18          THE COURT:  Did any juror ever talk to you about

19  this case?

20          JUROR FAWCETT:  No.

21          THE COURT:  When you attended school, were the

22  schools integrated -- the public schools?

23          JUROR FAWCETT:  I don't remember.

24          THE COURT:  Have you ever worked with black

242

1    people?

2            JUROR FAWCETT:  Yes.

3            THE COURT:  Have you ever been a member of a club

4    or organization that systematically kept black people

5    out?

6            JUROR FAWCETT:  No.  I've never been a part of

7    anything like that.

8            THE COURT:  Have any members of your immediate

9    family ever been convicted of a crime other than traffic

10   citations?

11           JUROR FAWCETT:  No.

12           THE COURT:  The State is going to ask you and

13   every other juror in this case to return a verdict of

14   guilty of murder in the first degree.  They are also

15   going to ask this jury not to recommend mercy.

16           If the jury should do that, that would mean that

17   Mr. Moss would spend the rest of his natural lifetime in

18   the penitentiary, without any hope of parole.

19           Could you return that kind of a verdict if the

20   evidence warranted it, without it doing some harm to your

21   philosophic or religious or moral beliefs?

22           JUROR FAWCETT:  Yes, I believe I could, if the

23   evidence proved to me beyond a doubt a my mind that he

24   murdered three people, I think I could.

1          THE COURT:  Now, the other side of that story is,

2     the State has to prove the defendant's guilt beyond a

3     reasonable doubt.  He is, in the eyes of the law,

4     innocent as he starts this trial, and the only way the

5     Prosecutor can overcome that presumption of innocence is

6     by proving his guilty beyond a reasonable doubt.  If they

7     can't do that, would you have any difficulty at all in

8     returning a not guilty verdict?

9          JUROR FAWCETT:  No, I would not want to return a

10    guilty verdict if there were any doubt in my mind.

11         MR. BICKLEY:  Ms. Fawcett, do you understand --

12    have you served on a jury this time, since you've been

13    on the panel?

14         JUROR FAWCETT:  Just one.

15         MR. BICKLEY:  Was it a criminal trial?

16         JUROR  FAWCETT:    A   girl   was   accused   of

17    shoplifting.

18         MR. BICKLEY:  I can't remember that one.

19         You understand, and I suppose you learned in that

20    trial, that the defendant, Mr. Moss here, is assumed to

21    be innocent throughout the entire trial, until you go

22    into the Jury Deliberation Room?

23         JUROR FAWCETT:  I understand that.

24         MR.  BICKLEY:   He does not have to prove his

244

1    innocence, and in fact, he does not have to take the
2    witness stand. He is presumed to be innocent.  The State
3    must prove the case beyond a reasonable doubt.
4           You know that?
5           JUROR FAWCETT:  Yes.
6           MR.  BICKLEY:  Are you also aware, ma´am, that
7    mere suspicion is not enough to convict him?
8           JUROR FAWCETT:  I remember the questions.
9           MS. LUSK:  Ms. Fawcett, the State if not required
10   to prove the case beyond all doubt.  Would you make us
11   do that even if the law doesn´t require it?
12          JUROR FAWCETT:   If there were any doubt in my
13   mind, I could not vote guilty.  You would have to prove
14   to me beyond a doubt.
15          MS.  LUSK:  We accept our burden, which is a
16   lawful burden, that we prove the case beyond a reasonable
17   doubt.  But the Judge might tell you that that doesn´t
18   mean beyond any doubt or beyond all doubt or beyond a
19   shadow of a doubt.  We´re not required to do that.
20          Do you think that -- it sounds like maybe you
21   think we should though.
22          JUROR FAWCETT:  I would have to be pretty certain
23   myself before I could sentence him to life in prison, for
24   the rest of his life.

245

1        MS. LUSK:  There's nothing wrong with that.

2        I think that's all we have.

3        MR. HUFFMAN:  Ms. Fawcett, if a witness in this

4  case were to testify, among other things, that he was a

5  christian, would that cause you to believe his testimony

6  more than anybody else's?

7        JUROR FAWCETT:  Well, not really.

8        MR. HUFFMAN:  I don't have any more questions.

9        THE COURT:  Ms. Fawcett, you can go on home.

10  Come back here tomorrow morning at 9:30.

11        Please don't discuss this case with other jurors

12  or with any other person.

13        Thank you.

14

15        WHEREUPON, Alice Fawcett was excused for the day.

16

17        THE COURT:  Does anyone object to her?

18        MS. LUSK:  No.

19        MR. BICKLEY:  No.

20        THE COURT:  Next is Lonnie Kilgore.

21

22        WHEREUPON, Lonnie Kilgore was brought to the Jury

23  Room for individual voir dire.

24

246

1      THE COURT:  Hello.  How are you today?

2      JUROR KILGORE:  Pretty good.

3      THE COURT:  Are you worn out from sitting around

4  all day?

5      JUROR KILGORE:  I enjoyed it.  We've all talked.

6      THE COURT:  Good.  We're going to wrap pretty

7  quickly here.  At least we're going to get you out of

8  here pretty quickly.

9      Where do you live?

10     JUROR KILGORE:  I live at Nitro.

11     THE COURT:  Have you ever lived in St. Albans?

12     JUROR KILGORE:  Yes, years ago, I was there for

13  one year.

14     THE COURT:  When was that?

15     JUROR KILGORE:  Back in about '64, I believe.

16     THE COURT:  Have heard anything about this case?

17     JUROR KILGORE:  Not that I can remember.

18     THE COURT:  If you should hear something in the

19  course of the testimony that is put on in this case, and

20  it should remind you of something that you've heard

21  about, could you put aside whatever you've read or heard

22  and decide this case only on the evidence that comes to

23  you here in this Courtroom?

24     JUROR KILGORE:  I think so, yes.

247

1        THE COURT: Both sides are entitled to that. Do

2  you understand that?

3        JUROR KILGORE: Sure.

4        THE COURT: Now, did you understand that this

5  particular trial was starting today?

6        JUROR KILGORE: No.

7        THE COURT: Have you heard any of your fellow

8  jurors talk about it?

9        JUROR KILGORE: No, sir.

10       THE COURT: When you attended schools -- did you

11  attend public schools?

12       JUROR KILGORE: Yes, sir.

13       THE COURT: Were the schools integrated at that

14  time?

15       JUROR KILGORE: I graduated in '52.

16       THE COURT: Where did you graduate from?

17       JUROR KILGORE: Nitro.

18       THE COURT: I think they might have integrated

19  the year after that?

20       JUROR KILGORE: No, because Garnet was still a

21  Negro school.

22       THE COURT: Right. Have you ever been a member

23  of a club or organization that systematically excluded

24  black persons?

248

1    JUROR KILGORE:  No, sir.  I've been in the

2  military three times and we were all treated the same.

3    THE COURT:  Three times?  That's a good lick.

4    JUROR KILGORE:  Well, it's not much, but a little

5  one.

6    THE COURT:  Have any members of your immediate

7  family ever been convicted of a crime other than minor

8  traffic citations or anything like that?

9    JUROR KILGORE:  Well, my father -- his people, I

10  knew very little of.  They were all dead.  But no, I

11  don't know of any.  I was raised by my mother's people

12  from Welch, and they are all very law abiding people.

13    THE COURT:  Okay.  This case is a case in which

14  the Prosecutor is going to ask this jury to return a

15  verdict of guilty of first degree murder, without a

16  recommendation of mercy.

17    If the jury returns that verdict, Mr. Moss will

18  go to the penitentiary for the rest of his natural life,

19  with no hope of parole at all.

20    If the evidence justifies that verdict and you

21  return a verdict like that, could you do that without

22  doing some harm to your conscience or your beliefs?

23    JUROR KILGORE:  Well, I think that the verdict

24  has to fit the crime.  You have to judge on the merits

249

1  of the case itself.

2      THE COURT:  Could you do that?

3      JUROR KILGORE:  Yes, I believe I could.  I never

4  have before, but I believe I could.

5      THE COURT:  Obviously, there is another side to

6  this case.  Mr. Moss is presumed by the law to be

7  innocent until proven guilty.

8      JUROR KILGORE:  That's exactly right.

9      THE COURT:  If the Prosecutor can't prove his

10 guilt beyond a reasonable doubt, then he's entitled to

11 a verdict of not guilty.

12     If they can't prove their case beyond a

13 reasonable doubt, would you be willing to find him not

14 guilty?

15     JUROR KILGORE:  If the evidence says that he's

16 not guilty, then I believe he wouldn't be guilty.  But

17 you have to decide on the evidence itself.

18     That's what they told us at the orientation.

19     THE COURT:  That's exactly what these folks want

20 you to do, too.

21     Okay, Mr. Bickley.

22     MR. BICKLEY:  Mr. Kilgore, sir, the Judge has

23 already indicated that Mr. Moss is presumed to be

24 innocent throughout the entire trial.  Do you understand

250

1    that?

2          JUROR KILGORE:   That's right.

3          MR. BICKLEY:   And he may not even take the

4    witness stand, but he is still presumed to be innocent.

5    That is, he no has responsibility to prove himself

6    innocent.  He has no duty to do that.  The government has

7    the duty to prove him guilty beyond a reasonable doubt.

8          JUROR KILGORE:   That's right.

9          MR. BICKLEY:   No, sir, do you understand that if

10   you were just suspicious that he might be guilty, that

11   is not enough to convict him?

12         JUROR KILGORE:   That's true.

13         MR. BICKLEY:   And if you should, after arriving

14   and listening to the evidence, and consulting with

15   whatever guru that you consult, you arrive with the fact

16   that you are suspicious of him being guilty, and you are

17   deliberating about his guilt in the Jury Room, and eleven

18   others feel that he is guilty, and you have honestly

19   arrived at this strong conviction, after listening to the

20   deliberations of others do you believe that you could

21   continue to vote not guilty?

22         JUROR KILGORE:   You've got to go with your

23   feelings and you've got to go with the evidence, mainly,

24   what's presented to you.  As you said, the State has to

251

1    prove him guilty.

2         MR. BICKLEY:  Thank you very much.

3         MR. REVERCOMB:  Do you understand that, first of

4    all, Mr. Moss is presumed to be innocent.  We have to

5    prove him guilty beyond a reasonable doubt.  The law

6    doesn't require the State to prove his guilt beyond all

7    doubt or beyond all possible doubt; it only requires

8    beyond a reasonable doubt.  Would you hold us to a

9    higher burden than that, or could you follow the law?

10        JUROR KILGORE:  I would have to feel that he is

11   guilty myself, on the basis of what you presented.

12        MR. REVERCOMB:  Okay.

13        THE COURT:  Thank you, Mr. Kilgore.  You can go

14   on home.  If you'll just come on back tomorrow at 9:30,

15   and just assemble in the Jury Lounge, we'll get back to

16   you then.

17

18        WHEREUPON, Lonnie Kilgore was excused for the

19   day.

20

21        THE COURT:  Okay.  Any objections to Lonnie

22   Kilgore?

23        MS. LUSK:  No.

24        MR. HUFFMAN:  We don't have any objections; do

252

1   we?

2           MR. BICKLEY:  No.

3           THE COURT:  Okay.  Next is Beverly Samples.

4

5           WHEREUPON, Beverly Samples was brought to the

6   Jury Room for individual voir dire.

7

8           THE COURT:  Just have a seat right here, Ms.

9   Samples.  How are you today?

10          JUROR SAMPLES:  I'm fine.

11          THE COURT:  Are you tired and worn out?

12          JUROR SAMPLES:  Yes.

13          THE COURT:  Let me ask if you have heard anything

14  at all about this case.  I think you raised your hand

15  when I asked that question before?

16          JUROR SAMPLES:  I recall it.

17          THE COURT:  Tell me what you remember?

18          JUROR SAMPLES:  I don't remember what I read.  I

19  don't remember when it happened, but I read that there

20  was some killings, three people, and at first, I think

21  the father might have confessed.  And then that was

22  dismissed.  I don't know what happened with that.

23          But I do know that they arrested someone else for

24  the murders.  And that's all I know.

253

1        THE COURT:  Are you from the St. Albans area?

2        JUROR SAMPLES:  No.  I live in South Charleston.

3        THE COURT:  Do you remember that from the

4    newspapers?

5        JUROR SAMPLES:  Yes, just newspapers and TV.

6        THE COURT:  Notwithstanding what you know about

7    this case, do you think that you could put that aside and

8    decide what the real truth of this case is, based on the

9    evidence that you hear here in the Courtroom?

10        JUROR SAMPLES:  Oh, yeah.  I don't know the

11    people personally or anything like that.  It's just

12    something I heard or read about.

13        THE COURT:  It's very important that the only

14    thing that comes into your consideration is the testimony

15    that is presented under oath, and that all sides have a

16    duty to cross-examine, and that you do not rely on

17    information which comes out of the press.

18        Do you think you could put that out of your head?

19        JUROR SAMPLES:  Uh-huh.

20        THE COURT:  Did you know that this trial was

21    going to be starting today?

22        JUROR SAMPLES:  Yes.

23        THE COURT:  From what?

24        JUROR SAMPLES:  I was watching the news and it

254

1    just flashed on there.

2         THE COURT:  I understand that.  To be honest with

3    you, I was just talking this morning that I didn't see

4    it.

5         JUROR SAMPLES:  I just happened to sit down and

6    see it.

7         THE COURT:  Tell me what you saw.

8         JUROR SAMPLES:  Just that it was to begin today.

9    Then I left that and tried not to pay any attention to

10   it.  I left the room because I thought I might be on it.

11        THE COURT:  Have you had the chance to talk with

12   any other jurors about this case, or have any other

13   jurors talked to you about this case?

14        JUROR SAMPLES:  No.

15        THE COURT:  When you went to school, was the

16   school that you went to an integrated school?

17        JUROR SAMPLES:  Yes.

18        THE COURT:  Have you ever worked in a work

19   situation with blacks?

20        JUROR SAMPLES:  I've not worked for a long time.

21   But I worked at the telephone company years ago, and I'm

22   sure it was.

23        THE COURT:  It was integrated?

24        JUROR SAMPLES:  Yes.

255

1      THE COURT:  Have you ever belonged to any clubs
2  or organizations that systematically excluded persons
3  because of their race?
4      JUROR SAMPLES:  No.
5      THE COURT:  Have any immediate members of your
6  family ever been convicted of a crime other than driving
7  too fast or something like that?
8      JUROR SAMPLES:  No.
9      THE COURT:  This is a capital case.  The State
10  has charged the defendant with first degree murder.  The
11  Prosecuting Attorney's office, at the close of the
12  evidence in this case, is going to ask this jury to
13  return a verdict of guilty of first degree murder on the
14  charges against him, and they are also going to ask the
15  jury not to recommend mercy.
16      If that is the jury's verdict, and if the
17  defendant is found guilty without mercy, he will go to
18  the penitentiary for the rest of his natural life, and
19  will not be released on parole or otherwise.
20      If the evidence warrants that verdict, can you
21  return that kind of verdict?
22      JUROR SAMPLES:  I think I could if the evidence
23  proved it, and to the best of my ability, I could
24  rationalize it.

256

1    THE COURT:  By the way, the defendant in this

2  case is presumed by the law to be innocent.  And that

3  presumption means that he does not have to prove his

4  innocence; the State has to prove the charges against

5  him, and they have to prove the charges beyond a

6  reasonable doubt.

7    If the Prosecutors can't prove that the defendant

8  is guilty beyond a reasonable doubt to your satisfaction,

9  would you have any hesitation at all about finding him

10  not guilty?

11    JUROR SAMPLES:  No, I think I would have to

12  believe it myself, one way or the other.

13    MR. BICKLEY:  Good afternoon, Mrs. Samples.  It's

14  been a long day; hasn't it?

15    JUROR SAMPLES:  Yes.

16    MR. BICKLEY:  Have you been on any trials since

17  you've been on this panel?

18    JUROR SAMPLES:  Yes.

19    MR. BICKLEY:  Which one?  A criminal trial?

20    JUROR SAMPLES:  No.

21    MR. BICKLEY:  Then it was a civil trial?

22    JUROR SAMPLES:  Yes.

23    MR. BICKLEY:  You understand that Mr. Moss here

24  is presumed to be innocent throughout the entire trial,

257

1    up until the time you go into the Jury Room for

2    deliberation.  You are aware of that?

3         JUROR SAMPLES:  Yes.

4         MR. BICKLEY:  And if he elects not to take the

5    witness stand, there is no presumption of guilt.  At this

6    case in point, he is presumed to be innocent at all

7    times, until you begin your deliberations.

8         Do you understand all of that?

9         JUROR SAMPLES:  Yes.

10        MR. BICKLEY:  Do you further understand that Mr.

11   Moss has no further obligation to prove himself innocent.

12   The State has the obligation and the duty to prove him

13   guilty beyond a reasonable doubt.  Have you heard of

14   that?

15        JUROR SAMPLES:  Yes.

16        MR. BICKLEY:  You also understand that if you are

17   merely suspicious that he might be guilty, or even

18   strongly suspicious that he might be guilty, you must

19   find him innocent.

20        Do you understand that?

21        JUROR SAMPLES:  Would you repeat that again?

22        MR. BICKLEY:  If you were suspicious that he

23   might be guilty, and nothing more than that, then you

24   must find him not guilty.

258

1        If, after you search your conscience, and the
2    State has not proven all of the elements of the crime,
3    then you must vote him not guilty, even though you may
4    be suspicious, or have a hunch, but you do not believe
5    beyond a reasonable doubt that he is not innocent, then
6    you must vote not guilty?

7        JUROR SAMPLES:  Yes, if I have any doubt in my
8    mind.

9        MR. REVERCOMB:  I think you've already been told
10   that the State has the burden in every criminal case to
11   prove the defendant guilty beyond a reasonable doubt.
12   We accept that.

13       But would you require the State to meet a higher
14   burden -- would you require us to prove his guilt beyond
15   all doubt, beyond all possibility of a doubt, or just a
16   reasonable doubt?

17       JUROR SAMPLES:  If it's just a reasonable doubt,
18   I could do that.

19       MR. REVERCOMB:  So, if you had a doubt in your
20   mind that it was reasonable, you could vote guilty?

21       JUROR SAMPLES:  Yes.

22       THE COURT:  Thank you.  I'm going to let you go
23   home.  Please come back tomorrow morning at 9:30.  Please
24   don't discuss this with anyone.

259

1

2          WHEREUPON, Beverly Samples was excused for the

3     day.

4

5          MR. REVERCOMB:  Judge, I have a question.  When

6     we filled some of these out up here, my question is how

7     are we going to -- these people, Lonnie Kilgore and

8     Beverly Samples, are they going to remain alternates or

9     are we going to fill them in?

10          THE COURT:  No.  They're going to sit in the

11     seats that they're in.  Now, we pick the alternates from

12     23 and 24 -- from 21.

13          MR. REVERCOMB:  From 21 through 24?

14          THE COURT:  Right.

15          MR. REVERCOMB:  So, Lonnie Kilgore will be an

16     alternate, he will not jump in up here?

17          THE COURT:  No, I'm not going to move these

18     people up.

19          MR. REVERCOMB:  These people above 24?

20          THE COURT:  Everyone that was picked up was moved

21     up from 25 to 20 or lower.

22          Next is Tammy Edwards.

23

24          WHEREUPON, Tammy Edwards was brought to the Jury

1    Room for individual voir dire.

2        THE COURT:  Okay, Ms. Edwards.  We'll try to get

3    you out of here.

4        I don't recall whether you told us that you've

5    heard anything about this case?

6        JUROR EDWARDS:  No.

7        THE COURT:  Not a thing?

8        JUROR EDWARDS:  I have no idea.

9        THE COURT:  Where do you live?

10       JUROR EDWARDS:  I live in Dunbar now.

11       THE COURT:  Have you ever lived in St. Albans?

12       JUROR EDWARDS:  I grew up in St. Albans.  I left

13   home when I was 15 and went to Texas.  And I've been in

14   the military, so I've been all over.

15       THE COURT:  How long have you lived in West

16   Virginia since you came back?

17       JUROR EDWARDS:  A little over a year now.

18       THE COURT:  When did you leave?

19       JUROR EDWARDS:  In '79.

20       THE COURT:  Did you know that this trial was

21   starting today?

22       JUROR EDWARDS:  No.

23       THE COURT:  Have any of your fellow jury members

24   discussed this case with you?

261

1    JUROR EDWARDS: No.

2    THE COURT: When you attended school, where did

3 you go to high school?

4    JUROR EDWARDS: I went to St. Albans High School

5 in the tenth grade.

6    THE COURT: Was St. Albans High School integrated

7 then? There were other blacks there?

8    JUROR EDWARDS: Yes.

9    THE COURT: Have you worked with black people?

10    JUROR EDWARDS: Oh, yes.

11    THE COURT: Who do you work for?

12    JUROR EDWARDS: Shoney's in Dunbar.

13    THE COURT: Did you ever belong to a club or

14 organization that systematically excluded blacks?

15    JUROR EDWARDS: No.

16    THE COURT: Have you ever had a family member,

17 your immediate family, who was ever convicted of a crime?

18    JUROR EDWARDS: No.

19    THE COURT: The Prosecutor is going to ask this

20 jury to bring in a verdict of guilty of first degree

21 murder without a recommendation of mercy.

22    If the jury does that, the defendant, Mr. Moss,

23 will go the penitentiary for the rest of his life,

24 without ever having the opportunity to be paroled.

If the evidence justifies it, could you return that verdict?

JUROR SAMPLES: If the evidence justifies it, yes.

THE COURT: There are two sides of that coin. If -- Mr. Moss has pleaded not guilty, and in the eyes of the law he is presumed to be not guilty, until the Prosecutor is able to prove that he is guilty beyond a reasonable doubt.

If the Prosecutor proves that he is guilty beyond a reasonable doubt, would you have any hesitation at all in finding him guilty?

MR. BICKLEY: Mrs. Edwards, the time that you were in St. Albans High School, before you left to join the military, did you know of or ever hear of John Moss?

JUROR EDWARDS: No.

MR. BICKLEY: That name doesn't ring a bell at all?

JUROR EDWARDS: No.

MR. BICKLEY: Now, you understand, Ms. Edwards, that Mr. Moss here, is presumed to be innocent throughout the entire trial, up to and including the time you go to the Jury Room to deliberate.

Are you aware of that?

263

1           JUROR EDWARDS:  Yes.

2           MR. BICKLEY:  Are you also aware that Mr. Moss

3      has to do nothing.  He has no duty to prove himself

4      innocent.  The State has a duty, an obligation, if you

5      will, to prove him guilty beyond a reasonable doubt.

6           Do you appreciate and know that?

7           JUROR EDWARDS:  Yes.

8           MR. BICKLEY:  Do you further understand that

9      should you be merely suspicious or even strongly

10     suspicious that he might be guilty that that is not

11     enough to convict him?

12          Do you understand that?

13          JUROR EDWARDS:  Yes.

14          MR. BICKLEY:  Thank you very much.

15          MR. REVERCOMB:  Do you understand that the burden

16     is one of reasonable doubt?  We don't have to prove that

17     the defendant is guilty beyond all doubt or beyond all

18     possible doubt.

19          Would you hold the State to a higher burden than

20     beyond a reasonable doubt?

21          JUROR EDWARDS:  No.

22          MR. REVERCOMB:  So, we wouldn't have to convince

23     you beyond a shadow of a doubt or beyond all possibility

24     of doubt; just beyond a reasonable doubt?

264

1    JUROR SAMPLES: Yes.

2    MR. REVERCOMB: You say you grew up in the St.

3    Albans area until you were 15?

4    JUROR SAMPLES: Yes.

5    MR. REVERCOMB: Did you know any of the Moss

6    family down there?

7    JUROR SAMPLES: I didn't know any Moss's, other

8    than the Moss that was in the Jury Room. That's the

9    first time I've ever heard of the name Moss.

10   MR. REVERCOMB: You met Kevin Moss?

11   JUROR SAMPLES: I haven't met him. I just heard

12   his name.

13   MR. REVERCOMB: When they were calling the role

14   or something?

15   JUROR SAMPLES: Yes. I heard them mention his

16   name.

17   MR. REVERCOMB: You didn't talk to him; did you?

18   JUROR SAMPLES: No.

19   MR. HUFFMAN: Where do you live?

20   JUROR SAMPLES: In Ordnance Park, in St. Albans.

21   MR. HUFFMAN: If a witness were to testify in

22   this case that they were a born again christian, would

23   that cause you to give their testimony any greater weight

24   than anybody else?

1          JUROR SAMPLES:  No.

2          MR. HUFFMAN:  Would you give the testimony of a

3  Police Officer any greater weight than any other person?

4          JUROR SAMPLES:  No.

5          MR. HUFFMAN:  I don´t believe I have any other

6  questions.

7          MR. REVERCOMB:  Would you give the testimony of

8  a Police Officer any less weight than you would any other

9  person?

10         JUROR SAMPLES:  No.

11         MR. REVERCOMB:  The Judge may have asked you

12  this, but has anyone in your immediate family ever been

13  charged with a crime?

14         JUROR SAMPLES:  No.

15         MR. BICKLEY:  How long were you in the military?

16         JUROR SAMPLES:  I wasn´t personally; I was

17  married to someone.

18         MR. BICKLEY:  How long was your husband in the

19  military?

20         JUROR SAMPLES:  He is still in.  He´s my ex-

21  husband now.  I was with him for eight years, though.

22         MR. BICKLEY:  Did you travel extensively?

23         JUROR SAMPLES:  We were in Germany for four

24  years.  Then we were in Fort Knox, Kentucky; Fort Hood,

266

1      Texas.

2              THE COURT:   You can go on home now.   Come back

3      tomorrow at 9:30.   Please don't discuss this case with

4      anyone.

5

6              WHEREUPON, Tammy Edwards was excused for the day.

7

8              THE COURT:   I've thought about it.   I'm going to

9      allow Carol Hay to stay.   You're going to have to use a

10     strike to take her off.

11             MS. LUSK:   I counted up, Judge.   We had eight

12     people in this group that have relatives with crimes.

13     Three of them are homicides.

14             THE COURT:   I know.

15             MS. LUSK:   That's incredible.

16             THE COURT:   I know.

17             MR. REVERCOMB:   Your Honor, I have a problem with

18     ---

19             THE COURT:   There's one I've got right now, by

20     the way, unless I excuse somebody else.

21             We've got to fill seat 3; we've got to fill seat

22     10; we've got to fill seat 15; we've got to fill seat 15

23     and we've got to fill seat 24.

24             MR. BICKLEY:   Who was that?

267

1      THE COURT:  Charles Orr, the guy who is painting

2   his house.  I was devastated that I had to let him go.

3      MR. REVERCOMB:  Judge, Brenda Allen causes me

4   problems because she knows the Moss family.  We could

5   pick a lot of other jurors that don't know any of them.

6      I just thought that we're going to have to pick

7   some more tomorrow anyway.  The fact that she knows the

8   Moss family; she has been acquainted with Arthur and

9   Eugene, or Eugene Jr., whichever ---

10      THE COURT:  Isn't it fair to say though, that she

11   just knows who they are?

12      MR. REVERCOMB:  She's talked -- they've been to

13   her house and she talked about him and likes him.

14      MR. BICKLEY:  Who's this?

15      MR. REVERCOMB:  Brenda Allen.

16      THE COURT:  None of them are to be witnesses; are

17   they?

18      MR. REVERCOMB:  Actually, I've contemplated

19   calling Billy Moss.  We haven't given notice of that.

20      MR. HUFFMAN:  The contemplations are more serious

21   after she said she knew him.

22      MR. REVERCOMB:  Of course, there is Will Moss,

23   and he will be called.

24      MR. BICKLEY:  That's a different Will Moss.  I'm

268

1  positive.

2      MR. REVERCOMB:  That's it -- the Moss family, and

3  that's who they are relying on.

4      MS. LUSK:  In order to convict him, we have to

5  prove that he lied.

6      MR. REVERCOMB:  And we don't know if that's the

7  right Billy Moss, but that's his uncle or cousin or

8  something. And to be perfectly honest, at least I wasn't

9  anticipating the possibility out of context of Billy

10  Moss.  I have a reason to do that, but I don't want to

11  tip my hand.

12      I don't know at this point if he would be called

13  or not, but it disturbs me that she knows three of the

14  members of the family.

15      Mr. Bickley has told us that they are going to

16  rely on Will Moss, primarily, to establish their alibi

17  defense.  And the fact that she knows someone, when we

18  could pick someone who doesn't know them, I think that

19  would be the safer course to follow.

20      MR. BICKLEY:  Your Honor, she says she has a very

21  peripheral relationship with the Moss's.  She hardly

22  knows them at all.  It's a hee-ha-ha type of thing.  You

23  know, there is no binding relationship at all, and she's

24  assured the State that she could vote guilty and not feel

269

1   bad about it and not expect there to be any harassment

2   from the Moss's.

3         THE COURT:  Not blink an eyeball?

4         MR. BICKLEY:  That's the way it looked to me.  I

5   don't know what the State ---

6         THE COURT:  Let me stew over it, okay?

7         MR. REVERCOMB:  Okay.  It just bothers us.

8         THE COURT:  I understand.  I don't think you're

9   just raising smoke.  I understand that you've got some

10  legitimate concerns.

11        Okay.  I'll see you tomorrow at 9:00.

12

13        WHEREUPON, the Court stood in a recess in the

14  hearing of this case.

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, to-wit:

I, Connie L. Cooke, Official Reporter for the Circuit Court of Kanawha County, do hereby certify that the foregoing is a true and correct transcript of the proceedings had and reported in the matter of the State of West Virginia versus John Moss, Jr., aka John Moss, III, upon action number 82-F-221, as stated in the caption hereto, had on the 16th day of April, 1990, during the May 1990 Term of said Court, as reported by me and transcribed into the English language.

I hereby certify that the transcript within meets the requirements of the Code of the State of West Virginia, 51-7-4, and all rules pertaining thereto as promulgated by the Supreme Court of Appeals.

Given under my hand this 13th day of July, 1990.

_Connie L. Cooke_

Official Reporter

1    IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

2

3

4    STATE OF WEST VIRGINIA

5

6    vs.                          Action No. 82-F-221

7

8    JOHN MOSS, JR., aka JOHN MOSS, III

9

10

11            BEFORE:  Hon. A. Andrew MacQueen, Judge

12                         Day 2

13

14

15                        APPEARANCES

16

17       For the State:  Neva Lusk and Stephen Revercomb,

18   Assistant Prosecuting Attorneys for Kanawha County.

19       For the Defendant:  The Defendant, in person, and

20   by Nelson R. Bickley, Timothy N. Huffman, and Kathy

21   Beckett, his counsel.

22

23

24                                    Connie L. Cooke

25                                    Official Reporter

                                       FILED
                                       JAN 23 1990

                         -2-

                         568

2

WITNESSES FOR THE PLAINTIFF

| | | | D | X | RD | RX |
|---|---|---|---|---|---|---|
| 1) | Trooper Terry Williams | | 425 | 590 | 612 | 619 |
| 2) | Scott Leasure | | 625 | 630 | | |
| 3) | John Fulks | | 631 | | | |
| 4) | Joe Dean Jarrell | | 635 | 640 | | |
| 5) | William D. Estep | | 643 | | | |
| 6) | Lt. Clarence Ralph Lane | | 650 | 654 | | |
| 7) | Paul Reggettz | | 661 | 735 | 762 | 764 |
| 8) | Trooper Robert R. Custer | | 767 | 779 | 781 | |
| 9) | Sgt. R. L. Presson | | 782 | 796 | 798 | |
| 10) | Irvin R. Sopher, M.D. | | 799 | 864 | 865 | |
| 11) | Paul Fortson | | 870 | | | |
| 12) | Arbutus Johnson Pomeroy | | 896 | 903 | 905 | |
| 13) | Michael D. Smith (In Camera) | | 907 | 913 | | |
| 14) | John Moss (In Camera) | | 917 | 919 | 914 | |
| 15) | Michael Don Smith | | 931 | 978 | | |
| 16) | Charles E. Pettry, Jr. | | 997 | 1004 | 1009 | |
| 17) | Lt. David H. Shumate | | 1021 | 1045 | | |
| 18) | Fred S. Zain | | 1048 | 1053 | | |
| | | and | 1065 | 1125 | 1135 | 1137 |

3

WITNESSES FOR DEFENDANT

|  | | D | X | RD | RX |
|---|---|---|---|---|---|
| 1) | Alexander Fortson | 1164 | 1173 | | |
| 2) | Willie James Moss | 1179 | 1187 | 1191 | 1192 |
| 3) | John Moss, Jr. | 1193 | | | |
| 4) | John C. Wideman | 1202 | 1204 | | |
| 5) | Trooper Howard Woodyard | 1208 | 1222 | 1233 | 1234 |

272

1          BE IT REMEMBERED, that on Tuesday, the 17th day

2     of April, 1990, during the January 1990 Term of said

3     Court, in the matter of the STATE OF WEST VIRGINIA vs.

4     JOHN MOSS, JR., aka JOHN MOSS, III, Action No. 82-F-221,

5     as   stated   in   the   caption   hereto,   the   following

6     transpired:

7

8          THE COURT:  Are you ready?

9          MS. LUSK:  Judge, may we approach the bench?

10

11          WHEREUPON, a bench conference was held, and the

12     following transpired:

13

14          MS. LUSK:  Judge, we want to renew our motion at

15     this time, if we could, to strike for cause, Brenda

16     Allen, who knew three of the members of the Moss family,

17     and who had a brother who was convicted and in the

18     penitentiary.

19          Judge, she also bothered us for another reason.

20     She was cavalier.  I don't know if you noticed, but when

21     the Court asked if she remembered anything about this

22     case, she said, "I don't watch TV.   I'm a cartoon

23     person."

24          Then, when the Court asked her what her brother

1    was convicted of, she just laughed and made a joke about

2    that too. She said, "Oh, you know, he has what they call

3    'sticky fingers'." He was a thief.

4         THE COURT: I took that as embarrassment. Do you

5    think she was being evasive?

6         MS. LUSK: I'm particularly concerned by the fact

7    that she knew members of the Moss family. I can't

8    believe she doesn't know anything about this case if she

9    knows those members of the family.

10         THE COURT: What's her number?

11         MS. LUSK: I think Number 19.

12         THE COURT: I tell you what I'll do; I'll let you

13    know before we fill in the seat. We'll fill in the seat

14    below her.

15         MR. BICKLEY: Can I register my objection, your

16    Honor?

17         THE COURT: Yes. Do you have an objection to

18    their objection?

19         MR. BICKLEY: My objection to their objection.

20    I think she expressed a peripheral friendship with the

21    Moss's, and I think I agree with the Court that it was

22    a nervous fixation in that situation. I don't think she

23    was being cavalier at all. She didn't appear to me to

24    be that. She appeared nervous, and was accompanied by

1    that mental state.

2            THE COURT:  Okay.  Let me wrestle with it.

3            MS. LUSK:  I would like to renew our strike for

4    cause motion on Carol Hay, as well; Number 5.  She's the

5    one whose brother was convicted of homicide and was

6    killed in the penitentiary.  I think she continued to

7    express reservations or a hesitation about sitting on the

8    jury.  She kept saying, and she repeated, "Well, you're

9    just going to have to decide that.  I just don't know,"

10   when she was asked to propound the questions on whether

11   she would be uncomfortable sitting on the jury and making

12   judgment on this man.

13           I gather that she was very uncomfortable with the

14   proposition because her own brother was killed in the

15   penitentiary.  And she expressed that he had asked for

16   help and that nobody helped him.

17           When asked if she held that against the

18   Prosecutor's office, she said, "No, not the Prosecutor's

19   office."  And in between the lines, what she was saying

20   was, she did hold it against the State, though.

21           THE COURT:  Somebody asked her that question, if

22   she -- who she held it against.

23           MS. LUSK:  My recollection is, she was asked if

24   she held it against the Prosecutor's office.  She said,

1    "No, not the Prosecutor's office," like that there was

2    somebody in the State of West Virginia that she was

3    holding it against.

4         MR. BICKLEY:  She was saying the Governor didn't

5    do anything.

6         MS. LUSK:  It was the Department of Corrections

7    at the penitentiary.  That's where we're asking her to

8    send this man.

9         MR. REVERCOMB:  She did say, your Honor, that it

10   might be harder for her.

11        MR. BICKLEY:  She said it might be harder.  I

12   think almost all of the jurors expressed some difficulty

13   in saying, when they were trying to get the nuance

14   between reasonable doubt and not a doubt, all of the

15   jurors expressed some difficulty in saying that they

16   would vote for life without mercy, if they had any

17   inkling of doubt.  This woman is just saying the same

18   thing.

19        She said she would find it difficult to send

20   somebody there, but she thought she had good judgment.

21   She said she would be, you know, she would be fair, and

22   that you would have to judge her.

23        THE COURT:  I think she answered that question

24   correctly.  I'm going to leave her on, and I'll continue

1       to mull over the other one.

2               MR. BICKLEY:  Okay.  Thank you, Judge.

3

4       (Back on the Record)

5

6               THE COURT:  Folks, the Clerk is going to call six

7       names.  As your names are called, I'd like for you to

8       take a seat in the jury box, beginning with Seat No. 1,

9       which is at the far corner of the jury box from me.

10      We're just going to call out six names initially, and

11      most of the questions will be directed at those six.

12      However, we ask that the remaining jurors whose names

13      aren't called listen to these questions in the event that

14      it's necessary that we call additional replacements.  We

15      can abbreviate the process with that, in asking the

16      routine questions.

17              THE CLERK:  As I call your names, please take

18      your seats in the jury box, starting with Seat No. 1.

19              Seat No. 1, Juror No. 102, David Smith.

20              Seat No. 2, Juror No. 20, Patrick Cooke.

21              Seat No. 3, Juror No. 6, Francis Batman.

22              Seat No. 4, Juror No. 107, Elizabeth Stern.

23              Seat No. 5, Juror No. 47, Carol Hay.

24              Seat No. 6, Juror No. 40, Sherry Grubb.

277

1        THE COURT:   Folks, we're going to begin a jury

2    trial today.    We anticipate having the jury picked

3    before the lunch time and having opening statements

4    started this morning.

5        The case is the State of West Virginia versus

6    John Moss, Jr.   Mr. Moss is charged with three counts of

7    first degree murder.  The Indictment charging him alleges

8    that during the month of December, 1979, he killed Paul

9    Eric Reggettz, Bernadette Reggettz, and Vanessa Reggettz.

10       We say at this point, the Indictment against Mr.

11   Moss is no evidence of his guilt or innocence; it is

12   simply the document by which he has been formally charged

13   in this case.

14       Generally, or basically, the evidence will be, I

15   believe, that on or around the 13th day of December,

16   1979, the persons whom I have named, Paul Eric and

17   Bernadette and Vanessa Reggettz were killed at the

18   residence at 7027 Chesapeake Avenue, and that's in St.

19   Albans, with a St. Albans mailing address.   Basically,

20   it's in that area between South Charleston and St.

21   Albans, down around where Chef Wong's restaurant is on

22   Route 60.  Chesapeake Avenue is just off Route 60 in that

23   area there.

24       The defendant has entered a plea of not guilty,

1     and it will be the jury's responsibility in this case to

2     determine whether the State can prove the guilt of the

3     defendant beyond a reasonable doubt.

4          So, what I am going to do now is ask you all some

5     general questions and then we're going to take about five

6     to ten minutes each, with you individually and privately

7     and ask you some other questions, simply because it's in

8     the nature of those questions, that they are best asked

9     privately.

10          The defendant, Mr. Moss, is the gentleman seated

11     in the brown sport coat.  He's represented in this case

12     by Mr. Nelson Bickley, who is the gentleman nearest you;

13     by Kathy Beckett, and by Mr. Tim Huffman.  I've excused

14     Mr. Huffman for the morning.  He's doing some paperwork

15     on the case.  He'll be in a little bit later.

16          Representing the State of West Virginia are the

17     Prosecuting Attorneys, Neva Lusk and Steve Revercomb.

18          My first question to you is, do Mr. John Moss,

19     Jr., do Paul Eric, Bernadette or Vanessa Reggettz -- are

20     any of you or were any of you acquainted with any of

21     those persons?

22          (No Response from Jurors)

23          Have any of you now or have any of you in the

24     past been represented by any of the attorneys who appear

279

1    in this Courtroom?

2              (No Response from Jurors)

3              Are any of you acquainted with them socially or

4    in some business connection with either of those

5    attorneys?

6              (No Response from Jurors)

7              There will be a number of witnesses called.  The

8    list which I'm going to read to you is, in fact, a list

9    which includes more people that will be called, but I've

10   asked both the State and the Defense to identify anyone

11   who may be called, because I want to identify them also

12   for you for purposes of this questioning.  So, among the

13   witnesses you have had the opportunity to hear -- what

14   I want to know is if any of you are related to any of

15   these witnesses or if any of you are acquainted with

16   them, either socially or in some business context?

17             Trooper Terry Williams of the State Department of

18   Public Safety;

19             Trooper Michael Don Smith, also a State Trooper;

20             Robert L. Presson;

21             Clarence Ralph Lane;

22             William Johnson;

23             Arbutus Johnson Pomeroy;

24             Sgt. R. R. Custer of the Department of Public

280

1    Safety;

2           Lt. David H. Shumate, also of the Department of

3    Public Safety;

4           Dr. Irvin M. Sopher, the State Medical Examiner;

5           Fred S. Zain;

6           Paul Reggettz, III;

7           Terry Wayne Kirby;

8           Calton Moss;

9           R. E. O'Dell;

10          John Fulks;

11          Scott Leasure;

12          Trooper  Rinehart,  with  the  West  Virginia

13    Department of Public Safety;

14          R. C. Murphy;

15          Steve McGowan;

16          Sgt. R. L. Presson;

17          Arthur Moss;

18          Will Moss;

19          Nora Buckland;

20          Charles Pettry;

21          Richard M. Greene;

22          William Jeffrey Munk, that's M-u-n-k;

23          MR. REVERCOMB:  Your Honor, that's misspelled; it

24    should be M-o-n-k.

281

1          THE COURT:  Joe D. Jarrell;

2              William D. Estep;

3              Wesley King;

4              Alexander Fortson;

5              Paul Fortson;

6              Russell Clark;

7              Alex Swiggert;

8              Belinda Gregg;

9              Bonnie Hull;

10             Faith Moss;

11             John Wideman;

12             William J. Moss;

13             Sgt. J. R. Smith;

14             John Moss;

15             Alex Fortson, I may be repeating some of these,

16     I'm sorry;

17             Dr. Jack Charbonniez;

18             Betty Ann Fortson;

19             Reese Otts;

20             Trooper Howard Woodyard;

21             Dr. Jerome Massenburg;

22             Edith Lilly;

23             Roger Lyon; and

24             Loren Tobia.

282

1      THE COURT:  Are any of you related by blood or

2   marriage to any of those persons?

3      (No Response by Jurors)

4      THE COURT:  Are any of you acquainted with any of

5   those persons?

6      (No Response by Jurors)

7      THE COURT:  Are any of you currently serving as

8   Law Enforcement Officers in any capacity?

9      (No Response by Jurors)

10     THE COURT:  Have any of you in the past been Law

11  Enforcement Officers in any capacity as Law Enforcement

12  Officers?

13     (No Response by Jurors)

14     THE COURT:  Do any of you have any immediate

15  family members, and when I speak of immediate family

16  members, I'm speaking of your father, your mother, your

17  spouse, your brothers and sisters and your children --

18  any of you have any immediate family members who are Law

19  Enforcement Officers?

20     JUROR NO. 5:  Speaking currently, your Honor?

21     THE COURT:  Do you have someone who is a Law

22  Enforcement Officer?

23     JUROR NO. 5:  Yes.  He was a Prosecutor for

24  Cabell County.

283

1    THE COURT:  How is he related to you?

2    JUROR NO. 5:  Father.

3    THE COURT:  When did he serve?

4    JUROR NO. 5:  Probably the middle to late '70s or

5    early '80s.

6    THE COURT:  Are any of you -- or have any of you

7    been, yourselves, personally, victims of any crime?

8    (No Response by Jurors)

9    THE COURT:  Do any of you have immediate family

10   members who have been the victims of crime?

11   (No Response by Jurors)

12   THE COURT:  Have any of you read anything about

13   this case or have you seen anything in the newspapers?

14   JUROR NO. 5:  I have.

15   THE COURT:  Fine.  We'll ask you about that

16   later.

17   THE COURT:  There may be some photographs in this

18   case and some exhibits which are graphic.  Obviously, the

19   death of three people by homicide is not an attractive

20   thing for anybody to observe.

21   Are there any of you that feel that you might be

22   so uncomfortable being required to view exhibits and that

23   sort of thing that it might make your service in this

24   case difficult?

284

1      (No Response by Jurors)

2      THE COURT: Do any of you live in St. Albans?

3      (No Response by Jurors)

4      THE COURT: Do any of you have children who have

5  attended school in St. Albans or have any of you

6  yourselves attended school in St. Albans?

7      UNIDENTIFIED JUROR: Excuse me, sir. I have a

8  brother who is a kid that goes to St. Albans.

9      THE COURT: Currently?

10     UNIDENTIFIED JUROR: Yes.

11     THE COURT: Thank you. Are there any questions

12  by the State?

13     MS. LUSK: Your Honor, we would reserve the

14  questions for individual.

15     MR. BICKLEY: Same here, your Honor.

16     THE COURT: What we're going to do now, folks, is

17  we're going to start asking questions individually. And

18  Ms. Batman, we're going to start with you.

19     Just for your own comfort and convenience, rather

20  than ask you to stay here in the Courtroom, we're going

21  to release you all to go back to the Jury Lounge.

22     I will ask, as I have all of those other jurors,

23  only one thing of you, and that is that you not discuss

24  the case among yourselves or with any other persons at

1    any time during this process.

2         We hope to finish this process of jury selection

3    within the next half an hour or forty-five minutes, then

4    we'll have a final jury -- opening statements, I hope,

5    in about an hour.

6         So, if you all would like to just go on back to

7    the Jury Lounge, we'll send for you as soon as we're

8    ready.

9

10        WHEREUPON, there was a bench conference, where

11   the following transpired:

12

13        JUROR VICKI ROGERS:   My husband is a State

14   Policeman.  I know most all of the Policeman that you've

15   mentioned.

16        THE COURT:   Have any of those Policemen been

17   social guests in your home?

18        JUROR ROGERS:  Yes.  Rudy O'Dell -- I think he's

19   retired now, but he ---

20        THE COURT:  Do you know anything about this case?

21   Have you heard anything?

22        JUROR ROGERS:   Not really.   At the time it

23   happened, I'm sure I heard that the people died, but

24   other than that, I really don't know anything about it.

286

1        THE COURT:  Okay.  You want to take a seat for

2    just a second.

3        WHEREUPON, Vicki Rogers returned to her seat in

4    the Courtroom.

5

6        THE COURT:  Yes, sir, you want to come on up?

7

8        WHEREUPON, John Snyder approached the bench,

9    where the following transpired:

10

11       THE COURT:  I know Nelson from when he was an

12   Assistant Prosecutor.

13       MR. BICKLEY:  He was suing somebody on the other

14   side.

15       THE COURT:  Do you have any problem letting them

16   both go?

17       MR. BICKLEY:  No.

18       MR. REVERCOMB:  No.

19       THE COURT:  The two of you may be excused.  Thank

20   you for coming in this morning.

21

22       WHEREUPON, Jurors Vicki Rogers and John Snyder

23   were excused from the jury panel.

24

287

1       WHEREUPON, the Court stood in a recess in the

2   hearing of this case.

3

4       (Back on the Record)

5

6               INDIVIDUAL VOIR DIRE

7

8       WHEREUPON, Frances Batman was brought to the Jury

9   Room for individual voir dire.

10

11      THE COURT:  Come on back, Mrs. Batman.  How are

12  you today?

13      JUROR BATMAN:  Fine.

14      THE COURT:  I apologize for myself and everybody

15  else for your having to wait around all day yesterday.

16  We'll try to hurry through things this morning, and get

17  things going.

18      Have you heard anything about this case.

19      JUROR BATMAN:  No.

20      THE COURT:  Where do you live?

21      JUROR BATMAN:  Big Chimney.

22      THE COURT:  How long have you lived there?

23      JUROR BATMAN:  Forty-seven years.

24      THE COURT:  Do you have any relatives who live in

288

1   St. Albans?

2       JUROR BATMAN:  No.

3       THE COURT:  I suspect that it may be that you may

4   recognize something about this case when the opening

5   evidence comes in.

6       JUROR BATMAN:  I think I was on vacation in

7   Virginia, but my husband was telling me about something.

8   I tell you, I don't read the newspapers very much.

9       THE COURT:  Tell me what your husband was telling

10  you about?

11      JUROR BATMAN:  About a killing in St. Albans.

12  That's as much as I know.

13      THE COURT:  Did he tell you about that recently?

14      JUROR BATMAN:  No, no -- when it happened.  So I

15  don't really remember the case.

16      THE COURT:  If anything should come to mind -- if

17  any of the evidence, when it starts to come in, causes

18  you to remember something about that now, can you do

19  everything within your power to put any recollections of

20  any media coverage and press coverage and that sort of

21  thing out of your mind, and base your verdict solely upon

22  the law and the evidence that comes to you here in the

23  Courtroom?

24      JUROR BATMAN:  Yes, sir.

289

1          THE COURT:   Did you know that this trial was

2     starting today?

3          JUROR BATMAN:   No.   I thought I was on Canady's

4     case.   I got in there yesterday.

5          THE COURT:   That's right.   We just picked some

6     extra jurors because we might need them.

7          Have any of the other jurors here mentioned

8     anything to you about this case?

9          JUROR BATMAN:   No.

10         THE COURT:   Where did you attend school?

11         JUROR BATMAN:   In Virginia.

12         THE COURT:   I would bet, and this is just a

13    guess, but when you attended schools that the schools

14    were not integrated?

15         JUROR BATMAN:   That's right.

16         THE COURT:   During your lifetime and working,

17    have you had the opportunity to work with black persons?

18         JUROR BATMAN:   Yes.

19         THE COURT:   And have any of your experiences

20    caused you to form any beliefs about whether black

21    persons are more likely or not to commit crime?

22         JUROR BATMAN:   No.

23         THE COURT:   Have you ever been or are you

24    currently a member of any organization that excludes

290

1     persons from membership because of their race?

2          JUROR BATMAN:  No.

3          THE COURT:  One of the reasons we wanted to ask

4     that question privately is because we didn't want to

5     embarrass anybody.

6          Do you have any family members who have ever been

7     convicted of a crime?

8          JUROR BATMAN:  No.

9          THE COURT:  In this case, the Prosecutors, at the

10     close of the evidence, are going to ask the jury to

11     return verdict of first degree murder.  They are also

12     going to ask this jury not to return a verdict, including

13     mercy.

14          What that all means is, that if the jury in this

15     case finds him guilty of one or more counts of first

16     degree murder and no recommendation of mercy, he would

17     spend the rest of his natural life in the penitentiary

18     with no hope of parole.  If the evidence in this case

19     warrants it, can you return such a verdict?

20          JUROR BATMAN:  Yes.

21          THE COURT:  Now the other side of that coin,

22     obviously, is Mr. Moss has pleaded not guilty in this

23     case and the law presumes him to be not guilty.  So, it

24     is the State's responsibility to prove his guilt beyond

1    a reasonable doubt.

2           Now, if they put on some pretty awful evidence,

3    awful in terms of the crime, that's not enough to prove

4    that Mr. Moss is guilty beyond a reasonable doubt.

5           Would you have any difficulty in returning a not

6    guilty verdict?

7           JUROR BATMAN:  No, I don't think so.

8           THE COURT:  Mr. Bickley?

9           MR. BICKLEY:  Thank you.

10          Mrs. Batman, have you had to sit on any trials

11   since you have been empaneled?

12          JUROR BATMAN:  You mean, since the jury started?

13          MR. BICKLEY:  Yes, ma'am.

14          JUROR BATMAN:  Yes, sir.

15          MR. BICKLEY:  Which trial was that?

16          JUROR BATMAN:  I was on one for Judge Canady, and

17   one for Judge Casey.

18          MR. BICKLEY:  Were any of them criminal trials?

19          JUROR BATMAN:  No.

20          MR. BICKLEY:  I think you know -- and it is the

21   Judge's duty, to tell you that Mr. Moss enjoys the

22   presumption of innocence throughout the trial, up until

23   you go into the Jury Room to deliberate.

24          Do you understand that?

292

1       JUROR BATMAN:  Yes, sir.

2       MR. BICKLEY:  And do you also understand that he

3  has no duty to prove himself innocent; that the State has

4  the burden of proving him guilty beyond a reasonable

5  doubt?

6       JUROR BATMAN:  Yes, sir.

7       MR. BICKLEY:  Do you understand that?

8       JUROR BATMAN:  Yes, sir.

9       MR. BICKLEY:  Do you further understand that --

10  let's say that you were suspicious that he might be

11  guilty, strongly suspicious that he might be guilty and

12  that was all.  After you had looked at all of the

13  evidence and you really and truly believed that, you

14  would have to vote not guilty.

15       Do you understand that?

16       JUROR BATMAN:  Yes, sir.

17       MR. BICKLEY:  Now, let's assume that you have

18  listened to all of the evidence and you are really

19  convinced in your own mind that there is a strong

20  suspicion that the State has not proven its case beyond

21  a reasonable doubt, and you go in to the Jury Room with

22  eleven other individuals sitting there just convinced

23  that they have.  Could you honestly and sincerely be

24  convinced, even if you strongly suspected but there is

293

1   not the necessary proof beyond a reasonable doubt --

2   could you stand against the rest of them?  Could you be

3   true to your conviction?

4          JUROR BATMAN:  Yes, I can.

5          MR. BICKLEY:  Thank you very much.

6          MS. LUSK:  Ms. Batman, if you were in that

7   situation where there were eleven people of the jury who

8   held one belief and you were the lone person who had the

9   other belief, could you in that situation, listen to the

10  views of the other jurors and consider those views?

11         JUROR BATMAN:  Yes, I would consider them.  I

12  would take everything into consideration.

13         MS. LUSK:  And you would try to reach a verdict?

14         JUROR BATMAN:  Yes.

15         MS. LUSK:  Now, Mr. Bickley has told you that Mr.

16  Moss is presumed innocent and the State's burden, as it

17  is in every criminal case, is to prove that he is guilty

18  beyond a reasonable doubt.  The law doesn't require us

19  to prove him guilty beyond all doubt, though.

20         Do you understand that?

21         JUROR BATMAN:  Yes.

22         MS. LUSK:  Do you think that you could uphold

23  that law?  Do you think that you would hold us to a

24  stronger or stricter burden than the law requires?

294

1      JUROR BATMAN:  Well, after I see all of the

2   evidence, that's going to be my theory of whether he's

3   guilty or not guilty.

4      MS. LUSK:  Do you think that you could follow the

5   law and the Judge's instructions?

6      JUROR BATMAN:  Yes.

7      MS. LUSK:  Thank you.

8      MR. BICKLEY:  I forgot one.  Mrs. Batman, there

9   is a possibility that the witnesses from the stand will

10  say that they are born again christians.  Would you

11  believe their testimony over anybody else's testimony

12  just because they say they are born again christians?

13     JUROR BATMAN:  No, not necessarily.  I've seen a

14  lot of people say they are born again christians and

15  sometimes you don't have faith in them.

16     MR. BICKLEY:  So, you would give him or her the

17  same credibility as anybody else?

18     JUROR BATMAN:  Right.

19     MR. BICKLEY:  And if a Police Officer was to

20  testify, would you believe him any more than you would

21  anybody else, just because he's a Police Officer?

22     JUROR BATMAN:  No.

23     MR. BICKLEY:  Thank you.

24     THE COURT:  Ms. Batman, I'm going to excuse you

1    to go back with the other jurors now.

2        MR. REVERCOMB:  Just one question.  You've told

3    us that you've met some born again christians, and you've

4    kind of told us that some of these people you don't

5    believe.  Would the fact that someone said they were a

6    born again christian -- would that cause you to believe

7    their testimony less than you would another person?

8        JUROR BATMAN:  No, not necessarily.  I am a born

9    again christian, and I believe in doing what's right.

10   Plus, in my heart, I don't want to go out of here feeling

11   that I've done something that I shouldn't have done.

12       If I am called on the case, I will listen to the

13   case.  And from there on, I'll just have to tell what I

14   think is right and what I think is wrong.

15       MR. REVERCOMB:  And you will weigh each witness's

16   testimony carefully and consider it?

17       JUROR BATMAN:  That's right.

18       MR. REVERCOMB:  Thank you.

19       THE COURT:  You may go back and join the

20   remaining jurors.  You can take fifteen or twenty minutes

21   and have a cup of coffee, if you'd like.

22       Please don't discuss the questions or your

23   answers with anybody else.

24

296

1          WHEREUPON, Frances Batman returned to the Jury

2     Lounge.

3

4          THE COURT:  Incidentally, I know John Williamson.

5     I don't know if any of you know him.

6          MR. BICKLEY:  Is he next?

7          THE COURT:  He's juror No. 5.  His father was a

8     Prosecutor.  I didn't know that.

9          MS. LUSK:  Who was his father -- do you know?

10         THE COURT:  I don't know.

11         I'm going to Frances Batman up, by the way, to

12    seat No. 3.

13

14         WHEREUPON, David Smith was brought to the Jury

15    Room for individual voir dire.

16

17         THE COURT:  Come on in, Mr. Smith.  Have a seat.

18    I'm going to make this relatively quick so we can get on

19    with the show here.

20         Have you heard anything about this case?

21         JUROR SMITH:  Just what I've been reading in the

22    newspapers.

23         THE COURT:  Okay.  Tell me what you remember

24    reading about.

297

1          JUROR SMITH:  Just where he was in this trial,

2     and all that.  Is that right?

3          THE COURT:  Yeah.

4          JUROR SMITH:  I just saw what's in the papers.

5          THE COURT:  Do you remember reading about the

6     case back in 1979?

7          JUROR SMITH:  No, sir.

8          THE COURT:  You say you read about a mistrial in

9     this case?

10         JUROR SMITH:  Yes, sir.  Just what's been in here

11    lately.

12         THE COURT:  Okay.  What effect does that have on

13    your feelings about the case?

14         JUROR SMITH:  None at all, sir.  Another thing I

15    was going to ask you, too, sir, to be excused.  I'm going

16    to be married the 27th.  Is that going to last maybe two

17    weeks or more?

18         THE COURT:  Good for you.  Yes, it is.

19         JUROR SMITH:  I'm going to be married the 27th,

20    and we'll be leaving for a week.

21         THE COURT:  Why don't you step out into the

22    hallway for just a second.  I talk to these folks and get

23    back to you.

24

298

1        WHEREUPON, David Smith returned to the hallway,

2    while the following transpired:

3

4        THE COURT:  Shouldn't we let him go?

5        MS. LUSK:  Sure.

6        MR. BICKLEY:  Sure.  His mind won't be on this.

7

8        WHEREUPON, David Smith was excused from the jury

9    panel for this case.

10

11        WHEREUPON, Kenna Wayne was brought to the Jury

12    Room for individual voir dire.

13

14        THE COURT:  Hello, Mr. Wayne.  How are you?

15        JUROR WAYNE:  Fine, thank you.

16        THE COURT:  Are you tired of waiting around?

17        JUROR WAYNE:  Really, yeah.

18        THE COURT:  I'll bet you are, and I don't blame

19    you a bit.

20        JUROR WAYNE:  There's no use telling a story

21    about it.

22        THE COURT:  Have you heard anything about this

23    case?

24        JUROR WAYNE:  No, sir, I haven't because I'm

1    retired, and I'm gone a lot.

2           THE COURT:   Where do you go?

3           JUROR WAYNE:   I have a place in Braxton County

4    and I'm up there a lot.   I don't have a television or

5    radio or anything.   We travel a lot, too.

6           THE COURT:   I envy you that.   Especially no

7    telephone.

8           I'll tell you what.   You sit here and I'll sit

9    there, and I'll go to Braxton County.

10          JUROR WAYNE:   No way.

11          THE COURT:   When did you retire?

12          JUROR WAYNE:   In '85.

13          THE COURT:   Okay.   You would have been working at

14    the time that occurred.   It occurred back in 1979.

15          JUROR WAYNE:   Yes, sir, I would have been.

16          THE COURT:   If, in the course of the trial, you

17    start to see some evidence and you should come to the

18    realization that, "Now I remember what he's talking

19    about," could you put what you remember from the

20    newspapers, television and radio out of your mind and

21    base your verdict only on the law and the evidence that

22    you hear in this case in the Courtroom?

23          JUROR WAYNE:   Yes, sir, I could.

24          THE COURT:   There are a couple of reasons why

300

1   that is very important to both sides of this case.

2          First, I can tell you that as a juror, you are

3   going to know a hundred times more than the newspaper

4   people do, simply because they stop in for a little bit,

5   catch a piece of evidence, then go out and write or tell

6   a story about it.  But you are going to hear every

7   syllable of it, so you are going to know much more than

8   they do about it.

9          Another thing that is very important to all of us

10  is that we know exactly what the evidence is that the

11  jury is considering.  Both sides will put on their case

12  and they will decide what they want the evidence to be.

13  But you are to pay attention to all of the evidence which

14  you will hear in the Courtroom, and not what you may have

15  heard previously.

16          JUROR WAYNE:  Okay.

17          THE COURT:  Did you know that this trial was

18  starting today?

19          JUROR WAYNE:  No.

20          THE COURT:  Have any of the other jurors talked

21  to you about this case or anything?

22          JUROR WAYNE:  No, sir.

23          THE COURT:  I'm just going to take a guess that

24  when you went through school, that it would have been