**MOSS v. BALLARD
CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 33
(Continuation, pp. 478 - 550 )**

Original reports of blood not matching Paul Reggettz at the crime scene does not exclude him from committing the murders. It only means his confession left out a second party he sought to protect, perhaps a lady friend. A set of silverware taken is more consistent to a female taking the item, than a drug crazed murderer. It is remarkable how uncritical authorities were of Paul Reggettz receiving regular visits from a lady friend after confessing to killing his family during the year he spent in the county jail. It is equally remarkable how it went unquestioned that Paul Reggettz married this lady shortly after his release and received an undisclosed amount of money from the State. It is also note worthy that not one females blood was submitted for serological testing to compared to the foreign blood type identified at the crime scene.

It is much more likely the blood unidentified as not belonging to the Reggettz family, scratches on Vanessa's body and "backdoor altercation" involved 2 females. What did Paul originally say Vanessa said during an alleged domestic altercation? "I'm going to get a gun". Get a gun to deal with a fight with her husband or get a gun to run off her husbands lover? The whole attack on Vanessa clearly took time, the blood pool in the bedroom didn't form in a matter of seconds, it took time. Paul Eric didn't run back until after Reggettz hung his wife from a door or couldn't run because he was held by a second party? None of the theories offered at either trial by the State fits a single killer not employing the aid of a second party.

## CONCLUSION

Justice has not been served for the memory of Vanessa, Paul Eric,

or Bernadette Reggettz. The image of a mother fighting for her family is forever recorded in the evidence. The monster who confessed to choking Paul Eric, tying his hands and feet and then drowning him in a tub of water "he looked like he was swimming", was freed. The most outrageous image that forever haunts anyone who hears of this case is the 29 pound body of little Bernadette hung from a door facing the Christmas tree. Only Paul Reggettz knew this child was hung from the door when he gave his confession because he moved her lifeless body to her bed before police came. Likewise, Paul Reggetttz moved the body of little Paul Eric from the bathtub, but as shown above, if Reggettz original story was true of coming home to find his family murdered, Paul Eric would have shown signs of having been in the water for at least 6 hours. There was no such evidence.

The evidence in this case is clear. Paul Reggettz murdered his family in cold blood, moved his children bodies out of guilt, confessed out of guilt, and walked free due to <u>Zain</u>. It is equally clear the confession of John Moss III was coerced and was convicted on the weight of Zain's testimony.

Revised Feb. 1998

| | PDS USE ONLY |
|---|---|
| | Invoice Number_____ |

## PUBLIC DEFENDER SERVICES
### Direct Expense Payment

From:    Lonnie Simmons
**Name of Appointed Attorney**

Address:   604 Virginia Street, E.  Charleston, WV  25301

This claim relates to proceedings in _____Kanawha_____ County

Date of Appointment_____ Client is: __X__ Adult _____Juvenile

Client ____John Moss, III____

### Type of proceeding (use letter codes).  __I__

| | | |
|---|---|---|
| A. Felony | G. Mandamus Prohibition | M. Contempt |
| B. Misdemeanor | H. Child Abuse & Neglect | N. Fugitive |
| C. Mental Hygiene | I. Habeas Corpus (Cir. Ct.) | O. Extradition |
| D. Juvenile Proceedings | J. Supreme Court | P. Other _____ |
| E. Paternity Proceedings | K. Magistrate Court Appeal | |
| F. Parole Probation Revocation | L. Termination of Parental Rights | |

__94-MISC-663_____        __Murder, 1st deg.__
**Case Number**                         **Specific Criminal Charge**

II. Circle the appropriate expense code for this direct expense:
   EXPENSE CODE:
   1. Expert Witness
   2. Court Reporter
   3. Investigative Services
   7. Other (specify) _____

TOTAL OF THIS DIRECT PAYMENT        $__30.80_____

**Attorney Certification:**
   I affirm that I have reviewed the invoice attached to this form; that the charges and claims made on the invoice are true and correct to the best of my knowledge; and that the services for which compensation is sought were provided for the defense of the client named above.

_____        ___7/1/02___
**ATTORNEY SIGNATURE**                    **DATE**

| Connie L. Cooke, Official Reporter | 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 |
|---|---|
| NAME OF SERVICE PROVIDER RECEIVING PAYMENT | TAX IDENTIFICATION NUMBER |
| 1007 Rustling Road, So. Chas. WV 23503 | 744-4424 or 357-0465 |
| ADDRESS (SERVICE PROVIDER) | TELEPHONE NUMBER |

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA

vs.                                        CHARGE OF FELONY (2)
                                           CHARGE OF MISDEMEANOR (7)
                                           00-F-492/493/M-3006/3007/3008
                                           3009/3010/3011/3012

JOHN DAVID MOSS

## O R D E R

On the 10th day of March 2000, the affidavit of John David Moss, who stands charged with a felony and seven misdemeanors, was presented to the Court, said affidavit stating that the said John David Moss is pecuniarily unable to employ counsel to defend his case. The affidavit having been seen and inspected by the Court is **ORDERED** filed and D. Randall Clarke, an attorney practicing at the bar of this Court, is hereby appointed to represent the said John David Moss.

It is **FURTHER ORDERED** that in the event the accused shall not prevail, the fee allowed counsel appointed to represent John David Moss shall be taxed as part of the costs against the defendant.

DATE:_____3/13/2000_____

                                           E N T E R:

                                           _____
                                            JUDGE

CONNIE L. COOKE

#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

COURT REPORTER

1007 Rustling Road
So. Charleston, WV   25303

PHONE:  Office (304) 357-0465
        Home (304) 744-4424


NAME:   Lonnie Simmons, Esq.
        Attorney at Law
        604 Virginia Street, E.
        Charleston, WV   25301

DATE:   July 1, 2002

RE:     John Moss, III vs. George Trent, etc., et als
        94-MISC-663

============================

FOR SERVICES RENDERED:

    Transcript of hearing of 6/10/02

        8 pages @ $3.85          $30.80
                                  =====

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

        Petitioner,

v.

                                  Civil Action No. 94-MISC-663

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

        Respondent.

### NOTICE

    NOW COMES Petitioner John Moss, III, and advises counsel of record and the Honorable Court that the Law Office of P. RODNEY JACKSON has dissolved and that all future pleadings, correspondence and documents are to be forwarded to Lonnie C. Simmons at the following address:

                Lonnie C. Simmons
                **FRAGALE & SIMMONS**
                410 Washington Street, East - Suite 307
                Post Office Box 3785
                Charleston, West Virginia 25337
                (304) 342-4616.

                                    **JOHN MOSS, III**, Petitioner
                                        By Counsel

Lonnie C. Simmons
West Virginia State Bar No. 3406
**FRAGALE & SIMMONS**
410 Washington Street, East - Suite 307
P. O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

480

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a true copy of the foregoing **NOTICE** was served upon counsel for Respondent, through the regular course of the United States mail, postage prepaid, this 10th day of May, 2000, addressed as follows:

> Jon Blevins
> Assistant Prosecuting Attorney
> Judicial Annex Building
> 111 Court Street
> Charleston, West Virginia 25301

Lonnie C. Simmons, WV State Bar ID No. 3406

481

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

        Petitioner,

v.

**GEORGE TRENT**, Warden of the
West Virginia State Penitentiary,

        Respondent.

00 JUN 13  AM 8: 58

CATHY S. GATSON, CLERK
KANAWHA COUNTY

Civil Action No. 94-MISC-663

### NOTICE OF STATUS CONFERENCE

**PLEASE TAKE NOTICE** that on the 7th day of July, 2000, beginning at 1:00 p.m., and continuing from that time until complete, a status conference regarding the above-styled case will be held before the Honorable A. Andrew MacQueen, Judge of the Circuit Court of Kanawha County, in his courtroom, at which time and place you may appear to protect your interests.

                    **John Moss, III**, Petitioner
                    By Counsel

Lonnie C. Simmons
West Virginia State Bar No. 3406
**FRAGALE & SIMMONS**
410 Washington Street, East - Suite 307
P. O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a true copy of this **NOTICE OF STATUS CONFERENCE** was served upon counsel for Respondent, through the regular course of the United States mail, postage prepaid, this 12ᵗʰ day of June, 2000, addressed as follows:

Jon Blevins
Assistant Prosecuting Attorney
Judicial Annex Building
111 Court Street
Charleston, West Virginia 25301

Lonnie C. Simmons, WV State Bar ID No. 3406

2

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

                Petitioner,

v.                                         Civil Action No. 94-MISC-663
                                         Honorable A. Andrew MacQueen

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

                Respondent.

## NOTICE OF HEARING

      **PLEASE TAKE NOTICE** that a hearing will be held on **PETITIONER'S MOTION FOR ENTRY OF ORDER WITH DETAILED FINDINGS OF FACT AND CONCLUSIONS OF LAW**, regarding the above-styled case, before the Honorable A. Andrew MacQueen, Judge of the Circuit Court of Kanawha County, in his courtroom, at a date and time to be scheduled by this Court.

                                         **JOHN MOSS, III**, Petitioner
                                             By Counsel

Lonnie C. Simmons
West Virginia State Bar No. 3406
**FRAGALE & SIMMONS**
410 Washington Street, East - Suite 307
P. O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

        Petitioner,

v.

        Civil Action No. 94-MISC-663
        Honorable A. Andrew MacQueen

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

        Respondent.

## PETITIONER'S MOTION FOR ENTRY OF ORDER
## WITH DETAILED FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

Pending before this Court is **PETITIONER'S RULE 59 MOTION TO ALTER AND AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS** and **PETITIONER'S SUPPLEMENT TO RULE 59 MOTION TO ALTER, AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS**. The main purposes of this **MOTION** was to allow the Court the opportunity to correct the multiple factual errors alleged and to address certain legal errors evident in the September 10, 1998 order.

At the hearing held on July 7, 2000, the Court did not address any of the numerous factual errors identified in the **MOTION**. The only issue addressed by the Court was whether or not Petitioner had been prejudiced by Zain's testimony. A legal determination of this issue was required because in the September 10, 1998 order, the Court had failed to complete the two-part analysis mandated by Syllabus Point 3 of *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993). At the previous hearing held on this **MOTION**, the Court conceded on the record that the September 10, 1998 order was deficient in this respect.

485

In addressing this issue, the Court merely stated from the bench that Petitioner had not been prejudiced by Zain's testimony. After making that assertion, the Court requested that counsel for Respondent draft an appropriate order. To date, no proposed order has been presented to counsel for Petitioner.

Counsel for Petitioner feels obligated to seek from the Court an order specifically addressing the factual errors alleged and specifically explaining the conclusion that Petitioner was not prejudiced by Zain's testimony. Since the Court is retiring from the bench at the end of this year, this order is the only opportunity the West Virginia Supreme Court will have to understand the factual and legal basis for the Court's decision.

With respect to the factual errors alleged, Petitioner rests on the specific assertions included in his **MOTION**, all of which are supported by citations to the relevant record. These factual errors need to be addressed individually because they have a direct impact on the conclusions reached by the Court in the September 10, 1998 order. If, in fact, the errors asserted by Petitioner are not deemed by this Court to be incorrect, then the order needs to explain, with appropriate citation to the existing record, how the alleged errors are indeed factual. Without addressing these specific factual errors, the record before the West Virginia Supreme Court will be incomplete.

With respect to the Court's conclusion that Petitioner was not prejudiced by Zain's testimony, Petitioner respectfully submits that it is incumbent upon the Court to explain the basis for this general conclusion. In the September 10, 1998 order, the Court concluded that after removing Zain's testimony from the other evidence presented at trial, the remaining evidence was sufficient to support Petitioner's conviction. Although Petitioner disagrees with this conclusion, it cannot be disputed that this Court failed to conduct the second part of the analysis, which is to determine whether Petitioner was prejudiced by Zain's testimony.

486

This two-part analysis adopted by the West Virginia Supreme Court in the *Laboratory* decision was based upon longstanding law with respect to how a court should analyze the admission of improper evidence of a nonconstitutional nature. This analysis was first stated in Syllabus Point 2 of *State v. Atkins*, 163 W.Va. 502, 514-15, 261 S.E.2d 55, 62-63 (1979), which provided the following guidance on how a court should determine whether the defendant had been prejudiced by the admission of improper evidence of a nonconstitutional nature:

> While our cases state the test as whether the error had prejudicial impact on the jury, the difficulty is in applying the test. **The more tangential the error to the ultimate issue of guilt, the less likely its prejudicial impact.**
>
> In any inquiry into the prejudicial impact of the error, we will be guided by whether the record reveals that the error was repeated or singled out for special emphasis in the State's argument. We will scrutinize the record to determine if the error became the subject of a special instruction to the jury, or produced a question from the jury. **Also of importance is the overall quality of the State's proof. While on appellate review under *Starkey*, the State is entitled to have its case viewed in the most favorable light, this is because the jury's verdict of guilty is taken to have resolved factual conflicts in favor of the State in recognition of the jury's role in evaluating the credibility of witnesses. If the case contains a number of substantial key factual conflicts or is basically a circumstantial evidence case, or is one that is largely dependent on the testimony of a co-participant for conviction, there is an increased probability that the error will be deemed prejudicial.**
>
> Further, if the error is related to critical testimony of the defendant, the more likely that it will be deemed prejudicial. *Cf. People v. Mayrant*, 43 N.Y.2d 236, 401 N.Y.S.2d 165, 372 N.E.2d 1 (1977); *People v. Dickman*, 42 N.Y.2d 294, 397 N.Y.S.2d 754, 366 N.E.2d 843 (1977)(holding prior conviction evidence not harmless in context of New York balancing test for admissibility of prior convictions). A further consideration is the cumulative effect of the error in the context of the entire trial. We have recognized that there may be error which, standing alone, is not sufficient to require a reversal, but that when cumulated with other marginal error, the combined effect may be sufficient to warrant a reversal. *Cf. e.g., State v. Wilson*, ___ W.Va. ___, 202 S.E.2d 828 (1974)(constitutional and nonconstitutional errors combined). (Emphasis added).

3

Petitioner respectfully submits that by any objective measure, Petitioner clearly and indisputably was prejudiced by Zain's testimony. Zain's testimony was not merely "tangential" evidence, but rather was the key evidence implicating Petitioner in a case where the jury was faced with conflicting confessions given by two different people. Without Zain's testimony, the jury had virtually no evidence upon which to decide whether or not to believe the confession given by Paul Reggettz or by Petitioner.

In the original habeas corpus petition filed in this case, Petitioner went to great lengths to provide the Court with every reference to Zain's testimony made by the State in its opening statement and closing arguments. For example, in the State's opening statement in the second trial, the jury was told at length about the testimony anticipated from Trooper Zain:

> "Now, the case begins to unravel soon after that, because at the scene that day on December 13th, when the Troopers showed up and the Lab people showed up, the photographer showed up, a person from the Serology Lab, a person who is a forensic serologist, showed up along with a fingerprint man. The serologist, a man by the name of **Fred Zain**, the chief forensic serologist for the State -- he'll tell you that there was a lot of blood at the scene.
>
> "Vanessa Reggettz had an injury. We all know how a head injury is. For example, **Fred Zain** will tell you that he took his samples of blood from every blood stain in that house. He will tell you that he took those samples from this house, then he went back to the lab where he analyzed them. Of course, in the meantime, he had the known blood samples of the victim, the mother. He got a known blood sample of Paul Reggettz shortly thereafter.
>
> "He will tell you that the blood samples that he took from a drawer in the kitchen and from a flashlight in the TV room, from a Christmas package, some Christmas wrapping paper, blood samples from the door between the living room and the front bed room. He took blood samples from that door, a change purse from the chest of drawers in the front bed room, a pillow case from the back bed room, a curtain on the back door, even the little pajama top that Bernadette Reggettz was wearing when she was murdered.

4

488

"He will tell you that when he took that samples, he analyzed them in the lab. He found samples of blood taken from all of these people that I've just listed, that did not match any member of the Reggettz family. The blood didn't belong to Vanessa, from the head wound. It didn't belong to Paul Eric. It didn't belong to Bernadette. And it didn't belong to Paul Reggettz.

"So, the Police continued their investigation. On April 22, 1980, they traveled to Cleveland, Ohio, to take a blood sample from a young man. During the course of their investigation, at the time of these murders, this man was living with his grandfather, some one hundred to two hundred yards straight down the road from the Reggettz home. And shortly after the murders, after about a week, that young man returned to Cleveland. That young man, ladies and gentlemen, is sitting right here (Indicating), John Moss, the defendant. His blood was taken that day in April and brought back to Fred Zain, the serologist, and his blood was found to match the blood found in the house.

"Now, we all know about some bloodwork. Everyone has an ABO type; either O, A, or AB, or B. **Trooper Zain — or Lieutenant Zain** will tell you that the bloodwork at the time, was broken down scientifically and forensically, and can be broken down to a number of samples, to nine genetic markers or enzymes, all independent of each other, which is important. Some of the blood samples that were taken from the house were taken from the curtains on the back door, from Bernadette's pajama top, from Christmas wrapping paper, I believe the Christmas package. **And those blood samples were able to be broken down by Fred Zain into those nine genetic markers.** And one at a time -- that blood exactly matched John Moss's -- the genetic markers, those nine genetic markers, in the sample of blood.

"**And Fred Zain will further tell you that the combination of those nine genetic markers found in the defendant's known blood and on those exhibits, the exhibits that I just listed, occur in three of every ten thousand people, point zero three percent of the population in this State. Three in every ten thousand. Fred Zain will further tell you that some of the other samples, the other ones I listed, for lack of sufficient sample or whatever reason, he was able to break it down into seven of the nine genetic markers. And again, he'll tell you that those seven genetic markers found on those exhibits matched right down the line to the defendant's known blood.**

"**Fred Zain will tell you that combination of those seven genetic markers occurs in one of every thousand, twenty-one percent.**" (Emphasis added)(SECOND TRIAL, Tr. 406-09).

5

489

Under *Atkins*, the fact that this critical evidence was emphasized at great lengths to the jury is further proof that Petitioner was prejudiced by Zain's testimony. Clearly, this case is not one where Zain's testimony related to an insignificant collateral issue. In fact, it would be safe to say that Zain's testimony was at the heart of the State's evidence. Petitioner respectfully submits that if the Court reviews the detailed habeas corpus petition, which includes all of the record citations relating to Zain's testimony, the only logical and rational conclusion that can be made in this case is that Petitioner was prejudiced by Zain's testimony.

For the foregoing reasons, Petitioner John Moss, III, respectfully asks this Court to issue an order with detailed findings of fact and conclusions of law addressing all of the issues raised in **PETITIONER'S RULE 59 MOTION TO ALTER AND AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS** and **PETITIONER'S SUPPLEMENT TO RULE 59 MOTION TO ALTER, AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS.**

**JOHN MOSS, III**, Petitioner,
--By Counsel--

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406
**FRAGALE & SIMMONS**
410 Washington Street, East - Suite 307
P.O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

496

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that true copies of a **NOTICE OF HEARING** and **PETITIONER'S MOTION FOR ENTRY OF ORDER WITH DETAILED FINDINGS OF FACT AND CONCLUSIONS OF LAW** was served upon counsel for Respondent, through the regular course of the United States mail, postage prepaid, this 12th day of October, 2000, addressed as follows:

> Jon Blevins
> Assistant Prosecuting Attorney
> Judicial Annex Building
> 111 Court Street
> Charleston, West Virginia 25301

Lonnie C. Simmons, WV State Bar ID No. 3406

491

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

**JOHN MOSS, III,**

               Petitioner,

v.

                                 Civil Action No. 94-MISC-663
                                 Honorable A. Andrew MacQueen

**GEORGE TRENT,** Warden of the
West Virginia State Penitentiary,

               Respondent.

**NOTICE OF HEARING**

     **PLEASE TAKE NOTICE** that a hearing will be held on Friday, December 1, 2000,

at 1:30 p.m., on **PETITIONER'S MOTION FOR ENTRY OF ORDER WITH DETAILED**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW,** previously filed with this Court on

October 12, 2000, regarding the above-styled case, before the Honorable A. Andrew MacQueen,

Judge of the Circuit Court of Kanawha County, in his courtroom.

                                 **JOHN MOSS, III,** Petitioner
                                 By Counsel

Lonnie C. Simmons
West Virginia State Bar No. 3406
**FRAGALE & SIMMONS**
410 Washington Street, East - Suite 307
P. O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

# CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that true copies of the foregoing **NOTICE OF HEARING** was served upon counsel for Respondent, through the regular course of the United States mail, postage prepaid, this 16th day of October, 2000, addressed as follows:

Jon Blevins
Assistant Prosecuting Attorney
Judicial Annex Building
111 Court Street
Charleston, West Virginia 25301

Lonnie C. Simmons, WV State Bar ID No. 3406

492

# CIVIL CASE INFORMATION STATEMENT
## CIVIL CASES
### (Other than Domestic Relations)

In the Circuit Court, _____KANAWHA_____ County, West Virginia

## I. CASE STYLE:

**Plaintiff(s)**                                    Case # ____94–MISC–663_____

JOHN MOSS, III. _____          Judge: __HON. ANDREW MACQUEEN, (RET.)__

_____

_____

**vs.**

**Defendant(s)**                                   **Days to**        **Type of Service**
                                                   **Answer**

GEORGE TRENT, Warden of the West _____
        **Street**                                 _____              _____
Virginia State Penitentiary
_____
        **City, State, Zip**

_____

        **Street**                                 _____              _____

_____
        **City, State, Zip**

_____

        **Street**                                 _____              _____

_____
        **City, State, Zip**

_____

        **Street**                                 _____              _____

_____
        **City, State, Zip**

94

PLAINTIFF: JOHN MOSS, III
DEFENDANT: GEORGE TRENT, Warden

CASE NUMBER: 94-MISC-663

**II.  TYPE OF CASE:**

| | | |
|---|---|---|
| ☐ General Civil | ☐ Adoption | ☐ Civil Appeal from Magistrate Court |
| ☐ Mass Tort Litigation | ☐ Mental Health | ☐ Miscellaneous Civil Petition |
| ☐ Guardianship/ Conservatorship | ☐ Administrative Agency Appeal | ☑ Other (specify): HABEAS CORPUS CIVIL CASE |

**III.  JURY DEMAND:** ☐ Yes  ☑ No

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR): _____/_____

**IV.  DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY?** ☐ YES
☑ NO
          IF YES, PLEASE SPECIFY:

          ☐ Wheelchair accessible hearing room and other facilities
          ☐ Interpreter or other auxiliary aid for the hearing impaired
          ☐ Reader or other auxiliary aid for the visually impaired
          ☐ Spokesperson or other auxiliary aid for the speech impaired
          ☐ Other: _____

Attorney Name: _____

Firm: _____

Address: _____

Telephone: _____

Dated: _____

**Representing:**

☐ Plaintiff   ☑ Defendant

☐ Cross-Complainant  ☐ Cross-Defendant

Signature

☑ Proceeding Without an Attorney

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III.,

       Petitioner,

v.

                                       Civil Case No. 94-MISC-663.

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

       Respondent.

## MOTION FOR STATUS CONFERENCE TRANSCRIPT

Now comes, JOHN MOSS, III., (hereinafter the petitioner), In Propria Persona and requests the Circuit Court of Kanawha County to entertain this motion pursuant to the provisions of Rules 2, 3 and 16 of the West Virginia Rules of Appellate Procedure, for an **Order**, pursuant to the below-cited law, directing the official court reporter(s) to furnish himself and counsel with a transcript, at the expense of the State of West Virginia, of the relevant proceedings as are designated to be transcribed in this motion.  In support hereof, petitioner states the following;

The petitioner has filed a financial affidavit with the Circuit Clerk and/or the Court Administrator, prior to his criminal trial and this Court has previously found him to be indigent.  His continued incarceration has and his resources and income have not changed since the filing of his affidavit of indigency.  The petitioner cannot submit an Appellate Transcript Request to the appropriate parties until this Court issues an Order upon his Rule 59(E) Motion and an Order reinstating his appeal time rights so he may file a petition for appeal to the West Virginia Supreme Court of Appeals challenging this Court's order dismissing his petition for a writ of habeas corpus in the above styled case if the Rule 59(E) Order denies the relief requested;

The petitioner argues "An indigent petitioner/defendant who has been convicted of a crime has a right to appeal his felony conviction and he is consitutionally entitled to a copy of the transcript of his trial without cost to him. This shall include all transcripts of habeas corpus proceedings and conferences in his case. See Rhodes v. Leverette, 239 S.E.2d 136 (W.Va. 1977); Call v. McKenzie, 220 S.E.2d 665 (W.Va. 1975); Varney v. Supt., West Virginia Penitentiary, 264 D.E.2d 472 (W.Va. 1980); Quoted and Applied in State ex rel. Gary v. Warden, 288 S.E.2d 176 (W.Va. 1982); State ex rel. Wells v. Warmuth, 177 W.Va. 574, 355 S.E.2d 363 (1987); State ex rel. Kisner v. Fox, 267 S.E.2d 451 (W.Va. 1980);

Further, the petitioner contends on September 10, 1998, Judge Andrew MacQueen entered a Final Order dismissing his habeas petition and thus denying him a new trial. Also the Court never addressed the original grounds within the petition for a writ of habeas corpus, and;

On September 21, 1998, petitioner's counsel filed a Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On November 25, 1998, petitioner's counsel filed a Supplement to the Rule 59 Motion to Alter, Amend Order, to Correct Factual and Legal Errors, and Reconsider Legal Conclusions;

On July, 13, 1999, petitioner's counsel filed a Supplemental Motion to Alter and Amend the already pending Rule 59(E) Motion;

On December 1, 1999, petitioner proceeding pro se filed Additional Supplement to the Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On October 12, 2000, petitioner's counsel filed a Motion for Entry of Order With Detailed Findings of Fact and Conclusions of Law. To date the

497

Court has failed to enter and provide any Court Order addressing these filing by both petitioner's counsel and himself pro se. Furthermore, during the course of said actions there have been several status conferences, hearings and legal communications from petitioner's counsel and the Kanawha County prosecuting attorney to Judge Andrew MacQueen. Said conferences and communications have attempted to move the Court to enter an Order upon said motions without success;

On December 1, 2000, Judge Andrew MacQueen verbally dismissed the Rule 59(E) Motion from the bench during a Status Conference hearing in the presence of petitioner's counsel and the Kanawha County prosecutor. However, petitioner and his counsel have in fact never received an Order stating why said motion was dismissed. However, according to the docket sheet from the Kanawha County Circuit Court's Clerk's office this hearing is not logged or noted as being held. But a notation in the docket sheet indicates a Notice for Status Hearing with Certificate of Service on October 12, 2000;

On January 1, 2001, Judge Andrew MacQueen retired from the bench and petitioner's case was left to be re-assigned to another judge within the Thirteenth (13th) Judicial Circuit;

Sometime in June 2001, according to petitioner's counsel his case had been assigned to Judge Duke Bloom who stated he would not enter a Order in relation to the Rule 59(E) Motion and other motions until he received a signed Recommended Order from Judge Andrew MacQueen, (Ret.);

Therefore, petitioner maintains he needs a copy of the Status Conference proceeding to essentially assist in compelling this Court to enter an Order directly stating why the Rule 59(E) Motion was dismissed, and for purposes of preparing and filing a final petition for appeal (habeas appeal) upon the West Virginia Supreme Court of Appeals;

498

WHEREFORE, the petitioner respectfully requests this Court for the relief requested in the premises herein, as well as any other relief which this Court deems appropriate, just and fair in the instant case at bar.


Respectfully submitted,

John Moss, III.

499

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III.,

      Petitioner,

v.

                                 Civil Case No. 94-MISC-663.

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

      Respondent.

## MOTION TO PROCEED IN FORMA PAUPERIS
## AND AFFIDAVIT IN SUPPORT THEREOF

Now comes, JOHN MOSS, III., (hereinafter the petitioner), In Propria Persona, and requests the Honorable Circuit Court of Kanawha County to grant him leave to file his pro se petition for a writ of mandamus without payment of costs and to proceed In Forma Pauperis.

In support of this motion he reiterates the State of West Virginia has previously found him to be indigent and that his continuous incarceration has prevented his financial status to improve. Therefore, the petitioner, being first duly sworn under oath, deposes and says that the facts and allegations therein are true, except insofar as they are therein stated to be upon information and belief, he believes them to be true as subscribed to the above and does state that the information therein is correct to the best of his knowledge and in support thereof he swears to the following:

1. I am the petitioner in the above styled case who prepared this pro se motion;

2. I am unable, because of my poverty, to pay the cost and filing fees required by the Court in this case;

3. I am unable to give security for it;



4. I do believe in good faith that I am entitled to the relief sought;

5. I have no cash on hand or money in any saving or checking account to pay the filing fees or court costs;

6. I do not own any house, land, auto or truck, mobile home, stocks, bonds, notes or other valuable property.

Wherefore, your petitioner moves the Court to grant said motion to allow him to proceed in Forma Pauperis.

_____
John Moss, III.

STATE OF WEST VIRGINIA
COUNTY OF FAYETTE, TO WIT:

Taken, sworn and subscribed to before me this ___ day of June 2001.

_____
**NOTARY PUBLIC**

My Commission Expires: _____

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHEILA POORE
MOUNT OLIVE CORRECTIONAL CENTER
1 MOUNTAINSIDE WAY
MOUNT OLIVE, WV 25185
My Commission Expires December 24, 2006

2

501

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the $\underline{28}$th day of June, 2001, he did mail to the Kanawha County Circuit Court via United States Postal Service a true and original with two (2) copies and a additional copy to the below named respondent, his Motion for Status Hearing Transcripts and Motion to Proceed In Forma Pauperis:

Mr. Mike Clifford, Esq.,
Prosecuting Attorney
13th Judicial Circuit
Kanawha County Judicial Annex
111 Court Street
Charleston, WV 25301


John Moss, III.

502

JOHN MOSS, III
1 MOUNTAINSIDE WAY
BOX 5
MT. OLIVE, WV 25185

2 July 2001

Mrs. Cathy S. Gatson, Clerk
Kanawha County Circuit Court
P.O. Box 2351
Charleston, WV 25328

RE: PETITION FOR A WRIT OF MANDAMUS PURSUANT TO CIVIL CASE NO. 94-MISC-663
KANAWHA COUNTY CIRCUIT COURT.

Dear Mrs. Gatson:

Please find enclosed one (1) copy of the following legal documents filed upon the WVSCA in the above referenced case: Petition for a Writ of Mandamus, Brief in Support, and Motion to Proceed in Forma Pauperis with a Certificate of Service. Further, the rules in conjunction with service of papers require that I provide the respondent with a copy of said petition as a courtesy.

In closing, I want to thank you for your time and cooperation in this matter.

Respectfully submitted,

John Moss, III.

JM/jm
Enclosures

cc: WVSCA Clerk

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III.,

      **Petitioner,**

VS.               WVSCA DOCKET NO:_____.
                        Underlying Civil Case No. 94-MISC-663.

KANAWHA COUNTY CIRCUIT COURT,
13TH JUDICIAL CIRCUIT,

      **Respondent.**

## PETITION FOR A WRIT OF MANDAMUS

### I. JURISDICTION

Comes now, JOHN MOSS, III, (hereinafter the petitioner) by pro se and contends the West Virginia Supreme Court of Appeals (hereinafter WVSCA) is knowledgeable pursuant to W.Va. Code § 53-1-2 and § 53-1-3, which provides said Court jurisdiction to review and rule upon the above styled petition in the instant case which originates in the Circuit Court of Kanawha County in Charleston, West Virginia. Therefore, pursuant to the provisions of Chapter 51, Article 1, Section 3 of the West Virginia Code and Article 8, Section 3 of the West Virginia Constitution petitioner moves for entertainment of said petition, invoking the original jurisdiction of this Court.

### II. STATEMENT OF FACTS

On April 30, 1984, petitioner was convicted by a jury of first degree murder in Kanawha County Circuit Court Criminal Case No. CR-82-F-221;

On December 19, 1988, petitioner's petition for appeal was granted and the WVSCA reversed and remanded his criminal conviction in WVSCA Docket No. 17063;

On April 16, 1990, petitioner received a re-trial and was subsequently convicted on April 24, 1990, of first degree murder in Kanawha County Circuit Court;

On March 12, 1991, petitioner's petition for appeal was refused in a 3-2 vote by the WVSCA;

On August 18, 1994, petitioner's counsel filed a petition for a writ of habeas corpus upon the Kanawha County Circuit Court which was assigned Civil Case No. 94-MISC-663;

On September 19, 1995, Judge Andrew MacQueen held a omnibus evidentiary hearing upon the petitioner's habeas petition;

On April 24, 1996, the Antiiterrorism and Effective Death Penalty Act (ADEPA) took effect and imposed, for the first time, a statutory limit of one year.  See Brown v. Angelone, 15 F3d 370, 372 (4th Cir. 1998).  Specifically, the West Virginia Districts Courts, both Northern and Southern, and the 4th Circuit allow a period of one year for a prisoner to file a federal habeas corpus petition after the date of enactment of the AEDPA where a petitioner's conviction became final prior to the enactment of the AEDPA.  See Ferrell v. Duncil, No. 2:97cv79, 1998 U.S. Dist. LEXIS 6441, at *7-8 (N.D. W.Va. April 28, 1998); Tesack v. Trent, 22 F.Supp 2d 538, 539 (S.D. W.Va. 1998); Brown at 376;

On October 2, 1996, petitioner filed his Response to the State's of West Virginia's Memorandum in Opposition to Petition for a Writ of Habeas Corpus;

On September 10, 1998, Judge Andrew MacQueen entered a Final Order dismissing petitioner's habeas petition and thus denying him a new trial. Further, the Court never addressed the original grounds within the petition for a writ if habeas corpus;

On September 21, 1998, petitioner's counsel filed a Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On November 25, 1998, petitioner's counsel filed a Supplement to the Rule 59 Motion to Alter, Amend Order, to Correct Factual and Legal Errors,

and Reconsider Legal Conclusions;

On July, 13, 1999, petitioner's counsel filed a Supplemental Motion to Alter and Amend the already pending Rule 59(E) Motion;

On December 1, 1999, petitioner filed pro se his Additional Supplement to the Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On July 7, 2000, allegedly Judge Andrew MacQueen verbally dismissed the Rule 59(E) Motion from the bench. However, petitioner and his counsel have in fact never received a Court Order stating why said motion was dismissed. Nor does the Court's Docket Sheet show such action of dismissal by the judge. (See Exhibit A, attached hereto);

On October 12, 2000, petitioner's counsel filed a Motion for Entry of Order With Detailed Findings of Fact and Conclusions of Law. To date the respondent has failed to enter and provide any Court Order addressing these filing by both petitioner's counsel and himself pro se. Further, during the course of these actions there have been several status conferences, hearings and legal communications from petitioner's counsel and the Kanawha County prosecuting attorney's office to Judge MacQueen. Said conferences, hearings and communications have attempted to move the Court to enter an Order upon said motions without success;

On January 1, 2001, Judge Andrew MacQueen retired from the bench and petitioner's case was left to be assigned to another judge in the circuit;

Sometime in June 2001, according to petitioner's counsel his case had been assigned to Judge Duke Bloom who stated he would not enter a Order in relation to the Rule 59 Motion and other motions until he received a signed Recommended Order from Judge Andrew MacQueen, (Ret.);

Now petitioner maintains he has presented viable grounds for relief in the aforementioned statements and pursuant to W.Va. Codes § 53-1-2, § 53-1-3

3

and § 53-4A-1 and he further argues as follows;

## III. ARGUMENT AND DISCUSSION OF LAW

Petitioner argues he has a legal right to know what is taking place in his case and why respondent has failed to author and enter an Order granting or denying the Rule 59(E) Motion and additional Motions in Civil Action No. 94-MISC-663. He further claims W.Va. Const., Article 3, Section 17, provides that "Justice shall be administered without......delay." Canon 3B(8) of the W.Va. Code of Judicial Conduct provides that "[a] judge shall dispose of all judicial matters promptly, efficiently, and fairly."

The WVSCA has also pointed out that "judges have a affirmative duty to render timely decisions on matters properly submitted within a reasonable time following their submission." Syllabus Point 1, in part, State ex rel. Patterson v. Aldredge, 173 W.Va. 446, 317 S.E.2d 805 (1984). Moreover, Rule 16.12 of the West Virginia Trial Court Rules provides that a "final judgment or decree shall be entered in extraordinary proceedings within one month of submission." However, based upon the exigencies of the AEDPA and all the circumstances of petitioner's case regarding whether or not his federal petition one year time right is tolled or not requires the respondent to take action to ensure the Court's failure to render a timely decision in the aforementioned motions have not forfeited this time right. Thus, both the respondent and the WVSCA has a legal obligation to protect these rights to ensure State Court procedural remedies in this case are properly litigated.

In applying the aforementioned provisions, the WVSCA held in Syllabus Point 2 of State ex rel. Patterson v. Aldredge, supra: "Mandamus will not lie to direct the manner in which a trial court should exercise its discretion with regard to an act either judicial or quasi-judicial, but a trial court, or other inferior tribunal, may be compelled to act in a case it unreasonably

4

neglects or refuses to do so." State ex rel. Cackowska v. Knapp, 147 W.Va. 699, 130 S.E.2d 204 (1963). These cases further prove the respondent has unreasonably neglected this case based upon the filing date of petitioner's Rule 59(E) Motion and respondents failure to legally act. Bearing in mind the dictates of Syllabus Pt. 2 of State ex rel. Patterson v. Aldredge, supra, the options of the respondent include entering an Order stating why the Rule 59(E) Motion is denied which will allow petitioner to prepare and file his final state remedy via a habeas appeal upon the WVSCA. Furthermore, it may require respondent to enter an additional Order reinstating the petitioner's appeal time rights pursuant to the W.Va. Rules of Appellate Procedure.

Petitioner argues it is very unreasonable for his case to have generally languished without significant action since September 21, 1998, which is the date his Rule 59(E) Motion was filed. Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia clearly state the respondent has a legal obligation to act. Thus, respondent's denial in abiding to the rules of the Court violates all the petitioner's Due Process Rights under Article 3, Section 17 of the West Virginia Constitution and Constitutional Amendment 14 of the United States Constitution. Mandamus under this section, implemented by W.Va. Code § 51-1-3, will require the lower court to perform legally any administrative act required by a petitioner who shows a clear legal right to the relief which he seeks. The Court has a mandatory duty to perform the act. See, State ex rel. Granes v. Handly, 150 W.Va. 468, 147 S.E.2d 284 (1966).

Accordingly, petitioner claims the WVSCA has complete power to make a decision upon the issues presented in this petition and in cases of Habeas Corpus, Mandamus and Prohibition which are instituted under the original jurisdiction of the WVSCA as provided in this section, the Court will not try

5

cases in piecemeal. Thus, it therefore is necessary for the Court in such original proceeding to ascertain initially whether the original proceeding upon final submission for decision presents only an issue or issues of law. Board of Trustees of Policemens Pension & Relief Fund v. City of Huntington, 142 W.Va. 217, 96 S.E.2d 225 (1956) and Wiley v. State Road Commission, 148 W.Va. 76, 133 S.E.2d 113 (1963).

Therefore, petitioner maintains the languishing by respondent's decision not to enter an Order pursuant to W.Va. Code § 53-4A-7(c) on the Rule 59(E) Motion and the issues involved in his case, will require intervention from the WVSCA to direct respondent to act accordingly under the laws and rules governing this action and because he has presented viable grounds for relief pursuant to W.Va. Code's § 53-1-2, § 53-1-3 and § 53-4A-1 as stated within this petition. Thus, he asserts the respondent's delays have also created an existence of circumstances in his post conviction rights to receive an Order either granting or denying relief to permit him to proceed with preparation and filing of a final appeal if necessary upon the WVSCA. Such renders this process ineffective to protect all his rights to Due Process of Law under the Constitutions of the United States and State of West Virginia.

## IV. REQUESTED RELIEF

Wherefore, petitioner prays that all the Honorable Justices of the West Virginia Supreme Court of Appeals will immediately direct the respondent to forthwith take action under the laws and rules governing post-conviction procedures pursuant to this action. Thus, petitioner requests the Justices will promptly procure an Order that a Rule of Mandamus do issue directed against the respondent returnable before this Court, commanding and directing the said respondent to show cause, if any it can, why a peremptory writ of mandamus should not be awarded as prayed for by petitioner in this petition

unless sooner mooted by the appropriate relief being sought, but deemed just and fair in the instant case at bar.


Respectfully submitted,

John Moss, III.

EXHIBIT A

CASE  94-MISC-663

JOHN MOSS, III

vs.

GEORGE TRENT

KANAWHA

| LINE | DATE | ACTION |
|---|---|---|
| 1 | 08/18/94 | * PET FOR WR HAB CORP W/COS; COV LET; PET MOT FOR ALL DOC'S |
| 2 | 08/18/94 | # RELATING TO TESTING PERFORMED IN THIS CASE OR IN CONNECTION W/ |
| 3 | 08/18/94 | # PAUL REGGETTZ, III W/COS; PET MOT TO EXCEED STAT LIMIT W/COS |
| 4 | 09/15/94 | * PET MOT FOR GJ TRANS W/COS; SIMMONS FOR P |
| 5 | 09/15/94 | # PET MOT FOR DOC'S GRT/MAC |
| 6 | 09/15/94 | *O: PET MOT FOR HRG W/COS |
| 7 | 09/15/94 | *O: PET CNSL ALLOW TO INCUR EXP IN EXCESS OF STAT LIMIT/MAC |
| 8 | 10/17/94 | # NOT OF HRG W/COS |
| 9 | 10/24/94 | O: GRT PETITIONER'S MOT FOR GRAND JURY TRANS/MAC (S 10/14/94) |
| 10 | 10/24/94 | # LET FR MARY KERSHNER GRAND JURY PROCEEDINGS HELD ON 9/17/82 |
| 11 | 11/22/94 | * COPY OF LET FR MARY KERSHNER TO LONNIE SIMMONS DTD 11/22/94 |
| 12 | 11/22/94 | # SEROLOGICAL RECORDS FROM WV STATE POLICE |
| 13 | 04/13/95 | # NOT OF HRG W/COS; PETITIONER'S MOT FOR PROD W/COS |
| 14 | 05/01/95 | # NOT OF DEPO W/COS |
| 15 | 05/01/95 | # LET FR LONNIE SIMMONS TO MARY BETH KERSHNER DTD 4/28/95 |
| 16 | 05/02/95 | O: PETITIONER'S MOT FOR PROD OF RECORDS GRT/MAC |
| 17 | 05/02/95 | # COS AS TO AMD NOT OF DEPO |
| 18 | 05/03/95 | # SUBP & 1 CPY FOR P BY LONNIE SIMMONS, ATTY; NO CHG |
| 19 | 05/12/95 | # DEPO SUBP W/RET (5/11/95 PER) AS TO ROBERT MURPHY |
| 20 | 07/07/95 | # AFPDVT, RFPDVT W/COS |
| 21 | 08/14/95 | * PETITIONER'S SUPP BRIEF W/COS & W/EXH |
| 22 | 08/22/95 | # PETITIONER'S SUPP ISSUE CK PYABLE TO GARRETT REPT SERV IN AMT |
| 23 | 08/22/95 | $196 W/INVOICE-MAC S8/17/95 |
| 24 | 08/22/95 | .O: PUBLIC DEF SERV ISSUE CK PYABLE TO GARRETT REPT SERV IN AMT |
| 25 | 08/22/95 | $226.25 W/INVOICE-MAC S8/17/95 |
| 26 | 09/12/95 | # NOT OF HRG W/COS |
| 27 | 09/13/95 | *O: PET TO BE TRANSP TO CT ON 9/19/95/MAC (S/9/12) |
| 28 | 09/13/95 | *NDJ; 9/12/95; CCM L. SIMMONS & M. KERSHNER BY J RITZ |
| 29 | 09/14/95 | # ANS OF RESPONDENT W/COS |
| 30 | 10/23/95 | O: PD OFFICE TO ISSUE CK TO GARRETT REPORTING SERVICES IN AMT |
| 31 | 10/23/95 | # OF $42.25/MAC |
| 32 | 10/23/95 | *O: PETITIONER TO ISSUE CK TO CBR LAB IN AMT OF $6,812.17/MAC |
| 33 | 12/13/95 | # ND; CCM; 12/13/95; 12/8/95; L. SIMMONS; BY CE |
| 34 | 12/13/95 | # ND; CCD; 12/11/95; 12/8/95; M. KERSHNER; BY CE |
| 35 | 12/14/95 | *O: TO PAY DIR EXP IN AMT OF $2,362.17/MAC (S/12/13) |
| 36 | 12/14/95 | *NDJ; 12/13/95; CC L. SIMMONS BY SE |
| 37 | 06/04/96 | # LET FR MARY BETH KERSHNER TO JUDGE MACQUEEN DTD 6/4/96 |
| 38 | 06/14/96 | # NOT OF STATUS CONF W/COS |
| 39 | 06/14/96 | # PETITIONER'S MOT FOR PROD W/COS |
| 40 | 06/24/96 | # AMD NOT OF STATUS CONF & NOT OF HRG W/COS |
| 41 | 07/23/96 | *O: APPR PYMT OF DIR EXP TO LESA R. SMITH IN AMT OF $1402.84/MAC |
| 42 | 07/23/96 | EXHIBITS |
| 43 | 09/17/96 | # OPPOS TO PET FOR WRIT OF HABEAS CORPUS W/COS |
| 44 | 09/27/96 | # SUPP ARGUMENT IN OPPOS TO PET W/COS |
| 45 | 10/02/96 | # PETITIONER'S RESP TO MEMO IN OPPOS TO PET FOR WRIT OF |
| 46 | 10/02/96 | # HABEAS CORPUS W/COS |
| 47 | 01/07/97 | ## NOT OF STATUS CONF W/COS |
| 48 | 01/10/97 | @LET FR CNSL TO JUDGE; BLACK NOTEBOOK OF EXHIBITS |
| 49 | 01/10/97 | @P: RESP TO MEMO IN OPPOSITION TO PETITION FOR WRIT OF HC |
| 50 | 02/03/97 | # COPY OF PETITIONER'S SUPP BRIEF W/EXH & COS |
| 51 | 05/29/98 | # PETITIONER'S MOT FOR ACCESS TO FRED ZAIN SPECIAL GRAND JURY |
| 52 | 05/29/98 | # TRANS W/COS |
| 53 | 09/10/98 | >O: REQ FOR NEW TR DENIED/MAC |
| 54 | 09/10/98 | >ND; 9/10/98; CC L. SIMMONS, M. KERSHNER, BY GS |
| 55 | 09/21/98 | # NOT OF HRG W/COS |
| 56 | 09/21/98 | # PETITIONER'S MOT TO ALTER OR AMD O & TO RECONSID W/COS |
| 57 | 10/21/98 | <O: PET TO BE TRANSPORTED FR MT OLIVE/STUCKY FOR MAC/STUCKY |
| 58 | 10/26/98 | >ND; 10/21/98; CC CPT LONG, L.SIMMONS, SCRJ, APA, MT. OL, BY JT |
| 59 | 11/06/98 | # NOT OF CHANGE OF ADDRESS W/COS |

```
60  11/27/98  #  PETITIONER'S SUPP TO RULE 59 MOT W/COS
61  01/12/99  <O: PUB DEF'S OFFICE TO ISS A CK IN THE AMT OF $881.00 TO
62            SEROLOGICAL RESEARCH/MAC
63  02/24/99  NOT OF STAUS CONF W/COS
64  07/15/99  #  PETITIONER'S SUPP TO MOT TO ALTER OR AMD O & TO RECONSID
65  07/15/99  #  W/EXH & COS
66  12/02/99  #  COV LET; MOT FOR LEAVE TO F; PETITIONER'S ADDTL SUPP TO
67  12/02/99  #  RULE 59 MOT TO ALTER OR AMD O, TO CORRECT FACTUAL & LEGAL
68  12/02/99  #  ERRORS & TO RECONSID LEGAL CONCLUSIONS W/EXH'S & COS
69  05/18/00  #  NOT W/COS
70  06/13/00  #  NOT OF STATUS CONF W/COS
71  10/13/00  #  NOT OF HRG; PETITIONER'S MOT FOR ENTRY OF O & CONCLUSIONS OF
72  10/13/00  #  LAW W/COS;
73  10/17/00  #  NOT OF HRG W/COS;
```

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III.,

     Petitioner,

    VS.                      WVSCA DOCKET NO:_____.
                                    Underlying Civil Case No. 94-MISC-663.

KANAWHA COUNTY CIRCUIT COURT,
13TH JUDICIAL CIRCUIT,

     Respondent.

## BRIEF IN SUPPORT OF PETITION
## FOR A WRIT OF MANDAMUS

Comes now, JOHN MOSS, III., (hereinafter the petitioner) by pro se and respectfully presents unto this Honorable Court his Brief in Support and avers, as follows:

Petitioner contends West Virginia Constitutional Article 3, Section 17, provides that "Justice shall be administered without......delay." Similary, Canon 3B (8) of the Code of Judicial Conduct requires that "A Judge shall dispose of all judicial matters promptly, efficiently, and fairly." Thus he has presented viable grounds for post conviction relief pursuant to W.Va. Codes § 53-1-2, and § 53-1-3 as stated within his mandamus petition.

Petitioner maintains he has a legal right to a timely decision in this case, even an appeal thereof if the relief requested is essentially denied and due process of law. He also argues he has presented viable grounds for relief and the respondent's denial in abiding to the rules of the Court violates all his Due Process Rights under Article 3, Section 17 of the West Virginia Constitution and Constitutional Amendment 14 of the United States Constitution. Mandamus under this section, implemented by W.Va. Code § 51-1-3, requires the lower court to perform legally any administrative act

required by a petitioner who shows a clear legal right to the relief which he seeks.   Further, the Court has a mandatory duty to perform the act. State ex rel. Granes v. Handly, 150 W.Va. 468, 147 S.E.2d 284 (1966).   He claims the WVSCA has complete power to make a decision upon the issues presented in said petition and he cites in his arguments that in cases of Habeas Corpus, Mandamus and Prohibition which are instituted under the original jurisdiction of the WVSCA as provided in this section, the Court will not try cases in piecemeal and it becomes necessary for the Court in such an original proceeding to ascertain initially whether your petitioner's proceeding upon final submission for decision presents only an issue or issues of law. See Board of Trustees of Policemen's Pension and Relief Fund v. City of Huntington, 142 W.Va. 217, 96 S.E.2d 225 (1956); and Wiley v. State Road Commission, 148 W.Va. 76, 133 S.E.2d 113 (1963).

Petitioner further proffers he has a legal right to request the WVSCA to Order the respondent "Kanawha County Circuit Court" to finally enter an Order upon his Rule 59(E) Motion and subsequent motions pending before the Court. He also claims, Section 17 of Article III of the West Virginia Constitution provides that "justice shall be administered without sale, denial or delay." Further, the WVSCA has also pointed out that "judges have a affirmative duty to render timely decisions on matters properly submitted within a reasonable time following their submission." Syllabus, Pt. 1, in part, State ex rel. Patterson v. Aldredge, 173 W.Va. 446, 317 S.E.2d 805 (1984). Moreover, Rule 16.12 of the West Virginia Trial Court Rules provides that a "final judgment or decree shall be entered in extraordinary proceedings within one month of submission."

In applying the aforementioned provisions, the WVSCA held in Syllabus Pt. 2 of State ex rel. Patterson v. Aldredge, supra: "Mandamus will not lie

2

to direct the manner in which a trial court should exercise its discretion with regard to an act either judicial or quasi-judicial, but a trial court, or other inferior tribunal, may be compelled to act in a case it unreasonably neglects or refuses to do so." State ex rel. Cackowska v. Knapp, 147 W.Va. 699, 130 S.E.2d 204 (1963). Wherefore, the above legal citations proves the respondent has unreasonably neglected petitioner's case based upon the date his Rule 59(E) Motion was filed on September 21, 1998, the enactment of the 1996 AEDPA, and the failure to act in this case is unreasonable. Thus, he argues due to the languishing by the respondent to enter an Order the WVSCA should immediately grant the relief requested.

Petitioner finally contends that only this Honorable Court can compel the respondent to take action in his case since respondent has failed in its duties to obey the law by acting in bad faith. This contention is clearly substantiated by the aforementioned petition. So for these reasons, facts, averments and contentions made herein the petitioner prays for the issuance of a writ of mandamus directed against the respondent returnable before this Court, commanding and directing the said respondent to show cause, if any it can, why a peremptory writ of prohibition should not be awarded against the Court as prayed for by the petitioner in this petition unless sooner mooted by the appropriate relief being sought deemed just and fair in the instant case at bar.


Respectfully submitted,

John Moss, III.

3

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III.,

      Petitioner,

    VS.                    WVSCA DOCKET NO:_____.
                                   Underlying Civil Case No. 94—MISC—663.

KANAWHA COUNTY CIRCUIT COURT,
13TH JUDICIAL CIRCUIT,

      Respondent.

## MOTION TO PROCEED IN FORMA PAUPERIS
### AND AFFIDAVIT IN SUPPORT THEREOF

Now comes, JOHN MOSS, III., (hereinafter the petitioner), In Propria Persona, and requests the Honorable Supreme Court of Appeals of West Virginia to grant him leave to file his pro se petition for a writ of mandamus without payment of costs and to proceed In Forma Pauperis.

In support of this motion he reiterates the State of West Virginia has previously found him to be indigent and that his continuous incarceration has prevented his financial status to improve. Therefore, the petitioner, being first duly sworn under oath, deposes and says that the facts and allegations therein are true, except insofar as they are therin stated to be upon information and belief, he believes them to be true as subscribed to the above and does state that the information therein is correct to the best of his knowledge and in support thereof he swears to the following:

1. I am the petitioner in the above styled case who prepared the aforementioned petition and motion;

2. I am unable, because of my poverty, to pay the cost and filing fees required by the Court in this case;

3. I am unable to give security for it;

4. I do believe in good faith that I am entitled to the relief sought;

5. I have no cash on hand or money in any saving or checking account to pay the filing fees or court costs;

6. I do not own any house, land, auto or truck, mobile home, stocks, bonds, notes or other valuable property.

Wherefore, your petitioner moves the Court to grant said motion to allow him to proceed in Forma Pauperis.


_John Moss III_

John Moss, III.

STATE OF WEST VIRGINIA
COUNTY OF FAYETTE, TO WIT:

Taken, sworn and subscribed to before me this 1st day of July 2001.


_Sheila Poore_

**NOTARY PUBLIC**

My Commission Expires: Dec. 24, 2006

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHEILA POORE
MOUNT OLIVE CORRECTIONAL CENTER
1 MOUNTAINSIDE WAY
MOUNT OLIVE, WV 25185
My Commission Expires December 24, 2006

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2 nd day of July, 2001, he did mail to the Supreme Court of Appeals of West Virginia via United States Postal Service a true and original with nine (9) copies and a additional copy to the below named respondent, his petition for a writ of mandamus, brief in support thereof and motion to proceed in forma pauperis:

Kanawha County Circuit Court
13th Judicial Circuit
Kanawha County Judicial Annex
111 Court Street
Charleston, WV 25301

FILED
IN KANAWHA CIRCUIT COURT
CLERKS OFFICE
JUL 0 6 2001

John Moss, III.

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III.,

     Petitioner,

v.

     Civil Case No. 94-MISC-663.

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

     Respondent.

## MOTION TO PROCEED IN FORMA PAUPERIS
## AND AFFIDAVIT IN SUPPORT THEREOF

Now comes, JOHN MOSS, III., (hereinafter the petitioner), In Propria Persona, and requests the Honorable Circuit Court of Kanawha County to grant him leave to file his pro se motions without payment of costs and to proceed In Forma Pauperis.

In support of this motion he reiterates the State of West Virginia has previously found him to be indigent and that his continuous incarceration has prevented his financial status to improve. Therefore, the petitioner, being first duly sworn under oath, deposes and says that the facts and allegations therein are true, except insofar as they are therein stated to be upon information and belief, he believes them to be true as subscribed to the above and does state that the information therein is correct to the best of his knowledge and in support thereof he swears to the following:

1. I am the petitioner in the above styled case who prepared this pro se motion;

2. I am unable, because of my poverty, to pay the cost and filing fees required by the Court in this case;

3. I am unable to give security for it;



4. I do believe in good faith that I am entitled to the relief sought;

5. I have no cash on hand or money in any saving or checking account to pay the filing fees or court costs;

6. I do not own any house, land, auto or truck, mobile home, stocks, bonds, notes or other valuable property.

Wherefore, your petitioner moves the Court to grant said motion to allow him to proceed in Forma Pauperis.

_John Moss, III._
John Moss, III.

STATE OF WEST VIRGINIA
COUNTY OF FAYETTE, TO WIT:

Taken, sworn and subscribed to before me this ___ day of July 2001.

_Sheila Poore_
**NOTARY PUBLIC**

My Commission Expires: _Dec. 24, 2006_

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHEILA POORE
MOUNT OLIVE CORRECTIONAL CENTER
1 MOUNTAINSIDE WAY
MOUNT OLIVE, WV 25185
My Commission Expires December 24, 2006

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the _____ day of July, 2001, he did mail to the Kanawha County Circuit Court via United States Postal Service a true and original with two (2) copies and a additional copy to the below named respondent, his Motion for Status Conference Hearing Transcript held on July 7, 2001, and Motion to Proceed In Forma Pauperis:

Mr. Mike Clifford, Esq.,
Prosecuting Attorney
13th Judicial Circuit
Kanawha County Judicial Annex
111 Court Street
Charleston, WV 25301


John Moss, III.

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III.,

      Petitioner,

v.

                               Civil Case No. 94-MISC-663.

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

      Respondent.

## MOTION FOR STATUS CONFERENCE HEARING
## TRANSCRIPT HELD ON JULY 7, 2000

Now comes, JOHN MOSS, III., (hereinafter the petitioner), In Propria Persona and requests the Circuit Court of Kanawha County to entertain this motion pursuant to the provisions of Rules 2, 3 and 16 of the West Virginia Rules of Appellate Procedure, for an **Order**, pursuant to the below-cited law, directing the official court reporter(s) to furnish himself and counsel with a transcript, at the expense of the State of West Virginia, of the relevant proceedings as are designated to be transcribed in this motion. In support hereof, petitioner states the following;

The petitoner has filed a financial affidavit with the Circuit Clerk and/or the Court Administrator, prior to his criminal trial and this Court has previously found him to be indigent. His continued incarceration has and his resources and income have not changed since the filing of his affidavit of indigency. The petitioner cannot submit an Appellate Transcript Request to the appropriate parties until this Court issues an Order upon his Rule 59(E) Motion and an Order reinstating his appeal time rights so he may file a petition for appeal to the West Virginia Supreme Court of Appeals challenging this Court's order dismissing his petition for a writ of habeas corpus in the above styled case if the Rule 59(E) Order denies the relief requested;

The petitioner argues "An indigent petitioner/defendant who has been convicted of a crime has a right to appeal his felony conviction and he is consitutionally entitled to a copy of the transcript of his trial without cost to him. This shall include all transcripts of habeas corpus proceedings and conferences in his case. See Rhodes v. Leverette, 239 S.E.2d 136 (W.Va. 1977); Call v. McKenzie, 220 S.E.2d 665 (W.Va. 1975); Varney v. Supt., West Virginia Penitentiary, 264 D.E.2d 472 (W.Va. 1980); Quoted and Applied in State ex rel. Gary v. Warden, 288 S.E.2d 176 (W.Va. 1982); State ex rel. Wells v. Warmuth, 177 W.Va. 574, 355 S.E.2d 363 (1987); State ex rel. Kisner v. Fox, 267 S.E.2d 451 (W.Va. 1980);

Further, the petitioner contends on September 10, 1998, Judge Andrew MacQueen entered a Final Order dismissing his habeas petition and thus denying him a new trial. Also the Court never addressed the original grounds within the petition for a writ of habeas corpus, and;

On September 21, 1998, petitioner's counsel filed a Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On November 25, 1998, petitioner's counsel filed a Supplement to the Rule 59 Motion to Alter, Amend Order, to Correct Factual and Legal Errors, and Reconsider Legal Conclusions;

On July, 13, 1999, petitioner's counsel filed a Supplemental Motion to Alter and Amend the already pending Rule 59(E) Motion;

On December 1, 1999, petitioner proceeding pro se filed Additional Supplement to the Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On July 7, 2000, allegedly Judge Andrew MacQueen verbally dismissed the Rule 59(E) Motion from the bench. However, petitioner and his counsel have

in fact never received a Court Order stating why said motion was dismissed. Nor does the Court's Docket Sheet show such action of dismissal by the judge. See Exhibit A, attached hereto **and this is the hearing transcript petitioner is requesting;**

On October 12, 2000, petitioner's counsel filed a Motion for Entry of Order With Detailed Findings of Fact and Conclusions of Law.  To date the Court has failed to enter and provide any Court Order addressing these filing by both petitioner's counsel and himself pro se.  Furthermore, during the course of said actions there have been several status conferences, hearings and legal communications from petitioner's counsel and the Kanawha County prosecuting attorney to Judge Andrew MacQueen.  Said conferences and communications have attempted to move the Court to enter an Order upon said motions without success;

On January 1, 2001, Judge Andrew MacQueen retired from the bench and petitioner's case was left to be re-assigned to another judge within the Thirteenth (13th) Judicial Circuit;

Sometime in June 2001, according to petitioner's counsel his case had been assigned to Judge Duke Bloom who stated he would not enter a Order in relation to the Rule 59(E) Motion and other motions until he received a signed Recommended Order from Judge Andrew MacQueen, (Ret.);

Therefore, petitioner maintains he needs a copy of the Status Conference proceeding to essentially assist in compelling this Court to enter an Order directly stating why the Rule 59(E) Motion was dismissed, and for purposes of preparing and filing a final petition for appeal (habeas appeal) upon the West Virginia Supreme Court of Appeals;

WHEREFORE, the petitioner respectfully requests this Court for the relief requested in the premises herein, as well as any other relief which

3

this Court deems appropriate, just and fair in the instant case at bar.

Respectfully submitted,

John Moss, III.

IN THE CIRCUIT COURT OF KANAWHA COUNTY

WEST VIRGINIA


JOHN MOSS, III,

       Petitioner

vs.                         Action No. 94-MISC-663

GEORGE TRENT, etc., et als,

       Respondents


BEFORE:   Hon. Louis H. Bloom


Motion for Writ of Habeas Corpus

June 10, 2001


Connie L. Cooke

Official Reporter

2

APPEARANCES

FOR THE STATE:

Michele Drummond
Asst. Prosecuting Attorney
Kanawha County Judicial Bldg.
111 Court Street, 3rd Floor
Charleston, WV    25301


FOR THE DEFENDANT:

Lonnie R. Simmons
Attorney at Law
604 Virginia Street, E.
Charleston, WV    25301

3

1          BE IT REMEMBERED, that on Monday, the 10th

2    day of June, 2002, during the May 2002 Term of said

3    Court, in the matter of JOHN MOSS, III, Petitioner,

4    versus GEORGE TRENT, etc., et als, Respondents, upon

5    Action No. 94-MISC-663, as stated in the caption

6    hereto, upon a habeas corpus proceeding, the following

7    transpired:

8

9          THE COURT:      This is a habeas matter.

10   We have Mr. Simmons and Ms. Drummond present.

11               Ms. Drummond, you filed a motion?

12         MS. DRUMMOND:    Yes, your Honor.  The

13   motion was very brief.  My request is simply to ask the

14   Court's permission to allow the State to re-open the

15   matter in this Writ of Habeas Corpus.  I have recently

16   been assigned to it.

17            The matter was handled by two of

18   the assistants in our office, one who is no longer

19   there.

20            Upon reflection of the file and

21   upon meeting with various members of the West Virginia

22   Department of Public Safety forensics lab, I am

23   personally of the opinion that evidence which should

24   have been brought to the Court's attention and made

4

1   part of the record was not, that there was a failure to

2   do so.

3            I believe that the equities of

4   justice would permit the Court to do this, and I think

5   it is important in this Court coming to the proper

6   opinion in this matter, and allowing the record to

7   blossom a little bit.  There is a Writ, assuming it is

8   not granted here, that will be forwarded on to the

9   Supreme Court.  The Supreme has a better reflection of

10  what the evidence in this matter was.

11            THE COURT:        What additional activity

12  would you seek?

13            MS. DRUMMOND:      My intention would be to

14  call at least two, if not perhaps a third witness.

15  They are Brett Meyers, of the lab in question --

16  specifically, I don't think the record was fully

17  developed, and depositions of Doctor Bing and Trooper

18  Murphy, I believe it was, as to some of the blood

19  evidence.  It's just a general type of inquiry.

20            THE COURT:        And you would do that by

21  way of further depositions?

22            MS. DRUMMOND:      Or calling them into

23  Court, whatever would be best.

24            THE COURT:        Alright.  Mr. Simmons ...

5

1       MR. SIMMONS:       Judge, on behalf of the

2    petitioner, we would object to reopening.  This case

3    has been pending for -- I think it has a '94 number on

4    it.  It's not this Court's fault though, and I don't

5    mean to imply that at all.

6                My client is anxious to get,

7    particularly the Fred Zain issue, up to the Supreme

8    Court.  I think the respondent in the case has had

9    ample opportunity to develop the record.

10               My recollection of what is in the

11   record, all of the lab notes from the testing in the

12   record, Mr. -- Trooper Murphy and Trooper Zain were the

13   ones who performed the testing in the case.  Murphy has

14   been deposed, and Zain has not.

15               We just object.  We think that the

16   respondent has had ample time.  There were deadlines

17   that they could have met.  And we don't believe that

18   the respondent has demonstrated the need to reopen the

19   case.  It has continued this long, and I just believe

20   that it just further prejudices my client with more

21   delay.

22       THE COURT:        Alright.  I am going to

23   -- this case is one that has been around for some time.

24   However, after looking at all of the equities as to

6

everybody involved in this matter require that the
evidence be fully developed.

            Ms. Drummond is apparently new to
the case and sees some deficiencies.  I want to give
her the opportunity, and for the Court to be fully
informed of all of the facts upon which a proper and
just decision might be made.

            Ms. Drummond, do you think you can
have your evidence concluded in the next sixty (60)
days?

          MS. DRUMMOND:     Yes, your Honor.

          THE COURT:     Alright.  Thereafter --
have both parties briefed this matter fully?

          MR. SIMMONS:     The petitioner has.

          MS. DRUMMOND:     No, your Honor.  The
opinion that was out, that was developed in the record,
I would not be able to brief it from the evidence.

          THE COURT:     Alright.  Well, why don't
we conclude all testimony in this matter by way of
deposition within sixty (60) days.  I'll then give you
forty-five (45) days thereafter to file your response
memorandum, and then I'll give Mr. Simmons fifteen (15)
days after that.

            Does that give you enough time?

7

1          MR. SIMMONS:        That would be fine.

2          MS. DRUMMOND:        That's fine, your Honor.

3          THE COURT:          Alright.  And then, you

4   all could get a date after that, and Sheila will set it

5   down for hearing.

6              Thank you all very much.

7

8          WHEREUPON, the proceedings were concluded.

8

1   STATE OF WEST VIRGINIA,

2   COUNTY OF KANAWHA, to-wit:

3

4           I, Connie L. Cooke, Official Reporter for the

5   Circuit Court of Kanawha County, do hereby certify that

6   the foregoing is a true and correct transcript of the

7   proceedings had and reported in the above captioned

8   matter, as reported by me and transcribed into the

9   English language.

10          Given under my hand this ___1st___ day of

11  _July_____, 2002.

12

13

14

15

16  _____

17              Official Reporter

18

19

20

21

22

23

24

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

               Petitioner,

v.

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

               Respondent.

01 AUG -2 AM 9: 16

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

Civil Action No. 94-MISC-663
Honorable A. Andrew MacQueen

## NOTICE OF HEARING

    **PLEASE TAKE NOTICE** that a status conference hearing will be held on Thursday, August 23, 2001, at 11:00 a.m., regarding the above-styled case, before the Honorable Louis H. Bloom, Judge of the Circuit Court of Kanawha County, in his courtroom.  Previously, this case was briefed and fully argued before the Honorable Judge A. Andrew MacQueen.  There is an issue in this case that has still not been resolved.  The purpose of this hearing is to advise Judge Bloom of the issues pending and for Judge Bloom to make a determination as to whether or not this matter should be reargued before him at some point in the future.

                               **JOHN MOSS, III,** Petitioner
                               By Counsel

Lonnie C. Simmons
West Virginia State Bar No. 3406
**FRAGALE & SIMMONS**
604 Virginia Street, East - Suite 200
P. O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that true copies of the foregoing **NOTICE**

**OF HEARING** was served upon counsel for Respondent, through the regular course of the United

States mail, postage prepaid, this 1st day of August, 2001, addressed as follows:

> Michelle Drummond
> Assistant Prosecuting Attorney
> Judicial Annex Building
> 111 Court Street
> Charleston, West Virginia 25301

Lonnie C. Simmons, WV State Bar ID No. 3406

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS III

v.                                              CASE NO.    94-MISC-663

GEORGE TRENT, Warden of the
        West Virginia State Penitentiary

## ORDER

On the 21st day of August, 2001, came the State of West Virginia by K. Michele Drummond, Assistant Prosecuting Attorney in and for Kanawha County, West Virginia, and represented unto the Court that the above-named defendant is set for a hearing in the Circuit Court of Kanawha County, West Virginia on the 23rd day of August, 2001, at 11:00 o'clock a.m., and that the said **JOHN MOSS III** is now incarcerated in the Mount Olive Correctional Complex, Fayette County, Mount Olive, West Virginia, and moved the Court to **ORDER** the Transportation Division of the Mount Olive Correctional Complex to transport the said **JOHN MOSS III** from the Mount Olive Correctional Complex, Fayette County, Mount Olive, West Virginia, to Circuit Court, Court Room No. 5-C, Kanawha County Judicial Annex, Charleston, West Virginia, on the 23rd day of August, 2001, at 11:00 o'clock a.m.

The Court after mature consideration of said motion does hereby **ORDER** that the Transportation Division of the Mount Olive Correctional Complex transport the said **JOHN MOSS III** from the Mount Olive Correctional Complex, Fayette County, Mount Olive, West Virginia, to Circuit Court, Court Room No. 5-C, Kanawha County Judicial Annex, Charleston, West Virginia, and that the said **JOHN MOSS III** be forthwith returned to the Mount Olive Correctional Center,

Fayette County, Mount Olive, West Virginia, upon completion of said hearing.

The Clerk is directed to send a certified copy of this **ORDER** to all counsel of record and

Mount Olive Correctional Complex.

ENTER THIS 22ND day of August , 2001

_____,
JUDGE

PRESENTED BY:

K. MICHELE DRUMMOND, Assistant
Prosecuting Attorney in and for
Kanawha County, West Virginia
111 Court Street
Charleston, WV 25301
WV State Bar ID No. 4931

3CC Mt. Olive, PA,
8-22-01 /—s

RECORDED

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

*John Moss, III*_____, Plaintiff,

CIVIL ACTION NO. _94-MISC-663_

v.

*Geo. Trent, Warden*_____, Defendant.

CRIMINAL ACTION NO. _____

# - NOTATION OF DELIVERY -

A (certified) copy of the following:

_O: 8-22-01 / Blo_____

_____

(   ) was hand delivered to:    (X) faxed:

(X) was mailed to:      (✓) placed in Folder:

_Lonnie C. Simmons_   _Mt. Olive_   _PA_

_604 Va St E_    _____   _____

_Chas 25301_    _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

on this _22nd_ day of _Aug_____, 2001.

_M S._

(signature) - Deputy Clerk

_79-81_

WV Supreme Court of Appeals

## APPELLATE TRANSCRIPT REQUF

### READ INSTRUCTIONS ON BACK OF PAGE BEFORE COMPLETING

Case Style _State of WV vs. John Moss, III_

Civil/Criminal Action No. _94-MISC-663_  County _Kanawha_

Date of Judgment or Order from which Appeal is Sought _01 AUG 31 PM 3:53_

Name of Court Reporter/ERO _Connie L. Cooke_

Address of Court Reporter _____

## TO BE COMPLETED BY PARTY REQUESTING TRANSCRIPT

*Do Not Submit Form until Financial Arrangements Have Been Made with the Court Reporter. Failure to Mail this Form to Appropriate Persons Within Thirty (30) Days of the Judgment Being Appealed May Result in Denial of Motions for Extension of the Appeal Period or Dismissal of the Appeal for Want of Prosecution. A Separate Transcript Request must Be Completed for Each Court Reporter from Whom a Transcript Is Requested.*

**A.** This constitutes a request for a transcript of the following proceedings [check appropriate box(es)].

| | PROCEEDING | HEARING DATE(S) |
|---|---|---|
| [ ] | Voir Dire | |
| [ ] | Opening Statement (Plaintiff) | |
| [ ] | Opening Statement (Defendant) | |
| [ ] | Closing Argument (Plaintiff) | |
| [ ] | Closing Argument (Defendant) | |
| [ ] | Opinion of Court | |
| [ ] | Jury Instructions | |
| [ ] | Sentencing | |
| [ ] | Bail Hearing | |
| [ ] | Pre-Trial Proceedings (specify) | |
| | | |
| | | |
| | | |
| [ ] | Testimony (specify) | |
| | | |
| [ x ] | Other (specify) | 7/7/00    Status Conference |
| | | 12/1/00    Reconsideration of Decision |

*TOTAL ESTIMATED PAGES* _____

**NOTE:** *Failure to Specify in Adequate Detail Those Proceedings to Be Transcribed Is Grounds for Denial of Extensions of the Appeal Period or Dismissal of an Appeal.*

**B.** I certify that I have contacted the court reporter and satisfactory financial arrangements for payment of the transcript have been made.

[ ] Private funds. (Deposit of $ _____ enclosed with court reporter's copy. Check No. _____).

[x] **Petitioner has filed an affidavit of indigency with the circuit clerk's office [copy attached].

[ ] Advance payment waived by court reporter.

[ ] Other _____.

** Proof of indigency **must** be attached to all court reporter invoices submitted to Supreme Court (including child abuse/neglect cases). Proof of indigency can be **affidavit of indigency** or **order appointing counsel.**

Signature _____  Typed Name _Lonnie C. Simmons_

Address _____

Telephone No. _____  Date mailed to court reporter _August 27, 01_

*White* - to W. Va. Supreme Court of Appeals, State Capitol Building, Charleston, WV 25305
*Green* - to respondent; *Canary* - to the circuit clerk; *Pink* - to court reporter; *Goldenrod* - to be retained by petitioner

IN THE CIRCUIT COURT OF KANAWHA COUNTY

WEST VIRGINIA

01 AUG 31 PM 2:33

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

STATE OF WEST VIRGINIA

vs.                                    Action No. 94-MISC-663

JOHN MOSS, III

BEFORE:    Hon. A. Andrew MacQueen

Status Conference

July 7, 2000

Connie L. Cooke

Official Reporter



2

APPEARANCES


FOR THE DEPARTMENT OF CORRECTIONS:


Mary Beth Kershner
Asst. Prosecuting Attorney
Kanawha County Judicial Building
111 Court Street, 3rd Floor
Charleston, WV   25301


FOR THE DEFENDANT:


The Defendant, in person


Lonnie C. Simmons
Attorney at Law
604 Virginia Street, E., Suite 200
Charleston, WV   25301

3

1    BE IT REMEMBERED, that on Friday, the 7th day

2    of July, 2000, during the May 2000 Term of said Court,

3    in the matter of the State of West Virginia versus John

4    Moss, III, upon Action No. 94-MISC-663, as stated in

5    the caption hereto, the following transpired:

6

7        THE COURT:    I had hoped to redraft an

8    opinion.  My decision, my basic decision, is that

9    obviously the most glaring error was my conclusion --

10   and you know, I'm not sure where I got the idea that

11   there had been an order that sent some materials off

12   someplace.  I imagine that, and that's the best I can

13   say.

14        I still think, and my belief is

15   based on most of the principles I articulated in my

16   opinion, but primarily the fact that Zain was a

17   subordinate; that the evidence that he and Murphy

18   uncovered was essentially exculpatory to the original

19   defendant, but that takes this out of the realm of the

20   absolute rule that if Zain hadn't touched anything,

21   that that would have tainted the prosecution, and I'm

4

1   going to let the conviction stand.  You can see what

2   the Supreme Court has to say about it.

3          MR. SIMMONS:   Judge, would you want us to

4   just draft a short order to that effect?

5          THE COURT:    That's all it has to say; yes.

6          MR. SIMMONS:   The main legal issue was that

7   the last decision is a two part test, and you have done

8   one part of the test but not the second part.  That was

9   the main legal reason for the motion.

10         THE COURT:    I'm sorry.

11         MR. SIMMONS:   And the second part of the

12  test, I think, is a lot harder to do, which was

13  essentially even if the Court found, as you did, that

14  the evidence is sufficient to support the conviction

15  without Fred Zain's testimony, which is what you found,

16  the second part of the test is was John Moss prejudiced

17  by Fred Zain's testing and testimony, and that was the

18  part that had not been addressed with your written

19  order.

20         THE COURT:    Just out of curiosity -- I'm

21  not sure that they're -- how are those severable, those

22  two issues, in this particular case?

23         MR. SIMMONS:   I don't know how they're

24  severable.  That is simply -- I mean, that is just the

5

1    way that the Supreme Court set it up in this Syllabus

2    point of the lab decision, and they said, well, when

3    you're looking at it, you first look at, was there

4    sufficient evidence without Fred, and you did that.

5    And you said, yeah, there was.

6              THE COURT:    And I don't believe it was

7    pertinent.

8              MR. SIMMONS:    Okay.

9                   Thank you, Judge.

10

11             WHEREUPON, the proceedings were concluded.

12

13

14

15

16

17

18

19

20

21

22

23

24

6

1    STATE OF WEST VIRGINIA,

2    COUNTY OF KANAWHA, to-wit:

3

4         I, Connie L. Cooke, Official Reporter for the

5    Circuit Court of Kanawha County, do hereby certify that

6    the foregoing is a true and correct transcript of the

7    proceedings had and reported in the above captioned

8    matter and transcribed into the English language.

9         Given under my hand this *29th* day of

10   *August*        , 2001.

11

12

13

14                        *Connie L. Cooke*

15                   Official Reporter

16

17

18

19

20

21

22

23

24

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III,
　　　　Petitioner,

VS.

CIVIL CASE NO. 94-MISC-663.
CRIMINAL CASE NO: 82-F-221.

STATE OF WEST VIRGINIA
GEORGE TRENT, WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX,
　　　　Respondent.

INDIGENT PETITIONER'S MOTION FOR
APPOINTMENT OF PUBLICLY FUNDED CO-COUNSEL

### I. JURISDICTION

Comes now, JOHN MOSS, III, (hereinafter the petitioner) by pro se, and requests, Hon. Louis H. Bloom, Judge, to entertain said motion in the above styled case in accordance with including but not limited to W.Va. Codes § 29-21-16(e) 51-11-8, 53-1-2, 53-1-3, and 53-4A-1. Petitioner further avers he is currently pursuing an essential preparation and filing of a final petition for appeal of the denial of his petition for a writ of habeas corpus. Thus, he cannot evaluate and present constitutional errors without the requested assistance, and he presents the following statement of facts, arguments of law and requested relief in support of said motion

### II. STATEMENT OF FACTS

On April 30, 1984, petitioner was convicted by a jury of first degree murder in Kanawha County Circuit Court Criminal Case No. CR-82-F-221;

On December 19, 1988, petitioner's petition for appeal was granted and the WVSCA reversed and remanded his criminal conviction in WVSCA Docket No. 17063;



On April 16  1990, petitioner received a re-trial and was subsequently convicted on April 24, 1990, of first degree murder in Kanawha County Circuit Court;

On March 12, 1991, petitioner s petition for appeal was refused in a 3-2 vote by the WVSCA;

On August 18, 1994, petitioner's counsel filed a petition for a writ of habeas corpus upon the Kanawha County Circuit Court which was assigned Civil Case No. 94-MISC-663;

On September 19, 1995, Judge Andrew MacQueen held a omnibus evidentiary hearing upon the petitioner's habeas petition;

On April 24, 1996, the Antiiterrorism and Effective Death Penalty Act (ADEPA) took effect and imposed  for the first time, a statutory limit of one year. See Brown v. Angelone, 15 F3d 370, 372 (4th Cir. 1998). Specifically, the West Virginia Districts Courts, both Northern and Southern, and the 4th Circuit allow a period of one year for a prisoner to file a federal habeas corpus petition after the date of enactment of the AEDPA where a petitioner's conviction became final prior to the enactment of the AEDPA. See Ferrell v. Duncil, No. 2:97cv79, 1998 U.S. Dist. LEXIS 6441, at *7-8 (N.D. W.Va. April 28, 1998); Tesack v. Trent, 22 F.Supp 2d 538, 539 (S.D. W.Va. 1998); Brown at 376;

On October 2  1996, petitioner filed his Response to the State's of West Virginia's Memorandum in Opposition to Petition for a Writ of Habeas Corpus;

On September 10, 1998, Judge Andrew MacQueen entered a Final Order dismissing petitioner's habeas petition and thus denying him a new trial Further, the Court never addressed the original grounds within the petition for a writ if habeas corpus;

On September 21, 1998, petitioner's counsel filed a Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On November 25, 1998, petitioner's counsel filed a Supplement to the Rule 59 Motion to Alter, Amend Order, to Correct Factual and Legal Errors, and Reconsider Legal Conclusions;

On July, 13, 1999, petitioner's counsel filed a Supplemental Motion to Alter and Amend the already pending Rule 59(E) Motion;

On December 1, 1999, petitioner filed pro se his Additional Supplement to the Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On October 12, 2000, petitioner's counsel filed a Motion for Entry of Order With Detailed Findings of Fact and Conclusions of Law. To date the respondent has failed to enter and provide any Court Order addressing these filing by both petitioner's counsel and himself pro se. Further, during the course of these actions there have been several status conferences, hearings and legal communications from petitioner's counsel and the Kanawha County prosecuting attorney's office to Judge MacQueen. Said conferences, hearings and communications have attempted to move the Court to enter an Order upon said motions without success;

On December 1, 2000, allegedly Judge Andrew MacQueen verbally dismissed the Rule 59(E) Motion from the bench. However, petitioner and his counsel have in fact never received an Order stating why said motion was dismissed;

On January 1, 2001, Judge Andrew MacQueen retired from the bench and petitioner's case was left to be assigned to another judge in the circuit;

Sometime in June 2001, according to petitioner's counsel his case had been assigned to, Hon. Louis H. Bloom, Judge., whom stated he would not enter

3

S10

a Order in relation to the Rule 59 Motion and other motions until he received a signed Recommended Order from Judge Andrew MacQueen, (Ret.);

On August 23, 2001, petitioner was transported to the bar of the Court where a Status Conference Hearing was held concerning the litigation of his case. During this hearing Judge Bloom ordered petitioner's counsel and the state prosecuting attorney to file respective briefs and recommended orders for the court to decide upon at a later date. However, the Court and counsel never addressed the issues surrounding petitioner's final appeal time rights pursuant to the West Virginia Rules of Civil and Appellate Procedure in this case;

Therefore, your petitioner argues due to the languishing by this Court and Counselor Simmons decision not to argue all meritorious grounds and issues involved in this case, he will need appointment of publicly funded co-counsel, or alternatively standby co-counsel, and expert witness expenditure to assist in discovering and presenting all viable grounds in post-conviction proceedings in his final state remedy or habeas appeal to the West Virginia Supreme Court of Appeals.

### III. ARGUMENT AND DISCUSSION OF LAW

The petitioner proffers he is entitled to appointment of publicly funded co-counsel, alternatively standby co-·counsel, and expert witness expenditure to assist him in post-·conviction proceedings pursuant to **State ex rel. Rojas v. Wilkes Cite as 455 S.E.2d 575 (W.Va. 1995)**. This argument is based upon the fact the monetary funds with which petitioner's family members retained private counsel of record, Lonnie C. Simmons, are irrelevant to petitioner's right as an indigent person to have necessary expert assistance provided at the state's expense pursuant to W.Va. Code § 29-21-16(e); Code, § 51-11-8 (Repealed). The WVSCA held in **Rojas** that the petitioner's family members

4

$S11$

have no obligation to finance the petitioner's defense, and any funds they provide have no effect of his status as personally indigent.

West Virginia Code § 29-21-16(e) (1992) sets forth the following factors which a trial court may consider when determining a defendant's eligibility for appointed counsel: (1) current income; (2) liquid assets; (3) fixed debts; (4) employment expenses; (5) age an health; (6) whether the person has attempted to obtain private legal representation; (7) the cost of obtaining private counsel; (8) whether bond has been posted; and (9) the consequences if legal representation is denied.

The petitioner argues his indigent status is not in dispute and public funds for expert witness legal assistance and publicly funded co-counsel are generally provided to an indigent upon a showing such assistance is essential to an adequate defense in post conviction proceedings. See syllabus point 2 of State ex rel. Foster v. Luff, 164 W.Va. 413, 264 S.E.2d 477 (1980) and Spain v. District Court of Tulsa County, 882 P.2d 79 (Okla.Crim.App.1994).

In petitioner's case he is clearly qualified as an indigent person, and will truly remain indigent, and he is entitled to public funds for expenses associated with his defense in his final appeal. Further, he argues without the appointment of co-counsel, authorization of expert witness expenditure or, alternatively, for appointment of publicly funded standby co-counsel he cannot properly represent himself, undertake the extensive investigative, discovery, and depositions needed in a fair resolution of all his meritorious claims in his final petition for appeal. He also contends several facts relevant to his post-conviction challenge including but not limited to his pro se grounds exist which must be raised. Thus, he will need the requested assistance to properly raise further constitutional violations because he is illiterate of the law in relation to all the specific legal appellate issues,

5/2

and the fact Counselor Simmons will not brief the court as requested or argue all the grounds raised. So based upon the fact the petitioner has very limited knowledge of the law he argues the requested relief in his case would be to the benefit of this Court, as well, as to himself pursuant to all the law and rules governing this proceeding.

Petitioner further states to this Court pursuant to Rule 7 of the rules governing post conviction habeas corpus proceedings in West Virginia that he needs co-counsel to advise him concerning the effects of Losh v. McKenzie upon his case and whether it is appropriate to waive and/or amend/supplement any grounds within said pending petition. So he requests co-counsel needs to be appointed for effective utilization of discovery procedures available under the West Virginia Rules of Civil Procedure and such appointment will serve the interests of judicial economy by allowing co-counsel to be familiar with the facts and issues of the case in assisting your petitioner.

Wherefore, petitioner asserts that the issues involved in this case are highly complex matters and he does not possess the adequate legal knowledge and/or skills to prepare a post-conviction defense, or to represent himself on the grounds retained counsel will not address; the issues involved in this case will require an investigation which he cannot do because of incarceration, the prison limits the hours he may have access to the law library due to unforeseen prison delays, power outages, lockdowns and the law materials contained in the prison law library are very limited in relation to all the constitutional issues.

## IV. REQUESTED RELIEF

Petitioner acknowledges the fact he has no constitutional legal right to select court appointed co-counsel of his choice but he respectfully requests the Court to appoint experienced co-counsel from or outside the State of West

5/3

Virginia and/or from the Kanawha County Public Defenders office based upon the foregoing issues of law and of his case, and he also requests the Court to grant an expert witness expenditure. Thus, he prays this Court promptly grant the relief requested or whatever relief it deems appropriate, just and fair in the instant case at bar.


Respectfully submitted,

John Moss, III

S 14

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III,
　　　　Petitioner,

VS.

CIVIL CASE NO: 94-MISC-663.
CRIMINAL CASE NO: 82-F-221.

STATE OF WEST VIRGINIA
GEORGE TRENT, WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX,
　　　　Respondent.

## MOTION FOR STATUS CONFERENCE
## HEARING TRANSCRIPTS

Now comes, JOHN MOSS, III., (hereinafter the petitioner), In Propria Persona and requests the Circuit Court of Kanawha County to entertain this motion pursuant to the provisions of Rules 2, 3 and 16 of the West Virginia Rules of Appellate Procedure, for an **Order**, pursuant to the below-cited law, directing the official court reporter(s) to furnish himself and counsel with a transcript, at the expense of the State of West Virginia, of the relevant proceedings as are designated to be transcribed in this motion. In support hereof, petitioner states the following;

The petitoner has filed a financial affidavit with the Circuit Clerk and/or the Court Administrator, prior to his criminal trial and this Court has previously found him to be indigent. His continued incarceration has and his resources and income have not changed since the filing of his affidavit of indigency. The petitioner cannot submit an Appellate Transcript Request to the appropriate parties until this Court issues an Order upon his Rule 59(E) Motion and an Order reinstating his appeal time rights so he may file a

515

petition for appeal to the West Virginia Supreme Court of Appeals challenging this Court's order dismissing his petition for a writ of habeas corpus in the above styled case if the Rule 59(E) Order denies the relief requested;

The petitioner argues "An indigent petitioner/defendant who has been convicted of a crime has a right to appeal his felony conviction and he is consitutionally entitled to a copy of the transcript of his trial without cost to him. This shall include all transcripts of habeas corpus proceedings and conferences in his case. See Rhodes v. Leverette, 239 S.E.2d 136 (W.Va. 1977); Call v. McKenzie, 220 S.E.2d 665 (W.Va. 1975); Varney v. Supt., West Virginia Penitentiary, 264 D.E.2d 472 (W.Va. 1980); Quoted and Applied in State ex rel. Gary v. Warden, 288 S.E.2d 176 (W.Va. 1982); State ex rel. Wells v. Warmuth, 177 W.Va. 574, 355 S.E.2d 363 (1987); State ex rel. Kisner v. Fox, 267 S.E.2d 451 (W.Va. 1980);

Further, the petitioner contends on September 10, 1998, Judge Andrew MacQueen entered a Final Order dismissing his habeas petition and thus denying him a new trial. Also the Court never addressed the original grounds within the petition for a writ of habeas corpus, and;

On September 21, 1998, petitioner's counsel filed a Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

On November 25, 1998, petitioner's counsel filed a Supplement to the Rule 59 Motion to Alter, Amend Order, to Correct Factual and Legal Errors, and Reconsider Legal Conclusions;

On July, 13, 1999, petitioner's counsel filed a Supplemental Motion to Alter and Amend the already pending Rule 59(E) Motion;

On December 1, 1999, petitioner proceeding pro se filed Additional Supplement to the Rule 59(E) Motion to Alter or Amend Order, to Correct Factual Legal Errors, and to Reconsider Legal Conclusions;

516

On July 7, 2000, allegedly Judge Andrew MacQueen verbally dismissed the Rule 59(E) Motion from the bench.  However, petitioner and his counsel have in fact never received a Court Order stating why said motion was dismissed. Nor does the Court's Docket Sheet show such action of dismissal by the judge. See Exhibit A, attached hereto **and this is the hearing transcript petitioner is requesting;**

On October 12, 2000, petitioner's counsel filed a Motion for Entry of Order With Detailed Findings of Fact and Conclusions of Law.  To date the Court has failed to enter and provide any Court Order addressing these filing by both petitioner's counsel and himself pro se.  Furthermore, during the course of said actions there have been several status conferences, hearings and legal communications from petitioner's counsel and the Kanawha County prosecuting attorney to Judge Andrew MacQueen.  Said conferences and communications have attempted to move the Court to enter an Order upon said motions without success;

On January 1, 2001, Judge Andrew MacQueen retired from the bench and petitioner's case was left to be re-assigned to another judge within the Thirteenth (13th) Judicial Circuit;

Sometime in June 2001, according to petitioner's counsel his case had been assigned to Judge Duke Bloom who stated he would not enter a Order in relation to the Rule 59(E) Motion and other motions until he received a signed Recommended Order from Judge Andrew MacQueen, (Ret.);

Therefore, petitioner maintains he needs a true copy of **all** the Status Conference proceeding to essentially assist in compelling this Court to enter an Order directly stating why the Rule 59(E) Motion was dismissed, and for purposes of preparing and filing a final petition for appeal (habeas appeal) upon the West Virginia Supreme Court of Appeals;

517

WHEREFORE, the petitioner respectfully requests this Court for the relief requested in the premises herein, as well as any other relief which this Court deems appropriate, just and fair in the instant case at bar.


Respectfully submitted,

John Moss, III.

518

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III,
          Petitioner,

VS.

CIVIL CASE NO: 94-MISC-663.
CRIMINAL CASE NO: 82-F-221.

STATE OF WEST VIRGINIA
GEORGE TRENT, WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX,
          Respondent.

## MOTION TO PROCEED IN FORMA PAUPERIS
### AFFIDAVIT OF INDIGENT POVERTY STATUS

Now comes, JOHN MOSS, III, (hereinafter the petitioner), In Propria Persona, and moves this Court to grant him leave to file the foregoing motions in the above titled case without payment of costs and to proceed In Forma Pauperis.  Further, in support of this motion he reiterates the State of West Virginia has previously found him to be indigent and that his continuous incarceration has prevented his financial status to improve. Therefore, petitioner, being first duly sworn under oath, deposes and says that the facts herein are true, except insofar as they are therein stated to be upon information and belief, he believes them to be true as subscribed to the above and does state that all the information therein is correct to the best of his knowledge and in support thereof he swears to the following:

    1. I am the petitioner in the above entitled case who prepared the aforementioned post conviction motion;

    2. I am unable, because of my poverty, to pay the cost and filing fees required by the Court in this case;

    3. I am unable to give security for it;



S 19

4. I do believe in good faith that I am entitled to the relief sought;

5. I have no cash on hand or money in any saving or checking account to pay the filing fees or court costs;

6. I do not own any house, land, auto or truck, mobile home, stocks, bonds, notes or other valuable property.

Wherefore, your petitioner moves the Court to grant said motion to allow him to proceed in forma pauperis.

JOHN MOSS, III

STATE OF WEST VIRGINIA
COUNTY OF FAYETTE, TO WIT:

Taken, sworn and subscribed to before me this 28 day of September 2001.

NOTARY PUBLIC

My Commission Expires: Dec 24 2006

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHEILA HOSEY
MOUNT OLIVE CORRECTIONAL CENTER
1 MOUNTAINSIDE WAY
MOUNT OLIVE, WV 25185
My commission expires December 24, 2006

2

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III,
       Petitioner,

VS.

                                      CIVIL CASE NO: 94-MISC-663.
                                      CRIMINAL CASE NO: 82-F-221.

STATE OF WEST VIRGINIA
GEORGE TRENT, WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX,
       Respondent.

### ORDER

    Came before this Honorable Court, the petitioner in the above matter, by pro se, upon a Motion for Appointment of Co-Counsel.  Said Motion appearing to the Court as being proper and made in a timely fashion, the Court finds that good cause has been shown to support said Motion.

    Therefore, the Court ORDERS that_____ _____ be appointed co-counsel in the above styled civil action.

    Entered this the _____ day of _____, 2001, nunc pro tunc for _____, 2001.

A TRUE COPY

                         Attest:_____
                                  Hon. Louis H. Bloom, Judge

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
SER. JOHN MOSS, III,
          Petitioner,

VS.                                          CIVIL CASE NO: 94-MISC-663.
                                             CRIMINAL CASE NO: 82-F-221.

STATE OF WEST VIRGINIA
GEORGE TRENT, WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX,
          Respondent.

### CERTIFICATE OF SERVICE

I, JOHN MOSS, III, the petitioner, do hereby certify that a true and correct copy of the foregoing Motion for Appointment of Co-Counsel and Motion for Production of Status Conference hearing Transascripts was served upon all appropriate parties in the above-styled case by United States Mail on this the 28th day of September, 2001.

Hon. Louis H. Bloom, Judge
13th Judicial Circuit
Kanawha Co. Judicial Annex
111 Court Street
Charleston, WV 25301-2161

Mr. Mike Clifford, Esq.
Prosecuting Attorney
Kanawha Co. Judicial Annex
111 Court Street, 3rd Fl.
Charleston, WV 25301-2161

Mr. Lonnie C. Simmons, Esq.
604 Virginia Street East-Suit 200
P.O. Box 3785
Charleston, WV 25337



Respectfully submitted,


John Moss, III

S22

STATE OF WEST VIRGINIA

THIRTEENTH JUDICIAL CIRCUIT

KANAWHA COUNTY JUDICIAL BUILDING

CHARLESTON, WEST VIRGINIA 25301



LOUIS H. BLOOM
JUDGE

TELEPHONE
304/357-0365
FAX
304/357-0333

October 1, 2001



Lonnie C. Simmons, Esquire
Law Office of P. Rodney Jackson
P.O. Box 3785
Charleston, West Virginia 25337

Re:   SER John Moss III v. George Trent
      Civil Action No. 94-MISC-663

Dear Mr. Simmons,

        Enclosed please find documents that were submitted directly to the Court by your client, Mr. Moss, in connection with the above-referenced action.  Please be sure to explain to Mr. Moss that all contact with the Court must come through counsel and direct him to refrain from forwarding materials directly to the Court.  As you are aware, such materials will not be reviewed or considered by the Court.

        Thank you for your assistance in this regard.

                                        Very truly yours,

                                        Louis H. Bloom, Judge
                                        Thirteenth Judicial Circuit

lhb/jic
Enclosures
cc: Michele Drummond, Assistant
        Prosecuting Attorney (w/o)

523

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

Petitioner,

v.

Civil Action No. 94-MISC-663

**GEORGE TRENT**, Warden of the
West Virginia State Penitentiary,

Respondent.

## PETITIONER'S SECOND MOTION FOR ENTRY OF ORDER
## WITH DETAILED FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

Petitioner John Moss, III, respectfully submits that this habeas corpus action, through no fault on the part of the present Court, has been prejudiced by undue delay in the resolution of **PETITIONER'S RULE 59 MOTION TO ALTER AND AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS** and **PETITIONER'S SUPPLEMENT TO RULE 59 MOTION TO ALTER, AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS.** Copies of this Motion and Supplement are attached. To make matters even more complicated, this Court is placed in the awkward position of trying to address factual and legal errors allegedly made by this Court's predecessor and this Court is being asked to explain the logic of the predecessor's September 10, 1998 order.



524

Under these circumstances, the Court has at least two choices. First, the Court could try to divine the rationale of its predecessor and issue an order resolving all of the issues raised in these motions. If this Court received a recommended order from its predecessor, then the Court would have the benefit of his thinking and could consider whether or not to accept that recommended order.

Second, the Court could vacate the September 10, 1998 order so that the parties could present these issues to this Court. Petitioner prefers this second option because the September 10, 1998 order is contrary to the analysis mandated by the West Virginia Supreme Court in *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993). Petitioner respectfully submits that under the correct analysis mandated by that decision, his conviction must be set aside and he must be awarded a new trial that will not be tainted by Fred Zain. The only hesitancy Petition has with respect to that approach is the additional delay that would be required, particularly since the Court would need to familiarize itself with the second trial transcript.

Petitioner recognizes the fact that the Honorable A. Andrew MacQueen, III, presided at Petitioner's second trial and during this habeas corpus proceeding. In fact, when Judge MacQueen left the bench, he still had not ruled on the motions that are still pending before the Court. Judge MacQueen has represented to counsel for Petitioner on several occasions, most recently this week, that he either has prepared or is preparing a recommended order to present to this Court for its consideration in resolving the still pending motions. Based upon those representations, Petitioner has refrained from rebriefing these same issues before this Court. However, as a result of the extreme delay in receiving any ruling, which still has not been received at this time, Petitioner believes he has no choice but to go forward with the present Court.

Pending before this Court is **PETITIONER'S RULE 59 MOTION TO ALTER AND AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS** and **PETITIONER'S SUPPLEMENT TO RULE 59 MOTION TO ALTER, AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS**. The main purposes of this **MOTION** was to allow the Court the opportunity to correct the multiple factual errors alleged and to address certain legal errors evident in the September 10, 1998 order issued by Judge MacQueen.

At the hearing held on July 7, 2000, the Judge MacQueen did not address any of the numerous factual errors identified in the **MOTION**. The only issue addressed by the Judge MacQueen was whether or not Petitioner had been prejudiced by Zain's testimony. A legal determination of this issue was required because in the September 10, 1998 order, Judge MacQueen had failed to complete the two-part analysis mandated by Syllabus Point 3 of *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993). At the previous hearing held on this **MOTION**, Judge MacQueen conceded on the record that the September 10, 1998 order was deficient in this respect.

In addressing this issue, Judge MacQueen merely stated from the bench that Petitioner had not been prejudiced by Zain's testimony. After making that assertion, Judge MacQueen requested that counsel for Respondent draft an appropriate order. To date, no proposed order has been presented to counsel for Petitioner.

Counsel for Petitioner feels obligated to seek from the Court an order specifically addressing the factual errors alleged and specifically explaining the conclusion that Petitioner was not prejudiced by Zain's testimony. This order is the only opportunity the West Virginia Supreme

3

Court will have to understand the factual and legal basis for Judge MacQueen's decision. Petitioner respectfully submits that these factual and legal issues must be addressed in order for the West Virginia Supreme Court to understand the basis of this ruling.

With respect to the factual errors alleged, Petitioner rests on the specific assertions included in his **MOTION**, all of which are supported by citations to the relevant record. Petitioner was very careful in citing to the record to demonstrate where the September 10, 1998 order either incorrectly stated certain facts or omitted critical facts. These factual errors need to be addressed individually because they have a direct impact on the conclusions reached by Judge MacQueen in the September 10, 1998 order. If, in fact, the errors asserted by Petitioner are not deemed by this Court to be incorrect, then the order needs to explain, with appropriate citation to the existing record, how the alleged errors are indeed factual. Without addressing these specific factual errors, the record before the West Virginia Supreme Court will be incomplete.

With respect to Judge MacQueen's surprising conclusion that Petitioner was not prejudiced by Zain's testimony, Petitioner respectfully submits that it is incumbent upon the Court to explain the basis for this general conclusion. In the September 10, 1998 order, Judge MacQueen concluded that after removing Zain's testimony from the other evidence presented at trial, the remaining evidence was sufficient to support Petitioner's conviction. Although Petitioner disagrees with this conclusion, it cannot be disputed that Judge MacQueen failed to conduct the second part of the analysis, which is to determine whether Petitioner was prejudiced by Zain's testimony. Even Judge MacQueen admitted at a prior hearing that he had failed to complete this analysis.

4

This two-part analysis adopted by the West Virginia Supreme Court in the *Laboratory* decision was based upon longstanding law with respect to how a court should analyze the admission of improper evidence of a nonconstitutional nature. This analysis was first stated in Syllabus Point 2 of *State v. Atkins*, 163 W.Va. 502, 514-15, 261 S.E.2d 55, 62-63 (1979), which provided the following guidance on how a court should determine whether the defendant had been prejudiced by the admission of improper evidence of a nonconstitutional nature:

> While our cases state the test as whether the error had prejudicial impact on the jury, the difficulty is in applying the test. **The more tangential the error to the ultimate issue of guilt, the less likely its prejudicial impact.**
>
> In any inquiry into the prejudicial impact of the error, we will be guided by whether the record reveals that the error was repeated or singled out for special emphasis in the State's argument. We will scrutinize the record to determine if the error became the subject of a special instruction to the jury, or produced a question from the jury. **Also of importance is the overall quality of the State's proof. While on appellate review under *Starkey*, the State is entitled to have its case viewed in the most favorable light, this is because the jury's verdict of guilty is taken to have resolved factual conflicts in favor of the State in recognition of the jury's role in evaluating the credibility of witnesses. If the case contains a number of substantial key factual conflicts or is basically a circumstantial evidence case, or is one that is largely dependent on the testimony of a co-participant for conviction, there is an increased probability that the error will be deemed prejudicial.**
>
> Further, if the error is related to critical testimony of the defendant, the more likely that it will be deemed prejudicial. *Cf. People v. Mayrant*, 43 N.Y.2d 236, 401 N.Y.S.2d 165, 372 N.E.2d 1 (1977); *People v. Dickman*, 42 N.Y.2d 294, 397 N.Y.S.2d 754, 366 N.E.2d 843 (1977)(holding prior conviction evidence not harmless in context of New York balancing test for admissibility of prior convictions). A further consideration is the cumulative effect of the error in the context of the entire trial. We have recognized that there may be error which, standing alone, is not sufficient to require a reversal, but that when cumulated with other marginal error, the

combined effect may be sufficient to warrant a reversal. *Cf. e.g., State v. Wilson*, ___ W.Va. ___, 202 S.E.2d 828 (1974)(constitutional and nonconstitutional errors combined). (Emphasis added).

Petitioner respectfully submits that by any objective measure, Petitioner clearly and indisputably was prejudiced by Zain's testimony. Zain's testimony was not merely "tangential" evidence, but rather was the key evidence implicating Petitioner in a case where the jury was faced with conflicting confessions given by two different people. Without Zain's testimony, the jury had virtually no evidence upon which to decide whether or not to believe the confession given by Paul Reggettz or by Petitioner.

In the original habeas corpus petition filed in this case, Petitioner went to great lengths to provide the Court with every reference to Zain's testimony made by the State in its opening statement and closing arguments. For example, in the State's opening statement in the second trial, the jury was told at length about the testimony anticipated from Trooper Zain:

> "Now, the case begins to unravel soon after that, because at the scene that day on December 13th, when the Troopers showed up and the Lab people showed up, the photographer showed up, a person from the Serology Lab, a person who is a forensic serologist, showed up along with a fingerprint man. The serologist, a man by the name of **Fred Zain**, the chief forensic serologist for the State -- he'll tell you that there was a lot of blood at the scene.
>
> "Vanessa Reggettz had an injury. We all know how a head injury is. For example, **Fred Zain** will tell you that he took his samples of blood from every blood stain in that house. He will tell you that he took those samples from this house, then he went back to the lab where he analyzed them. Of course, in the meantime, he had the known blood samples of the victim, the mother. He got a known blood sample of Paul Reggettz shortly thereafter.
>
> "He will tell you that the blood samples that he took from a drawer in the kitchen and from a flashlight in the TV room, from a Christmas package, some Christmas wrapping paper, blood samples from the door between the living room and the front bed room. He took blood samples from that door, a change purse from the chest of drawers in

6

529

the front bed room, a pillow case from the back bed room, a curtain on the back door, even the little pajama top that Bernadette Reggettz was wearing when she was murdered.

"He will tell you that when he took that samples, he analyzed them in the lab. He found samples of blood taken from all of these people that I've just listed, that did not match any member of the Reggettz family. The blood didn't belong to Vanessa, from the head wound. It didn't belong to Paul Eric. It didn't belong to Bernadette. And it didn't belong to Paul Reggettz.

"So, the Police continued their investigation. On April 22, 1980, they traveled to Cleveland, Ohio, to take a blood sample from a young man. During the course of their investigation, at the time of these murders, this man was living with his grandfather, some one hundred to two hundred yards straight down the road from the Reggettz home. And shortly after the murders, after about a week, that young man returned to Cleveland. That young man, ladies and gentlemen, is sitting right here (Indicating), John Moss, the defendant. His blood was taken that day in April and brought back to **Fred Zain**, the serologist, and his blood was found to match the blood found in the house.

"Now, we all know about some bloodwork. Everyone has an ABO type; either O, A, or AB, or B. **Trooper Zain** -- or **Lieutenant Zain** will tell you that the bloodwork at the time, was broken down scientifically and forensically, and can be broken down to a number of samples, to nine genetic markers or enzymes, all independent of each other, which is important. Some of the blood samples that were taken from the house were taken from the curtains on the back door, from Bernadette's pajama top, from Christmas wrapping paper, I believe the Christmas package. **And those blood samples were able to be broken down by Fred Zain into those nine genetic markers.** And one at a time -- that blood exactly matched John Moss's -- the genetic markers, those nine genetic markers, in the sample of blood.

"**And Fred Zain will further tell you that the combination of those nine genetic markers found in the defendant's known blood and on those exhibits, the exhibits that I just listed, occur in three of every ten thousand people, point zero three percent of the population in this State. Three in every ten thousand. Fred Zain will further tell you that some of the other samples, the other ones I listed, for lack of sufficient sample or whatever reason, he was able to break it down into seven of the nine genetic markers. And again, he'll tell you that those seven genetic markers found on those exhibits matched right down the line to the defendant's known blood.**

7

530

"**Fred Zain will tell you that combination of those seven genetic markers occurs in one of every thousand, twenty-one percent.**" (Emphasis added)(SECOND TRIAL, Tr. 406-09).

Under *Atkins*, the fact that this critical evidence was emphasized at great lengths to the jury is further proof that Petitioner was prejudiced by Zain's testimony. Clearly, this case is not one where Zain's testimony related to an insignificant collateral issue. In fact, it would be safe to say that Zain's testimony was at the heart of the State's evidence. If it were not for Zain's testimony, the jury would have been required to decide which confession to accept--the initial confession given by Reggettz or the confession beaten out of Petitioner, when he was just seventeen years old. Petitioner respectfully submits that if the Court reviews the detailed habeas corpus petition, which includes all of the record citations relating to Zain's testimony, the only logical and rational conclusion that can be made in this case is that Petitioner was prejudiced by Zain's testimony.

For the foregoing reasons, Petitioner John Moss, III, respectfully asks this Court to issue an order with detailed findings of fact and conclusions of law addressing all of the issues raised in **PETITIONER'S RULE 59 MOTION TO ALTER AND AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS** and **PETITIONER'S SUPPLEMENT TO RULE 59 MOTION TO ALTER, AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS.**

**JOHN MOSS, III**, Petitioner,
--By Counsel--

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406
**FRAGALE & SIMMONS**
604 Virginia Street, East - Suite 200
P.O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

531

8

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, counsel for Petitioner, do hereby certify that a true copy of

**PETITIONER'S SECOND MOTION FOR ENTRY OF ORDER WITH DETAILED**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** was served upon counsel for

Respondent, through the regular course of the United States Postal Service, postage prepaid, on the

5th day of October, 2001, addressed as follows:

> Michelle Drummond
> Assistant Prosecuting Attorney
> Kanawha County Judicial Court Annex Bldg
> 111 Court Street
> Charleston, West Virginia 25301
> (304) 357-0300

Lonnie C. Simmons (WV State Bar I.D.#: 3406)

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**JOHN MOSS, III,**

Petitioner,

Civil Action No. 94-MISC-663

v.

**GEORGE TRENT,** Warden of the
West Virginia State Penitentiary,

Respondent.

## PETITIONER'S MOTION TO ALTER OR AMEND ORDER, TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS

Petitioner John Moss, III, pursuant to Rules 59 and 60 of the West Virginia Rules of Civil Procedure, respectfully moves this Court to alter and amend its September 10, 1998 **ORDER**, to correct factual and legal errors in that **ORDER**, and to reconsider the legal conclusions reached in that **ORDER**, for the following reasons:

1. On September 10, 1998, this Court entered an **ORDER** addressing Petitioner's claim that he is entitled to a new trial under the standard established by the West Virginia Supreme Court in *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993).

2. In this **MOTION**, Petitioner respectfully will note some of the factual and legal errors committed by the Court.

3. This **MOTION** may be supplemented prior to the hearing to ensure that the record on this issue is complete.

4. The **ORDER** contains the following factual errors

a. *The Court notes on page 3 of the* **ORDER** *that "the record in this proceeding does not contain sufficient detail to identify exactly which of the State Police serologists performed the testing of all of the specific blood samples."* In the deposition of Robert Murphy, and the exhibits attached thereto, Mr. Murphy identified the test results that were in his writing and those that were not. Since only Mr. Murphy and Fred Zain performed any of the testing in this case, those notes that were not in Mr. Murphy's handwriting necessarily were written by Zain. Through this process, there really is no question that Zain is the person who conducted the critical serological testing on the blood samples obtained from the crime scene. Of particular interest in the documentation attached to Murphy's deposition is one sheet, marked with Bates Number 000013, which records the results of tests performed on most of the evidence items obtained by Zain. The back of this sheet has the initials "FSZ" and Petitioner respectfully submits that Zain is the person who recorded this information, which indicates he is the person who performed these particular tests. Thus, the most critical testing in this case was performed by Zain. Murphy is the serologist who performed the testing on the known blood samples.

b. *The Court notes on page 4 of the* **ORDER** *that Murphy "performed much of the laboratory testing and prepared the forensic report."* As noted above, Zain is the serologist who conducted the critical testing on the evidence samples, while Murphy only did the testing to determine the types from known blood samples. Murphy is in fact the person who signed the report, but Murphy never testified in either of Petitioner's trials. Zain is the only serologist who presented the State's evidence in this area.

c. *The Court states on page 4 of the* **ORDER** *that "Zain and Murphy had discovered genetic markers in blood samples from the Reggettz residence that excluded Paul Reggettz and would ultimately incriminate John Moss, long before a sample of Moss's blood was obtained and analyzed."* Even though earlier in the **ORDER**, the Court notes that a sample of Petitioner's blood had been obtained illegally when he was incarcerated in Ohio, the Court ignores the possibility that the officer involved saved a portion of that sample. Furthermore, the Court ignores the unrefuted opinion given by Dr. David Bing, who notes that most of the types obtained could have been deposited by members of the Reggettz family, that there was no independent evidence establishing that each blood stain came from

2

534

the same person, and that the only types of scientific significance are those types that differ from the known types of the Reggettz family.

d.    *The Court notes in footnote 4 of the ORDER that "the parties have agreed to submit the blood evidence that remains to an independent laboratory for analysis, evidently in an attempt to ascertain if new technology may yield some results."* The parties have never submitted any of the evidence in this case for additional testing. Petitioner argued that he did not oppose any DNA testing, but such testing would require that the three victims be exhumed and whether or not Petitioner obtained a new trial should not be determined based upon such testing. Although the State made noises that DNA testing would be helpful, the State never requested any such testing. Counsel for Petitioner and Respondent have reviewed all of the physical evidence remaining and were not able to see any visible blood stains left to be tested.

e.    *The Court's overall characterization of the testimony of Dr. David Bing is that he did not determine that the testing by Zain was false, inaccurate, or invalid. The Court even makes the assertion that Dr. Bing "confirmed the scientific validity of the conclusions."* These conclusions are wholly inaccurate. In making that statement, the Court seems to be criticizing Dr. Bing, when it was the State which failed to preserve any photographs of the electrophoretic gels, which Dr. Bing could have analyzed for their accuracy. The only items Dr. Bing could analyze were the report and the laboratory notes. Dr. Bing explained the importance of having a written protocol in the laboratory and a quality control, quality assurance program. (Dr. Bing Dep. at 18-19). In explaining why he believed the data generated in this case was meaningless, Dr. Bing stated:

> "Well, by that I mean that the -- there is so much data on these stains that weren't analyzed, it would seem to me there should be some extensive notes backing that material up. So that in that -- **in the context of not being able to look at the backup data, other than the summaries, it becomes, you know, almost impossible for me to either agree or disagree with the final outcome of the results. And that's what I mean by when I say it's meaningless. I can't agree, I can't disagree. All I can say is what was reported."** (Emphasis added). (Dr. Bing Dep. at 21-22).

3

After commenting on the lack of any written protocols, quality control, quality assurance programs, original laboratory notes and photographs of the testing performed, Dr. Bing went through a series of general scientific principles applicable to the serological testing performed in this case. The purpose of this analysis was to demonstrate the flaws in the conclusions reached based upon the data and the overstating of the significance of this testing at trial.

First, he noted that it is important to obtain the known blood types of all potential donors of blood at the scene of the crime. In this case, the potential donors of blood were Vanessa Dale Reggettz, Paul Eric Reggettz, Bernadette Reggettz, and Paul Reggettz, III. (Dr. Bing Dep. at 22-23).

Second, at a crime scene, where the origin of all evidentiary stains is unknown, it cannot be assumed that the stains originated from a single source. (Dr. Bing Dep. at 24). Third, only those types obtained from the evidence that are different from any of the types obtained from known possible donors provides relevant and meaningful information to the forensic scientist. Dr. Bing gave the following hypothetical to illustrate this general principle:

> "Think of it another way. Suppose that the distinguishing factor of a blood stain was something that you can actually visualize. Suppose that you could look at this blood stain and you could say unequivocally, `I know that that blood stain came from somebody who has brown hair.' Brown hair is a genetic marker. In some ways it's very similar to, say, a blood type antigen because there is a certain -- The color or the reason it's brown is due to certain genetic markers that result in color. So you say I know -- It doesn't make any difference how I know it. I know this blood stain is from somebody who has brown hair. Now, you get your list of possible donors to that and you -- and they all have brown hair. You can't say that any one person is more likely than another to be a donor to that blood stain.

4

536

"Now, let's say if we can do a little bit more. Let's say, `Well, I can' -- `I know that the person who contributed to this blood stain has brown hair and is left-handed.' So you now look at your candidates, and you look at them and you say, `Well, three of them are left-handed and say two are right-handed.' Well, the two who are right-handed are automatically eliminated, but you still can't distinguish between the other three because left-handedness and brown hair color are the same in all of them.

"So that if you have a series of markers and they're identical in all the people that are being tested, then you can't really use that to try to distinguish the source of a given blood stain. You can only look to the differences, not to the similarities, because the question that is being asked here, the scientific question that is being asked is who could possibly be a biologic donor to this blood stain.

"And, secondly, I don't know whether there's a single person or from a bunch of people. As I stated in my affidavit, is it a single source sample or many people are sources of the sample. So you have to look to the differences between individuals who you test rather than to their similarities." (Dr. Bing Dep. at 25-26).

Fourth, as a general rule, where a type from a known possible donor of a blood stain matches a type from the blood discovered, it is not appropriate to include that type in calculating the frequency that the blood was deposited by a particular suspect. Dr. Bing illustrated this general principle as follows:

"Let's take another genetic typing you can sort of visualize. Let's suppose that the blood sample that you know came from somebody

5

537

who has brown hair, is left-handed, and is an albino, has no pigment color in their skin at all. Albinism is a very rare occurrence in the human population. It's very rare indeed. Now, at that point, the fact that you now have three individuals who are left-handed and have brown hair, but only one of them is an albino. You say that's a very rare event. It could only have been that person.

"So you can use that to reason backwards and say, `Alright, albinism is a very rare event, so I know that this blood stain came from an albino.' That could only have occurred in one out of a very few number of people who have this inherited genetic trait.

"That is separate from the question of saying, "How often is the combination of brown hair, left-handism and albinism found in the general population?' That's a separate question. That's how often do I find these together in the general population. You can make that estimate as well. But that's a general question about the population. That is not a question about the sample. The only thing that distinguishes that sample is what is different about that sample than is in the known individuals that you're testing. So you've got a -- Those two things have to be kept separate.

"And that's what I mean by this, that you can't take a combination of factors that are found in the general population and relate it to a specific sample. All you can say is that if these are present and I now have data to show that are indeed present, this is how often I would expect to find that combination of markers in the general population, providing they are behaving and acting independent of each other, because that's the other issue in terms of being able to do that, they have to be

6

behaving independently. They have to be what we say scientifically, they sort independently." (Dr. Bing Dep. at 28-29).

Finally, Dr. Bing noted that serological typing is unable to determine when a particular evidentiary stain was deposited. (Dr. Bing Dep. at 37). Thus, from a scientific point of view, there is no objective basis for a scientist to conclude that a particular stain actually resulted from the criminal episode or may have been deposited at some time earlier.

The remainder of Dr. Bing's deposition applies these general principles to the facts. He concludes that the only blood types of significance are PGM, Gc, and EsD. The remaining types obtained from the blood stains found at the crime scene do not provide significant information because the remaining types obtained from the evidence were identical to the types obtained from at least one or more of the known possible donors. (Dr. Bing Dep. at 38). Dr. Bing further testified that he agreed with the scientific analysis of the evidence set out in the **PETITION**. (Dr. Bing Dep. at 39).

5.    This **ORDER** omits the following significant facts:

a.    *The Court notes on page 2 of the ORDER that "Reggettz confessed to the killings" and in footnote 2, the Court implies that his confessions were involuntary.* The Court fails to note that on October 28, 1980, the Honorable Judge John Hey agreed with the State's arguments and made extensive findings of fact and conclusions of law on the record, holding that the multiple confessions given by Reggettz, including the confession he gave the following day when he graphically and physically reenacted the murders, were voluntary and admissible. That ruling was never challenged or overturned by any higher court.

b.    *The Court notes on page 2 of the ORDER that blood samples were obtained from several other persons, "including policemen who had been present at the Reggettz home."* Petitioner has no way of knowing the accuracy of this assertion because there is nothing in the record supporting this claim. If the Court is referring to the known

7

blood samples contained in Table I of Petitioner's **PETITION FOR WRIT OF HABEAS CORPUS**, Petitioner respectfully asks the Court to identify those persons who were officers and those who were simply the usual suspects.

c.   *The Court notes on page 3 of the ORDER that after first illegally obtaining blood from Petitioner and then legally obtaining such a sample, "petitioner gave officers a detailed confession which was consistent with the physical evidence in significant respects."* Despite the Court's willingness to accept the Reggettz testimony with respect to the involuntariness of his confessions, the Court ignores Petitioner's testimony that he confessed to these crimes only after being subjected to repeated physical abuse by Trooper Michael Don Smith, who crawled into the back seat beside Petitioner while both of Petitioner's hands were handcuffed to the headrest. (FIRST TRIAL PRETRIAL SUPPRESSION HEARING, Tr. 303-05). Trooper Terry Williams and Trooper Smith confirmed the fact that Petitioner was handcuffed to the front seat head rest and that Trooper Smith did crawl into the back seat with Petitioner to begin the questioning. (SECOND TRIAL, Tr. 509, 937). Even though Trooper Williams and Trooper Smith denied the beating allegations, both admitted that Petitioner's "willingness" to discuss the Reggettz murders was triggered when Trooper Smith said to Petitioner, "'Why do you think we got your blood?'" (SECOND TRIAL, Tr. 511-14, 944-45).

6.   As for the legal analysis, Petitioner respectfully submits that this Court erred in failing to apply Syllabus Point 3 of the *Laboratory* decision to the facts of this case. The West Virginia Supreme Court made it clear that in light of the substantial record of lying and deceit committed by Zain, inmates in a habeas corpus proceeding are entitled to pursue relief on the ground that Zain's testimony and testing are false, invalid, and inaccurate.

Rather than accept that finding by the West Virginia Supreme Court, this Court seems to assume that Petitioner had the burden of proving that Zain's testimony and testing in this particular case was false, invalid, and inaccurate. The problem with adopting that approach is that Zain did not preserve the results of his testing through photographing the electrophoretic gels. As a result,

8

540

the Court has established an impossible burden for Petitioner because Zain failed to preserve his test results in a way that another expert could review them for accuracy, and the testing used up all of the evidence. In light of Zain's repeated history of faking data, matching evidence to the suspect's types, misreporting types, overstating the strength of results, overstating the frequency of genetic matches, misreporting the frequency of genetic matches on multiple pieces of evidence, reporting that multiple items had been tested, when only a single item had been tested, reporting inconclusive results as conclusive, repeatedly altering laboratory records, grouping results to create the erroneous impression that genetic markers had been obtained from all samples tested, implying a match with a suspect when testing only supported a match with the victim, and reporting scientifically impossible or improbable results, it is very difficult for Petitioner to understand how this Court can place any weight at all in Zain's testimony and test results. *Laboratory*, 190 W.Va. at 323, 438 S.E.2d at 503.

Since the special investigation conducted by Special Judge James O. Holliday revealed that in **every case examined, the experts found that Zain had committed one or more of the offenses stated above,** no court, no lawyer, and no jury should ever give any weight whatsoever to anything Zain ever said or did. What if Zain, in the present case, simply matched the items of evidence to the known types of Moss which were different from any of the types from the Reggettz family? What if Zain combined the types from one blood drop with the types obtained from a separate blood drop? At this point, no person has any way of determining whether any of the testing, including the testing of the known blood types from the victims, is accurate.

9

Petitioner, through the testimony of Dr. Bing, has established the fact that Zain overstated the significance of his data. Furthermore, Dr. Bing established, without any rebuttal, that Zain's testing and testimony were virtually meaningless scientifically because there was nothing to back up the data allegedly generated.

The Court compounded this error by failing to apply the complete test required by Syllabus Point 3. First, the Court has to separate Zain's testimony and testing from the evidence, and then determine whether the remaining evidence was sufficient "to convince impartial minds of the defendant's guilt beyond a reasonable doubt." In performing that analysis, this Court concludes that Petitioner's confession along with evidence of a camera and silverware, were sufficient to meet this test. However, in performing this analysis, the Court completely ignores the fact that in this case, another person, Paul Reggettz, was the first person to confess to these murders. Thus, in analyzing whether a jury of impartial minds could be convinced of Petitioner's guilt beyond a reasonable doubt, the Court should have considered the fact that there was another very detailed confession by another person to this same crime. Under these unique facts, Petitioner respectfully submits that without Zain's testing and testimony, the remaining evidence, including the two conflicting confessions by two different people, clearly was insufficient "to convince impartial minds of the defendant's guilt beyond a reasonable doubt." Thus, the Court erred in failing to address the impact of Reggettz's confessions in analyzing this evidence.

Even if the Court were correct in concluding that Petitioner's confession along with other evidence was sufficient to prove his guilt, the analysis does not stop there. As noted in Syllabus Point 3, "if the remaining evidence is sufficient to support the conviction, an analysis must

542

then be made to determine whether the error had any prejudicial effect on the jury." In the **ORDER**, the Court completely ignored this critical part of the analysis in this case.

Did the admission of Zain's false, invalid, and inaccurate testimony have any prejudicial effect on the jury in Petitioner's case? As noted, it was Zain's evidence that shifted the balance of the evidence away from Reggettz and toward Petitioner. How can this Court or any person argue that the jury was not prejudiced under the facts of this case?

Petitioner respectfully submits that the *Laboratory* is not simply an "arbitrary" decision designed to apply a "prophylactic" rule, but rather is a decision consistent with prior case law and with decisions by the United States Supreme Court. The West Virginia Supreme Court recognizes in the *Laboratory* decision that in many cases, it may not be possible to demonstrate conclusively that Zain lied or falsified data because he also destroyed records, failed to preserve his test results in a manner which would allow another expert to review them, and failed to maintain good records. Thus, all the *Laboratory* decision did was to eliminate the need for an inmate in a habeas corpus action to reinvent the wheel by proving that Zain is an inveterate liar and allowing such inmates to pursue claims, based upon the substantial and unprecedented record of Zain's history of deceit.

Having established that fact, the remedy provided is mandated by prior case law and cases decided by the United States Supreme Court. The presentation of false evidence in a criminal trial is a due process violation to which the State is held accountable, even if the State did not have actual knowledge that the evidence was false. Once it is established that false evidence was presented to the jury, the prejudicial effect of that evidence must be evaluated. In the context of the present case, Zain's testing and testimony was not merely a minor issue in this case, but, in fact, was

the main distinguishing evidence allegedly exonerating Reggettz and implicating Petitioner.  Based upon the analysis required by the West Virginia Supreme Court in Syllabus Point 3, there really can be no doubt that Petitioner is entitled to a new trial.

Petitioner recognizes the fact that for some reason, the Court decided to apply a different standard to this case than has been applied in every other habeas corpus action in which this *Laboratory* standard has been applied.  Obviously, Petitioner respectfully questions the standard applied by this Court and asserts that this error goes to the heart of the **ORDER**.  However, for purposes of making a complete record, Petitioner believes it would be helpful to the West Virginia Supreme Court for this Court to actually apply Syllabus Point 3 of the *Laboratory* decision, in case that Court disagrees with the unprecedented and novel standard applied in the present case.  In other words, Petitioner respectfully asks this Court to go through the complete Syllabus Point 3 analysis so that the record in this case will be complete.

For the foregoing reasons, Petitioner John Moss, III, pursuant to Rules 59 and 60 of the West Virginia Rules of Civil Procedure, respectfully moves this Court to alter and amend its September 10, 1998 **ORDER**, to correct factual and legal errors in that **ORDER**, and to reconsider

the legal conclusions reached in that **ORDER**.  Further, Petitioner seeks such other relief as this

Court deems appropriate.

                                        **JOHN MOSS, III**, Petitioner,

                                              --By Counsel--


Lonnie C. Simmons
West Virginia State Bar No. 3406
*Law Office of*
**P. RODNEY JACKSON**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-4616

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing

**PETITIONER'S MOTION TO ALTER, AMEND ORDER, TO CORRECT FACTUAL AND**

**LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS** was hand-delivered to

counsel of record on the 21st day of September, 1998, addressed as follows:

> Steve Revercomb
> Assistant Prosecuting Attorney
> Kanawha County Judicial Court Annex Bldg
> 111 Court Street
> Charleston, West Virginia 25301
> (304) 357-0300

Lonnie C. Simmons

546

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**JOHN MOSS, III,**

        Petitioner,

v.                                Civil Action No. 94-MISC-663

**GEORGE TRENT,** Warden of the
West Virginia State Penitentiary,

        Respondent.

### PETITIONER'S SUPPLEMENT TO
### RULE 59 MOTION TO ALTER, AMEND ORDER,
### TO CORRECT FACTUAL AND LEGAL ERRORS,
### AND TO RECONSIDER LEGAL CONCLUSIONS

Following the hearing held on **PETITIONER'S RULE 59 MOTION**

**PETITIONER'S MOTION TO ALTER, AMEND ORDER, TO CORRECT FACTUAL**

**AND LEGAL ERRORS, AND TO RECONSIDER LEGAL CONCLUSIONS,** Petitioner

John Moss, III, asked this Court for an opportunity to file this brief supplemental memorandum.

At the hearing, the Court acknowledged that Syllabus Point 3 of *In the Matter of Investigation of*

*the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993),

required the Court to conduct a two-part analysis and that the Court's September 10, 1998 order

failed to address the second issue.  Thus, at a minimum, it appeared to Petitioner that this Court

at least will be issuing an order addressing whether or not Zain's testimony had a "prejudicial

effect on the jury."  If the Court concludes, as Petitioner asserts, that he was prejudiced by Zain's

testimony, then Petitioner is entitled to a new trial.

        At the hearing and in the order, the Court has placed the burden on Petitioner to

prove that the testing performed by Fred Zain was false or incorrect and so far has refused to

allow Petitioner to benefit from the factual presumption that all of Zain's testing and testimony must be presumed to be false, as mandated by the *Laboratory* decision. As noted by Petitioner, this ruling places an impossible burden on Petitioner because Zain did not preserve the results through photographs and by consuming the evidence in the testing, there is nothing left for Petitioner to test. Thus, it is physically and scientifically impossible for Petitioner to present this Court with the results of electrophoretic testing that contradicts the results allegedly obtained by Zain.

However, Petitioner is able to demonstrate that certain parts of Zain's evidence were false, misleading, exaggerated, and scientifically unsound. The August 6, 1993 report by the experts from the American Society of Crime Laboratory Directors (ASCLD) examined a number of cases analyzed in the State Police Crime Laboratory 1986 through 1989. While the cases examined occurred after the initial testing performed in this case, there is no evidence and no reason to believe that any of the practices found by the ASCLD experts to be deficient or just plain wrong were any different earlier. Thus, based upon this report, the Court may conclude that at the time the testing was performed in the State Police Crime Laboratory in this case, there was no quality assurance program, no procedures manual, and no use of controls or standards.

Of particular importance to this Court's consideration is the failure of Zain to use any controls or standards in the testing he performed in this case. Petitioner can demonstrate that Zain failed to use controls or standards in this case by referring the Court to the laboratory documents provided. The ASCLD criticism was that any time blood or other evidence is found on some object, a sample from the unstained areas of that object, sometimes referred to as the substrate, should be taken "to ensure that the material itself (substrate) was not rendering a false

2

548

positive interference. The use of such controls is imperative." ASCLD report at 5. In reviewing Zain's documentation, there is no reference to any substrate samples being tested on any of the items where blood allegedly was found. Thus, Petitioner has demonstrated that Zain's testing in this particular case was in fact performed consistent with ASCLD's criticism of the State Police Crime Laboratory.

In reviewing the ASCLD report, the Court should note that with respect to several of the cases reviewed, there was a severe lack of documentation and preservation of the test results, as in the present case, rendering it impossible for these experts to complete their analysis. The problem with overstating the statistical matches found with several of the cases examined was repeated in the present case. For example, in the ASCLD report, in connection with the examination of the data from the Robert Wallace case, the experts noted that Zain had included a marker in calculating the percentage of the population who might be the semen donor that matched the victim's known marker. By committing that error, Zain was able to testify that only 6.8% of the population would have the same markers as those found from the evidence, when, in fact, the number should have been 28%. This same error of exaggerating the statistical significance of the data was committed by Zain in this case. Petitioner respectfully refers the Court to the extensive analysis of the typings included in his original petition.

In its conclusion, the ASCLD experts stated:

> "Irregularities were found in most of the cases reviewed in this investigation, and one, therefore, believed to have been the result of systematic practice rather than an occasional inadvertent error. The majority of the irregularities were in the incompleteness of records or appeared to affect the weight given to a genetic match of evidence samples to possible donors."

3



Thus, based upon the conclusions reached by these ASCLD experts regarding the lack of

documentation and exaggeration of results, the West Virginia Supreme Court ordered that all

inmates have the right to pursue a habeas corpus action in which the trial court is to assume that

all of Zain's testing and testimony is false.

There is no question that if the ASCLD experts had reviewed the data in this case,

as did Dr. David Bing, they similarly would have concluded that the data was "meaningless" due

to the lack of documentation and the overstatement of the statistics generated.  This fact is

particularly true in the present case where Respondent was unable to provide any expert to refute

Dr. Bing's conclusions.

Furthermore, as noted in the ASCLD report and in the habeas corpus petition filed

in this case, Zain repeatedly and consistently lied about his credentials.  In this case, in an *in*

*camera* hearing held in the second trial, Zain testified as follows:

> "Q    And what training had you received at that time in
> performing -- to perform such analysis?
>
> "A    My formal education was a degree in biology, with a minor
> in chemistry.
>
> "I also received an Associate Degree in Police Sciences, and
> specialized training at the FBI academy at Quantico, Virginia,
> relating to the specific field of forensic science, and more
> particularly, serology, or tests and methods utilized in the
> identification of blood and body fluids.
>
> "Both basic and advanced courses were obtained by me from the
> FBI Academy and other specialized training sessions that I had
> attended, as well as scientific organizations which I belong to, such
> as the Southern Association of Forensic Scientists, and other peer
> groups." (SECOND TRIAL, Tr. 1050).

Virtually the same testimony about his credentials was presented to the jury

550