**MOSS v. BALLARD
CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 33
(Continuation, pp. 551 - 684)**

shortly thereafter. (SECOND TRIAL, Tr. 1066-67). Trooper Zain was indicted for perjury on July 22, 1994, for giving approximately the same answer in the case styled *State v. Paul Walker*, Felony No. 91-F-62. As was discovered during the special investigation headed by Special Judge James O. Holliday, Zain never obtained a minor in chemistry, which was not even offered at that time by the college he attended. Furthermore, as for Zain's FBI training, he either flunked or failed to complete at least two FBI training sessions he attended. Moreover, if Zain's history of fabricating evidence, as discovered during the special investigation, had been known at the time of Petitioner's first trial, his testimony and test results would have been given little or no weight by the jury and may have been found too unreliable to be admitted into evidence.

When an expert lies about his credentials, his intention is to convince the jury to give his opinions greater weight, based upon his asserted expertise. Thus, it is a very serious due process violation where an expert witness lies about his credentials. In *People v. Cornille*, 95 Ill.2d 497, 69 Ill.Dec. 945, 448 N.E.2d 857 (1983), a case cited by the West Virginia Supreme Court in *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993), the Illinois Supreme Court was presented with a situation where an arson expert lied about his education and other credentials. The facts in *Cornille* are remarkably similar to the present facts in that by the time the defendant in *Cornille* had filed his habeas corpus action, the alleged arson expert had already been indicted for perjury for lying about his education and credentials. The Illinois Supreme Court held that there was a reasonable likelihood that the jury's decision may have been affected by this expert's false testimony, which made him appear to be more credible. Consequently, the defendant in *Cornille* was granted a new trial on this basis alone.

5

551

Finally, it cannot be emphasized enough that the rule developed in the *Laboratory* decision is based upon a number of cases decided by the United States Supreme Court where false evidence was presented to the jury. *Napue v. Illinois*, 360 U.S. 264 (1959); *Giglio v. United States*, 405 U.S. 150 (1972); *Miller v. Pate*, 386 U.S. 1 (1967). The United States Supreme Court found that it is a due process violation for a person to be convicted, in part, upon false testimony.

Consequently, based upon the foregoing analysis, and the materials and briefs provided previously, it cannot be disputed that Petitioner's conviction was obtained, in part, upon the false, misleading, exaggerated, and scientifically unsound testimony of Fred Zain. Therefore, Petitioner respectfully that under the standards mandated by these United States Supreme Court decisions, as recognized in the *Laboratory* decision, and under the facts of this case, Petitioner is entitled to a new trial.

JOHN MOSS, III, Petitioner,

--By Counsel--

Lonnie C. Simmons
West Virginia State Bar No. 3406
*Law Office of*
**P. RODNEY JACKSON**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-4616

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing
**PETITIONER'S SUPPLEMENT TO RULE 59 MOTION TO ALTER, AMEND ORDER,
TO CORRECT FACTUAL AND LEGAL ERRORS, AND TO RECONSIDER LEGAL
CONCLUSIONS** was mailed to counsel of record on the 25th day of November, 1998,
addressed as follows:

Jon Blevins
Assistant Prosecuting Attorney
Kanawha County Judicial Court Annex Bldg
111 Court Street
Charleston, West Virginia 25301
(304) 357-0300

Lonnie C. Simmons

553

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

JOHN MOSS, III,

     Petitioner,

v.

             Civil Action No. 94-MISC-663

GEORGE TRENT, Warden of the       Honorable Louis H. Bloom
West Virginia State Penitentiary,

     Respondent.

*FILED*

*01 OCT 25 AM 10: 02*

*CATHY S. GATSON, CLERK*
*KANAWHA COUNTY CIRCUIT COURT*

## NOTICE OF HEARING

  **PLEASE TAKE NOTICE** that a hearing will be held on December 6, 2001, at 2:30

p.m., regarding all pending motions previously filed in the above-styled case, before the Honorable

Louis H. Bloom, Judge of the Circuit Court of Kanawha County, in his courtroom at which time and

place you may appear to protect your interests.

         **JOHN MOSS, III**, Petitioner
         By Counsel

Lonnie C. Simmons
West Virginia State Bar No. 3406
**FRAGALE & SIMMONS**
604 Virginia Street, East - Suite 200
P. O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

554



## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that true copies of the foregoing **NOTICE**

**OF HEARING** was served upon counsel for Respondent, through the regular course of the United

States mail, postage prepaid, this 24th day of October, 2001, addressed as follows:

Michelle Drummond
Assistant Prosecuting Attorney
Judicial Annex Building
111 Court Street
Charleston, West Virginia 25301

Lonnie C. Simmons, WV State Bar ID No. 3406

555

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

02 FEB 15 AM 10: 21

**JOHN MOSS, III**

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

v.                                                        **Civil Action No. 94-MISC-663**
                                                         **Judge Louis H. Bloom**

**GEORGE TRENT, Warden of the**
**West Virginia Penitentiary**

---

### AMENDED MEMORANDUM ORDER DENYING HABEAS RELIEF

The petitioner, John Moss, III, ("Moss") was convicted on April 24, 1990, in the Circuit

Court of Kanawha County on three counts of first degree murder.  Thereafter he filed the above-

styled habeas corpus action seeking relief from his conviction on various grounds, including the

involvement of the infamous State Police serologist, Fred Zain ("Zain"), in the underlying

prosecution.

In its "Memorandum Order" entered on September 10, 1998, this Court gave an overview

of the investigation into Zain and identified the following prophylactic rule adopted by the

Supreme Court of Appeals of West Virginia in response to the problems generated by Zain:

> [A]ny testimonial or documentary evidence offered by Zain at any time in any
> criminal prosecution shall be deemed invalid, unreliable and inadmissible in
> determining whether to award a new trial in any subsequent habeas corpus
> proceeding.

The Memorandum Order further summarized the procedural and evidentiary background of the

underlying criminal case.  For the sake of brevity and simplicity, said Memorandum Order is

adopted and incorporated by reference as if fully set forth in the body of this Order.

The Court concluded that, even if the serological evidence were excluded, there would

still be sufficient evidence in the record to support Moss's conviction.  Accordingly, the Court

concluded that, under the facts of the case, neither Zain's involvement in the serological testing

nor Zain's testimony at Moss's trial were sufficient to support Moss's request for a new trial.

The Memorandum Order was entered to that effect.

Thereafter, on September 21, 1998, Moss filed "Petitioner's Motion to Alter or Amend

Order, to Correct Factual and Legal Errors, and to Reconsider Legal Conclusions."  The chief

thrust of this motion was that the Court failed to fully conduct the following analysis:

> "Where improper evidence of a nonconstitutional nature is introduced by the State
> in a criminal trial, the test to determine if the error is harmless is:  (1) the
> inadmissible evidence must be removed from the State's case and a determination
> made as to whether the remaining evidence is sufficient to convince impartial
> minds of the defendant's guilt beyond a reasonable doubt;  (2) if the remaining
> evidence is found to be insufficient, the error is not harmless;  (3) if the remaining
> evidence is sufficient to support the conviction, an analysis must then be made to
> determine whether the error had any prejudicial effect on the jury."   Syllabus Point
> 2,  *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*,  445 U.S.
> 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

Syl. pt. 3, *In the Matter of an Investigation of West Virginia State Police Crime Laboratory,*

*Serology Division*, 438 S.E.2d 501, 502 (W.Va. 1993).  As noted above, the Court resolved the

first question and determined that there was sufficient evidence to convict Moss of the murders

even if the serological evidence and Zain's testimony were excluded from consideration.

The Court did not articulate any ruling on the final prong of the analysis.  Specifically, the

Court did not make any express ruling as to whether the admission of the Zain evidence "had any

prejudicial effect on the jury."  A hearing on the aforementioned motion was held on July 7, 2000,

during which Moss's counsel pointed out, as follows, that this final portion of the analysis was not

addressed in the Memorandum Order:

2

> [E]ven if the Court found, as you did, that the evidence is sufficient to support the conviction without Fred Zain's testimony, which is what you found, the second part of the test is was John Moss prejudiced by Fred Zain's testing and testimony, and that was the part that had not been addressed in your written order.

The Court's response was to inquire as to how the two issues were "severable . . . in this particular case." Thus, implicit in the Court's determinations 1) that this case was distinguishable from the typical Zain case, and 2) that the evidence supported the conviction, even if the Zain-related evidence and testimony were excised from the record, was an assessment that there was no prejudice to Moss flowing from "Zain's testing and testimony."

Moss argues that "Zain's evidence . . . shifted the balance of the evidence away from Reggettz and toward Petitioner [Moss]." The Memorandum Order contains a discussion of the evidence, which will not be duplicated herein. As noted in that discussion, Moss's own confession is a key piece of evidence that stands independently of any Zain-related evidence. Further, the confession is corroborated in a number of significant ways, which the Court has described as "indices of reliability." In focusing on Zain, Moss ignores the power of his own well-corroborated confession.

In light of the external indicia that Moss's confession was legitimate, the Court must conclude that the introduction of Zain-related evidence and testimony was not prejudicial within the meaning of Syllabus point 3 of *In the Matter of an Investigation of West Virginia State Police Crime Laboratory, Serology Division*, 438 S.E.2d 501, 502 (W.Va. 1993).

Accordingly, for the reasons set forth above and the reasons previously set forth in the incorporated Memorandum Order, entered September 10, 1998, the Court is of the opinion to, and does hereby, **DENY** the request for a new trial. This action is hereby **DISMISSED** and

**STRICKEN** from the docket of this Court.

The objection of the petitioner, John Moss, III, to entry of this Order is noted and preserved.

The Clerk of this Court is hereby directed to forward an attested copy of this Order to each counsel of record.

**ENTERED** this 15th day of February 2002.

Judge Louis H. Bloom

RECORDED



4

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**JOHN MOSS, III,**

               Petitioner,

v.

                                             Civil Action No. 94-MISC-663

**GEORGE TRENT,** Warden of the
West Virginia State Penitentiary,

               Respondent.

### PETITIONER'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT

        Petitioner John Moss, III, respectfully moves this Court, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, to alter or amend the final judgment issued on February 15, 2002, for the following reasons:

        1.      The long and tortured history in this case is reflected by the pleadings and orders and need not be repeated in this motion.

        2.      It is sufficient to state that Petitioner has for several years attempted to alter or amend the order issued by the Court on September 10, 1998.

        3.      To accomplish that result, Petitioner has filed very detailed motions, citing the portions of the trial and deposition transcripts that either refuted certain statements made in the September 10, 1998 order or which were critical to Petitioner's case.

        4.      After a substantial delay effectuated by this Court's predecessor, this Court decided to address the legal issue that had not been addressed in the September 10, 1998 order.



5.  Specifically, the decision by the West Virginia Supreme Court in *In the Matter of an Investigation of West Virginia State Police Crime Laboratory, Serology Division*, 190 W.Va. 321, 438 S.E.2d 501 (1993), required trial courts evaluating a "Fred Zain" habeas corpus action to complete the following analysis summarized in Syllabus Point 3:

> "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus Point 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

6.  Since the Court's predecessor had failed to determine whether the admission of Fred Zain's testimony had a "prejudicial effect on the jury," the *Laboratory* analysis was incomplete.

7.  The present Court made it clear in a previous hearing that it was not inclined to address the specific factual errors made in the September 10, 1998 order.

8.  To make sure the record is clear, Petitioner objects to this Court's refusal to address the factual errors because it is Petitioner's belief that these factual issues may be critical on appeal.

2

9.      Also, the record demonstrates that Respondent did not file any pleading challenging the validity of the factual assertions made by Petitioner.

10.     At this point, Petitioner has done everything he can to make sure that the record in this case is accurate and complete.

11.     This Court did address the final part of the *Laboratory* analysis in the **AMENDED MEMORANDUM ORDER DENYING HABEAS RELIEF**, issued on February 15, 2002.

12.     Again, Petitioner objects to the conclusions reached by the Court, which are contradicted not only by the facts, but more importantly by the law cited, which demonstrates that unconstitutional evidence does not have a prejudicial effect only where such evidence was tangential or otherwise was an unimportant part of the case.

13.     Furthermore, this Court, as did its predecessor, completely ignores the unique fact that this case involved two separate confessions given by two separate people on two separate occasions where both confessions were found by the courts involved to have been given voluntarily, intelligently, and constitutionally.

14.     Thus, the critical evidence presented to the jury which permitted them to pick one suspect over the other was the testimony of Fred Zain.

15.     The unfortunate and unintended effect of these orders is to permit Fred Zain, whose entire career as a serologist has been discredited and deemed completely unreliable by the West Virginia Supreme Court, to get away with

3

making a mockery of the criminal justice system in this case while a young man's life is thrown way in prison until he dies.

16.  Obviously, anyone familiar with the tragic facts of this case, where three people, including two children, were senselessly murdered, would want to make sure that the right person was convicted of these crimes.

17.  However, as long as the most critical evidence presented to the jury was the testimony of Fred Zain, no one could ever conclude that any reasonable form of justice was reached in this case.

18.  While counsel for Petitioner is unable to express in words how strongly he disagrees with the conclusions reached so far in this case, the rulings nevertheless must be respected and Petitioner intends to challenge them at the appellate level.

19.  Although Petitioner continues to assert these objections to the various rulings issued by this Court and its predecessor, these objections are not the main reason for filing the present motion.

20.  At the end of the **AMENDED MEMORANDUM ORDER DENYING HABEAS RELIEF**, the Court dismisses the Petition and strikes it from the docket.

21.  The problem with this part of the order is that Petitioner raised three separate issues in his original habeas corpus petition.

22.    Specifically, Petitioner raised the following grounds:

1.    The admission of testimony and test results performed by Trooper Fred Salem Zain, whose credentials, credibility, and test results have all been found by the West Virginia Supreme Court of Appeals to be inherently unreliable and a violation of a criminal defendant's constitutional rights.

2.    The presentation by the State of incorrect, false, misleading, overstated, and unscientific evidence.

3.    The admission of the alleged confessions given by Petitioner, which resulted from a violation of his constitutional rights. Although the issues regarding the confessions have been extensively litigated in many hearings, Petitioner reserves the right to develop new information and new arguments with regard to the alleged confessions that were previously unavailable.

23.    Petitioner has focused his attention on the "Fred Zain" habeas corpus issue because Plaintiff respectfully submits the *Laboratory* decision requires Petitioner to have his conviction set aside and to be awarded a new trial.

24.    Consequently, all of the briefing to date has focused on the "Fred Zain" issue, which should be the dispositive issue in this case if the facts and the law are applied as argued and presented by Petitioner.

25.    However, simply because the "Fred Zain" issue has been resolved does not affect the other issues asserted in the original habeas corpus petition.

26.    To correct this error, Petitioner respectfully asks the Court to modify the February 15, 2002 order to provide, pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure, that the Court's ruling on the "Fred Zain" issue is a final judgment and there is no just reason for delay.

564

27.    By amending the order in this fashion, Petitioner will have the option of appealing the "Fred Zain" ruling now, while leaving the remaining issues to be developed and addressed later, in the event the "Fred Zain" appeal is unsuccessful.

28.    The procedure of appealing the most critical issue in a habeas corpus action, while leaving other issues to be developed later if necessary, was accepted and followed in the case styled *State ex rel. Yeager v. Trent*, 203 W.Va. 716, 510 S.E.2d 790 (1998).

For the foregoing reasons, Petitioner John Moss, III, respectfully asks this Honorable Court, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, to alter or amend the final judgment issued on February 15, 2002, as stated herein.

**JOHN MOSS, III**, Petitioner,

--By Counsel--

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406
**FRAGALE & SIMMONS**
604 Virginia Street, East--Suite 200
P. O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

6

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of **PETITIONER'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT** was served upon counsel of record on the 22nd day of February, 2002, through the regular course of the United States Postal Service, postage prepaid, addressed as follows:

> Michelle Drummond
> Assistant Prosecuting Attorney
> Kanawha County Judicial Court Annex Bldg
> 111 Court Street
> Charleston, West Virginia 25301
> (304) 357-0300

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**JOHN MOSS, III,**

    Petitioner,

v.              Civil Action No. 94-MISC-663

**GEORGE TRENT**, Warden of the
West Virginia State Penitentiary,

    Respondent.

### PETITIONER'S MOTION TO HAVE PRESENT COUNSEL
### APPOINTED FOR APPEAL

   Petitioner John Moss, III, respectfully moves this Court to have present counsel appointed to represent Petitioner on appeal, for the following reasons:

  1.  On February 15, 2002, this Court issued its **AMENDED MEMORANDUM ORDER DENYING HABEAS RELIEF**.

  2.  In that **ORDER**, this Court addressed one of the issues relating to Petitioner's "Fred Zain" habeas corpus claim that had not been addressed by the previous orders entered by this Court's predecessor.

  3.  After addressing that issue and rejecting Petitioner's argument, this Court dismissed this habeas corpus action from the docket.

  4.  On February 22, 2002, Petitioner timely filed **PETITIONER'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT**, noting that although the emphasis in this case always has been on the "Fred Zain" issue, Petitioner did have other claims raised in his petition that were placed on hold because this issue was so critical and dispositive.

5.   In fact, the present case is the only one of the habeas corpus proceedings filed after the West Virginia Supreme Court issued its decision in *In the Matter of an Investigation of West Virginia State Police Crime Laboratory, Serology Division*, 190 W.Va. 321, 438 S.E.2d 501 (1993), where Fred Zain not only was the **only** serologist to test the critical evidence found at the scene of the crime, and the **only** serologist to testify in his trial, but also Fred Zain **actually went to the scene of the crime and gathered the critical evidence personally**.

6.   In light of these facts, Fred Zain's personal involvement in this case could not have been any greater, particularly since it was his testimony alone that permitted the jury to decide between the original confession given by Paul Reggettz and the subsequent confession forced out of Petitioner, who at the time was a seventeen year old boy.

7.   Because, Petitioner respectfully submits, this case cries out for correction and resolution by the West Virginia Supreme Court, he intends to appeal this Court's resolution of the "Fred Zain" issue.

8.   As noted in the motion pending before this Court, Petitioner would prefer having the February 15, 2002 **ORDER** amended so that the "Fred Zain" issue could be appealed now, leaving any undeveloped issues to be resolved at a later time, if necessary.

9.   However, regardless of how this Court resolves the pending motion, Petitioner is in a position where this case is ripe for appeal.

2



10. Present counsel was hired by Petitioner's family, pursuant to the procedure approved by the West Virginia Supreme Court in Syllabus Point 3 of *State ex rel. Rojas v. Wilkes*, 193 W.Va. 206, 455 S.E.2d 575 (1995).

11. Through this procedure, all of the expert witness and court reporter costs incurred in developing the record in this proceeding were paid by Public Defender Services.

12. Petitioner and his family lack the funds necessary to retain present counsel for the appeal.

13. Present counsel is willing to pursue an appeal in this case as appointed counsel.

14. Since present counsel has read most of the first trial transcript, all of the second trial transcript, all of the Paul Reggettz hearing transcripts, all relevant pleadings and orders in both cases, and was involved in developing the scientific issues and the record in this habeas corpus action, it would be logical and efficient to permit present counsel to continue representing Petitioner on appeal.

15. Attached to this **MOTION** is a pauper's affidavit recently executed by Petitioner.

For the foregoing reasons, Petitioner John Moss, III, respectfully moves this Court to have present counsel appointed to represent Petitioner on appeal.

**JOHN MOSS, III**, Petitioner,

--By Counsel--

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406
**FRAGALE & SIMMONS**
604 Virginia Street, East - Suite 200
P.O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

570

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing **PETITIONER'S MOTION TO HAVE PRESENT COUNSEL APPOINTED FOR APPEAL** was mailed to counsel of record on the 18th day of March, 2002, addressed as follows:

Michelle Drummond
Assistant Prosecuting Attorney
Kanawha County Judicial Court Annex Bldg
111 Court Street
Charleston, West Virginia 25301
(304) 357-0300

Lonnie C. Simmons

5

IN THE  Circuit  _____ COURT OF _____ Kanawha _____ COUNTY, WEST VIRGINIA

John Moss, III  _____ v. _____ George Trent _____   Case No.  94-MISC-663

Plaintiff  _____ Defendant or Respondent

02 MAR 21  AM 10:11

## AFFIDAVIT OF INDIGENCY AND APPLICATION:
### ELIGIBILITY FOR WAIVER OF FEES, COSTS, OR SECURITY IN A CIVIL CASE

### A.  Information for the Applicant:

1.  You will be allowed to file and carry on your civil proceeding without giving security or paying fees or costs that would otherwise be required, if the court finds that you meet the official financial guidelines.

2.  You must file a separate affidavit and application anytime your financial situation no longer meets the official guidelines or anytime the court orders you to do so.

3.  At any time you may request or the court may require review of your eligibility for a waiver; and at any time the court may require you to pay fees or costs previously waived or to pay future fees or costs.

When you sign this form, you will have to swear or affirm that you have completely and truthfully provided all information sought, to the best of your knowledge and ability. *If you knowingly give any incomplete and/or false information, you may be prosecuted for the crime of false swearing.*

5.  The information you give in this form will be confidential only in a domestic violence or a divorce case.

6.  Except for signatures, all information must be clearly printed.
============================================================
### B.  Information about You and Your Case:

1a. Name: _____ John Moss, III _____   b. Telephone Number: _____

c. Address _____ MOCC _____

2.  Describe what is involved in your case: _____ Post conviction Motion, relating to civil

case number 94-MISC-663.

93-94

SCA-C&M 201/9-93                                                    (continued)

3a. Do you have a lawyer?   No

b. Have you paid or will you have to pay your lawyer?   No

c. Will you have to pay your lawyer only if you win?   No

C. Information about Your Financial Situation:

1. What is your current yearly <u>household</u> net (take-home) income from <u>all</u> sources (salary or wages, business(es), government payments, rents, pensions, interest, etc.): $   None

2a. List the names and relationships to you of all the persons supported by this income, whether or not they are household members:   None

b. What is the total number of these persons?   None

3. How much money do you and your household members have in cash, checking and savings accounts, deposit certificates, and/or bonds (<u>liquid assets</u>)? $   None

4a. List your regular <u>monthly</u> household debt-payment and other expenses (mortgage, car, and other debt payments; food, rent, utilities, medical transportation, child-care, and other expenses):   None

. What is the total amount of these monthly expenses? $   None

a. List all cars, trucks, motorcycles, or recreational vehicles (all-terrain vehicles, motor homes, 1owmobiles, boats), including their make, model, and year, that you and your household members own ollateral assets readily convertible to cash):   None

What is the total value of these items? $   None

List all real estate (houses, lots, land, rental property, other commercial property) that you or your sehold members own:   None

What is the total value of these items? $   None

&M 201-2/9-93

**7. What would the consequences be for you if a waiver of fees, costs, or security is denied?** _The_

_Court will not be able to on the motion in this case, which will deny me due process._

_____

_____

By signing my name on this form, I swear to or affirm:  (1) the completeness and truthfulness, to the best of my ability and knowledge, of the information I have provided and (2) my belief that I have a right to a waiver.

Signature of Affiant-Applicant: _John Moss III_

Taken, subscribed, and sworn or affirmed before me, by the person whose signature appears above, on this _15_ day of _March 2002_ , in _Fayette_ County, West Virginia.

Signature of Notary (Clerk or Deputy Clerk): _Sheila Hosey_

> OFFICIAL SEAL
> NOTARY PUBLIC
> STATE OF WEST VIRGINIA
> SHEILA HOSEY
> MOUNT OLIVE CORRECTIONAL CENTER
> 1 MOUNTAINSIDE WAY
> MOUNT OLIVE, WV 25185
> My commission expires December 24, 2006

==============================================================

### For Court Use Only

The affiant's application for a waiver is (clerk:  initial one) ____✓____ granted _____ denied.

Date: _3-21-02_ Signature of Clerk or Deputy: _Cathy S. _____

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III

v.                                          Civil Action No. 94-MISC-663
                                            Judge Louis H. Bloom


GEORGE TRENT, Warden of the
West Virginia Penitentiary


### ORDER REINSTATING ACTION TO
### THE DOCKET AND SETTING BRIEFING SCHEDULE

The petitioner, John Moss, III, was convicted on April 24, 1990, in the Circuit Court of

Kanawha County on three counts of first degree murder.  Thereafter he filed the above-styled

habeas corpus action seeking relief from his conviction on various grounds, including the

involvement of the infamous State Police serologist, Fred Zain, in the underlying prosecution.

At the behest of the petitioner, the Court entered an amended memorandum order

clarifying an order entered on September 10, 1998, by the predecessor judge.  In the amended

memorandum order, entered February 15, 2002, this Court disposed of the Zain issue and

dismissed this case from its docket.  On February 22, 2002, the petitioner filed his "Petitioner's

Rule 59(e) Motion to Alter or Amend Judgment" asking the Court to modify the February 15,

2002, Order on the grounds that there were additional issues raised in his habeas petition that

have not been resolved by this Court. The petitioner seeks to appeal the Zain issue while

preserving his right to litigate the remainder of his habeas issues at a later date.

On March 18, 2002, the petitioner filed "Petitioner's Motion to Have Present Counsel

Appointed for Appeal" in which he reiterated his desire to take an immediate appeal from the

Zain issue ruling while leaving the remaining issues unaddressed.

This Court will not give its imprimatur to piecemeal litigation.  Accordingly, the Court hereby **ORDERS** that this action be reinstated to the Court's active docket and that the petitioner file a brief in support of any and all outstanding issues raised in his habeas petition and not heretofore ruled upon by the Court.  The petitioner's brief shall be filed on or before April 15, 2002.  A brief in response shall be filed on or before May 6, 2002.  Any reply brief by the petitioner shall be filed on or before May 17, 2002.  A hearing in this case shall be held in the Fifth Floor Courtroom of the Judicial Annex in Charleston, West Virginia, on May 24, 2002, at 3:00 p.m. at which time the parties shall be prepared to address any and all outstanding issues. The Court will not entertain any argument regarding the Zain issue, which has been disposed of in the Court's order entered on February 15, 2002.  To the extent that "Petitioner's Rule 59(e) Motion to Alter or Amend Judgment" seeks leave to file an interlocutory appeal as to the Zain issue, it is **DENIED**.  "Petitioner's Motion to Have Present Counsel Appointed for Appeal" is hereby **DENIED** as premature.

Accordingly, the parties are hereby **ORDERED** to comply with the schedule set forth above.

The objection of any party aggrieved by entry of this Order is noted and preserved.

The Clerk of this Court is hereby directed to forward an attested copy of this Order to each counsel of record.

**ENTERED** this 28ᵗʰ day of March 2002.

**Judge Louis H. Bloom**

Date: 3-28 02
Certified copies sent to: PH / LS / Mt. Olive
___ counsel of record
___ parties
___ other
        (please indicate)
By:
___ certified/1st class mail
___ fax
___ hand delivery
___ interdepartmental
Other directives accomplished:

Deputy Circuit Clerk

RECORDED

2

5 n 6

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

                    Petitioner,

v.                                                              Civil Action No. 94-MISC-663

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

                    Respondent.


## PETITIONER'S MOTION FOR RELIEF
## ON THE TWO REMAINING ISSUES
## RAISED IN THE HABEAS CORPUS PETITION

### I.

### Introduction

In the March 28, 2002 **ORDER REINSTATING ACTION TO THE DOCKET**

**AND SETTING BRIEFING SCHEDULE**, this Court ordered Petitioner John Moss, III, to file a

"brief in support of any and all outstanding issues raised in this habeas corpus petition and not

heretofore ruled upon by the Court."  In the habeas corpus petition, in addition to the "Fred Zain"

issue, Petitioner further alleged that his constitutional rights under the Fifth, Sixth, Eighth and

Fourteenth Amendments to the United States Constitution and Article III, Sections 1, 5, 10, and 14

of the West Virginia Constitution were violated by the following:

> 2.      The presentation by the State of incorrect, false,
> misleading, overstated, and unscientific evidence.

3.    The admission of the alleged confessions given by Petitioner, which resulted from a violation of his constitutional rights. Although the issues regarding the confessions have been extensively litigated in many hearings, Petitioner reserves the right to develop new information and new arguments with regard to the alleged confessions that were previously unavailable.

In this **MOTION**, Petitioner will address these two remaining issues.  Petitioner respectfully submits that all three issues raised in his habeas corpus petition, either together or separately, require that his convictions be set aside and that an order be entered either granting a judgment of acquittal or a new trial.

## II.

### Applicable Standard of Review:
### Harmless Error Standard For Constitutional Errors

· Petitioner recognizes that this Court specifically has held that it "will not entertain any argument regarding the Zain issue, which has been disposed of in the Court's order entered on February 15, 2002." In this **MOTION**, Petitioner will honor that request.  However, there is some overlap with respect to the scientific issue raised and the "Zain" issue.  Therefore, in order to explain the factual basis for the allegation that the State presented "incorrect, false, misleading, overstated, and unscientific evidence," Petitioner necessarily will have to make reference to the incorrect, false, misleading, overstated, and unscientific evidence offered by Fred Zain.

The distinction between how these two related issues are to be treated by the Court has to do with the applicable standard.  With respect to the "Fred Zain" issue, the Court was required to follow Syllabus Point 2 of *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993), which presumptively treated all of Fred Zain's tests to be incorrect and his testimony to be false.  For reasons not made clear in the *Laboratory*

2

578

decision, the West Virginia Supreme Court applied the harmless error standard for **nonconstitutional** errors to all cases where the "Fred Zain" issue was raised. As noted in the habeas corpus petition, Petitioner argued that even though the West Virginia Supreme Court applied the wrong legal standard, Petitioner asserted that it was not that important because under any standard, the *Laboratory* decision required the granting of habeas corpus relief, particularly since Zain actually gathered the evidence himself and was the only serologist to testify at Petitioner's trial.

With respect to the scientific issue raised in this **MOTION**, Petitioner first has the burden of actually proving that the serological evidence presented was incorrect, false, misleading, overstated, and unscientific. Thus, Petitioner does not benefit from any presumption. However, once Petitioner meets this burden, the Court is required to apply the harmless error standard for **constitutional** errors. This standard is summarized in Syllabus Point 5 of *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975):

> Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.

*See also* Syllabus Point 3, *State v. Barrow*, 178 W.Va. 406, 359 S.E.2d 844 (1987); Syllabus Point 1, *Maxey v. Bordenkircher*, 175 W.Va. 49, 330 S.E.2d 859 (1985); *United States v. Hasting*, 461 U.S. 499, 510-11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96,107 (1983); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Respondent has made the resolution of this scientific issue much easier for the Court because Respondent **did not present any expert witness to refute the testimony** of Dr. David Bing, who was retained by Petitioner and whose deposition is a part of the record in this case. Furthermore, Respondent did not refute the findings made by the experts from the American Society

3

of Crime Laboratory Directors (ASCLD), who conducted an extensive investigation into the practices and procedures followed by the West Virginia State Police crime laboratory. Many of the problems found in that investigation are present in this case and stand unrefuted by any expert or evidence from Respondent. Thus, Petitioner respectfully submits that under the harmless error standard for constitutional errors, he is entitled to habeas corpus relief on this scientific issue, which is separate and apart from the "Fred Zain" issue.

The same harmless error standard for constitutional errors applies to the admission of Petitioner's alleged confession. Obviously, the admission of a confession given after the suspect has been physically and mentally abused by a law enforcement officer is a constitutional violation requiring the application of the harmless error standard for constitutional errors.

One of the main differences between the two scientific issues and the confession issue is that Petitioner raised the admissibility of his confession as one of his issues on appeal. The West Virginia Supreme Court repeatedly held that a habeas corpus petitioner may raise issues in a habeas corpus petition that were raised in the appeal. The fact that Petitioner's appeal was denied does not preclude Petitioner from raising the same or similar issues in a habeas corpus proceeding. In the Syllabus of *Smith v. Hedrick*, 181 W.Va. 394, 382 S.E.2d 588 (1989), the West Virginia Supreme Court held:

> This Court's rejection of a petition for appeal is not a decision on the merits precluding all future consideration of the issues raised therein, unless, as stated in Rule 7 of the West Virginia Rules of Appellate Procedure, such petition is rejected because the lower court's judgment or order is plainly right, in which case no other petition for appeal shall be permitted.

4

One of the best cases demonstrating how issues raised in an appeal may be raised again with a different result in a habeas corpus proceeding is *Dietz v. Legursky*, 188 W.Va. 526, 425 S.E.2d 202 (1992). The first degree murder conviction of Mr. Dietz had been affirmed in *State v. Dietz*, 182 W.Va. 544, 390 S.E2d 15 (1990). One of the issues raised on appeal was the question of whether it was error for the trial court to state on the record that a mistrial would be declared if the defendant did not testify, but when the defendant decided not to testify, no mistrial was granted. On appeal, the West Virginia Supreme Court did not find this action by the trial court to be error. However, following the affirmance of his conviction, Mr. Dietz sought habeas corpus relief and raised this same issue. After being allowed to develop a factual record in support of this claim, the West Virginia Supreme Court reversed Mr. Dietz's conviction on this same ground. Thus, clearly the denial of a petition for appeal by the West Virginia Supreme Court in no way limits or restricts the ability of an inmate to raise the same or similar issues in a subsequent habeas corpus proceeding.

As *Dietz* demonstrates, by raising a similar issue in a habeas corpus proceeding, the inmate is able to strengthen his argument where evidence that was developed after the trial is considered along with the argument. Thus, by developing a more extensive evidentiary record, the factual and legal basis for the argument, which may have been raised on appeal, may become much more persuasive and even controlling.

### III.

### Relevant Facts From Habeas Corpus Petition

Before filing his habeas corpus petition, Petitioner's counsel reviewed the existing transcripts, requested that any hearings held in the case of *State v. Paul Reggettz, III*, CR-80-F-121, be transcribed, deposed Robert Murphy and Dr. David Bing, obtained all documents relating to the

5

serological testing performed, and obtained documents from the ASCLD investigation and other sources in connection with the whole Fred Zain issue. Counsel for Petitioner will check with the Clerk's office to make sure that all of these materials are in the record before this Court.

As for the relevant facts, Petitioner relies upon the detailed allegations in his habeas corpus petition, which are incorporated by reference herein. Most of these allegations are supported by citations to the record and have not been refuted by any pleading filed or evidence presented by Respondent. Additional facts will be discussed in connection with the issues raised.

## IV.

## Argument

### A.

*Petitioner's Constitutional Rights Violated By Admission*
*of incorrect, false, misleading, overstated, and unscientific evidence*

The record on the remaining issue with respect to the scientific evidence consists of the available notes and reports relating to the testing performed by Fred Zain and Robert Murphy in this case, deposition of Robert Murphy, who was the head of the serology laboratory for the West Virginia State Police, and deposition of Dr. David Bing, who was the Scientific Director of Laboratories of CBR Laboratories, a subsidiary of the Center for Blood Research in Boston, Massachusetts, which is affiliated with Harvard Medical School. Respondent did not offer any expert witness in response to any of the opinions given by Dr. Bing.

The significance of Mr. Murphy's deposition was in identifying the person responsible for conducting the different tests performed in this case. Generally speaking, Mr. Murphy conducted the testing of the known blood samples, while Zain tested the evidentiary

samples he personally obtained from the crime scene. The documents attached to Mr. Murphy's deposition are marked "Murphy" or "Not Murphy" to identify the handwriting of the person involved in developing that document.

Dr. Bing was unable to analyze the actual results allegedly obtained by Zain or Mr. Murphy because they failed to preserve any photographs of the electrophoretic gels. This failure to otherwise preserve these test results, which prevented Petitioner either from having his own tests performed or effectively and thoroughly cross-examining Zain, would require these alleged results to be inadmissible in a new trial. This point was made in Syllabus Point 4 of *State v. Thomas*, 187 W.Va. 686, 421 S.E.2d 227 (1992), which was based upon basic due process principles that were recognized in cases preceding Petitioner's trial:

> When the government performs a complicated test on evidence that is important to the determination of guilt, and in so doing destroys the possibility of an independent replication of the test, the government must preserve as much documentation of the test as is reasonably possible to allow for a full and fair examination of the results by a defendant and his experts.

The only items Dr. Bing could analyze were the report and the laboratory notes found. In his deposition, Mr. Murphy was unable to identify whether the handwritten documents attached to his deposition were the raw data sheets or compilation sheets drafted from raw data sheets. (Murphy Dep. at 32). For example, the document marked with Bates No. 10 was identified by Mr. Murphy as being in his handwriting.

If this document was the raw data sheet, as opposed to a later compilation sheet, it would support Petitioner's theory, asserted in his habeas corpus petition, that the blood sample illegally obtained from Petitioner on January 30, 1980, when he was being held in a juvenile facility

7

in Ohio had been provided to the West Virginia State Police crime laboratory. The record is unclear with respect to the final disposition of this illegally obtained blood sample. In *In the Interest of Moss*, 170 W.Va. at 36, 295 S.E.2d at 546, the West Virginia Supreme Court noted, "When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. This apparently was done."

This document lists all of the known samples tested by Mr. Murphy, including Petitioner's blood sample. The report on its face notes that Mr. Murphy had all of the known blood samples no later than January, 1980, except for Petitioner's sample. However, Petitioner's sample is included on the sheet marked as Bates No. 10 and is included with all of the other samples, which Mr. Murphy had by January, 1980.

After reviewing all of the available materials, Dr. Bing explained why he believed the data generated in this case was **meaningless**:

> Well, by that I mean that the -- there is so much data on these stains that weren't analyzed, it would seem to me there should be some extensive notes backing that material up. **So that in that -- in the context of not being able to look at the backup data, other than the summaries, it becomes, you know, almost impossible for me to either agree or disagree with the final outcome of the results. And that's what I mean by when I say it's meaningless. I can't agree, I can't disagree. All I can say is what was reported."** (Emphasis added). (Dr. Bing Dep. at 21-22).

After commenting on the lack of any written protocols, quality control, quality assurance programs, original laboratory notes and photographs of the testing performed, Dr. Bing went through a series of general scientific principles applicable to the serological testing performed in this case. The purpose of this analysis was to demonstrate the flaws in the conclusions reached based upon the data and the overstating of the significance of this testing at trial.

First, he noted that it is important to obtain the known blood types of all potential donors of blood at the scene of the crime. In this case, the potential donors of blood were Vanessa Dale Reggettz, Paul Eric Reggettz, Bernadette Reggettz, and Paul Reggettz, III. (Dr. Bing Dep. at 22-23). Second, at a crime scene, where the origin of all evidentiary stains is unknown, it cannot be assumed that the stains originated from a single source. (Dr. Bing Dep. at 24). Third, only those types obtained from the evidence that are different from any of the types obtained from known possible donors provides relevant and meaningful information to the forensic scientist. Dr. Bing gave the following hypothetical to illustrate this general principle:

> Think of it another way. Suppose that the distinguishing factor of a blood stain was something that you can actually visualize. Suppose that you could look at this blood stain and you could say unequivocally, "I know that that blood stain came from somebody who has brown hair." Brown hair is a genetic marker. In some ways it's very similar to, say, a blood type antigen because there is a certain -- The color or the reason it's brown is due to certain genetic markers that result in color. So you say I know -- It doesn't make any difference how I know it. I know this blood stain is from somebody who has brown hair. Now, you get your list of possible donors to that and you -- and they all have brown hair. You can't say that any one person is more likely than another to be a donor to that blood stain.

> Now, let's say if we can do a little bit more. Let's say, "Well, I can" -- "I know that the person who contributed to this blood stain has brown hair and is left-handed." So you now look at your candidates, and you look at them and you say, "Well, three of them are left-handed and say two are right-handed." Well, the two who are right-handed are automatically eliminated, but you still can't distinguish between the other three because left-handedness and brown hair color are the same in all of them.

> So that if you have a series of markers and they're identical in all the people that are being tested, then you can't really use that to try to distinguish the source of a given blood stain. You can only look to the differences, not to the similarities, because the question that is being asked here, the scientific question that is being asked is who could possibly be a biologic donor to this blood stain.

9



And, secondly, I don't know whether there's a single person or from a bunch of people. As I stated in my affidavit, is it a single source sample or many people are sources of the sample. So you have to look to the differences between individuals who you test rather than to their similarities. (Dr. Bing Dep. at 25-26).

Fourth, as a general rule, where a type from a known possible donor of a blood stain matches a type from the blood discovered, it is not appropriate to include that type in calculating the frequency that the blood was deposited by a particular suspect. Dr. Bing illustrated this general principle as follows:

Let's take another genetic typing you can sort of visualize. Let's suppose that the blood sample that you know came from somebody who has brown hair, is left-handed, and is an albino, has no pigment color in their skin at all. Albinism is a very rare occurrence in the human population. It's very rare indeed. Now, at that point, the fact that you now have three individuals who are left-handed and have brown hair, but only one of them is an albino. You say that's a very rare event. It could only have been that person.

So you can use that to reason backwards and say, `Alright, albinism is a very rare event, so I know that this blood stain came from an albino.' That could only have occurred in one out of a very few number of people who have this inherited genetic trait.

That is separate from the question of saying, "How often is the combination of brown hair, left-handism and albinism found in the general population?" That's a separate question. That's how often do I find these together in the general population. You can make that estimate as well. But that's a general question about the population. That is not a question about the sample. The only thing that distinguishes that sample is what is different about that sample than is in the known individuals that you're testing. So you've got a -- Those two things have to be kept separate.

And that's what I mean by this, that you can't take a combination of factors that are found in the general population and relate it to a specific sample. All you can say is that if these are present and I now have data to show that are indeed present, this is how often I would expect to find that combination of markers in the

10



general population, providing they are behaving and acting independent of each other, because that's the other issue in terms of being able to do that, they have to be behaving independently. They have to be what we say scientifically, they sort independently. (Dr. Bing Dep. at 28-29).

Finally, Dr. Bing noted that serological typing is unable to determine when a particular evidentiary stain was deposited. (Dr. Bing Dep. at 37). Thus, from a scientific point of view, there is no objective basis for a scientist to conclude that a particular stain actually resulted from the criminal episode or may have been deposited at some time earlier.

The remainder of Dr. Bing's deposition applies these general principles to the facts. He concludes that the only blood types of significance are PGM, Gc, and EsD. The remaining types obtained from the blood stains found at the crime scene do not provide significant information because the remaining types obtained from the evidence were identical to the types obtained from at least one or more of the known possible donors. (Dr. Bing Dep. at 38). Dr. Bing further testified that he agreed with the scientific analysis of the evidence set out in the **PETITION**. (Dr. Bing Dep. at 39).

In addition to Dr. Bing's testimony, Petitioner further relies upon the August 6, 1993 report issued by ASCLD to demonstrate that certain parts of Zain's evidence were false, misleading, exaggerated, and scientifically unsound. The ASCLD experts examined a number of cases analyzed in the State Police Crime Laboratory 1986 through 1989. While the cases examined occurred after the initial testing performed in this case, there is no evidence and no reason to believe that any of the practices found by the ASCLD experts to be deficient or just plain wrong were any different earlier. Thus, based upon this report, the Court may conclude that at the time the testing was performed in the State Police Crime Laboratory in this case, there was no quality assurance program, no procedures manual, and no use of controls or standards.

Of particular importance to this Court's consideration is the failure of Zain to use any controls or standards in the testing he performed in this case. Petitioner can demonstrate that Zain failed to use controls or standards in this case by referring the Court to the laboratory documents provided. The ASCLD criticism was that any time blood or other evidence is found on some object, a sample from the unstained areas of that object, sometimes referred to as the substrate, should be taken "to ensure that the material itself (substrate) was not rendering a false positive interference. The use of such controls is imperative." ASCLD report at 5. In reviewing Zain's documentation, there is no reference to any substrate samples being tested on any of the items where blood allegedly was found. Thus, Petitioner has demonstrated that Zain's testing in this particular case was in fact performed consistent with ASCLD's criticism of the State Police Crime Laboratory.

In reviewing the ASCLD report, the Court should note that with respect to several of the cases reviewed, there was a severe lack of documentation and preservation of the test results, as in the present case, rendering it impossible for these experts to complete their analysis. The problem with overstating the statistical matches found with several of the cases examined was repeated in the present case. For example, in the ASCLD report, in connection with the examination of the data from the Robert Wallace case, the experts noted that Zain had included a marker in calculating the percentage of the population who might be the semen donor that matched the victim's known marker. By committing that error, Zain was able to testify that only 6.8% of the population would have the same markers as those found from the evidence, when, in fact, the number should have been 28%. This same error of exaggerating the statistical significance of the data was committed by Zain in this case. Petitioner respectfully refers the Court to the extensive analysis of the typings included in his original petition.

12

In its conclusion, the ASCLD experts stated:

> Irregularities were found in most of the cases reviewed in this investigation, and one, therefore, believed to have been the result of systematic practice rather than an occasional inadvertent error. The majority of the irregularities were in the incompleteness of records or appeared to affect the weight given to a genetic match of evidence samples to possible donors.

Thus, based upon the conclusions reached by these ASCLD experts regarding the lack of documentation and exaggeration of results, the West Virginia Supreme Court ordered that all inmates have the right to pursue a habeas corpus action in which the trial court is to assume that all of Zain's testing and testimony is false.

There is no question that if the ASCLD experts had reviewed the data in this case, as did Dr. David Bing, they similarly would have concluded that the data was "meaningless" due to the lack of documentation and the overstatement of the statistics generated. This fact is particularly true in the present case where Respondent was unable to provide any expert to refute Dr. Bing's conclusions.

Furthermore, as noted in the ASCLD report and in the habeas corpus petition filed in this case, Zain repeatedly and consistently lied about his credentials. In this case, in an *in camera* hearing held in the second trial, Zain testified as follows:

> Q       And what training had you received at that time in performing -- to perform such analysis?
>
> A       My formal education was a degree in biology, with a minor in chemistry.
>
> I also received an Associate Degree in Police Sciences, and specialized training at the FBI academy at Quantico, Virginia, relating to the specific field of forensic science, and more particularly, serology, or tests and methods utilized in the identification of blood and body fluids.

> Both basic and advanced courses were obtained by me from the FBI Academy and other specialized training sessions that I had attended, as well as scientific organizations which I belong to, such as the Southern Association of Forensic Scientists, and other peer groups." (SECOND TRIAL, Tr. 1050).

Virtually the same testimony about his credentials was presented to the jury shortly thereafter. (SECOND TRIAL, Tr. 1066-67). Trooper Zain was indicted for perjury on July 22, 1994, for giving approximately the same answer in the case styled *State v. Paul Walker*, Felony No. 91-F-62. As was discovered during the special investigation headed by Special Judge James O. Holliday, Zain never obtained a minor in chemistry, which was not even offered at that time by the college he attended. Furthermore, as for Zain's FBI training, he either flunked or failed to complete at least two FBI training sessions he attended. Moreover, if Zain's history of fabricating evidence, as discovered during the special investigation, had been known at the time of Petitioner's first trial, his testimony and test results would have been given little or no weight by the jury and may have been found too unreliable to be admitted into evidence.

When an expert lies about his credentials, his intention is to convince the jury to give his opinions greater weight, based upon his asserted expertise. Thus, it is a very serious due process violation where an expert witness lies about his credentials. In *People v. Cornille*, 95 Ill.2d 497, 69 Ill.Dec. 945, 448 N.E.2d 857 (1983), a case cited by the West Virginia Supreme Court in *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993), the Illinois Supreme Court was presented with a situation where an arson expert lied about his education and other credentials. The facts in *Cornille* are remarkably similar to the present facts in that by the time the defendant in *Cornille* had filed his habeas corpus action, the alleged arson expert had already been indicted for perjury for lying about his education and

credentials. The Illinois Supreme Court held that there was a reasonable likelihood that the jury's decision may have been affected by this expert's false testimony, which made him appear to be more credible. Consequently, the defendant in *Cornille* was granted a new trial on this basis alone.

Finally, it cannot be emphasized enough that the rule developed in the *Laboratory* decision is based upon a number of cases decided by the United States Supreme Court where false evidence was presented to the jury. *Napue v. Illinois*, 360 U.S. 264 (1959); *Giglio v. United States*, 405 U.S. 150 (1972); *Miller v. Pate*, 386 U.S. 1 (1967). The United States Supreme Court found that it is a due process violation for a person to be convicted, in part, upon false testimony.

Consequently, based upon the foregoing analysis, and the materials and briefs provided previously, it cannot be disputed that Petitioner's conviction was obtained, in part, upon the false, misleading, exaggerated, and scientifically unsound testimony of Fred Zain, which constitutes a violation of Petitioner's due process rights. For Respondent to overcome this constitutional error, he would have to establish that the error was harmless beyond a reasonable doubt.

Petitioner respectfully submits that Respondent can never meet this high burden, particularly under the facts of this case. Zain's false, misleading, exaggerated, and scientifically unsound testimony was the critical evidence the jury relied upon to determine which of the two confessions to accept. As applied to this case, this standard poses an insurmountable burden for Respondent and requires that Petitioner be provided the relief requested on this issue.

15

*B.*

*Petitioner's Constitutional Rights Violated*
*To Obtain An Involuntary Confession*

Obviously, the issue of whether Petitioner's confession was obtained in violation of his constitutional rights has been litigated fairly extensively. *See State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988); *In Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33 (1982). The issue also was raised in his appeal following his second trial, but that appeal was not granted by the West Virginia Supreme Court.

In *State v. Moss*, the West Virginia Supreme Court held that the third confession allegedly given by Petitioner was inadmissible, but that the previous two confessions were admissible. Thus, in order for Petitioner to prevail on this issue in the present habeas corpus action, he was obligated to develop additional facts not considered previously.

In the present case, Petitioner has proven, under both the *Laboratory* standard and the harmless error standard for constitutional errors, that Fred Zain's testing and testimony was false, misleading, inaccurate, exaggerated, and scientifically unsound. This fact is pertinent because the officers who questioned Petitioner early in the interrogation asked him, "'Why do you think we took your blood?'" *State v. Moss*, 180 W.Va. at 373, 376 S.E.2d at 578.

Furthermore, this Court is the first to have the benefit of the transcripts developed in the *Reggettz* case. As noted in *State v. Moss*, 180 W.Va. at 373, 376 S.E.2d at 578, in evaluating the admissibility of a confession, the totality of the circumstances must be considered. These transcripts demonstrate that a trial court had found the confession given by Mr. Reggettz to be voluntarily and intelligently given, in accordance with his constitutional rights. Thus, this Court is faced with two

16

confessions from two separate individuals where the trial courts involved held that both confessions were constitutionally valid.

In viewing both confessions, the Court should note that Mr. Reggettz is the first person to confess to these horrible murders and is the first person to arrive at the crime scene. The officers who obtained the confession from Mr. Reggettz also were involved in obtaining the confession from Petitioner. Mr. Murphy noted in his deposition that the investigating officers were so convinced by Mr. Reggettz's confession that when they were confronted with Zain's false, misleading, exaggerated, and scientifically unsound test results, they asserted that Reggettz must have planted some blood evidence in his house. (Murphy Dep. 25-27).

When Petitioner allegedly confessed, he was still a teenager and had been picked up by the police while he was incarcerated in an Ohio juvenile facility. Petitioner testified that he was subjected to repeated physical abuse by Trooper Michael Don Smith, who crawled into the back seat beside Petitioner while both of Petitioner's hands were handcuffed to the headrest. (FIRST TRIAL PRETRIAL SUPPRESSION HEARING, Tr. 303-05). Trooper Terry Williams and Trooper Smith confirmed the fact that Petitioner was handcuffed to the front seat head rest and that Trooper Smith did crawl into the back seat with Petitioner to begin the questioning. (SECOND TRIAL, Tr. 509, 937). Even though Trooper Williams and Trooper Smith denied the beating allegations, both admitted that Petitioner's "willingness" to discuss the Reggettz murders was triggered when Trooper Smith said to Petitioner, "`Why do you think we got your blood?'" (SECOND TRIAL, Tr. 511-14, 944-45).

17

The fact that the officers involved were willing to violate the law in obtaining a sample of blood from Petitioner while he was incarcerated in an Ohio juvenile facility provides further evidence of their willingness to flaunt the law in an attempt to convict any person of these horrific crimes. Thus, it is not difficult to believe that these same officers would beat Petitioner in an effort to get him to confess to a crime that previously only Mr. Reggettz had admitted committing.

If the Court is inclined to believe that the confession obtained from Mr. Reggettz had been coerced through physical force, then that belief supports Petitioner's claim that he received similar treatment from these same officers. This point is made based upon a comment made by this Court's predecessor in footnote 2 of the September 10, 1998 order, where the predecessor implied that Mr. Reggettz had been coerced into confessing. Both Mr. Reggettz and Petitioner testified under oath that they were subjected to threats and beatings by the interrogating officers prior to giving their respective confessions. Thus, Petitioner's testimony simply provides additional evidence that at that time, these officers were more concerned with obtaining a confession than with complying with Petitioner's constitutional rights.

Petitioner respectfully submits that in light of the totality of the circumstances, with the additional issues developed in this habeas corpus action, Petitioner's constitutional rights were violated by these interrogating officers in connection with the confessions he allegedly gave. Consequently, Petitioner is entitled to habeas corpus relief on this claim as well.

594

## V.

## Conclusion

For the foregoing reasons, and for all of the reasons stated in the briefs filed on the "Fred Zain" issue, Petitioner John Moss, III, respectfully moves this Court to set aside his convictions, and to enter a judgment of acquittal or to order a new trial.

**JOHN MOSS, III**, Petitioner,
--By Counsel--

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406
**FRAGALE & SIMMONS**
604 Virginia Street, East - Suite 200
P.O. Box 3785
Charleston, West Virginia 25337
(304) 342-4616

19



## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing

**PETITIONER'S MOTION FOR RELIEF ON THE TWO REMAINING ISSUES RAISED**

**IN THE HABEAS CORPUS PETITION** was served upon counsel of record on the 15th day of

April, 2002, by the United States Postal Service, postage prepaid.

Michelle Drummond
Assistant Prosecuting Attorney
Kanawha County Judicial Court Annex Bldg
111 Court Street
Charleston, West Virginia 25301
(304) 357-0300

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406

20

Revised Feb. 1998

**IN THE CIRCUIT COURT OF** ___KANAWHA___ **COUNTY**

JOHN MOSS, III

~~STATE OF WEST VIRGINIA~~

02 JUL -1 PM 2: 22

VS.

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**CASE NUMBER** ___94-MISC-663___

GEORGE TRENT, etc., et als,

## ORDER APPROVING PAYMENT OF DIRECT EXPENSES

On a former date ___John Moss III___ filed in this court an affidavit reciting financial inability to employ counsel for representation in connection with certain proceedings before this Court; and the Court being of the opinion the eligibility requirements of W.Va. Code § 29-21-1, et seq, were satisfied appointed ___Lonnie Simmons___ a licensed Attorney at Law practicing before the Bar of this Court as counsel.

Counsel informs this Court that in order to provide adequate representation it was necessary to retain to provide the following services to the defense:

Accordingly it is HEREBY ORDERED:

(1)    That the Clerk forward to Public Defender Services a certified copy of this Order together with a copy of the Public Defender Services' Direct Expense form; and

(2)    That Public Defender Services issue payment in the appropriate amount of $ ___30.80___ to:

___Connie L. Cooke, Reporter___, whose TIN is ___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___

**Tax Identification Number**

**ENTER THIS** ___1st___ , **DAY OF** ___July___ , ___2002___ .
    (date)                    (month)                    (year)

**JUDGE**

<u>**IMPORTANT NOTE:**</u> All required orders of court must be certified copies and must bear the Circuit Clerk's seal.

Date: 7-3-02  PA/LS
Certified copies sent to:
___ counsel of record
___ parties   CC (2) to mail to PDS
___ other
        (please indicate)
By:
___ certified/1st class mail
___ fax
___ hand delivery
___ interdepartmental
___ Other directives accomplished
Deputy Circuit Clerk

**RECORDED**

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

FILED

02 AUG -5 AM 10: 31

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

JOHN MOSS, III,

        Petitioner,

v.

        Civil Action No. 94-MISC-663
        Judge: Honorable Louis H. Bloom

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

        Respondent.

## NOTICE OF CHANGE OF ADDRESS

    **PLEASE TAKE NOTICE** that Lonnie C Simmons, counsel for Petitioner John

Moss, III, joined the law firm of DiTRAPANO BARRETT & DiPIERO effective August 1, 2002.

Copies of any pleadings or correspondence pertaining to the above-styled case should be forwarded

to his new mailing address, which is as follows:

        DiTRAPANO BARRETT & DiPIERO, PLLC
        604 Virginia Street, East
        Charleston, West Virginia 25301
        (304) 342-0133 - Phone
        (304) 342-4605 - Fax

              **JOHN MOSS, III**, Petitioner,
              --By Counsel--

Lonnie C. Simmons, WV State Bar I.D. No. 3406
**DiTRAPANO BARRETT & DiPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing NOTICE OF

**CHANGE OF ADDRESS** was served upon counsel of record on the 1st  day of August, 2002, by

the United States Postal Service, postage prepaid.

Michelle Drummond
Assistant Prosecuting Attorney
Kanawha County Judicial Court Annex Bldg
111 Court Street
Charleston, West Virginia 25301
(304) 357-0300

Lonnie C. Simmons
West Virginia State Bar I.D. No. 3406

2

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**JOHN MOSS, III,**

        Petitioner,

v.                                    Civil Action No.: 94-MISC-663
                                      Judge: Louis H. Bloom

**GEORGE TRENT**, Warden of the
West Virginia Penitentiary,

        Respondent.

**NOTICE OF HEARING**

    **PLEASE TAKE NOTICE** that on the 17th day of January, 2003, beginning at 2:30

p.m., and continuing from that time until complete, a final hearing will be held in the above-styled

case, before the Honorable Judge Louis H. Bloom, in his courtroom, at which time and place

you may appear to protect your interests.

                                               **JOHN MOSS, III**, Petitioner,
                                                   -- By Counsel --

Lonnie C. Simmons (W.Va. I.D. No. 3406)
**DITRAPANO, BARRETT & DIPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing **NOTICE OF HEARING** was served on counsel of record on the 18th day of November, 2002, by hand-delivery, to the following address:

Michele Drummond
Assistant Prosecuting Attorney
Kanawha County Judicial Building
111 Court Street, 3rd Floor
Charleston, West Virginia 25301
(304) 357-0300

Lonnie C. Simmons

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**JOHN MOSS, III,**

02 NOV 21 PM 3: 36

Petitioner,

v.

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

Civil Action No.: 94-MISC-663
Judge: Louis H. Bloom

**GEORGE TRENT**, Warden of the
West Virginia Penitentiary,

Respondent.

## ORDER

Pursuant to the agreement of the parties, Respondent has until November 27, 2002, to file his brief, and Petitioner will have until December 12, 2002, to file any reply brief. The final hearing in this case will be held on January 17, 2003, beginning at 2:30 p.m.

The objection of Petitioner to the reopening of the record is noted.

The Clerk is ordered to mail a certified copy of this **ORDER** to all counsel of record.

**ENTERED** this 21st day of November, 2002.

Honorable Judge Louis H. Bloom

Inspected by:

Lonnie C. Simmons (W.Va. I.D. No. 3406)
**DITRAPANO, BARRETT & DIPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133

**RECORDED**

Michele Drummond (W.Va. I.D. No. 4931)
Assistant Prosecuting Attorney
Kanawha County Judicial Building
111 Court Street, 3rd Floor
Charleston, West Virginia 25301
(304) 357-0300

Date: 11-21-02
Certified copies sent to:
___ counsel of record
___ parties
___ other _____ (please indicate)
By: _____
___ certified/1st class mail
___ fax
___ hand delivery
___ interdepartmental
Other directives accomplished: _____
Deputy Circuit Clerk

LS / PA

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III,

Petitioner,

v.                                                    No. 94-MISC-663

GEORGE TRENT, Warden,
West Virginia Penitentiary,

Respondent.

## MEMORANDUM OF THE RESPONDENT IN OPPOSITION
## TO PETITIONER'S MOTION FOR HABEAS CORPUS RELIEF

Procedural History

On September 10, 1998, the Honorable A. Andrew MacQueen, Circuit Judge,

entered an Order denying the relief sought by the Petitioner here in his Petition for

Writ of Habeas Corpus.   While the petition was filed as one of the so-called "Zain"

cases, Judge MacQueen specifically found that, under the peculiar circumstances

of this case, the rule announced in "Zain I" and "Zain II" should not be applied here.

On February 15, 2002, this Court entered an Amended Memorandum Order, which

also denied all relief sought by the Petitioner.

In response to the Petitioner's Motion to Alter or Amend Judgment, this Court

reinstated this matter to the active Docket. On April 15, 2002, the Petitioner filed a

Motion for Relief on two grounds.  A deposition of Ted Smith, Director of the West

Virginia State Police Crime Laboratory, was taken on September 20th, 2002.


## Arguments

1. The testimony of Fred Zain at Petitioner's trial was correct and reliable.


Petitioner argues, based primarily upon the deposition of Dr. David Bing, that

Zain's trial testimony was incorrect, false, misleading, overstated and unscientific.

However, this position does not take into account the expert testimony of Ted Smith,

who, in addition to having the scientific background necessary to review Zain's

work, also has a working knowledge of both the operations of the State Police

Laboratory and of the circumstances of the testing done in Petitioner's case.

The primary point of contention here relates to a drop of blood found on some

Christmas wrapping paper at the crime scene.  According to the testing done by

Fred Zain and Robert Murphy, this blood was not consistent with the blood of any of

the three victims or of the then-suspect, Paul Reggetz, who was at that time

incarcerated pending trial for the murders.  This raised doubt about the identity of

the murderer, and caused a great deal of pressure to be applied to Zain and

Murphy to change their results.  Nevertheless, they stuck to their conclusions, and

the State Police began investigating the matter again.  Much later, testing of the

Petitioner showed that his blood type was consistent with that found on the wrapping

paper.

634

Dr. Bing believed that there was no way to determine whether the blood stain in question was from one or more sources; in other words, that it could be a mixture of 2 or more people's blood, and therefore not reliable as a means of eliminating or including suspects. However, Test Smith testified that the blood stain in question was apparently a distinct drop of blood which showed no signs of being from more than one source.

There is no indication that the testing done was no performed consistently with the accepted scientific standards at the time. There is no indication that the results of the testing were reported incorrectly or inaccurately. There are some significant indicia that the results were correct, however.

First and foremost, both Murphy and Zain were pressured to report findings which inculpated Paul Reggetz, and not some then-unknown suspect. Were either Zain or Murphy inclined to fabricate results, they were given ample opportunity and motive here for doing so, but nevertheless made findings that caused the investigation to be reopened.

Second, because the results reported were "blind", in that the unknown specimen was tested before the Petitioner's blood was tested, there was no opportunity to slant the findings in favor of anyone's guilt. This, according to Ted Smith, is a good safeguard falsifying test results.

Finally, there is no reason to believe that the drop of blood was anything other than what it appeared to be – a single, discrete drop of blood from one source. Had there been a quantity of blood, it might well have been difficult to be certain that the sample tested did not contain more than one person's blood. However, when

dealing, as here, with a single distinct drop, it is almost impossible that it could have been anything more than one person's blood.  See, Transcript of Deposition of Ted Smith, pp. 18-19.

Judge MacQueen specifically found that there was no reason, based upon Dr. Bing's deposition, to find that Zain's testimony in this case was false, inaccurate or invalid.  Since the time of Judge MacQueen's ruling, Ted Smith's deposition was taken, giving further support to this position.  In order to find in the Respondent's favor on this issue, this Court would be compelled to overrule Judge MacQueen's findings in spite of the additional evidence supporting those findings.  There is no basis in law or in fact for such a result.  Therefore, the Petitioner's claim here must fail.

2. Petitioner's confession was properly admitted at his trial.

This is another issue that has been repeatedly decided, by more than one court, against the Petitioner.  While his third confession was ruled inadmissible by the West Virginia Supreme Court of Appeals, his first 2 were found to be admissible.  This issue has been litigated repeatedly, and Petitioner should therefore not be allowed to raise this issue again.  There are no additional facts which have been presented to this Court which would allow the issue to be opened up again.  Thus, this claim must also fail.

606

Conclusion

Petitioner has really raised no new issues beyond those previously decided by Judge MacQueen and the West Virginia Supreme Court of Appeals. There is no reason to reopen this matter at the Circuit Court level and give Petitioner yet another bite of the apple. Therefore, Petitioner's Motion for Relief should be denied, and this matter again be dismissed and stricken from the Docket of this Court.

GEORGE TRENT,

Respondent

By Counsel

Michael T. Clifford
Prosecuting Attorney for Kanawha
County

Mary Beth Kershner
Assistant Prosecuting Attorney

KANAWHA COUNTY MAGISTRATE COURT, WEST VIRGINIA

JOHN MOSS, III,

Petitioner,

v.                                                    No. 94-MISC-663

GEORGE TRENT, Warden,
West Virginia Penitentiary,

Respondent

## CERTIFICATE OF SERVICE

I, Mary Beth Kershner, Assistant Prosecuting Attorney for Kanawha County, do hereby certify that a true copy of the foregoing Motion was served upon Lonnie Simmons, the attorney of record in the above cause, by enclosing the same in an envelope addressed to said attorney, at his business address; 604 Virginia Street, East, Suite 200, Charleston, West Virginia, 25331, the same being his last known address, with postage fully paid, and depositing said envelope in the regular United States mail on the 27th day of November, 2002.

ASSISTANT PROSECUTING ATTORNEY

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

02 DEC 12 PM 1:45

**JOHN MOSS, III,**

　　　　　　　Petitioner,

v.

　　　　　　　　　　　　　　　　　　　Civil Action No. 94-MISC-663

**GEORGE TRENT**, Warden of the
West Virginia State Penitentiary,

　　　　　　　Respondent.

### PETITIONER'S REPLY BRIEF
### TO MEMORANDUM OF THE RESPONDENT
### IN OPPOSITION TO PETITIONER'S
### MOTION FOR HABEAS CORPUS RELIEF

### I.

### Introduction

　　　　Petitioner John Moss, III, respectfully files this reply to the brief offered by Respondent George Trent on the remaining two issues asserted in the habeas corpus petition. Before replying to Respondent's assertions, the Court should note that Respondent does not disagree with the legal analysis provided in Petitioner's brief. Therefore, the legal principles asserted in Petitioner's brief filed on these remaining two issues should be followed by the Court in rendering its decision.

　　　　Respondent begins by asserting that "under the peculiar circumstances of this case, the rule announced in `Zain I' and `Zain II' should not be applied here. On February 15, 2002, this Court entered an Amended Memorandum Order, which also denied all relief sought by the Petitioner." (Respondent's brief at 1). While this summary may accurately reflect what Petitioner contends are incorrect rulings by this Court, it should be noted that the only "peculiar" thing about

this case is that Petitioner **did not receive** the benefit of the West Virginia Supreme Court's holding in *In the Matter of Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993).

In this case, Fred Zain personally went to the scene of the crime, Fred Zain personally looked for physical evidence, Fred Zain personally gathered physical evidencef, Fred Zain personally performed the critical testing of these evidentiary items that he had observed and gathered, Fred Zain is **the only serologist** to testify in both of Petitioner's trials, and Fred Zain's testing and testimony was the key evidence allowing the jury to decide which confession to believe--the original confession given by Paul Reggettz or the confession allegedly given by Petitioner. Somehow, despite Fred Zain's involvement in this case, **which is more extensive than his involvement in any other habeas corpus action filed pursuant to the *Laboratory* decision**, this Court ruled that the *Laboratory* decision did not apply to Petitioner.

Once again, Petitioner notes his strenuous objection to this baffling ruling that ignores the obvious holding by the West Virginia Supreme Court in the *Laboratory* decision and results in Petitioner being denied the habeas corpus rights afforded to every other inmate whose trials were tainted by the testing and testimony of Fred Zain.

## II.

### Captain Ted Smith confirms many of the criticisms made by Petitioner's expert, which requires the Court to find that Fred Zain's testing was incorrect and unreliable

On page two of his brief, Respondent uses the following preposterous heading: "The testing of Fred Zain at Petitioner's trial was correct and reliable." Even Respondent's own expert, Captain Ted Smith, the present director of the West Virginia State Police's serology laboratory, would not support that statement. Despite the fact that Captain Smith is Respondent's belatedly

identified expert witness, Respondent fails to quote him in his brief.[1]   Since Captain Smith's testimony corroborated many of the scientific criticisms made by Dr. David Bing, Petitioner will quote several portions of his deposition testimony and has attached to this brief a complete copy of his deposition.[2]

Captain Smith made it clear that he was not vouching for the accuracy of Fred Zain's testing or testimony in this case:

As we sit here today, are you vouching for the accuracy of the testing performed by Fred Zain in this case?

A    Well, I'm not exactly sure what testing Fred Zain may or may not have done in this particular case.  But, no, I'm not vouching for the accuracy of his testing. (Captain Smith Dep. at 27).

Captain Smith further admitted that he was not able to review the raw data notes or any photographs of the testing performed because those items are not available.  In fact, Captain Smith stated, "I'm just taking the data at face value." (Captain Smith Dep. at 28).  The lack of these materials rendered it impossible for Captain Smith or any other expert to review and evaluate the accuracy of Fred Zain's testing.  As Captain Smith noted, "I have no idea about how the data was created or how it was generated, just simply what it looks like now and how it's being reported now." (Captain Smith Dep. at 56).

---

[1]Petitioner again notes for the record his objection to the Court's decision to permit Respondent to reopen the discovery in this case, which had been closed for several years.  Even though Petitioner's counsel participated in the deposition of Captain Smith, he noted on the record of the deposition his continuing objection to this Court's ruling, which permitted Respondent to reopen the record at a time when the only expert testimony on the scientific issues raised was from Petitioner's expert, Dr. David Bing.

[2]The copy of this deposition transcript in Petitioner's possession did not have any exhibits attached.  As soon as Petitioner receives a copy of these exhibits, they will be filed with the Court.

Captain Smith was asked several questions about his testimony given during the Special Investigation into Fred Zain's work in the West Virginia State Police Laboratory, which testimony was cited by Special Judge Holliday in several of his findings of fact. Captain Smith agreed that he had discovered "'evidence that Zain had falsely reported results on worksheets that could not be supported by data on the laboratory notes, including falsely reporting that testing had been performed on multiple items when only a few had been tested and falsely reporting that multiple genetic markers had been identified when only a few had been identified.'" (Captain Smith Dep. at 29).

Captain Smith also confirmed Special Judge Holliday's finding that, "'As with the ASCLD investigation, Smith discovered improprieties in every case he reviewed in which Zain had been involved.'" (Captain Smith Dep. at 30). When asked if Fred Zain **had not committed** any improprieties in the testing performed in the present case, would this case be the one exception to the rule, Captain Smith candidly responded:

> In terms of the cases that were reviewed, yes. There are other cases, earlier cases, that did not appear to show improprieties that weren't a part of the ASCLD investigation and a part of the rule. But as a part of that, yes, that would be a correct statement. (Captain Smith Dep. at 30-31).

Therefore, if this Court were to find Fred Zain's testing and testimony in this case to be correct and reliable, this case would be the first and only case, following the Special Investigation, where Fred Zain's testing was found to be free of any improprieties. In light of the findings made by the ASCLD investigators as well as by Captain Smith, it truly would be remarkable if Fred Zain did not commit any improprieties in this case. Since there are no raw data notes or photographs of his testing to review in this case, based on his history, the probabilities are overwhelming that Fred Zain committed various scientific improprieties in this case.

4

In response to whether he felt confident enough in the data reported in this case to testify in a trial, Captain Smith stated that it depends upon who did the testing:

> The Supreme Court has indicated that if Fred did it, I can't testify to it, basically, because it's unreliable. So, no, I wouldn't go testify to it if you told me that Fred did it.
>
> Now, on face value, no, I don't see anything that suggests any problems with the data. It fits the pattern that I would expect. If I were doing an audit, it fits the pattern that I would expect.
>
> **But no. If you tell me that Fred did all of these types and all of these testings, then, no, I would not go into court and I would not testify to it, simply because of the Supreme Court's ruling in that regard.** They've decided that I can't do that, and so I salute and execute. I don't do that. That's just the bottom line. (Emphasis added).   (Captain Smith Dep. at 64-65).

So, Fred Zain's testing and testimony in this case is so "correct and reliable" that Respondent's own expert would not testify in court as to the data generated. If Respondent's own expert witness would not testify to the data generated by Fred Zain in this case, how can Respondent expect this Court to make a finding that Fred Zain's testing was correct and reliable?

Thus, for this Court to find Fred Zain's testing and testimony in this case to be "correct and reliable," the Court would have to do so despite this extensive demonstrated history of fabricating results, where improprieties were found in every case reviewed by ASCLD and Captain Smith, and without having any raw data notes or photographs of the test results to review. Essentially, Respondent is asking the Court to accept Fred Zain's test data "at face value," where there is absolutely no indicia of reliability and a massive amount of evidence that this test data is unreliable, and then Respondent hopes this Court will stick out its judicial neck and embrace Fred Zain's testing with open arms. Asking this Court to make such a finding not only defies all logic and common sense, but would be the equivalent of the Court committing scientific malpractice.

The main difference between the opinions expressed by Dr. Bing and Captain Smith is that Dr. Bing detailed several principles used in interpreting forensic data while Captain Smith agreed with some of those principles, but disagreed with others. Both experts agree that in light of his history of fabricating test results, Fred Zain's testing and testimony is highly suspect. Some of the differences in the opinions expressed by these two experts were more trivial than substantive. Dr. Bing's approach is more cautious, particularly in light of the extensive proven history of Fred Zain committing multiple improprieties while he worked in the West Virginia State Police Laboratory.

Based upon the data examined, Dr. Bing refused to assume any facts that were not documented. For example, both Dr. Bing and Captain Smith devote some time to a discussion of the blood stain found on the Christmas wrapping paper. Dr. Bing did not assume that there was a single drop of blood found, as opposed to a blood smear, because the documentation did not support that conclusion. Even Captain Smith agreed with Dr. Bing that if the blood was smeared, "that would raise the possibility that you could have more than one source present." (Captain Smith Dep. at 45). Thus, as Dr. Bing noted, since there is no way of knowing whether or not this blood stain came from only one person, forensic science principles require the person reporting the results to focus only on the types found that are different than the known types of the possible contributors in the house.

Respondent makes a brief reference to a statement made in a previous order, where the trial court misstated Dr. Bing's opinions and stated that Dr. Bing had failed to find that Zain's testing and testimony was false, inaccurate, or invalid. In a previous motion, Petitioner detailed the factual and legal errors committed in the trial court's initial order, including the fact that the trial

court had ignored Dr. Bing's opinion that the data generated in this case by Fred Zain was "meaningless." (Dr. Bing Dep. at 21-22). Petitioner also asked the present trial court to correct these errors. For whatever reason, the trial court simply has allowed these factual and legal errors to remain in the record. Petitioner has done everything he can to correct the record, by noting the errors and providing the Court with citations to the record in support of Petitioner's suggested corrections. While it makes sense for these factual and legal errors to be corrected at this level, there is nothing more Petitioner can do to correct these errors.

Finally, Respondent makes the nonlegal and nonscientific argument that one reason why this Court should accept Fred Zain's testing as correct and reliable is that Zain and Robert Murphy, who then was the director of the laboratory, had been pressured by the investigating officers to implicate Paul Reggettz in the murders, rather than develop evidence that contradicted the confession he gave. Mr. Murphy even noted in his deposition that one of the investigating officers argued that Mr. Reggettz may have planted blood at the crime scene.

While this behind-the-scenes look into some of the disagreements between the investigating officers and the laboratory makes for interesting reading, it hardly rises to the level of requiring this Court to place its own credibility and judicial seal of approval on the testing performed by Fred Zain in this case. Fundamentally, Petitioner's trial was flawed by the participation of Fred Zain, whose testimony was critical to Petitioner's conviction. For the foregoing reasons, Petitioner respectfully asks the Court to find that Fred Zain's testing in this case was incorrect, false, misleading, overstated, and unscientific evidence, as found by Dr. Bing, and a violation of Petitioner's federal and state constitutional rights.

## III.

### Confessions obtained in violation of Petitioner's constitutional rights

Respondent again does not challenge the legal principles asserted by Petitioner with respect to the question of whether Petitioner's constitutional rights were violated when the confessions allegedly were obtained from him.  The main point Petitioner has made is that in light of this more fully developed record, particularly the evidence regarding Fred Zain's wrongdoings and the transcripts for the proceedings against Paul Reggettz, III, which had not been available to any court prior to this habeas corpus action, the totality of the circumstances has changed dramatically with respect to the confessions' issue.  Rather than repeat all of those arguments, which Respondent summarily ignores, Petitioner respectfully asks the Court to resolve this claim based upon the arguments previously made.

**JOHN MOSS, III**, Petitioner,
--By Counsel--

Lonnie C. Simmons (W.Va. I.D. No. 3406)
**DITRAPANO, BARRETT & DIPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133



## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing

**PETITIONER'S REPLY BRIEF TO MEMORANDUM OF THE RESPONDENT IN OPPOSITION TO PETITIONER'S MOTION FOR HABEAS CORPUS RELIEF** was hand-

delivered to counsel of record on the 12th day of December, 2002, to the following address:

Mary Beth Kershner
Assistant Prosecuting Attorney
Kanawha County Judicial Court Annex Bldg
111 Court Street
Charleston, West Virginia 25301
(304) 357-0300

Lonnie C. Simmons

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOHN MOSS, III
      Petitioner,

v.                                **Civil Action No. 94-MISC-663**
                                  **Judge Louis H. Bloom**

GEORGE TRENT, Warden of the
West Virginia Penitentiary,
        Respondent.

## TRANSPORTATION ORDER

A hearing in the above-styled action is scheduled before the Circuit Court of Kanawha County on January 17, 2003, at 2:30 p.m.  The Court finds that the presence of the petitioner, John Moss, III, who is currently incarcerated at the Mt. Olive Correctional Complex, is required at said hearing.

Accordingly, the Court does hereby **ORDER** that the appropriate authorities at the  Mt. Olive Correctional Complex transport the said **JOHN MOSS, III,** to the Circuit Court of Kanawha County on the 17th day of January 2003, at 2:30 p.m. and that said **JOHN MOSS, III,** be forthwith returned to the Mt. Olive Correctional Complex upon the conclusion of said hearing, unless otherwise directed by this Court.

The Clerk is hereby **DIRECTED** to forward an attested copy of this Order to Acting Warden Michael Coleman at the Mt. Olive Correctional Complex.

**ENTERED** this 13th day of January 2003.

                                  _____
                                    Louis H. Bloom, Judge

Date: 1-13-03
Certified copies sent to:
_ counsel of record
_ parties
_ other
   (please indicate)
By:
_ certified/1st class mail
_ fax
_ hand delivery
interdepartmental
was accomplished:

RECORDED

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

**JOHN MOSS, III,**

               Petitioner,

v.                                       Civil Action No. 94-MISC-663

**GEORGE TRENT**, Warden of the
West Virginia State Penitentiary,

               Respondent.

### PETITIONER'S RENEWED MOTION TO HAVE PRESENT COUNSEL APPOINTED FOR APPEAL

        Petitioner John Moss, III, respectfully renews his motion to have present counsel appointed to represent Petitioner on appeal, for the following reasons:

1.     On March 18, 2002, Petitioner filed **PETITIONER'S MOTION TO HAVE PRESENT COUNSEL APPOINTED FOR APPEAL**, with a pauper's affidavit attached. That **MOTION** and the attached affidavit are incorporated by reference herein.

2.     In the March 28, 2002 **ORDER**, this Court denied this motion as premature because the two remaining issues raised in the habeas corpus petition had not been briefed, argued, or resolved.

3.     In the January 30, 2003 **ORDER**, this Court addressed the final two issues, thus making this case ripe for appeal.

4.     As explained in the original **MOTION**, Petitioner's counsel is very familiar with the extensive record in this case and has a good understanding of the scientific issues raised.



5.   Petitioner's family cannot retain his counsel for purposes of appeal and Petitioner is an indigent.

6.   Petitioner's present counsel is willing to continue representing Petitioner in this appeal, if appointed by the Court.

For the foregoing reasons, Petitioner John Moss, III, respectfully moves this Court to have present counsel appointed to represent Petitioner on appeal.

**JOHN MOSS, III**, Petitioner,

--By Counsel--

Lonnie C. Simmons (W.Va. I.D. No. 3406)
**DITRAPANO, BARRETT & DIPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133

**CERTIFICATE OF SERVICE**

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing **PETITIONER'S RENEWED MOTION TO HAVE PRESENT COUNSEL APPOINTED FOR APPEAL** was hand-delivered to counsel of record on the 12th day of February, 2003, addressed as follows:

Michelle Drummond
Assistant Prosecuting Attorney
Kanawha County Judicial Court Annex Bldg
111 Court Street
Charleston, West Virginia 25301
(304) 357-0300

Lonnie C. Simmons

3

**Cathy S. Gatson, Clerk**
Kanawha County Circuit Court
111 Court St., Charleston, WV 25301

Telephone: (304) 357-0440
Facsimile: (304) 357-0473



# MEMORANDUM

TO:     Rory Perry, Clerk
        West Virginia Supreme Court of Appeals

FROM:   Cathy S. Gatson

DATE:   June 20, 2003

RE:     John Moss, III v. George Trent, Warden
        Civil Action No. 94-Misc-663

---

      Enclosed you will find the record in the above styled civil action.  The Petitioner's Designation of Record designates all pleadings in the case styled State v. Paul Reggettz, II Criminal Action No. 80-F-121.  However, the Reggettz case was never made part of the record in the above styled civil action and therefore is not enclosed with this record.

      If you have any questions, please feel free to contact me.

c: Lonnie Simmons, Esquire
   Michelle Drummond, Assistant Prosecuting Attorney



FILED

JUL 16 2003

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

03 MAR -3 PM 3: 07

CATHY S. GATSON, CLERK
KA......................... COURT

JOHN MOSS, III,

       Petitioner,

vs.

       PURPOSE OF APPEAL
       Civil Action No. 94-MISC-663
       Judge Bloom

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,
       Respondent.

O R D E R

On the 27th day of February, 2003, the Court, of its own motion, doth hereby APPOINT, Lonnie C. Simmons, an attorney practicing at the bar of this Court, to represent the John Moss, III.

It is FURTHER ORDERED that in the event the accused shall not prevail, the fee allowed counsel appointed to represent him shall be taxed as part of the costs against the defendant.

DATE: _MArch 3, 2003_

       ENTER:

               JUDGE

RECORDED

651



3-3-3
Date
Certified copies sent to:
____ counsel of record
____ parties
____ other
(please indicate)
By:____
____ certified/1st class mail
____ fax
____ hand delivery
____ interdepartmental
Other directives accomplished
Deputy Circuit Clerk

PA/LS




# OFFICE OF THE CLERK
## SUPREME COURT OF APPEALS
### STATE CAPITOL
### CHARLESTON, WV 25305

TELEPHONE (304) 558-2601
FACSIMILE: (304) 558-3815

*Lodge*

# FACSIMILE CHARGE STATEMENT

Please forward a check, payable to the "State of West Virginia," to the above address, for
the amount indicated below, within seven days.

### Facsimile Fee Schedule

| | | | | |
|---|---|---|---|---|
| *One Page:* | $ 5.00 | *Seven Pages:* | $12.00 |
| *Two Pages:* | $ 7.00 | *Eight Pages:* | $13.00 |
| *Three Pages:* | $ 8.00 | *Nine Pages:* | $14.00 |
| *Four Pages:* | | | $15.00 |
| *Five Pages:* | | ...ges $1.00 Per Page | |
| *Six Pages:* | | ...ges: $ | |

*Line 75 Missing However filed with Supreme Court & later withdrew*

*See Attached*

NO CHARGE:

RGES $

*A total of* 4 *...ing transmitted.*

Transmitted from: _____

Transmitted To:   NAME: Jackie Custer — Judge Bloom.

ADDRESS: _____

FAX NO.: _____

DATE: _____

Description of item(s) faxed: #011297 Moss v Bloom

STATE OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS

IN VACATION

State of West Virginia ex rel. John
Moss, III, Petitioner

vs.)  No. 011297

Honorable Louis H. Bloom, Judge of
the Circuit Court of Kanawha County,
Respondent

   This day came the petitioner, John Moss, III, pro se, and presented

to the Court his motion in writing for leave to withdraw the petition for a writ of

mandamus filed on the 27th day of June, 2001, for the reason stated therein, which

being seen and inspected by the Court is hereby granted, and petitioner is hereby

permitted to withdraw said petition.

   DONE IN VACATION of the Supreme Court of Appeals, this 10th

day of August, 2001.

   Honorable Warren R. McGraw, Chief Justice

   Honorable Robin Jean Davis

   Honorable Larry V. Starcher

   Honorable Elliott E. Maynard

   Honorable Joseph P. Albright

   Received the foregoing order this 10th day of August, 2001, and

entered the same in Order Book No. 142.

A True Copy

Attest: _____

   Clerk, Supreme Court of Appeals

DO NOT REMOVE
FROM FILE

John Moss III
1 Mountainside Way
Box 5
Mt. Olive, WV 25185


RECEIVED

AUG 1 0 2001

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

August 8, 2001

Mr. Rory Perry II, Clerk
Supreme Court of Appeals
1900 Kanawha Blvd, East
Charleston, WV 25305

Re: WVSCA Docket No. 011297 Pursuant to Civil Case No. 94-MISC-663

Dear Mr. Perry

    I submitted this correspondence upon advise of my counsel of record, Lonnie C. Simmons, whom requested that I immediately withdraw the pro se petition for a writ of mandamus in the above referenced case. (See attached letter) However, if Judge Bloom and Counselor Simmons fail to accomplish anything during the upcoming scheduled Status Conference Hearing on August 23, 2001, I reserve the right to refile this pleading with the Court. Therefore, I request that you promptly withdraw this pleading from the Court's docket until further notice.

    In closing, I want to thank you for your time and cooperation in this matter. Further, I apologize for any inconvenience this request may have created within your office.

John Moss, III

cc: L.C. Simmons, Esq.
    file

# FRAGALE & SIMMONS

604 Virginia Street, East - Suite 200
P. O. Box 3785
Charleston, West Virginia 25337

Fax: (304) 342-4066          (304) 342-4616          E-mail: F&SLAW@WV-CIS.NET

**FRANKLIN S. FRAGALE, JR.**                                  **LONNIE C. SIMMONS**

August 6, 2001

John Moss, III
Mt. Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185

Dear John:

   You need to let me know if you want me to go forward with the hearing scheduled on August 23, 2001. If you want that hearing to proceed, you need to withdraw the pro se pleading you filed in the Supreme Court.

                              Very truly yours,

                              Lonnie C. Simmons

LCS/jb

**Cathy S. Gatson, Clerk**
Kanawha County Circuit Court
111 Court St., Charleston, WV 25301

Telephone: (304) 357-0440
Facsimile: (304) 357-0473



# MEMORANDUM

TO:     Rory Perry, Clerk
        West Virginia Supreme Court of Appeals

FROM:   Cathy S. Gatson

DATE:   June 20, 2003

RE:     John Moss, III v. George Trent, Warden
        Civil Action No. 94-Misc-663

========================================================

     Enclosed you will find the record in the above styled civil action.  The Petitioner's Designation of Record designates all pleadings in the case styled State v. Paul Reggettz, II Criminal Action No. 80-F-121.  However, the Reggettz case was never made part of the record in the above styled civil action and therefore is not enclosed with this record.

     If you have any questions, please feel free to contact me.


c: Lonnie Simmons, Esquire
   Michelle Drummond, Assistant Prosecuting Attorney

652



**Cathy S. Gatson, Clerk**
Kanawha County Circuit Court
111 Court St., Charleston, WV 25301

Telephone: (304) 357-0440
Facsimile: (304) 357-0473 



03 JUN 23  PM 12: 41

*MB*

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

JOHN MOSS, III

    Vs.

GEORGE TRENT, WARDEN, etc
    RESPONDANT

        APPEAL CASE NO.94-MISC-663

1 Box


Received this above Appeal
on the 23rd day of _____June_____, 2003.

                                  , Clerk
    STATE SUPREME COURT OF APPEAL

653

121-122



OFFICE OF THE CLERK

CLERK OF COURT
RORY L. PERRY II

STATE CAPITOL, ROOM E-317
1900 KANAWHA BOULEVARD, EAST
CHARLESTON, WV 25305
PHONE: (304) 558-2601
FAX: (304) 558-3815
WEB: WWW.STATE.WV.US/WVSCA

03 JUL 17

July 16, 2003

Lonnie C. Simmons, Esq.
DiTrapano, Barrett & DiPiero
604 Virginia Street, East
Charleston, West Virginia 25301

*94-MISC-663*

**RE:** *John Moss, III v. George Trent-Warden, Supreme Court No. 031488*

Dear Mr. Simmons:

This letter is to acknowledge receipt of your petition for appeal in the above-styled proceeding from the Circuit Court of Kanawha County.

When the Court renders a decision concerning your petition for appeal, you will be notified by this office and received a written copy of the Court's order.

If you have any questions, please contact this office.

Sincerely,

Rory L. Perry II
Clerk

cc:     Kanawha County Circuit Court Clerk
        Post Office Box 2351
        Charleston, West Virginia 25328

654

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

03 JUL 22 PM 4:43

JOHN MOSS, III,

        Petitioner,

v.                                          Civil Action No. 94-MISC-663

GEORGE TRENT, Warden of the
West Virginia State Penitentiary,

        Respondent.

## PETITIONER'S MOTION TO HAVE PORTIONS OF
## RECORD IN *REGGETTZ* TO BE PART OF RECORD IN THIS CASE

        Petitioner John Moss, III, respectfully moves this Court to have certain identified portions of the record in the case styled *State v. Paul Reggetz, III*, Criminal Action No. CR-80-F-121, to be made a part of the record in this case, for the following reasons:

        1.        On May 30, 2003, Petitioner filed a petition for appeal in the above-styled case.

        2.        In Petitioner's original habeas corpus petition and in his designation of the record, Petitioner has requested that all transcripts, pleadings, with exhibits and affidavits, or other documents in *State v. Paul Reggettz, III*, Criminal Action No. CR-80-F-121, be made a part of the record in this habeas corpus action.

        3.        Specifically, Petitioner's counsel paid to have the hearings held on January 2, May 5, June 11, 18, 19, and 23, 1980, in the *Reggettz* case, transcribed.

655

*/34*

4.   These materials were cited and relied upon by Petitioner throughout this habeas corpus proceeding and in his appeal because Mr. Reggettz originally had confessed to and been charged with the crimes for which Petitioner subsequently was convicted and incarcerated.

5.   Petitioner also quoted from the **NOTE OF ARGUMENT AND MEMORANDUM OF DEFENDANT IN OPPOSITION TO STATE'S MOTION FOR A COURT ORDER TO REQUIRE AND COMPEL DEFENDANT TO SUBMIT TO WITHDRAWAL OF BLOOD AND BLOOD SAMPLE TESTING**, and the **MEMORANDUM OF LAW ON BEHALF OF THE STATE OF WEST VIRGINIA IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS** filed in the *Reggettz* case, as well as from various orders entered by Judge John Hey.

6.   The Clerk's office has requested that counsel for Petitioner obtain a formal order making the original *Reggettz* file part of the record in this habeas corpus action.

For the foregoing reasons, Petitioner John Moss, III, respectfully moves this Court to order that the transcripts of the hearings held on January 2, May 5, June 11, 18, 19, and 23, 1980, in *State v. Paul Reggettz, III*, Criminal Action No. CR-80-F-121, be made a part of the record in this case. Furthermore, Petitioner seeks an order requiring that every order entered by Judge Hey in the *Reggettz* case, as well as the **NOTE OF ARGUMENT AND MEMORANDUM OF DEFENDANT IN OPPOSITION TO STATE'S MOTION FOR A COURT ORDER TO REQUIRE AND COMPEL DEFENDANT TO SUBMIT TO WITHDRAWAL OF BLOOD**

2

*b56*

**AND BLOOD SAMPLE TESTING**, and the **MEMORANDUM OF LAW ON BEHALF OF THE STATE OF WEST VIRGINIA IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**, also be made a part of the record in this case.

**JOHN MOSS, III**, Petitioner,

--By Counsel--

Lonnie C. Simmons (W.Va. I.D. No. 3406)
**DITRAPANO, BARRETT & DIPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133

657

## CERTIFICATE OF SERVICE

I, Lonnie C. Simmons, do hereby certify that a copy of the foregoing **PETITIONER'S MOTION TO HAVE PORTIONS OF RECORD IN *REGGETTZ* TO BE PART OF RECORD IN THIS CASE** was hand-delivered to counsel of record on the 22nd day of July, 2003, addressed as follows:

> Michelle Drummond
> Assistant Prosecuting Attorney
> Kanawha County Judicial Court Annex Bldg
> 111 Court Street
> Charleston, West Virginia 25301
> (304) 357-0300

Lonnie C. Simmons

4

658

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

JOHN MOSS, III          03 JUL 23  PM 3: 24

      Petitioner,

v.                                                    Civil Action No. 94-MISC-663
                                                      Judge Louis H. Bloom

GEORGE TRENT, Warden of the
West Virginia Penitentiary,

      Respondent.

## SCHEDULING AND TRANSPORTATION ORDER

This matter shall come on for hearing on "Petitioner's Motion to Have Portions of

Record in *Reggettz* to be a Part of Record in this Case" on Friday, August 8, 2003, at 10:30 a.m.

in the Fifth Floor Courtroom in the Kanawha County Judicial Annex at 111 Court Street,

Charleston, West Virginia 25301.  The presence of the petitioner, John Moss, III, who is

currently incarcerated at the Mt. Olive Correctional Complex, is required at said hearing.

Accordingly, the Court does hereby **ORDER** that the appropriate authorities at the  Mt.

Olive Correctional Complex transport the said **JOHN MOSS, III,** to the Circuit Court of

Kanawha County to appear at said hearing on August 8, 2003, at 10:30 a.m. and thereafter return

the said **JOHN MOSS, III,**  forthwith to the Mt. Olive Correctional Complex upon the

conclusion of said hearing, unless otherwise directed by this Court.

The Clerk is hereby **DIRECTED** to forward an attested copy of this Order to all counsel

of record and to the Warden at the Mt. Olive Correctional Complex.

      **ENTERED** this 28 day of July 2003.

                                             Louis H. Bloom, Judge

Date: 7-23-03
Certified copies sent to:
___ counsel of record
___ parties          (3)
___ other
     (please indicate)
By:
___ certified/1st class mail
___ fax
___ hand delivery
___ interdepartmental
Other directives accomplished
Deputy Circuit Clerk

659

RECORDED

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

03 AUG 11 PM 1: 13

CATHY S. GATSON. CLERK
KANAWHA COUNTY CIRCUIT COURT

**JOHN MOSS, III,**

       Petitioner,

v.                              Civil Action No.: 94-MISC-663
                                     Judge: Louis H. Bloom

**GEORGE TRENT**, Warden of the
West Virginia Penitentiary,

       Respondent.

### ORDER

On May 30, 2003, Petitioner John Moss, III, filed a petition for appeal in the above-styled case.  In Petitioner's original habeas corpus petition and in his designation of the record, Petitioner has requested that all transcripts, pleadings, with exhibits and affidavits, or other documents in *State v. Paul Reggettz, III*, Criminal Action No. CR-80-F-121, be made a part of the record in this habeas corpus action.  Specifically, Petitioner's counsel paid to have the hearings held on January 2, May 5, June 11, 18, 19, and 23, 1980, in the *Reggettz* case, transcribed.  These materials were cited and relied upon by Petitioner throughout this habeas corpus proceeding and in his appeal because Mr. Reggettz originally had confessed to and been charged with the crimes for which Petitioner subsequently was convicted and incarcerated.

Petitioner also quoted from the **NOTE OF ARGUMENT AND MEMORANDUM OF DEFENDANT IN OPPOSITION TO STATE'S MOTION FOR A COURT ORDER TO**

**REQUIRE AND COMPEL DEFENDANT TO SUBMIT TO WITHDRAWAL OF BLOOD AND BLOOD SAMPLE TESTING,** and the **MEMORANDUM OF LAW ON BEHALF OF THE STATE OF WEST VIRGINIA IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS** filed in the *Reggettz* case, as well as from various orders entered by Judge John Hey.

The Clerk's office has requested that counsel for Petitioner obtain a formal order making the original *Reggettz* file part of the record in this habeas corpus action. Counsel for Respondent does not object to Petitioner's request. Therefore, it is **ADJUDGED, ORDERED, and DECREED** that pursuant to Petitioner's request in his original habeas corpus petition and the designation of the record, the transcripts of the hearings held on January 2, May 5, June 11, 18, 19, and 23, 1980, in *State v. Paul Reggettz, III*, Criminal Action No. CR-80-F-121, shall be made a part of the record in this case. Furthermore, every order entered by Judge Hey in the *Reggettz* case, as well as the **NOTE OF ARGUMENT AND MEMORANDUM OF DEFENDANT IN OPPOSITION TO STATE'S MOTION FOR A COURT ORDER TO REQUIRE AND COMPEL DEFENDANT TO SUBMIT TO WITHDRAWAL OF BLOOD AND BLOOD SAMPLE TESTING,** and the **MEMORANDUM OF LAW ON BEHALF OF THE STATE OF WEST VIRGINIA IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS,** shall also be made a part of the record in this case.

661

The Clerk is ordered to mail a certified copy of this **ORDER** to all counsel of record.

**ENTERED** this _11th_ day of August, 2003.

_____

Honorable Judge Louis H. Bloom

Inspected by:

_____

Lonnie C. Simmons (W.Va. Bar No. 3406)
**DITRAPANO, BARRETT & DIPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133

RECORDED

_____

Mary Beth Kershner (W.Va. Bar No. 2019)
Assistant Prosecuting Attorney
Kanawha County Judicial Building
111 Court Street, 3rd Floor
Charleston, West Virginia 25301
(304) 357-0300

3



_662_

**Cathy S. Gatson, Clerk**
Kanawha County Circuit Court
111 Court St., Charleston, WV 25301

Telephone: (304) 357-04
Facsimile: (304) 357-0473



STAT#E OF WEST VIRGINIA

   Vs.

PAUL REGGETTZ
80-F-121 THIS CASE MADE PART OF RECORD IN CASE 94-MISC-663 BY ORDER
DATED 8/11/03

                APPEAL CASE NO.   94-MISC-663

Received this above Appeal

on the _____ day of _____, 2003.

                             _____, Clerk
               STATE SUPREME COURT OF APPEAL

RECEIVED
AUG 1 5 2003
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA

At a Regular Term of the Supreme Court of Appeals continued and held at Charleston, Kanawha County, on the 4th of December, 2003, the following order was made and entered:

John Moss, III, Petitioner Below,
Appellant

vs.) No. 31646

George Trent, Warden of the West
Virginia State Penitentiary, Respondent
Below, Appellee

On a former day, to-wit, July 16, 2003, came the petitioner, John Moss, III, by Lonnie

C. Simmons, DiTrapano, Barrett & DiPiero, his attorney, and presented to the Court his

petition praying for an appeal from a judgment of the Circuit Court of Kanawha County,

rendered on the 30th day of January, 2003, with the record accompanying the petition.

Upon consideration whereof, the Court is of opinion to and doth hereby grant said

petition for appeal.  Justice Davis would refuse.

It is hereby ordered that the above-captioned proceeding be heard, submitted and

determined upon the original record, briefs of counsel and oral argument, if requested by the

parties.

It is further ordered that the appellant file an original and nine copies of a brief within

thirty days of receipt of this order; the appellee to file a like number of briefs within thirty

days of receipt of the appellant's brief, with any reply brief deemed necessary to be filed

within fifteen days of receipt of appellee's brief.

A True Copy

Attest: _____
Clerk, Supreme Court of Appeals .

RECORDED

665





STATE OF WEST VIRGINIA
OFFICE OF THE ATTORNEY GENERAL
CHARLESTON 25305

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL

(304) 558-2021
FAX (304) 558-0140

December 10, 2003

The Honorable Cathy Gatson
Circuit Clerk of Kanawha County
111 Court Street
Charleston, West Virginia 25301

*94-misc-663*

Re:   *John Moss III v. George Trent, Warden,* No. 31646

Dear Ms. Gatson:

The State of West Virginia hereby designates the entire record, including any documents or photographs introduced as exhibits, in the above referenced appeal to be sent to the West Virginia Supreme Court of Appeals.  Please do not send physical evidence, such as weapons, clothing, blood samples or contraband, to the Court unless specifically requested by the Clerk's office.

Thank you for your time and consideration.

Very truly yours,

DAWN E. WARFIELD
DEPUTY ATTORNEY GENERAL

DEW/tl

cc:   Rory L. Perry, II, Clerk, WVSCA
      Lonnie C. Simmons, Esq.

I N D E X

JOHN MOSS, III,
    Petitioner
vs.               Civil Action No. 94-MISC-663
GEORGE TRENT, Warden, etc.,
    Respondent

FILED

JUL 1 6 2003

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

| 08/18/94 | Habeas Corpus . . . . . . . . . . . . . . . . . . . . . . . . . | |
| 08/18/94 | Letter from Simmons to Gatson . . . . . . . . . . . . . . . . . . | 49 |
| 08/18/94 | Pet.Mot. All Documents Re: Testing (Moss and/or Reggettz) . . | 50 |
| 08/18/94 | Pet.Mot. To Exceed Expenses Limit . . . . . . . . . . . . . . . . . . | 54 |
| 08/18/94 | Pet.Mot. For Grand Jury TR. Re: Moss and Reggettz . . . . . . . . | 60 |
| 09/15/94 | Order: All Documents Re: Testing of Reggettz . . . . . . . . . . . | 63 |
| 09/15/94 | Order: Exceed Expenses Limit . . . . . . . . . . . . . . . . . . | 65 |
| 09/15/94 | Notice of Hearing (10/3/94) . . . . . . . . . . . . . . . . . . . . . . . | 67 |
| 10/17/94 | Order: Grand Jury TR . . . . . . . . . . . . . . . . . . . . . . . . . | 69 |
| 10/24/94 | Letter from Kershner to MacQueen with Grand Jury TR . . . . . . . | 71 |
| 11/22/94 | Serological records of State Police . . . . . . . . . . . . . . . . . . | 72 |
| 04/13/95 | Pet.Mot. Prod.of Records Re: Troopers Smith and Williams . . . . | 73 |
| 04/13/95 | Notice of hearing (4/19/95) . . . . . . . . . . . . . . . . . . . . . . . | 78 |
| 05/01/95 | Notice of Deposition of Dr. Bing (6/5/95 . . . . . . . . . . . . . . | 80 |
| 05/01/95 | Letter from Simmons to Kershner . . . . . . . . . . . . . . . . . . | 82 |
| 05/02/95 | Order: Re: Records relating to Troopers Smith & Williams . . . . | 84 |
| 05/03/95 | Certificate of Service Re: Depo. of Dr. Bing . . . . . . . . . . . . . | 88 |
| 05/03/95 | Receipt for subpoena (Robert Murphy) . . . . . . . . . . . . . . | 90 |
| 05/12/95 | Deposition Subpoena (Robert Murphy) . . . . . . . . . . . . . . | 91 |

07/07/95    Affidavit (Marsha Beasley) . . . . . . . . . . . . . . . . . . . . . . . . . . .    92

08/14/95    Pet. Supp. Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    95

08/22/95    Order: Pmt. Of Direct Expenses ($196.00) . . . . . . . . . . . . . .    96

08/22/95    Order: Pmt. Of Direct Expenses ($226.25) . . . . . . . . . . . . . .    97

09/12/95    Notice of Hearing (9/19/95) . . . . . . . . . . . . . . . . . . . . . . . . .    102

09/13/95    Order: Transport Moss . . . . . . . . . . . . . . . . . . . . . . . . . . .    104

09/14/95    Answer of Respondent . . . . . . . . . . . . . . . . . . . . . . . . . . .    105

10/23/95    Order: Pmt. Of Direct Expenses ($422.25) . . . . . . . . . . . . . .    109

12/08/95    Order: Pmt. Of Direct Expenses ($6,812.17) . . . . . . . . . . . . . .    111

12/14/95    Order: Pmt. Of Direct Expenses ($2,362.17) . . . . . . . . . . . . . .    114

06/05/96    Letter of Obj. From Kershner to MacQueen . . . . . . . . . . . . . .    116

06/14/96    Notice of Status Conference (8/20/96) . . . . . . . . . . . . . . . . . .    118

06/24/96    Pet.Mot. For Prod. Of Documents . . . . . . . . . . . . . . . . . . . .    121

06/24/96    Amended Not. Of Status Conf. (7/26/96) . . . . . . . . . . . . . .    126

07/23/96    Order: Pmt. Of Direct Expenses ($1,402.84) . . . . . . . . . . . .    128

09/17/96    Memo. In Opposition to Habeas Corpus . . . . . . . . . . . . . .    129

09/27/96    Supp. Argument in Opposition to Habeas Corpus . . . . . . . .    148

10/02/96    Pet. Resp. To Opposition . . . . . . . . . . . . . . . . . . . . . . . . . .    153

01/07/97    Notice of Status Conference (1/31/97) . . . . . . . . . . . . . .    172

01/10/97    Pet. Resp. To Opposition . . . . . . . . . . . . . . . . . . . . . . . . . .    174

01/10/97    Pet. Resp. To Opposition . . . . . . . . . . . . . . . . . . . . . . . . . .    175

02/03/97    Pet. Suppl. Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    194

05/29/98    Pet.Mot. To Grand Jury TR Re: Zain . . . . . . . . . . . . . . . . .    241

| 09/10/98 | Memorandum Order | 243 |
|----------|------------------|-----|
| 09/21/98 | Notice of Hearing (10/27/98) | 251 |
| 09/21/98 | Pet.Mot. To Amend Order | 253 |
| 10/21/98 | Order to Transport Moss to Hearing | 267 |
| 11/06/98 | Notice of Change of Address of Simmons | 269 |
| 11/27/98 | Pet. Supp. To Rule 59 Motion | 271 |
| 01/12/99 | Order: Pmt. Of $881.00 to Serological Research | 278 |
| 02/24/99 | Notice of Status Conference (3/18/99) | 279 |
| 07/15/99 | Pet. Supp. To Motion to Amend Order | 281 |
| 12/02/99 | Motion by Moss for Addtl. Supp. To Rule 59(e) | 310 |
| 05/18/00 | Notice of Change of Address of Simmons | 480 |
| 06/13/00 | Notice of Status Conference (7/7/00) | 482 |
| 10/13/00 | Notice of Hearing | 484 |
| 10/17/00 | Notice of Hearing (12/1/00) | 492 |
| 07/02/01 | Case Info. Stmt. | 494 |
| 08/22/01 | Order to Transport Moss to Hearing | 503 |
| 08/31/01 | Appellate TR Request | 505 |
| 08/31/01 | TR of Status Conference of 7/7/00 | 506 |
| 08/31/01 | TR of Reconsideration of Legal Conclusions of 12/1/00 | 507 |
| 10/01/01 | Indigent Pet. Mot. For Counsel | 508 |
| 10/01/01 | Mot. To Proceed Forma Pauperis Affidavit | 519 |
| 10/01/01 | Letter from Simmons to Bloom | 523 |
| 10/09/01 | Pet. 2nd Mot. For Entry of Order | 524 |

| 10/25/01 | Notice of Hearing (12/6/01) . . . . . . . . . . . . . . . . . . . . . . | 554 |
|---|---|---|
| 02/15/02 | Amended Memo. Order Denying Habeas Relief . . . . . . . | 556 |
| 02/25/02 | Pet. Rule 59(e) Mot. To Alter or Amend Jgmt. . . . . . . . | 560 |
| 03/21/02 | Pet. Motion for Appt. Counsel for Appeal . . . . . . . . . . . . | 567 |
| 03/28/02 | Order Reinstating Action to Docket . . . . . . . . . . . . . . . . | 575 |
| 04/15/02 | Pet. Mot. For Relief on 2 Remaining Issues . . . . . . . . . . . . | 577 |
| 07/01/02 | TR - Mot. For Writ of Habeas Corpus (6/10/01) . . . . . . . | 597 |
| 07/01/02 | Order: Pmt. Of Direct Expenses ($30.80) . . . . . . . . . . . . | 598 |
| 08/05/02 | Change of Address of Simmons . . . . . . . . . . . . . . . . . . . | 599 |
| 11/18/02 | Notice of Hearing (1/17/03) . . . . . . . . . . . . . . . . . . . . . . | 600 |
| 11/21/02 | Order of Hearing (1/17/03) . . . . . . . . . . . . . . . . . . . . . . | 602 |
| 12/02/02 | Memorandum of Resp. In Oppos. To Pet. Mot. . . . . . . . | 603 |
| 12/12/02 | Pet. Reply Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 609 |
| 01/13/03 | Order to Transport Moss to Hearing . . . . . . . . . . . . | 642 |
| 01/30/03 | Final Order Denying Habeas Relief . . . . . . . . . . . . . . . . . | 643 |
| 02/13/03 | Pet. Renewed Mot. To Have Counsel for Appeal . . . . . . | 646 |
| 02/13/03 | TR of Habeas Corpus hearing of 1/17/03 . . . . . . . . . . . | 649 |
| 03/03/03 | Order to Appoint Simmons as counsel for Moss . . . . . . | 650 |

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2004 Term

FILED

**July 1, 2004**

No. 31646

Released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JOHN MOSS, III,
Petitioner Below, Appellant

v.

GEORGE TRENT, WARDEN
OF THE WEST VIRGINIA STATE PENITENTIARY,
Respondent Below, Appellee

Appeal from the Circuit Court of Kanawha County
The Honorable Louis H. Bloom, Judge
Civil Action No. 94-MISC-663

AFFIRMED

Submitted: June 8, 2004
Filed: July 1, 2004

Lonnie C. Simmons
DiTrapano, Barrett & DiPiero, PLLC
Charleston, West Virginia
Attorney for the Appellant

Darrell V. McGraw
Attorney General
Jon R. Blevins
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Appellee

The Opinion of the Court was delivered PER CURIAM.

141

# SYLLABUS BY THE COURT

1. "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. Pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975).

2. "Although it is a violation of due process for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." Syl. Pt. 2, *In Re Investigation of the W.Va. State Police Crime Lab. Serology Div.*, 190 W.Va. 321, 438 S.E.2d 501 (1993).

3. "'Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any

668

prejudicial effect on the jury.'  Syllabus Point 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d

55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980)."  Syl. Pt. 3,

*In Re Investigation of the W. Va. State Police Crime Lab.*, 190 W.Va. 321, 438 S.E.2d 501

(1993).

ii

669

Per Curiam:

John Moss III appeals the January 30, 2003, order of the Circuit Court of Kanawha County, denying his petition for a writ of habeas corpus in connection with his April 24, 1990, conviction for three counts of first degree murder. As the basis for his appeal, Appellant argues that the lower court wrongly concluded that this Court's ruling in *Zain* I[1] did not afford him habeas corpus relief. Upon our full review of this matter, we reach the same conclusion that the circuit court did with regard to the unavailability of relief based on this Court's ruling in *Zain* I. Having found no error with regard to the trial court's rulings, we affirm.

## I. Factual and Procedural Background

The facts concerning the underlying conviction for three counts of murder were set forth in *In Re Moss,* 170 W.Va. 543, 295 S.E.2d 33 (1982). The murders for which Appellant was convicted occurred in December 1979.[2] Following an initial conviction for these murders in 1984, this Court set aside those convictions due to the trial court's failure to poll the jurors regarding their exposure to certain prejudicial remarks concerning

---

[1]*In Re Investigation of the W.Va. State Police Crime Lab.,* 190 W.Va. 321, 438 S.E.2d 501 (1993).

[2]The victims were twenty-six-year-old Vanessa Reggetts, her four-year-old daughter Bernadette, and her seven-year-old son, Paul Eric.

*620*

Appellant's guilt that the prosecutor made during a radio interview broadcast. *See State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988). Upon the conclusion of the second trial for these murders, Appellant was convicted on April 24, 1990. By order entered on March 12, 1991, this Court refused Appellant's appeal from the 1990 conviction. Following the issuance of *Zain* I, Appellant filed a habeas corpus petition in the Circuit Court of Kanawha County through which he requested a new trial due to the allegedly prejudicial testimony given by Trooper Fred Zain, former serologist for the West Virginia State Police Crime Laboratory.

The Honorable Andrew MacQueen, by decision entered on September 10, 1998, ruled that Appellant was not entitled to relief under *Zain* I because Mr. Zain was not the chief serologist at this time and his work was being supervised; Appellant's confession provided sufficient evidence upon which to base his conviction; and specific details pertinent to that confession were corroborated by the location of physical evidence. Despite these rulings, Judge MacQueen later determined that it was necessary to consider whether Mr. Zain's testimony had a prejudicial effect on the jury. Upon consideration of this issue by the Honorable Louis Bloom,[3] the trial court refused the habeas petition, ruling that the introduction of "Zain-related evidence and testimony at Moss's trial did not prejudice the

---

[3] Due to the retirement of Judge MacQueen, this case was reassigned to Judge Bloom.

2

*671*

jury" and that Appellant had not introduced any new evidence on the issue of the voluntariness of his confession.   Appellant seeks a reversal of the ruling denying his entitlement to habeas corpus relief.

## II.  Standard of Review

In syllabus point one of *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), we held that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong."  Generally applicable is our standard for conducting review of circuit court decisions, as restated in *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995):

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.   We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a *de novo* review.

*Id.* at 661, 458 S.E.2d at 331 (citing *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995)).

With these standards in mind, we proceed to review the trial court's rulings on the issue of habeas corpus relief to determine if any error was committed.

3

672

### III. Discussion

In arguing that he is entitled to relief, Appellant refers to Judge MacQueen's September 10, 1998, ruling, and contends that the lower court initially determined that *Zain* I was inapplicable. Critically, however, Judge MacQueen never found the rulings of *Zain* I to be inapposite. To the contrary, Judge MacQueen structured his analysis based on the report prepared by Judge Holliday that was adopted by this Court and attached to *Zain* I. In that report, Judge Holliday identified the following three-pronged step for conducting review of cases where Mr. Zain's involvement was suspected:

> The circuit court could then appoint counsel to represent the [habeas corpus] petitioner to ascertain (1) whether Zain was involved in the petitioner's prosecution; (2) whether Zain rendered an inculpatory report or offered inculpatory testimony; and (3) whether, excluding the serological evidence, the other evidence adduced at trial would have been sufficient to sustain a conviction beyond a reasonable doubt.

190 W.Va. at 340, 438 S.E.2d at 520.

In conducting his review of Appellant's habeas corpus claims, Judge MacQueen initially recognized the unique posture that this case presented. Compared to the prototypical criminal case involving allegations of Mr. Zane's malfeasance, Appellant's case is distinguishable for several reasons, as Judge MacQueen observed. First, unlike the multitude of "Zain cases," this was an early case in which Mr. Zain was not yet the

4

supervisor[4] of the State Police Crime Laboratory and, consequently, his work was being supervised by another serologist, Trooper Robert Murphy.  With regard to the blood test reports relied upon in this case, Judge MacQueen found that "it is clear that both Zain and Murphy conducted analyses of some of the blood."  Another significant distinction with regard to this case was "the fact that Zain and Murphy had discovered genetic markers in blood samples from the Reggettz [victims'] residence that excluded Paul Reggettz [original suspect] and would ultimately incriminate John Moss, long before a sample of Moss's blood was obtained and analyzed."[5]  Finally, with regard to the forensic evidence under scrutiny, the expert witness employed by Appellant, Dr. David H. Bing, "did not take direct issue with either of the[] conclusions" presented against Appellant at trial based on this evidence.  As Judge MacQueen explained,

> The forensic evidence presented against the petitioner [Appellant] at trial consisted of two essential conclusions.  First, blood stains sampled at the scene contained genetic markers that were not donated by any of the victims or by Paul Reggettz, but matched the known blood sample from John Moss.  Second, the combination of markers in the samples from the scene that matched the petitioner's blood occurred in one-tenth of one percent (.1%) and three-hundredths of one percent (.03%) of the general population.

---

[4]At the time the reports pertinent to this case were prepared, Mr. Zain had been employed by the State Police Laboratory for about three years.

[5]As the State comments, this stands in stark contrast to the paradigmatic Zain scenarios where he would manufacture evidence to assist in securing a conviction of the initial suspect.  At the time the blood analysis reports at issue were prepared in this case, Mr. Reggettz, and *not* Appellant, was the prime suspect for the murders under investigation.

674

After relating portions of Dr. Bing's testimony, Judge MacQueen concluded:

> It can hardly be said that Dr. Bing characterized Murphy and Zain's scientific conclusions and Zain's testimony as false, inaccurate or invalid. To the contrary, based on the information available to him, he confirmed the scientific validity of the conclusions. At best, it seems that Dr. Bing suggested that Zain should have explained to the jury that only a limited number of genetic markers distinguished the petitioner's blood from that of the victims. From the evidence presented at trial, the jury could not have failed to appreciate this fact.

Upon consideration of these distinguishing factors and the record as developed, Judge MacQueen concluded that the rule[6] announced in *Zain* I and II[7] "should not operate to nullify the serology evidence offered during the petitioner's trial" and "[t]hat in the absence of specific evidence that the blood test results were falsified or were substantially incorrect, there is no basis to set aside the verdicts against the petitioner." After making this ruling, the trial court proceeded to the third-prong of the analysis suggested by

---

[6]What Judge MacQueen refers to is this Court's conclusion that any evidence offered by Mr. Zain in any criminal prosecution "should be deemed invalid, unreliable, and inadmissible in determining whether to award a new trial" in a subsequent habeas corpus proceeding. 190 W.Va. at 326, 438 S.E.2d at 506.

[7]*See* Syl. Pt. 3, in part, *In re W.Va. State Police Crime Lab.*, 191 W.Va. 224, 445 S.E.2d 165 (1994) (holding that "[s]erology reports prepared by employees of the Serology Division of the West Virginia State Police Crime Laboratory, other than Trooper Fred S. Zain, are not subject to the invalidation and other strictures contained in" *Zain* I). As Appellant notes, however, by administrative order entered on June 10, 1999, there currently is an investigation being performed to determine whether the work of any other employees of the State Police Crime Lab should be similarly viewed as presumptively invalid, unreliable, and inadmissible.

6

675

Judge Holliday to consider whether "even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction." Following his summary of the evidence presented at trial against Appellant,[8] Judge MacQueen ruled that "petitioner's incriminating statements, the statement's harmony with the physical evidence and related corroboration were certainly sufficiently persuasive to convince twelve reasonable persons [of] his guilt beyond a reasonable doubt."

---

[8]That summary included the following:

The petitioner gave statements in which he confessed to the killings and provided detail that gave particular credence to the confession. . . . [T]he confession and the evidence derived from it provided particular indices of reliability beyond the fact of a confession alone. For example, petitioner's confession was largely consistent with the physical evidence. He said that he went to the Reggettz residence to steal money and that he had taken a camera and what he recalled were dishes. He told investigators that he had taken the camera to his parents [sic] home in Cleveland, Ohio, and that he had given the dishes to a Ms. Arbutus Johnson. A camera was obtained from the petitioner's father's car and was subsequently identified by Paul Reggettz during the trial. Ms. Johnson said that Moss had given her a set of silverware as a Christmas gift sometime during December, 1979. Ms. Johnson also stated that Moss was scratched when she saw him. Significantly, before he returned to his home in Cleveland, the petitioner lived with his grandfather at his grandfather's home which was immediately behind the Reggettz residence. The State has identified other, similar portions of the petitioner's confession which reinforced its reliability.

676

Notwithstanding Judge MacQueen's denial of relief to Appellant in September 1998, his counsel ultimately convinced the trial court to examine the additional issue of whether the introduction of Mr. Zain's testimony had a prejudicial effect on the jury under this Court's holdings in syllabus points two and three of *Zain* I.  In syllabus point two, we held that "[a]lthough it is a violation of due process for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." 190 W.Va. at 322, 438 S.E.2d at 502. Upon a demonstration of false evidence used to sustain a conviction, we reasoned: "The only inquiry that remains is to analyze the other evidence in the case under the *Atkins* rule[9] to determine if there is sufficient evidence to uphold the conviction." *Id.* at 326, 438 S.E.2d at 506 (footnote added).  Accordingly, in syllabus point three of *Zain* I we restated the test for evidentiary error:

> "'Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is:  (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt;  (2) if the remaining evidence is found to be insufficient, the error is not harmless;  (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.' Syllabus Point 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980)."

---

[9] *See* Syl. Pt. 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979).

677

190 W.Va. at 322, 438 S.E.2d at 502.

The crux of Appellant's appeal is that the trial court, in applying the *Atkins* test, wrongly concluded that Mr. Zain's testimony did not have a prejudicial effect on the jury. Emphasizing the personal and extensive involvement of Mr. Zain in his prosecution, Appellant states that Mr. Zain collected blood samples at the scene; performed testing on critical pieces of evidence; testified in both of Appellant's trials; and presented key evidence that enabled the jury to decide which of two confessions to believe.[10]  Downplaying the significance of Mr. Murphy's involvement in the case, Appellant argues that Mr. Zain's testimony was the key testimony based upon which the jury made its decision regarding which of the two confessions was credible.

In response to these arguments, the State identifies a number of inaccurate statements made by Appellant. As opposed to the scenario described by Appellant with Mr. Zain improperly and overzealously going to the Reggetz' home to collect blood samples, Mr. Zain only went to the scene of the crimes to collect those samples upon being called by Trooper Williams for that express purpose. Moreover, at least one critical piece of evidence – the pajama top of Bernadette Reggettz – was collected by Trooper Williams and submitted

---

[10]The two confessions of which the jury was presented with evidence were those of Mr. Reggettz and Appellant.

9

678

for testing at a later date in time.  The testing on this top, which Dr. Bing testified to as constituting a complete match with the blood typing of Appellant,[11] was performed by Trooper Murphy.  Mr. Zain's only involvement with this critical piece of evidence was his reading of the report with the blood typing results to the jury.

While Appellant strenuously argues that absent the testimony of Mr. Zain the jury had no basis from which to choose between the two confessions, the State explains why this contention is specious.  In making his argument, Appellant chose to ignore various items of evidentiary significance that the jury was presented with that may have affected their decision regarding the truthfulness of the two confessions.  Mr. Reggettz testified at trial and explained the circumstances surrounding the giving of his confession[12] and fully repudiated that confession.  Dr. Irving Sopher, the Chief Medical Examiner,  testified both to specific marks on the victims' bodies and the contents of their stomachs with regard to the time of

_____

[11]During his deposition, Dr. Bing testified as follows:  "[T]here is one result here where there is a complete match between Mr. Moss and a stain found at the crime scene.  That's item seven, the kitchen door curtain.  And that's also the case reported on the clothing of Bernadette Reggettz . . . and the Christmas wrapping paper. . . ."

[12]He had been questioned repeatedly by as many as three or four troopers at a time over the course of almost fourteen hours before he confessed to the crimes.  Among the explanatory testimony that the jury heard regarding the circumstances surrounding the giving of this confession was the testimony of Trooper Woodyard, who answered "yes" to the State's question of "isn't it true that when he [Mr. Reggettz] made his first inculpatory statement, he said, 'If I tell you what you want, then you won't let them hurt me?'"

679

their last meal.  The details of Dr. Sopher's testimony suggested the veracity of Appellant's confession, as opposed to that given by Mr. Reggettz.

Perhaps the most convincing corroborative evidence that the jury heard on the issue of confessions, however, was testimony describing the recovery of various items taken from the Reggettz' home.[13]  During his confession, Appellant related that he had taken a camera and what he described as "some dishes" from the Reggettz' home.  He further indicated that he had given the camera to his father and the dishes to a Ms. Arbutus Pomeroy, his best friend's mother.  The camera that was taken from the Reggettz' home was discovered in Appellant's father's car in Cleveland, Ohio, and Ms. Arbutus Pomeroy testified that Appellant had given her silverware, which was identified as having been taken from the Reggettz' home, as a Christmas present, shortly after the time when the murders occurred.

Setting aside the Zain evidence, the confession given by Appellant was powerfully incriminating evidence, as Judge Bloom recognized in ruling on the habeas corpus petition:

> Moss's own confession is a key piece of evidence that stands
> independently of any Zain-related evidence.   Further, the
> confession is corroborated in a number of significant ways,

---

[13]*See supra* note 8.

11

680

which the Court has described as "indices of reliability." In focusing on Zain, Moss ignores the power of his own well-corroborated confession.

The State convincingly argues that there was sufficient testimony offered through individuals other than Mr. Zain from which the jury could have based its decision to believe Appellant's confession. Given the abundance of evidence that the jury was presented with that supported Appellant's confession to having committed the subject murders,[14] we simply cannot accept Appellant's argument that Mr. Zain's testimony was *per se* prejudicial. Accordingly, we find no error with the trial court's conclusion that the introduction of testimony or evidence by Mr. Zain did not have a prejudicial effect on the jury. *See* Syl. Pt. 2, *Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979).

Although Appellant sought to raise, according to the State for the fourth time, the issue of the voluntariness of his confession, the trial court found that he "failed to present any new evidence on the voluntariness of his confession." The trial court further opined:

_____

[14]Additional evidence that the jury heard included the fact that Vanessa Reggettz' autopsy revealed scalp lacerations that were consistent with being struck by the butt of a gun, which was found beside her body. In his confession, Appellant stated he had struggled with Vanessa for a gun, and then struck her with the butt of the gun. He also revealed in his confession his knowledge of the broken condition of the gun. In addition, Appellant stated that Vanessa's face was "bumpy," which was inconsistent with her facial appearance on photographs shown to Appellant when he was being questioned, but was consistent with her appearance at the time of her death. Appellant also admitted to having struggled with Vanessa for a knife, and a knife was found beside her body.

681

> [H]e seems to argue that the fact that Mr. Reggettz had, at one point, given a confession somehow invalidates Moss's own confession. The existence of the Reggettz confession does not have the devastating effect that Moss desires because the Reggettz confession does not impugn the voluntariness of Moss's confession. At most, it provided fodder for defense theories at trial.

As the State correctly posits, events that took place outside the presence of Appellant's confession (i.e. any malfeasance committed by Mr. Zain) have no bearing on the determination of the voluntariness of that confession. *See State v. Hager,* 204 W.Va. 28, 38, 511 S.E.2d 139, 149 (1998) (citing *Moran v. Burbine,* 475 U.S. 412, 422 (1986)).

Having closely examined the arguments presented against the record of this case, we find no merit in the assignments of error raised by Appellant.[15] Accordingly, the order of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

---

[15]Given this Court's conclusion that the trial court did not error in finding that Mr. Zain's testimony did not have a prejudicial effect on the jury based on the presence of sufficient independent evidence regarding Appellant's guilt, we do not discuss the purported invalidity of Mr. Zain's testimony.

682

STATE OF WEST VIRGINIA

At a Regular Term of the Supreme Court of Appeals continued and held at Charleston, Kanawha County, on the 2nd day of September 2004, the following order was made and entered:

John Moss, III, Petitioner Below, Appellant

vs.)  No. 31646

George Trent, Warden of the West Virginia
State Penitentiary, Respondent Below, Appellee

The Court, having maturely considered the petition for rehearing filed by the petitioner, John Moss, III, by DiTrapano, Barrett & DiPiero, P.L.L.C., and Lonnie C. Simmons, his attorney, is of the opinion to and doth hereby refuse said petition for rehearing.

A True Copy

Attest: _____
Clerk, Supreme Court of Appeals

RECORDED

STATE OF WEST VIRGINIA

At a Regular Term of the Supreme Court of Appeals continued and held at Charleston, Kanawha County, on the 2nd day of September 2004, the following order was made and entered:

John Moss, III, Petitioner Below, Appellant

vs.)  No. 31646

George Trent, Warden of the West Virginia
State Penitentiary, Respondent Below, Appellee

The Court, having maturely considered the petition for rehearing filed by the petitioner, John Moss, III, by DiTrapano, Barrett & DiPiero, P.L.L.C., and Lonnie C. Simmons, his attorney, is of the opinion to and doth hereby refuse said petition for rehearing.

A True Copy

Attest: _____

Clerk, Supreme Court of Appeals