**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**


**JOHN MOSS, III,**

               *Petitioner*,

**v.**                                             **Civil Action No. 2:09-cv-01406**

**DAVID BALLARD,  Warden,**
**Mount Olive Correctional Complex,**

               *Respondent*.


---

**RESPONDENT'S REPLY TO PETITIONER'S RESPONSE TO**
**RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

---

## I.

## <u>INTRODUCTION</u>

John Moss, III, ("Petitioner"), filed a petition under 28 U.S.C. § 2254 for a Writ of Habeas

Corpus on December 15, 2009.  By order entered January 6, 2010, Magistrate Judge Mary E. Stanley

ordered Respondent to answer Petitioner's petition on the sole issue of timeliness and exhaustion.

(Doc. No. 6.)  Respondent filed an answer conceding that Petitioner's petition was timely and that

Petitioner's claims were exhausted (albeit some claims are barred from review by this Court as

previously argued).  (Doc. No. 8.)  By order entered June 22, 2010, Magistrate Judge Stanley

ordered the Respondent to answer the substance of the claims raised in Petitioner's petition.  (Doc.

No. 12.)  Respondent filed a motion for summary judgment along with an answer, memorandum in support and relevant exhibits on October 29, 2010.  (Doc. No. 17.)

On February 24, 2011, Petitioner filed  "Petitioner's Response to Respondent's Answer, Motion for Summary Judgement, and Memorandum of Law In Support Thereof (hereinafter "Response"), (Doc. 23),  a Motion for an Evidentiary Hearing and Memorandum in Support Thereof (hereinafter "Motion for Hearing), (Doc. 24), and Motion for an Order Directing Respondent to Provide the Court with Additional Portions of the Record (hereinafter "Motion for Records") (Doc. 25).

Respondent now files herein this Reply to Petitioner's Response.

## II.

## REPLY

In Petitioner's Response, he continues to raise issues regarding the blood evidence introduced at trial, his confession, and issues of ineffective assistance of counsel rooted in events from the trial and conviction reversed by the West Virginia Supreme Court in *State v. Moss*, 376 S.E.2d 569 (W. Va. 1988). Petitioner also argues that there are  genuine issues of material fact  in dispute,  and summary judgment is not proper.

Respondent makes the following  brief reply.

**1.    January 1980 Blood Grouping Tables.**

Petitioner argues that there is a genuine issue of material fact in dispute sufficient to warrant the denial of Respondent's Motion for Summary Judgment because the state courts did not fully review his challenges to certain blood evidence under the Fourth Amendment and *Brady v.*

*Maryland*, 373 U.S. 83 (1963).[1]   Petitioner claims the state courts erred by only conducting an

analysis of the challenged blood evidence under *Zain I* and *II* as set forth in *Moss v. Trent*, 603

S.E.2d 656 (W. Va. 2004).

> The facts surrounding this issue were set forth in *In the Interest of John Moss, Jr.*, 295 S.E.2d

33 (W. Va. 1982):

> In January 1980, the investigating authorities traveled to Cleveland, Ohio, to obtain a blood sample from the appellant, who at the time was housed in a juvenile detention center on an unrelated charge, and to question him about the murders. The appellant denied committing the murders. A blood sample was taken, when, at the authorities' request, the appellant pricked his finger and dribbled blood on a cloth provided for this purpose.

> At the time of this interrogation, the appellant was seventeen years of age. The blood sample was taken without a court order, and without the knowledge or consent of the appellant's parents. The authorities were aware that the appellant was a juvenile. They made no effort to contact the appellant's Ohio lawyer. The appellant was advised of his rights prior to questioning, but did not sign a waiver of rights form.

> When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. This apparently was done. Subsequently, in April 1980, the investigating authorities again travelled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders.

*Id.* at 36 .

---

[1]The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady* has been interpreted by the courts to include not only the suppression of favorable evidence but the knowing use of false evidence by the prosecution.

3

In support of this claim, Petitioner appears to argue that it was the falsification of the January 1980 sample by Fred Zain that triggered the investigation and led to his ultimate conviction. Petitioner argues that on the strength of the falsified testing of an illegally obtained blood sample, investigators coerced a confession from him that not only formed the linchpin of the State's evidence of guilt at trial but gave the state courts enough evidence to uphold his conviction on appeal under the *Zain I* standards.  Petitioner claims that because all evidenced flowed from the falsification of the illegally obtained sample, it should all have been excluded as fruit of the poisonous tree, including his confession.

Therefore, Petitioner argues,  because all evidenced flowed from the falsification of illegally obtained evidence,   the state courts should have reviewed Petitioner's claim regarding the illegal sample, under the Fourth Amendment and *Brady* instead of *Zain I* and *II*.  Petitioner argues that because the state courts did not review the claim as argued within the context of the Fourth Amendment and *Brady*, there remains a genuine issue of material fact sufficient to defeat summary judgment of his petition. Respondent previously argued in support of the motion for summary judgment, that Petitioner did not properly raise the substance of a claim under *Brady v. Maryland* before the state courts sufficiently to properly exhaust this claim.

If this Court were to find that this claim was properly exhausted before the state courts as a *Brady* claim, it still nonetheless fails for many reasons.

First of all, the state courts were not required to review this claim at all because the challenged evidence was excluded long before Petitioner was convicted and was never made a part of the record.  Therefore, any such review under Petitioner's theory was impossible.

Even had the state courts taken this issue up as a Fourth Amendment claim, it is not reviewable in § 2254.  In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court narrowly delineated the scope of review of Fourth Amendment claims in 28 U.S.C. § 2254 by holding:

> [W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. at 494.

But even applying *Stone v. Powell* to this claim is too generous since the challenged evidence was ruled illegally obtained and excluded before trial even started.  Although Petitioner argues in his Response that the  habeas court "grouped the January 1980 Blood Grouping Table in with the tainted Zain evidence . . .[,]" the test results of testing performed on the January 1980 sample were never introduced at trial or made part of the record.   (Petition at 5.) According to *In re Moss*, the sample was returned to Petitioner or his lawyer. Petitioner previously argued in state court proceedings that the sample was never returned.  (*See* Resp't Ex. 14 at 5.)   No matter what happened to the excluded sample, nothing on the record explains what happened to it.  As far as the reviewing courts were concerned, that sample never existed.  Therefore, the state courts had no duty to examine the constitutional effect of the January 1980 sample on Petitioner's conviction because there was none.

This entire claim rests entirely on pure conjecture, speculation and self-serving conclusory assertions that have even included Petitioner's theory  that investigators used the blood sample to smear it on evidence found at the scene of the crimes.  (Resp't Ex. 14 at 24.)  But what this theory does not include is the simple fact that it was Petitioner's uncle who triggered the investigation when he went to police with his suspicions about Petitioner's involvement. That is what sparked the

investigation and led investigators to seek the January 1980 sample. But that is neither here nor there under a legal analysis because the sample was excluded and never developed on the record of this case.

As far as *Brady* is concerned, and at the risk of further descending into this legal quicksand of a claim, no test results were ever made a part of the record that *excluded* Petitioner as a source of the blood evidence. Although Petitioner's expert at the habeas hearing, Dr. Bing, challenged Zain and Murphy's conclusions and methodology, no testing was ever produced that excluded Petitioner as a source of the pivotal blood evidence. Simply because the blood evidence was presumed to be falsified under the *Zain I* and *II* analysis does not automatically render it exculpatory within the meaning of *Brady* without a *showing* under *Brady*, which Petitioner never did. Moreover, the *Zain* analysis is nearly the same as the *Brady* analysis in that a petitioner, under *Zain*, must show the presumptively falsified evidence was material to guilt or innocence and prejudiced the defense.

A *Brady* violation has three components: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Stricker v. Greene*, 527 U.S. 263, 281-82 (1999). The West Virginia Supreme Court analyzed the blood serology evidence presented at Petitioner's trial for both materiality and prejudice under the *Zain* standard and all available lab results were provided to Petitioner in the state habeas proceedings. Whether any evidence was falsified or not, there is no more of it available. Therefore, no further factual development is available for purpose of summary judgment on this issue or within the meaning of *Brady v. Maryland*.

6

What this claim amounts to is an elaborate theory on how the investigation unfolded premised on a determination that Petitioner's confession was coerced solely because Fred Zain implicated Petitioner by falsifying evidence.  This claim is fatally flawed in many regards but again, the state courts' consistent determination that Petitioner's confession was voluntary puts any dispute on the underlying facts at rest.[2]

Therefore, this claim fails as either a challenge under *Brady v. Maryland,* a challenge to the legality of the admission of Petitioner's confession (as fruit of the poisonous tree as Petitioner argues)*,* or as sufficient to raise a material issue of genuine fact in dispute for purposes of summary judgment.[3]

---

[2]     The appellant claims that the statements he made while in custody in West Virginia were involuntary under the totality of the circumstances, which he contends included unlawful coercion and prolonged interrogation in an unduly restrictive custodial setting, and that these statements should have been excluded from the evidence at trial.   In accordance with the mandatory duty to determine voluntariness set out in Syllabus Point 1 of  *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966), overruled in part,  *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981), the trial court held in camera suppression hearings to consider evidence of the voluntariness of the appellant's waiver of his constitutional rights under  *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and of the resulting confessions.   After considering the testimony  at the suppression hearings, the trial court admitted the appellant's inculpatory statements into evidence.  ***We find no error in the trial court's voluntariness determination.***

*State v. Moss* 376 S.E.2d 569, 578  (W. Va. 1988) (emphasis added).

[3]Respondent's argument in no way constitutes a waiver of exhaustion. As previously asserted in Respondent's Memo, no *Brady* claim was properly exhausted in state court. Respondent's argument herein goes to Petitioner's theory that there remains a genuine issue of material fact unresolved by the state courts on this point.

2.  **Ineffective Assistance of Counsel.**

Petitioner claims that actions of trial counsel based on events that took place at the first trial were ineffective.  Petitioner, again, cites to facts not before this Court or issues resolved by the West Virginia Supreme Court prior to Petitioner's second trial to support his claim.

Specifically, Petitioner claims that trial counsel from the second trial did not call a witness from the first trial who testified that the flatware recovered from Mrs. Arbutus Johnson was not sold by K-Mart.  Petitioner claims the state courts never performed findings on this claim and, as such, it is grounds to deny summary judgment because it constitutes another issue of material fact in dispute.  Petitioner also claims that trial counsel were ineffective for, essentially, not raising issues of ineffective assistance in the first trial court proceedings regarding the admission of his confession, from the first trial.  In other words, second trial counsel were  ineffective for not accusing first trial counsel of being ineffective--or so it appears.

Because the first trial is not before this Court and because it cannot form the  foundation of relief on a challenge to the conviction subject of the instant petition, this claim cannot be considered herein. That has already been determined by the state habeas courts.   Trial counsel could not be ineffective for objecting to a confession that had already been ruled admissible in two previous West Virginia Supreme Court opinions.  Any objections by trial counsel at the second trial  to the actions

of trial counsel in the first trial also would have been futile for the same reasons.[4]  Any issues

flowing from the first trial cannot form the basis for relief herein.

* * * * *

Petitioner confessed, in detail, to killing a young mother and her two tiny children in what

can only be described as a monster story come true.  When they were murdered, Vanessa Reggettz

and her children, little Paul and Bernadette, ages 7 and 4, were already in dire circumstances of want

and neglect with an abusive and neglectful husband and father who admitted to being relieved when

he found their murdered bodies.[5]  Petitioner's confession portrayed a woman who bravely fought

to protect her children and herself as did little Paul and Bernadette who tried to save their mother.

But they lost.

_____

[4]The state habeas court in Case No. 05-MISC-298 held:

> The Court finds that these grounds relate to the admissibility of Mr. Moss's
> confessions, which has been previously raised, considered and denied, on the merits,
> by the Supreme Court of Appeals and this Court in Mr. Moss's prior habeas petition
> and appeal.

(Resp't Ex. 10 at 7.)

> The Court finds that the issue of ineffective assistance of counsel has been
> alleged by Moss in two of his prior habeas petitions.  In his second petition, the
> Court ultimately found the admissibility of confessions had been previously raised,
> considered and denied on the merits by both the Supreme Court of Appeals and the
> Circuit court of Kanawha County.  In his third habeas petition, the Court ultimately
> held that he issue was moot because there remained sufficient evidence on the record
> to sustain the conviction.

(Resp't Ex. 16 at 8-9; Petitioner's fourth habeas.)

[5]Throughout the last 30 years, various parties involved in defending this conviction have
somewhat minimized the true nature of Paul Reggettz and his culpability for being a neglectful
father and husband.  Respondent, however, asserts without comment, the record evidence suggesting
that the victims in this case lived tragic lives long before they met their tragic end.

At the time of the murders, Petitioner was being investigated for malicious wounding in an unrelated crime and immediately after he fled West Virginia, he was charged with a disturbingly brutal attack and attempted rape of a female bus driver in Ohio. It was then that Petitioner's uncle alerted authorities to his possible involvement in the killings. Petitioner confessed to killing Vanessa, Bernadette and Paul Reggettz and every aspect of that confession was corroborated by the scene, the evidence, the condition of the bodies and the recovery of the items stolen from under the tree of the Reggettz home.

Key events surrounding Petitioner's trial made his conviction vulnerable to attack and because of that, Petitioner's case has been winding through the courts since 1980. For 30 years Petitioner has been using those events to construct an elaborate world of legal smoke and mirrors to challenge his conviction. This Court has before it, thousands of pages of records in the history of this protracted odyssey. Respondent has set forth the applicable federal law and relied on the reams of state court findings on the facts of Petitioner's case. This continued back and forth ads only more to the quagmire based on half truths that Petitioner has churned for three decades.

Therefore, Respondent reasserts the previously filed motion for summary judgment on this case. Respondent also reiterates that although Petitioner raises pages of claims and sub-claims, all of those claims rest on two primary issues 1) the voluntariness of Petitioner's confession, and 2) the admission of the testimony and blood testing results offered by Trooper Fred Zain. Both of those issues have been resolved under the proper applications of controlling federal precedent and cannot form the foundation for relief on any of Petitioner's claims stemming therefrom.[6] Once this Court

---

[6]Even had the state courts rendered an unreasonable determination of the facts surrounding all blood testing within the meaning of 28 U.S.C. § 2254(d)(2) in finding that Fred Zain did not
(continued...)

finds that the state court applied the proper legal standard to both issues, all claims flowing from those two issues will dissolve, forever.

Respondent further moves this Court to dismiss the present federal petition and close this unfortunate chapter in West Virginia criminal jurisprudence for good.

**III.**

**CONCLUSION**

For the foregoing reasons, this Court should enter an order denying Petitioner's Response and grant Respondent's Motion for Summary Judgment and dismiss this petition with prejudice.

*Respectfully submitted*,

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,
*Respondent*,

*By counsel*,

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL

/s/ *Robert D. Goldberg*
Robert D. Goldberg, Bar No. 7370
Assistant Attorney General
Attorney for Respondent
Office of the Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, West Virginia 25305-0220
Telephone:     (304) 558-2021
Fax:              (304) 558-0140
E-mail:  robert.goldberg@wvago.gov

---

[6](...continued)
perform the pivotal testing, they nonetheless still proceeded on the presumption that the serology evidence  was falsified which cures any dispute on how the state court resolved the underlying facts for purposes of habeas relief.

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2011, I electronically filed the foregoing "Respondent's Reply to Petitioner's Response to Respondent's Motion for Summary Judgment" with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed, by United States Postal Service, the aforesaid document(s) to the following non-CM/ECF participant:

John Moss, III, DOC # 13734
Mt. Olive Correctional Complex
One Mountainside Way
Mt. Olive,  WV 25185

/s/ *Robert D. Goldberg*
Robert D. Goldberg, Bar No. 7370
Assistant Attorney General
Attorney for Respondent
Office of the Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, West Virginia 25305-0220
Telephone:     (304) 558-2021
Fax:              (304) 558-0140
E-mail:  robert.goldberg@wvago.gov