**MOSS v. BALLARD**
**CASE NO. 2:09cv01406**

**RESPONDENT'S EXHIBIT 38**
**(Continuation, pp. 126 - 228 end)**

126

what verdict they lead you, and to return your verdict based upon the law and the evidence even if you believe the verdict will be an unpopular one?

3.  Even though you say you will follow my instructions, sometimes you are saying yes in a vacuum not knowing what the instructions are going to be. So let me give you a few of the instructions as examples, to make sure you really know what your answer means when you say, "Yes, I will follow the law." One is the instruction on the presumption of innocence. Another is the instruction on proof beyond a reasonable doubt. Another is that you can't convict a person because you think he _might_ be guilty or _probably_ is guilty. You can't convict him if the evidence is equally balanced. You can't convict him on _suspicion_ of guilt. You can't hold the arrest or charges against him in any way; the charges are just a formal way of bringing the case to the attention of a jury, so that everybody is brought into court, just like filing a complaint in a civil case. Do you accept and agree to follow _all_ of these concepts?

4.  What would you do later on if I did give some instruction which you _couldn't_ follow, and here you are committing yourself to follow something without knowing what it is?

5.  We are asking you, before you know what my instructions will be, to commit yourself to following them. Do you have any reservations about making such a commitment? Do you have _any_

feelings that it is not fair to ask you now to commit yourself

to following my instructions about the law, in advance of your

understanding what those instructions might include?

### ONE-A

1.   Please state your name.

2.   Please list your prior places of residence in the last

five years including city, county and state.

3.   What is your marital status?

4.   Has your marital status changed within the last ten

years?

     a.   If so, was it from death, divorce, marriage, or

remarriage?

5.   How many children do you have?

     a.   How many children are living at home?

     b.   What are the ages of your children?

6.   If you are retired, please list your last occupation and

employer and the date of your retirement.

7.   If unemployed, please list the reasons for unemployment.

8.   If you are not working outside the home, what was your

last paid employment?

9.   What is your spouse's name and age?

10.   What is your spouse's occupation and employment?

11.   Please list all your activities, other than work,

including participation in fraternal societies, church groups,

128

or any other group in which you actively participate.

12. Have you ever been charged with a crime?

13. Has any member of your family been charged with a crime?

14. Have you ever been convicted of a crime?

15. Has any member of your family ever been convicted of a crime?

16. Have you ever been a victim of a crime?

17. Has any member of your family ever been a victim of a crime?

18. If the answer is "yes" to any of the above questions 12 through 17, please specify the date and crime committed.

19. If the answer is "yes" to any of the above questions 12 through 17, was any arrest ever made in connection with that crime?

20. Are you presently

    a. Employer;

    b. Landlord;

    c. Tenant;

    d. Homeowner.

21. Have you ever studied law?

22. What is the highest level of education you have completed?

23. Where did you attend high school?

129

24.  Where did you attend college?

     If you attended college, what were your majors and minors?

25.  What degrees do you have?

26.  Do you know any of the following lawyers who work or have worked in the Prosecuting Attorney's office:

     Fran McCoy.

     Beverly Selby

     James Roark

     Peter Brown

     James Stucky

     Neva Lusk

     Charles Pettry

     Cheryl Fuller

27.  Are you acquainted with or have any relationship with Paul Reggettz?

     Does any member of your family?

28.  Have you ever had any contact with Paul Reggettz?

     If so, what kind of contact?

29.  Have you ever heard of, know, or have met any of the following persons:

     Trooper Terry Williams

     Trooper Michael Don Smith

     Trooper F. S. Zain

Trooper R. R. Custer

Trooper D. R. Rinehart

Trooper D. Egnor

R. C. Murphy, former State Trooper

Trooper H. Woodyard

Trooper D. L. Williams

Trooper G. L. Clark

Trooper L. C. Inman

Trooper L. L. Farley

Trooper D. R. Searls

Steve McGowan, former State Trooper

Trooper R. L. Seacrist

Dr. Irving Sopher

Sergeant C. R. Lane

Lieutenant John Fulks

Corporal R. E. O'Dell

Arbutus Johnson

William Johnson

TWO

1.  Is it hard for you to get started in the morning?  I am particularly interested in this question if you live a long way from the courthouse and will have to get up especially early in the morning in order to be with us and ready to go to work at 9:30 a.m.

131

2.   There will probably be many periods of time when the lawyers will have to confer with me at the bench, or absent themselves from your presence and go into my chambers, and you will be left to sit and wait.  Will this bother you, or will this cause you to think that there is something going wrong with the trial, or cause you to feel unhappy with the way things are proceeding?

3.   Do you often take a nap during the day?  If so, do you think you can function easily when you are denied the opportunity to do so?

4.   Do you get tired easily?

5.   Do you suffer from headaches or from any physical pain which would result from non-activity, or from being required to sit quite still for long periods of time?

6.   Will your legs bother you when you are required to sit still for hours at a time?

7.   Do you have any physical problems which would make it uncomfortable for you to sit in this case?

                         THREE

1.   This case may take a fairly long time to try.  Do you suffer from any illness which might disturb you during this period, such as ulcers, earaches, headaches, or any other illness, even of a minor kind?

2.   Do you anticipate any pressing personal business or

132

personal affairs which might arise within the next month and could distract your attention?

3. Do you know of any reason which might prevent you from giving your full time and attention to the testimony and evidence, to my instructions of law, and to your deliberations in John's case, as one of the twelve sole and final judges of the facts?

4. This case will probably take about six weeks to try. It will require your presence in this courtroom from 9:30 in the morning until about 4:30 in the afternoon, with time out for lunch. Would you find this a hardship for either personal or health reasons?

(a) Will it cause you any hardship with your family to stay with us that long?

(b) Will it cause you any hardship with your work plans or vacation plans?

5. If this case should last longer than a week, is there anything you can think of which would prevent you from giving this case your full and undivided attention?

FOUR

1. Do you understand that our law requires, and our constitution guarantees, an impartial trial by an unbiased jury, no matter what the charges are against a defendant?

2. If during the testimony something triggers your memory

133

about something you have read or heard about this case, would you be able to put that completely out of your mind? Would you be able to decide the case solely on the evidence and testimony presented in this courtroom, keeping in mind that what you read or heard might not have been accurate, that it wasn't given under oath, and that it wasn't subject to cross-examination by John's lawyer?

3. Is there anything about the charges in this case which creates some strong emotion in you, or would cause you any difficulty in being a fair and impartial juror?

FOUR-A

You will find from the evidence in this case that Paul Reggettz, the husband of Vanessa Reggettz and father of Paul Eric and Bernadette Reggettz, has previously confessed to murdering his family on at least three different occasions.

1. Do you believe a father, under the proper circumstances, could by violent means take the lives of his family?

2. Do you feel that a father who has indicated he felt his family was a responsibility to him that he could not deal with; that his family kept him tied down and that he couldn't do the things in life he wanted to do; that his family was a constant source of financial pressure to him; that he didn't do well under pressure and was nervous; that he was constantly arguing with his wife over these matters and that he wanted to be free

134

from his family and had indicated a desire to leave his family
in the near future - Do you feel that these feelings along with
other circumstances could cause a father to in a fit of rage
take the lives of his wife and two children?

3.  if you believed that Paul Reggettz, the husband of
Vanessa and father of Paul Eric and Bernadette Reggettz, either
took or may possibly, probably, or most likely took the lives of
his family, would this not raise a reasonable doubt in your mind
as to John Moss' guilt for the same crimes?

4.  If believing that Paul Reggettz, the husband of Vanessa
and the father of Paul Eric and Bernadette Reggettz, either took
or may, possibly, probably, or most likely took the lives of his
family raises a reasonable doubt in your mind as to John Moss'
guilt for the same crimes, would you go further and be willing
to enter a not guilty verdict in favor of John Moss?

                              FIVE

1.  Apart from any discussions you have heard or
participated in, have you read or heard anything about this
case other than what you have heard here today?

2.  Have you read any facts about this case in one of the
papers you usually read?  What newspaper?

3.  Have you seen anything about this case while you were
watching one of the local television stations, or heard anything
while you were listening to one of the local radio stations?

4.  When you read or saw or heard these "facts" about the case, did you believe them to be true?

5.  Do you understand that the reports which you have read or seen or heard may not be accurate, that the information you heard was not testimony given under oath and that John's attorney did not have the opportunity to cross-examine on his behalf?

6.  Since you have come to the courthouse, have you heard any discussion about this case by any other jurors, or by the court personnel or deputies, or by anyone else?

7.  Will you agree to judge this case based only on what you see and hear during the trial in this courtroom -- the evidence and testimony presented from the witness stand?

8.  Would you consider this case differently from a case which had not been in the public attention?

9.  Have you formed any opinion whatsoever as to the guilt or innocence of John Moss?

10.  Knowing what you do about this case, would you be entirely satisfied to be tried by a jury in your present frame of mind if you were the person charged with this crime?

11.  Let's talk a little bit more about the burden of proof which rests solely upon the shoulders of the prosecution.  Do you understand that each and every material element of the offense charged must be proven to your satisfaction beyond a

136

reasonable doubt, and that if even <u>one</u> element of an offense is
not so proven, then you <u>must</u> vote not guilty?

12.  Would you render a verdict in this case according to the
law and the evidence, and if there is a reasonable doubt, would
you return a verdict of not guilty by reason of the fact that
the prosecutor failed to carry his burden and not allow the fear
of criticism from any source to influence your verdict?

13.  If you found that there was a reasonable doubt in this
case and the prosecutor had not carried his burden and you
entered a not guilty verdict, would you be uncomfortable around
your neighbors or fellow workers after you voted for an
acquittal in this case?

14.  If you have a reasonable doubt about John's guilt in
this case and feel that the prosecutor has not carried the
burden, that there is substantial questions about the evidence
has been introduced and after you have listened to the arguments
of your fellow jurors, you still have that reasonable doubt or
doubts in your mind, will you stand by your belief and refuse to
change your verdict even though it might result in a mistrial in
this case?  You realize, of course, that there is such a thing
as the complete jury cannot reach a unanimous verdict and that
the Court will call a mistrial in such a case.

15.  In other words, would you give John Moss the benefit of
your individual opinion and vote for a verdict of not guilty as

137

long as you have a reasonable doubt of his guilt even though the
other eleven jurors voted the other way?

16.  Do you know of any reason you could not serve in this
case as a fair and impartial juror?

SIX

1.  I will instruct you that under our law the returning of
an indictment against John is absolutely no evidence of his
guilt, and cannot be considered by you as any evidence or proof
of his guilt.  Do you understand and agree to follow this
instruction of law?

2.  John has been arrested on this charge.  What do you
think that means as far as proof that he is guilty or not
guilty?

3.  I will tell you that John's arrest is absolutely no
evidence of his guilt.  Can you accept this instruction of law
and act accordingly?

4.  Do you understand that an indictment is nothing more
than the way charges are filed against a person, in order to
bring a case into court for consideration by a jury?

5.  Do you understand that an indictment is prepared by the
prosecutor's office?

6.  I will instruct you that where any person comes into the
court accused of a crime, like John, the fact that he has been
arrested or the fact that he has been charged by formal court

138

papers is absolutely no evidence of his guilt. Everyone comes into the court presumed innocent. Can you follow my instruction of law and presume John to be innocent all through this trial?

SEVEN

1. Have you or any member of your family or have any of your close personal friends, ever been a member of a law enforcement agency either in civilian or military life?

2. If any of the witnesses in this case are employed by any law enforcement agency, do you understand that you may not give their testimony any more weight or credibility than you give to the testimony of any other witnesses, solely for this reason? Do you feel that you could follow this requirement of the law?

3. Have you or any member of your family ever been employed by the State of West Virginia or by the United States Government, or any of their agencies? If you have:

    (a)  Which family member was a state or federal employee?

    (b)  What agency was it?

    (c)  What were the dates of employment?

    (d)  What were his/her duties?

    (e)  What was his/her title, if any?

4. Are you or any member of your family acquainted with anyone who works in the prosecutor's office, or has worked there? Any state, county, and/or city police officers, or

139

police officers' families? (Any other witnesses who could be generally characterized as prosecution-related, from the Medical Examiner to the informant.)

## EIGHT

1-A. If any of the witnesses in this case are employed by a law enforcement agency, do you understand that you may not give their testimony any more weight or credibility than you give other witnesses solely for this reason? Do you feel that you could follow this requirement of the law?

2. If a police officer and another witness, who is not in law enforcement, were to testify about facts in contradiction to one another, would you tend to believe the police officer just because he/she is so employed?

3. Do you understand that you may not "automatically" believe the testimony of a police officer over the testimony of another witness? That you must weigh and evaluate the testimony of all witnesses, including police officers, by the same standards?

4. You understand, don't you, that police officers are human like you and I?

5. They are subject to the same human frailties as you and I, aren't they?

6. Do you feel that a police officer may make a mistake or mistakes just as you or I could make?

140

7.  Do you feel that under certain circumstances they may make a casual error just as you and I make?

8.  If the testimony revealed that the police had erred or used improper judgment, how would you react to such testimony?

8-A.  Do you feel that under certain circumstances police officers, just like other people, may be overly aggressive in trying to accomplish their job?

### NINE

1.  Have you or has any member of your family ever been involved in a criminal case, either as the defendant, as a witness for the defense, as a witness for the prosecution, or in any other capacity?

2.  Have you ever appeared and testified as a witness in a jury proceeding?

3.  Have you ever appeared and testified as a witness in a criminal case?  (If yes)  Did you appear as a witness and testify on behalf of the state or on behalf of the defense?

4.  Have you ever had your statement taken by a lawyer in preparation for trial?  (If yes)  Was that statement a sworn statement, or was there just a question and answer session conducted between you and the lawyer?

5.  Have you ever had your deposition taken?  (Explain deposition).

141

TEN

1.  Do you understand that under the law, any time evidence is capable of two interpretations, one consistent with guilt and the other consistent with innocence, you <u>must</u> draw the interpretation or inference consistent with innocence?

2.  Do you understand that if you fail to draw the interpretation or inference consistent with John's innocence, you would not be giving him the benefit of the presumption of innocence which you agreed to do?

3.  Do you agree to follow the law, and to give John the presumption of innocence by drawing the interpretation or inference consistent with innocence, whenever the evidence at trial is capable of this interpretation or inference?

4.  So, when this trial starts, the law presumes John Moss to be innocent and if after all the evidence is presented and that evidence is subject to two interpretations which creates reasonable doubt in your mind as to John's guilt, will you give me your assurance at this time that you will resolve that reasonable doubt in John's favor, as the law requires, and find him not guilty?

ELEVEN

1.  Do you think that a confession necessarily reflects that something really happened?

2.  Do you think that psychological pressures may cause an

142

innocent person to confess?

3. If a confession is introduced into evidence in this case will you take into consideration these points?

      (a) Where was it obtained?

      (b) Under what circumstances was it obtained?

      (c) By whom was it obtained?

4. If it is shown to you that certain statements made by John are inconsistent with the actual facts of the Reggettz family deaths, will you consider that very keenly in determining what weight, if any, to give to this alleged confession?

5. Will you listen carefully to the questions and answers as are set forth in this alleged confession and determine whether you believe these were the words of John or whether they were words reflecting facts which these police officers placed in John's mind?

6. Do you think that being alone and under police custody may tend to frighten a man, make him say things under a different state of mind than he usually has -- a state of mind created by the police officers?

7. Do you believe some police officers are capable of physically assaulting and abusing one in police custody in an effort to secure a confession?

8. Do you think that there is such a thing as mental coercion and physical abuse used by police officers in the

143

obtaining of a confession?

9. In determining the voluntariness in this confession, will you take into consideration what the police motives and objectives were at the time of questioning; and whether they were trying to help John or to lock up the case?

10. If you should find that there are four confessions in this case, (in other words, two persons allegedly confessed to the killing of the Reggettz family) three confessions by Paul Reggettz, the father of the two children and the husband of the mother who is deceased, and one confession by John, and you could not determine which of those confessions were the true confessions and those facts raised a reasonable doubt as to the guilt of John in this case, would you resolve that reasonable doubt in John's favor and find him not guilty?

### TWELVE

1. Do you understand that it is the right of John Moss not to testify in his own behalf, should he choose not to? That John need never take the stand and tell anything at all to the jury, and that you may not draw any inference against him from his failure to testify? Could you follow that law and not hold it against John if he does not testify?

2. If John does testify, do you understand that the law requires you to judge his testimony by the same rules and standards you would use in judging the testimony of any other

witness in this case? That you may not judge his testimony

differently because he is the defendant standing trial on this

charge? Could you follow that law and judge John's testimony

just as you judge the testimony of any other witness?

   3. I will instruct you that any defendant in a criminal

case has a right to present evidence on his own behalf, but that

he also has a right <u>not</u> to present any evidence. Any defendant

may present evidence and, if he chooses, testify; or he can

choose not to present any evidence, and not to testify, but

simply to rely upon the evidence which is brought out during

cross examination of the prosecution witnesses? If John Moss

decides not to testify the lawyers will not know that until they

determine whether they believe the State has proven beyond a

reasonable doubt and to a moral certainty his guilt to you

ladies and gentlemen. If the lawyers feel that the State has

failed to prove its case beyond a reasonable doubt and to a

moral certainty, then there may be absolutely no reason to have

John testify. A defendant has the right under those

circumstances not to testify and does not have to prove anything

on his own behalf. He is presumed innocent. He does not have

to testify unless he chooses to do so. If John exercises his

absolute constitutional right not to present any evidence, or

not to testify on his own behalf, would you hold that against

him? Would you require him to present "his side of the story"

145

to you?

### THIRTEEN

1.  Is there anything about the way John looks, or anything about his appearance which makes you feel that he is either innocent or guilty?  Is there anything about his appearance which causes you to have some hard feelings about him?

2.  John Moss is a black man.  I am certain that we all feel that when a man's life and liberty are at stake, there is no room for prejudice; and I am satisfied that consciously none of you are prejudiced, or will convict a man because of his coloring; what I want is your assurance that you will not tolerate any prejudice.  Do I have that assurance?

### FOURTEEN

1.  Of course, you know that a person is presumed innocent until and unless he is proven guilty beyond a reasonable doubt?

2.  You also realize, don't you, that you must give John the benefit of this presumption of innocence without any mental reservations whatsoever?  And that you are to consider this presumption of innocence as actual proof of innocence, until and unless the prosecution proves otherwise to you beyond a reasonable doubt?

3.  Do you know that John is presumed innocent as he sits here today?

4.  If you were to vote right now before any evidence is

presented and before any testimony is heard, how would you have to vote?

5. (If the prospective juror responds that he/she would first have to hear the evidence) If you had to vote, even though it would be unreasonable or unlikely that you would have to vote at this time, what would you have to vote under the law of our American system?

6. (If the prospective juror responds that he/she couldn't vote at this time) Is the reason that you couldn't vote because somewhere in the back of your mind you feel that John is in court for a reason, and you have a suspicion that he must be guilty or he wouldn't be here?

7. Knowing that John is presumed innocent at this time, do you understand that whatever explanation he offers <u>must</u> be accepted by you unless the State proves beyond a reasonable doubt that the explanation is not true? Do you have any problems with that? Will you agree to follow the law?

8. Are you able to apply the presumption of innocence in this case regardless of what the charges are and even if the case were that the State was seeking the death penalty?

9. Do you understand that the presumption is a substantial part of the law of our country, and is not to be lightly disregarded or given mere "lip service"?

10. Do you understand, for example, that if you had to vote

147

right now you would have to find John not guilty, because he is

presumed innocent and you've heard no evidence against him?

Could you do that?

11.  I will instruct you that unless the State proves beyond

a reasonable doubt that John is guilty of the crime here charged

against him, you must vote not guilty.  Would you be able to

follow that instruction and vote not guilty even though you

might believe that John violated some other state law?

12.  If the prosecution fails to prove the guilt of John who

is seated here in the courtroom with you -- if they cannot prove

his guilt to the degree of moral certainty which amounts to

proof beyond a reasonable doubt -- then you realize that you

must vote not guilty if you are going to carry out your oath as

a juror.  Do you understand that?

FIFTEEN

1.  If you are chosen as a juror, will you stand by your

opinion based on the evidence that comes before you during the

trial, and only that evidence?

2.  If you are chosen as a juror, will you stand by your own

individual analysis of the evidence and not be swayed by the

emotions of any other jurors?  You should be swayed by the

facts, but will you stand on your own individual judgment if

you are chosen as a trial juror, and not let the emotions of

others persuade you?

148

3.  Do you find it difficult to make up your mind as to who is right and who is wrong in a family dispute, or in a problem at work?

4.  When faced with a difficult decision, would you rather leave it to someone else so you won't be blamed if the wrong decision is made?

5.  I will instruct you at the end of the case that each juror must decide the case on his/her own, and that you cannot surrender your conscientious convictions if you are not satisfied that the State has proven John guilty beyond all reasonable doubt.  You may not surrender your convictions just for the purpose of joining in a verdict; even though the other eleven jurors may be of a different opinion, you should not surrender your convictions for that reason.  Will you be able to stick to your own opinion, if you are not satisfied of proof beyond a reasonable doubt?

6.  Do you feel that you are a strong enough person not to surrender simply because the others are of a different opinion?

7.  If you do have a reasonable doubt about John's guilt, and after listening to the arguments of your fellow jurors when you retire to consider the case and you still have that reasonable doubt, will you stick to your guns and refuse to change your verdict, even though it is an unpopular one and one which might result in a hung jury?

149

8.   Would the inconvenience of having to spend the night (or more nights) away from home prevent you from sticking to your guns and refusing to change your verdict, if you still have that reasonable doubt about the guilt of John?

### SIXTEEN

1.   Do you think that a verdict of not guilty in this or any criminal case would be unpopular or embarrassing with members of your family, or with your neighbors and friends, or with members of your church, or with members of any social group to which you belong, or maybe with the people with whom you work?

2.   Could you bring in an unpopular verdict if you were required to do so by the law and the evidence in this case?

3.   Would it be embarrassing to you or your spouse if you sat on a jury in a long case, and then the jury found John not guilty?  Would it be embarrassing to you or your spouse, at work or at home or in discussions with your friends or neighbors?

4.   Regardless of what the law is, assuming you are willing to follow my instructions, do you agree to follow those instructions all the way no matter where they lead you, and to return your verdict based upon the law and the evidence even if you believe the verdict will be an unpopular one?

### SEVENTEEN

1.   Where are you employed?  What are your duties in your daily or weekly performance of your job?

150

2. How long have you been doing this kind of work?

3. Did you have any special training before you started working in your occupation, or have you received any special training from your employer while you have been working at your job?

4. Have you had any other types of employment that you held for periods of longer than six months, or that were simply summer fill-in jobs?

5. Please tell me, if you were to become unemployed in the area in which you now work, what other types of work would you feel qualified to do?

6. How often do you make decisions during your regular job and what kind of decisions are those?

7. What degree of responsibility do you have for the way things are carried out on your job?

8. What is your husband's/wife's occupation?

### EIGHTEEN

1. Do you understand that under the law, all of the lawyers in this case are to be treated equally, and you should not treat the State's lawyers any differently than you do the defense lawyers? Will you agree to follow that law?

2. During the trial the attorney for John will make objections to testimony or evidence offered by the State. Do you understand that it is his job to preserve the record by

151

doing this?  If you are offended by his objections, will you hold that against John in your deliberations?

3.  Do you realize that the prosecuting attorneys and the defense attorneys are all equals; all lawyers; all equals in the eyes of the law; each doing his or her best to represent the client?

4.  Do you realize that you should not give any more weight to the arguments of the prosecutors than to the defense attorneys, merely because they bear the title of (title)?

NINETEEN

1.  You know, don't you, that the State and the prosecutors have the burden of proof in this case?

2.  Do you think that John has to prove he is innocent?

3.  In a criminal case the prosecution must prove a defendant's guilt by much greater proof than in a civil case, that is, by proof beyond a reasonable doubt.  Do you understand that the defendant need not prove anything, but rather the law puts the whole burden on the prosecution to prove a defendant's guilt beyond a reasonable doubt?  Do you agree to follow this law?

4.  That means that the State must prove its case to your satisfaction, beyond a reasonable doubt and to a moral certainty.  Do you think that this places too much of a burden on the prosecutors?

152

Do you agree to follow the law, regardless?

5. You understand, don't you, that the burden of proving John guilty beyond a reasonable doubt rests totally with the prosecutors and the State, and that the defendant does not have to introduce any evidence whatsoever at any time during the trial?

6. Knowing that, would you require John at any time to show you that he is innocent, or to prove to you that he is innocent?

7. Let us examine some of the other rights and privileges that defendants have under our American system. As I told you earlier, I will instruct you that the burden of proof is always on the prosecution and that the defendant need never present any evidence on his own behalf. Let me explain to you what that means. The defense can cross-examine the prosecution witnesses, or can cast doubt upon the evidence as presented by the State, and when the State rests -- that is, when the State says that it is finished with its case -- the defense can stand up before you, the jury, and can say that the State has not presented a case which is strong enough to survive the test of a reasonable doubt. Do you understand that this is a defendant's right?

8. Let's talk a little bit more about the burden of proof which rests solely upon the shoulders of the prosecution. Do you understand that each and every element of the offense charged must be proven to your satisfaction beyond a reasonable

153

doubt, and that if even <u>one</u> element of an offense is not so
proven, then you <u>must</u> vote not guilty.

9.   Do you think that is asking the prosecutors to take on
more of a burden than they should have to?  (If yes)  How will
that affect your consideration of the law and of the evidence?

10.   Do you think that it is reasonable to require the State
to prove its case beyond a suspicion of guilt, beyond a
possibility of guilt, and even beyond a probability of guilt?
Do you think that is too much of a burden for the State to bear?
(If yes)  How will that affect your consideration of the law and
the evidence?

11.   You understand, do you not, that while in a civil case
like an automobile accident case, the party who is seeking
relief need only prove his case by a mere preponderance of the
evidence.  In a criminal case as is this case, it is necessary
for the prosecution to prove the defendant guilty beyond a
reasonable doubt that is to a moral certainty.  Do you
understand that?

### TWENTY

1.   Now let's say that you have sat through the trial and
you have heard the testimony and you have seen the evidence, and
now you are going back into the jury room and you are going to
be required to cast a vote.  Now, when you get back into the
jury room and you say to yourself, "I suspect that maybe John

154

committed the acts which the State said that he did. I just have a <u>suspicion</u> that it could have happened that way." How are you going to vote?

2. Now let's say that rather than having a suspicion that John committed the acts which the State said that he did, you say to yourself, "You know, I think he <u>possibly</u> committed the acts." Now how are you going to vote?

3. Do you think that it is possible that because of suspicious circumstances an innocent person may be charged with a crime?

4. Do I have your promise that you would not return a verdict of guilty on mere suspicion, however great that suspicion is?

5. Now let's say that the evidence and the testimony were stronger, so that when you go back into the jury room you say to yourself, "I don't know, but I think John <u>possibly</u> committed the crime just the way the State said. I'm pretty sure he <u>probably</u> did it in that fashion." Now how are you going to vote?

### TWENTY-TWO

1. I have asked you many questions. At certain points you may feel I was trying to invade your privacy. Do the questions I asked you anger you or trouble you in such a way that you couldn't be a fair and impartial juror? Do you understand why I am asking you these questions and why it is necessary for me to

ask these questions? Is there anything else you want to tell me that will help the court discover whether you have any prejudgment in this case, or any questions in your own mind that may affect your decision making process?

2. Have the questions which I asked you triggered anything within your mind that you want to volunteer?

3. Is there anything about this case that bothers you in any way?

4. If you are chosen to be a juror in this case, do you know of any reason why you could not sit as a fair and impartial juror? Is there anything I have said about John, or about the facts of this case, which creates a doubt in your own mind about your ability to be a fair and impartial juror?

5. Is there anything that you have felt or seen or heard since you came here which would lead you to believe that you might have a tendency to accept one view of the case, either that of the prosecution or the defense, more than the other view?

6. Is there any reason which I have not covered which would make you feel that you could not approach this case with a completely open mind, or that you feel might embarrass you in your consideration of this case?

7. Assuming that you or some loved one of yours was standing trial in place of John for the same crime, would you be

156

satisfied to have you or your loved one tried by twelve jurors

having the same frame of mind as yours?

TWENTY-FIVE

Do you understand you cannot find John Moss guilty because

you think he might be guilty; you can't find John Moss guilty

because you think he most likely is guilty; you can't find John

Moss guilty because you think he is probably guilty; you can't

find John Moss guilty because he is possibly guilty; and you

can't convict John Moss on a suspicion of guilt, but instead do

you understand in order for you to find John Moss guilty the

State must prove his guilt beyond a reasonable doubt that is to

a moral certainty? Do you understand that?

THE COURT: Okay, that's all the defense questions; now

let's go to the State's.

(Whereupon, the State submitted the following questions for

the Court's consideration:)

1. Have you read anything in the newspapers or heard

anything on television or the radio about this case involving

the murder of Vanessa Reggettz, Bernadette Reggettz and Paul

Eric Reggettz on December 13, 1979?

2. Has anything you have read, seen or heard caused you to

form an opinion either for or against the defendant, John Moss?

3. Has anything you have read, seen or heard caused you to

form an opinion either for or against the State of

157

West Virginia?

    4.  Have you formed any fixed opinion as to the guilt of
John Moss?

    5.  Have you formed any fixed opinion as to the innocence of
John Moss?

    6.  Have you formed any opinion as to the guilt or innocence
of any other person in this case?

    7.  What is that opinion?

    8.  Is this opinion which you have formed so fixed and
unchangeable that it would not yield readily to the evidence and
testimony in the trial of this case?

    9.  Have you contributed or have you been asked to
contribute any money or time or aid to the defendant, John Moss,
in this case?

    10.  If you were selected on this jury and you were required
to remain each night in a hotel or motel until the conclusion of
this trial, would this cause you to be unable to give your full
attention to the testimony given in Court because of any
personal, family or business problems?

    11.  Would being selected to this jury cause you any serious
personal problems if the trial required several weeks?

    12.  Have you ever had any unfortunate experience with law
enforcement offices or courts which might prejudice you against
the prosecution in this case?

158

13.  Would your age prevent you from giving complete attention to the testimony and other proceedings in this case if you were selected as a juror?

14.  Would your health prevent you from giving complete attention to the testimony and other proceedings in this case if you were selected as a juror?

15.  Would your hearing prevent you from giving complete attention to the testimony and other proceedings in this case if you were selected as a juror?

16.  Would your eyesight prevent you from giving complete attention to the testimony and other proceedings in this case if you were selected as a juror?

17.  Do you know of any reason about which you have not been asked why you could not be completely fair and impartial to both the defendant and the State if you were selected as a juror in this case?

18.  Do you think that the oath to well and truly try this case according to the law and evidence is a mere formality?

19.  The State of West Virginia must prove the defendant guilty beyond a reasonable doubt, but the law does not require any heavier burden.  Would you, as a juror, require a heavier burden?

20.  Do you believe that beyond a reasonable doubt means beyond all doubt?

159

21.  Would you give more weight and credibility to a police officer?

22.  Would you give less weight and credibility to a police officer just because he is a police officer?

23.  Could you convict the defendant on circumstantial evidence alone?

24.  Do you understand that sympathy is not part of your verdict?

25.  Do you understand that you are only the trier of the facts?

26.  Do you have any personal philosophy that would not allow you to return a verdict of guilty?

27.  Is there anybody here that would not return a guilty verdict of murder in the first degree without a recommendation of mercy?

28.  Are you all residents of Kanawha County?

29.  Are you all citizens of the United States?

30.  Is there anyone here who could not follow the instructions of the Court even though you did not agree with the instructions of the Court?

31.  A verdict of murder in the first degree without a recommendation of mercy means the defendant would spend the rest of his natural life in the penitentiary without hope of parole. Knowing that could you still return such a verdict if the State

160

proved its case beyond a reasonable doubt and the facts called for it?

32. If during the testimony something triggers your memory about something you have read or heard about this case, would you be able to put that completely out of your mind? Would you be able to decide the case solely on the evidence and testimony presented in this courtroom, keeping in mind that what you read or heard might not have been accurate, that it wasn't given under oath, and that it wasn't subject to cross examination?

33. The Court will tell you that arrest is absolutely no evidence of guilt. Can you accept this instruction of law and act accordingly?

34. Do you understand that an indictment is nothing more than the way charges are filed against a person, in order to bring a case into court for consideration by a jury?

35. Do you understand that the Grand Jury system is provided for by the United States Constitution and West Virginia State Constitution?

36. The Judge will instruct you that where any person comes into court accused of a crime, the fact that he had been arrested or the fact that he had been charged by formal court papers such as an indictment is absolutely no evidence of his guilt.

37. Have you or any member of your family, or have any of

your close personal friends ever been a member of the National Weather Service?

38.  Have you or any member of your family, or have any of your close personal friends ever been a member of a law firm?

39.  Have you or any member of your family, or have any of your close personal friends ever worked for a private detective agency?

40.  Have you or has any member of your family ever been involved in a criminal case, either as the defendant, as a witness for the defense or in any other capacity?

41.  Are you friendly with the defense lawyer in this case?

42.  Do you think that he generally tends to be right in his actions and opinions?  Are you generally in agreement?

43.  If you believe beyond a reasonable doubt that the defendant is guilty and after listening to the arguments of your fellow jurors when you retire to consider the case you still have that belief beyond a reasonable doubt that the defendant is guilty, will you stick to your guns and refuse to change your verdict, even though it is an unpopular one and one which might result in a hung jury?

44.  Would the inconvenience of having to spend the night (or more nights) away from home prevent you from sticking to your guns and refusing to change your verdict, if you still believe beyond a reasonable doubt that the defendant is guilty?

45. Do you think a verdict of guilty in this or any criminal case would be unpopular with members of your family, or with your neighbors or friends, or with members of your church, or with members of any social group to which you belong?

46. Assuming that you are picked as a juror in this case and you brought in a verdict of guilty, would you find it embarrassing in the neighborhood or areas that you live in?

47. If you were to bring in a verdict of guilty, would you have any embarrassment at all in your church or in any of the clubs or fraternal or social groups that you belong to?

48. Regardless of what the law is, are you willing to follow, accept and abide by the judge's directives, orders and instructions, do you agree to follow, accept and abide by those directives, orders and instructions all the way no matter where they lead you, and to return your verdict based upon the law and the evidence even if you believe the verdict will be an unpopular one?

49. Do you understand that one charged with crime may be convicted upon circumstantial evidence alone, or upon circumstantial evidence connected with other evidence and that circumstantial evidence is not only competent, but sometimes the only mode of proof?

50. Do you understand that proof beyond a reasonable doubt does not necessarily mean proof without contradictions, or

without conflict, but, if after considering all the evidence and

circumstances produced in the case, you can say that you have an

abiding conviction of the truth of the charges contained in the

indictment, then you are satisfied beyond a reasonable doubt and

may find the defendant guilty?

51.  During the trial, the attorney for the State will make

objections to testimony or evidence offered by the defense.  Do

you understand that it is the State's job to preserve the record

by doing this?  If you are offended by the State's objections,

will you hold that against the State in your deliberations?

52.  Do you realize that you should not give any more weight

to the arguments of the defense lawyers than to the State's

attorneys?

53.  Do you realize that the Prosecuting Attorney has a

client - the people of Kanawha County?

54.  During the course of this trial, the judge will rule on

objections, and make various statements or ask questions about

certain legal concerns in the case.  Do you understand that

rulings, statements and questions by the judge do not carry any

indication of the Court's feelings about the possible innocence

or guilt of the defendant?

55.  Is there any reason which I have not covered which would

make you feel that you could not approach this case with a

completely open mind, or that you feel might embarrass you in

164

your consideration of this case?

56.  Assuming that you or some loved one of yours was standing in place of the relatives of the dead victims in this crime, would you be satisfied to have you or your loved one represented by twelve jurors having the same frame of mind as yours?

57.  In this case the State is seeking a conviction of first degree murder, and further, the State will ask you to withhold mercy. Do you have any conscientious moral scruples or are you opposed to a sentence of life without mercy in such a way, that you could not vote for life without mercy in any case?

58.  Do you have any feelings or beliefs about the life without mercy sentence which would cause you to automatically reject the imposition of a sentence of life without mercy and automatically vote for the life with mercy sentence, if you found the defendant guilty of first degree murder?

59.  Have you or any member of your family ever posted a bond for or made bail for a criminal defendant?

60.  From time to time there may be television coverage of portions of this trial, would that cause you to want to watch television news coverage of this trial in order to see yourself on television?

61.  The word reformatory may appear or be heard in the course of this trial. Do you understand you are not to consider

165

that word or the use of that word as any indication of the guilt, innocence, activities or character of any party in this case?

62. Do you know any of the attorneys in this case? Are you related to any by blood or marriage? Have you had any professional, social, or other relationship with any of them? Has any of them acted as your attorney or the attorney for a member of your immediate family or close friend, to your knowledge?

THE COURT: All right, let's start with Defendant's One.

MR. STUCKY: Your Honor, you have asked that particular general question to the entire panel; and I believe everyone either didn't respond or responded in the affirmative that they could follow the law, no matter whether they agreed with it or didn't agree with it.

MR. McKITTRICK: I think what you can do, Judge, probably if you want to go on down to No. 3, you could say, "You have indicated you are willing to follow the instructions of the law", and then go on into No. 3.

MR. STUCKY: The State objects to that for this reason. I believe that the question has been asked whether or not they are going to follow the law. When you get into specific law, then what you are doing is instructing the jury on the law prior to the case.

THE COURT:  I think that is all I have to do.  I don't think I have to go in this great a detail.  This two page voir dire, comprising some five paragraphs, No 4 I certainly don't think is proper:  "What would you do later on if I did give some instruction which you couldn't follow, and here you are committing yourself to follow something without knowing what it is?"

I don't have to go into that detail.  I don't think that is the law.  I am willing to repeat what I said out there and enlarge a little bit.  I thought I was pretty thorough on that issue.  I said, "Even though you don't like the particular law I give you, is there anyone who won't apply them or can't?  I am willing to ask that over again, but I am not going into this great detail.  And incidentally, any of these I refuse, I want to make a copy a part of the record for appeal purposes if that becomes necessary.

MR. McKITTRICK:  Okay.

THE COURT:  If you want to object, go ahead and object.  I will ask them if they will follow the law, even if they disagree with it.  I think that is all that is required.

MR. McKITTRICK:  All right.

THE COURT:  I will ask if they will follow the law.

MR. McKITTRICK:  I think No. 3 is very important, and I think it should be given in this case.

167

THE COURT: Paragraph 3?

MR. McKITTRICK: Yes.

THE COURT: I am not going to give it. I think these are proper for instructions. I think part of it is a proper instruction at the conclusion of the evidence. I don't believe it is proper for voir dire, and I am going to refuse it. And again, anything I do refuse, Parrish, I am going to make a part of the court file so that if it reaches appeal stage the Supreme Court will have the benefit of perusing the question as propounded to the Court and determining whether or not the Court erred in refusing it. I will ask the general question about following instructions, if they will or if they can't.

MR. McKITTRICK: You are going to refuse what, paragraph 3?

THE COURT: I'm refusing the whole thing except paragraph 1, and I'm going to enlarge on it where it says, "Can you follow the instructions of the law given to you by me, whether or not you like those laws, even if you disagree with those laws?" I have already asked that, but I will ask it again on individual voir dire.

I believe the law is your client is entitled to a fair and impartial trial. You are not entitled to a perfect trial. I think that is the law. I think what you are seeking through some of these voir dire is a perfect trial. I don't fault you for trying, but I think that is the law.

All right now, One-A we have already struck everything down to 26, is that correct?

MR. McKITTRICK:  That is correct.

THE COURT:  And there is no objection to that, Mr. McKittrick?

MR. McKITTRICK:  No objection to that.

MR. STUCKY:  We don't object to 26.

MR. BROWN:  Do you think we should take Roark and Frances McCoy off there?

MR. McKITTRICK:  They worked there, and they may be witnesses in this case.

THE COURT:  I don't have any problem, Parrish.  If you want those names on there, they will stay on there.  Roark was the Prosecuting Attorney.  He handled the original investigation.  I think it is proper to ask the jury if they know him or know of him.

(Whereupon, a discussion was had off the record and then resumed back on the record as follows:)

THE COURT:  Could we have some semblance of order?  Let me take them one at a time.  We are now on One-A.  We have agreed without objection to strike all of the first page and all of the second down to and including No. 25.  And I have agreed to give 26 through 28 without objection.

What is the objection to 29?

MR. STUCKY: There is no objection to 29. What it appears to be is a list of witnesses who will testify. It excludes certain witnesses on Mr. McKittrick's supplemental witness list and instead of asking this one and then asking the same thing for us down the road, it would be a lot easier to ask it at one time.

MR. McKITTRICK: Do you have any other witnesses that you have subpoenaed other than these?

MR. BROWN: I think we have forty-four witnesses.

THE COURT: If you are going to require Mr. McKittrick to give a complete list of his witnesses for the purpose of questioning jurors, I am going to require the State to do likewise.

MR. BROWN: We don't have any problem with that.

THE COURT: Do you have any more, Parrish, that you are going to add?

MR. McKITTRICK: Well, if they have forty-nine witnesses, we sure do.

THE COURT: Forty-four. Now, they can submit that one to me. I'll ask the jurors -- I don't have to ask them all forty-four at one time. I can ask them about your witnesses, and then when I get to the State's questions, I'll not ask these over again, I'll ask the State's witnesses.

MR. STUCKY: These are the State's witnesses and the

defense's witnesses.

THE COURT:  How many more do you have to add to this?

MR. STUCKY:  Several.

MR. McKITTRICK:  You know, Judge, as we go through this trial, I want to make it clear right now there may be other witnesses.

THE COURT:  Absolutely; I understand that.

MR. McKITTRICK:  As soon as I find out, I'm going to give them to them.

MR. BROWN:  That is even possible with us.

THE COURT:  That is all you are required to do, either side. I am requiring you now to disclose those witnesses you are aware of now.  I am not restricting you --

MR. McKITTRICK:  In fact, I just supplied some more supplemental witnesses three or four days ago.

MR. STUCKY:  We will have to get those.

THE COURT:  All right, here is what I am going to do.  I am going to pass this one for now.  And after lunch I expect a complete list of witnesses from both sides as now known to be submitted to the Court.

MR. BROWN:  I think that is a fair thing to do, Judge.

THE COURT:  As a matter of fact, let me ask you, since you agreed for me to strike the whole first page down to 26, why don't you just withdraw this and have it retyped, starting with

171

26 through 29?

MR. STUCKY:  It might be easier instead of typing 29 to just

have us give you a Xerox copy of our witness list and a Xerox

copy of his witness list and --

THE COURT:  I don't want a Xerox copy.  The Court wants the

original of your voir dire.

MR. STUCKY:  Right, I understand that.  I am just saying to

attach, to say "the following people" and attach that list.

THE COURT:  All right, just do the best you can.  Now, after

lunch then I want a complete list of witnesses and attach it to

Mr. McKittrick's.

All right, No. 2.  Come on now, "Is it hard for you to get

started in the morning?"  Are you ready to resume your day's

activities without difficulty, is that what you mean, Parrish?

MR. McKITTRICK:  Well, no.

THE COURT:  No?

MR. McKITTRICK:  It says, "I am particularly interested in

the question if you live a long way from the courthouse".  In

other words, if you have kids to get off to school and --

THE COURT:  That's all right, I understand.  There is

nothing wrong with that.  Any objection to paragraph one?

MR. BROWN:  No.

THE COURT:  How about No. 2?

MR. McKITTRICK:  We can strike it.

THE COURT: All right, on motion of the defense, paragraph 2 in voir dire Two -- This record is going to be beautiful -- The whole thing is he has these entitled at the top in caps numbered One, Two, etc. Then we have paragraph numbers below that. So what we are striking is paragraph 2 of Defense Voir Dire Sheet Two, page 3, strike paragraph 2 by agreement of the parties.

How about paragraph 3?

MR. McKITTRICK: Do you have any other objections on Two?

MR. BROWN: No.

MR. STUCKY: I don't think we object to anything else.

THE COURT: All right, fine. Voir Dire No. Three, page 4 for the defense.

MR. STUCKY: They have been asked.

MR. BROWN: I have no problem with 2. However, on No. 3 --

THE COURT: They have been asked, Parrish. "Do you have any pressing personal business --

MR. McKITTRICK: Wait a minute, Judge. I think the whole of No. Three has been asked in substance. We could withdraw Three if you want to.

MR. BROWN: Are you withdrawing that page?

MR. McKITTRICK: Yes.

MR. BROWN: I'll tell you what now, really that No. 1 is not a bad question.

THE COURT: Why don't you submit one. He has withdrawn it.

MR. BROWN:  All right, I think you'll find I did.

MR. McKITTRICK:  I agree with Pete.  Why don't we ask that No. 1, and we'll withdraw 2, 3, 4 and 5.

THE COURT:  You want to ask 1?

MR. McKITTRICK:  Yeah.

MR. BROWN:  My feeling on that, Judge, is you can't ask them that kind of thing too many times.

THE COURT:  You know, if you repeat this stuff over and over and over again, I think then it becomes prejudicial to one side or the other.

MR. BROWN:  On that, I really hate to have somebody say, "Well, you know, I forgot about the problems I have got.  I have hearing problems".

THE COURT:  I thought I asked very clearly out there if there were any illnesses or anything, but I will ask it.  But at the request of the defense, page 4 we will strike paragraphs 2 through 5; and I will ask the question in the first paragraph. Is that agreeable?

MR. McKITTRICK:  Agreeable.

MR. BROWN:  Yes, sir.

THE COURT:  All right, page 5 of the defense's voir dire entitled No. Four.

MR. McKITTRICK:  I think they are just straight forward, Judge.

174

MR. BROWN: On No. 2 that brings up a question in the second sentence starting "Would you be able". A whole bunch of these questions have that sentence with something like, "wasn't subject to cross-examination by John's lawyer."

THE COURT: I am not going to ask it that way. It is going to be either "the accused's lawyer" or "Mr. Moss' lawyer."

MR. BROWN: It might as well say "Johnny baby". But I would also like to add on there that "it wasn't subject to cross-examination by the defendant's lawyer or the State's lawyer."

THE COURT: I think that is proper, Pete.

MR. McKITTRICK: Now, wait a minute. This is something I'm giving. I don't want something like that --

THE COURT: I'm not giving it that "it wasn't subject to cross-examination by John's lawyer". If you want me to amend that to "it wasn't subject to cross-examination by the accused's lawyer" --

MR. McKITTRICK: Why don't you just say "John Moss' lawyer"?

THE COURT: All right, I'll say "John Moss' lawyer".

MR. BROWN: Couldn't we identify him as "the defendant, John Moss' lawyer"?

MR. McKITTRICK: No. His name is John Moss. You don't have to say he is --

THE COURT: Gentlemen, this is going to be a long trial. I think you are starting nitpicking real early. I am amending it

175

to read -- You can submit one on the State's behalf.  I am

amending this one to read that it wasn't given under oath and

that it wasn't subject to cross-examination by John Moss'

lawyer.

MR. McKITTRICK:  Fine.

THE COURT:  They know who he is, Mr. Brown.  They know he is

the accused and the defendant on trial.

MR. BROWN:  I like to remind them.

MR. McKITTRICK:  Do you have any other objections to No.

Four?

MR. BROWN:  No.

MR. McKITTRICK:  Now, Judge, the next one is Twenty-Three.

Change that to Four-A and page 33 will be 5-A and 34 will be

5-B.

THE COURT:  Now, does the State have any objection to

Four-A, which is now numbered page 5-A?

MR. STUCKY:  Yes, sir, we certainly do.

MR. McKITTRICK:  Before we argue this, I think it is

important to hold it in abeyance until you read Chambers.

THE COURT:  Until what?

MR. McKITTRICK:  Until you read Chambers vs. Mississippi.

THE COURT:  All right, I will hold it until I read

Chambers.

MR. STUCKY:  Well, Your Honor --

176

THE COURT: I am going to pass it until I read <u>Chambers</u> <u>vs.</u>

<u>Mississippi</u>, Jimmy; and I understand you have a contra case.

MR. STUCKY: I don't think that has anything to do with the

<u>Chambers</u> case. <u>Chambers</u> is evidence, and this is voir dire.

THE COURT: I am sure that you will give me the courtesy of

letting me make that judgment after I have read it.

MR. STUCKY: I was just getting ready to argue, Judge.

THE COURT: All right. Now, No. Five, page 6.

MR. BROWN: No. 5, "Johnny, Johnny Baby's attorney".

THE COURT: Now, it doesn't say "Johnny Baby's attorney".

Let me correct the record. It says, "John's attorney",

Mr. Brown.

MR. BROWN: Well, I'm not quite that warm to John.

THE COURT: I understand that, and I'm not going to give any

of that first name basis. I will give his full name, but I

don't think it is proper for the Court to refer to him on a

first name basis. We are not on a first name basis. I think it

is proper for the Court to refer to him by his full name, John

Moss.

MR. BROWN: Your Honor, they ought to know the defense

attorney doesn't have an opportunity to cross-examine news

reports.

THE COURT: All right, you give an instruction that the

State doesn't either. I will change that, Parrish, to read

177

"John Moss' attorney".

Do you have any objection to 1 through 8?

MR. STUCKY: No objection. Some of it has been covered in the questionnaires. If Parrish wants to repeat it, it's all right.

THE COURT: All right, how about -- What is your objection, Pete?

MR. BROWN: I still think it ought to say "the defendant, John Moss", because he is identified --

MR. McKITTRICK: He has already ruled that. Do we have to argue that after every question?

MR. BROWN: I asked the Judge; I didn't ask you.

THE COURT: All right, I'll answer you. "John Moss" is sufficient or "John Moss' attorney" rather than "the defendant, John Moss". I believe that this jury realizes that John Moss is the accused in this proceeding.

Now, where is it?

MR. BROWN: No. 5 and No. 9 --

(Whereupon, a discussion was had off the record and then resumed back on the record as follows:)

THE COURT: No. 15 is all right. It just says "John Moss".

MR. McKITTRICK: No. 14 has to be changed --

(Whereupon, a discussion was had off the record and then resumed back on the record as follows:)

178

THE COURT:  Gentlemen, it is ten till twelve.  We are going to break for lunch.  While we are in recess, I want you all to get together and make sure all three copies, including my copy, are synchronized.  I think what I am going to do at 1:30 is send the jury home until Monday.

MR. BROWN:  At least.

(Whereupon, a discussion was had off the record and then resumed back on the record as follows:)

THE COURT:  I am not faulting anyone because obviously there is a great deal of effort that has been put into them.  It is just a secretarial mistake, but it is important that we get it straightened out prior to taking them up for argument.  Now, get them all in snychronization while we are recessed for lunch.  You had better go over the State's while you are at it and make sure there are no problems with the State's.

Now, be back here at 1:30.

- O -

(Whereupon, a recess was had in the proceedings.)

- O -

(After recess.)

AFTERNOON SESSION

Whereupon, the proceedings in the matter of State of West Virginia vs. John Moss, Jr., also known as John Moss, III, CR-82-F-221, were resumed with all parties present as before noted, including the defendant and his counsel.

THE COURT: Show the resumption of these proceedings in State of West Virginia vs. John Moss, Jr., also known as John Moss, III, CR-82-F-221, murder in the first degree, three counts. The defendant is present in person and by Mr. McKittrick, his counsel, the State of West Virginia by her Prosecutor, Mr. Stucky, and her Assistant Prosecutor, Mr. Brown, out of the presence of the jury panel.

Mr. McKittrick, Juror No. 21, Teresa Taylor, the original juror was struck and she took his place, now advises the Court she is a waitress at Shoney's and will not be paid if she is serving on this jury. She advises that it would impose a grave financial hardship upon her to serve on this jury. The first thing I propose to do is to bring the twenty-eight back in, excuse whatever her name is, Mrs. Taylor, and replace her, then voir dire the replacement juror.

Now, I want to advise counsel for the defendant that this may take three weeks or longer to impanel a jury; and several other judges have trials which are beginning next week; and I don't have any intention of tying up this prospective panel for

three or four weeks, which would effectively bring to a

standstill the 13the Judicial Circuit, except for this case.

I have run into this problem before.  I think it was in the

Peggy Miller case.  At that time in checking the statute, it is

my interpretation of the statute that counsel is entitled to all

available jurors.  Now, this Court's interpretation is that if

members of that panel are picked by other courts in this circuit

they are not available.  Therefore, what I propose to do is to

sometime today, after we get this alternate impaneled, to recess

the entire panel until 1:30 Monday -- Correction.  Let me back

up.  I intend to recess the entire panel except the twenty-eight

that we have already pulled.  I will then have them return at

1:30 so that there won't be any problem with one of the other

judges drawing one of the twenty-eight that we have already

pulled.

As we proceed with individual voir dire, if it becomes

necessary to strike a juror, I will advise that juror right then

and there, and that juror can return to the jury pool to be

possibly drawn for another judge.

After we have completed the voir dire of all twenty-eight,

if it is necessary to replace any, I shall instruct any that

have been serving upon perhaps a one or two day trial, upon

completion of those proceedings they can be put back in the

pool.  However, any of those who may have missed the original

181

orientation will not be put back into the main panel.

Notwithstanding any objections you may want to make in a minute, Mr. McKittrick, is that phase of it understood?

MR. McKITTRICK: I understood what the Court said.

MR. STUCKY: Yes, sir.

MR. McKITTRICK: The defendant, John Moss, objects to that procedure, believing that available under the statute is determined at the time the pool was called, the inception, at that time the pool was called, and that John Moss should have access to all the jurors that were called, which I believe was 120 or 125, as a result of not only the admonitions given by the Court, but also the jurors will have an opportunity to go their own way in other proceedings.

We object on that basis.

THE COURT: So that the record is clear, when this pool was called -- Backing up if I may -- the original pool I felt was not sufficient in number for this proceeding so I ordered the clerk to enlarge it and call an additional 300 jurors. Out of that 300 called, we have have a panel of approximately 123.

When they were called, they were not called for the express purpose of sitting in on the Moss proceeding. They were called generally as jurors of this circuit, the 13th Judicial Circuit, which is composed of seven judges, not just one judge. I am one of seven.

182

When this pool was called for jury duty, this Court's definition is they were called for use by any of the seven judges sitting. I hope I am clear on the record on that.

So that it is clear, the twenty-eight that have already been called in this proceeding, the Moss proceeding, they will not be excused to serve on any other proceeding while we are conducting the individual voir dire. However, those who have not yet been summoned for this proceeding, I am making them available to any other of the other six judges in the next several weeks. It would be unconscionable it seems to me, and I think my position is well founded in the law, it would be unconscionable to tie up an entire panel of jurors when the said panel was called to serve the entire Thirteenth Judicial Circuit.

For that reason I am going to permit the other six judges of this circuit to use those jurors in the pool, exclusive of the twenty-eight members we have already picked for this proceeding.

MR. McKITTRICK: The defendant would ask the Court to instruct the clerk to place in the record those jurors that did not show up on the day they were called.

THE COURT: Yes, on Tuesday. Any jurors not here for orientation on Tuesday, they will not be put back in this pool for this trial.

All right, the clerk having been so instructed, is there anything further?

MR. BROWN:  Yes, Your Honor.  There were some people who were released by both sides, Your Honor, from serving.  Mrs. Sergi, for example, was one.  Her name just sticks in my mind.

THE COURT:  She was permanently excused as I recall.

MR. BROWN:  I think there were some that weren't excused from full jury duty, just this trial.  And everybody will be admonished, I hope, to still not talk about it because they could be under the impression since they are not in this case they can talk about it.  Would you do that so we don't get anybody saying they thought it was all right.  I would hate to get about halfway through this thing and have something happen.

THE COURT:  Yes, sir.  I think we all would hate for that to happen.  I intend to admonish the entire jury panel that they are not to discuss the case among themselves nor permit others to discuss it with them or in their presence.  And also that they are not to read anything in the papers, watch anything on television or listen to anything on the radio about this trial or any of the personalities connected herewith.  If that is a motion, I'll grant it.  I don't think Mr. McKittrick has a problem with that, do you?

MR. McKITTRICK:  No, sir, I don't have any problem.

THE COURT:  All right, I now propose to bring the entire jury panel out and excuse Mrs. Taylor.

(Whereupon, the prospective jury panel entered

184

the courtroom.)

THE COURT: Show the presence of the jury panel.

Mrs. Taylor, I am going to excuse you from this proceeding. You won't have to report back. I'll just excuse you generally for the reasons that have been made aware to the Court.

JUROR TAYLOR: I'm sorry I didn't say anything earlier, but I just found out today.

THE COURT: Okay. The clerk will put another juror in the box. This will be alternate No. 1.

(Whereupon, Homer Robinson was called and sworn to truly answer all questions asked of him.)

THE COURT: Mr. Robinson, let me address myself to you only and ask you a few questions.

Are you related, are you kin, either by blood or marriage, to any police officer, city, county, state, FBI, Department of Justice or to any member of any prosecuting attorney's office, prosecutor, assistant prosecutor, United States attorney, assistant United States attorney, anyone in that field?

JUROR ROBINSON: I had a cousin that was a sergeant on the city police, but he has been retired for several years.

THE COURT: Are you close to him socially?

JUROR ROBINSON: No, sir. I see him once every five or ten years. They are cousins.

THE COURT: You don't have any long drawn out discussions --

185

JUROR ROBINSON:  No, no.

THE COURT:  Would the fact that your cousin was a police officer in any way affect your ability to sit impartially as a juror on this case?

JUROR ROBINSON:  I don't think so, no, sir.

THE COURT:  Would you tend to give the testimony of police officers any greater or less weight than that of any other witness?

JUROR ROBINSON:  No, sir.

THE COURT:  I may not have asked the entire panel that.  If I didn't, I want to now.  Is there anyone on this jury panel who would tend to give any greater or less weight to the testimony of a law enforcement officer than to any other witness?  Could you all then give their testimony that degree of weight you as jurors deem it worthy?

JUROR NO. 1:  Did you ask us a question maybe in the questionnaire or here about having relations or any of your people having relations pertaining to the lawyers listed?  Was that question asked?

THE COURT:  I'm not quite sure I understand.

JUROR NO. 1:  Well, let me get at it.  I didn't know whether I was kin to this person or not.  I guess I'm not, but my son is.

THE COURT:  Who is your son kin to?

186

JUROR NO. 1: The assistant prosecutor.

THE COURT: Which one?

JUROR NO. 1: Name them. I don't know.

THE COURT: Well, there is Pete Brown and Charlie King and --

JUROR NO. 1: Charlie King.

THE COURT: What is the relationship?

JUROR NO. 1: My son married his cousin. He is no relation to me. I wouldn't know the fellow if I saw him.

THE COURT: Would that cause you any problem --

JUROR NO. 1: I just asked the question. I don't want you to get me for perjury or something.

THE COURT: Would that cause you any problems?

JUROR NO. 1: It won't cause me any problems. It might cause somebody some problems.

THE COURT: Well, I can assure you you would know Mr. King if you ever saw him.

MR. BROWN: I want him to know, Judge, I'm not Charlie King.

THE COURT: No. That is Peter C. Brown.

JUROR NO. 1: Let me know when he comes in.

THE COURT: All right.

Now, Mr. Robinson, we are about to impanel a jury for the purpose of trying the case of the State of West Virginia against one John Moss, Jr., also known as John Moss, III.

187

Mr. Moss is charged in a three count indictment with three counts of murder in the first degree. In Count I he is charged with murder in the first degree upon one Paul Eric Reggettz. In Count II he is charged with murder in the first degree upon one Bernadette Reggettz. And in Count III he is charged with murder in the first degree upon one Vanessa Dale Reggettz. These incidents were alleged to have occurred during the month of December, 1979.

Are you kin, either by blood or marriage, to the defendant, John Moss?

JUROR ROBINSON:  No, sir.

THE COURT:  Are you kin, either by blood or marriage, or were you kin during their lifetimes to the three Reggettz I have just mentioned?

JUROR ROBINSON:  No, sir, I don't know them.

THE COURT:  Are you kin, either by blood or marriage, or do you know one Paul Reggettz?

JUROR ROBINSON:  No, sir.

THE COURT:  Are you kin, either by blood or marriage, or do you know one Terry Williams, a member of the West Virginia State Police?

JUROR ROBINSON:  No, sir.

THE COURT:  Do you know anything about the facts of this case, or have you heard it discussed by witnesses or others?

188

JUROR ROBINSON: No, sir.

THE COURT: Have you made up your mind or expressed any opinion concerning the guilt or innocence of the accused?

JUROR ROBINSON: No, sir.

THE COURT: Are you sensible of any bias or prejudice that would prevent you from receiving both the evidence of the State of West Virginia on the one hand and the evidence of the accused on the other and from returning a true and impartial verdict therefrom?

JUROR ROBINSON: No, sir.

THE COURT: Do you feel you could stand freely and impartially between the State of West Virginia on the one hand and the accused on the other, and that you could return a verdict based solely on the evidence, the arguments of counsel and the instructions of the Court?

JUROR ROBINSON: Yes, sir.

THE COURT: Mr. Robinson, this indictment was returned by the September, 1982 Grand Jury of the Circuit Court of Kanawha County of which Mr. Paul Emory was foreman. Were you a member of the Grand Jury that returned that indictment?

JUROR ROBINSON: No, sir.

THE COURT: Exclusive of this term of court, have you sat on a petit jury, served on a petit jury, within the past two years?

JUROR ROBINSON: No, sir.

189

THE COURT:  Are you now, or have you ever been, a client of the Prosecuting Attorney, Mr. James C. Stucky?

JUROR ROBINSON:  No, sir.

THE COURT:  Or of Mr. Peter C. Brown, Deputy Prosecuting Attorney?

JUROR ROBINSON:  No, sir.

THE COURT:  Or of Mr. Parrish McKittrick, counsel for the accused?

JUROR ROBINSON:  No, sir.

THE COURT:  I want you to understand, Mr. Robinson, if you are selected, you will be selected as an alternate.   That means you will be required to sit here for all of the testimony.   It may last for six weeks.  We have no way of knowing.  But at the conclusion of the testimony, if there has been no need to replace someone on the main panel, you will not get to participate in the deliberations.  Do you understand that?

JUROR ROBINSON:  I understand that.

THE COURT:  This trial may last for six weeks.  Do you know of any appointments or anything you have coming up that would prevent you from serving on this jury?

JUROR ROBINSON:  Not unless I run out of money and can't get here.  I'm not working.

THE COURT:  Where do you live?

JUROR ROBINSON:  I live up Woodland Drive three miles out of

190

the city limits.

THE COURT:  Other than that, do you know of any reason?

JUROR ROBINSON:  No, sir.

THE COURT:  Do you have any health problems?

JUROR ROBINSON:  No, sir.

THE COURT:  I want you to understand your role would be as the trier of the facts.  You listen to the evidence, give it whatever weight you deem it worthy of.  My function is as the trier of the law.  I rule on what evidence you will be able to hear.  There will be times when the lawyers and I will come over here to the side bar.  We are not trying to hide anything from you, but it is not part of your duties as a trier of the facts.

You are not to concern yourself with the number of objections or the lack of objections made by either side.  You are not to concern yourself with how I rule on those objections, whether I rule in favor of those objections or whether I rule against them.  That is not your concern.

You are not to read anything into the inflection of my voice.  I couldn't care less how this thing comes out.  That is not my job.  I am the trier of the law.  You are the triers of the facts.

At the conclusion of the evidence I shall read to you the instructions of the law and advise you that you must apply the law as I have given it to you in your deliberations.  If I state

to you, "This is the law", even though you personally disagree,
you don't like it, but if I tell you that this is the law, even
though you personally don't like the law, will you follow my
instructions and apply it in your deliberations?

JUROR ROBINSON: Yes, sir.

THE COURT: All right, now, we are going to go back into the
main jury lounge in just a moment. And I want you to listen to
me very, very carefully because there will be instructions for
you all. They will be different from the rest of the panel who
have not been called in the original twenty-eight. So listen
very, very carefully to my instructions when we go into the jury
room. So with that, ladies and gentlemen, if you would please
retire to the jury lounge.

(Whereupon, the jury exited the courtroom and a discussion
was had off the record and then resumed back on the record as
follows:)

THE COURT: All right, bring the jury back in.

(Whereupon, the jury re-entered the courtroom.)

THE COURT: Show the presence of the jury panel. I realize
that it is very difficult for you all as lay people to
understand these proceedings. I want to assure you that
everything that is done is done for a purpose. And don't think it
irritates me or the lawyers if we have to come back in here. I
appreciate your being candid and forthright. If you don't

understand something, raise your hand and let me know. What we are doing is trying to abide by the law as I as a judge understand it and these lawyers understand it. Please be sure everything we do is for a purpose.

Mr. Milam, I believe you had a question or you didn't understand something?

JUROR MILAM: You asked a question about the lawyers --

THE COURT: I asked if you were a client of or do you know any of the lawyers.

JUROR MILAM: Parrish McKittrick.

THE COURT: How do you know Mr. McKittrick?

JUROR MILAM: I saw him one day when I signed a lease to rent an apartment he owns.

THE COURT: You rent from him?

JUROR MILAM: I used to.

THE COURT: I think you indicated also although you weren't kin to him that you knew Terry Williams, a member of the West Virginia Department of Public Safety, State Police?

JUROR MILAM: I went to high school with him.

MR. McKITTRICK: May we approach the bench?

(Whereupon, counsel and the defendant approached the bench where the following proceedings were had out of the hearing of the prospective jury panel:)

THE COURT: Show the presence of the defendant at all times

193

at these bench conferences.

MR. McKITTRICK: Your Honor, since Terry Williams was one of the investigating officers in this case, I would ask that we voir dire this juror individually out of the presence of the jury, because he might make some statement about Terry Williams, and I don't want the other jurors to hear it.

MR. BROWN: I don't have any problem with that if he would like it done individually.

THE COURT: Okay, we will do it.

MR. STUCKY: If he is not going to strike him for cause, why do it right now? Wait and do it in an orderly manner.

MR. BROWN: Wait until this guy comes up.

MR. McKITTRICK: In other words, when we do the individual voir dire back there?

MR. BROWN: Yeah.

MR. McKITTRICK: That's fine.

(Whereupon, counsel and the defendant resumed their seats at counsel table where the following proceedings were had in open court and in the hearing of the prospective jury panel:)

THE COURT: Now, is there anyone else who thinks perhaps they may have a problem?

JUROR CLYDE MILLER: This might be far out. My daughter does court reporting work. She knows the defense lawyer. She took a deposition for him.

194

THE COURT: What is your daughter's name?

JUROR CLYDE MILLER: Donna Miller.

THE COURT: It wasn't in this case?

JUROR CLYDE MILLER: No, it wasn't. It was something else.

THE COURT: She is a court reporter?

JUROR CLYDE MILLER: Yes, sir.

THE COURT: Would that in any way have any bearing on your ability to sit as a fair and impartial juror in this case?

JUROR CLYDE MILLER: No, sir.

JUROR JAMES MILLER: Whenever you asked if we were kin to any law enforcement officials, last night I got my notice I am on a list of prospective officers for the City of Nitro.

THE COURT: In other words you applied to be a policeman for the City of Nitro?

JUROR JAMES MILLER: Yes, sir.

THE COURT: But you haven't been employed with them, have you?

JUROR JAMES MILLER: No, not as of yet. I have taken the required test, and they have told me I am eligible.

THE COURT: But they haven't hired you?

JUROR JAMES MILLER: No.

THE COURT: Would you give a law enforcement officer's testimony any greater or less weight than you would that of any other witness?

JUROR JAMES MILLER: No, sir.

THE COURT: Would you attempt to reach a fair and impartial verdict based solely on the evidence, the arguments of counsel and the instructions of the Court and be fair to both sides?

JUROR JAMES MILLER: Yes, sir.

THE COURT: Anybody else?

Okay, let's try again. If you will, go back to the jury lounge.

(Whereupon, the jury exited the courtroom.)

THE COURT: Let's go to the jury lounge.)

(Whereupon, the Court, counsel for the State, counsel for the defendant, the defendant in person, and the court reporter entered the main jury lounge where the following proceedings were had:)

THE COURT: I want you all to know if i seem a little punchy, my day started at 6:00 a.m. when I had to take my wife to the hospital. We thought she had sprained her ankle, but she has developed tendonitis from standing in high heels for five hours last week at a reception held for me. And at 9:00 I had to be in the dentist's chair, so it has been a great day.

Ladies and gentlemen, please listen very carefully to me.

Those of you who were not here Tuesday when the orientation was given will not be selected for this proceeding, but you are to report as directed for possible use in other courts.

196

The twenty-eight ladies and gentlemen who have been thus far selected, just the twenty-eight, I want you in this room at 1:30 p.m., just the twenty-eight. The rest of you ladies and gentlemen, I want you in this room at 9:15 Monday. There are at least two other judges ready to start trials on Monday, so some of you will be selected for those other judges who are starting a trial.

Those of you who are not selected by any other judge are to report here every morning at 9:15, unless directed otherwise, because you still may be selected for the proceeding I am trying.

The next statement pertains to each and every one of you, whether you have been selected for this proceeding yet or not, and whether or not you were here for orientation, so, therefore, this admonition applies to all of you.

None of you are to discuss this proceeding that I am presiding over. You are not to discuss it among yourselves or with others. You are not to discuss it with your families or anyone. Neither are you to read any newspaper accounts, listen to any radio accounts or watch any television accounts of the trial of the State of West Virginia vs. John Moss, Jr. until it has been concluded, whether you are selected for the trial or not. You are not to discuss it; you are not to read about it in the newspapers; you are not to watch anything about it on

197

television.  If anyone tries to discuss it with you, tell them

you are not to discuss it and go away, and that includes your

families at home.

So, those of you who have not yet been selected for this

proceeding will be here at 9:15 Monday.  The other twenty-eight

ladies and gentlemen I want here at 1:15, or rather 1:30 Monday

afternoon.

Did I touch all bases?

MR. McKITTRICK:  As far as we are concerned.

JUROR:  What about tomorrow?

THE COURT:  I don't hold trials on Friday.  Just so you

don't think I am wasting the taxpayers' money, Friday is the day

I set aside for such things as divorces, child custody,

contempts, things of that nature.

So with that, ladies and gentlemen, I hope you all have a

nice weekend.

(Whereupon, the jury exited the jury lounge.)

THE COURT:  Now, show the resumption of these proceedings in

chambers, the defendant being present in person and by his

counsel, Mr. McKittrick, the State of West Virginia by her

Prosecuting Attorney, Mr. Stucky, and Assistant Prosecuting

Attorney, Mr. Brown.

Are these in order now?

MR. McKITTRICK:  Yes, I think so, Judge.

198

THE COURT:  All right, let's start from the beginning.

No. One, page 1, I am giving paragraph 1, and I am not

giving the remaining paragraphs 2, 3 and 4.  I have noted the

objection of defense counsel.

On One-A I am not giving 1 through 25.  I am giving 26

through 29, and did you add those names that you were going to

add as an appendix to this?

MR. McKITTRICK:  Do you have the list?

MR. BROWN:  Yes, sir, I do have.  I brought the original.  I

haven't got it Xeroxed.  I'll take care of that, Your Honor.

All right, I am going to attach it to this, without objection by

either side, in the manner just described.

(Whereupon, a discussion was had off the record and then

resumed back on the record as follows:)

THE COURT:  Just get me a list, a complete witness list that

can be appended to this tomorrow, or Monday.

Now, page 3, paragraph 2 was struck without objection, and

I'm giving the rest of it.

Page 4, No. Three, the defense counsel moves to strike

paragraphs 2, 3, 4 and 5.  I'm going to give paragraph 1 as

requested by defense counsel, and there is no objection to that.

Four, the only change in that, I changed paragraph 2 from

"subject to cross-examination by John's lawyer" to "subject to

cross-examination by John Moss' lawyer".

199

Now, we passed Four-A, and that's page 5-A, and that's where we are now.

MR. BROWN: Five-A?

THE COURT: Four-A. It is on page 5-A.

MR. BROWN: All right. I think you ought to put that one aside, Judge, until a later time.

THE COURT: All right.

Page 6, No. Five, paragraph 5 I have struck the word "John's" and inserted in lieu thereof "John Moss'"

Paragraph 11, the previous paragraph 11 -- these were all misnumbered -- Paragraph 11 was struck. Paragraphs 12, 13, 14 and 15 were re-numbered 11, 12, 13 and 14. Now, in paragraph 13 the word "John's".

MR. McKITTRICK: Judge, I know this is going to upset the Court, but since we have amended this, I would like to go back to paragraph 7. I would like to include it in No. 11 and renumber them the way we had them before?

THE COURT: What? I don't understand.

MR. McKITTRICK: Judge, before I struck out 11 on page 7. I want to leave that in now. And I want the original numbers to be reflected on that page the way they were.

THE COURT: I have already marked up this copy. Do you have any objection? You don't even have a copy of No. 11.

MR. BROWN: Now hold on a minute. We do have a copy now.

200

THE COURT: Do you have an objection?

MR. BROWN: Yes, Your Honor. You have an objection to that. You refused to give that, and we didn't even comment on it.

MR. McKITTRICK: You said you were going to put "material" in there.

THE COURT: Yes, I did. On line 3 of paragraph 11 I am going to insert, between the words "every" and "element", I am going to insert the word "material".

MR. STUCKY: We object to it because it is getting into the argument of instructions, and you have already told them to follow the law; and you are not going to get into individual instructions, and all that is is an instruction of the law.

MR. McKITTRICK: That isn't an instruction of the law. If we don't have the right to talk to the jury about the burden of proof in this case we don't have the right to talk to them about anything.

THE COURT: Oh, I think you have every right to talk to them about burden of proof. I think you have a right in your opening statement, you have the right in closing argument and you have the right in instructions. I am going to refuse No. 11. I think it is a paraphrase on instructions. It has nothing to do with voir dire. I will note your objection.

Now, in paragraph 13 the word "John's" has been struck and insert in lieu thereof the words "John Moss'".

MR. BROWN:  In the heavy No. 11, or the original No. 11, you
just refused that.

THE COURT:  I am refusing it.

MR. BROWN:  Under the heavy No. 12, the written in No. 11,
the next instruction, "Would you render a verdict in this case
according to the law and the evidence", did the Court make a
ruling on that?

THE COURT:  I didn't hear any objection to it.

MR. STUCKY:  We haven't got that far.

THE COURT:  Yes, we have got that far.  I didn't hear any
objection.  I struck the original 11.  I have struck his
original No. 11.  Therefore, there is no need in re-numbering,
there is no need for not leaving the rest of them as they are,
that is, the original 12 is now 11 through 15.  I am refusing to
give 11 as offered, and I will note your objection.

MR. McKITTRICK:  Well, of course, that is not clear on the
record.  It adds confusion because you talked about -- I think
you ought to make it clear what you are refusing.

THE COURT:  I think the whole record is confused already
with all these changes back and forth.  Let me try to straighten
it out.

Page 6 of your proposed voir dire entitled Five, paragraphs
1 through 8 are being given, the only change being in No. 5 the
word "John's", that is J-o-h-n-'s has been struck and inserted

202

in lieu thereof the words "John Moss'"

No. 11 has been struck.  I'm not giving it.  What was
numbered 12 is now numbered 11.  What was numbered 13 is now
numbered 12.  What was numbered 14 is now numbered 13.  What
was numbered 15 is now numbered 14.  And what was numbered 16 is
now numbered 15.

MR. McKITTRICK:  Judge, I don't think that clears up the
record, but you are the judge.  When you strike something, you
don't refuse something and strike it.  It stays in the record.

THE COURT:  You withdrew it, and now you want to reinsert
it.  I am going to deny you the right to reinsert it.  So we are
right back where we were this morning.

MR. McKITTRICK:  As I understand, as a result of this
morning the Prosecutors not having No. 11 on their voir dire as
a result of one of my secretaries messing up and the Prosecutors
not having No. 11, I withdrew it as a matter of convenience,
with the intention of putting in another voir dire question; and
now the Court --

THE COURT:  That's not what you said on the record this
morning.  You just said, "Okay, I'll withdraw it."

MR. McKITTRICK:  As I understand it then, the Court is not
allowing me to reinstitute No. 11 in these voir dire questions?

MR. STUCKY:  Your Honor, not to let Mr. McKittrick play
games with the record, that is not what the Court said.  The

203

Court looked at No. 11 as offered and said, "It is improper

because it is an instruction", and you ruled that. And now he

wants to say you didn't do that. You just did it five minutes

ago.

MR. McKITTRICK: That's exactly what I want him to say. I

want to keep the record straight. If you want to refuse it,

let's make it refused and not stricken. You can't do both.

THE COURT: I am striking it as I struck it this morning.

You wanted it struck this morning on your own motion. You

didn't give any lengthy explanation as to why. You just said,

"I'll withdraw that" or "strike it", whatever the record

reflects. You are playing semantics. You can call it refused.

You can call it stricken, whatever. I'm not giving it. I'll

note your objection.

Now, does the State have any objection to anything else on

this one?

MR. STUCKY: No, sir.

THE COURT: All right, page 9, defendant's proposed voir dire

entitled No. Six.

MR. STUCKY: Your Honor, again No. 1 is getting into

instructions, specific instructions of the law. You have asked

generally will they follow the instructions of the law. Those

will be taken up at the proper time. I don't think they are

necessary since they have all answered in the affirmative that

they will follow the law, whatever it was, whether they agreed

with it or disagreed with it.

THE COURT: I don't think Six is voir dire at all. I think

it is an instruction of the law, a paraphrase thereof. I am

going to refuse Six in its entirety.

MR. McKITTRICK: Show my exception to the Court's ruling.

You are refusing No. 1?

THE COURT: I am refusing all of Six.

MR. McKITTRICK: What are you refusing all of Six for?

THE COURT: Because they are nothing but paraphrasing of

instructions, every one of them.

MR. McKITTRICK: What does No. 2 have to do with an

instruction?

THE COURT: What do you mean, "What do you think that means

as far as proof that he is guilty or not guilty"?

MR. McKITTRICK: That has nothing to do with an instruction.

I am asking the jury on voir dire, which I have used in every

criminal case I have ever defended.

THE COURT: That's great for the record, Mr. McKittrick, but

I --

MR. McKITTRICK: But, Judge, this don't have anything to do

with an instruction. I'm asking a juror what he believes an

arrest or a charge means to him. Now, if that juror responded

and said something to the effect, "Well, I think when a person

205

is arrested the presumption is there has got to be something there or they wouldn't arrest him", I can take that into consideration in making a peremptory challenge.

THE COURT:  All right, I will note your objection to my refusing the entire page 9.  With that objection notwithstanding, if you want me to give 2, I'll give 2.  But I'm not giving 1, 3, 4, 5 and 6.  Do you want me to give 2?

MR. McKITTRICK:  Yes, I do.  But you are refusing the remainder?

THE COURT:  Yes, sir.

MR. McKITTRICK:  Over my objections?

THE COURT:  Yes, sir.

MR. McKITTRICK:  As I understand the grounds, they are related to instructions?

THE COURT:  With regard to 1, 3, 4, 5 and 6, I think they are all paraphrasing of instructions which will be given at the proper time, but not on voir dire.

Page 10, No. Seven.

MR. STUCKY:  We don't have any objection to Seven.

THE COURT:  That is a correct one.  There is nothing wrong with that.

Any objection to No. Eight?

MR. BROWN:  On No. Eight, page 11, Nos. 4, 5, 6, 7 and 8 and 8(a), I don't think those are proper voir dire questions.

THE COURT:  I don't see anything wrong with them.  I know why he is asking them and so do you.  I don't see anything wrong with them.  I am going to give them.

All right, Nine, page 12.  I don't mean to rush you, but we have got a long ways to go.

MR. BROWN:  We are on page 12, No. Nine?

THE COURT:  Yes, sir.  You are going to get an affirmative answer on No. 1, Parrish, from that juror we talked about the other day, that I told you about.  Any objection?

MR. BROWN:  No.

THE COURT:  All right, page 13, No. Ten at the top of the page.

MR. STUCKY:  I object, Your Honor, to No. 1, of course.  No. 2 is the same, and No. 3 --

THE COURT:  I am going to refuse it, Parrish.  It is nothing but paraphrasing instructions.

MR. STUCKY:  And also No. 4.  They are all instructions.

THE COURT:  I will note your objection.

All right, No. Eleven on page 14.

MR. BROWN:  I object to the whole thing.

THE COURT:  I'm not going to give this.  This is nothing more but again prarphrasing instructions, in addition to which, if the confession of Moss is introduced, for example, you are entitled to an instruction about duress, and that is what

this is.

MR. McKITTRICK:  Show my objection.  Judge, I think I have

an absolute right to ask Eleven.  That is my whole case.  I

think I have a right to ask it.

THE COURT:  Mr. McKittrick, they are paraphrasing of

instructions.  They are not part of voir dire.  If I am wrong,

the Supreme Court, if it ever reaches there, can reverse me.

You can get that in in your opening statement, your closing

argument after all the evidence is in, but not in voir dire.

MR. BROWN:  Your Honor, on No. Twelve, page 16, the third

sentence, "John Moss".  It says, "John", Your Honor.

THE COURT:  What line?  Oh, here it is.  I am going to add

the word "Moss".  And look at paragraph 2, first line.

MR. STUCKY:  Before we get to all those details, this again

is pure instruction language.  In fact, the question is at the

bottom, "Could you follow that law and not hold it against John

if he did not testify?"

THE COURT:  That's an instruction, no question about it.

And so is No. 2.

MR. STUCKY:  No. 3 uses the language, "I will instruct you

that . . ."

THE COURT:  I will probably give these if they are offered

by the defense as instructions.  I am not going to permit them

in voir dire.  I don't think they are proper, as I have told you

208

before, to be placed in voir dire.  I am going to refuse pages

16 and 17, numbered defense voir dire Twelve.  Note the

objection of counsel.

MR. BROWN:  No objection to Thirteen, page 18, to 1 or 2.

THE COURT:  Okay, given.

MR. STUCKY:  On No. Fourteen, Your Honor, No. 1 is an

instruction; No. 2 is an instruction; No. 3 is an -- Again you

are getting into the law.

THE COURT:  I think he is right.  I don't think this is the

proper one, but if you want to have one typed up, I will give

this, "Do you understand that the law presumes this defendant to

be innocent throughout these proceedings until all the evidence

is in?"  I gave one similar to this in the Miller case.  "Right

now, right now, this instant, do you believe him to be

innocent?"

MR. McKITTRICK:  Isn't that what 3 and 4 say?

MR. STUCKY:  That doesn't say that.  It says, "You know John

is presumed to be innocent as he sits right here today", like

the Judge is saying that.

THE COURT:  If I give 1, it says, "Of course, you know a

person is presumed to be innocent unless he is proven guilty

beyond a reasonable doubt."  There is no problem with that.

MR. McKITTRICK:  Judge, I have used these voir dire --

Judge, I'm not trying to condemn the Court in any respect, but I

have gone over presumption of innocence and burden of proof in

every criminal case I have ever defended on voir dire.

    MR. BROWN:  Your Honor, they have agreed to follow the

Court's instructions.  Sooner or later they are going to get

those --

    MR. STUCKY:  They have agreed to that already.

    MR. McKITTRICK:  Let me ask you this, Judge:  Would you give

me leave to find the law to show you -- To me these were so

obvious that I didn't even bring the law with me.

    THE COURT:  Well, they are not obvious to me, Mr.

McKittrick.

    MR. McKITTRICK:  This 14 merely asks questions, and I think

that is the law of the land in a criminal case, and it is not

instruction by the Court.  It is attendant to a fair trial for a

defendant.

    MR. BROWN:  Your Honor, I think the questions, for instance,

dealing with whether or not a man is a police officer, those are

voir dire questions.  You are not going to hear anything from

the Court about that in instructions.

    THE COURT:  Wait a minute.  All right, in paragraph 12 he

has "John" again, and it should be "John Moss".  Paragraph 3 the

word "Moss" should be inserted after the word "John", and again

paragraph 6 the word "Moss", and paragraph 7.

    MR. BROWN:  Your Honor, paragraph 7, in addition to the

obvious on Fourteen that these are instructions of the Court,

and of course, as I understand it, the Court has given Mr.

McKittrick leeway to come back --

    THE COURT: Let me do my thing first.

    MR. BROWN: All right.

    THE COURT: Paragraph 10, the word "Moss" should be added

after the word "John", and paragraph 11, line 2.

    MR. BROWN: The last line in 11.

    THE COURT: Okay.

    MR. BROWN: The second one in 12.

    THE COURT: Okay, go ahead, Pete.

    MR. BROWN: In addition to that, in No. 7, if the Court

would look at that, "Do you understand that whatever explanation

he offers must be accepted", that is not true, Your Honor. Even

as an instruction that is not true.

    THE COURT: No. I am going to have to agree with Pete.

Now, you were talking earlier about all the criminal cases you

have tried and your voir dire on presumption of innocence --

    MR. McKITTRICK: And burden of proof.

    THE COURT: And the burden of proof. And I think No.

Fourteen that you have proposed containing some twelve

paragraphs covers anything you could possibly ask on presumption

of innocence and burden of proof, except paragraph 7, that they

must accept any explanation offered by him, unless the State

Case 2:09-cv-01406  Document 35-5  Filed 05/10/11  Page 87 of 104 PageID #: 5190

proves beyond a reasonable doubt that the explanation is not true. I'm not going to give that. You may offer an instruction at the appropriate time which I may or may not give, covering that ground, just so the record is clear. But I am going to give this one, which has presumption of innocence and burden of proof. I'm going to give it, but I am not going to permit you to have these same questions propounded several times with a variance of words. This is not the instruction stage of the trial. I am not going to give paragraph 7. I don't think it is correct. I will note your objection. I will, however, give your proposed voir dire paragraphs 1 through 12, exclusive of paragraph 7; and that should take care of any doubt that you have regarding your right to explain burden of proof and presumption of innocence. I think this incorporates that quite nicely.

    MR. BROWN: Your Honor, on that same one, No. 8 on page 20, I object to that very strongly.

    MR. McKITTRICK: I will withdraw that.

    THE COURT: Oh, no, I'm not giving that one. I missed that. I'm not giving that. That is withdrawn.

    Okay, I will give then pages 19 and 20 of defendant's proposed voir dire Fourteen. I am going to give 1 through 12, exclusive of 7 and 8, and note the defendant's objection to my refusing to give No. 7, and the defense has withdrawn No. 8.

(COPY)                211

MR. BROWN:  Your Honor, No. 4 under Fourteen, are you going to ask them that question, "How would you vote", on page 19?

THE COURT:  Wait a minute, No. 4?

MR. BROWN:  Under Fourteen, No. 4, on page 19.

THE COURT:  "If you were to vote right now before any evidence is presented . . ."

MR. McKITTRICK:  That is the same as the last one.

THE COURT:  I gave that once similar.  The words are not exactly the same, Pete.  I gave a similar one to this in the Miller case.  In other words, if they believed in the presumption of innocence, they would have to vote innocent at this point.

MR. McKITTRICK:  That shows that they understand it.

THE COURT:  I am going to give that.  I think he is entitled to that.  If they sit there and tell me straight to my face they believe in the presumption of innocence, and then I ask them, "How would you vote", and they said, "Well, I might have to vote guilty", you know they haven't understood the presumption of innocence.  I think he is entitled to that.

All right, No. Fifteen.

MR. STUCKY:  Your Honor, I think paragraph 5 not only is an instruction but is repetitious of the same thoughts and the same information obtained through 1 and 2 and probably 3 and 4 are much better voir dire questions than even 1 and 2; but 1, 2, 3

213

and 4 certainly cover the area without giving these people

instructions and telling them those things that are incorporated

in No. 5.

THE COURT: I'm going to give it. I gave it with different

language in the Miller case, very similar to these, just

different wording; but I gave this in the Miller case.

MR. McKITTRICK:  This came out of the Miller case.

THE COURT: It is not word for word.

MR. McKITTRICK:  Word for word.

THE COURT: Show it to me. You show me in the Miller case

where it says, "Unless the State has proven John guilty beyond

all reasonable doubt", since her name was Peggy. Secondly, it

is not "beyond all reasonable doubt"; it is "beyond a reasonable

doubt".

MR. BROWN:  And thirdly, Stucky and I are prosecuting this

case.  It is not the same prosecutors.

THE COURT: Now, does his name appear anywhere in here, just

"John"?

MR. BROWN:  Yes.

THE COURT: Okay, I've got that one.

MR. BROWN:  We have no objection to Sixteen on page 23.

MR. STUCKY:  Except to add "Moss".

THE COURT: All right.

MR. BROWN:  No objection to Seventeen.

214

THE COURT: All right. Now, No. Eighteen, "John" again in paragraph 2. And again in the same paragraph, last line.

MR. BROWN: No objection to the rest of that.

THE COURT: All right, No. Nineteen, page 26.

MR. BROWN: We object to all of it. It is already covered, and it is instruction.

THE COURT: I am not going to give this.

MR. BROWN: He has the burden of proof in there a hundred times, which he has already covered a hundred times earlier.

THE COURT: I think you are entitled for me to ask them if they understand the difference in the rules requiring in a civil case that they need only find by a preponderance of the evidence, whereas in a criminal case they must find beyond a reasonable doubt, and use the old gizmo like this (indicating) with the arms out. I think you are entitled to one of those; and if you want to draft one of those along those lines, I will certainly give that.

MR. STUCKY: There is one of those in here somewhere.

MR. McKITTRICK: Do you object to 1 and 2 there?

MR. BROWN: On Nineteen, Your Honor? On No. 19, pages 26, 27 and 28, I object to page 26, page 27 and page 28, and the contents thereof, all under the heading of Nineteen.

THE COURT: Here it is under paragraph 3, Parrish.

MR. McKITTRICK: Why don't we amend paragraph 3 to say,

215

"While in a civil case proof must be by a preponderance of the evidence" after "reasonable doubt"?  And "in a criminal case the prosecutor must prove" --

THE COURT:  "By a much greater proof".

MR. McKITTRICK:  "By a much greater proof than in a civil case.  That is, in a criminal case the burden is proof beyond a reasonable doubt."

THE COURT:  Well, there is no way that I can write it n there and properly ask it.  If you want to type it over again -- Why don't I just pass -- Well, I'm going to give one.  I think you are entitled to one that talks about reasonable doubt and preponderance of the evidence, and I will certainly ask those questions, do they know the distinction.

MR. McKITTRICK:  How about No. 2?  You don't object to 2, do you?

THE COURT:  I don't object to 1 or 2.

MR. BROWN:  I do.

THE COURT:  Well, I don't, so I am going to ask them, but add the word "Moss" in there in No. 2.  On 3, I am going to strike that.

What about 4?

MR. BROWN:  I object to it.

THE COURT:  Well, I can't give it if I am striking 3.

MR. McKITTRICK:  Four is completely different.

216

THE COURT: If I strike 3, you have to redo 4.

MR. McKITTRICK: Well, 4 is completely different, Judge.

THE COURT: Not if I struck 3 it isn't because it says "That means". What means? I am going to strike 3 and 4 and let you redraft another one incorporating the new one. Wait a minute, Pete. I'll get to you.

MR. BROWN: Your Honor, what we have here under title Nineteen, pages 26, 27 and 28, 1 through 11 are eleven different versions of beyond a reasonable doubt. I object to all of that.

THE COURT: I have given these before too. Here is one right here. No. 8, "Let's talk a little bit more about the burden of proof, which rests solely upon the shoulders of the prosecution. Do you understand that each and every element" -- Well, first of all it would be "material element", "that each and every material element of the offense charged must be proved to your satisfaction beyond a reasonable doubt, and even if one" and again the word "material element" -- I have given that. I have asked that question.

MR. McKITTRICK: You said you would give it. What happened was I withdrew it, and then you refused to let me withdraw my withdrawal, so I am submitting it again.

MR. BROWN: I say what he is doing is submitting it eleven different times under Nineteen.

MR. McKITTRICK: It is not eleven different times. Some of

these are questions about what he has asked.

MR. BROWN: But No. 6, "Does he have to show you he is innocent?" We just discussed that ten minutes ago.

THE COURT: I think they are getting repetitious.

MR. BROWN: Your Honor, they are instructions. I would respectfully ask the Court --

MR. STUCKY: Your Honor, the repetition in and of itself becomes prejudicial to the jury; and you know, the State is entitled to a fair and impartial jury also, as in State vs. Pettry.

THE COURT: I don't see anything wrong with No. 1: "You know, don't you, that the State and the prosecutors have the burden of proof" and No. 2: "Do you think that John Moss has to prove he is innocent?" I think he is entitled to those. He has probably had me already ask them earlier, but I don't see anything wrong with them.

MR. STUCKY: I think that is where it ought to stop, after those two, for voir dire purposes.

THE COURT: In paragraph 5 put in "Moss", "John Moss".

MR. BROWN: Your Honor, if he would put in there 1, 2 and 5, that would cover everything. It's an instruction, but we will give it to him.

MR. STUCKY: He has already had that.

THE COURT: Wait a minute. The first paragraph, "You know,

218

don't you, that the State and the prosecutors have the burden of proof", okay, I'm giving it. No. 2, "Do you think that John Moss has to prove he is innocent", I'll give that. I have asked you to retype 3 and 4 tomorrow, and I'll give one distinguishing preponderance of evidence and beyond a reasonable doubt.

Now, No. 5 -- Well, first, "You know, don't you that the State and the prosecutors have the burden of proof?" Now, No. 5, "You understand, don't you, that the burden of proving John Moss guilty beyond a reasonable doubt rests totally with the prosecution and the State?" That's repetitious. I have already given one in here somewhere that says he doesn't have to introduce any evidence.

MR. STUCKY: Your Honor, another critical issue that we are getting away from here, this is voir dire. This is not a test on the knowledge of the law. Whether they know that the burden of proof is on the State has nothing to do with whether or not they will follow it once they do know it. That doesn't have anything to do with it. Whether or not they know the law has nothing to do with whether or not they are a good juror and whether or not they will follow the law once they know it.

What we are getting into here is educating them on the law ahead of schedule. Instead of instructions, Mr. McKittrick, as any good defense lawyer, wants to get it in as many times as they can to drill home the burden of proof is on the State. But

219

that is not the issue of voir dire.

MR. McKITTRICK: For purposes of the record, what the Prosecutor is attempting to say is that voir dire should not cover in any respect the law of the case; and I think that that is not the law of this land.

THE COURT: I realize we are building a record here, so let the Court say this: I have agreed to give several, several questions regarding an outline of the law generally in this case.

MR. McKITTRICK: I agree as to presumption of innocence.

THE COURT: It is not limited to that.

MR. McKITTRICK: I think you did give an adequate voir dire on that. What this has to do with is burden of proof.

THE COURT: I am going to let the record speak for itself. I have given burden of proof ad nauseum in this thing, and now you have it one more time. I am going to give it one more time. Paragraph 1, "You know, don't you, that the State and the prosecutors have the burden of proof?" I'm going to give it. No. 2, "Do you think that John Moss has to prove he is innocent?" I am going to give that.

I am not giving 5. We get back into the burden of proof. I'm not giving 6. You have had that one before. No. 7 I'm not giving. We are back to burden of proof. No. 8, "Let's talk a little more about the burden of proof." I'm not giving that.

220

Now, I'll give 9, "Do you think that --

MR. STUCKY: You can use that right after No. 1 if you are going to give it, Judge.

THE COURT: I wanted to give 9 somehow.

MR. STUCKY: You can give it right after No. 1.

MR. BROWN: Why don't you make that 1-A, if you want to, Judge?

THE COURT: All right, No. 9 would be 1-A, "Do you think that is asking the prosecutors to take on more of a burden than they should have to?" I think he is entitled to that.

MR. McKITTRICK: Judge, how about if I withdraw 5 and 6, if you will give me 7, which will cover it?

MR. STUCKY: He told you he wasn't giving 5 already.

MR. McKITTRICK: That doesn't tell them the burden of proof. It just indicates that --

THE COURT: I'm not going to. These are instructions. You are trying to get in instructions again.

MR. McKITTRICK: No. 7 is not, Judge.

THE COURT: "The burden of proof is always on the prosecution and the defendant need never present any evidence in his own behalf --

MR. McKITTRICK: Judge, that covers 5 and 6. I will withdraw 5 and 6 and put in 7.

MR. STUCKY: Your Honor, No. 7 says, "I will instruct you".

221

He uses the language.

MR. BROWN: He has got it right in there, Judge, "I will instruct you".

THE COURT: All right, the Court is going to give 1, and it is going to give 2. I'm not going to give 3, 4, 5, 6, 7 and 8. I'm renumbering 9 as 1-A.

MR. McKITTRICK: You are not going to give 8 now?

THE COURT: No.

MR. McKITTRICK: You said you were.

THE COURT: No, I didn't.

MR. McKITTRICK: You said that awhile ago.

THE COURT: The record will speak for itself if I am in error. it is an incorrect statement anyway. You say in 8, "Do you understand that each and every element of the offense charged must be proven to your satisfaction beyond a reasonable doubt, and that if even one element of an offense is not so proven, then you must vote note guilty?" That's not the law. If I was giving instructions, I wouldn't give it. It is "material element", but this is an instruction. I'm not giving it. I will renumber 9 as 1-A.

MR. McKITTRICK: We will amend 8 to include the word "material" in front of "element".

THE COURT: I am not giving it. That is an instruction. These are voir dire questions. You are trying to get me to give

222

instructions during voir dire.

I am not going to give 10.  Again you are trying to get an instruction of the law in which I will give at the proper time.

MR. McKITTRICK:  Judge, how is No. 10 an instruction?  I say that respectfully.  Look at that.

THE COURT:  "Do you think that it is reasonable to require the State to prove its case beyond a suspicion of guilt, beyond a possibility of guilt, and even beyond a probability of guilt? Do you think that is too much of a burden for the State to bear?"

MR. McKITTRICK:  Now, that is the same thing -- You know the question we were talking about on presumption of innocence?  I have a right to follow up with that question to determine whether the juror is saying exactly what you asked them about burden of proof?  That is all it says, so I can be clear in my mind and so can the other lawyers as to whether or not they really understand it.  It is not an instruction from you.  It is not a statement.

THE COURT:  I think I have given you enough on the burden of proof is on the prosecutors.  If this is not an instruction, it is certainly getting redundant.  I'm not giving it.

I'll give 11.  When I say "give", for purposes of the record, I mean I will ask these questions of prospective jurors.

MR. McKITTRICK:  Will you give 10, Judge?

223

THE COURT: No, I won't. I have just explained why.

MR. McKITTRICK: Why won't you give 10?

THE COURT: I have just explained it for the record. If you don't recall, then the record can be read in its entirety at a later proceeding. I just stated why.

MR. McKITTRICK: I remember why. I disagree with it.

THE COURT: I understand that.

MR. McKITTRICK: It is not an instruction. It is just a question.

THE COURT: Page 29.

MR. BROWN: We object to that one. Your Honor, these questions all go to a question that the Court has already said he would allow Mr. McKittrick to ask as to burden. They all go to burden. And if the questions haven't made it clear by now that the State has a burden beyond a reasonable doubt --

THE COURT: I don't think these questions are fairly propounded. I think it is an attempt to confuse the jury. I think you are entitled to ask them, and I'll ask the question, "Do you understand that you cannot convict him because you think he is probably guilty; you cannot convict him because you suspect that he is guilty, but that the State must prove his guilt beyond a reasonable doubt before you can vote guilty? Do you understand that?" I'll give questions of that nature, but I'm not going to give 20 as offered.

224

MR. BROWN:  On heading Twenty, page 29, the State objects to

1, 2, 3, 4 and 5.

THE COURT:  You are objecting to the whole thing?

MR. STUCKY:  Yes, sir.

THE COURT:  I'm not giving it as offered.  And I'm telling

Mr. McKittrick if he wants to give some questions along the line

I just indicated, "Do you understand" -- And I'm voir diring the

prospective juror -- "Do you understand" -- And again we are

instructing the jury, and I know we are.  This is an instruction

on the probability of guilt that I have given many times in

criminal cases, but be that as it may, I'll ask questions such

as, "Do you understand you cannot convict him on mere suspicion,

mere probability, that the State must prove its case beyond a

reasonable doubt?"  I'll ask those questions if you present

them.  I'm refusing page 29 entitled No. Twenty by the defense.

MR. McKITTRICK:  Judge, will you do me a favor.  Will you

look at section 1, question No. 3.  That is the original one

that I drafted just the way you said to draft it.

THE COURT:  I didn't give that.

MR. McKITTRICK:  That is exactly what you are asking me to

construct for you.

THE COURT:  No, that is not the way I wanted it in your

construction.  I am refusing it.  I have told you if you will

propound questions to the effect that, "Do you understand that

the State must" -- I hate to burden this record.  It will be a
room high in volume.  I know this is an instruction, but I will
ask it, "Do you understand you cannot convict John Moss on mere
suspicion; you cannot convict him if you feel he is probably
guilty; you cannot convict him unless the State sustains its
burden and convinces you beyond a reasonable doubt?  Do you
understand that?"  I'll ask those questions, and that's the form
I want them in if you want me to ask them.

   All right, what about page 31.

   MR. BROWN:  No objection to No. 1 under heading Twenty-two.

   THE COURT:  All right.

   MR. BROWN:  No objection to No. 2.  No objection to No. 3.

   THE COURT:  Add "Moss" in No. 4.

   MR. BROWN:  Yes, add "Moss".  Really no objection to No. 4.
No objection to No. 5.  No objection to No. 6.

   THE COURT:  No. 7 add "Moss".

   MR. BROWN:  And no objection to No. 7.

   THE COURT:  All right, I'll ask all those of those
questions.

   Now, does that conclude the defendant's voir dire?

   MR. BROWN:  Not really.  There were some things we were
going to pass and come back to, however you want to do that.

   MR. McKITTRICK:  You were going to do that after we argue
the motion.

THE COURT:  Yes.

MR. STUCKY:  Even without arguing the motion, this is not proper voir dire.  It has nothing to do with the motion as to whether or not he can put in evidence of Reggettz' confession. It doesn't have anything to do with whether or not this is proper voir dire.  This is prejudicial voir dire.  It does nothing but prejudice the State's case, puts them in a state of mind of not being totally void of any facts prior to hearing it on the stand.

This gives them evidence and statements of evidence they shouldn't have prior to taking their oath to hear the case.

MR. McKITTRICK:  Judge, in order to sustain that kind of objection, the Court would have to say that I cannot discuss the theory of my defense with the jury in voir dire.  That's one of the substantial purposes of voir dire.  That's the whole theory of my case.

This <u>Chambers</u> <u>vs.</u> <u>Mississippi</u>, I don't know if the Court has had an opportunity to read it yet.  That case says that when it comes to defending the rights of a defendant and somebody else might have committed the crime that it is more important to get before the jury the facts with regard to the other person's confession than to adduce mechanical rules to prevent the jury from deliberating on those facts.

THE COURT:  I agree, getting before the jury the proper

227

evidence; and I will rule on the admissibility of Reggettz'

confession and anything else at the proper time. I don't feel

that your questions on voir dire are proper questions to be

asked on voir dire. It has nothing to do with -- This is not

the proper time to get your theory of the case in. The time to

get your theory of the case in is opening statement and the

evidence and closing argument. I am not giving Four-A. I am

refusing it in its entirety. This is nothing more than a

statement of your case in voir dire; and it is not the proper

place for it. Note the objection of the defendant.

Now, what else? Are there any more for the defense?

All right now, these are the State's. We will take those up

fresh Monday morning at 9:30.

MR. BROWN: I have the list of witnesses.

THE COURT: I know both sides are going to be working over

the weekend. Get your additional witnesses so we can append

them to that one voir dire question. And Parrish, rewrite the

ones I told you I would give if you rewrite them the way I want

them rewritten.

And if you think of any additional questions over the

weekend, have them typed up and in proper chronological order,

and I will take up any additional questions you might think of

on Monday.

The jury is not coming in until 1:30 so that gives us all of

228

Monday morning to try to get all of these things out of the way

so we can hopefully start voir diring the jury at 1:30.

All right, we will stand in recess until 9:30 Monday

morning.

- O -

(Whereupon, a recess was had in the proceedings.)

- O -