you know of any reason why you could not sit as a fair and impartial juror?

JUROR SIGMON: No, I don't.

THE COURT: Mrs. Sigmon, is there anything I have said about John Moss or about the facts of this case which creates a doubt in your own mind about your ability to be a fair and impartial juror?

JUROR SIGMON: No.

THE COURT: Is there anything you have felt or seen or heard since you came here that would lead you to believe you might have a tendency to favor one side over the other?

JUROR SIGMON: No.

THE COURT: Is there any reason which I have not covered which would make you feel you could not approach this case with a completely open mind or that you feel might embarrass you in your consideration of the case?

JUROR SIGMON: No.

THE COURT: Assuming that you or some loved one of yours was standing trial in place of John Moss for the same crime, would you be satisfied to have you or your loved one tried by twelve jurors having the same frame of mind as yours?

JUROR SIGMON: Yes, I would.

THE COURT: Do you understand, Mrs. Sigmon, that you cannot find John Moss guilty because you think he might be guilty; you

1937

cannot find John Moss guilty because you think he most likely is guilty; you cannot find John Moss guilty because you think he is probably guilty; you cannot find John Moss guilty because he is possibly guilty; and you cannot convict John Moss on a suspicion of guilt. But instead, do you understand in order for you to find John Moss guilty the State must prove his guilt beyond a reasonable doubt that is to a moral certainty? Do you understand that?

JUROR SIGMON: Yes, I understand that.

THE COURT: Mrs. Sigmon, thank you so very much for your patience. Don't be nervous. That is it. We are finished with the questioning; and I do appreciate it. Now, when you go back downstairs, I don't want you discussing anything that went on up here between us. All right?

JUROR SIGMON: All right.

(Whereupon, the juror left the room.)

THE COURT: Anything on the last one?

MR. BROWN: Nothing.

MR. McKITTRICK: No.

I do want to make a motion, Judge.

THE COURT: All right, go ahead.

MR. McKITTRICK: I understand on Monday we have scheduled a suppression in the matter concerning this confession that was belatedly brought to the attention of the defendant, John Moss.

The defendant, John Moss, at this time moves the court to have the proceedings concerning the suppression hearing in chambers as a result of the belated nature of the confession, in case the Court should suppress the confession so that the press does not ascertain that the confession exists.

THE COURT: Any objection?

MR. BROWN: We don't have any objection to that, Your Honor. I think it is a proper motion.

THE COURT: All right, I think that is a proper motion; and without objection by the State, or even with it I might add, motion granted.

(Whereupon, a discussion was had off the record and then resumed back on the record as follows:)

MR. BROWN: Your Honor, I told Mr. McKittrick that Mikey Smith is downstairs, Trooper Smith. He is one of the persons that was involved in this second confession. I can't very well speak for what Mr. McKittrick wants to do; but I suppose that maybe he might want to talk to Smith say during the afternoon; also perhaps talk to Terry Williams who is also downstairs and also available. And it may even be possible to get Chuck Pettry in, who was with the State at that time as one of the Assistant Prosecutors. It might be a good time this afternoon for Mr. McKittrick to talk to those persons who will probably be involved in the suppression hearing on the second confession.

As to the jury, the State would prefer that the jury not be selected until after the suppression hearing. We think that would be the safest way to handle it.

THE COURT: It makes no difference to the Court.

Mr. McKittrick?

MR. McKITTRICK: I would like to go down and talk to Mike Smith at some time. I would like to strike the jury after 1:30 today. I would like to get on with this trial as expeditiously as we can.

I think we could hold the suppression hearing on Monday, come in here on Tuesday, and unless there are other motions, give opening statements in the morning, and in the afternoon start our evidence.

MR. BROWN: Your Honor, we feel that if the jury is struck that just gives us a few more days, if they are struck, the defendant will be in jeopardy. If anything goes wrong, and of course, things can always go wrong, there will be a big hullabaloo about it. I just think the safest procedure would be to pick the jury after the suppression hearing. I don't see how it would hurt to wait that long, and I think it would just be safer all the way around.

THE COURT: Let me ask you this: Since several of your witnesses are here, why can't we start on the suppression hearing this afternoon; or do both sides want until Monday?

1940

MR. BROWN: Well, my main witnesses aren't here; and I really haven't talked to my main witnesses, Your Honor. I have talked to them one time, but as far as setting down and really going over the hearing with them, I haven't done that. One of those witnesses is in Ohio. That is former Trooper Allen. The other witness is Corporal Woodyard, who is with the Boone County Detachment. I just thought it might be convenient for Mr. McKittrick to talk to the two we do have available right now.

MR. McKITTRICK: I have already talked to Woodyard. He took the statement. If we can go on with the suppression hearing today, that would be fine with me. You could get Woodyard over here from Boone County. You have Mike Smith downstairs. There are only two other witnesses, Chuck Pettry and Trooper Allen.

MR. STUCKY: Mr. McKittrick agreed yesterday we would do that Monday. We would like an opportunity to prepare for it also.

THE COURT: All right, here's what I'm going to do. I'm going to sustain the State's motion on the ground that this is a very complicated case, that we have questions on the interstate detainer compact. I don't think anyone, including the West Virginia Supreme Court of Appeals, knows how many days are left on that detainer. The figures go anywhere from two days on up. Once a jury, as you all know, is impaneled and sworn, jeopardy attaches. There has been an outbreak, almost I suspect

1941

of contagious proportions, of the flu in this valley. In fact, several of the prospective jurors indicated that they either had sinus infections, colds, flu or something. And if more than four of them were to be incapacitated between now and Tuesday of next week, which is five days from today, these past three weeks would have gone for naught.

The defendant will suffer no legal infirmity by impaneling the jury on Tuesday. Because if during those four or five days one of the jurors becomes incapacitated, we can then replace he or she with another juror and voir dire the same. I propose then to go downstairs and recess until Monday at 9:30 when I will ask the entire panel that is available to be back here. And at that time, God willing --

MR. STUCKY: Monday or Tuesday?

THE COURT: Tuesday, I meant Tuesday. The reason I meant Tuesday, obviously there is a suppression hearing to be held Monday, and that will take the entire day. Realistically can we finish that suppression hearing in one day? The Prosecutor and his assistant nod their heads in the affirmative, as does the defense counsel. I take it then, gentlemen, that that means yes.

Then we ought to be able to go on Tuesday morning; and if one of the twenty-eight is not here, for whatever reason, we will replace he or she. Otherwise, I intend to have you

gentlemen strike a jury first thing Tuesday, just out of an abundance of caution. I know none of us want to have this thing go for naught.

All right, let's go down to five.

(Whereupon, the Court, counsel for the State, counsel for the defendant, the defendant in person and the court reporter entered the jury lounge on the fifth floor where the following proceedings were had:)

THE COURT: Ladies and gentlemen, please listen carefully because it gets a little confusing. Those of you who were not picked for the twenty-eight up to this point, please call the tape tonight in the clerk's office to see when you are needed. Those of you who are on the twenty-eight -- and I might add at this point I'm going to want everybody back here next week at the same time, but some of you may be coming back earlier. You may be needed in the other courts.

So those of you who are not on the twenty-eight, call the tape to see when you are needed. Those of you on the twenty-eight, I want you folks, the twenty-eight, back here at 9:15 Tuesday morning, Tuesday. We have matters of law to take up in the meantime which are not of your concern and which will undoubtedly take our time through Monday evening. We hope to have a jury impaneled Tuesday.

So those of you -- I'm not insulting your intelligence by

1943

repeating this. I just want to make sure we all understand. Those of you not on the twenty-eight, call the clerk's office to see when you will be needed. Those of you on the twenty-eight, don't bother about calling. Please be here Tuesday morning at 9:15, and do stay healthy please.

(Whereupon, a discussion was had off the record and then resumed back on the record as follows:)

THE COURT: All right now, enjoy your weekend, and stay healthy. And I admonish you and each of you not to discuss this case among yourselves nor permit others to discuss it with you. Neither should you read any newspaper accounts, watch any television accounts or listen to any radio accounts of this trial or any of the personalities connected herewith.

With that, those of you on the twenty-eight, be back here at 9:15 on Tuesday; and for all of you, have an enjoyable weekend.

Thanks again.

- 0 -

(Whereupon, a recess was had in the proceedings.)

- 0 -