IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON



JOHN MOSS, III,,

    Petitioner,

v.

                                                        Civil Action No: 2:09-cv-01406
                                                        (Magistrate Judge Mary E. Stanley)

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

    Respondent.

## PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDATIONS

      COMES NOW, John Moss, III, (hereinafter "Petitioner") and objects to United States District Court Magistrate Judge, Mary E. Stanley's, *Proposed Findings and Recommendation* (DOC 39) which recommendation is to grant Respondent's *Motion For Summary Judgment* (DOC 17). Specifically, Petitioner states as follows:

1.     Petitioner's petition under 28 U.S.C. § 2254 for a writ of habeas corpus was filed on December 15, 2009, and assigned to the Honorable Mary E. Stanley, who ordered Respondent to file an answer solely on the issues of timeliness of the petition and exhaustion of available state court remedies. (DOC 6.) Respondent answered as directed, conceding the petition was timely filed and that Petitioner had exhausted available state remedies on all but one claim. (DOC 8.) By Order entered June 22, 2010, Magistrate Judge Stanley ordered Respondent to answer the merits of Petitioner's claims on or before September 17, 2010. (DOC 12.) Respondent moved the Court for an extension of time within which to file his answer. (DOC 13.) Respondent was granted an extension which allowed him to submit his answer on or before November 1, 2010. (DOC 14.) Respondent

electronically filed his answer to Petitioner's claims on October 29, 2010, via Respondent's Answer, Motion For Summary Judgment, and Memorandum In Support of Motion For Summary Judgment. (DOC's 16, 17 & 18.)

2. The Court Ordered Petitioner to respond by February 25, 2011 (DOC 22.), and that Respondent shall respond to Petitioner's reply by March 11, 2011.

3. Petitioner's Response (DOC 23), along with his Motion For An Evidentiary Hearing and Memorandum in Support Thereof (DOC 24); as well as a Motion For An Order Directing Respondent to Provide the Court With Additional Portions of the Record (DOC 25), was filed February 24, 2011.

4. After further protracted proceedings (DOCs 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, and 38), Magistrate Judge Stanley's *Proposed Findings and Recommendation* was filed July 26, 2011 (DOC 39). Petitioner now objects thereto.

### Petitioner's Claims – Ground One:

> The Lower Courts' Ruling That Petitioner's Confessions Were Voluntary Is Clearly Against The Weight Of The Evidence Presented And An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court.

The admission of inculpatory statements at trial that are involuntarily made and/or coerced violate the 5th and 14th Amendments. Magistrate Judge Stanley's (hereinafter "Magistrate") *Proposed Findings and Recommendation* (hereinafter "Findings" and/or "Recommendation") seems to rely entirely upon the state court's findings of facts and legal conclusions under state law. The question whether Petitioner's "confession" was voluntary is one of federal law. "Without exception, the Court's confession cases hold that the ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246 (1991). *citing Miller v. Fenton*, 474 U.S. 104; 106 S.Ct. 445 (1985). In *Mincey v. Arizona*, the United States Supreme Court overturned a determination by the Supreme Court of Arizona that a statement of the defendant was voluntary, saying "we are not bound by the Arizona Supreme Court's holding that the statements were voluntary. Instead, this Court is under a duty to make an independent evaluation of the record." Id. 437 U.S. 385, 398.

The Magistrate sets forth no independent analysis of the facts as alleged by Petitioner, only posits that the West Virginia Circuit Court "...found that the weight of the evidence fell with the testimony of the law enforcement officials, who claimed no such [coercive] force was used." (DOC 39, p. 56.) The Magistrate did not state any independent fact findings on the factors a federal court can consider when making a determination a confession or confessions were voluntary. Neither did the lower courts, which is contrary to *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860 (1961), and *Schneckloth v. Bustamonte*, 412 U.S. 569, 93 S.Ct. 2041 (1973), among others.

The facts alleged by Petitioner was not disputed by Respondent. Petitioner alleges facts which, if true, would entitle him to habeas corpus relief. These undisputed facts are as follows:

1. On October 28, 1980, ostensibly while being transported to West Virginia by members of the West Virginia Department of Public Safety to answer an unconnected malicious wounding charge, although the two troopers were the chief investigating authorities in the Reggettz murders, a confession **was beaten and/or coerced out of** the young, eighteen-year-old defendant.

2. Petitioner was yanked out of the Ohio State Reformatory without a chance to resist being transported to West Virginia by having his counsel file a habeas due to violations of the Interstate Agreement on Detainers.

3. Petitioner was. . .placed into the trooper's car by having both hands cuffed to the passenger's side front head rest.

4. Trooper Smith crawled over the front seat and started punching Petitioner in the midsection asking him about the Reggettz murders.

5. Petitioner told the troopers he would be glad to talk to them with the presence of his attorney and requested that he be allowed to contact attorney Jim Williams. Trooper Smith told Petitioner he did not need an attorney. Trooper Smith intermittently continued beating Petitioner until they arrived at the Parkersburg, West Virginia State Police Detachment at around 6:30 p.m.

6. The troopers removed Petitioner from the vehicle and Trooper Smith hit Petitioner in the groin.

7. For over five hours Petitioner was held at the State Police Detachment and coached about what he would confess to on tape. When Petitioner did not get it right, Trooper Williams would send Trooper Smith in and he would slap Petitioner around until he got it right.

Federal Courts normally give great deference to the factual findings of the state court. C.f., *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761 (1966). Nevertheless, the ultimate issue of voluntariness is a legal question requiring independent federal determination. *Miller v. Fenton*, 474

U.S. 104, 106 S.Ct. 445 (1985). The Magistrate did not make an independent, federal determination of Petitioner's facts. This is bore out by her recommendation to grant Respondent's motion for summary judgment, who did not dispute the facts that are contained in the record. The facts which, if true, entitle Petitioner to habeas corpus relief. Petitioner objects to the Magistrate's findings on this claim, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his §2254 petition.

### Petitioner's Claims – Ground Two:

> Petitioner's Due Process Rights Guaranteed By The Fourteenth Amendment To The United States Constitution Were Violated And The Lower Court's Ruling Was Contrary To And/Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court And/Or An Unreasonable Determination Of The Facts Of The Case.

### Denial of pretransfer hearing under IAD

Petitioner objects to the Magistrate's determination that Petitioner was not entitled to habeas relief because he received notice and a fair trial. The Magistrate previously made a finding that Petitioner's trial was overturned because it had violated due process. (DOC 39 @ 2.) To say that Petitioner received a fair trial is incongruous with the facts. Petitioner specifically objects to the Magistrate's findings of facts and conclusions of law on this claim, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his §2254 petition.

### Prompt presentment issue

The Magistrate finds that West Virginia did not pursue the malicious wounding charge, the pretextual arrest charge West Virginia authorities used to obtain custody of Petitioner and to beat a "confession" out of him, because Petitioner confessed to the Reggettz murders. (DOC 39 @ 2.) This simply is not true. West Virginia investigated Petitioner's involvement in the Moose Club shooting and decided he was not in any way culpable for that crime. The Magistrate makes it sound as though the Moose Club charge was dropped so West Virginia had no responsibility to take Petitioner before a neutral judicial officer, which, also, is not true, as the West Virginia Supreme Court states. The

Magistrate also finds that no objections were made by the first trial attorneys on the first two "confessions." (DOC 39 @ 73, 74.) Counsel's Brief clearly cites *West Virginia Code* § 49-5-8(d), which is the prompt presentment article of the juvenile statute. To think counsel made prompt presentment objections on the third "confession" but not the first two is incongruent, at best. Finally, the Magistrate does not make, or makes an erroneous determination, that the ruling on the prompt presentment issue by the West Virginia Supreme Court of Appeals was not dispositive of the case but merely *dicta*. The WVSCA did not have jurisdiction to rule on the issue if no objections were entered. Finally, the law of the case doctrine is not an immutable rule. When substantial rights are affected, it has no effect to perpetuate a violation of rights. The Magistrate's finding is also erroneous that this claim by Petitioner did not affect substantial rights guaranteed by the United States Constitution, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his §2254 petition.

### Petitioner's Claims – Ground Three:

> Petitioner Did Not Receive A Full And Fair Hearing On His Motion And Memorandum To Suppress Samples Of Blood, Confession, And Other Physical Evidence Seized Due To The Improper Tactics Of Fred S. Zain And The West Virginia State Police Troopers And Crime Laboratory, And Petitioner's Due Process Rights Were Violated. The Lower Courts' Rulings Were Contrary To And/Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United State Supreme Court, Or An Unreasonable Determination Of The Facts As Set Forth In The Record.

The Magistrate claims Petitioner makes speculative allegations that West Virginia authorities had a sample of Petitioner's blood in January, 1980 (DOC 39 @ 99), and that "evidence exists supporting a finding that Trooper Smith returned the cloth with Petitioner's blood sample before they returned to West Virginia, and there is no evidence to substantiate Petitioner's assertion that Fred Zain had a known sample of Petitioner's blood in January 1980[.]" The Magistrate's determination of the facts are incongruous with every other single judicial analysis on the question of the veracity of Fred Zain and Robert Murphy's body of work, and is erroneous. A plethora of evidence exists to make the inference those state actors lied on reports and in giving testimony. There is nothing in the record to

suggest they did not lie about the January 1980 Blood Grouping table. Petitioner has been wishing to question authorities from Ohio whether the blood soaked cloth was returned, but has been denied the opportunity due to his incarceration. Why is the judiciary afraid of finding out the truth? The *gravamen* of Petitioner's claim is that if he had prior knowledge of the January 1980 blood grouping table, that, by a preponderance of the evidence, demonstrates the state had a known sample of Petitioner's blood at a time frame that all state actors testified, prior to trial, they did not have, then he would have had an opportunity to more fully litigate the issues during the suppression hearing and the circuit court's order denying Petitioner's motion to suppress most likely would have been different. Neither Respondent nor Magistrate dispute the fact that if the West Virginia State Police Crime Laboratory, Serology Division did, indeed, have a sample of Petitioner's blood in January, 1980, contrary to their testimony, then the ruling would be that all the evidence that flowed from the taking of that blood sample would be excluded under the fruit of the poisonous tree doctrine. The weight of the evidence does not weigh in the favor of Trooper Smith, and the Magistrate's finding of fact on this point is erroneous, as well as her determination that Petitioner received a full and fair opportunity to litigate his Fourth Amendment issues due to the state's withholding of this key piece of evidence, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his §2254 petition.

### Petitioner's Claims – Grounds Four, Five and Eight:

> Petitioner's Sixth Amendment Right To A Fair Trial And Impartial Jury Was Contravened When The State Knew, Or Should Have Known, Of The False Or Misleading Testimony And Evidence Presented By A State Witness, And The Lower Courts' Rulings Were Contrary To Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court, And/Or Was An Unreasonable Determination Of The Facts As Set Forth In The Record.

> The Admission Of Petitioner's Blood Samples, Confessions, And All Evidence Incident Thereto Violated Petitioner's Right To A Fair Trial When The Samples Of Blood Were Obtained In Violation Of Federal Constitutional Rights, And The Rulings Of The Lower Courts Are Contrary To Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court, And/Or An Unreasonable Determination Of The Facts As Set Forth In The Record.

> Petitioner's Incarceration Is Illegal And In Violation Of His Constitutional Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution Respectively, And The Lower Courts' Ruling Is Contrary To Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court, Or An Unreasonable Determination Of The Facts As Set Forth In The Record.

The Magistrate's findings are not congruous with the facts Petitioner points out in the record. A great deal is made of the silverware Petitioner gave to Arbutus Johnson as a Christmas present, as well as a camera and rifle scope. A close examination of the record reveals, however, that the silverware given to Ms. Johnson could not have possibly come from the Reggettz home; the camera in question was in Petitioner's father's home long before the crime; and the rifle scope was never proven beyond a reasonable doubt that it was the same scope from the rifle allegedly missing from the Reggettz residence. A compelling piece of this puzzle is that the only witness stating what was or was not taken from the Reggettz residence is Paul Reggettz himself, the confessed perpetrator of the crimes. Any testimony he presented certainly had to be scrutinized closely as self serving. It was demonstrated beyond a reasonable doubt at Petitioner's first trial that Paul Reggettz lied about the silverware given to Ms. Johnson as being purchased at K-Mart when a representative testified K-Mart never carried the pattern of silverware in question. There is no independent evidence whatsoever that anything was taken from the Reggettz residence save for the self serving testimony of Paul Reggettz himself. Evidence and testimony was given that the "confessions" by Petitioner were coerced and, standing alone, most probably created reasonable doubt. One of the most disturbing aspects of the issue of Petitioner's confession is the strength Respondent places on the evidence offered by Dr. Irving Sopher, the Chief Medical Examiner of West Virginia at the time. Dr. Sopher testified with regard to the time of the victims' last meal, which seemed to uphold the veracity of Petitioner's "confession" but not that of the original suspect. The Magistrate fails to take into account Petitioner's allegations that Troopers Williams and Smith provided him the details of the crime as they were beating him for over five hours at the Parkersburg State Police Detachment so he would get it straight for the tape. The fact of the autopsy results would have been known to them both. In addition, Respondent argues that the *modus operandi* of Fred S. Zain and the State Police Serology

- 7 -

Crime Lab does not fit with the facts of Petitioner's case. For example, Respondent claims that it was Zain's pattern to support, with whatever method, the first suspect law enforcement may identify which, in this instance, was Paul Reggettz. That certainly is speculative at best and not indicative of the myriad of possibilities why Zain did not hold to his "pattern." One explanation may be that someone actually identified a blood sample determined not to be from Reggettz before Zain could work his "magic" in matching it up to Reggettz. Once Zain had a sample of Petitioner's blood in January 1980, however, the answer to Zain's dilemma fell into his lap and he did whatever paper shuffling, report falsifying steps necessary to match the known blood sample from Petitioner with the "unknown" blood sample found at the scene. The improper serology evidence must have been the deciding factor against Petitioner, as he was not afforded an opportunity to refute the state's use of this false and misleading evidence. Petitioner objects to the Magistrate's determination of the facts and law on this issue, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his § 2254 petition.

### Petitioner's Claims – Ground Six:

> Improper Closing Arguments By The Prosecution Denied Petitioner His Federal Constitutional Rights To A Fair Trial And Due Process Of Law, The Lower Court's Rulings Are Contrary To Or An Unreasonable Determination Of Clearly Established Federal Law As Announced By The United States Supreme Court, And/Or An Unreasonable Determination Of The Facts As Set Forth In The Record.

The Magistrate's determination of the facts, or lack thereof, does not coincide with the record. Nor does her legal analysis. For instance, though she hints they may be, the Magistrate does not specifically state whether she believes the comments by the prosecutor were improper or not. A proper analysis would lead a reasonable jurist to decide the comments made by the prosecutor were improper, and, therefore, so infused the trial process with unfairness as to deprive Petitioner due process. Petitioner objects to the Magistrate's findings on this issue, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his § 2254 petition.

**Petitioner's Claims – Ground Seven:**

> Petitioner's Guarantee To Equal Protection And The Due Process Of Law Were Violated When The Lower Courts Failed To Provide Him With The Appointment Of Counsel And A Full Habeas Corpus Evidentiary Hearing, Inasmuch, The Circuit Court Failed To Abide By The West Virginia Supreme Court's Mandate, And The West Virginia Supreme Court On Appeal Failed To Honor Its Own Mandate, Thereby The Lower Court's Ruling Is Contrary To Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court, Or An Unreasonable Determination Of The Facts As Set Forth In The Record.

Petitioner objects to the Magistrate's ruling on this contention. When a state opts in to giving petitioners any statutory or judicially created procedure to battle a constitutionally infirm conviction, then all similarly situated persons must enjoy the same protections. Denying Petitioner the same process every other petitioner in the state enjoyed does not comport with federal constitutional guarantees, was a fundamental miscarriage of justice and denied due process. Do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his § 2254 petition.

**Petitioner's Claims – Ground Nine:**

> Petitioner Was Denied His Right To Effective Assistance Of Counsel Guaranteed To Him Through The Sixth And Fourteenth Amendments To The United States Constitution, And The Court's Rulings Below Were Contrary To Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court And/Or An Unreasonable Determination Of The Facts As Set Forth In The Record.

The Magistrate rules the first trial attorneys did not object to two of Petitioner's "confessions."[1] ". . .no prior objection on that basis [failure of the state to comply with the juvenile prompt presentment rule] had been articulated in Petitioner's first trial proceedings. . ." Petitioner objects to the Magistrate's finding that "this federal court is not charged with reviewing the conduct of Petitioner's counsel at his first trial, where his convictions were ultimately vacated." The Magistrate does not cite

---

1. Petitioner objects to the Magistrate's erroneous ruling that the first trial attorneys did not object to the first two confessions *supra*, and does not abandon those objections here.

to any authority to support her conclusion. In fact, when a trial attorney's performance directly affects the proceedings in a subsequent trial, as the Magistrate claims here, then an attorney's acts and/or omissions can be considered for a claim of ineffective assistance of counsel continuing to the second trial. Ruling otherwise is contrary to well established federal law. Also, Petitioner objects to the Magistrate's finding that the law of the case doctrine precluded the circuit court from ruling the two confessions were admissible. The Magistrate fails to make a proper analysis of the doctrine, or whether the *dicta* by the West Virginia Supreme Court should be binding on an attorney's ability to raise an objection at a subsequent trial because the Court's writing was not dispositive on issues decided to declare Petitioner's trial unfair. (*See* objections on Magistrate's Findings in Petitioner's Ground Two – Prompt Presentment Issue.) The Magistrate's Findings fails to consider the fact the WVSCA invoked the plain error doctrine on one of the issues dispositive to Petitioner's first appeal, but did not do so on the prompt presentment issue, which, to be properly considered and ruled on and not considered merely *dictum*, the court would have had to do. The Magistrate ignores or misconstrues Petitioner's assertion the doctrine of *tableau rosa* (or "clean slate") should control, and an attorney has the right to object when a new trial is granted. Additionally, the Magistrate's Findings as pertains to appellate counsel is flawed and Petitioner objects thereto. For instance, after the opinion on the first appeal was filed, appellate counsel failed to file a petition for rehearing, drawing the court's attention to the fact it did not have jurisdiction over the subject matter of prompt presentment violations because no objections were entered. Also, counsel failed to call witnesses at the second trial that rebutted Paul Reggettz's testimony that silverware alleged to be missing from his home was the same as that given to Ms. Johnson by Petitioner, a strong fact lost to the attention of the second jurors. This information would have created reasonable doubt that Paul Reggettz was telling the truth and Petitioner objects to the Magistrate's Findings to the contrary. Petitioner further objects to the Magistrate's Finding that failing to call key witnesses at the second trial was a matter of trial strategy. Counsel's performance fell way below an objectively reasonable standard, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his § 2254 petition.

### Petitioner's Claims – Ground Ten:

> Petitioner's Due Process Rights Were Violated By The State's Withholding Of Exculpatory And/Or Impeachment Evidence And The Lower Courts' Rulings Were Contrary To And/Or An Unreasonable Application Of Clearly Established Federal Law As Announced By The United States Supreme Court, And/Or An Unreasonable Determination Of The Facts As Set Forth In The Record.

Petitioner objects to the Magistrate's Finding that Petitioner's *Brady* claim was not fairly presented to the state courts sufficient to satisfy the exhaustion requirements under § 2254. The Magistrate's ruling seems to imply that Petitioner did, indeed, fairly present his *Brady* claim to the state courts, just not as adequately as a trained attorney or professional jurist might. Of course, the United States Supreme Court has consistently held that *pro se* prisoners' pleadings should be construed liberally, so that requests for habeas corpus relief is liberalized instead of restricted due to inartfull pleadings. Notwithstanding the Magistrate's erroneous Finding, she purports to answer Petitioner's claim on its merits. Her answer, however, is objected to as being contrary to United States Supreme Court precedent, based on an erroneous application of the facts, particularly her Finding that the state had no forewarning that Fred Zain's work was unreliable and/or false and that the state knowingly withheld or failed to disclose exculpatory or impeachment evidence. The state does not have to have specific knowledge of withheld evidence, but is charged with the conduct of state actors, such as Zain, Smith, Williams, Murphy, etc., who colluded to withhold the exculpatory evidence. As the Magistrate's Finding is contrary thereto, Petitioner objects. Also, the record does not support the Magistrate's speculation the state may not have had a document in their possession that clearly demonstrates the West Virginia State Police Serology Division had a sample of Petitioner's blood in January 1980 (DOC 39, *passim*). Petitioner objects to this finding, do a *de novo* review. Petitioner incorporates herein, by reference thereto, the facts as contained in his § 2254 petition.

Finally, it is apparent the United States District Court Judge, Joseph R. Goodwin, is adverse to granting Petitioner a fair opportunity to file objections in these proceedings as he denied Petitioner's request for additional time within which to file his objections. The Judge did so even though the

Magistrate Judge had granted Respondent's motion for additional time (DOC 13) to answer Petitioner's § 2254 petition by allowing approximately an additional 45 days (DOC 14), then again granting Respondent's request for additional time to file a supplemental record (DOC 33) by an additional 8 days (DOC 34). Also, the Magistrate had at least nine months, with full office support, to formulate and file her 159-page *Proposed Findings And Recommendation*. Petitioner objects to the District Judge's decision to deny Petitioner's motion for additional time to file his objections thereto, and reserves the right to more fully develop his objections in his request for a COA, if necessary and/or allowed.

I declare under penalty of perjury that the foregoing facts and/or allegations are true to the best of my knowledge and belief.

Submitted by:

*/s/ John Moss, III*

John Moss, III, DOC# 13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185

On this 11th day of August, 2011.

Petitioner proceeding *pro se*.

## CERTIFICATE OF SERVICE

I, John Moss, III, by my signature below, do hereby certify that I served the foregoing *PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS*, on the below listed individual(s) this 12 day of August, 2011, by handing true and exact copies of the same to prison officials for deposit in the regular course of the United States Mail, postage prepaid, in a correctly addressed and stamped envelope to the following name and address:

Robert D. Goldberg, Assistant Attorney General
Office of the Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220

John Moss, III, *pro se*