**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JOHN MOSS, III,

                      Petitioner,

v.                                   CIVIL ACTION NO.  2:09-cv-01406

DAVID BALLARD,

                      Respondent.

**MEMORANDUM OPINION AND ORDER**

This Petition for Habeas Corpus relief under 28 U.S.C. § 2254 was filed on December 15, 2009.  The Petition was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to this court for proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  The respondent then filed a motion for summary judgment [Docket 17].  The Magistrate Judge has submitted findings of fact and has recommended that the court deny the Petition for Habeas Corpus relief [Docket 39].

Thereafter, the petitioner filed timely Specific Objections to the Proposed Findings and Recommendation [Docket 42].  The court has reviewed *de novo* those portions of the Proposed Findings and Recommendation to which the petitioner has filed specific objections.  For the reasons set forth below, the court **FINDS** that the petitioner's objections lack merit.  Accordingly, the court **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation, **GRANTS** the respondent's Motion for Summary Judgment

[Docket 17], and **ORDERS** that the petition for writ of habeas corpus be **DISMISSED** and **STRICKEN** from the docket of this court [Docket 2].

I.     **Background**

After *de novo* review of those portions of the Magistrate Judge's report to which objections were filed, the court **ADOPTS** the statement of facts and procedural history set forth in the Proposed Findings and Recommendation.   The detailed account provided by the Magistrate Judge therein requires only a brief summary here.

A.     *Investigation and Arrest*

On December 13, 1979, Paul Reggettz returned home from work to find his wife, Vanessa Reggettz, and his two children, Paul Eric and Bernadette, murdered in the family home. Reggettz confessed to committing the murders after approximately fourteen hours of police interrogation and was charged with the crimes.   Blood evidence collected at the scene, however, did not match Reggettz or the victims.   Additionally, Dr. Irvin Sopher, the Chief Medical Examiner, found that the Reggettz victims were murdered at approximately 6:00 a.m., which is inconsistent with Paul Reggettz's confession that he killed his family around 9:00 the previous night.   Reggettz later recanted his confessions.

At the time of the crimes, the petitioner, who was from Cleveland, Ohio, was living with his grandparents down the road from the Reggettz house, but he returned to Cleveland shortly thereafter.   The petitioner became a suspect in the crimes sometime around January 29, 1980, when his uncle, Arthur Moss, gave the West Virginia state police a newspaper clipping reflecting that the petitioner had attempted to strangle and rape a woman in Cleveland.   The petitioner was

also a suspect in a malicious assault that occurred at the Moose Lodge in St. Albans, West Virginia, in May 1979.

On January 30, 1980, two West Virginia State Troopers traveled to Cleveland, Ohio, where the petitioner was being held in a juvenile facility on the Ohio charge.  The State Troopers interviewed the petitioner, who initially denied any involvement in the Reggettz murders.  While at the juvenile facility, the State Troopers took a blood sample from the petitioner by having him prick his finger and bleed into a cloth.  The State Troopers did not have a court order for the blood sample or the consent of the petitioner's parents.

The petitioner turned eighteen on May 5, 1980.  The same State Troopers returned to Ohio, where the petitioner was now in custody, to take the petitioner to West Virginia.  There is no indication that the petitioner made an appearance before a neutral judicial officer concerning any charges in West Virginia during this trip.  During the drive, one of the State Troopers asked the petitioner if he would be willing to speak about "a crime which occurred in West Virginia." (Resp't Mot. to Dismiss, Oct. 17, 2010, Ex. 20 at 941 [Docket 17].)  Eventually, the petitioner confessed to killing the three Reggettz victims.  After answering some questions, the petitioner gave a tape-recorded confession.  On the tape, the petitioner confirmed that he had not been threatened, mistreated, or coerced into making the confession, and that he had been given food and a drink by the officers.  The petitioner confessed a third time on October 30, 1980, the same day he returned to Ohio.

In his confessions, the petitioner admitted that he stole a Kodak instant camera from the Reggettz home. The petitioner told the State Troopers that the camera was at his parents' home in Cleveland, and a camera matching the description given by the petitioner was located in his

- 3 -

father's car the following day.  The petitioner also admitted taking "some dishes" from the Reggettz Christmas gifts.  The petitioner stated that he gave the "dishes" to his best friend's mother, Arbutus Johnson, for Christmas.  Later, the police recovered a silverware set from Johnson, and Johnson told the investigators that the petitioner gave her the silverware as a Christmas present the night before he returned to Cleveland in December 1979.  Additionally, the petitioner told troopers that it was almost daylight when he left the Reggettz home.  A clock radio, from which a cord had been torn, was located in the back bedroom of the house.  The time on the clock stated 6:17 a.m.

B.    *State Convictions and State Habeas*

The petitioner was convicted in his first trial of three counts of first degree murder, with no recommendation of mercy, and he was sentenced to "three consecutive life without mercy sentences."  *State v. Moss*, 376 S.E.2d 569, 572 (W. Va. 1988).  The Supreme Court of Appeals of West Virginia (the "WVSCA") reversed the conviction because of issues concerning a possibly tainted jury pool, improper remarks by the prosecution during closing arguments, and the improper admission at trial of evidence concerning a polygraph examination of Paul Reggettz.  *See State v. Moss*, 376 S.E.2d 569, 573-81 (W. Va. 1988).

On April 24, 1990, the petitioner was convicted again of three counts of first degree murder in the Circuit Court of Kanawha County, and the jury did not recommend mercy.  This action concerns the petitioner's second trial and conviction for these murders.  The petitioner has filed four petitions for post-conviction relief in the Circuit Court of Kanawha County and various appeals from those proceedings.  Additionally, the petitioner filed a petition for a writ of habeas corpus under the original jurisdiction of the WVSCA.

A brief summary of the petitioner's state habeas proceedings follows:

1.      On August 18, 1994, the petitioner filed his first petition for habeas corpus relief in the Circuit Court of Kanawha County stating four grounds for relief. The petition was first denied on September 10, 1998. After numerous motions, a final order denying relief was entered on January 30, 2003. The petitioner appealed the final order, and the final order was affirmed by the WVSCA on July 1, 2004.

2.      The petitioner filed his second petition for habeas corpus relief in the Circuit Court of Kanawha County on July 7, 2005, raising seven grounds for relief. This petition was rejected on February 7, 2006. The petitioner's appeal from the denial of relief was refused by the WVSCA on December 6, 2006.

3.      On June 22, 2006, the petitioner filed a third habeas corpus petition in the Circuit Court of Kanawha County claiming two grounds for relief. This petition was denied on October 16, 2006. The petitioner's appeal from the denial was refused by the WVSCA on July 9, 2007.

4.      On July 31, 2007, the petitioner filed a Petition for a Writ of Habeas Corpus in the WVSCA, raising nine grounds for relief. The WVSCA refused the petition on September 13, 2007.

5.      Finally, on September 28, 2007, the petitioner filed a fourth habeas petition in the Circuit Court of Kanawha County claiming ineffective assistance of counsel as his ground for relief. This petition was denied on March 30, 2009, and the WVSCA denied his appeal on November 30, 2009.

C.     *Federal Habeas*

On December 15, 2009, the petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket 2].  He asserts ten specific grounds for habeas relief, which are discussed in detail below.  On October 29, 2010, the respondent filed a Motion for Summary Judgment [Docket 17].  The Magistrate Judge submitted her Proposed Findings and Recommendation [Docket 39] to the court on July 26, 2011.  The petitioner has filed timely Specific Objections to the Proposed Findings and Recommendation [Docket 42].  The matter is now ripe for review.

## II.    Standard of Review

### A.    *Federal Habeas*

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 severely curtails the power of federal courts to grant writs of habeas corpus to prisoners in state custody.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  Namely, § 2254(a) provides that federal courts may only entertain petitions for habeas corpus based on the claim that a state prisoner "is in custody in violation of the Constitution or law or treaties of the United States."  In addition, AEDPA imposes "several procedural obstacles" on petitioners. *See Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009).  Section 2244(d)(1) dictates a one-year limitations period in which a person in state custody must bring a habeas petition in federal court.  And § 2254(b) and § 2254(c) prohibit federal courts, with limited exceptions, from granting a writ of habeas corpus to a state prisoner unless he has exhausted his remedies in state court.

Moreover, AEDPA significantly circumscribes a federal court's review of the merits of a state prisoner's habeas petition.  Specifically, 28 U.S.C. § 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This is a "difficult to meet[]" standard.  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  Moreover, it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotation marks and citation omitted).  The deference required by § 2254(d) applies even when the state court summarily denied relief instead of providing a written opinion explaining its reasoning.  *Harrington*, 131 S. Ct. at 784 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden must be met by showing that there was no reasonable basis for the state court to deny relief.").  In other words, under § 2254(d), federal habeas courts "review the result that the state court reached, not whether its decision was well-reasoned." *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003) (internal quotation marks and alteration omitted).[1]

The "contrary to" prong of § 2254(d)(1) is implicated only where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court

---

[1] In addition, the Supreme Court recently clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," with no

precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" prong of § 2254(d)(1), by contrast, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 642, 664 (2004)). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 785 (internal quotation marks omitted). To warrant federal habeas relief, the state court's application must be "objectively unreasonable," which imposes a "substantially higher threshold for obtaining relief than *de novo* review." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted). Moreover, it is not an unreasonable application of federal law if a state court declines to apply a "specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009); *see also Williams*, 529 U.S. at 412 (explaining that "clearly established Federal law" refers to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision").

Finally, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Thus, "even if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may

---

consideration of any evidence submitted to the federal court in the first instance. *Cullen*, 131 S. Ct. at 1398-99.

not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and alteration omitted).

As these principles make clear—and as the Supreme Court reiterated this past Term— § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington,* 131 S. Ct. at 786-87. A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard. *Cullen*, 131 S. Ct. at 1398.

Finally, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* Put simply, § 2254(e)(1) "reflects Congress's view that

there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." *Id.* Accordingly, this court may not "casually cast aside" a state court's factual findings. *Id.*

      B.     *Summary Judgment*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

C.     *Magistrate Judge's Recommendations*

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the Magistrate Judge's report to which specific objections are filed.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  When a party files an objection that is too general or conclusory to focus attention on any specific error supposedly committed by the Magistrate Judge, the court need not conduct a *de novo* review.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  Moreover, when a party fails to object to a portion of the Magistrate Judge's Report, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.  *See Diamond*, 416 F.3d at 315.

When a Magistrate Judge hears and rules on a non-dispositive pretrial matter in a case, a party may object to that determination within fourteen days after being served with a copy of the decision.  Fed. R. Civ. P. 72(a).  The District Judge in the case must consider timely objections and "may modify or set aside any portion of a magistrate judge's non-dispositive ruling 'where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'"  *Berman v. Congressional Towers Ltd. P'Ship-Section I*, 325 F.Supp.2d 590, 592 (D. Md. 2004) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a).

III.    Discussion

A.     *Ground One*

In Ground One of his §2254 petition, the petitioner contends that the state courts' findings that the confessions he gave on October 28, 1980, were voluntary are against the weight of the evidence and that those findings amount to an unreasonable application of clearly

established federal law.  The trial court held suppression hearings during which testimony was taken from the petitioner and the officers who transported him and took his confessions at the Parkersburg State Police Department.  At these hearings, the petitioner testified about the alleged coercion and use of force against him by a State Trooper.  The trial court found, however, that the weight of the evidence fell with the testimony of the law enforcement officials, who claimed that no such force was used.

The petitioner has not demonstrated, by clear and convincing evidence, that the state courts' factual determinations were incorrect or unreasonable.  Moreover, the petitioner has not demonstrated that the state courts' decisions concerning the voluntariness of his confessions were contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the court **FINDS** that there is no genuine issue of material fact and that the respondent is entitled to judgment as a matter of law on Ground One of the petitioner's § 2254 petition.

      B.    *Ground Two*

In Ground Two of his § 2254 petition, the petitioner asserts that his confessions should have been ruled inadmissible because they were obtained through the State's violations of procedures under the Interstate Agreement on Detainers ("IAD") and the West Virginia juvenile prompt presentment rule.  The petitioner reiterates that the confessions were obtained through coerced waivers of his rights.  Finally, the petitioner contends that the state courts' rulings that his October 28, 1980, confessions were admissible at his second trial under the "law of the case" doctrine were based on an unreasonable determination of the facts of the case and were contrary to or an unreasonable application of clearly established federal law.  Although the petitioner

- 12 -

refers to the IAD and the alleged coerced waiver of his constitutional rights (which was addressed in the analysis of Ground One), the petitioner's focus in Ground Two is on the admission of the two confessions made on October 28, 1980, in light of the juvenile prompt presentment rule and the law of the case doctrine.

       1.    *Denial of Pretransfer Hearing Under the IAD*

The petitioner has alleged that his confessions were obtained through a statutorily defective transfer under the IAD. In *Cuyler v. Adams*, the Supreme Court held that under the Uniform Criminal Extradition Act, a prisoner held in a jurisdiction that has adopted the Act must be provided a hearing before he is transferred to another jurisdiction. *See Cuyler v. Adams*, 449 U.S. 433, 448 (1981); *State v. Moss*, 376 S.E.2d at 576. However, "[a] prisoner who has been denied a pretransfer hearing is not entitled to have his convictions overturned after notice and a fair trial in the demanding state." *State v. Moss*, 376 S.E.2d at 576 (internal citations omitted).

The court first notes that *Cuyler* was decided by the Supreme Court after the date of the petitioner's transfer to West Virginia. Thus, *Cuyler* was not clearly-established law at the time. Additionally, the petitioner has not demonstrated that the admission of the confessions made after his transfer to the custody of West Virginia authorities without the benefit of a pretransfer hearing resulted in a violation of his constitutional rights. As noted by the WVSCA, federal courts have held that the denial of a transfer hearing does not entitle a prisoner to have his convictions overturned after notice and a fair trial in the demanding state. *State v. Moss*, 376 S.E.2d at 576-77. The WVSCA further found that the petitioner's attempt to paint the denial of a transfer hearing as an illegal detention subject to the Fourth Amendment failed. *Id.*

- 13 -

The court **FINDS** that the state courts' denial of habeas corpus relief on this basis is neither contrary to, nor an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on this claim for relief as pled in Ground Two of the petitioner's § 2254 petition.

2.    *Prompt Presentment Issue*

The petitioner's § 2254 petition also claims that his confessions were obtained through the transporting officers' intentional failure to comply with West Virginia's juvenile prompt presentment statute, which was contained at that time in W. Va. Code §49-5-8(d).  In 1985, after the petitioner's first trial, but prior to the second trial, the WVSCA decided *State v. Ellsworth J.R.*, 331 S.E.2d 503 (W. Va. 1985).  *State v. Ellsworth J.R.* held that any confession obtained as a result of the delay in taking a juvenile before a neutral judicial officer would be excluded if it appeared that the primary purpose of the delay was to obtain a confession.  *Id.*  The WVSCA later stated that the holding in *Ellsworth J.R.* would not be applied retroactively, unless a proper objection to the confession on that basis had been preserved.  *State v. Moss*, 376 S.E.2d at 581 & n.18.

In this case, the court **FINDS** that the petitioner has not established that the admission of his first two confessions at his second trial, based on the Circuit Court's finding that the WVSCA's ruling that those confessions were admissible was the "law of the case," resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law. The prompt presentment rule's potential impact on the admissibility of the petitioner's confessions is a matter of state law, and the petitioner has not demonstrated that he was unduly prejudiced by the proper admission of his confessions under West Virginia law.

- 14 -

Additionally, the WVSCA held that the petitioner's third confession would be inadmissible under *Ellsworth J.R.* because an objection under the juvenile prompt presentment rule had only been raised with regard to the petitioner's third confession. That finding was based on a reasonable determination of what was argued in the proceedings prior to the petitioner's first trial. Therefore, the court **FINDS** that the state courts' rulings were not based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings.

Accordingly, the court **FINDS** that the respondent is entitled to judgment as a matter of law on this claim as stated in Ground Two of the petitioner's § 2254 petition.

C.      *Grounds Three, Five, and Ten—Fourth Amendment Claim and* Brady *Claim*

In Ground Three of his § 2254 petition, the petitioner asserts that he did not receive a full and fair hearing on his Motion to Suppress Samples of Blood, Confession, and Other Physical Evidence Seized, due to the improper tactics of Trooper Fred Zain and the West Virginia State Police Crime Lab. The petitioner also claims that his due process rights were violated and that the state courts' rulings were contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts as set forth in the record.

1.      *The First Blood Sample and the Blood Grouping Table*

The petitioner contends that his first blood sample, taken in January 1980, either was not returned, or at least some of it was retained and used to manufacture evidence implicating the petitioner in the Reggettz murders. Evidence exists supporting a finding that Trooper Smith

returned the cloth with the petitioner's blood sample before the petitioner returned to West Virginia.  Additionally, there is no evidence to substantiate the petitioner's assertion that Fred Zain had a known sample of the petitioner's blood in January 1980,[1] other than the petitioner's contention that the "Blood Grouping Table" with the petitioner's name on it states "JAN" at the top, which is also the sole basis for the petitioner's *Brady* claim.  The petitioner's claim that his blood types were known as early as January 1980 because his name and results appear on the blood grouping table that contains the word "JAN" is speculative.  As noted by former State Crime Lab serologist Robert Murphy, the blood grouping table could have been a summary compilation of the results that were obtained prior to the drafting of the report in June 1980, and the "JAN" could be directed to the other results on the table that were obtained in January 1980.  The petitioner's name is in a different location on the table than the other people who were tested in January.  At any rate, the state courts found that it appeared that the first blood sample had been returned immediately, and the petitioner has not demonstrated by clear and convincing evidence that the state courts' findings are incorrect.

2.    *Fourth Amendment Claim*

The petitioner maintains that there was no probable cause to take either of his blood samples, and that the other evidence derived from the questioning of the petitioner when the police took his first blood sample and his confessions on October 28 and 30, 1980, should be excluded as fruit of the poisonous tree.  In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court found that "where the State has provided an opportunity for full and fair

---

[2]    The petitioner claims that Fred Zain had a known sample of the petitioner's blood at this time.  The petitioner asserts that he only became a "serious focal point" in the Reggettz investigation after the police had a sample of his blood.  He claims that the police used a sample of his blood to manufacture evidence implicating him in the Reggettz murders.

litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976).  As noted in the Magistrate Judge's Proposed Findings and Recommendation, the petitioner raised these issues in his Motion to Suppress Blood Samples, Confessions, and Other Physical Evidence.  The trial court denied the Motion to Suppress in a letter-form order.  Thus, the court **FINDS** that the petitioner had a full and fair opportunity to challenge the probable cause determination prior to his trial and to litigate his Fourth Amendment claim.  Accordingly, under *Stone v. Powell*, the petitioner is prohibited from relitigating that issue in this collateral proceeding.

      3.    *Brady Claim*

Ground Ten of the petitioner's § 2254 petition asserts that the petitioner's due process rights were violated by the State's withholding of exculpatory and impeachment evidence.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Section 2254(b)(1)(A) requires that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. §2254(b)(1)(A).  In the instant case, the court **FINDS** that the petitioner did not fairly present the substance of a *Brady* claim in his state court proceedings sufficient to satisfy the exhaustion requirements under § 2254 because a state court never considered a claim by the

petitioner under *Brady*.   Accordingly, the court **FINDS** that Ground Ten of the petitioner's § 2254 petition is unexhausted and procedurally barred from review by this court.

Notwithstanding the failure to exhaust this claim, § 2254(b)(2) permits a court to deny a petition on the merits.   The petitioner has not demonstrated that the State withheld any evidence that the State knew or should have known was exculpatory.   The Zain investigation began in 1993 after both of the petitioner's trials and appeals.   Based on the evidence presented during the petitioner's state habeas corpus proceedings, the court **FINDS** that the prosecution did not have any forewarning that Fred Zain's work was unreliable and that the petitioner has not demonstrated that the State knowingly withheld or failed to disclose exculpatory or impeachment evidence.   Moreover, because none of the evidence was exculpatory, even if the state failed to disclose any favorable evidence or evidence that could have been used to impeach Zain's testimony, such evidence was not reasonably likely to have affected the judgment of the jury.

Accordingly, the court **FINDS** that the state courts' decisions denying the petitioner habeas corpus relief were neither contrary to, nor an unreasonable application of, clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   The court **FINDS** that the respondent is entitled to judgment as a matter of law on the petitioner's Fourth Amendment and *Brady* claims.

D.     *Grounds Three, Four, Five, and Eight—Grounds Concerning Admission of Serology Evidence and Its Effect on the Jury*

In Ground Four of his § 2254 petition, the petitioner asserts that his rights to a fair trial and an impartial jury were contravened when the State knew or should have known of the false or misleading testimony and evidence presented by a state witness (Fred Zain), and reiterates that

the lower courts' rulings were contrary to or an unreasonable application of clearly established federal law, and an unreasonable determination of the facts in the record.

      1.    *Proper Standard of Review*

The Magistrate Judge's Proposed Finding and Recommendation discusses the proper standard of review for the petitioner's *Zain I* petition. It is a due process violation for the State to convict a defendant based on false evidence. *Napue v. Illinois*, 360 U.S. 264 (1959). Furthermore, the State is responsible for false testimony even if the prosecutor is unaware of the falsity. *Giglio v. United States*, 405 U.S. 150 (1972); *Miller v. Pate*, 386 U.S. 1 (1967). However, a conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict. A new trial will be granted only if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue*, 360 U.S. at 271; *Giglio*, 405 U.S. at 154.

In the Proposed Findings and Recommendation, the Magistrate Judge reviews the United States Supreme Court and WVSCA precedent concerning the proper standard of review for this type of case. The court **FINDS** that, based on the clearly established Supreme Court precedent discussed by the Magistrate Judge, the standard of review applied by the WVSCA to the petitioner's *Zain I* petition was appropriate to address the petitioner's false evidence claims. *See Ward v. Trent*, 188 F.3d 505 (Table), 1999 WL 638606, at ** 5 (4th Cir. 1999) (unpublished) ("We conclude that the West Virginia Supreme Court of Appeals set forth the proper standards to be applied in reviewing Zain/serology claims.").

      2.    *Alleged False Evidence*

The petitioner asserts that the cloth that contained the first blood sample collected from him, or at least a portion of it, was not returned to him and was taken to Fred Zain.   The petitioner asserts that Zain used this known blood sample to manufacture evidence and report that blood consistent with the petitioner's had been found at the crime scene.   Additionally, the petitioner asserts that the evidence cited by the respondent and the state courts as being sufficient to support his convictions, including his confessions, was derived from the State obtaining the first illegal blood sample.   Thus, the petitioner claims that such evidence is fruit of the poisonous tree and should have been excluded.

The court **FINDS** that, absent the serology evidence, there was sufficient evidence to support the petitioner's convictions for the Reggettz murders, and that the admission of the serology evidence at the petitioner's trial did not have a "substantial and injurious effect or influence in determining the jury's verdict."   The petitioner has not sufficiently established evidence to the contrary.

Accordingly, the court **FINDS** that the state courts' decisions concerning the petitioner's false evidence claims were neither contrary to, nor an unreasonable application of, clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   The court also **FINDS** that the respondent is entitled to judgment as a matter of law on the petitioner's false evidence claims as stated in Grounds Three, Four, Five, and Eight of the petitioner's § 2254 petition.

      E.    *Ground Six—The Petitioner Claims that He Was Denied a Fair Trial and Due Process of Law Because of an Improper Closing Argument by the Prosecutor*

In Ground Six of his § 2254 petition, the petitioner contends that the prosecutor improperly pointed out that the petitioner may have sexually assaulted Vanessa Reggettz on the night of the crimes because her underwear and a sanitary pad were found in the room away from her body.  The petitioner alleges that these facts were not presented as evidence to the jury.

The Supreme Court has explained that when a due process claim concerns improper argumentation, "[t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).  Furthermore, the Fourth Circuit has held that in assessing such a contention, a court is obliged to (1) determine that the prosecutor's comments were actually improper, and (2) determine that the prosecutor's comments were so prejudicial so as to deny the criminal defendant a fair trial.  *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988) (overruled on other grounds).

In this case, based on the petitioner's confessions and the corroborating physical evidence, there was ample evidence on which to find the petitioner guilty of these murders beyond a reasonable doubt.  Furthermore, the implications made by the prosecutor in closing arguments were supported by the evidence at the crime scene.  Given that the evidence was sufficient to find the petitioner guilty of the crimes with which he was charged and viewing the argument in the context of the entire proceedings, such comments did not infect the trial with unfairness or deny the petitioner due process.  *See Buell v. Mitchell*, 274 F.3d 337, 364-65 (6th Cir. 2001); *Kinder v. Bowersox*, 272 F.3d 532 (8th Cir. 2001); *Sublett v. Dormire*, 217 F.3d 598 (8th Cir. 2000); *United States v. Sanchez-Sotelo*, 8 F.3d 202, 211 (5th Cir. 1993); *Simmons v. Bowersox*, 235 F.3d 1124, 1136-37 (8th Cir. 2001).

For these reasons, the court **FINDS** that the petitioner's rights to due process and a fair trial were not violated by the prosecutor's comments in closing argument.  The court also **FINDS** that the state courts' decisions were not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, or based upon an unreasonable determination of the facts as set forth in the record.  Thus, the respondent is entitled to judgment as a matter of law on Ground Six of the petitioner's § 2254 petition.

F.      *Ground Seven—Denial of Full and Fair Habeas Corpus Evidentiary Hearing and Appointment of Counsel*

In Ground Seven of his § 2254 petition, the petitioner asserts that his rights to equal protection and due process of law were violated because the state courts failed to provide him with appointment of counsel and a full and fair evidentiary hearing following the WVSCA's decision in *Zain III*.  The petitioner's claim is not cognizable in federal habeas corpus.  *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (infirmities in state post-conviction proceedings cannot serve as a basis for federal habeas corpus relief).  Generally, a federal court cannot grant habeas relief based on errors occurring during state collateral review proceedings.  *See Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998).  Furthermore, the petitioner does not have a constitutional right to counsel in a state court habeas corpus proceeding.  *See Murray v. Giarratano*, 492 U.S. 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  To the extent that the petitioner is asserting that the failure to appoint counsel and conduct a full review of the serology evidence under the WVSCA's decision in *Zain III* was a fundamental miscarriage of justice that denied him due process of law, his claim lacks merit.

For reasons explained by the Magistrate Judge, in light of *Zain I*, all of the serology evidence was removed from consideration by this court when determining the sufficiency of the evidence to support the petitioner's convictions.  After a full review of Murphy's conduct in deriving the serological test results, if such results were determined to be false, the outcome would be the same.  Moreover, the petitioner appealed the summary denial of his *Zain III* habeas petition to the WVSCA, which refused his petition for appeal.

The court **FINDS** that the petitioner's claim in Ground Seven of his § 2254 petition is not cognizable in federal habeas corpus, and that the respondent is entitled to judgment as a matter of law on that claim.

G.  *Ground Nine—Ineffective Assistance of Counsel Claim*

In Ground Nine of his § 2254 petition, the petitioner asserts four claims of ineffective assistance of counsel by the various attorneys who represented him through his two trials and his various appeals.  The Sixth Amendment to the U.S. Constitution guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defense."  When an attorney's performance falls below a minimum level of professional competence, it may violate his client's right to effective representation.  *See Strickland v. Washington*, 466 U.S. 668, 685 (1984).

The Supreme Court has established a two-prong test for determining when an attorney's performance violates a defendant's Sixth Amendment right to effective representation.  *Id.* at 687.  The party asserting ineffective assistance of counsel bears the burden of proving both prongs by a preponderance of the evidence.  *Id.* at 687.  The first prong of the Supreme Court's *Strickland* test requires a defendant (here the petitioner) to show that his attorney committed an

error that fell below a reasonable standard for professional competence. *See id.* The

reasonableness standard is an objective test, which contemplates a wide range of acceptable

professional representation. *See id.* at 689. The second prong of the *Strickland* test requires a

defendant to show that "but for [the attorney's] unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694. In applying the *Strickland* standard, courts

must be "highly deferential" to the attorney's performance and the defendant must rebut the

presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689.

1.      *Failure to Challenge Admission of Confessions*

The petitioner asserts that his first trial counsel violated *Strickland* when he failed to

lodge a specific objection to the admission of the petitioner's two October 28, 1980, confessions

on the basis that he was not taken before a neutral judicial officer, pursuant to W. Va. Code § 49-

5-8(d); in contrast, his first trial counsel objected to admission of his third confession in an *in

camera* hearing. The petitioner further claims that his second trial attorneys failed to bring to the

trial court's attention that such objections were entered on the first two confessions, or to

formulate any argument against the second trial court's determination that the finding that the

first two confessions were admissible was the "law of the case."

This federal court is not charged with reviewing the conduct of the petitioner's counsel at

his first trial, where his convictions were ultimately vacated. Because no prior objection on that

basis was articulated in the petitioner's first trial proceedings, the WVSCA had already ruled that

the two confessions were admissible on those grounds and the Circuit Court found that to be the

law of the case. Thus, the petitioner's second trial counsel had no factual or legal basis to

challenge this ruling. Likewise, the petitioner's appellate counsel had no basis to challenge the

- 24 -

admission of the petitioner's first two confessions on the basis of the juvenile prompt presentment rule or the Circuit Court's "law of the case" finding concerning the same.

The petitioner has not identified any other specific facts or law that he believes his appellate counsel failed to investigate prior to filing his petition for appeal.

2. *Failure to Call Witnesses*

The petitioner also claims that his second trial counsel failed to call witnesses who would have disproved Paul Reggettz's testimony that the silverware given to Arbutus (Johnson) Pomeroy, and that the camera seized from the petitioner's father's car had actually been taken from the Reggettz home. The petitioner asserts that the additional witness testimony would have called into doubt the reliability of the petitioner's confession, and that the jury verdict would have been different.

The court notes that ineffective assistance of counsel is not shown when a witness who is not called to testify would not have helped the defense. *See Jones v. Taylor*, 547 F.2d 808, 810 (4th Cir. 1977). Furthermore, the second trial counsel's decision of whether to call certain witnesses was a matter of trial strategy. The United States Court of Appeals for the Fourth Circuit has held that ineffective assistance of counsel may not be established by questioning counsel's choice of strategy. *See Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991).

The court **FINDS** that the petitioner has failed to demonstrate that his trial counsels' conduct fell below an objective standard of reasonableness. The petitioner merely speculates that testimony of the named witnesses would have changed the outcome of his trial. Based on a review of the entire record, the court **FINDS** that the decision of the petitioner's counsel not to

call certain witnesses at trial was a matter of trial strategy, and that the decision was objectively reasonable under the totality of the circumstances.

It is well-settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. The petitioner has neither shown that his counsels' choices were anything other than trial strategy, nor has he demonstrated that either his trial counsels' or his appellate counsel's conduct fell below an objective standard of reasonableness.

The decision not to call these witnesses did not prejudice the petitioner's defense. Moreover, the petitioner has not shown that there is a reasonable probability that, but for his counsel's alleged unprofessional errors, the result of the proceeding would have been different. Thus, the court **FINDS** that the petitioner has not made a sufficient showing of ineffective assistance of counsel based upon these grounds.

Accordingly, the court **FINDS** that the state courts' habeas decisions denying the petitioner habeas corpus relief on the basis of ineffective assistance of counsel were neither contrary to, nor an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on each of the petitioner's claims of ineffective assistance of counsel as raised in Ground Nine of his § 2254 petition.

H.    *Certificate of Appealability*

Finally, the court has considered whether to grant a certificate of appealability, as required by Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. A certificate shall not issue unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that

- 26 -

reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). I **FIND** that the governing standard under § 2253(c)(2) is not satisfied in this instance. Accordingly, a certificate of appealability is **DENIED**.

## IV.    Conclusion

For the foregoing reasons, the court **ADOPTS** and incorporates herein the Proposed Findings and Recommendation of the Magistrate Judge [Docket 39], **GRANTS** the respondent's Motion for Summary Judgment [Docket 17], and **ORDERS** that the Petition for Habeas Corpus relief [Docket 2] be **DISMISSED** and **STRICKEN** from the docket.

The court **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Order to Magistrate Judge Stanley, counsel of record, and any unrepresented party.

ENTER:        September 8, 2011

Joseph R. Goodwin, Chief Judge

- 27 -