IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION



JOHN MOSS, III,

    Petitioner,

vs.

Civil Action No. 2:09-cv-01406
(Judge Joseph R. Goodwin)

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

    Respondent.

## NOTICE OF APPEAL

Notice is hereby given that petitioner, John Moss, III, (hereinafter "Petitioner") intends to appeal the Final Judgment Order entered on September 9, 2011, dismissing, without prejudice, Petitioner's *Petition for Writ of Habeas Corpus* under 28 U.S.C. § 2254, to the United States Court of Appeals for the Fourth Circuit. Included herewith is Petitioner's Motion for Leave to Proceed on Appeal *In Forma Pauperis*. Chief District Court Judge, Joseph R. Goodwin, denied a certificate of appealability in his *Memorandum Opinion and Order*, filed September 8, 2011, adopting the Magistrate Judge's *Proposed Findings and Recommendations*.

The grounds and/or issues Petitioner asserts substantial constitutional violations on, and advances on appeal, are:

1. **Petitioner Was Denied His Right to Effective Assistance of Counsel Guaranteed to Him Through the Sixth and Fourteenth Amendments to the United States Constitution, and the [State] Courts' Rulings Below Were Contrary To or an Unreasonable Application of Clearly Established Law as Announced by the United States Supreme Court and/or an Unreasonable Determination of the Facts as Set Forth in the Record.**

   A. Counsel failed to bring to the trial and appellate courts' attention the fact that the two October 28, 1980, confessions were the subject of an extensive motion and memorandum hearing and testimony and was, in fact, objected to by counsel prior to the first trial, based on, *inter alia*, W.Va. Code § 49-5-8(d).

    B.     If trial counsel, at the first trial, failed to object to the West Virginia Authorities' failure to promptly present the juvenile defendant to a neutral judicial officer prior to taking Petitioner's alleged confessions.

    C.     Trial counsel failed to conduct adequate investigation into the facts and law of the case prior to petitioner's second trial.

    D.     Appellate counsel failed to conduct adequate investigation and research prior to perfecting and filing a petition for appeal from Petitioner's second trial.

2. Petitioner Did Not Receive a Full and Fair Hearing on His Motion and Memorandum to Suppress Samples of Blood, Confessions, and Other Physical Evidence Seized Due to the Improper Tactics of Fred S. Zain and the West Virginia State Troopers and Crime Laboratory, and Petitioner's Due Process Rights Were Violated. The [State] Courts' Rulings Were Contrary to and/or an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court, or an Unreasonable Determination of the Facts as Set Forth in the Record.

3. The Lower Courts' Rulings that Petitioner's Confessions Were Voluntary is Clearly Against the Weight of the Evidence Presented and an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court.

4. Petitioner's Due Process Rights Guaranteed by the Fourteenth Amendment to the United States Constitution Were Violated and the Lower [State] Courts' Rulings Were Contrary to and/or an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court and/or an Unreasonable Determination of the Facts of the Case.

    A.     The second trial court ruled that the two confessions in question were admissible under the law of the case doctrine.

5. Petitioner's Due Process Rights Were Violated by the State's Withholding of Exculpatory and/or Impeachment Evidence and the Lower Courts' Rulings Were Contrary to and/or an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court, and/or an Unreasonable Determination of the Facts as Set Forth in the Record.

1. Petitioner Was Denied His Right to Effective Assistance of Counsel Guaranteed to Him Through the Sixth and Fourteenth Amendments to the United States Constitution, and the [State] Courts' Rulings Below Were Contrary To Or an Unreasonable Application of Clearly Established Law as Announced by the United States Supreme Court and/or an Unreasonable Determination of the Facts as Set Forth in the Record.

    B.     If trial counsel, at the first trial, failed to object to the West Virginia Authorities' failure to promptly present the juvenile defendant to a neutral judicial officer prior to taking Petitioner's alleged confessions.

District Court Judge Goodwin adopted the magistrate's recommendation to grant Respondent's motion for summary judgment on this issue. In doing so, he adopted the position that; "This federal court is not charged with reviewing the conduct of Petitioner's counsel at his first trial,

where his convictions were ultimately vacated." (DOC #39 @ 148 & DOC #43 @ 24.) Neither ruling, however, cites any authority to support their ruling. Petitioner asserts that when counsel's conduct substantially affects the constitutional guarantees in a subsequent trial, as here, then a reviewing court *is* charged with reviewing the conduct of an attorney and whether that conduct fell within the range of competency of experienced attorneys.

In the instant case, rulings by the state courts as well as the federal Magistrate and District Court Judges find no objections were entered on the two October 28, 1980, "confessions" of Petitioner's. This is an incredulous ruling considering trial counsel specifically cited *W.Va. Code* §49-5-8(d), the juvenile prompt presentment statute, in his motion and memorandum of law to suppress, and the statements of the first trial attorneys at the March 19, 1984, *in camera* hearing; "Now, here is a defendant that confesses to a triple murder case at approximately 9:30 on the *28th day of October, 1980*. He is kept in the county jail for a day. *He is picked up by troopers, and they still interrogate him without him being taken before a neutral magistrate*, where he is to be given not only his rights, but if he could not afford it, then he would be appointed counsel. And, therefore there could be no discussions with the defendant if he had counsel." (Emphasis not in original.) (DOC #36, Attach. 5 @ 2,059.)

The state prosecutor's response also indicates counsel's objections were understood to encompass, not only the October 30, 1980, "confession," but the two October 28, 1980, statements, also, when he stated; "Now, whether or not Mr. Moss was taken before a magistrate *in the middle of the night*, Your Honor, as you may remember, at that time, Mr. Moss was a juvenile. We don't take a juvenile before a magistrate. They don't go before a J.P. They went before referees as we call them. And the juvenile referee is not available at 2:30 or 2:00, whenever. He is available through the day. In any event *he was taken back to Ohio the next day, the 30th*, to set up to bring back with the proper charges against him, Your Honor." (Emphasis not in original.) (DOC #36, Attach. 5 @ 2,062.) It is clear from the emphasized statement above all understood trial counsel's objections to mean all three "confessions" because, 1) the prosecutor was talking about the middle of the night of October 28, and/or 29; and, 2) the third confession was not obtained until the 30th of October, so no one could have anticipated taking Petitioner to a neutral judicial officer in the middle of the night on October 28 or 29.

Working under those erroneous determinations of the facts, the guarantee of effective counsel announced in *Strickland v. Washington*, 466 U.S. 688 (1984) was violated in Petitioner's case. A reading of the West Virginia Supreme Court's decision, when ruling on Petitioner's confessions, reveals; "[O]ur review of the record reveals that a prompt presentment objection was preserved before the trial court only with respect to the third confession. Since the issue was not preserved on the first two confessions, the decision in *Ellsworth J.R.* will not be applied retroactively to exclude those confessions, but will only be applied. . .to exclude the third confession obtained from the

appellant on October 30, 1980. Accordingly, the appellant's third confession is hereby declared invalid and inadmissible." *State v. Moss*, 376 S.E.2d 569, 581 1988).1

It becomes painfully clear, to Petitioner's extreme detriment, that had counsel objected to West Virginia authorities' failure to present Petitioner to a neutral judicial officer, then all three confessions would have been thrown out and the second trial court would not have been able to erroneously rule the two confessions would be allowed in the second trial due to the law of the case doctrine. Coupled with the fact the false and/or misleading evidence and testimony of Fred Zain was subsequently ruled removed from Petitioner's case, there is a reasonable probability that, if not for the deficiencies of counsel for failing to object, resulting in continuing prejudice at the second trial, the results of the proceedings would be different.

Petitioner presents this question to the Court. Is a federal court charged with reviewing the conduct of trial counsel at a trial resulting in a conviction but which said conviction was ultimately vacated on other grounds, when counsel's conduct from the first trial has a direct bearing on the rulings of the second trial court and said rulings substantially prejudices the defendant during the second trial? Petitioner asserts the affirmative, and the lower courts' rulings to the contrary of *Strickland v. Washington, supra*, notwithstanding, he appeals to this Honorable Panel.

Petitioner also appeals the courts' rulings below that he was not prejudiced by the conduct of trial and appellate counsel, for the reasons set forth in his petition under 28 U.S.C. § 2254, and that Petitioner did, indeed, demonstrate a substantial constitutional violation of the Sixth Amendment to the United States Constitution and decisions by the United States Supreme Court of Appeals.

---

1. The WVSCA, after Petitioner's trial, ruled in *State v. Ellsworth J.R.*, 331 S.E.2d 503 (1985), that juvenile prompt presentment violations issues would be considered on appeal and applied retroactively only if proper objections had been entered at trial.

2. **Petitioner Did Not Receive a Full and Fair Hearing on His Motion and Memorandum to Suppress Samples of Blood, Confessions, and Other Physical Evidence Seized Due to the Improper Tactics of Fred S. Zain and the West Virginia State Troopers and Crime Laboratory, and Petitioner's Due Process Rights Were Violated. The [State] Courts' Rulings Were Contrary to and/or an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court, or an Unreasonable Determination of the Facts as Set Forth in the Record.**

The Magistrate Judge seems to be confused on Petitioner's allegations on this issue. She states Petitioner does not elaborate on this claim in his § 2254 petition when, in fact, he more than amply elaborates on it by stating the facts--as only requested in the § 2254 form petition promulgated by the District Court--which support his claim. Petitioner was not afforded an opportunity by the Magistrate to file a comprehensive brief on this, or any other of Petitioner's claims, when she did not require Respondent to submit a cogent response to Petitioner's factual allegations of federal constitutional violations, but instead allowed Respondent to only respond through his motion for summary judgment. The Magistrate does not understand that, due to this Court's and the United States Supreme Court's prior precedent, Petitioner carries the burden of pleading facts why he did not receive an opportunity for full and fair litigation--which is separate and distinct from an allegation of other constitutional violations--but which facts are inextricably interwoven. The facts Petitioner relies on to prove he did not receive a full and fair hearing on the Fourth Amendment violations inflicted upon him are that he was not informed, until state habeas proceedings after 1994, the West Virginia State Police Crime Laboratory, Serology Division, had a sample of his blood in January, 1980, contrary to all testimony by state actors. And so he was not able to, *inter alia*, challenge the veracity of the blood test results and truthfulness of testifying troopers and other members of the West Virginia State Police with the January 1980, blood grouping table at, during, or prior to trial. Petitioner has been continuously thwarted from challenging Zain's and Murphy's testing results because all the evidence was allegedly destroyed.[2] The state courts never articulated a specific ruling on Petitioner's factual allegation(s). The Magistrate and District Court judges, ruling on the issue, merely state; "Petitioner's claim that his blood types were known as early as January of 1980 simply because his name and results appear on the blood grouping table that contains the word "JAN" is speculative at best. As noted by Sergeant Murphy, the blood grouping table could have been a summary compilation of all of the results that had been obtained prior to the drafting of the

---

2. In Respondent's response to Petitioner's *Brady* claim, he asserts; "Although Petitioner's expert at the habeas hearing, Dr. Bing, challenged Zain and Murphy's conclusions and methodology, no testing was ever produced that excluded Petitioner as a source of the pivotal blood evidence." (DOC #26 @ 5). Respondent fails to inform the Court that the material was destroyed or disposed of by the very same state actors who have positively been found to engage in falsifying test results, evidence, and testimony.

- 5 -

report in June of 1980, and the "JAN" could be directed to the other results on the table which were obtained in January of 1980. . . . At any rate, the state courts found that it appeared that the first blood sample had been immediately returned, . . . ." (DOC #39 @ 99-100.)

If any statements should be considered self-serving and speculative it is Murphy's. Petitioner has produced a cold, hard, impossible to refute, government document which boldly announces blood typings were recorded in January, 1980, four months before Petitioner's blood was supposed to be in the government's possession. The state courts' factual determination whether the January, 30, 1980, illegally extracted blood was returned to Petitioner is ambiguous, at best, and no deference must be given to the unsubstantiated findings. The state withheld the January, 1980, Blood Grouping Table and, as a result, Petitioner's right for a full and fair hearing as announced in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Furthermore, Respondent **admits** the January, 1980, Blood Grouping Table evidences the serology laboratory had at least a partial sample of the January, 1980, illegally obtained blood that had been ripped from Petitioner's body, when Respondent asserts; "But even applying *Stone v. Powell* to this claim [Petitioner did not receive a full and fair opportunity to litigate Fourth Amendment claims in the state courts] is too generous since the challenged evidence was ruled illegally obtained and excluded before trial even started. Although Petitioner argues in his Response that the habeas court 'grouped the January 1980 Blood Grouping Table in with the tainted Zain evidence . . . [,]' **the test results of testing performed on the January 1980 sample were never introduced at trial or made a part of the record.**" (DOC #26 @ 5.) (Emphasis not in original.)

Petitioner did not receive a full and fair opportunity to litigate his Fourth Amendment claims, and the District Court did not conduct the analysis required, i.e., to compare the withheld evidence to the trial court's rulings, due to the false and/or misleading testimony by members of the West Virginia State Police and the state's withholding of, at the least, impeachment evidence, and so appeals the decision by the District Court to adopt the Magistrate Judge's recommendation to grant Respondent's motion for summary judgment because Petitioner did not demonstrate by clear and convincing evidence that the state courts' findings are incorrect. Additionally, because Respondent has not disputed Petitioner's factual assertions in his affidavit in support of his petition for writ of habeas corpus that the illegally obtained January, 1980, blood sample was not returned to him, the District Court is to consider Petitioner's allegation as true.

The question presented to this Court is whether Petitioner did demonstrate by clear and convincing evidence a substantial constitutional violation occurred when he was not afforded a full and fair opportunity to litigate his Fourth Amendment Claims by the state withholding the crucial January, 1980, Blood Grouping Table, the withholding of which is undisputed, and whether the District Court's rulings to the contrary were proper.

3. **The Lower Courts' Rulings that Petitioner's Confessions Were Voluntary is Clearly Against the Weight of the Evidence Presented and an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court.**

The admission of inculpatory statements at trial that are involuntarily made and/or coerced violate the 5th and 14th Amendments. The Magistrate and District Court Judges' findings seem to rely entirely upon the state courts' findings of facts and legal conclusions under state law. The question whether Petitioner's confessions were voluntary is one of federal law. "Without exception, the Court's confession cases hold that the ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246 (1991); Citing *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445 (1985). In *Mincey v. Arizona*, 437 U.S. 385, 398, the United States Supreme Court overturned a determination by the Supreme Court of Arizona that a statement of the defendant was voluntary, saying; "[W]e are not bound by the Arizona Supreme Court's holding that the statements were voluntary. Instead, this Court is under a duty to make an independent evaluation of the record." Id. @ 398.

Neither the Magistrate nor District Judges set forth independent analysis of the facts as alleged by Petitioner, only posits that the West Virginia Circuit Court; "[F]ound that the weight of the evidence fell with the testimony of the law enforcement officials, who claimed no such [coercive] force was used." (DOC #s 39 & 43 @ 56 &11-12, respectively.) The District Court did not state any independent fact findings on the factors a federal court can consider when making a determination a confession or confessions were voluntary. Neither did the lower courts, which is contrary to *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860 (1961), and *Schneckloth v. Bustamonte*, 412 U.S. 569, 93 S.Ct. 2041 (1973), among others.

The facts alleged by Petitioner was not disputed by Respondent. Petitioner alleges facts which, if true, would entitle him to habeas corpus relief. The undisputed facts are as follows:

1. On October 28, 1980, ostensibly while being transported to West Virginia by members of the West Virginia Department of Public Safety to answer an unconnected malicious wounding charge, although the two troopers were the chief investigating authorities in the Reggettz murders, a confession was beaten and/or coerced out of the young, eighteen-year-old defendant.

2. Petitioner was yanked out of the Ohio State Reformatory without a chance to resist being transported to West Virginia by having his counsel file a habeas due to violations of the Interstate Agreement on Detainers.

3. Petitioner was. . .placed into the trooper's car by having both hands cuffed to the passenger's side head rest.

4. Trooper Smith crawled over the front seat and started punching Petitioner in the midsection asking him about the Reggettz murders.

5.         Petitioner told the troopers he would be glad to talk to them with the presence of his attorney and requested that he be allowed to contact attorney Jim Williams. Trooper Smith told Petitioner he did not need an attorney. Trooper Smith intermittently continued beating Petitioner until they arrived at the Parkersburg, West Virginia State Police Detachment at around 6:30 p.m.

6.         The troopers removed Petitioner from the vehicle and Trooper Smith hit Petitioner in the groin.

7.         For over five hours Petitioner was held at the State Police Detachment and coached about what he would confess to on tape. When Petitioner did not get it right, Trooper Williams would send Trooper Smith in and he would slap Petitioner around until he got it right.

Federal Courts normally give great deference to the factual findings of the state court. C.f., *Davis v. North Carolina* 384 U.S. 737, 86 S.Ct. 1761 (1966). Nevertheless, the ultimate issue of voluntariness is a legal question requiring independent federal determination. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445 (1985).

Petitioner asserts an independent federal determination was not performed below. The question presented to this Court is whether Petitioner did demonstrate by clear and convincing evidence under a totality of the circumstances that a substantial constitutional violation occurred when the confessions were not voluntarily given but coerced from the young defendant, and whether an erroneous determination on the federal question has prevented Petitioner from having proper redress of those violations.

4. **Petitioner's Due Process Rights Guaranteed by the Fourteenth Amendment to the United States Constitution Were Violated and the Lower [State] Courts' Rulings Were Contrary to and/or an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court and/or an Unreasonable Determination of the Facts of the Case.**

    A. **The second trial court ruled that the two confessions in question were admissible under the law of the case doctrine.**

Neither the Magistrate nor District Judges articulate a legal or factual analysis whether the state trial court's ruling on allowing the confessions into the trial of this matter under a law of the case doctrine comported with Due Process. Petitioner asserts that it was erroneous and violates the Fourteenth Amendment and is contrary to United States Supreme Court precedent and that he has demonstrated by clear and convincing evidence a constitutional violation thereon. Petitioner incorporates herein by reference thereto the facts as set forth in his § 2254 petition (DOC #2.)

The opinion of the West Virginia Supreme Court of Appeals in *Moss II* clearly implied that, had objections been made during the first trial, the first two confessions, like the third, would also have

been inadmissible under the prompt presentment exclusionary rule announced in *State v. Ellsworth, J.R.*, 331 S.E.2d 503 (W.Va. 1985), because it was uncontested that Petitioner had not been taken before a neutral judicial officer even after giving all three confessions. The second trial court, however, felt it was compelled, under the law of the case doctrine, not to make an independent and/or *de novo* review of Petitioner's renewed motion to suppress the confessions.

The WVSCA has never before expounded on the law of the case doctrine in the context of Petitioner's case. Other courts, however, including the United States Supreme Court, have explained it thus:

> In the absence of statute, the phrase "law of the case" merely expresses the practice of courts generally to refuse to reopen what has been decided; it is not a limit to their power. *Messenger v. Anderson*, 225 U.S. 436, 444; 56 L.Ed.2d 1152; 32 S.Ct. 739 (1912) (Holmes, J.).
> Unlike the more precise requirement of *res judicata* and *collateral estoppel*, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides on a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. See *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16; 100 L.Ed.2d 811; 108 S.Ct. 2166 (1988); *Arizona v. California*, 460 U.S. 605, 618; 103 S.Ct. 1382; 75 L.Ed.2d 318, 333 (1983)(dictum).
>
> Observations, commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations, and are not, therefore, law of the case. See, e.g., *Quern v. Jordan*, 440 U.S. 332, 347 n. 18; 99 S.Ct. 1139, 1148 n. 18; 59 L.Ed.2d 358 (1979); *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533.
>
> The doctrine is a self-imposed prudential limitation on the court's power. IB Moore's Federal Practice 0.404[10] at 573 (2d ed. (1980)). It is not an immutable rule, but rather a way to foreclose continued appeals for reconsideration of prior rulings. *Southern Railway Co. v. Clift*, 260 U.S. 316, 319; 43 S.Ct. 126, 127; 67 L.Ed. 283 (1922).

There are three general exceptions to the law of the case doctrine. It should not be applied when; (1) the evidence on a subsequent trial is substantially different, (2) controlling authority has since made a contrary decision of the law applicable to such cases, or (3) the decision was clearly erroneous and would work a manifest injustice. *Sejman v. Warner-Lambert Co.*, 885 F.2d 66, 69 (4th Cir. 1988).

Had the WVSCA foregone consideration of the confession issues altogether, the conviction of Petitioner would still have been reversed and all of Petitioner's rights reinstated. See *United States v. Watson*, 146 F.Supp 258, 259 (D.C. 1956); (After a conviction is reversed and a case is remanded for a new trial, all rights a defendant originally had are reinstated and he is not precluded from filing a motion to suppress evidence prior to his retrial. Nor is he precluded from urging in support thereof legal grounds not previously raised.) Cf. *United States v. Romano*, 241 F.Supp 933 (S.D.Me. 1965); *United States v. Paroutian*, 319 F.2d 661 (2d Cir. 1963), cert. denied, 375 U.S. 981;

84 S.Ct. 494; 11 L.Ed.2d 426 (1964); *Booth v. United States*, 154 F. 836, 837 (2d Cir. 1907). Insofar as the decision of the trial court foreclosed Petitioner from objecting anew, that decision was clearly erroneous and works a manifest injustice.

In *United States v. Coward*, 669 F.2d 180 (4th Cir. 1982), the defendant's first conviction had been overruled. He was retried and once again convicted. At his first trial, evidence was "erroneously" suppressed by the trial court but the government did not appeal on this ground. At the second trial, this same evidence was introduced after a new suppression hearing where the government was permitted to clarify the error of the first suppression hearing. On appeal, the Fourth Circuit stated that; "Remand of the case for a new trial effectively cleansed the slate; the District Court properly corrected as many errors of the first trial as was possible." Id. at 184.

The law of the case doctrine was designed to stop the needless repetition of meritless arguments already fairly adjudicated. It was not intended to be used as an instrument of injustice to blindly preclude consideration of legitimate issues never before decided. **Petitioner did not knowingly and intelligently waive his right** to object to the two confessions by not being promptly taken before a neutral judicial officer. Petitioner was granted a "new" trial, however, which cleansed the slate of all errors at his first trial whether knowingly and intelligently made or not. Petitioner was given new lawyers and they objected in a timely fashion with sufficient specificity. This is not a case where the same facts which were previously decided not to warrant a positive outcome are again sought to be considered without a substantial change in the evidence. The obvious futility the law of the case doctrine was designed to avert.

The ultimate responsibility of the courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which calls into question the very legitimacy of a court's adjudicatory authority. The second trial court had subject matter jurisdiction over the issue and, therefore, had authority to exercise that jurisdiction, notwithstanding the WVSCA dictum.

Law of the case does not and cannot limit the power of a court to reconsider an earlier ruling. The force of law of the case doctrine is affected by the nature of the first ruling and by the nature of the issues involved. If the ruling is avowedly tentative or the issues especially important, it may be said that law of the case principles do not apply. *See* 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478.5. The importance of the issue in Petitioner's case was that he was denied an opportunity to enter a proper objection, the result of which was the introduction of improper evidence. Above all, the rule should never be made the instrument of injustice. Insofar as the decision of the WVSCA in *Moss II* would foreclosed the Petitioner from objecting anew, that decision, and the trial court's application of the same, was clearly erroneous and works manifest injustice. Petitioner

appeals the District Court's failure to articulate whether Petitioner demonstrated by clear and convincing evidence a substantial constitutional violation.

5. **Petitioner's Due Process Rights Were Violated by the State's Withholding of Exculpatory and/or Impeachment Evidence and the Lower Courts' Rulings Were Contrary to and/or an Unreasonable Application of Clearly Established Federal Law as Announced by the United States Supreme Court, and/or an Unreasonable Determination of the Facts as Set Forth in the Record.**

It is undisputed West Virginia did not reveal the January, 1980, Blood Grouping Table and other serology notes, Bates Numbers reports, etc., to the defense prior to trial even after a proper request for the same. Petitioner's trial strategy was thus formulated with the available information furnished by the prosecution. Among other things, Petitioner decided not to testify based upon the evidence divulged. If the state had properly turned over all the available evidence, Petitioner' would have decided to testify and attempt to explain, *inter alia*, how the liar, Fred S. Zain, could possibly have determined Petitioner's blood was found at the scene when there was no possible way it could have been, until West Virginia authorities illegally forced Petitioner to relinquish a sample of his blood. Troopers Smith and Williams had a specific purpose for obtaining that blood sample, as they informed Petitioner, i.e., to assist West Virginia's notorious, miracle-working, crime-buster, Fred Zain, work his magic in producing false serology evidence and then "testi-lying" about the same when, at Petitioner's second trial, it was testified to that Trooper Smith said to Petitioner; "Why do you think we got your blood?" Which, in Petitioner's mind, meant that they took the January, 1980, illegally obtained blood sample for nefarious motives, then covering up those facts by withholding the Reports from the defense. (Second Trial Trans. pp. 511-14, 944-45. Resp't. Exh. 20.)

Petitioner appeals the Magistrate's recommendation, and the District Court's ultimate adoption of; 1) Petitioner did not adequately present a *Brady* claim to West Virginia's highest court, and, 2) the Courts' determination, on the merits of Petitioner's claim, that the state was not forewarned that Fred Zain's work was unreliable and that the state knowingly withheld or failed to disclose exculpatory or impeachment evidence in the form of the January, 1980, Blood Grouping Table.

Respectfully submitted this 6th day of October, 2011 by:

*[signature]*

John Moss, III
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, WV 25185
MOCC Telephone: (304) 442-7213

Petitioner proceeding *pro se*

## DECLARATION IN COMPLIANCE WITH 28 U.S.C. § 1746

I, John Moss, III, *pro se* petitioner, declares, as pursuant to 28 U.S.C. § 1746, that I placed the foregoing Notice of Appeal in prison officials' hands on this 6th day of October, 2011, for mailing in the regular course of the United States Mail, postage prepaid, to the United States District Court for the Southern District of West Virginia, addressed as follows:

>Ms. Teresa L. Deppner, Clerk
>United States District Court
>Southern District of West Virginia
>300 Virginia St. E., Rm. 2400
>Charleston, WV 25301

FILED
OCT - 7 2011
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

_____
John Moss, III, *pro se* Petitioner

John Moss, III, DOC# 13734
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive, West Virginia 25185
MOCC Telephone: 304.442.7213

---

October 6, 2011

Ms. Teresa L. Deppner, Clerk
United States District Court
Southern District of West Virginia
300 Virginia Street East, Room 2400
Charleston, WV 25301

Re:   Moss v. Ballard, Warden
      Civil Action No. 2-09-cv-01406

Dear Ms. Deppner:

Enclosed for filing, please find the original and three (3) copies of my *pro se Notice of Appeal, Declaration in Compliance with 28 U.S.C. § 1746, Motion for Certificate of Appealability*, and *Certification* that a copy of the *Motion* has been served upon counsel for the Respondent Warden. I ask that you treat these pleadings as per applicable rule.

Also, after filing these documents, could you please provide a copy of the, probably final, docketing index sheet by mailing the same back to me? Thank you.

Sincerely yours,

John Moss, III

JM/
Encls.
cc:     Attorney General
        file

$03.28

CORRESPONDANCE FROM INMATE
AT MOUNT OLIVE CORRECTIONAL

Mr. John Moss, III
Mt. Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185

Ms. Teresa L. Deppner, Clerk
United States District Court
Southern District Of West Virginia
300 Virginia Street East, Room 2400
Charleston, WV 25301